CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

Keith L. Slenkovich  (SBN 129793)
  Keith.Slenkovich@wilmerhale.com
Joseph F. Haag  (SBN 248749)
  Joseph.Haag@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (*pro hac vice*)
  William.Lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

James M. Dowd  (SBN 259578)
  James.Dowd@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 S. Grand Avenue, Suite 2100
Los Angeles, CA  90071
Telephone:  (213) 443-5300
Facsimile:   (213) 443-5400

*Attorneys for Plaintiff* MEDIATEK INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| MEDIATEK INC.<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>FREESCALE SEMICONDUCTOR, INC.<br><br>　　　　　　Defendant. | **Civil Action No.  4:11-cv-05341 (YGR)**<br><br>**MEDIATEK INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS [CORRECTED]**<br><br>Hon. Yvonne Gonzalez Rogers<br>Hearing Date:　　April 30, 2013<br>Time:　　　　　　2:00 p.m.<br>Courtroom:　　　5 |

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

Table of Contents

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. **MediaTek Diligently Pursued Geographic Nexus Discovery** ..............................1

    B. **FSI Failed to Identify Public Nexus Data Prior to March 2012** ........................3

        1. **Category 1: Kinetis L** ................................................................................3

        2. **Category 2: i.MX6** ....................................................................................4

        3. **Category 3:  MXC processors** .................................................................5

        4. **Category 4:  Nexus Products** ..................................................................8

          a. **FSI's Argument About "Buy Direct" and "Distributor" Buttons Is Unavailing** ........................................................................................9

          b. **The End Product Information That FSI Describes With Respect to Four of the Nexus Products Would Not Provide A Meaningful Basis to Determine a § 271 Act Had Occurred in the U.S.** ....................................12

          c. **FSI's Argument that MediaTek Should have Engineered Sales is Specious** ................................................................................13

    C. **MediaTek Diligently Investigated the Accused Products for the '331 Patent** 14

    D. **FSI Will Suffer No Prejudice** ............................................................................15

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apple Inc. v. Samsung Electronics Co.*,
   2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) .......................................................................... 4

*Aronson v. McKesson HBOC, Inc.*,
   2005 WL 934331 (N.D. Cal. 2005) ........................................................................................... 8

*Broadcom Corp. v. Qualcomm Inc.*,
   543 F.3d 683 (Fed. Cir. 2008) ................................................................................................. 10

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
   880 F. Supp. 2d 602 (W.D. Penn. 2012) ................................................................................. 10

*CSR Tech., Inc. v. Freescale Semi., Inc.*,
   2013 U.S. Dist. LEXIS 17502 (N.D. Cal. Feb. 8, 2013) ........................................................... 2

*DCG Systems v. Checkpoint Technologies, LLC*,
   2012 WL 1309161 (N.D. Cal., Apr. 16, 2012) ......................................................................... 5

*Hoffman v. Authentic, Inc.*,
   2009 WL 3109860 (M.D. Fla. 2009) ...................................................................................... 10

*In re ATI Tech., Inc. Sec. Litig.*,
   216 F. Supp. 2d 418 (E.D. Pa. 2002) ...................................................................................... 10

*Nazomi Comm., Inc. v. Nokia Corp.*,
   2012 WL 2906206 (N.D. Cal. July 16, 2012) ........................................................................ 13

*Shared Memory Graphics LLC v. Apple, Inc.*,
   812 F. Supp. 2d 1022 (N.D. Cal. 2010) .................................................................................. 13

**STATUTES**

35 U.S.C. § 271 .............................................................................................................. passim

**OTHER AUTHORITIES**

L.R. 3-1 ................................................................................................................... 1, 4, 14

Fed. Rule Civ. Proc. 11 ................................................................................................. 8, 13

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

## I. INTRODUCTION

Against Plaintiff MediaTek, Inc.'s ("MediaTek's") motion to amend its L.R. 3-1 infringement contentions ("ICs"), Defendant Freescale Semiconductor, Inc. ("FSI") argues that: (1) MediaTek (not FSI) is somehow to blame for FSI's refusal to produce information about the U.S. nexus of its additional products until the Court ordered it to do so on MediaTek's motion to compel;[1] (2) MediaTek somehow could have learned this information, which FSI produced as "Highly Confidential – Attorneys' Eyes Only" under the Protective Order, from public sources back in March 2012; and (3) the proposed amendment would unfairly prejudice FSI. None of these arguments has merit.

