IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIATEK, INC.,<br><br>           Plaintiff,<br><br>    v.<br><br>FREESCALE SEMICONDUCTOR, INC.,<br><br>           Defendant. | Case No. C11-5341 YGR (JSC)<br><br>**ORDER RE: MOTION FOR LEAVE TO FILE AMENDED INFRINGEMENT CONTENTIONS (Dkt. No. 93)** |

Plaintiff MediaTek, Inc. ("MediaTek") filed this suit against Defendant Freescale Semiconductor, Inc. ("Freescale") alleging patent infringement. Now pending before the Court is Plaintiff's Motion for Leave to File Amended Infringement Contentions (Dkt. No. 93) whereby MediaTek seeks leave to add approximately1100 accused products to this suit. Having considered the parties' briefs and having had the benefit of oral argument on May 23, 2013, the Court GRANTS in part and DENIES in part MediaTek's motion for leave to amend its Infringement Contentions on the ground that MediaTek has not demonstrated the necessary diligence.

**BACKGROUND**

MediaTek alleges that Freescale, a designer, manufacturer, and retailer for hundreds of different types of special purchase semiconductors, infringes upon four of MediaTek's patents. In March 2012, MediaTek served its Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") alleging infringement of four patents by nine Freescale product families. MediaTek's allegations for each patent were as follows:

- **'845 Patent**: MediaTek accuses Freescale's products in its i.MX51 and i.MX53 multimedia application processor families, and any other products that operate in the same or substantially similar manner, of infringing claims 1, 2, 5, 21, 22, and 25 of the '845 patent.

- **'331 Patent**: MediaTek accuses Freescale's processor and/or microcontroller products in its i.MX31, i.MX35, and i.MX50 multimedia application processor families, and any other products that operate in the same or substantially similar manner, of infringing claims 11 and 35 of the '331 patent.

- **'753 Patent**: MediaTek accuses Freescale's multimedia application processor and/or microcontroller products in its i.MX50, i.MX51, i.MX53, MPC8358E, and MPC8360E product families, and any other products that operate in the same or substantially similar manner, of infringing claim 2 of the '753 patent.

- **'244 Patent**: MediaTek accuses Freescale's multimedia application processor and/or microcontroller products in its i.MX50, i.MX51, i.MX53, MPC8358E, and MPC8360E product families, and any other products that operate in the same or substantially similar manner, of infringing claim 2 of the '753 patent.

A month after it served its Infringement Contentions, MediaTek served its first round of written discovery seeking information on the nine accused product families as well as the other unidentified placeholder products "that operate in the same or substantially similar manner." Freescale indicated that it would only respond as to the nine accused product families. In July 2012, MediaTek sent Freescale a meet and confer letter objecting to Freescale's limitation on the scope of discovery. The parties exchanged numerous letters and then finally met and conferred in person in October 2012. Meanwhile, the parties filed their claim construction briefs and the Markman hearing was held on November 28, 2012.

In January 2013, MediaTek filed a discovery motion objecting to Freescale's limitation on the scope of discovery to the nine accused product families. The case was thereafter referred to the undersigned magistrate judge for discovery. The Court denied the request for discovery of products not identified in the Infringement Contentions and held that "[i]f MediaTek wishes to seek discovery of these products on the ground that they infringe the patents-in-suit, it must first seek and be allowed to amend its PICs to include these additional accused products." (Dkt. No. 77.) At oral argument on MediaTek's motion, MediaTek explained that it had identified particular "products that operate in the same or substantially similar manner" as the accused products, but that it needed information regarding where these unidentified infringing products were manufactured or sold before it could formally allege they infringe. With some encouragement from the Court, Freescale agreed to provide MediaTek with information regarding whether particular products were manufactured or sold in the United States. Freescale provided this information to MediaTek on March 22, 2013.

