RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
ALAN COPE JOHNSTON (CA SBN 66334)
ACJohnston@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792

ALEXANDER J. HADJIS (pro hac vice)
AHadjis@mofo.com
JOSHUA A. HARTMAN (pro hac vice)
JHartman@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
Facsimile: (202) 887-0763

Attorneys for Defendant-Counterclaimant
FREESCALE SEMICONDUCTOR, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MEDIATEK INC., <br><br> Plaintiff, <br><br> v. <br><br> FREESCALE SEMICONDUCTOR, INC., <br><br> Defendant. | Case No. 4:11-cv-05341-YGR (JSC) <br><br> **FREESCALE'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS** <br><br> Date:  August 29, 2013 <br> Time:  9:00 a.m. <br> Courtroom:  F <br> Hon. Jacqueline Scott Corley |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. MEDIATEK'S MISREPRESENTATIONS FAIL TO DEFEAT GOOD CAUSE
FOR FREESCALE'S PROPOSED AMENDMENT ........................................................... 3

    A. MediaTek's Assertions That Its Original Infringement Contentions
Disclosed A Software-Focused Infringement Theory Is False ............................... 3

        1. MediaTek's original contentions identified only hardware modules
as allegedly satisfying the "determines a voltage requirement" and
"transitions to a power state" limitations ..................................................... 3

        2. MediaTek's failed attempt to amend its infringement contentions to
identify "software" disproves MediaTek's argument ................................. 5

        3. MediaTek misrepresents or misunderstands Freescale's original
invalidity contentions for the Dischler and Nicol patents........................... 6

    B. The '331 Patent's Disclosure Does Not Describe Software That
"Determine[s] A Voltage Requirement" Or "Transition[s] To A Power
State" ....................................................................................................................... 6

        1. The intrinsic record provides that hardware must "determine a
voltage requirement" and "transition to a power state" .............................. 6

        2. The claim construction proceedings are irrelevant ..................................... 7

        3. Freescale's discovery responses are irrelevant ........................................... 8

    C. Freescale Diligently Search For The Prior Art Of Its Proposed Amendment ....... 10

    D. Good Cause Exists For Freescale's Other Proposed Amendments ...................... 11

III. MEDIATEK IDENTIFIES NO CREDIBLE PREJUDICE FROM FREESCALE'S
PROPOSED AMENDMENT ............................................................................................. 12

    A. MediaTek's Assertion That It Will Be Foreclosed From Discovery On
Freescale's Proposed Amendment Rings Hollow................................................. 13

    B. MediaTek Concedes That It Deferred Its Responsive Contentions on
Invalidity Until Its Rebuttal Expert Report, Due September 27 ........................... 14

    C. Any Delay In Freescale's Amended Invalidity Contentions Is Attributable
To MediaTek's Conduct, Not Freescale's ............................................................ 15

IV. CONCLUSION.................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Apple Inc. v. Samsung Elecs. Co.,
　No. 11-CV-01846-LHK, 2013 U.S. Dist. LEXIS 13237 (N.D. Cal. Jan. 29, 2013) ................ 7

Aristocrat Techs. v. Int'l Game Tech.,
　No. C-06-03717 RMW, 2009 U.S. Dist. LEXIS 41010 (N.D. Cal. May 14, 2009) ................ 8

Hologic, Inc. v. SenoRx, Inc.,
　No. C-08-00133 RMW, 2009 U.S. Dist. LEXIS 109841 (N.D. Cal. Nov. 24, 2009) ............. 8

Oracle Am. v. Google Inc.,
　No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 75026 (N.D. Cal. May 30, 2012) ................ 8

**STATUTES**

35 U.S.C. § 282 ................................................................................................................................ 15

## I.   INTRODUCTION

Freescale Semiconductor, Inc. (Freescale) provides this reply in support of its motion for leave to amend its invalidity contentions.  Freescale's proposed amendment includes prior art from Advanced Micro Devices (AMD) and a research group at University of California, Berkeley, headed by Dr. Robert Brodersen that anticipates claims 11 and 35 of the '331 patent, prior art from AMD that anticipates the asserted claims of the '753 and '24 patents, a revised claim chart for U.S. Patent No. 6,311,287 to Dischler showing that it anticipates claim 11 of the '331 patent instead of rendering that claim obvious, and non-enablement and improper written description theories for claims 11 and 35 of the '331 patent.

Freescale has diligently pursued these amendments after receiving MediaTek Inc.'s (MediaTek) amended infringement contentions on June 10, 2013, less than six weeks before the close of fact discovery.  MediaTek's amended infringement contentions included nearly 100 pages of new claim charts for four previously unaccused product families — Freescale's i.MX6, MXC91131, MXC91321, and MXC91331 product families.  And MediaTek's amended contentions disclosed at least one new infringement theory — that claims 11 and 35 of the '331 patent cover software that "determine[s] a voltage requirement based on the clock frequency requirement of the processor" and that "transition[s] to a power state defined by the clock frequency requirement and the voltage requirement."  (Dkt. No. 130-7 at col. 15:50-54; see also id. at 18:12-17.)  MediaTek has advanced this new theory despite the inventors' clear statements in the intrinsic record that the alleged "novelty of th[e] invention is that the software need only specify a clock frequency requirement.  The hardware then provides the minimum voltage (and therefore power consumption) required to support that clock frequency."  (Dkt. No. 130-10, Provisional Patent App. (Aug. 29, 2001), at MTK-0001607.)

In its opposition, MediaTek argues that good cause does not exist for Freescale's proposed amendment.  MediaTek asserts that its contentions that Freescale's previously accused i.MX31, i.MX35, and i.MX50 product families infringe the '331 patent against disclosed a "controller" implemented in both hardware and software, such that Freescale should have known at the outset

1  that MediaTek contends that hardware and software in Freescale's accused products satisfy
2  claims 11 and 35 of the '331 patent.

3  MediaTek's arguments are incorrect. MediaTek misrepresents the disclosures provided in
4  both its original infringement contentions for, and in the intrinsic record of, the '331 patent.
5  Neither disclosure suggests that the "determine a voltage requirement" and "transition to a power
6  state" limitations can be met by software, rather than hardware. Freescale therefore had no reason
7  to suspect MediaTek's overbroad reading of the '331 patent until MediaTek's June 10 amended
8  infringement contentions disclosed its software-focused infringement theory. MediaTek similarly
9  misrepresents the discovery and claim construction processes in this case in an effort to distract
10 from its "shifting sands" approach to this case, but none of these misrepresentations rebut
11 Freescale's showing of good cause for its proposed amended invalidity contentions for the '331
12 patent.

13 MediaTek also argues that good cause does not exist for Freescale's proposed
14 amendments that assert AMD prior art against the '753 and '244 patents and that include a
15 revised claim chart for the Dischler patent. MediaTek's arguments fail to acknowledge, however,
16 that these proposed amendments are a reasonable, expected response to MediaTek's amended
17 infringement contentions, which contend that four previously unaccused product families infringe
18 one or more of the patents at issue and disclose at least one new infringement theory. And, like
19 Freescale's other proposed amendments, Freescale sought leave to for these AMD and Dischler
20 contentions a mere six weeks after receiving MediaTek's amended infringement contentions.

21 Finally, MediaTek argues that it will be unduly prejudiced by Freescale's proposed
22 amendment. MediaTek's prejudice argument is not credible. Although MediaTek suggests that it
23 would be unable to pursue discovery into Freescale's amended contentions, MediaTek took no
24 discovery related to Freescale's original invalidity contentions, even with respect to Freescale's
25 contentions based on its own prior art products, and MediaTek deferred responding to a
26 contention interrogatory on validity until it serves its rebuttal expert report on September 27,
27 2013.
28

1    Accordingly, Freescale has shown that good cause exists for its proposed amendment, and
2  MediaTek has failed to rebut that showing. Freescale should therefore be granted leave to amend.

3  **II.  MEDIATEK'S MISREPRESENTATIONS FAIL TO DEFEAT GOOD CAUSE FOR FREESCALE'S PROPOSED AMENDMENT**
4
5    **A.  MediaTek's Assertions That Its Original Infringement Contentions Disclosed A Software-Focused Infringement Theory Is False**

6    **1.  MediaTek's original contentions identified only hardware modules as allegedly satisfying the "determines a voltage requirement" and "transitions to a power state" limitations**
7

8    MediaTek's opposition rests on its assertion that its original infringement contentions for
9  the '331 patent disclose its theory that a "a combination of hardware and software elements" in
10 Freescale's accused i.MX31, i.MX35, and i.MX50 product families satisfy the limitations of
11 asserted claims 11 and 35 that require a "controller" that "determines a voltage requirement" and
12 "transitions to a power state." (Dkt. No. 163-3 at 12.) MediaTek grossly misrepresents its
13 original infringement contentions. Contrary to its assertion, MediaTek's original infringement
14 contentions for the i.MX31, i.MX35, and i.MX50 product families specifically identified only
15 hardware modules as satisfying these "controller" limitations. See Patent L.R. 3-1 (requiring
16 patentee's infringement contentions to include "(c) A chart identifying specifically where each
17 limitation of each asserted claim is found within each Accused Instrumentality.").

18    For example, MediaTek's '331 patent infringement chart for claim 11 includes the
19 following specific identification of hardware modules — the CCM or DVFS load tracking
20 block — as the claimed "controller" that performs the limitations of identifying a clock frequency
21 requirement, determining a voltage requirement, and sequencing a transition to a power state
22 defined by the clock frequency and voltage requirements:

| U.S. Patent No. 6,889,331 | MCIMX31 and MCIMX35 Multimedia Applications Processors |
|---|---|
| [b] a controller coupled to at least one of the components to identify a clock frequency requirement of the processor, the controller adapted to determine a voltage requirement based on the clock frequency requirement of the processor and to sequence a transition to a power state defined by the clock frequency | The MCIMX31 and MCIMX35 each comprise a controller coupled to at least one of the components to identify a clock frequency requirement. The controller is adapted to determine a voltage requirement based on the clock frequency requirement and sequences a transition to a power stated defined by the |

| U.S. Patent No. 6,889,331 | MCIMX31 and MCIMX35 Multimedia Applications Processors |
|---|---|
| requirement and the voltage requirement; | clock frequency requirement and voltage requirement.<br><br>For instance, the MCIMX31 and MCIMX35 each include a CCM and/or DVFS load tracking block that control the system frequency, distributes clocks, and enables dynamic voltage frequency scaling. |

(Dkt. No. 130-6, MediaTek Infringement Contentions Ex. B, at 4.)

Following this specific identification of the CCM or DVFS load tracking block, MediaTek's claim chart includes five pages of quotes from the publicly available reference manuals for the i.MX31 and i.MX35 product families. (Id. at 5-9.) These quoted passages are provided without explanation or commentary, however, and MediaTek provided nothing in its claim chart suggesting that the quoted passages are intended to expand the specific identification of the CCM or DVFS load tracking block to encompass other hardware or software.

MediaTek provided nearly identical specific identifications for claim 35 for the i.MX31 and i.MX35 product families and for claims 11 and 35 of the i.MX50 product family. (Id. at 14, 18 (i.MX50 allegedly satisfies limitation 11[b] because "[f]or instance, the i.MX50 includes a General Power Controller (GPC) that supports dynamic voltage and frequency scaling."), 25 (same for limitation 35[d]).)

Even portions of MediaTek's original '331 patent infringement contentions that it now asserts disclose software are instead focused on hardware. For example, MediaTek cites portions of its claim charts that include unannotated quotes such as "[t]he CCM enables simple S/W dynamic voltage frequency scaling" and "[t]he DVFS load tracking block enables hardware tracking on the MCU load and a generation of an interrupt when a frequency change is requested." (Dkt. No. 163-3 at 3 (quoting Dkt. No. 130-4, Hartman Decl. Ex. 1, at 6).) But these portions are directed to hardware modules, the CCM and DVFS load tracking block, and thus do not disclose any contention that the "determines a voltage requirement" and "transition to a power state" limitations are found in software.

FREESCALE'S REPLY ISO MOT. TO AMEND INVALIDITY CONTENTIONS
Case No. 4:11-cv-05341-YGR (JSC)

4

1    MediaTek's contentions specifically identified only the CCM, DVFS load tracking block,
2    and GPC — all hardware modules — as satisfying each "controller" limitation, including the
3    "determines a voltage requirement" and "transitions to a power state" limitations. MediaTek's
4    argument that its original infringement contentions disclosed a combined hardware-software
5    implementation therefore misstates its original contentions and should be rejected.

### 2. MediaTek's failed attempt to amend its infringement contentions to identify "software" disproves MediaTek's argument

The record from MediaTek's first motion for leave to amend its infringement contentions confirms that MediaTek's original infringement contentions for the '331 patent specifically identified only hardware. In that motion, MediaTek sought leave to amend its infringement charts for the '331 patent's asserted claims, in part, to specifically identify "software" in addition to the previously identified hardware modules as satisfying the "controller" limitations of claims 11 and 35. MediaTek's proposed amendment would have inserted the words "along with software (*e.g.*, DVFS_core.c, DVFS_v2.c)" into its specific identifications of features allegedly satisfying the "controller" limitations of claims 11 and 35. (Compare Dkt. No. 130-6, MediaTek's Mar. 12, 2012, Infringement Contentions Ex. B, at 4 (i.MX31 and i.MX35 product families allegedly satisfy limitation 11[b] because, "[f]or instance, the MCIMX31 and MCIMX35 each include a CCM and/or DVFS load tracking block that control the system frequency, distributes clocks, and enables dynamic voltage frequency scaling.") with Dkt. No. 93-5, Proposed Amended Infringement Chart Comparing i.MX31 and i.MX35 Product Families to '331 Patent, at 5 (i.MX31 and i.MX35 product families allegedly satisfy limitation 11[b] because, "[f]or instance, the i.MX Applications Processors each include a CCM and/or DVFS load tracking block and/or Clock Controller and Reset Module (CRM) **along with software (e.g., DVFS_core.c, DVFS v2.c)** that control the system frequency, distributes clocks, and enables dynamic voltage frequency scaling." (emphasis added); see also Dkt. No. 84 at 23-24.)

The Court rejected MediaTek's proposed "along with software" amendments of its contentions that the i.MX31, i.MX35, and i.MX50 product families infringe claims 11 and 35. (Dkt. No. 115 at 13.)

1    Consequently, not only did MediaTek fail to contend that a combination of hardware and
2    software satisfies the "controller" limitations of '331 patent claims 11 and 35 for the i.MX31,
3    i.MX35, and i.MX50 product families in its original infringement contentions, it lacks leave to
4    contend that this hardware-software combination satisfies these limitations going forward.

        3.        **MediaTek misrepresents or misunderstands Freescale's original invalidity contentions for the Dischler and Nicol patents**

7    MediaTek contends that Freescale's original invalidity contentions include two
8    references—U.S. Patent Nos. 6,311,287 to Dischler and 6,141,762 to Nicol—disclose
9    "controllers" implemented in software. MediaTek is wrong. Contrary to MediaTek's assertions,
10   Freescale's claim chart for the Dischler patent points to hardware to satisfy the "determine a
11   voltage requirement" and "transition to a power state" limitations, including "Microcontroller
12   20," which includes a hardware "analog to digital converter." (Dkt. No. 163-5, Freescale
13   Invalidity Contentions Ex. C-7, at 44, 46-47.) Similarly, Freescale's claim chart for the Nicol
14   patent points to hardware, including "calibration block 120," which "can use one of several
15   techniques to determine the voltage required to operate the circuit at a given clock frequency."
16   (Id., Freescale Invalidity Contentions Ex. C-12, at 84, 88.) Accordingly, nothing in Freescale's
17   original invalidity contentions contradicts is showing of good cause for leave to amend.

        **B.**        **The '331 Patent's Disclosure Does Not Describe Software That "Determine[s] A Voltage Requirement" Or "Transition[s] To A Power State"**

        1.        **The intrinsic record provides that hardware must "determine a voltage requirement" and "transition to a power state"**

22   MediaTek argues that Freescale should have known that it would contend that the
23   "determines a voltage requirement" and "transitions to a power state" limitations can be
24   implemented in software as well as hardware based on a paragraph of the '331 patent's
25   specification that discusses implementations of a "controller." (Dkt. No. 163-3 at 3, 13.) That
26   argument is without merit.
27   MediaTek's opposition ignores portions of the intrinsic record discussed in Freescale's
28   opening brief that unambiguously states the claimed invention "provides a relatively simple

FREESCALE'S REPLY ISO MOT. TO AMEND INVALIDITY CONTENTIONS
Case No. 4:11-cv-05341-YGR (JSC)      6

1  mechanism for software to specify a the [sic] minimum required frequency, <u>such that hardware</u>
2  <u>then sets the clock to that frequency, and automatically adjusts the voltage to the minimum value</u>
3  <u>required to support that clock frequency</u>." (Dkt. No. 130-10, Provisional Patent App. (Aug. 29,
4  2001), at MTK-0001605 (emphasis added); <u>see also</u> <u>id.</u> at MTK-0001607 ("The novelty of this
5  invention is that the software need only specify a clock frequency requirement.  <u>The hardware</u>
6  <u>then provides the minimum voltage (and therefore power consumption) required to support that</u>
7  <u>clock frequency</u>." (emphasis added).)  These statements from the provisional application to which
8  the '331 patent allegedly claims priority — incorporated by reference into the '331 patent's
9  specification incorporates by reference (Dkt. No.130-7, '331 patent, col. 1:4-8) — confirm that
10 the "determine a voltage requirement" and "transition to a power state" limitations must be
11 performed by hardware.  In fact, the patentees stated that the very novelty of the alleged invention
12 is that software does not perform these functions.  (Dkt. No. 130-10 at MTK-0001607.)
13        By contrast, MediaTek points to a passage from the specification that discusses
14 implementations of a "controller."  (Dkt. No. 163-3 at 3 (quoting Dkt. No. 130-7, col. 8:51-60.)
15 But nothing in this passage suggests that the "determine a voltage requirement" or "transition to a
16 power state" limitations can be performed by software; this passage is entirely silent on how these
17 limitations are carried out.  (<u>See</u> <u>id.</u>)  And while the provisional application's describes the
18 alleged invention of the '331 patent as comprising "hardware [that] provides the minimum
19 voltage (and therefore power consumption) required to support that clock frequency" (Dkt. No.
20 130-10 at MTK-0001605), the passage upon which MediaTek relies fails to describe any software
21 that performs the "determine a voltage requirement" or "transition to a power state" limitations.

22        **2.     The claim construction proceedings are irrelevant**

23        MediaTek argues that somehow the fact that neither party raised "controller" as a claim
24 term to be construed during the claim construction phase suggests that Freescale's basis for
25 seeking leave to amend is "pretextual."  (Dkt. No. 163-3 at 6.)  This argument is mistaken.
26        First, the Patent Local Rules limit the parties to jointly propose ten terms for the Court's
27 initial claim construction proceedings.  Patent L.R. 4-1; <u>cf.</u>, <u>Apple Inc. v. Samsung Elecs. Co.</u>,
28 No. 11-CV-01846-LHK, 2013 U.S. Dist. LEXIS 13237, at *13 (N.D. Cal. Jan. 29, 2013) (because

1 Patent Local Rules limit parties to total of ten terms for initial claim construction, "failure to
2 include a term at that stage cannot reasonably constitute a waiver.") Accordingly, nothing in the
3 Patent Local Rules requires that all terms that potentially require construction be identified during
4 the initial claim construction phase, and patent litigants in this district frequently seek leave for
5 additional claim construction process all potential terms that may require construction, and parties
6 in this district frequently request, and are granted, supplemental claim construction. See, e.g.,
7 Oracle Am. v. Google Inc., No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 75026, at *5-6 (N.D.
8 Cal. May 30, 2012) (noting supplemental claim construction order issued); Aristocrat Techs. v.
9 Int'l Game Tech., No. C-06-03717 RMW, 2009 U.S. Dist. LEXIS 41010, at *5 (N.D. Cal.
10 May 14, 2009) (additional construction of claim terms not included in original claim construction
11 briefing necessary in connection with summary judgment); Hologic, Inc. v. SenoRx, Inc.,
12 No. C-08-00133 RMW, 2009 U.S. Dist. LEXIS 109841, at *14 (N.D. Cal. Nov. 24, 2009)
13 (granting permission to file supplemental claim construction briefs).
14       Second, Freescale had no reason to believe that a relevant claim construction dispute
15 exists as to the term "controller" because, as explained above and in Freescale's opening brief,
16 MediaTek's original infringement contentions exclusively identified hardware modules as
17 satisfying the "determine a voltage requirement" and "transition to a power state" limitations.
18 Consequently, that Freescale did not propose "controller" as a term for construction is consistent
19 with its understanding that MediaTek's original infringement contentions hued to the reasonable
20 interpretation of claims 11 and 35 as requiring that the "determine a voltage requirement" and
21 "transition to a power state" limitations are implemented in hardware.

      **3.    Freescale's discovery responses are irrelevant**

23     MediaTek argues that Freescale's discovery responses and deposition testimony suggest
24 that it was aware of MediaTek's software-focused infringement theory before receiving
25 MediaTek's amended infringement contentions. MediaTek's argument is incorrect.
26     MediaTek asserts that Freescale's production of source code for the i.MX31, i.MX35, and
27 i.MX50 product families shows that it understood that MediaTek's original infringement
28 contentions had accused software. (Dkt. No. 163-3 at 15.) This assertion is highly misleading.

1  MediaTek's Request for Production No. 21 seeks "[a]ll source code for any software, firmware,
2  program code, microcode, or other embedded instruction contained in or associated with the
3  following features and portions of each Freescale Accused Product: Dynamic Voltage/Frequency
4  Scaling (DVFS)." (Hartman Decl. Ex. 1, MediaTek's 1st Set of Requests for Prod., at 11-12.)
5  Accordingly, Freescale responded by producing publicly available source code that could be used
6  to perform DVFS. Had Freescale withheld this DVFS source code, MediaTek would no doubt
7  have moved to compel production.

8  MediaTek also contends that Freescale's initial objection to producing RTL code for the
9  accused products suggest that it understood that MediaTek's original contentions accused
10 software in addition to hardware. (Dkt. No. 163-3 at 7.) But, contrary to MediaTek's assertion,
11 Freescale's initial objections to producing RTL code had nothing to do with any understanding
12 that MediaTek had accused software of meeting the '331 patent's claim limitations. Rather,
13 Freescale objected to producing RTL code because it would be cumulative, duplicative, and
14 unduly burdensome. As Freescale explained in the letter selectively quoted in MediaTek's brief:

> Freescale has already produced over two million pages of documents, many of which are highly detailed technical documents showing the structure, functionality, and operation of the accused instrumentalities. Such documents are more than sufficient to show the structure, functionality, and operation of the features MediaTek has identified in its Infringement Contentions. These detailed technical documents coupled with the previously produced source code obviate the need for the additional source code you now request. Consequently, MediaTek's requests for additional source code are unreasonably duplicative, cumulative, unduly burdensome, and vexatious.

20 (See Dkt. No. 163-11 at 1.) Despite this objection, however, Freescale subsequently produced
21 thousands of pages of RTL code responsive to MediaTek's document requests, including RTL
22 code for the CCM, DVFS load tracking block, and GPC, pursuant to a good-faith compromise
23 with MediaTek on the scope of its source code requests.

24 Finally, MediaTek suggests that, because Freescale's corporate designee, Glenn
25 Weinecke, testified that the i.MX31, i.MX35, i.MX50, and i.MX6 product families use software
26 in connection with DVFS, Freescale understood that MediaTek's original infringement
27 contentions for the '331 patent are directed to software. MediaTek's argument is illogical. The
28 fact that Freescale's accused products use software, rather than hardware, in connection with

FREESCALE'S REPLY ISO MOT. TO AMEND INVALIDITY CONTENTIONS
Case No. 4:11-cv-05341-YGR (JSC)

9

1  DVFS is irrelevant to whether MediaTek disclosed any infringement contention directed to such
2  software. That fact instead suggests that Freescale's accused products do not infringe based on
3  MediaTek's original infringement contentions.

        **C.     Freescale Diligently Search For The Prior Art Of Its Proposed Amendment**

6  As stated above, MediaTek's representations of the disclosures provided in its original
7  infringement contentions and in the '331 patent's intrinsic record are incorrect. Once these
8  misrepresentations are properly rejected, nothing remains to defeat Freescale's showing that it
9  diligently sought to amend its invalidity contentions following, and in response to, MediaTek's
10 June 10 infringement contentions. As Freescale noted in its opening brief, Freescale provided its
11 proposed amendment a mere six weeks after receiving MediaTek's amended infringement
12 contentions.
13       MediaTek nevertheless attempts to challenge Freescale's renewed search for prior art
14 following receipt of MediaTek's amended contention. (Dkt. No. 163-3 at 16.) MediaTek
15 contends that Freescale waited until the end of fact discovery to search for the prior art at issue in
16 its proposed amendment. But MediaTek ignores the fact that Freescale's original invalidity
17 contentions, served May 25, 2012, already included a fulsome disclosure of prior art references
18 and theories, including 38 claim charts for prior art references that anticipate or render obvious
19 the asserted claims of the patents in suit. (Dkt. No. 163-5, Freescale's Invalidity Contentions, at
20 15-17, 20-23.) After providing this disclosure, Freescale had no cause to search for additional
21 prior art references or provide additional prior art theories until receiving MediaTek's amended
22 infringement contentions.
23       MediaTek also challenges Freescale's argument that some of the prior art it obtained was
24 not inherently easy to locate. (Dkt. No. 163-3 at 16; <u>see also</u> Dkt. No. 130-4 at 9.) MediaTek
25 contends that prior art patents and prior art publications in IEEE journals are easy to find. (Dkt.
26 No. 163-3 at 16.) But patents and IEEE journal articles are straw men. As Freescale's opening
27 brief makes clear, Freescale explained that prior art such as AMD's confidential documents about
28 its Diamondback processors, the prototype system developed by Dr. Brodersen and his students in

1  their Berkeley lab, and his students' doctoral dissertations were difficult to find. (Dkt. No. 130-4
2  at 9.) MediaTek does not contend that any of these prior art references were inherently easy to
3  locate.

4  Finally, MediaTek notes that Freescale served eleven subpoenas seeking prior art during
5  the last four weeks of discovery, accusing Freescale of misrepresenting its discovery efforts.
6  (Dkt. No. 163-3 at 16.) But Freescale never stated that it served only two subpoenas seeking
7  prior art; Freescale's opening brief focused on its subpoenas to Dr. Brodersen and AMD because
8  those were the only two subpoenas that bore fruit. Moreover, that only two of eleven subpoenas
9  yielded additional prior art confirms that the Brodersen and AMD prior art were indeed difficult
10 to locate.

11 MediaTek's amended infringement contentions, served June 10, disclosed a new software-
12 focused infringement theory for the '331 patent. Nothing in MediaTek's prior contentions or in
13 the '331 patent's intrinsic record suggested this theory before June 10. Upon receiving this new
14 theory, Freescale searched for, found, and analyzed additional prior art from Dr. Brodersen and
15 AMD and developed non-enablement and improper written description contentions premised on
16 MediaTek's newly disclosed interpretation of the '331 patent. Freescale diligently developed
17 these proposed amended contentions for the '331 patent and diligently sought leave to amend to
18 incorporate them into its invalidity disclosures. Accordingly, the Court should find that good
19 cause exists for Freescale's proposed amendment as it relates to at least the Brodersen and AMD
20 references and to Freescale's non-enablement and improper written description theories.

21           **D.**     **Good Cause Exists For Freescale's Other Proposed Amendments**

22 MediaTek contends that Freescale has not shown diligence for its proposed amendments
23 related to the Dischler patent and for prior art AMD patents and processors that anticipate the
24 '753 and '244 patents. (Dkt. No. 163-3 at 18-20; see also Dkt. No. 130-44–47.) MediaTek
25 argues that Freescale's proposed amendments as to these references are not directly related to
26 MediaTek's new infringement theory for the '331 patent. (Dkt. No. 163-3 at 18, 20.)

27 MediaTek misses the point. MediaTek's amended infringement contentions included
28 nearly 100 pages of new claim charts for the i.MX6, MXC91131, MXC91321, and MXC91331

1    product families.  (See, e.g., Dkt. No. 130-15.)  None of these claim charts were carbon-copies of
2    MediaTek's claim charts from its original infringement contentions, and MediaTek's new i.MX6
3    claim chart explicitly disclosed at least one new infringement theory.  Freescale thus had every
4    reason to revisit its invalidity contentions, search for new prior art, and develop responsive
5    contentions as part of preparing its response to MediaTek's new infringement accusations against
6    products that had not previously been at issue.

7    Like the prior art references and non-enablement and improper written description
8    theories discussed above, Freescale diligently sought out the AMD patents and processors that it
9    seeks to assert against the '753 and '244 patents.  In fact, Freescale located these prior art
10   references during the very same search that yielded additional prior art for the '331 patent (see
11   Dkt. No. 130-4 at 3-4), and Freescale's proposed amendment includes a claim chart comparing
12   AMD processors to the '331 patent's asserted claims.  (See Dkt. No. 130-48.)  Freescale sought
13   leave to amend as to the AMD patents and processors and the Dischler patent a mere six weeks
14   after receiving MediaTek's amended infringement contentions.  In light of MediaTek's expansion
15   of this case to encompass four additional Freescale product families, as well as MediaTek's delay
16   in seeking that amendment, good cause exists for Freescale to amend its contentions to add
17   references to the AMD patents and processors against the '753 and '244 patents and to revise its
18   contentions for the Dischler patent.

### III.    MEDIATEK IDENTIFIES NO CREDIBLE PREJUDICE FROM FREESCALE'S PROPOSED AMENDMENT

21   MediaTek argues that it would suffer unfair prejudice from Freescale's proposed
22   amendment. (Dkt. No. 163-3 at 17-18.)  That argument is without merit.  MediaTek's prejudice
23   argument hinges on its assertion that it would be unable to pursue discovery into Freescale's
24   amended contentions.  But MediaTek took no discovery related to Freescale's original invalidity
25   contentions, and MediaTek has not even developed responses to Freescale's original contentions,
26   electing to defer such responses until MediaTek's rebuttal expert report, due September 27.
27   Moreover, any delay is due to the fact that MediaTek waited until the end of fact discovery to
28   serve its amended infringement contentions that precipitated Freescale's proposed amendment.

### A. MediaTek's Assertion That It Will Be Foreclosed From Discovery On Freescale's Proposed Amendment Rings Hollow

MediaTek argues that it will be unable to "explore Freescale's new contentions through fact discovery," and that it was prevented from asking Freescale and third-party deponents about Freescale's proposed amended contentions. (Id.) MediaTek does not identify any specific discovery that it wished to obtain, but now cannot, nor has it identified any particular witnesses that it was prevented from questioning. And MediaTek concedes that it attended the deposition of Dr. Brodersen, where it had ample opportunity to question him about the applicable prior art references that Freescale seeks leave to add to its invalidity contentions. (Id. at 9.)

Moreover, MediaTek made next to no effort to seek discovery related to Freescale's original invalidity contentions. It did not ask any of the dozen Freescale employees who were deposed in this case about prior art, nor did it pursue a deposition during fact discovery on Freescale's invalidity contentions, as it agreed with Freescale that the parties' respective experts would serve as 30(b)(6) designees on topics relating to invalidity contentions.

MediaTek's decision to forgo discovery related to Freescale's original invalidity contentions is particular significant with respect to Freescale's proposed amendment for the Dischler patent against the '331 patent. As Freescale's opening brief explains, Freescale's original invalidity contentions provide that the Dischler patent anticipates claim 35 and renders obvious claim 11 when combined with a second reference, which Freescale relied upon to satisfy a single limitation of claim 11. Freescale seeks leave to amend its contentions to identify portions of the Dischler patent that disclose that single limitation, such that the patent anticipates claim 11. MediaTek has known that Freescale contends that the Dischler patent invalidates the '331 patent since May 25, 2012, when Freescale served its original invalidity contentions that included a claim chart comparing the Dischler patent to claims 11 and 35. (Dkt. No. 163-5, Freescale's Invalidity Contentions (May 25, 2012), at 17, 20.) Yet MediaTek made no effort to seek discovery related to the Dischler patent at any point during discovery.

Likewise, MediaTek argues that it will suffer more "acute" prejudice because Freescale's proposed amendment includes prior art products as well as prior art patents and publications.

1  (Dkt. No. 163-3 at 17.)  But this argument ignores the fact that Freescale's original invalidity contentions include prior art Motorola systems for which MediaTek never pursued discovery. (See Dkt. No. 163-5, Freescale Invalidity Contentions, at 15 (identifying Motorola MC88410 Secondary Cache Controller as anticipatory prior art system to claim 2 of '753 patent); 16-17 (identifying Motorola MC68302 Integrated Multiprotocol Processor and MC6830 Quad Integrated Communications Controller as anticipatory prior art system for claims 2 and 3 of '244 patent).)  MediaTek's decision to forgo discovery of these prior art Motorola systems is particularly significant in that Freescale is a former Motorola division which spun off in 2004.  As such, MediaTek would not have even had to pursue third-party discovery of these prior art systems; it could have taken discovery about them from Freescale.  MediaTek nevertheless chose not to do so, suggesting that its prejudice argument is but a pretext.

### B. MediaTek Concedes That It Deferred Its Responsive Contentions on Invalidity Until Its Rebuttal Expert Report, Due September 27

MediaTek concedes that it did not provide a substantive response to Freescale's Interrogatory No. 24 — which seeks MediaTek's contentions, if any, that the patents in suit are valid — and that it deferred responsive validity contentions until its rebuttal expert report on validity, due September 27, 2013.  (Dkt. No. 163-3 at 17-18.)  MediaTek attempts to excuse this evasion by accusing Freescale of serving deficient invalidity contentions.  That accusation is unfounded, as Freescale's original invalidity contentions sufficiently disclosed its theories and provided claim charts for 38 prior art references or combinations of references upon which Freescale relies.  MediaTek has never before requested that Freescale provide more specificity in its contentions.

Furthermore, despite its claim to the contrary, MediaTek did not identify any purported flaws in Freescale's invalidity contentions in its objections or response to Freescale's Interrogatory No. 24.  Instead, MediaTek (1) asserted a raft of boilerplate objections, none of which identified any perceived problem with Freescale's invalidity contentions; (2) stated that discovery and its investigation of its claims and defenses are ongoing; (3) claimed that it lacked non-privileged, responsive information; (4) noted that patents are "presumed valid" under

35 U.S.C. § 282 and that Freescale bears the burden of proving invalidity; and (5) stated that, "[s]hould Freescale offer any expert opinions concerning the invalidity of the patents-in-suit, MediaTek will respond to those opinions by no later than the date set by the Court for the service of rebuttal expert opinions, pursuant to the Court's Joint Scheduling Report and Order (Dkt. No. 37)." (Dkt. No. 130-53, MediaTek's Objs. & Resps. to Freescale's 2d Set of Interrogs. (No. 24), at 6.)

MediaTek has affirmatively declined to respond to Freescale's invalidity contentions until it receives Freescale's initial expert report on invalidity. Accordingly, when Freescale provides that expert report on August 23, MediaTek's burden of responding to Freescale's <u>amended</u> invalidity contentions will be the same that it is for responding to Freescale's <u>original</u> invalidity contentions.

### C. Any Delay In Freescale's Amended Invalidity Contentions Is Attributable To MediaTek's Conduct, Not Freescale's

Finally, MediaTek's prejudice argument ignores the fact that it was MediaTek's amended infringement contentions that precipitated Freescale's renewed search for prior art and reexamination of its original invalidity contentions. MediaTek has never disputed that the Freescale products encompassed by MediaTek's amended infringement contentions — the i.MX6, MXC91131, MXC91321, and MXC91331 product families—were released before this action began, and the Court has observed that MediaTek received technical documentation for these products no later than December 4, 2012. (Dkt. No. 115 at 10-11.) But MediaTek waited until March 29, 2013 — nearly four months later — to move for leave to amend its contentions to accuse these products. (<u>Id.</u> at 11.) MediaTek's motion to amend was not decided until May 31, 2013, and MediaTek did not serve its amended infringement contentions until June 10, when less than six weeks remained in fact discovery. Under these circumstances, MediaTek can hardly complain about the timing of Freescale's proposed amendment.

### IV. CONCLUSION

For the foregoing reasons, Freescale requests that the Court grant Freescale leave to amend its invalidity contentions.

Dated: August 12, 2013        MORRISON & FOERSTER LLP

By: */s/ Joshua A. Hartman*
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
ALAN COPE JOHNSTON (CA SBN 66334)
ACJohnston@mofo.com
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792

ALEXANDER J. HADJIS (pro hac vice)
AHadjis@mofo.com
JOSHUA A. HARTMAN (pro hac vice)
JHartman@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Telephone: (202) 887-1500
Facsimile: (202) 887-0763

Attorneys for Defendant-Counterclaimant
FREESCALE SEMICONDUCTOR, INC.

**ATTESTATION OF E-FILED SIGNATURE**

I, Rudy Y. Kim, am the ECF User whose ID and password are being used to file FREESCALE'S OPPOSITION TO MEDIATEK INC.'S MOTION FOR ADMINISTRATIVE RELIEF TO EXTEND THE FACT DISCOVERY DEADLINE FOR THIRD-PARTY DISCOVERY FROM MOTOROLA MOBILITY LLC. In compliance with General Order 45, X.B., I hereby attest that Joshua H. Hartman has concurred in this filing.

Dated: August 12, 2013        */s/ Rudy Y. Kim*