IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIATEK, INC., <br><br> Plaintiff, <br><br> v. <br><br> FREESCALE SEMICONDUCTOR, INC., <br><br> Defendant. | Case No. 11-5341 YGR (JSC) <br><br> **ORDER RE: DISCOVERY DISPUTES (Dkt. Nos. 133, 138, 139, 141, 160, 180, 181, 183, 185, 188, and 198)** |

The Federal Circuit's Advisory Council's Model E-Discovery Order observes that "[p]atent cases, in particular, tend to suffer from disproportionately high discovery expenses." In an apparent recognition of this phenomenon, the parties to this patent infringement action took steps to rein in those expenses. The parties proposed, and the district court ordered, certain limits on discovery. Of relevance here, the parties agreed "to a limit of 175 hours of total deposition time for each side, with no more than 42 hours of that time consisting of 30(b)(6) testimony." (Dkt. No. 37 ¶ 8(b)(i).) They also agreed to a limit of 35 interrogatories per side. (*Id.* ¶ 8(b)(ii).) Finally, they stipulated to limits on e-discovery. (Dkt. No. 97.) In particular, they agreed to limits on email production, including that such production would be phased to occur after basic document production, that such

1    production would be limited to seven custodians per producing party, and that each
2    requesting party would "limit its email production requests to include no more than fifteen
3    (15) search terms per producing party for all such requests, with no more than seven (7)
4    search terms used to search the email of any one custodian." (*Id.* at ¶ 10.)
5       The parties' laudable efforts at controlling discovery costs have, unfortunately,
6    imploded.  On the last day to file fact discovery motions, *see* Civil L.R. 37-3, Plaintiff
7    MediaTek, Inc. ("MediaTek") filed 10 joint discovery letters seeking to compel additional
8    discovery from Defendant Freescale Semiconductor, Inc. ("Freescale").  (Dkt. Nos. 133, 139,
9    141, 160, 161-3, 180, 181, 183, 185 & 188.)   On this same day, Freescale filed a non-joint
10   letter seeking to "preserve its right to discover [] withheld documents."  (Dkt. No. 138.)
11   Nearly a month later, Freescale filed five additional motions.  As Freescale's motions
12   inexplicably did not comply with this Court's Standing Order regarding discovery disputes,
13   they were summarily denied.[1]  (Dkt. No. 196.)  After carefully considering the parties'
14   submissions as to MediaTek's motions, including the voluminous attachments, the Court
15   concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and rules as set forth
16   below.
17       **A.  <u>Deposition Disputes</u>**
18       MediaTek has filed five separate letter briefs relating to depositions.  (Dkt. Nos. 180,
19   181, 185, 188 & 198.)  The overarching issue is whether MediaTek has exceeded the parties'
20   agreed upon 42-hour limit for depositions conducted in accordance with Federal Rule of
21   Civil Procedure 30(b)(6), and if so, whether MediaTek has established good cause to exceed
22   the limit and take additional depositions.  (Dkt. No. 198.)  The parties have each offered
23   separate charts and theories for how the Rule 30(b)(6) deposition time should be calculated:

---

[1] Freescale's July 26, 2013 letter seeking to preserve its objection to MediaTek's lack of response to Request for the Production of Documents No. 92 (Dkt. No. 138) was inadvertently omitted from the Court's August 26, 2013 Order summarily denying Freescale's other similarly non-joint filings for failing to comply with the Court's Standing Order without explanation. The Court hereby corrects that oversight and DENIES Docket No. 138 for the reasons set forth in the Court's prior Order. (Dkt. No. 196).  MediaTek's opposition (Dkt. Nos. 206 & 207) filed August 28, 2013 is STRICKEN as filed several weeks too late.

MediaTek posits that it has only taken 36 hours of 30(b)(6) testimony and Freescale insists that it has provided over 50 hours of Rule 30(b)(6) testimony.

### 1. MediaTek has Exceeded the 42 Hour Limit

MediaTek served four separate Rule 30(b)(6) Notices with 156 topics, many with numerous subparts. Pursuant to the first two notices it took ten depositions: Joseph Circello, Lee Chastain, Andrew Percy, Nelda Currah, Ken Obuszewski, Glen Wienecke, Noam Efrati, Allen Wagner, Ron Lowman, and Nikolay Guenov. To calculate the amount of time MediaTek used for 30(b)(6) depositions, Freescale first determined the length of each deposition by taking the start time of the deposition and the finish time of the deposition as reflected by the time stamp on the deposition transcript or the statements on the record of the videographer/court reporter. From this amount of time Freescale deducted the time spent on breaks, again as reflected in the deposition transcripts. Finally, Freescale also excluded time spent on questions and answers which, according to Freescale, were not within the Rule 30(b)(6) designated topics, again relying on the transcript time stamps. (Dkt. No. 198-16 at ¶¶ 4-41.)

For four of the deponents, the transcripts reflect only the amount of time on the record, that is, when the deposition started, took a break, resumed, and completed. As a result, Freescale was unable to calculate the amount of time that should be excluded for questions and answers outside the scope of the 30(b)(6) topics. To account for this lack of information, Freescale determined that for the other six deponents in which time stamps throughout the deposition were available, the percentage of time on the record in which the deponent testified "on topic" ranged from 93% to 99%, for an average of 95%. Freescale then applied the 95% figure to the time on the record for the four other deponents to calculate the amount of time that should be excluded from the 30(b)(6) limit. Its calculations resulted in MediaTek expending nearly 51 hours of 30(b)(6) deposition time, eight plus hours more than allowed by the scheduling order.

MediaTek takes a more convoluted approach to calculating the time expended. First, it relies on the court reporter or videographer's statements as reflected on the transcripts to

determine the amount of time on the record, although it does not disclose what that amount of time is for each deponent. (Dkt. No. 198-3 at ¶ 3.) Second, it highlights the testimony it believes should not be counted toward the 42 hour time limit, although its assertion of what should be excluded is, unsurprisingly, much broader than Freescale's position. Third, it inexplicably asserts that time stamps on the deposition transcripts are only available for the Ken Obuszewski deposition transcript, although, as explained above, Freescale managed to obtain transcripts with time stamps for six of the ten deponents. Indeed, even the deposition transcript of Lee Chastain submitted by MediaTek includes recurring time stamps. (Dkt. No. 198-4.) In any event, because MediaTek believes that time stamps are not available MediaTek determined an "average lines per minute" value for each transcript (other than Obuszewski). MediaTek determined this value "for each transcript to calculate the total time in minutes that the witness was on the record, and then divided the total number of deposition transcript lines by the total time in minutes." (Dkt. No. 198-3 at ¶¶ 6-7.) For each transcript MediaTek then counted the number of transcript lines that it had identified as excludable from the calculation and applied the "average lines per minute" value to the number of lines to calculate the amount of time that should be excluded from the 30(b)(6) time limit. MediaTek calculates the amount of time expended at approximately 36 hours, leaving six hours for additional 30(b)(6) depositions.

The Court is unpersuaded by MediaTek's approach. First, when parties agree to time limits on depositions, it is incumbent upon the party taking a deposition to ensure that time is recorded on an ongoing basis. To do otherwise unnecessarily complicates the process and thwarts the purpose of time limits: to reduce discovery costs.

Second, it is also the responsibility of the party taking the deposition to make a contemporaneous record as to questioning that should be excluded from the time limits. By doing so each party is put on notice as to how its opponent is calculating the time and thus gives parties an opportunity to address how time should be calculated at the beginning of the process, rather than at the end. Because no such "objections" or "exclusions" were placed on the record during the depositions themselves, MediaTek finds itself having to go back and

review deposition transcripts to exclude time without having any agreement from or even discussion with Freescale as to what should be excluded.

Third, apart from MediaTek's inability to accurately determine how much time was expended on questioning that it believes should be excluded, the Court disagrees with many of its exclusions. For example, MediaTek has excluded pages of testimony regarding what it characterizes as "introductory and background information," but does not explain why such testimony is excludable. Such testimony would not be excludable from the seven hour time limit in Federal Rule of Civil Procedure 30 and the Court can discern no reason why it should be excluded here. When confronted with time limits, whether at deposition or at trial, parties have to make choices about what is most important. If background questions are not important enough to count against the time limits then they are not important enough to ask.

The Court does agree with MediaTek that testimony that was asked in a deponent's individual capacity should be excluded from the 30(b)(6) time limits, provided it is clear from the transcript in which capacity the deponent was asked to answer the question. Freescale, however, appears to have excluded such time from its calculations; indeed, it has excluded time even when, to the Court at least, it is not apparent that a question was asked in the deponent's personal capacity. The Court also agrees with MediaTek that extended colloquies between counsel about, for example, what the witness is prepared to testify about, should be excluded from the time limits. To hold otherwise would encourage the defending attorney to engage in lengthy comments and objections to run out the time. Again, however, the party taking the deposition needs to state on the record its belief that the colloquy should not count against the time limits. Nonetheless, even if the Court finds that Freescale's calculation overstates the appropriate time expended by as much as eight hours, MediaTek is already at its limit. Given the number and breadth of the topics in MediaTek's 30(b)(6) notices, this conclusion should not be unexpected.

### 2. MediaTek has not Established Good Cause to Modify the Scheduling Order

As the 42-hour limit for 30(b)(6) depositions is included in a scheduling order, MediaTek is entitled to additional time only if the Court finds good cause for such modification. *See* Fed. R. Civ. P. 16(b)(4); *see also* Fed. R. Civ. P. 16(b)(3)(ii)(vi) (stating that a Rule 16 scheduling order "may modify the extent of discovery" or "include other appropriate matters").[2] With respect to motions to modify scheduling order deadlines, courts hold that "[g]ood cause may be found to exist where the moving party shows that it diligently assisted the court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters that it could not have reasonably foreseen at the time of the issuance of the scheduling order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order." *Liberty Mut. Ins. Co. v. California Auto Assigned Risk Plan*, 2012 WL 3277213, at *3 (N.D. Cal. Aug. 9, 2012) (internal quotation marks and citation omitted). The dispute here involves time limits rather than a deadline, but the same principle applies: MediaTek must show that it is unable to comply with the 42-hour limitation and that it could not have reasonably foreseen at the time of issuance of the stipulated scheduling order that 42 hours would be insufficient. MediaTek has not made this showing.

First, MediaTek has not identified any post-scheduling order development that made the 42-hour limitation unworkable. To the contrary, although MediaTek took the position that it was entitled to discovery on products not specifically identified in its infringement contentions, prior to the initiation of the 30(b)(6) depositions the Court ruled that it was only entitled to discovery on those products named in the infringement contentions. (Dkt. No. 77 at 3:25-58.) Thus, the scope of MediaTek's permissible discovery actually narrowed after it stipulated to the 42-hour limit. The Court's allowance of amended infringement contentions to add additional accused products does not justify additional hours for the same reason: at

---

[2] The Court will treat MediaTek's request for additional time as a request to modify the scheduling order pursuant to Rule 16(b)(4) even though MediaTek did not style its request as such.

the time MediaTek agreed to the 42-hour limitation it believed (as later asserted during infringement contention motion practice) that it was entitled to discovery on all potentially infringing products, even those MediaTek had not identified.

Second, in a patent dispute the hours of potentially relevant 30(b)(6) deposition testimony is nearly endless. Thus, when a court imposes a limit on the number of 30(b)(6) hours a party necessarily has to choose which 30(b)(6) testimony is of the highest importance. Accordingly, a party cannot show good cause for additional time merely by establishing that the sought-after testimony is relevant. MediaTek, however, has done little more than show relevance. That MediaTek believes some designees were not adequately prepared to testify as to particular topics is of no moment. If such topics were significant then MediaTek should have ensured that it had reserved time for any further ordered depositions.

Third, as explained above, MediaTek appears to require additional time because it did not maintain reliable running records as to its time expended for 30(b)(6) testimony; indeed, it asserts that it only has detailed time records for one of the ten 30(b)(6) depositions. Diligence requires a party to ensure that accurate time records are available. A party cannot make informed decisions about what testimony is most important if the party does not maintain an on-going tally and confer with opposing counsel about that tally. *See Amarel v. Connel*, 102 F.3d 1494, 1514 (9th Cir. 1996) (noting that with time limits trial counsel "are responsible for case management and frequently must make strategic decisions to adjust for unforeseen delays").

Finally, Freescale will be prejudiced by allowing MediaTek additional time. The parties agreed on the 42-hour limit and Freescale made its own strategic decisions—whether about the cost of litigation or its own 30(b)(6) depositions—based on that limitation. Further, discovery has closed (indeed, MediaTek brought its motions on the last possible day), and any dispositive motions must be heard by October 29, 2013. (Dkt. No. 131.)

1    Accordingly, MediaTek's motions to compel additional 30(b)(6) testimony (Dkt. Nos.
2 180, 181, 185, 188 & 198) are DENIED on the ground that MediaTek has already exceeded
3 its 42 hour allotment and has not demonstrated good cause for additional time.

### B. Other Discovery Disputes

#### 1. Motion to Compel Response to Request for Production No. 53 (Dkt. No. 183)

MediaTek seeks to compel Freescale to produce sales invoices for the accused products responsive to Request for Production No. 53. MediaTek contends this discovery is directly relevant to the question of whether Freescale sold the accused products in the United States.

Freescale objects to producing these invoices on the grounds that 1) the invoices would be duplicative and cumulative of discovery previously provided through itemized spreadsheets from its accounting databases, and 2) the discovery is unduly burdensome. According to Freescale, the previously-produced spreadsheets provide information regarding Freescale's worldwide sales of each accused product, such as the date, net quality, net revenue, direct customer, end-customer (where known), country to which the product was shipped, the country where the sale occurred, and the locations where each product as tested, assembled, and fabricated. MediaTek counters that the sales invoices are necessary despite the production of the spreadsheets as the invoices would demonstrate five key categories of information: 1) who purchased the goods, 2) what was purchased, 3) how much was purchased and for how much, 4) where the purchaser of the goods is located, and 5) where title to the purchased goods transferred. The Court finds that productions of all invoices—as sought by MediaTek—is not warranted.

First, MediaTek's argument that it needs all of the invoices to discover the full name of the customer so that it can determine whether the customer is a parent or subsidiary is unconvincing. Why is whether a customer is a parent or subsidiary relevant? And, why does MediaTek need sales invoices for every single sale? A reasonable request would have been to ask Freescale to provide the full name of the customer if any particular spreadsheet entry was unclear. The record is devoid of any evidence of such a reasoned approach. In any

1  event, MediaTek has not explained why it needs the specific names of customers to prove its
2  case and it cannot use the names to obtain additional discovery as fact discovery is closed.
3       Second, the Court is similarly unpersuaded that there is any probative value
4  associated with the address where the product was shipped; by MediaTek's own admission
5  the relevant inquiry is whether Freescale sold the accused products in the United States and
6  the sample spreadsheet MediaTek attaches has columns for geographic information
7  including: "Ship to Country," "Test Site," and "Assembly Site."  MediaTek has not shown
8  why the specific address to which the product was shipped, as opposed to the country to
9  which the product was shipped, is necessary to determine whether the product was sold in
10 the United States.
11      Third, with respect to information regarding the date of sales, MediaTek does not
12 dispute that Freescale has provided quarterly sales information.  MediaTek has cited no
13 authority for the proposition that these quarterly figures are insufficient to calculate damages;
14 accordingly, unless Freescale intends to argue that these quarterly numbers are inadequate to
15 establish damages, MediaTek does not require information regarding the date of every sale
16 of every accused product.  Freescale is, of course, prohibited from arguing that MediaTek
17 inadequately established damages based on information that Freescale refused or otherwise
18 failed to produce during discovery.
19      Fourth, the Court finds MediaTek's argument that it needs the invoices to show where
20 title transferred and whether the customer purchased the product as a buyer or agent wholly
21 unfounded.  MediaTek has offered no basis to conclude that either of these two very specific
22 pieces of information would be found on an invoice. Nor has it shown why it matters for
23 every single invoice requested.  Again, if there is material information missing from an entry
24 on the spreadsheet then MediaTek should have asked Freescale to provide the specific piece
25 of missing information.  If Freescale refused, MediaTek might have a basis for a motion to
26 compel.  Insisting instead on the mass production of invoices is unreasonable.
27      Moreover, under Rule 26's proportionality analysis, the Court must weigh the burden
28 versus the benefit of the discovery sought. The Court must strike a balance between ensuring

1   that parties have access to relevant information regarding their claims and defenses, and the
2   burden on the producing party of providing the discovery sought.  While Freescale's
3   opposition lacks specifics regarding the burden imposed by MediaTek's request in terms of
4   time or cost, common sense suggests that the burden of combing through Freescale's
5   electronic and paper invoices at multiple locations for hundreds of products over a multi-year
6   period is considerable.  The Court thus finds pursuant to Rule 26's proportionality analysis
7   that the burden of producing "[a]ll purchase orders, purchase confirmations, and invoices
8   related to the sale of Freescale Accused Products by Freescale" outweighs the likelihood of
9   discovering additional relevant information given the extensive discovery Freescale has
10  already provided regarding sales data.

11  Accordingly, the motion to compel regarding Request for Production No. 53 (Dkt.
12  No. 183) is denied.

### 2. Motion to Compel Interrogatory Responses – subparts (Dkt. No. 160)

14  MediaTek seeks to compel responses to Interrogatory Nos. 25-35.  Federal Rule of
15  Civil Procedure 33(a)(1) limits the parties in any federal action to "no more than 25 written
16  interrogatories, including all discrete subparts."  The district court's scheduling order
17  adopted the parties' stipulated limit of 35 total interrogatories, 10 more than otherwise
18  provided by Federal Rules.  (Dkt. No. 37.)  Freescale has declined to respond to MediaTek's
19  propounded Interrogatory Nos. 25-35 on the ground that the interrogatories exceed the 35
20  allotted.  In particular, Freescale contends that Interrogatory Nos. 5-8 and 22 each comprise
21  multiple subparts because they each "introduce[] a line of inquiry that is separate and distinct
22  from the inquiry made by the portion of the interrogatory that precedes it" quoting from this
23  Court's prior Order in *Adobe Systems Inc. v. Wowza Media Systems, LLC*, No. 11-2243 CW
24  (JSC), 2012 U.S. Dist. LEXIS 103988, at *9 (N.D. Cal. July 25, 2012).

25  "Although the term 'discrete subparts' does not have a precise meaning, courts agree
26  generally that 'interrogatory subparts are to be counted as one interrogatory. . . if they are
27  logically or factually subsumed within and necessarily related to the primary question."
28  *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. Jan. 27, 2006); *see also*

1  *Chapman v. California Dept. of Educ.*, 2002 WL 32854376 *1 (N.D. Cal. Feb. 6, 2002)
2  (stating that although there is no "bright-line test" the weight of the authority adopts the
3  "logically or factually subsumed" test).[3]

4  The Court has reviewed the five interrogatories challenged by Freescale and finds that
5  interrogatory no. 22 should count as three interrogatories.  The interrogatory addresses three
6  separate subjects: (1) wafer processing, (2) die preparation, and (3) sale of the products.  In
7  light of the Court's ruling, Freescale must answer nine more interrogatories.  A few of
8  interrogatories 25 through 35, however, contain subparts that must be separately counted.
9  For example, interrogatory no. 28 alone should be counted as 20 interrogatories.
10 Accordingly, on or before September 18, 2013, Freescale shall respond to the next nine
11 interrogatories propounded: interrogatory nos. 25, 26, 27, and 28(a) through 28(e)(a).

12 If the parties wish to agree to a different nine interrogatories, such agreement must be
13 memorialized in writing by Friday, August 30, 2013.  The agreement need not be submitted
14 to the Court.

### 3. Motion to Compel Email – Search Terms (Dkt. No. 133)

16 MediaTek seeks to compel Freescale to produce responsive email.  MediaTek insists
17 that it has identified 15 email search terms, 7 Freescale custodians, and further identified the
18 7 search terms to be applied to each custodian's email as required by the stipulated ESI
19 Discovery Order.  Freescale objects to MediaTek's proposed search terms on numerous
20 grounds and has declined to run any searches.  To provide the parties guidance the Court
21 rules as follows.

22 The search terms which are variants of the word "United States," including
23 "domestic," are considered one search term.  The terms "*mcf* OR *mx* OR *mpc* OR
24 *ppc* OR *pcf* OR *sc*" are not variants of the same word; instead, each term applies to a
25 different accused product.  Accordingly, each is a separate search term.  The same is true for
26 *845* OR *331* etc.; each refers to a different patent, not a variant of the same word.  Thus,

---

27 [3] Freescale does *not* contend that each subpart involving a different accused product
28 constitutes a separate interrogatory for purposes of the 35 interrogatory limit.  *See Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004).

11

for example, MediaTek's first proposed search term (Dkt. No. 133-1 at 3) is actually six search terms.

Freescale's objections to other search terms as too broad are premature. Freescale has not run a test search on a single identified custodian for any of the proposed searches. If Freescale believes a search term is too broad, it should run a test search; it may very well be that the searches will not return a disproportionately burdensome number of hits. If they do return too many irrelevant documents, then MediaTek must work with Freescale to narrow its requests. The same prematurity applies to Freescale's objection to the date range.

Accordingly, on or before noon on Friday, August 30, 2013, MediaTek shall provide Freescale with amended search requests consistent with this Order. Before Freescale may object to a request as too broad, Freescale must run some test searches to validate its assertion that the request will return an unwarranted number of irrelevant documents. If Freescale does object to any of the requests, the parties—represented by lead trial counsel—must meet and confer in person. The process is designed to be collaborative, something that has not occurred up to this point. The in-person meet and confer must occur on or before September 9, 2013 at the offices of Freescale's counsel located in this District, unless the parties agree otherwise. The parties shall also agree on a production schedule. If the email issue is not fully resolved by September 16, 2013, lead trial counsel shall appear in person for a hearing before the Court at 9:00 a.m. on September 19, 2013. By 5:00 p.m. on September 17, 2013, the parties shall separately submit letters, not to exceed four pages, with the party's proposed searches for each custodian and the justification for the proposal. The letters may not include any proposal or justification that was not discussed at an in-person meet and confer session. The Court will adopt one party's proposal or the other. The Court hopes, however, that the parties can resolve the issue without further court intervention.

**4. Motion to Compel Source Code and Technical Documents (Dkt. No. 141-4)**

MediaTek alleges that Freescale's production of source code and technical documents for the newly accused i.MX6, MXC91131, MXC91331, and MXC91321 product families is deficient. This dispute, however, was not filed as a joint statement and there is no indication

1   that the parties met and conferred regarding this particular discovery dispute prior to filing as
2   required by this Court's Standing Order.  The emails attached to MediaTek's motion suggest
3   that MediaTek simply waited until the last minute.  The emails also demonstrate, however,
4   that Freescale agreed to make certain source code available.  To the extent it has not done so
5   as represented in the emails, it shall do so by August 30, 2013.  Accordingly, the motion to
6   compel (Dkt. No. 141-4) is DENIED except as stated.

7   Freescale's opposition filed August 27, 2013 (Dkt. Nos. 202 & 203) is STRICKEN as
8   filed several weeks too late.

### C. Motion to Extend the Fact Discovery Deadline for Third-Party Discovery from Motorola  (Dkt. No. 139)

MediaTek seeks leave to extend the fact discovery deadline to issue document and deposition subpoenas to non-party Motorola Mobility LLC.   To be entitled to such an extension, MediaTek must demonstrate good cause.  *See* Fed. R. Civ. P. 16(b)(4).  To determine whether good cause exists courts primarily consider the diligence of the party seeking the modification."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1294 (9th Cir. 2000).  "The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension.  If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic v. Southern California Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002) (internal citations and quotations omitted).

Here, Freescale does not dispute the relevance of the discovery MediaTek seeks from Motorola as Motorola is a primary customer of the newly accused products.  The critical question is whether MediaTek has diligently sought this discovery such that there is good cause to modify the scheduling order to allow it to do so after the close of fact discovery.

MediaTek's primary contention is that it did not have the information it needed to justify subpoenaing Motorola until Freescale produced the relevant discovery on July 2, 2013.  It was thereafter unable to serve the subpoenas by the July 19, 2013 fact discovery

cut-off because MediaTek's counsel required consent from Motorola's parent Google, and such consent was not obtained until July 20, 2013. Freescale responds that with its Motion for Leave to Amend its Infringement Contentions, MediaTek submitted a letter from counsel for Freescale to MediaTek dated March 1, 2013 which states that Motorola is one of two customers of the relevant products in the United States. (Dkt. No. 94-2 at 3.)

The Court finds that MediaTek has demonstrated the requisite good cause. While it was aware of Motorola's status as a Freescale customer as early as March 2013, the record reflects that it was not aware of the volume of Motorola's purchases of the accused products until Freescale produced the discovery on July 2, 2013. Third-party discovery should be discouraged rather than encouraged, especially when it involves discovery of an opponent's customer. A ruling to the effect that MediaTek should have served its subpoenas before knowing more details about Motorola's involvement would encourage parties to serve what might turn out to be needless third-party discovery. The Court declines to make such a ruling.

Accordingly, fact discovery with respect to Motorola only is extended to September 11, 2013. MediaTek may not use this extension as a justification for seeking an extension of any other case deadlines.

## CONCLUSION

This Order disposes of Docket Nos. 133, 138, 139, 141, 160, 180, 181, 183, 185, 188, and 198. The Clerk shall strike Docket Nos. 202, 203, 206 and 207.

The Court will hear argument on the parties' respective motions to amend contentions and Freescale's motion for reconsideration on Thursday, August 29, 2013 at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: August 28, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE