IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIATEK, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>FREESCALE SEMICONDUCTOR, INC.,<br><br>    Defendant. | Case No. 11-5341 YGR (JSC)<br><br>**ORDER RE: MEDIATEK'S SECOND MOTION FOR LEAVE TO FILE AMENDED INFRINGEMENT CONTENTIONS AND FREESCALE'S MOTION TO AMEND ITS INVALIDITY CONTENTIONS (Dkt. Nos. 128-4 & 130-4)**<br><br>PUBLIC VERSION |

    This patent infringement lawsuit is one of several patent proceedings between the parties. Plaintiff MediaTek, Inc. ("MediaTek") filed this suit against Defendant Freescale Semiconductor, Inc. ("Freescale") in November 2011. Fact discovery closed on July 19, 2013, and all dispositive motions, including *Daubert* motions, must be heard by October 29, 2013. Trial is scheduled to commence on February 10, 2014. Now pending before the Court is MediaTek's Second Motion for Leave to File Amended Infringement Contentions (Dkt. No. 128-4) and Freescale's Motion to Amend its Invalidity Contentions (Dkt. No. 130-4). Having considered the parties' submissions, and having had the benefit of oral argument on

August 29, 2013, the Court DENIES both parties' motions for failure to establish good cause for their proposed amendments.

## BACKGROUND

MediaTek alleges that Freescale, a designer, manufacturer, and retailer for hundreds of different types of special purchase semiconductors, infringes upon four of MediaTek's patents. In March 2012, MediaTek served its Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions" or "original Infringement Contentions") alleging infringement of four patents (the '845 Patent, the '331 Patent, the '753 Patent, and the '244 Patent) by nine Freescale product families. Freescale served its Invalidity Contentions on May 25, 2012.

Approximately one year later, on May 31, 2013, this Court granted MediaTek leave to amend its infringement contentions to add the i.MX6, MXC91131, MXC91331, and MXC91321 product families as accused products, but denied leave to add several other product families based on MediaTek's lack of diligence in seeking amendment. (Dkt. No. 115.) MediaTek served its Amended Infringement Contentions on June 10, 2013. The District Court issued its Claim Construction Order on July 16, 2013. (Dkt. No. 127.) Three days later, on the same day fact discovery closed, MediaTek filed its now-pending Motion to Amend Infringement Contentions, which was followed three days later by Freescale's Motion to Amend Invalidity Contentions. (Dkt. Nos. 128 & 130.)

## DISCUSSION

The Patent Rules are designed to "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *DCG Sys. v. Checkpoint Technologies, LLC*, No. 11-03792, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (internal citations and quotation omitted). Accordingly, the rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006). "Although federal courts are generally lenient in allowing parties to amend pleadings, such is not the case with amending preliminary infringement

contentions." *See Berger v. Rossignol Ski Co., Inc.*, No. 05-02522, 2006 WL 1095914, at *2 (N.D. Cal. Apr. 25, 2006) (internal citation omitted). Patent Local Rule 3-6 allows a party to amend its infringement or invalidity contentions only upon a showing of good cause:

> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:
>
> (a) A claim construction by the Court different from that proposed by the party seeking amendment;
>
> (b) Recent discovery of material, prior art despite earlier diligent search; and
>
> (c) Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Patent L.R. 3-6. The moving party has the burden of demonstrating good cause. *O2 Micro Int'l Ltd.*, 467 F.3d at 1366. The inquiry is two-fold: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted. *Barco N.V. v. Tech. Properties Ltd.*, No. 08-CV-05398, 2011 WL 3957390, at *1 (N.D. Cal. Sept. 7, 2011). Here, although each party filed its motion to amend within days of the district court's claim construction, neither party claims its amendments were necessitated by the Claim Construction Order.

### A. MediaTek's Motion to Amend

Northern District Patent Local Rule 3-1(g) provides that "[i]f a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own . . . product . . . practices the claimed invention, the party shall identify, separately for each asserted claim, each such . . . product . . . that incorporates or reflects that particular claim." MediaTek seeks leave to further amend its Infringement Contentions to identify its own MT8135 processor as practicing the invention claimed by the '753 and '845 Patents.[1] It does

---

[1] MediaTek also seeks to correct its June 10, 2013 Amended Infringement Contentions to add the i.MX6 product to the "Accused Instrumentalities" section. Freescale does not oppose the motion with respect to the iMX.6 product; accordingly, the motion shall be granted in that respect.

so to bolster its argument that the district court should issue a permanent injunction should MediaTek prevail on its '753 and '845 Patent claims. MediaTek insists that it could not have disclosed the product to Freescale any earlier than it did because REDACTED

REDACTED (Dkt. No. 149, 5:11-13.) REDACTED The first time MediaTek produced documents to Freescale referencing the processor was July 8, 2013, although it did so without alerting Freescale that MediaTek planned to move to amend its infringement contentions to add the MT8135 product.

MediaTek contends that it was unable to disclose the MT8135 processor to Freescale until July because REDACTED In support of this argument, MediaTek cites to the following:

- REDACTED

- REDACTED

- REDACTED
- REDACTED
- REDACTED

Of these justifications, the only one which could credibly excuse MediaTek's delay is the first; the critical question is not REDACTED

At oral argument the Court repeatedly asked MediaTek why it could not have disclosed the MT8135 to Freescale in March, given that REDACTED . MediaTek's response was that REDACTED

Although MediaTek contends that REDACTED

Absent evidence that REDACTED MediaTek has not identified any such evidence. Bare statements in a declaration that REDACTED

In contrast to MediaTek's lack of showing, the deposition testimony of M.N. Tsou establishes REDACTED (Tsou Dep. Tr. at 126-30.) REDACTED

[REDACTED] Thus, there is no good cause for MediaTek's failure to disclose the product until the eve of the close of fact discovery.

*Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-00630, 2012 WL 5632618, *2-3 (N.D. Cal. Nov. 15, 2012), relied up by MediaTek (Dkt. No. 128-4 at 11), is inapposite. There, Samsung was granted leave to amend its infringement contentions to add the iPhone 5 following Apple's release of the product, and Apple was likewise granted leave to add contentions against a newly-released Samsung product. The parties could not have amended their infringement contentions to add the new products until after their release because they needed to investigate the devices to determine whether they infringe. Here, in contrast, MediaTek developed the product itself and thus held all the cards regarding the new product. [REDACTED] Instead, MediaTek unilaterally decided to wait until the end of discovery to disclose its new product, even though [REDACTED] The Court cannot find such conduct diligent, especially since MediaTek was unable to articulate any credible reason why it could not have disclosed the product earlier. That Freescale would have wanted to initiate discovery about the product is not a credible reason.

The Court recognizes that once MediaTek did disclose its intention to rely upon the MT8135 it gave Freescale the opportunity to conduct discovery, although the parties dispute the sufficiency of the discovery. The Court is reluctant, however, to rule that a party can withhold disclosure of [REDACTED] until the eve of the end of discovery, and then be allowed to amend simply because it gave the opposing party the opportunity to conduct discovery in an expedited fashion. The purpose of the Patent Local Rules is to avoid placing the opposing party in that situation in the first place. This is particularly true here because the addition of the MT8135 processor would give rise to an entirely new basis for relief; that is, that MediaTek is entitled to an injunction because of the yet-to-be released MT8135. In *Apple*, in contrast, the Court noted in granting leave to amend that the proposed "amendment does not seek to add new claims or theories of infringement." *Id.* at *2.

Because MediaTek has not demonstrated good cause for failing to disclose its own product before the eve of the fact discovery cut off, MediaTek's motion to amend to add the MT8135 process is denied; however, MediaTek's unopposed motion to amend its June 10, 2013 Amended Infringement Contentions to add the i.MX6 product to the "Accused Instrumentalities" section is granted.

**B. Freescale's Motion to Amend**

Freescale seeks leave to amend its invalidity contentions to add the following new claims:

1) a new anticipation theory for Claims 11 and 35 of the '311 patent based on the AMD-K6TM-111E+ processors, as described in an AMD data sheet and white paper;

2) two new anticipation theories for Claims 11 and 35 of the '331 patent based on publication in IEEE journals by T. Burd and R. Brodersen;

3) a new anticipation theory for Claims 11 and 35 of the '311 patent based on the prototype allegedly built in R. Broderson's lab;

4) a new anticipation theory for Claim 11 of the '331 patent based on Dischler;

5) a new theory under 35 U.S.C. § 112, alleging lack of enablement and inadequate written description for Claims 11 and 35 of the '331 patent;

6) a new anticipation theory for Claim 2 of the '753 patent based on Patent No. 5809,261 to Lambrecht;

7) two new anticipation theories for Claims 2 and 3 of the '244 patent based on U.S. Patent Nos. 5,796,961 to O'Brien and 6,178,475; and

8) a new anticipation theory for Claims 2 and 3 of the '244 patent based on the AMD Diamondback processors, as described in two AMD specifications.

Freescale alleges that these amendments are proper in light of MediaTek's June 2013 amended infringement contentions. Freescale contends that MediaTek's amendments included a new infringement theory with respect to the '331 Patent; namely, that the controller claimed in claims 11 and 35 of the '331 Patent can be implemented in software as well as hardware. According to Freescale, the June 10 amendments were the first time

MediaTek disclosed an infringement theory predicated on implementation in either hardware and/or software as opposed to hardware only. Upon learning of MediaTek's "new" construction of controller, Freescale engaged in additional prior art searches which led to the proposed amendments. Freescale's diligence argument is thus built on the premise that it had no reason to believe that MediaTek would construe "controller" in claims 11 and 35 as being implemented in software and/or hardware. Since the premise fails, Freescale's motion fails.

Freescale relies on MediaTek's initial infringement contentions filed in March 2012 to support the reasonableness of its alleged belief that MediaTek was construing controller as limited to hardware. MediaTek mapped the controller in Claims 11 and 35 by identifying hardware:

> For instance, the MCIMX31 and MCIMX35 each include a CCM and/or DVFS load tracking block that control the system frequency, distributes clocks, and enables dynamic voltage frequency scaling.

(Dkt. No. 130-6, p. 4.) But MediaTek's contentions also went on to identify software:

- The Clock Control Module (CCM) "enables simple S/W [software] dynamic frequency scaling" (Dkt. No. 130-6, p. 6.)
- The Dynamic Voltage Frequency Scaling (DVFS) "load tracking block enables hardware tracking on the MCU load and a generation of an interrupt when a frequency change is requested." (*Id.*)
- The flowchart for the implementation of the i.MX31 and i.MX35 product's implementation of DVFS shows decisions made in software. (*Id.* at 7.)
- With respect to the i.MX50 product, references to operations performed by the ARM core processor which are software operations. (*Id.* at 16.)

Freescale discounts these portions of the claim charts as merely quoting from publicly available reference manuals for Freescale's products which fail to make clear that MediaTek is claiming implementation in both software and hardware. However, the June 2013 amended infringement contention also quoted from technical manuals. (Dkt. No. 171, 7:10-13.) Freescale does not—and indeed cannot—explain why a quotation from one of its technical manuals puts it on notice of a new infringement theory now, but failed to do so in MediaTek's original infringement contentions.

Moreover, Freescale concedes that the language of claims 11 and 35 does not limit controller to hardware only. And the specification of the '331 Patent discloses that the controller can be implemented in hardware or software or some combination thereof as evidenced by the following language:

> It should be appreciated that a controller (e.g., dynamic power controller 100) may be implemented in numerous ways, such as with dedicated hardware (e.g., various circuitry, preprogrammed logic arrays, finite state machines (FSMs), etc.), or using one or more processors that are programmed using software (e.g., microcode) to perform the various functions of the controller. It also should be appreciated that implementations of a controller according to various embodiments of the present invention may include hardware, firmware, and software oriented elements.

(Dkt. No. 130-7, '331 Patent, 8:51-60.) Freescale suggests that this specification language is qualified or limited by language elsewhere in the intrinsic record; namely, in the provisional patent application which is incorporated into the '331 Patent by reference. The overview of the invention in the provisional patent application includes the following language "[t]he invention provides a relatively simple mechanism for software to specify a the [sic] minimum required frequency, such that hardware then sets the clock to that frequency, and automatically adjusts the voltage to the minimum value required to support that clock frequency." (Dkt. No. 130-10, p. 28.)

In the end, then, Freescale is left with claims that by their plain language do not limit controller to hardware, a specification which is, at best, ambiguous, and infringement contentions accusing products with controllers implemented, at least in part, by software and referring, however, obliquely, to such software. In other words, at the time Freescale served its original invalidity contentions there was at least a question as to whether MediaTek was construing controller as limited to hardware only. The question of the construction of controller is important because if MediaTek was so construing controller, the accused products do not infringe. Yet, despite the dispositive importance of the meaning of controller, Freescale did not ask the district court to construe controller; nor is there anything in the record that suggests it met and conferred with MediaTek as to whether MediaTek was

9

actually limiting its contentions to hardware only. The Court finds it difficult to accept that Freescale sincerely believed that MediaTek was construing controller in such a way as to clearly defeat MediaTek's claims, yet remained silent and did not ask the district court for the claim-ending construction.

Even apart from the implausibility of Freescale's claimed ignorance of MediaTek's construction of controller as including implementation in software, a claim may be invalid notwithstanding the patent owner's interpretation of the claim. In other words, a diligent patent infringement defendant searches for prior art that invalidates a patent based on a reasonable construction, not just the opponent's construction. Freescale has not demonstrated that construing controller as implemented in hardware and software is wholly unreasonable. In other words, the construction Freescale asserts it believed was undisputed was not so clear as to excuse Freescale from conducting prior art searches based on other possible constructions.

Moreover, Freescale's own Invalidity Contentions belie its insistence that before MediaTek's amended contentions it had no reason to believe that the controller could be implemented in either software or hardware. As Freescale conceded at oral argument, those contentions identify prior art as relevant to claims 11 and 35 of the '331 which describe controllers implemented by hardware and software—precisely the kind of prior art it seeks to now add. (Dkt. No. 163-5, Chart C-1, pp. 2-3 (Patent No. 5,825,674 ("Jackson"); *id.* at Chart C-2, p. 11( No. 7,100,061 ("Halepete"); *see also id.* at Chart C-6, p. 38; Chart C-7, p. 44; Chart C-12, p. 84. That Freescale included prior art which uses software to adjust the frequency and voltage certainly suggests that it understood that the controller could be implemented in either hardware or software or some combination thereof. Freescale's oral argument explanation that it found the previously-disclosed prior art as byproducts of other searches is unpersuasive. There was no reason for Freescale to *identify* prior art with controllers implemented in software and hardware as invalidating claims 11 and 35 unless Freescale believed that claims 11 and 35 might be construed as covering controllers implemented in hardware and software.

Finally, Freescale does not deny that at the time it conducted the prior art discovery it claims was necessitated by MediaTek's amended contentions, it was conducting other third party prior art discovery that has nothing to do with claims 11 and 35 of the '331. Indeed, its motion includes unrelated proposed amendments. This conduct suggests that the new prior art was discovered because of searches which Freescale simply chose to delay, not because it had no reason to conduct the searches earlier.

In light of the above, the Court finds that Freescale has not been diligent in moving to amend its infringement contentions. That nearly a year after its initial Invalidity Contentions, and on the eve of the close of fact discovery, it chose to engage in a more "focused" prior art search does not satisfy the diligence requirement. Freescale chose not to do a more comprehensive prior art search earlier in the case. While the Court could perhaps nonetheless exercise its discretion to allow the amendments, it declines to do so here. Freescale's amendments are precisely the type of last minute additions the Patent Local Rules were designed to avoid. Given the passing of the fact discovery deadline, and the upcoming summary judgment deadline, the Court is unpersuaded that MediaTek will suffer no prejudice. *See, e.g., CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 202 (N.D. Cal. 2009) (denying leave to amend to add prior art references following the close of fact discovery).

## CONCLUSION

"The local patent rules in the Northern District of California ... requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed.Cir.2006). The parties' eleventh hour requests to amend their infringement/invalidity contentions at or following the close of fact discovery fail to comply with the patent local

rules which specifically "require parties to crystallize their theories of the case early in the litigation" so as to "prevent the 'shifting sands' approach to claim construction." *Id.* at 1364.

Accordingly, MediaTek's motion to amend its infringement contentions (Dkt. No. 128-4) is DENIED for lack of good cause as to the MT8135 processor, but MediaTek is GRANTED leave to add the i.MX6 product to the "Accused Instrumentalities" section. Freescale's motion for leave to amend it invalidity contentions (Dkt. No. 130-4) is DENIED for lack of good cause.

The Court has filed this Order under seal given that it relies in part on evidence that has been filed under seal with respect to MediaTek's motion to amend its infringement contentions. Within one week of the filing of this Order, the parties shall submit a joint stipulation attaching a proposed redacted version of the Order which will be publicly filed.

**IT IS SO ORDERED.**

Dated: September 4, 2013

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE