United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIATEK INC., | Case No. 4:11-cv-05341 YGR (JSC) |
|       Plaintiff, | **ORDER GRANTING FREESCALE SEMICONDUCTOR, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
|       v. | |
| FREESCALE SEMICONDUCTOR, INC., | |
|       Defendant. | |

Now pending before the Court is the motion of Defendant Freescale Semiconductor, Inc. ("Freescale") to compel production of technical documents relating to the acquisition of U.S. Patent No. 6,088,753 ("the '753 patent"). Plaintiff MediaTek, Inc. ("MediaTek") has withheld production of four documents on the grounds of attorney-client privilege: (1) the final report on various patents and analysis on ARM Processors Bus Architecture created by a third-party technical consultant, (2) a May 20, 2009 draft of the report, (3) a May 21, 2009 draft of the report, and (4) the confidentiality agreement entered into by MediaTek and the third-party consultant. After carefully considering the parties' submissions, the Court finds that MediaTek has not met its burden of showing that the documents are protected by the attorney-client privilege.

1

## FACTUAL AND PROCEDURAL BACKGROND

2

3

4

5

6

7

8

Freescale seeks to compel production of documents related to MediaTek's acquisition of the '753 patent.  In particular, it seeks technical documents provided to MediaTek by a third-party consultant purportedly retained by MediaTek's General Counsel, Wei-Fu Hsu, which MediaTek withheld on the grounds of attorney-client privilege.  Because the Court could not evaluate the privilege claim without reviewing the documents *in camera*, it ordered MediaTek to file a privilege log and submit copies of the withheld documents for *in camera* review.  (Dkt. No. 267 at 3.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MediaTek subsequently submitted a privilege log and produced the documents to the Court for *in camera* review.  (Dkt. No. 279 at 1.)  The privilege log identifies four withheld documents: a final report and two drafts from a third-party consultant "concerning patents," and a confidentiality agreement between the third-party consultant and MediaTek.  MediaTek relies on the Declaration of Richard Yang (the "Yang Declaration"), the Deputy Manager of MediaTek's Intellectual Property Division, to support its privilege claim.  Mr. Yang was involved in MediaTek's acquisition of certain patents, including the '753 patent, from Vitesse Semiconductor ("Vitesse") in 2009.  (Dkt. No. 279 at 2; Dkt. No. 274-2 at ¶ 3.)  Mr. Yang attests that at Mr. Hsu's request, he acted as a point of contact with Vitesse's patent broker and participated in evaluating Vitesse's patents in advance of purchase.  (Dkt. No. 274-2 at ¶ 3.)  At Mr. Hsu's direction, Mr. Yang retained a third-party consultant to provide a technical report which was necessary to "enable the legal team to render legal advice to MediaTek in connection with its acquisition of the Vitesse patents."  (*Id.* at ¶¶ 4, 5.)  The legal team's evaluation of the patents, supported by the third-party consultant, was purportedly performed on a confidential basis "in anticipation of seeking to license the patents and the potential (if necessary) to enforce the patents through litigation against infringers."  (*Id.* at ¶ 5.)

25

## LEGAL STANDARD

26

27

28

The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice, as well as an attorney's advice in response to such disclosures.  *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981).  The privilege exists "to encourage the full and

United States District Court
Northern District of California

United States District Court
Northern District of California

1   frank communication between attorneys and their clients and thereby promote broader public

2   interests in the observance of law and the administration of justice." *Id.*

3        The privilege, however, is limited to those disclosures "necessary to obtain informed

4   legal advice which might not have been made absent the privilege." *Upjohn*, 449 U.S. at 389.

5   For the privilege to apply, the asserting party must show that the communications adhere to

6   the essential elements of the attorney-client privilege: "(1) [w]here legal advice of any kind is

7   sought (2) from a professional legal adviser in his capacity as such, (3) the communications

8   relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance

9   permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the

10  protection be waived." *In re CV Therapeutics, Inc. Sec. Litig.*, No. 03-3709, 2006 WL

11  1699536, *1 (N.D. Cal. June 16, 2006) *as clarified on reconsideration*, No. 03-3709, 2006

12  WL 2585038 (N.D. Cal. Aug. 30, 2006) (citations omitted).  Each of these elements must be

13  satisfied document by document by the privilege log and supporting declarations. *Id.*

## DISCUSSION

15       As the party asserting the privilege, MediaTek has the burden of proving that the

16  documents submitted for *in camera* review are indeed privileged.  To establish the attorney-

17  client privilege, MediaTek has provided, in addition to the Yang declaration, a privilege log

18  identifying, for the most part, the date each document was created, the document's current

19  location, the identity and position of each author and recipient, and the subject or description

20  of the document.  The privilege log identifies a third-party consultant as the author of the

21  report and drafts of the report and identifies employees of MediaTek's Intellectual Property

22  Division as recipients.[1]  No attorneys are identified as recipients.

23       MediaTek contends that the communications from the third-party consultant to its

24  employees were required for MediaTek's lawyers to render legal advice.  Freescale, on the

25  other hand, contends that the documents serve merely a business purpose, that is, they were

26

27  ─────────────
[1] More specifically, the recipients were Richard Yang, the Deputy Manager of MediaTek's
    Intellectual Property Division, Jason Chiu, the Director of MediaTek's Intellectual Property

28  Division, and Jonathan Liou and SY Huang, both of whom are engineers in MediaTek's
    Intellectual Property Division.

1    created to assist MediaTek in deciding whether to purchase the patents and are therefore not

2    privileged.

3    **A**.        **What Legal Standard Applies**

4              Although not addressed by the parties, the first question the Court must answer is what

5    legal standard applies to its review of the withheld documents.  For the attorney-client

6    privilege to apply, MediaTek's communications with the third-party consultant must be

7    related to MediaTek's receipt of legal advice from its lawyers.  This factor gives rise to the

8    corollary rule that the attorney-client privilege does not protect business communications and

9    advice.  The documents at issue here were indisputably related to a business purpose—

10   whether to purchase the patents—but, according to MediaTek, also served a legal purpose;

11   that is, they were created to assist MediaTek's lawyers in giving MediaTek legal advice about

12   the patents.  Thus, the question is whether the privilege applies to so-called "dual purpose"

13   communications, documents which serve both legal and business purposes.  Although courts

14   occasionally state that the client's communications to the attorney must be "solely" for the

15   purpose of seeking legal advice for the privilege to apply, there is general agreement that the

16   privilege applies where the *primary or predominant purpose* of the attorney-client

17   consultation is to seek legal advice or assistance.  *N. Pacifica, LLC v. City of Pacifica*, 274

18   F.Supp.2d 1118, 1127 (N.D. Cal. 2003) (internal citations omitted) (emphasis added).

19             A variation of the "primary purpose" test has been employed by the Ninth Circuit

20   relative to the application of the attorney work product doctrine.  *See In re Grand Jury*

21   *Subpoena (Mark Torf/Torf Envtl. Mgmt.)* ("*Torf*"), 357 F.3d 900, 907-09 (9th Cir. 2004).  In

22   *Torf,* the Ninth Circuit held that a document should be "deemed prepared 'in anticipation of

23   litigation' and thus eligible for work product protection under Rule 26(b)(3) if 'in light of the

24   nature of the document and the factual situation in the particular case, the document can be

25   fairly said to have been prepared or obtained because of the prospect of litigation."  *Id.* at 907

26   (citation omitted).  In *In re CV Therapeutics*, the court applied the "because of" standard in

27   the attorney-client privilege context because, even though *Torf* involved the work product

28   doctrine, "parallel issues arise in both contexts where dual purpose documents are involved."

United States District Court
Northern District of California

4

1   *In re CV Therapeutics*, 2006 WL 1699536 at \*4.  Under the "because of" standard, "the

2   proponent of the privilege must prove that the document was created because of the purpose

3   of obtaining legal advice and that it would not have been created in substantially similar form

4   but for that purpose."  *In re CV Therapeutics*, 2006 WL 2585038 at \*3 (internal quotation

5   marks and citation omitted).  "[T]he Court must consider the 'totality of the circumstances,'

6   looking to the nature of the document and the factual situation of the particular case."  *In re*

7   *CV Therapeutics*, 2006 WL 1699536 at \*4; *see also Visa U.S.A., Inc. v. First Data Corp.*, No.

8   02-1786, 2004 WL 1878209, \*4 (N.D. Cal. Aug. 23, 2004) (adopting the more protective

9   "because of" test rather than the "primary purpose" test for application of the attorney-client

10  privilege to dual purpose documents); *but see Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 628-

11  29 (D. Nev. 2013) (refusing to supplant the "primary purpose" test with the "because of" test

12  because the Ninth Circuit has not expressly ruled on which test controls in the attorney-client

13  privilege context and other judges in its district had retained the "primary purpose" test).  *Id.*

14  The Court need not decide, however, which of the two related tests to apply because, as is

15  explained below, under either test MediaTek has not shown that the documents at issue are

16  covered by the attorney-client privilege.

17  **B.      The Withheld Documents**

18          To ascertain if the four requested documents are protected by the attorney-client

19  privilege, the Court conducted an *in camera* review.  Upon review of the totality of the

20  circumstances, the Court finds that none of the documents is privileged.

21          **1.      The Third-Party Reports**

22          Privilege Log Entry Number One is the final report prepared on May 27, 2009

23  regarding various patents and an analysis on ARM Processors Bus Architecture.  Privilege

24  Log Entry Numbers Two and Three are earlier drafts of the report, created on May 20 and 21,

25  2009, respectively.  According to MediaTek, the reports were created at the request of

26  MediaTek's general counsel for the purpose of facilitating the rendering of legal advice in

27  connection with its acquisition of the Vitesse patents.  MediaTek also asserts that the report

28  was prepared and supplied to MediaTek's Intellectual Property Division on a confidential

United States District Court
Northern District of California

United States District Court
Northern District of California

1  basis "in anticipation of seeking to license the [Vitesse] patents and the potential (if necessary)

2  to enforce the patents through litigation against infringers."  (Dkt. No. 274-2 at ¶ 3.)

3       In certain circumstances, courts have extended the attorney-client privilege to the

4  substantive advice and technical assistance of agents of the attorney.  *Visa*, 2004 WL 1878209

5  at \*4.  For example, in the corporate context, communications between an outside consultant

6  and a company's corporate counsel may fall within the scope of the entity's attorney-client

7  privilege where the consultant acts as a "functional employee" to the company by providing

8  information which facilitates the obtaining of legal advice.  *Genentech, Inc. v. Trustees of the*

9  *University of Pennsylvania*, No. 10-2037, 2011 WL 5079531, \*2 (N.D. Cal. Oct. 24, 2011);

10  *see also In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir. 1994) (finding it inappropriate to

11  distinguish between those on the client's payroll and those who are instead, and for whatever

12  reason, employed as independent contractors); *see also United States v. Graf,* 610 F.3d 1148,

13  1159 (9th Cir. 2010) (adopting *Bieter* and concluding that an outside consultant's role in the

14  company was that of a functional employee, thus implicating the attorney-client privilege).

15  Thus, "[i]f the third-party consultant is involved in the giving of legal advice, the privilege

16  obtains."  *In re CV Therapeutics*, 2006 WL 1699536 at \*7.  However, if the third-party

17  consultant is retained by the client for non-legal purposes, the privilege does not apply.  *Id.*

18  What is vital to the privilege is that the consultant was retained "for the purpose of obtaining

19  legal advice."  *Id.* at \*6 (internal quotation marks and citation omitted).

20       For purposes of this Order, the Court will assume that the third-party consultant

21  qualifies as an "agent of the attorney" or a "functional employee."  But even assuming the

22  third-party consultant is an "agent" or "functional employee" of MediaTek for purposes of the

23  privilege, MediaTek has not carried its burden of demonstrating that the documents are

24  privileged, that is, that they were created primarily or predominantly to facilitate legal advice,

25  *see N. Pacifica LLC,* 274 F.Supp.2d at 1127, or because of the purpose of obtaining legal

26  advice and would not have been created otherwise.  *See In re CV Therapeutics*, 2006 WL

27  2585038 at \*3.

28

1      First, there is no evidence that MediaTek's counsel ever received or reviewed the

2   reports.  According to MediaTek's own privilege log, the reports were not sent to counsel;

3   rather, they were distributed only to Mr. Yang and MediaTek's Intellectual Property Division.

4   *See Visa*, 2004 WL 1878209 at *8 (finding that the independent business purpose of withheld

5   documents was underscored by the fact that the final version of the third-party analysis

6   ultimately went to the board of directors and not attorneys); *LightGuard Sys. Inc. v. Spot*

7   *Devises, Inc.*, 281 F.R.D. 593, 600 (D. Nev. 2012) (finding documents were not created

8   primarily for a legal purpose where, among other factors, there was no evidence that the

9   document was ever sent to an attorney).  In *AT&T v. Microsoft Corp.*, No. 02-0164, 2003 WL

10  21212614 (N.D. Cal. Apr. 18, 2003), for example, the court held technical documents were

11  privileged where they were shown to and relied upon by legal counsel.  *Id.* at *3-4.  Here, in

12  contrast, there is no evidence that MediaTek's general counsel or any attorney had possession

13  of the report, reviewed it, or relied upon it.  In addition, although there are multiples drafts of

14  the report, there is no evidence that counsel reviewed any of the drafts.

15      Mr. Yang's conclusory testimony that the "report was necessary to enable MediaTek's

16  attorneys to render effective legal advice" and that the legal team—"supported by" the third-

17  party consultant—evaluated the patents, is insufficient given that the privilege log

18  demonstrates that the report was never disseminated to counsel.  In *LightGuard Sys.*, for

19  example, the court concluded that the document at issue originated in the regular course of

20  business because, other than the naked allegation that it was created for a legal purpose, the

21  asserting party failed to provide any evidence that the document was ever sent to an attorney.

22  *LightGuard Sys.*, 281 F.R.D. at 600.  Moreover, that the report was requested by MediaTek's

23  general counsel does not establish that the report was created primarily to facilitate legal

24  advice or because of the need for legal advice.  *See Visa*, 2004 WL 1878209 at *10 (courts

25  have not been willing to presume that services provided to general counsel were of a legal, as

26  opposed to a business, nature because general counsel are often extensively involved in

27  business matters) (internal citations omitted).  And, again, there is no evidence that Mr. Hsu

28  ever reviewed any version of the report.

United States District Court
Northern District of California

United States District Court

Northern District of California

1    Second, the context in which the report was prepared and the language found in the

2  report itself do not support a finding that the report was prepared because of a need for legal

3  advice or primarily to facilitate legal advice.  The report was commissioned in the context of

4  MediaTek's decision as to whether to purchase certain patents, a business purpose.  That such

5  a decision always involves legal as well as business considerations, and that such

6  considerations are intertwined, does not mean that every document prepared to assist with that

7  decision is protected by the attorney-client privilege, especially where, as here, there is no

8  evidence that the report was shared with counsel.  In *In re Spalding Sports Worldwide, Inc.*,

9  203 F.3d 800 (Fed. Cir. 2000), for example, the Federal Circuit held that the invention record

10 was protected by the attorney-client privilege because the record was submitted by the

11 inventors to the legal department and there was evidence that the legal department actually

12 relied on the record to evaluate patentability.  *Id.* at 805.  Here, in contrast, the Court does not

13 find that the report was actually reviewed by legal counsel in light of the failure of the

14 privilege log to identify even one attorney as a recipient.

15     There is also nothing in the language of the report, or any of the drafts, which even

16 hints that it is intended to be relied upon by counsel to render legal advice.  Instead, it is a

17 brief, technical document prepared by non-attorneys that identifies key claim elements of the

18 patents under consideration and identifies additional areas for research.  *See LightGuard Sys.*,

19 281 F.R.D. at 600 (concluding that the context in which the memo was prepared indicates that

20 it is not privileged because of the absence of language suggesting it was created for litigation

21 and the absence of extrinsic evidence that it was ever sent to an attorney).

22     The confidentiality agreement between MediaTek and the third-party consultant further

23 suggests that the report was not made because of, or at least primarily because of, a legal

24 purpose.  If MediaTek intended for the reports to be privileged attorney-client

25 communications, the confidentiality agreement would likely reflect such, or, at a minimum,

26 make some reference to the purportedly privileged purpose of the report.  The confidentiality

27 agreement, however, fails to even mention that the work performed by the consultant is being

28 done primarily to assist counsel.

8

United States District Court

Northern District of California

1         In sum, MediaTek does not point to any specific evidence—as opposed to conclusory

2   statements—that support a finding that the reports were prepared primarily to assist with

3   MediaTek's receipt of legal advice as opposed to a business decision as to whether to

4   purchase the patents.  Because the attorney-client privilege "impedes full and free discovery

5   of the truth," and is therefore "strictly construed," *Weil v. Investment/Indicators, Research &*

6   *Management,* 647 F.2d 18, 24 (9th Cir. 1981), the Court finds that MediaTek has failed to

7   meet its burden to establish that the reports are protected by the attorney-client privilege.

8         **2.   Confidentiality Agreement**

9         Privilege Log Entry Number Four is a confidentiality agreement entered into between

10   the third-party consultant and MediaTek, signed by Mr. Hsu on MediaTek's behalf.

11   MediaTek contends that the agreement is privileged because it was executed to maintain strict

12   confidentiality over the consulting work, which was necessary to facilitate the rendering of

13   legal advice to MediaTek.  Since the Court concludes above that the report was not prepared

14   primarily to facilitate legal advice it follows that the confidentiality agreement is not

15   privileged.  Even if the technical report was privileged, however, the confidentiality

16   agreement does not involve any legal advice or request for legal advice.  *See In re CV*

17   *Therapeutics, Inc.*, 2006 WL 1699536 at *4.  The purpose of the confidentiality agreement is

18   to control the dissemination of sensitive technological information during a venture between

19   two parties.  The attorney-client privilege does not protect procedures used to secure the

20   rendering of legal advice; it protects the substance of confidential communications of legal

21   advice or requests between the client and attorney.  The result does not change merely because

22   Mr. Hsu signed the confidentiality agreement on behalf of MediaTek—the "mere fact that a

23   document was sent to an attorney does not make it a privileged communication."  *In re CV*

24   *Therapeutics*, 2007 WL 16995536 at *4; *see also Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D.

25   44, 47 (N.D. Cal. 1971) ("corporate dealings are not made confidential merely by funneling

26   them routinely through an attorney").  This communication is not "soliciting or providing

27   legal advice" and thus is not privileged.  *In re CV Therapeutics*, 2007 WL 16995536 at *6.

28

9

**CONCLUSION**

MediaTek has failed to establish that the four documents at issue are protected by the attorney-client privilege.  As that is the only explanation proffered by MediaTek to support its non-production, MediaTek must produce the four requested documents to Freescale within one week of the date of this Order.  That the documents are not privileged, however, does not mean they are not confidential.  Accordingly, the documents may be produced subject to the protective order provided MediaTek believes such protection is warranted.

This Order disposes of Docket No. 249.

**IT IS SO ORDERED.**

Dated: October 10, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

10