**MORRISON | FOERSTER**

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

October 15, 2013

Writer's Direct Contact
202.887.1560
AHadjis@mofo.com

**VIA ECF FILING**
The Honorable Yvonne Gonzalez-Rogers
U.S. District Judge for the Northern District of California
Oakland Division
450 Golden Gate Ave.
San Francisco, CA 94102

Re:   MediaTek Inc. v. Freescale Semiconductor, Inc., No. 4:11-cv-05341 (YGR) (JSC)

Dear Judge Gonzalez Rogers:

Pursuant to the Court's Civil Standing Order and the Court's instructions at the Case Management Conference, Freescale submits this letter to identify and outline the summary judgment motions it seeks leave to file. Freescale requests a pre-filing conference below.

**I.     THE '331 PATENT**

   **A.     Claim 11 is Not Infringed**

Freescale's accused products do not infringe claim 11 of the '331 patent as a matter of law for at least two reasons. Claim 11 recites "a plurality of registers, the plurality of registers storing information indicating the clock frequency requirement of the processor." MediaTek contends that two bits found in a single register satisfy this set of limitations in Freescale's accused products.

First, the single register identified by MediaTek is not a "plurality of registers." It is, instead, a single, two-bit wide register that holds data that specifies whether a processor's load (i.e., the amount it is running as opposed to being idle within a set period of time) is above, below, or within a pre-defined window.

Second, the two-bit wide register identified by MediaTek does not store information indicative of the clock frequency requirement of the processor. Instead, the register stores information that reflects how hard the processor has been working relative to a load window.

   **B.     Claim 35 is Not Infringed by the I.MX31, I.MX35, and I.MX50 Products**

Freescale's accused i.MX31, i.MX35, and i.MX50 products do not meet the "power supply" limitation in claim 35 of the '331 patent. Claim 35 requires that the accused device itself

MORRISON | FOERSTER

October 15, 2013
Page Two

contain a power supply that provides a variable-level voltage to the processor. MediaTek contends that a separate power management chip known as a "PMIC," satisfies this limitation. The accused i.MX31, i.MX35, and i.MX50 processors themselves, however, do not include a PMIC. Thus, they do not meet the "power supply" limitation of claim 35, and do not infringe.

## II.     THE '845 PATENT

### A.     Claims 1, 2, and 5 are Not Infringed

Freescale's accused i.MX6 products do not meet the "first arbitration unit . . . configured and arranged to arbitrate among at least the first data processing subsystem, the second data processing subsystem, and the DMA subsystem" limitation of claims 1, 2, and 5 of the '845 patent. For the i.MX6DQ and i.MX6SDL products, MediaTek contends that the ARM core processor and Image Processing Unit (IPU-1 and/or IPU-2, collectively, IPU) serve as the two requesting data processing subsystems. For the i.MX6SL, MediaTek contends that the ARM core and the GC320 component serve as the two requesting data processing systems and the SDMA serves as the requesting DMA subsystem. MediaTek, however, cannot show that requests from the two requesting data processing subsystems of either product are arbitrated by the accused "first arbitration unit."

### B.     Claims 21, 22, and 25 are Not Infringed

Freescale's accused i.MX51 and i.MX53 products do not meet the "same priority level" limitations of claims 21, 22, and 25 of the '845 patent. That set of limitations, requires an arbitration scheme that grants access to a greater portion of the available bandwidth of a particular slave subsystem to one of two requesting data processing subsystems when all requests for access to that slave subsystem are of the same priority level.

MediaTek contends that the ARM core processor and Image Processing Unit (IPU) serve as the two requesting data processing subsystems and the ESDCTL module serves as the slave subsystem. MediaTek, however, cannot show that the two ARM core and IPU processing subsystems requesting access to the ESDCTL slave subsystem module will have the same priority for any period of time.

In particular, the default arbitration scheme does not assign the same priority levels to the ARM core and the IPU. By default, requests from the ARM core to the ESDCTL module are assigned a priority value of "3" and requests from the IPU to the ESDCTL module are assigned a priority value of "0." MediaTek has not identified any evidence of a user changing these default priority settings. Moreover, Freescale discourages users from changing these priority settings.

**MORRISON | FOERSTER**

October 15, 2013
Page Three

### III. ACCUSED PRODUCTS INCORPORATED IN KINDLE E-READERS DO NOT INFRINGE BECAUSE THEY WERE NOT SOLD IN THE UNITED STATES

Freescale's accused i.MX50, i.MX35, and i.MX6 products, which are incorporated into the Kindle e-Reader, do not infringe as a matter of law because they are not sold in the United States.  Documents and testimony, including the agreement between Freescale and Lab126/Amazon, show that foreign manufacturer Hon Hai Precision Co. (Foxconn) issued purchase orders, received title, received invoices, received delivery, and warehoused these products outside the U.S.  These sales to Foxconn outside the U.S. cannot form the basis of direct infringement liability under 35 U.S.C. § 271(a).  See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1377 (Fed. Cir. 2005).

### IV. MEDIATEK IS NOT ENTITLED TO AN INJUNCTION

MediaTek is not entitled to an injunction as a matter of law.  MediaTek has not identified any evidence of competition between it and Freescale.  The best that MediaTek can do is to allege potential competition between MediaTek and Freescale in the market for eReader applications.  Potential competition, however, is not enough to show irreparable harm.

### V. CONCLUSION

This case can be significantly streamlined through summary judgment directed to the technical, extraterritoriality, and injunction issues identified above.  Accordingly, Freescale requests that the Court grant it leave to move for summary judgment on the issues set forth in this letter.  Freescale also seeks to expand the 25-page limit to a 50-page limit to brief its summary judgment motion.

Respectfully submitted,

*/s/ Alexander J. Hadjis*

Alexander J. Hadjis
Counsel for Defendant Freescale Semiconductor, Inc.

### ATTESTATION OF E-FILED SIGNATURE

I, Rudy Y. Kim, am the ECF User whose ID and password are being used to file this Letter.  In compliance with General Order 45, X.B., I hereby attest that Alexander J. Hadjis has concurred in this filing.

Dated:  October 15, 2013                                        */s/  Rudy Y. Kim*
                                                                                     Rudy Y. Kim