## II. ARGUMENT

### A. MediaTek Diligently Pursued Geographic Nexus Discovery

FSI argues that MediaTek was "dilatory" in pursuing discovery into its products' geographic nexus with the U.S., and thus was not "diligent" in discovering the basis for its proposed amendment.[2] Dkt. No. 84 (hereinafter "Opp.") at 5-7, 19-20. FSI is wrong. MediaTek has diligently pursued discovery on the geographic nexus of FSI's products from its very first requests in April 2012, including:

- "the date and *__location__* of each manufacture, use, offer for sale, sale or importation" of FSI's products (Franklin Decl. ¶ 1, Ex. A at 10, 4 (Doc. Req. 18));[3]

- "each *__location__* in which any Freescale Accused Product was manufactured or produced" (*id.* at 14 (Doc. Req. 27));

- "each *__location__* in which any Freescale Accused Product has been tested" (Franklin Decl. ¶ 1, Ex. A (Doc. Req. 30)); and

---

[1] MediaTek's amended ICs would add 22 product families to the case. MediaTek's opening brief mistakenly counted these as 31 families, while FSI mistakenly counted them as 21. *See* Dkt. No. 79 ("Mot.") at 2; Dkt. No. 84 ("Opp.") at 1. To avoid further confusion, MediaTek submits with this brief a list of the 22 families. *See* Declaration of Christopher Franklin ("Franklin Decl.") Ex. B.

[2] "Geographic nexus" refers to evidence of infringement within the U.S. under 35 U.S.C. § 271.

[3] In this brief, emphasis appearing in quotations has been added unless otherwise specified.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

- "[a]ll . . . marketing and advertising of any Freescale Accused Products *in the United States*" (*id.* (Doc. Req. 30).

*See also,* Dkt. 79 ("Wickey Decl."), ¶ 17, Ex. L at 7. As FSI concedes (Opp. at 5), MediaTek defined "Freescale Accused Products" as including all FSI products with accused functionality. Franklin Decl. ¶ 1 Ex. A at 4; Wickey Decl. ¶ 17 Ex. L at 3-4.

As explained in MediaTek's opening brief, FSI refused to comply with this discovery, but did so in an inconsistent way. On paper and in early meet-and-confers, FSI refused to produce any discovery on any products other than the nine named in MediaTek's ICs.[4] MediaTek promptly responded rejecting FSI's attempt to unilaterally limit its production and demanding geographic nexus discovery. *See* Wickey Decl. ¶ 19, Ex. N (Letter from Davis to Kim, July 3, 2012). MediaTek diligently pursued this discovery month-after-month until it became clear that FSI would never voluntarily produce it.[5] During this time, FSI took repeated steps to thwart MediaTek's meet-and-confer efforts. FSI repeatedly canceled scheduled meetings at the last minute, for example, or produced irrelevant documents the morning of a meeting and then (wrongly) claimed the issue was moot. *See* Franklin Decl. ¶ 5, Ex. E.

FSI also produced documents on products other than the nine named in MediaTek's ICs, leading MediaTek to believe FSI may have yielded on its objection. Among the approximately 2.3 million pages of documents FSI produced in December 2012, FSI had inserted (like needles in a haystack) confidential technical documents about products *other than* the nine – products MediaTek seeks to now add to its ICs. Wickey Decl. ¶ 20. It took MediaTek some time to review more than two million pages of documents, but by January 2013 it was clear FSI's

---

[4] FSI never sought clarification of the "Freescale Accused Products" definition as it had in response to a similar definition in *CSR Tech., Inc. v. Freescale Semi., Inc.*, 2013 U.S. Dist. LEXIS 17502 at *1 (N.D. Cal. Feb. 8, 2013).

[5] *See* Wickey Decl. ¶ 19, Ex. N; Franklin Decl. ¶ 3 Ex. C.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

production remained deficient – lacking geographic nexus data among other things.  MediaTek was thus forced to move to compel.  *See* Dkt. No. 74, Jan. 24, 2013.[6]

FSI now argues this motion was denied, and FSI thereafter produced nexus data out of the goodness of its heart.  Mot. at 9-10.  FSI is incorrect.  At the February 12, 2013 hearing, Magistrate Corley *ordered* FSI to produce the geographic nexus discovery MediaTek had long sought.  *See* Dkt. No. 77.  Even then, however, FSI's compliance was halting – initially producing only part of what the Court had ordered.  Franklin Decl. ¶ 4, Ex. D.  It was not until March 22, 2012 that FSI (at long last) produced the ordered nexus data that forms a basis for this motion to amend.  *See* Wickey Decl. ¶ 23, Ex. Q.  Far from public, this data was designated as "Highly Confidential – Attorneys' Eyes Only" under the protective order.  *Id.*; Franklin Decl. ¶ 6, Ex. F.  MediaTek moved to amend its ICs the very next week.  *See* Dkt. No. 79.

FSI's attempt to blame MediaTek for its own refusal to produce nexus discovery that MediaTek had diligently sought since April 2012 (Opp. at 5-7) should thus be rejected.

### B.   FSI Failed to Identify Public Nexus Data Prior to March 2012
#### 1.   Category 1: Kinetis L

FSI's opposition does not dispute that:  (1) Kinetis L was first introduced *after* MediaTek's March 2012 ICs; (2) ***no*** public information about Kinetis L (neither technical nor nexus information) existed then; and (3) MediaTek thus could not have named the Kinetis L in its ICs (because no evidence of infringement under § 271 existed).  Opp. at 20-21.  FSI's argument for Kinetis L is solely that MediaTek's motion is untimely.  *Id.* at 20.  FSI is incorrect for multiple reasons.  *First*, MediaTek diligently sought discovery on Kinetis L since its launch.  Wickey Decl. ¶ 19, Ex. N.  FSI refused to produce U.S. nexus data for this product, however, until Magistrate Corley ordered it to do so.  MediaTek moved within a week of getting this data.

---

[6] FSI incorrectly suggested in its portion of the joint letter brief that MediaTek first challenged its objection on August 28, 2012.  Dkt. No. 74 at 4.  In fact, MediaTek had been pressing this issue with FSI since at least early July.  *See* Wickey Decl. ¶ 19, Ex. N (Letter from Davis to Kim, July 3, 2012).

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

*Second*, MediaTek could not have moved before receiving this nexus data.  As discussed in MediaTek's opening brief (Mot. at 16-18), had MediaTek moved earlier it would have wasted judicial resources by potentially accusing many products without a U.S. nexus.

*Third*, FSI is wrong to contend MediaTek should have filed serial motions to amend (with each new product launch) at a time when MediaTek was actively seeking to discover geographic nexus data for a broader set of potentially infringing products.  Judicial (and party) resources are conserved by moving to amend only *once*, and only as to those products where an evidentiary basis actually exists under 35 U.S.C. § 271.

*Finally*, FSI's reliance on *Apple Inc. v. Samsung Electronics Co.*, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) is misplaced.  Although FSI is correct that the *Apple* court denied Apple's motion to amend, FSI ignores the court's ***reasons*** for that result – none of which apply here.  Apple's motion was denied because:  (1) Apple's motion did not spell out its new infringement theories against the newly accused "Jelly Bean" operating system; and (2) the proposed amendment was impermissibly overbroad (accusing all products running the Jelly Bean operating system, not just Samsung's).  *Id.* at *4.  Neither ground is present here.  MediaTek filed this motion with a L.R. 3-1 claim chart detailing the Kinetis L's infringement (Wickey Decl. ¶ 1, Ex. A at C-11) and only Kinetis L is implicated by this amendment.

### 2. Category 2: i.MX6

FSI argues that MediaTek should have moved to amend its ICs to accuse the i.MX6 product family in June 2012 based on a single presentation it contends was available on FSI's public website.  Opp. at 21.  This argument is without merit for at least three reasons.

*First*, the presentation FSI cites, entitled "i.MX6 Series Basics" (hereinafter "Basics") fails to identify a U.S. nexus for this chip.

*Second*, "Basics" contains, as its name suggests, only basic information.  It includes a high-level block diagram that appears to include a component called "DVFS," but lacks an explanation of this component's features and functions.  A black box called "DVFS" provides

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

insufficient technical disclosure upon which to base ICs. FSI did not reveal the technical details of this chip until November 2012, when it published its reference manual. Mot. at 11; Wickey Decl. ¶ 25, Ex. S.

*Third*, FSI fails to demonstrate that "Basics" was available on its web site in June 2012. FSI submits the declaration of Mr. Glenn Stephens, but Mr. Stephens tellingly *fails* to swear that "Basics" was ever on FSI's website. Instead, Mr. Stephens generically states that "by June 18, 2012, the Freescale Website provided access to technical documentation for the … i.MX6." Doc. No. 84-1 (Stephens Decl.) ¶ 6. Mr. Stephens never says what this supposed "technical documentation" was, and most importantly never states that it was "Basics."

*Fourth*, FSI refused to produce *any* technical documentation for the i.MX6 product (much less this presentation) until December 2012. Thus, it was not until late November and into December 2012 that MediaTek first had information showing the inner workings of this product. And it was not until FSI finally complied with the Court's order to produce U.S. nexus information on March 22 that MediaTek had a basis to accuse it under 35 U.S.C. § 271. Accordingly, MediaTek has thus demonstrated good cause to amend its contentions to add i.MX6. *See DCG Systems v. Checkpoint Technologies, LLC*, 2012 WL 1309161, *2-*3 (N.D. Cal., Apr. 16, 2012) (finding good cause to amend based on newly disclosed product manuals).

### 3. Category 3: MXC processors

FSI argues that MediaTek lacked diligence in identifying the MXC*91131*, MXC*91321,* and MXC*91331* processors (collectively, the "MXC91XXX processors") because, it argues, public data existed on its MXC*300-30* platform. FSI argues MediaTek should have known MXC300-30 actually means MXC91XXX from esoteric technical disclosures. FSI is wrong.

*First*, FSI once again fails to identify any way that MediaTek could have known of any U.S. nexus for the MXC91XXX before FSI produced its "Highly Confidential" data under order to do so on March 22, 2013. FSI's argument fails on this basis alone.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

*Second*, none of the four documents FSI relies on in its opposition brief – all of which are about the MXC300-30 platform – discloses a basis to accuse the MXC91XXX products under 35 U.S.C. § 271.  The paper entitled "MXC300-30 3G Mobile Platform Overview" (Opp. at 22; Dkt. No. 84-2 ("Hartman Decl.") Ex. 31; hereinafter "Overview") fails to provide a basis because:

- FSI fails to demonstrate Overview was publicly available before MediaTek's present motion;

- FSI fails to identify any URL showing Overview is even available on its website today (and MediaTek's search returned no hits).  Overview is absent from FSI's list of "technical documents" available on its website (*see* Hartman Decl. Ex. 30);

- Overview contains no information for MXC91131 or MXC91331 at all;

- Overview's one schematic for MXC91321 is essentially a black box, providing none of the detail required for a § 271 analysis; and

- Without FSI's private knowledge that MXC91321 is purportedly based on MXC300-30, no diligent search could be expected to find this paper or appreciate its contents.

FSI next relies on "Mobile Extreme Convergence:  A Streamlined Architecture to Deliver Mass-Market Converged Mobile Devices" (Hartman Decl. Ex. 30; hereinafter "Convergence") arguing it shows that the MXC300-30 "comprises a shared external memory controller."  Opp. at 22.  FSI's argument again misses wide of the mark, at least because:

- Convergence never even mentions the MXC91XXX processors at all;

- Lacking FSI's secret knowledge of a supposed relationship between MXC300-30 and MXC91XXX, MediaTek could not have known that block diagrams in Convergence even relate to the MXC91XXX;

- Convergence's MXC300-30 block diagrams are black boxes, depicting components at too high a level of abstraction to support a § 271 analysis.

FSI next cites "MXC300-30.1 Reference Design:  3.5G smartphone solution for the mass market."  (Hartman Decl. Ex. 33 at 1; hereinafter "Reference Design".)  Reference Design provides no basis for ICs against the MXC91XXX product because:

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

- It contains no information for MXC91131 or MXC91331 at all;

- The mention of MXC91321 in Reference Design provides none of the detail about the MXC91321 processor architecture required for a § 271 analysis; and

- Without FSI's private knowledge that MXC91321 is purportedly based on MXC300-30, no diligent search could be expected to find this paper or appreciate its contents.

Finally, FSI relies on a PCMag.com review of a Motorola Titanium mobile phone. Opp. At 23. Although this article mentions in passing that the Motorola Titanium contains an FSI MXC91131, this document in no way suggests a lack of diligence by MediaTek. *First*, as noted above, none of the publicly-available documents on FSI's website disclosed that there even was a chip called MXC91131, let alone disclose this chip in detail sufficient to put MediaTek on notice that it infringes the asserted patents. Until FSI produced its "Highly Confidential" data about this product, MediaTek had no way to know it should be looking for information regarding a MXC91131 product (much less that it should be searching third-party documents for such information). *Second*, this PCMag.com article is concededly not an FSI publication, does not appear on FSI's website, and does not even provide a technical description of the MXC91131. *Third*, even if this document had somehow been found, it singularly fails to demonstrate: (a) any technical detail necessary to assess infringement by the MXC91XXX processor family; or (b) that any MXC91XXX product has a geographic nexus to the U.S. Hartman Decl. Ex. 34 at 2. The document, in other words, provides no basis to support an infringement allegation under 35 U.S.C. § 271. *Fourth*, although FSI no doubt has proprietary information about which third party products incorporate its chips – allowing FSI to search for the "Motorola Titanium" for example – FSI refuses to produce this information to MediaTek. FSI's opposition brief was the first time FSI revealed a connection between any FSI chip and this Motorola product.

Therefore, in addition to the lack of U.S. nexus data until a week before this Motion was filed, the publicly available data on MXC91XXX processors could not have supported ICs.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

### 4. Category 4: Nexus Products

With respect to MediaTek's fourth category of products, those for which it lacked evidence of a U.S. nexus before March 22 (but had publicly available technical data), FSI argues that MediaTek's concerns about accusing these products were mere "pretext" and speculates that MediaTek had some other reason for not including these 22 products families in its ICs. Opp. at 16. Before questioning MediaTek's integrity, however, FSI might have had the courtesy to explain why, in its opinion, MediaTek chose to omit these products. On its face, the position that MediaTek intentionally left dozens of infringing product lines on the table is not credible.

FSI's argument is that nexus must be a "pretext" because MediaTek supposedly did not raise this issue before the February 12, 2013 motion hearing. FSI misstates history. For more than eight months before February 12, MediaTek doggedly pursued FSI's nexus evidence. *See supra* Section II.A. Yet FSI refused to produce this evidence for any product other than the nine named in MediaTek's ICs. Upon hearing MediaTek's motion to compel, the Court both ***credited*** MediaTek's need for geographic nexus data (Dkt. No. 78 at 27: 11-12 ("Why don't you just find out if there's the geographic nexus?")) and ***ordered*** FSI to produce it to MediaTek. *Id.* at 27:14-15 ("And I'm going to order them to do so, because it just makes common sense"). On these facts, and the plan language of 35 U.S.C. § 271, the requirement for a U.S. nexus is no pretext.

To the extent FSI's complaint is that MediaTek did not spell out the privileged legal thinking behind its document requests and interrogatories seeking the "location" of FSI's § 271 activities (e.g., making, using, selling, offering for sale, importing), this argument lacks merit. Because MediaTek diligently demanded that FSI answer discovery on the "location" of its § 271 activities, *see supra* Section II.A, MediaTek was diligent in pursuing nexus discovery whether or not FSI understood the (obvious) reasons *why* MediaTek wanted it. Moreover, it was not until the Court asked: "How did MediaTek identify the [nine] product or product families that it did include in its preliminary infringement contentions?" (Dkt. No. 78 at 3:17-19) that MediaTek could explain the Rule 11 implications of this discovery without fear of waiving privilege. *Aronson v. McKesson HBOC, Inc.*, 2005 WL 934331, at *7 (N.D. Cal. 2005) (following and

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

citing *In re 50-Off Stores, Inc.*, 213 B.R. 646, 656 (Bkrtcy. W.D. Tex. 1997) (where a judge asks about issues that might invade attorney client or work product privilege, putting the party to a "Hobson's choice," party's responses do not constitute a waiver).

### a. FSI's Argument About "Buy Direct" and "Distributor" Buttons Is Unavailing

For 15 of the 22 products MediaTek seeks to add to its ICs, FSI argues that "Distributor" and/or "Buy Direct" buttons on its website preclude MediaTek's proposed amendment.[7] Opp. at 3-4, 13-15. FSI's argument on these buttons has been a moving target. Throughout the meet-and-confer process FSI argued these buttons constituted an "offer for sale" under § 271, and that MediaTek should have known of these "offers for sale" because they were made on FSI's website. *See* Franklin Decl. ¶ 8 Ex. G. MediaTek's opening brief demonstrated that these buttons do not constitute "offers" under Federal Circuit precedent (Mot. at 13-15), and FSI's opposition concedes the point by failing to dispute it. Instead, FSI now makes a *different* argument: that these buttons suggest one might be able to order chips from the U.S., and from that MediaTek should have known FSI has in fact made U.S. sales. Opp. at 13-15. FSI's new argument is equally unavailing.

### i. The Fact That Certain Products Have "Buy Direct" and/or "Distributor" Buttons, Yet No Sales Within the United States, Demonstrates that these Buttons Do Not Mean Infringing Acts Have Occurred Within The U.S.

FSI has acknowledged that certain of the products with the "buy direct" and/or "distributor" buttons did not have sales within the United States, namely the i.MX37 and Vybrid VF6 (aka VF6xx) product lines. For instance, in its March 1, 2013 letter pursuant to Magistrate Corley's order, FSI identified 37 products, including the i.MX37 and Vybrid VF6 products, for which "Freescale's website identified U.S. distributors for each of the above product families." Wickey Decl. ¶ 27, Ex. U. Then, in its supplemental March 22 letter responsive to Magistrate

---

[7] FSI's points to its "Distributor" button for only 15 of the 22 product families (i.MX6, i.MX21, i.MX25, i.MX27, MPC56xx, MSC711x, PXD20, PXS20, PXS30, PXR40, PXN20, PXD10, Kinetis K series, MCF5221x, MCF527x), *see* Stephens Decl.¶ 10, and further points to the "Buy Direct" for 6 of those 15 (i.MX6, Kinetis K series, PXR40, MPC56xx, MCF5221x, MCF527x).

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

Corley's order, FSI acknowledged that "Freescale has not made or sold in the U.S. products within the i.MX37 or VF6xx product families." Wickey Decl. ¶ 23, Ex. Q. Because these products have "buy direct" and/or "distributor" buttons, yet have never been sold in the U.S., the mere fact that a button appears on FSI's website does not provide a geographic nexus under § 271. To the contrary, this admission by FSI demonstrates such buttons provide no basis to allege infringement.

### ii. FSI's Website Is Not Amazon.com

FSI argues that because certain unnamed chips supposedly may be purchased through a process "similar to that used by internet retailers such as Amazon.com," MediaTek should have assumed that actual sales (or offers) of Nexus Products had in fact taken place within the U.S. Opp. at 4. FSI misrepresents the sales process for semiconductor chips. As FSI is well aware, chips are not consumer items like those sold on Amazon.com – they are components that are designed for particular roles within other specific electronic devices. And the sales process for chips – whether over the internet or otherwise – is nothing like buying from Amazon.[8]

The unique sales and distribution dynamics of the semiconductor industry have been widely reported. In particular, prior to the sale of a particular semiconductor chip, the chip is qualified for a particular application within a particular end product device under development. If the auditioning chip passes this end product qualification process, this is referred to as a "design win."[9] Having achieved the design win, for each successive batch of the particular end

---

[8] *See e.g., Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 702-703 (Fed. Cir. 2008) ("[T]he market for baseband chips is unlike the typical market for consumer goods where competitors compete for each consumer sale, and the competition is instantaneous and ongoing.... Competition for sales is not on a unit-by-unit basis, but rather competition is characterized by competing for 'design wins' for the development and production of cell phones which will embody the proposed chip"); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 880 F. Supp. 2d 602, 604-605 (W.D. Penn. 2012) (discussing design-win process).

[9] *See e.g., Hoffman v. Authentic, Inc.*, 2009 WL 3109860, *1 & n.4 (M.D. Fla. 2009) ("This decision to incorporate AuthenTec's sensor into a customer's end product is called a 'design win,' and once a design win is achieved, the sensor is 'likely' to remain designed into the product for the remainder of that product's life cycle."); *In re ATI Tech., Inc. Sec. Litig.*, 216 F. Supp. 2d 418, 424 (E.D. Pa. 2002) (same).

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

product that gets manufactured, the end product manufacturer must use the designed-in chip, and the semiconductor manufacturer gets all of these follow-on sales. *Id.* FSI is of course well aware of this phenomenon, *see, e.g.*, Franklin Decl. ¶ 8, Ex. H (Vakul Garg, et al.,"Getting a Processor 'Design Win'" (written by FSI Senior Design Engineers regarding efforts to improve processor performance to gain customer design wins), and repeatedly brags about its own "design wins" in press releases and the like.[10] The result of this dynamic is that the universe of customers for a particular chip is generally extremely limited, and often there is only a single customer for a particular chip.

Further, public information on FSI's customers confirms that a small set of customers tends to purchase FSI's products in large quantities. For example, two products identified in MediaTek's original ICs, the i.MX31 and i.MX51, are components for the Ford SYNC system included in certain models of Ford Motor Company cars sold in the U.S.[11] Ford's public releases indicate that, as of April 27, 2012, it had delivered four million SYNC systems into the U.S.[12] This claim, from a single FSI customer, would seem to indicate that FSI's sales of these two products would total in the millions of units. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In other words, just one end product manufacturer, Ford, has annually utilized more than twice FSI's total annual U.S. sales of the i.MX51 and i.MC31, presumably through the use of foreign contractors who build SYNC systems outside of the U.S.

In this marketplace, FSI's suggestion that its website resembles Amazon.com is disingenuous at best. The mere presence of "Buy Direct" and "Distributor" buttons on FSI's

---

[10] *See, e.g.*, Franklin Decl. ¶ 9, Ex. I.
[11] *See, e.g.,* Franklin Decl. ¶¶ 13-14.
[12] *See, e.g.,* Franklin Decl. ¶ 15, Ex. O.
[13] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

website – particularly where following these buttons demonstrates that they are ***not*** offers to sell chips for the reasons demonstrated in MediaTek's opening brief (Mot. at 13-15) – thus cannot form a basis to conclude that any specific chip has a geographic nexus with the U.S.

FSI's focus on website buttons likewise ignores all of the countervailing evidence at the time MediaTek filed its ICs that made the U.S. nexus of any particular chip a mystery, including:

- FSI sells approximately 83% of its chips overseas (Opp. at 18), and maintains its website on a world-wide basis in four languages (Korean, Chinese, Japanese, and English) from an undisclosed location.

- Clicking a "Buy Direct" or "Distributor" button, as demonstrated in MediaTek's opening brief (Mot. at 13-15), does not result in an offer, much less a U.S. sale.

- The U.S. is one of 68 countries within FSI's distributors' service regions, but these regions span continents (e.g., for all of North America) and there is no indication any particular chip has been sold in the U.S. Franklin Decl. ¶ 14 Ex. M.

- At the time FSI argues MediaTek should have known FSI supposedly sells chips in the U.S., the ITC held FSI had no domestic industry in U.S. chip sales.[14]

      **b.    The End Product Information That FSI Describes With Respect to Four of the Nexus Products Would Not Provide A Meaningful Basis to Determine a § 271 Act Had Occurred in the U.S.**

For the MX21, i.MX25, i.MS27, and Kinetis K20 product families, FSI argues "press releases and marketing materials" should have revealed a U.S. nexus to MediaTek in March 2012. These sources are inconclusive at best. FSI cites, for example, a presentation supposedly indicating that an end product called "Logitech Squeezebox" contained an i.MX25. Opp. at 4-5. But public evidence indicates that this product actually used a Ubicom chip, not an i.MX25. Franklin Decl. ¶ 17 Ex. P. Similarly, although FSI argues that the decade-old i.MX21 chip is

---

[14] Although FSI attempts to distinguish this holding by claiming it relied on licensing for its domestic industry proof (Opp. at 17-18), FSI's Complaint in the 786 Investigation alleged that a domestic industry existed in the United States "relating to Freescale semiconductor products" See Ex. Franklin Decl. ¶ 18, Ex. Q at ¶ 115 (excerpt from Complaint) ¶ 115, and in any event, the fact remains that at the same time FSI argues MediaTek should have known FSI supposedly sells chips in the U.S., the ITC held otherwise. See Wickey Decl., ¶ 5, Ex. E at 2-3, 163-76; ¶ 7, Ex. G.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

supposedly included in the Garmin Edge product (Opp. at 5), this end-of-life chip (introduced in 2003) is "ancient" by integrated circuit standards and there is no evidence of a U.S. nexus within the damages period.  Likewise, FSI's brief contends "consumer products by Mad Catz" supposedly contained a "Kinetis K20" (Opp. at 4), but does not identify what Mad Catz products these are, that any have been sold in the U.S., or even that FSI sold Mad Catz Kinetis K20 chips in the U.S.  For its part, Mad Catz's website indicates operations in Hong Kong, England, Japan, and Germany among other locations. *See* Franklin Decl., ¶ 15, Ex. N.   FSI cites nothing for the remainder of the Kinetis family.

           **c.**      **FSI's Argument that MediaTek Should have Engineered Sales is Specious**

FSI's argument that MediaTek should have purchased FSI chips in the U.S. to create an infringing act (Opp. at 14-16) is specious.  FSI first suggests that, in an ITC Investigation of Samsung smart-phone products, WilmerHale client Kodak filed a Complaint alleging that its purchase of a Samsung phone in a New York Walmart was evidence that the accused articles had been imported into the U.S.  But as FSI acknowledges (Opp. at 16), the ITC exercises *in rem* jurisdiction over imported articles.  Kodak's sales receipt was merely evidence of a ***prior importation*** of the accused article (Samsung's phone) conferring jurisdiction on the ITC.  Kodak's purchase, in other words, was evidence of an act of importation that had ***already*** occurred.  These circumstances were nowhere close to the "engineered" purchase FSI argues MediaTek should have attempted.  To be analogous to FSI's argued-for conduct, Kodak would have had to ordered a smartphone from Samsung in South Korea and specify delivery in the U.S., then claim that the act it authorized was somehow infringement.  *Kodak* is simply inapposite.

FSI then cites Rule 11 cases where a complaint was challenged for failure to conduct reverse engineering before filing a complaint.  FSI fails to note the multitude of cases in this District holding that reverse engineering is ***not*** required.  *See, e.g., Nazomi Comm., Inc. v. Nokia Corp.,* 2012 WL 2906206, *1 (N.D. Cal. July 16, 2012) ("[A] party claiming infringement does

| 4:11-cv-05341 (YGR) | 13 | MEDIATEK REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND [CORRECTED] |

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

not have to 'reverse engineer' every one of the accused products." (quoting *View Eng'g Inc. v. Robotic Vision Sys. Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000)); *Shared Memory Graphics LLC v. Apple, Inc*., 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (finding "ambivalence in the case law as to whether Local Rule 3-1 requires reverse engineering or its equivalent"). And MediaTek's complaint is not at issue.

### C.  MediaTek Diligently Investigated the Accused Products for the '331 Patent

FSI makes three arguments against MediaTek's amending its '331 patent ICs for the accused i.MX31, i.MX35, and i.MX50 chips. Each lacks merit.

First, FSI asserts that source code for these chips was "publicly available … from Freescale's website," but cites only an unexplained link to www.freescale.com. Opp. at 23. Contrary to FSI's argument, this page has no link to source code. *See* Dkt. No. 79-3 *(*Schroeder Decl."), ¶ 4, Ex. A. Even if it did, MediaTek would have no way to know that any accused chips actually used it. MediaTek did not have the code on which its '331 amendments are based until FSI produced it on an "Attorneys' Eyes Only" basis in October 2012. MediaTek diligently reviewed this code and promptly moved to clarify its contentions to point to the relevant files.[15]

Second, the addition of source code does not substantively change MediaTek's contentions, but merely cites additional evidence demonstrating MediaTek's original contentionss. The cited source code (*e.g.*, DVFS_core.c, DVFS v2.c) is part of the DVFS load-tracking block MediaTek's ICs already identify. *See* Wickey Decl. Ex. A, Ex. B-1 at 5.

Third, MediaTek's amendment to identify the CCM rather than the GPC as satisfying claim element 35[c] is based on diligently investigating the source code and additional technical documents produced by FSI in this litigation. FSI's arguments that it will be prejudiced by this amendment are belied by the fact that the CCM is referenced throughout MediaTek's current ICs. *See, e.g.*, Wickey Decl. Ex. A; Ex. B-2 at 2-4, 8.

---

[15] Since January, MediaTek has been requesting additional source code from Freescale. To date, Freescale has still not produced the requested code. *See* Franklin Decl. ¶ 16, Ex. O.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

### D. FSI Will Suffer No Prejudice

Finally, *FSI's* claims of prejudice ring hollow.  *First*, FSI claims prejudice from having to "work with Freescale personnel likely to have relevant information about the 21 new product families encompassed by the amendment, and develop non-infringement positions for each product family."  Opp. at 24-25.  But MediaTek's proposed amendment introduces no new theories, and FSI has not even attempted to identify any.  Moreover, three full months remain for fact discovery, and FSI has yet to present a witness for deposition.

*Second*, FSI claims prejudice from having to "produce documents and information for the thousands of products encompassed by these 21 new product families."  Opp. at 25. However three months of discovery remain, and FSI has produced docs on many of these products (*e.g.*, i.MX6, MXC91131, MXC91321, MXC91331).  This is no basis to shield FSI's newly documented infringement.

Dated:  May 8, 2013

Respectfully submitted,
MEDIATEK INC.
By their attorneys,

*/s/  Keith L. Slenkovich*
Keith L. Slenkovich  (SBN 129793)
  Keith.Slenkovich@wilmerhale.com
Joseph F. Haag  (SBN 248749)
  Joseph.Haag@wilmerhale.com
Wilmer Cutler Pickering
Hale and Dorr llp
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (*pro hac vice*)
  William.Lee@wilmerhale.com
Wilmer Cutler Pickering
Hale and Dorr llp
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

James M. Dowd  (SBN 259578)
  James.Dowd@wilmerhale.com
Wilmer Cutler Pickering
Hale and Dorr llp
350 S. Grand Avenue, Suite 2100
Los Angeles, CA  90071
Telephone:  (213) 443-5300
Facsimile:   (213) 443-5400

*Attorneys for Plaintiff* MEDIATEK INC.