MediaTek now seeks leave to amend its Infringement Contentions to accuse 21[1] new product families. MediaTek has divided the product families into four amendment categories: (1) the Kinetis L product family which was released the day after MediaTek filed its Infringement Contentions; (2) the i.MX6 product family the infringing features of which were allegedly not publicly available until November 2012; (3) the MXC91131, MXC91331, and MXC91321 product families the infringing features of which MediaTek alleges it was not aware of until it received non-public information from Freescale in December 2012; and (4) the "Nexus Products," products which MediaTek contends it could not accuse without information regarding whether the products had a sufficient "geographic nexus" to the United States. The first three categories of amendment are based both on MediaTek's receipt of information regarding the allegedly infringing products from Freescale after it filed its

---

[1] This number varies between the parties' briefs: Freescale contends it is 21 product families and MediaTek states that it is 22. At oral argument, Freescale explained that the discrepancy exists because although MediaTek listed 22 product families in Exhibit B to the Declaration of Michael P. Wickey submitted in support of MediaTek Inc.'s motion to amend infringement contentions, the actual Amended Infringement Contentions only list 21 families. As MediaTek did not contest this assertion, the Court relies on Freescale's calculation.

1 Infringement Contentions and MediaTek's receipt of information confirming that the products
2 have a geographic nexus to the United States. Amendment of the latter category—the Nexus
3 Products—is based solely on MediaTek's receipt of the geographic nexus information in
4 March 2013.

5     MediaTek's proposed amendments would increase number of accused products in this
6 lawsuit from over 300 to nearly 1500.

## DISCUSSION

8     The Patent Rules are designed to "provide structure to discovery and enable the parties
9 to move efficiently toward claim construction and the eventual resolution of their dispute."
10 *DCG Sys. v. Checkpoint Technologies, LLC*, No. 11-03792, 2012 WL 1309161, at *2 (N.D.
11 Cal. Apr. 16, 2012) (internal citations and quotation omitted). Accordingly, the rules "require
12 parties to crystallize their theories of the case early in litigation and to adhere to those theories
13 once they have been disclosed." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d
14 1355, 1366 n.12 (Fed. Cir. 2006). "Although federal courts are generally lenient in allowing
15 parties to amend pleadings, such is not the case with amending preliminary infringement
16 contentions." *See Berger v. Rossignol Ski Co., Inc.*, No. 05-02522, 2006 WL 1095914, at *2
17 (N.D. Cal. Apr. 25, 2006) (internal citation omitted). Patent Local Rule 3-6 allows a party to
18 amend its infringement contentions only upon a showing of good cause:

> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:
>
> (a)   A claim construction by the Court different from that proposed by the party seeking amendment;
>
> (b)   Recent discovery of material, prior art despite earlier diligent search; and
>
> (c)   Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Patent L.R. 3-6. The moving party has the burden of demonstrating good cause. *O2 Micro Int'l Ltd.*, 467 F.3d at 1366. The inquiry is two-fold: (1) whether the moving party was

diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted. *Barco N.V. v. Tech. Properties Ltd.*, No. 08-CV-05398, 2011 WL 3957390, at *1 (N.D. Cal. Sept. 7, 2011).

### A. MediaTek's Diligence

#### 1. Geographic Nexus Products

MediaTek contends that it could not have included any of the 21 additional product families in its original infringement contentions because publicly available information did not provide MediaTek with a good faith belief that the products had a geographic nexus with the United States sufficient to satisfy 35 U.S.C. § 271(a). Under 35 U.S.C. § 271(a) "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention … infringes the patent." *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) (holding that the reach of section 271(a) is limited to infringing activities that occur within the United States). MediaTek thus reads into Patent Local Rule 3-1 and Rule 11 a requirement that it have a reasonable basis for alleging not just infringement of each claim, but infringement within the United States. It is generally accepted that "the standard of [Federal Rule of Civil Procedure] 11 prefiling inquiry establishes a minimum level of detail that Patent LR 3–1 requires." *Network Caching Tech. LLC v. Novell Inc.,* No. 01-2079, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002). Rule 11 requires a party to make a reasonable inquiry into the applicable facts and law before filing a document. The Federal Circuit applies an "an objective reasonableness standard" to the "reasonable inquiry" analysis. *Id*. "Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Eng'g, Inc. v. Robotic Vision Sys., Inc*., 208 F.3d 981, 986 (Fed. Cir. 2000). Further, "[i]n bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving

infringement. Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances." *Id*.

      MediaTek has not cited any cases, and the Court has not located any, which hold that a party must have a good faith basis to believe there is a United States nexus to a product before including the product in infringement contentions. The cases which address the geographic requirement of Section 271(a) discuss the issue at the summary judgment stage. *See, e.g*., *Baden Sports, Inc. v. Molten*, No. 06-210, 2007 WL 2056402, at *7 (W.D. Wash. July 16, 2007) (concluding on summary judgment that "a defendant cannot be held liable for any sales or offers to sell products to consumers abroad"); *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd*., 130 F.Supp.2d 1152, 1171 (C.D. Cal. 2001) (granting summary judgment because the plaintiff "failed to raise a triable issue of fact as to whether [the defendant] engaged in infringing activity within the United States"); *Quality Tubing, Inc. v. Precision Tube Holdings Corp*., 75 F.Supp.2d 613, 624 (S.D.Tex.1999) (concluding on summary judgment that "[b]ecause a sale is infringing only if it occurs within the United States, an offer to sell is not infringement unless the contemplated sale is to occur in the United States"). Notwithstanding the lack of authority for MediaTek's proposition, however, the Court sympathizes with its view that consistent with its Rule 11 obligations, to allege infringement under Rule 3-1MediaTek had to have a reasonable basis to believe that that the infringing activities were tied to the United States as required by Section 271(a).

      Notwithstanding its sympathy, the Court does not find credible MediaTek's assertion that it refrained from including hundreds of products in its Infringement Contentions because it did not possess sufficient geographic nexus information as to those products. First, MediaTek did not indicate until the February 12, 2013 hearing on its motion to compel that it had not included certain products in its Infringement Contentions because of a lack of information regarding a United States nexus. There is nothing in the record—no letter, email, or declaration—which suggests that prior to that hearing MediaTek advised Freescale that it had identified certain products as infringing, but needed to determine if they had been sold or

6

manufactured in the United States. Indeed, even its pleadings in support of its motion to compel do not hint that it failed to include certain products in its Infringement Contentions because of a paucity of geographic information.

MediaTek's reliance on the language of the April 2012 discovery requests seeking information regarding the sale, testing, or manufacturing "location" of products "that operate in the same or substantially similar manner" of the asserted claims is unavailing. If MediaTek had, in fact, identified certain products as infringing, but just needed information as to geographic nexus, one would expect that its discovery requests would have asked for such geographic information for a specific product or product family. They did not. Instead, the requests asked Freescale to identify additional products that practice the asserted claims. This process did not satisfy MediaTek's diligence requirement.

Second, MediaTek's Infringement Contentions do not include any reference to the geographic nexus of the accused products. To the contrary, the Infringement Contentions attempt (albeit unsuccessfully) to accuse the products it now seeks to formally add by stating that MediaTek accuses "any other products that operate in the same or substantially similar manner" without any caveat as to geographic nexus. Again, if MediaTek's failure to specifically identify these products in the Initial Contentions was actually motivated by the lack of geographic information one would expect the Contentions to make allusion to such.

Third, MediaTek has yet to offer a plausible explanation for how it was able to form a reasonable belief as to the required geographic nexus of the nine product families accused in the Infringement Contentions, but unable to do so for the 21 product families it now seeks to add. When the Court first posed the question at oral argument on MediaTek's motion to compel, MediaTek asserted generally that the type of information that was available for the nine originally accused products was enough to suggest that they were likely made or sold in the United States. It offered as a demonstrative exhibit a document which it had obtained during its pre-suit investigation which referenced Amazon's Kindle products. According to counsel:

> And it's -- you see Kindle 2 and Kindle DX. And it says "iMX31." And Kindle 3 -- it has "iMX35." Now, we know that Amazon is based in the United States. Its headquarters are in Washington. Its facilities are in the United States. We know that you can go down to the store and buy an Amazon Kindle in the United States. We know that we can find an act of infringement with respect to this iMX31 product, and iMX35 products. And we put it on our Accused Product List, because now we have a good-faith basis for an act of infringement within the United States.

(Dkt. No. 78, 7:1-12.)  The document counsel referred to is entitled "i.MX: Your Interface to the World" and contains photos of products made by a variety of companies along with a reference to the MX product family to which they belong.  (Dkt. No. 84-8.)  The Amazon Kindle products are discussed on page 10 of the document.  On page 13, a variety of other devices are shown under the heading "Other Consumer Devices."  Seven of these devices reference product families (i.MX21, i.MX25, and i.MX27) which MediaTek now seeks to add to this lawsuit: Logitech Harmony 1000 Remote (i.MX21), Logitech Squeezebox (i.MX25), Philips VP5500 visiophone (i.MX27), Philips Pronto Control Panel (i.MX21), ACN (i.MX27), Flir GF320, (i.MX27), and Garmin Edge 705 (i.MX21).  Both Logitech products are available for sale on Amazon.com's website.  If all MediaTek required to allege the i.MX35 products was that they were sold by Amazon, a United States company, it is unclear why this would not have been sufficient for the two Logitech products.

Fourth, Freescale has offered evidence that (1) there was information available on its website regarding United States distributors for its products; (2) there is a Buy Direct option on its website which allows customers to directly purchase the iMX6, Kinetis K, PXR40, MPC56xx, MCF5221x, MCF532x, and MCF527x product families; and (3) marketing materials on Freescale's website suggest that some of the newly accused products may be available in products sold or distributed in the United States.  Such evidence is surely enough to satisfy Rule 11.

In sum, based on the record before the Court, the Court finds that MediaTek could have included the specific "Nexus Products" in its March 2012 Infringement Contentions and, indeed, it attempted to generally do so by alleging infringement against "products that operate in the same or substantially similar manner" as the asserted claims.  While a need for

geographic nexus information might justify not including products in infringement contentions even though the patentee believes the products otherwise infringe the asserted claims, the circumstances here compel a finding that such a need was not the reason the specific products were not included in this case. MediaTek has failed to show the good cause required to justify amendment to add these products.

### 2. The Kinetis L Product Family

The Kinetis L product family was released on March 13, 2012—one day after MediaTek served its Infringement Contentions; it is thus undisputed that MediaTek could not have included this product family in its Infringement Contentions. MediaTek admits, however, that it learned of the product shortly upon its release through a press release which it attaches to its motion. The question, then, is whether MediaTek's delay in waiting for more than one year to move to amend its Infringement Contentions to include the Kinetis L Product Family satisfies its obligation of demonstrating diligence.

MediaTek's explanation for its delay rests solely on its assertion that it did not discover the geographic nexus for the product family until Freescale provided geographic nexus data on March 22, 2013. Once again the Court is unpersuaded for the reasons explained above. The record is devoid of any evidence that MediaTek ever asked Freescale about the geographic nexus to the United States of the Kinetis L product family prior to the February 2013 hearing. Further, as Freescale emphasizes, the March 13, 2012 press release announcing Kinetis L which MediaTek attached to its motion states that the Kinetis L microcontrollers will be demonstrated at the DESIGN West conference in San Jose, California and "[f]ull details of the Kinetis L series product families will be announced in June 2012 at the Freescale Technology Forum and accompanied by application-focused demos and in-depth customer training sessions." (Dkt. No. 93-28.) This announcement certainly suggests that the product family was available for sale or testing within the United States sufficient to satisfy Rule 11, especially in the absence of any caselaw to the contrary.

MediaTek's excuse that judicial economy would not have been served by serial motions to amend its Infringement Contentions is unavailing. The Patent Local Rules and

9

1  implementing caselaw do not limit the number of motions to amend and do not advise parties
2  to delay bringing such motions until they are certain their proposed contentions are in final
3  form. And judicial economy is not an issue if the parties stipulate to amendment. Once the
4  Kinetis L product family was announced, and MediaTek believed it practiced the accused
5  claims, it should have met and conferred with Freescale regarding adding the product family
6  to its Infringement Contentions. Freescale would be hard pressed to say no (or at least would
7  appear unreasonable if it did so) if such meet and confer was performed promptly. But that is
8  not what happened; instead, the record demonstrates that MediaTek never even specifically
9  identified the Kinetis L product family to Freescale as infringing until a year after its release.
10 Such delay is not diligence. *See Sun Microsystems, Inc. v. Network Appliance, Inc*., No. 07-
11 05488, 2009 WL 508448, at *1 (N.D. Cal. Feb. 27, 2009) (denying motion to amend
12 infringement contentions where it was undisputed that the plaintiff had access to the source
13 code for over a year prior to filing the motion to amend).

### 3. The i.MX6 Product Family

MediaTek contends that although documentation describing the technical features of the i.MX6 product family was publicly released in November 2012, it was not able to determine that the products infringed until it also reviewed confidential documents produced by Freescale on December 4, 2012. Freescale counters that publicly available information on its website should have provided MediaTek with all the information it needed to determine infringement. In particular, according to the Declaration of Glenn Stephens, the Senior Manager of Enterprise Web Management for Freescale, "by June 18, 2012, the Freescale Website provided access to technical documentation for the . . . i.MX6 product families." (Dkt. No. 84-1 ¶ 6.); *see also* Dkt. No. 84-31 (a presentation entitled "i.MX 6 Series Basics" dated June 2012 which Freescale contends is available on its website). In response, MediaTek again returns to its lack of geographic nexus information excuse. MediaTek also suggests that notwithstanding the i.MX 6 presentation from June 2012, it lacked technical information to determine infringement, and further, quibbles with the language of the Stephens

10

1  Declaration suggesting that there is ambiguity as to whether the i.MX 6 presentation is one of
2  the documents available on Freescale's website.
3        Although the question is close, the Court finds that Freescale has demonstrated the
4  necessary diligence. It is undisputed that the information needed to determine if this product
5  family infringed the patents-in-suit was not available until, the earliest, June 2012, and
6  MediaTek contends that it was not alerted to the infringement until December 2012. In light
7  of the motion to compel proceedings, the Court finds that the delay from December through
8  March is not unreasonable. *See, e.g., Fortinet, Inc. v. Palo Alto Networks, Inc*., No. 09-
9  00036, 2010 WL 4608250, at *1 (N.D. Cal. Nov. 5, 2010) (granting leave to amend where
10 plaintiff contended that it was unable to allege infringement until it received non-public
11 technical information and moved to amend within two months of receipt of that information);
12 *DGS Sys. v. Checkpoint Technologies, LLC, No.* 11-03792, 2012 WL 1309161 *3 (N.D. Cal.
13 Apr. 16, 2012) (finding that a delay in moving to amend of five months to one year is
14 unreasonable).

15     **4.**    **The MXC91131, MXC91331, and MXC91321 Product Families**
16       MediaTek contends that it was only able to determine that these product families
17 infringed after evaluating their technical features in documents produced by Freescale on
18 December 4, 2012. Freescale counters that its website provides access to technical
19 documents for these products citing two different white papers (Dkt. Nos. 84-32 & 84-33) and
20 a fact sheet, all of which relate to the MXC300-30 modem platform to which the MXC91131,
21 MXC91331, and MXC91321 product families belong. However, MediaTek responds that it
22 had no way of knowing that these product families belong to the MXC300-30 platform and
23 that the white papers do not even reference two of the product families (MXC91131 and
24 MXC91331). The Court finds that MediaTek has demonstrated the necessary diligence for
25 the reasons explained with regard to the i.MX6 product family.

26 **B.**    **Prejudice to Freescale**
27       The second prong of the good cause inquiry requires the court to determine whether
28 the non-moving party would suffer undue prejudice if the motion to amend were granted.

11

*Barco N.V. v. Tech. Properties Ltd.,* No. 08-05398, 2011 WL 3957390, at * 1 (N.D. Cal. Sept.7, 2011). The fact discovery deadline here is mid-July and expert discovery is due at the end of September; however, only one deposition has occurred to date. Freescale's asserted prejudice is that if amendment were permitted, it would need to prepare to defend against claims of infringement against 21 additional product families and it would have to collect documents regarding these additional product families which will take time and resources. Freescale's assertions of prejudice are notably short on specifics. *See, e.g., ProconGPS, Inc. v. Skypatrol, LLC*, No. 11-3975, 2013 WL 1788049, at *2 (N.D. Cal. Apr. 26, 2013) (granting amendment where the party moved diligently following the receipt of highly confidential non-public discovery, and the defendant could not demonstrate prejudice where it did "not state what, if anything, it would have done differently," or how it's legal theories would change based on the amendment, and finally, the amendments were consistent with the original infringement contentions); *DCG Sys. v. Checkpoint Technologies, LLC*, No. 11-03792, 2012 WL 1309161, at *3 (N.D. Cal. Apr. 16, 2012) (finding that "while an amendment may force [defendant] to research further the prior art, amend its invalidity contentions, and perhaps supplement its claim construction briefing that is due shortly, [plaintiff] is in no position to object to appropriate accommodations in the pretrial schedule that might be required"); *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp*., No. 09-05897, 2011 WL 940263, at *3 (N.D. Cal. Feb. 18, 2011) (finding insufficient evidence that the defendant would be "unduly prejudiced" by amendment although the claim construction hearing had already occurred, and the amendments might raise new validity issues where the plaintiff agreed not to object to amendment of invalidity contentions and discovery was still open).

The Court concludes that given the lack of specific evidence of prejudice to Freescale, MediaTek should be allowed to amend its infringement contentions as to the i.MX6, MXC91131, MXC91331, and MXC91321 product families. While MediaTek did not move to amend as expeditiously as it could have, amendment to add these four product families will not unduly prejudice Freescale.

**C.     Amendment of the Current Infringement Contentions for the '331 Patent**

In a 13-line request at the end of its motion, MediaTek also seeks leave to amend the Infringement Contentions for the '331 Patent to "provide minor clarifications." (Dkt. No. 93, 24:15-27.)  MediaTek describes the amendments as: (1) amendment of the iMX31, iMX35 and i.MX50 product claim charts to include citations to Freescale's confidential source code; (2) providing additional information concerning the infringement of claim 35[b] with respect to the Power Management Component of the i.MX50; and (3) correcting an "inadvertent identification of the General Power Controller in the infringement chart for element 35[c] of claim 35 of the '331 patent, instead of identifying the Clock Control Module." (Dkt. No. 93, 24:24-25.)  Freescale objects that MediaTek never met and conferred regarding these proposed amendments and contends that the amendments are considerably more substantive than MediaTek suggests.

MediaTek's request to amend its current Infringement Contentions for the '331 patent is deficient.  As Freescale emphasizes, MediaTek has not even identified the specific amendments in its motion.  MediaTek refers generally to the two Infringement Charts for the '331 Patent submitted with its motion (Dkt. No. 93-5, Exs. B-1 & B-2.)  However, nowhere in the 28-pages of these charts are the specific amendments highlighted.  The Court does not bear the burden of comparing these revised amendment charts with those previously submitted to determine the specific amendments proposed—MediaTek does.  Accordingly, MediaTek's motion to amend its Infringement Contentions as to the '331 Patent is denied.

## CONCLUSION

Based on the foregoing, MediaTek's motion for leave to amend its Infringement Contentions is GRANTED as to the i.MX6, MXC91131, MXC91331, and MXC91321product families.  The motion is DENIED as to the remaining Nexus Products and product families, the Kinetis L product family, and as to the request to amend the Infringement Contentions for the '331 Patent.

This Order disposes of Docket No. 93.

**IT IS SO ORDERED.**

Dated: May 31, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE