Keith L. Slenkovich  (SBN 129793)
  Keith.Slenkovich@wilmerhale.com
Joseph F. Haag  (SBN 248749)
  Joseph.Haag@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (*pro hac vice*)
  William.Lee@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

James M. Dowd  (SBN 259578)
  James.Dowd@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 S. Grand Avenue, Suite 2100
Los Angeles, CA  90071
Telephone:  (213) 443-5300
Facsimile:   (213) 443-5400

*Attorneys for Plaintiff* MEDIATEK INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| MEDIATEK INC.<br><br>Plaintiff,<br><br>v.<br><br>FREESCALE SEMICONDUCTOR, INC.<br><br>Defendant. | **Civil Action No.  4:11-cv-05341 (YGR)**<br><br>**MEDIATEK INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE IMPROPER EXPERT OPINIONS OF DR. FRANK VAHID**<br><br>Hon. Yvonne Gonzalez Rogers<br>Hearing Date:    December 10, 2013<br>Time:                  2:00 p.m.<br>Courtroom:        5<br><br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT................................................................................................................1

    A. Freescale's Invalidity Contentions Fail to Support Dr. Vahid's '753 Patent Opinions..............................................................................................................1

        1. Dr. Vahid Improperly Attempts to Use the Okazawa Reference for a "Practicing the Prior Art" Defense to Patent Infringement........................1
        2. Dr. Vahid's "Prior Art"-Based "Non-Infringing Alternatives" Should Be Stricken ......................................................................................3
        3. Freescale Did Not Properly Identify Figure 1-4 Of the MC88410 Secondary Cache Controller User's Manual in Its Contentions ..................4

    B. Freescale's Invalidity Contentions Fail to Support Dr. Vahid's '845 Patent Opinions..............................................................................................................5

        1. Freescale Did Not Identify Figure 5 of Bhuyan in Its Contentions .............5
        2. Freescale Gave No Notice That Bhuyan Relates to Claim 5 .......................6
        3. Freescale Did Not Properly Identify Figure 1A of Bowes856 in Its Contentions ..................................................................................................7

    C. Freescale's Invalidity Contentions Fail to Support Dr. Vahid's '331 Patent Opinions..............................................................................................................8

        1. Freescale's Contentions Did Not Assert Houston's Instruction Handler, Logic Component, or Control Interface Against Claim 11...........8
        2. Freescale Did Not Properly Identify Houston Figure 7 in Its Contentions ..................................................................................................9
        3. Freescale Did Not Properly Identify Houston's Logic Component in Its Contentions ......................................................................................10
        4. Freescale Did Not Disclose How Dischler Teaches A Connection Between the Power Supply and the Dynamic Power Controller ...............11
        5. Freescale Did Not Disclose Its Written Description Challenge To Claim 35's "Dynamic Power Controller" Limitation ................................12

    D. MediaTek Has Been Prejudiced by Dr. Vahid's New and Unsupported Opinions............................................................................................................13

    E. Freescale Has Not Been Prejudiced By MediaTek's Response to Interrogatory No. 24.........................................................................................15

III. CONCLUSION...........................................................................................................15

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

# Table of Authorities

**Page(s)**

**CASES**

*ACCO Brands v. PC Guardian Anti-Theft*,
   592 F.Supp.2d 1208 (N.D. Cal. 2008) ........................................................................... passim

*Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*,
   2007 WL 2103896 (N.D. Cal., Jul. 20, 2007) ................................................................. passim

*Ecolab, Inc. v. Paraclipse, Inc.*,
   285 F.3d 1362 (Fed. Cir. 2002) ......................................................................................... 2, 3

*Fresenius Medical Care Holdings, Inc. v. Baxter Int'l Inc.*,
   2006 WL 1329997 (N.D. Cal. May 15, 2006) ..................................................................... 14

*Funai Elec. Co., v. Daewoo Elec.*,
   593 F.Supp.2d 1088 (N.D. Cal. 2009) ........................................................................... passim

*Genentech, Inc. v. Trustees of Univ. of Pennsylvania*,
   2012 WL 424985 (N.D. Cal. Feb. 9, 2012) ......................................................... 8, 10, 13, 14

*Grain Processing Corp. v. American Maize-Products Co.*,
   185, F.3d 1341 (Fed. Cir. 1999) ............................................................................................ 4

*IXYS Corp. v. Advanced Power Tech., Inc.*,
   321 F. Supp. 2d 1133 (N.D. Cal. 2004) ................................................................................. 7

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ....................................................................................... 2, 3, 14

*Network Appliance Inc. v. Sun Microsystems Inc.*,
   C-07-06053 EDL, 2009 WL 2761924 (N.D. Cal. Aug. 31, 2009) ......................................... 6

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
   279 F.3d 1357 (Fed. Cir. 2002) ......................................................................................... 2, 3

*V-Formation, Inc. v. Benetton Group SpA*,
   401 F.3d 1307 (Fed. Cir. 2005) ............................................................................................. 2

**STATUTES**

35 U.S.C § 112 ............................................................................................................................. 8, 12

**OTHER AUTHORITIES**

Patent L.R. 3-3 ............................................................................................................................ passim

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

Patent L.R. 4 ................................................................................................................................14

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

## I. INTRODUCTION

Freescale characterizes the discrepancy between its invalidity contentions and Dr. Frank Vahid's Opening and Rebuttal Expert Reports as "differences … that are actually marginal." (Dkt. No. 318. at 1.) In reality, Dr. Vahid's reports improperly offer significant departures from the invalidity theories disclosed in Freescale's Patent Local Rule disclosures. For example, where Freescale's invalidity contentions identify only Figure 6 of EP 0991191 A2 to Houston ("Houston") as meeting the "controller," "dynamic power controller," and voltage-related limitations of U.S. Patent No. 6,889,331 ("the '331 patent"), Dr. Vahid offers the brand new opinion that Houston Figure 7 meets these limitations. (*Compare* Dkt. No. 318-10 at 78, 81-82 *with* Dkt. No. 318-12 at 76, 82-86.) Similarly, Freescale's contentions never once identify U.S. Patent No. 5.483,642 to Okazawa ("Okazawa") as prior art, yet Dr. Vahid purports to offer five pages of new opinions that U.S. Patent No. 6,088, 753 (the "'753 patent") is invalid in light of Okazawa. (*Compare* Dkt. No. 296-10 *with* Dkt. No. 318-03 at ¶¶ 38-43.) Dr. Vahid likewise offers the opinion that Figure 5 of Bhuyan et al., *Performance Multiprocessor Interconnection Networks*, IEEE, February 1999 ("Bhuyan") meets the limitations of U.S. Patent No. 6,738,845 (the "'845 patent") – an opinion found nowhere in Freescale's contentions. (*Compare* Dkt. No. Dkt. No. 318-7 at 49-50 *with* Dkt. No. 318-9.) These are not "inconsequential" or "marginal" changes as Freescale tries to downplay them (Dkt. No. 318 at 2); they represent brand new theories intended to ambush MediaTek after the close of fact discovery.

## II. ARGUMENT

### A. Freescale's Invalidity Contentions Fail to Support Dr. Vahid's '753 Patent Opinions

#### 1. Dr. Vahid Improperly Attempts to Use the Okazawa Reference for a "Practicing the Prior Art" Defense to Patent Infringement

Freescale first contends that Dr. Vahid's discussion of Okazawa is not a new invalidity theory concerning the '753 patent, but rather relates to a claim construction-based non-infringement theory. (Dkt. No. 318 at 2-3.) Freescale is wrong for at least the following reasons.

First, as detailed in MediaTek's concurrently-filed Motion to Strike, or in the Alternative, Preclude Under *Daubert*, Improper Opinions of Dr. Frank Vahid, to the extent Dr. Vahid's

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

1  opinions in paragraphs 37 through 43 are based on the brand-new opinion that the term "at least
2  one address bus" means a *single* address bus, these opinions are improper new claim
3  constructions.  (Dkt. No. 299-05 at 3-5, 20-23, 24-25.)  Claim construction issues were settled by
4  this Court's July 17, 2013 claim construction order, and if Freescale sought to rely on a claim
5  construction for its defensive positions, the time was then, not now.  (*See* Dkt. No 127.)

6        Second, as an alternative to his new claim construction opinion, Dr. Vahid presents a new
7  invalidity theory: if the claims are read in a manner other than how Dr. Vahid wants to now
8  construe them, then the '753 is invalid in light of Okazawa.  (Dkt. No. 318-03 at ¶¶ 38-43, six
9  paragraphs spanning five pages, where Dr. Vahid attempts to show through text and annotated
10 figures "how Okazawa can be mapped onto claim 2 of the '753 patent…" and how "[i]f the
11 scope of claim 2 covers all the address buses and data buses in an entire system with no
12 limitation on the relationship between the address buses and data buses, then claim 2 would not
13 have been issued by the USPTO.").)  This new invalidity theory was never disclosed in
14 Freescale's invalidity contentions, and cannot be added by Dr. Vahid now.

15       Finally, Dr. Vahid's opinion in paragraph 43 that "[t]he accused products are more
16 similar to the prior art than to the '753 patent, and thus cannot be infringing" should be stricken.
17 (*Id.* at ¶ 43.)  As noted in MediaTek's opening motion, the Federal Circuit has explicitly and
18 repeatedly held that practicing the prior art is not a defense to patent infringement.  (*See* Dkt. No.
19 296-05 at 5-6; *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365
20 (Fed. Cir. 2002); *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1377 (Fed. Cir. 2002).)

21       Freescale's strained efforts to cite case authority supporting its position fail.  Freescale
22 points to *VFormation, Inc. v. Benetton Group SpA* and *Markman v. Westview Instruments, Inc.* to
23 support adding the undisclosed Okazawa reference – a reference considered by the United States
24 Patent and Trademark Office during the prosecution of the '753 patent – as a prior art reference
25 at this late stage of the case. (Dkt. No. 318 at 2-4.)  But both *VFormation* and *Markman*
26 addressed prior art considered by the examiner *in the context of claim construction arguments*,
27 not new claim construction-based non-infringement or invalidity arguments disclosed long after
28 claim construction and Rule 3-3 disclosure deadlines.  *V-Formation, Inc. v. Benetton Group SpA*,

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

1  401 F.3d 1307, 1311 (Fed. Cir. 2005) (approving of District Court's consideration *during claim*
2  *construction* of prior art cited in prosecution prosecution history; Federal Circuit did not approve
3  of surprise expert opinions well after both the Rule 3-3 disclosure and claim construction
4  deadlines); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (same).

This Court should strike paragraphs 38-43 of Dr. Vahid's Rebuttal Expert Report.

### 2. Dr. Vahid's "Prior Art"-Based "Non-Infringing Alternatives" Should Be Stricken

Freescale argues that Dr. Vahid's extensive discussion in his rebuttal report of the alleged Okazawa and Lambrecht prior art references, and how they supposedly disclose the elements of the asserted '753 claims (*see* Dkt. No. 296-9 ¶¶ 55, 66, 77, 92, 98, and 107), is not about validity at all, but instead concerns non-infringing alternatives. Freescale's argument has no merit.

First, Dr. Vahid's premise, "that [prior art] cannot infringe the patent" (Dkt. No. 296-9 at ¶ 55), is wrong as a matter of law. *Tate Access Floors,* 279 F.3d at 1365 ("This court made unequivocally clear in *Baxter* that there is no 'practicing the prior art' defense to literal infringement."); *Ecolab*, 285 F.3d at 1377 ("'[P]racticing the prior art' is not a defense to literal infringement."). Because Dr. Vahid's assertion that Freescale could avoid infringement by practicing the alleged prior art is contrary to the law, these opinions should be stricken for this reason alone.

Second, Rule 3-3 and the Court's scheduling order required Freescale to disclose the prior art it was going to rely upon in this case on May 25, 2012. Freescale never disclosed Okazawa or Lambrecht by the Court's deadline. Freescale should not be permitted to raise these references for the first time in a rebuttal report long after the close of fact discovery and the deadline for invalidity contentions. *See ACCO Brands*, 592 F.Supp.2d at 1215-16; *Funai*, 593 F.Supp.2d at 1102.

Third, Freescale's attempt to "back-door" the Okazawa and Lambrecht references, by describing these as "prior art" references that Freescale could implement that "are very close to if not identical to, the accused structure" should be rejected. In paragraph 55, Dr. Vahid states:

> 55. As discussed in my Opening Report, ***there is prior art to the '753 patent, including prior art cited by the patent examiner***, that cannot infringe the patent. ***Such prior art includes Kawai, Okazawa, Funabashi, Lamrecht, and the MC88410***. Therefore, in the event that the jury or the Court finds that the i.MX50 infringes claim 2 of the

Wilmer Cutler Pickering Hale and Dorr LLP, 950 Page Mill Road, Palo Alto, California 94304

> '753 patent, Freescale could design the i.MX50 to implement **one of the prior art systems**. Because the prior art systems are very close to, if not identical to, the accused structure in the i.MX50, it is my opinion that implementing such a system in the i.MX50 would impose minimal time and cost to Freescale.

(Dkt. No. 296-9 at ¶ 55 (emphasis added).) Paragraph 55, as well as those paragraphs of Dr. Vahid's Rebuttal Expert Report that cross-reference paragraph 55, are nothing more than attempts to smuggle in Okazawa and Lambrecht as prior art references and should be stricken.

*Fourth*, Freescale's reliance on *Grain Processing* is misplaced. *Grain Processing Corp. v. American Maize-Products Co.*, 185, F.3d 1341 (Fed. Cir. 1999). Nothing in *Grain Processing* permits Freescale to flout the Court's Rule 3-3 deadline and introduce brand new prior art theories in a technical expert's ***rebuttal*** report. To the contrary, the Patent Local Rules forbid such surprise tactics. *See* Patent L.R. 3-3(c).

Therefore, this Court should grant MediaTek's motion to strike paragraphs 55, 66, 77, 92, 98, and 107 of Dr. Vahid's Rebuttal Expert Report.

### 3. Freescale Did Not Properly Identify Figure 1-4 Of the MC88410 Secondary Cache Controller User's Manual in Its Contentions

Freescale also argues that its Invalidity Contentions properly disclosed Figure 1-4 of the MC88410 Secondary Cache Controller User's Manual ("MC88410 Manual"). Freescale's brief now claims that Figures 1-3 and 1-4 are "complementary figures," and that Figure 1-4 shows how a second MC88410 could be connected to the bus arrangements of Figure 1-3. (Dkt. No. 318 at 5-7.) Tellingly, however, Freescale raises this new "complementary figures" contention for the first time in its ***opposition brief***. It appears nowhere in Freescale's invalidity contentions. Freescale does not deny that it failed to cite Figure 1-4 in its contentions. Nor can it. Freescale's contentions failed to identify Figure 1-4 as meeting the "first address transaction" and "second address transaction" limitations of claim 2. (*See* Dkt. No. 318-04.)

This is no small omission. Freescale's contentions concerning the first and second address transactions of claim limitations 2(a) and 2(b) of the '753 patent identify ***no*** theory by which ***two*** MC88410s are supposedly coupled, as allegedly described by Figure 1-4, to produce the elements of the claims. *Id.* With regard to these two limitations, Freescale's contentions

1 instead asserted that *one* MC88410, standing alone as shown in Figure 1-3, discloses the
2 "multiple address buses" and "multiple data buses" of the claim. *Id.* Freescale's attempt to
3 introduce Figure 1-4 is thus a *fundamental* change to its invalidity position, switching from
4 arguing that one MC88410 alone invalidates, to requiring a combination of two MC88410s. This
5 surprise new theory comes long after the close of fact discovery and should be barred.

6 Accordingly, this Court should strike paragraph 71 and pages 15-19 of Exhibit C-4 to Dr.
7 Vahid's Opening Expert Report.

**B.  Freescale's Invalidity Contentions Fail to Support Dr. Vahid's '845 Patent Opinions**

**1.  Freescale Did Not Identify Figure 5 of Bhuyan in Its Contentions**

11 Freescale argues that its contentions should be interpreted as though Figure 5 of Bhuyan
12 had somehow been disclosed. But Freescale fails to cite a single page of its *invalidity*
13 *contentions* for the '845 patent where Figure 5 is identified as a basis for invalidity. The reason
14 is simple: this figure is mentioned nowhere in Freescale's contentions. Dr. Vahid's surprise new
15 Figure 5 arguments should be stricken.

16 Because Freecale cannot point to a discussion of Figure 5 in its contentions, it instead
17 points to an unexplained block quote in its contentions addressed to entirely different figure –
18 Figure 3. The entirety of Freescale's block quote states, "[o]n the other hand, a crossbar, as used
19 in C.mmp and depicted in Figure 3, supports all possible distinct connections between the
20 processors and memories simultaneously. (Bhuyan, at 27; Fig. 3.)" (Dkt. No. 318-7 at 49-50;
21 Dkt. No. 318-17 at 53-54.) This quote is expressly directed to "Figure 3," and, dispelling all
22 doubt about why this passage was quoted, Freescale's parenthetical cites *solely* to "Fig. 3" on
23 page 27 of Bhuyan as the relevant disclosure. (*See* Dkt. No. 318-8 at 27.) Confronted with
24 MediaTek's motion to strike, however, Freescale now invents an argument that, because
25 Bhuyan's page 27 also mentions that "Figures 4 and 5 … will be described in later sections,"
26 MediaTek should have realized that it was not the passage Freescale quoted and cited but instead
27 some unidentified and never cited "later section" on Figure 5 that Freescale intended to rely
28 upon. (Dkt. No. 318 at 7-8.) This is pure post-hoc lawyer argument. If Freescale intended to

rely on Figure 5, Patent L.R. 3-3(c) required Freescale to name Figure 5 in its invalidity charts. *See ACCO Brands*, 592 F.Supp.2d at 1215-16; *Funai*, 593 F.Supp.2d at1102.  Freescale did not do so, and its post-hoc rationalization should be rejected.

Freescale's switch to Figure 5 is also a ***fundamental*** change.  Freescale's contentions disclose a depiction of a crossbar for connecting processors and memories in Bhuyan's Figure 3. (Dkt. No. 318-7 at 49-50; Dkt. No. 318-17 at 53-54.)  Freescale's contentions do not, however, disclose the multiple bus networks depicted in Bhuyan's Figure 5. (*See id.  See also* Dkt. No. 318-8 at 27.)  Freescale should not be permitted to shift its invalidity theories with regard to Bhuyan from a crossbar solution to a multiple bus solution.

Accordingly, this Court should strike paragraph 98, pages 31-46 of Exhibit D-3, and pages 47-60 of Exhibit D-4 to Dr. Vahid's Opening Expert Report.

### 2.  Freescale Gave No Notice That Bhuyan Relates to Claim 5

Freescale asserts that it disclosed Bhuyan as prior art for claim 5 of the '845 patent. Freescale is wrong, as demonstrated by the contortions of its own argument.

Freescale cannot, and does not, deny that its actual claim 5 contentions never once mention Bhuyan as an invalidating reference. (Dkt. No. 318-07 at 49-50.)  Faced with this glaring deficiency, Freescale engages in the sophistry that because claim 5 relates to memory, and Freescale's Bhuyan contentions for claim *2* assert that Bhuyan has some connection to memory, MediaTek should have guessed that Freescale also meant to assert Bhuyan against claim 5. (Dkt. no. 318 at 8-9.)  This argument is meritless.  Patent L.R. 3-3(c) required Frescale to chart separately for each claim the prior art references it would assert for invalidity.  *Network Appliance Inc. v. Sun Microsystems Inc*., C-07-06053 EDL, 2009 WL 2761924 (N.D. Cal. Aug. 31, 2009) (striking expert opinion on reference that was not fully charted in invalidity contentions).  Freescale never identified Bhuyan against claim 5, and it is barred under Rule 3-3 from doing so now.  *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, 2007 WL 2103896 at *1-2, 4 (N.D. Cal., Jul. 20, 2007); *aff'd* 2007 WL 2433386 at *1 (N.D. Cal., Aug. 22, 2007)*; see also, ACCO Brands v. PC Guardian Anti-Theft*, 592 F.Supp.2d 1208, 1215-16 (N.D. Cal. 2008); *Funai Elec. Co., v. Daewoo Elec.*, 593 F.Supp.2d 1088, 1102 (N.D. Cal. 2009).

Recognizing this shortcoming, Freescale repeatedly cites footnote 19 of *IXYS Corp. v. Advanced Power Tech., Inc.* to argue that Rule 3-3's requirements for specific disclosure of prior art references can be ignored "[i]n the interests of privileging substance over form." (Dkt. No. 318 at 8, 16; *IXYS Corp. v. Advanced Power Tech., Inc.*, 321 F. Supp. 2d 1133 (N.D. Cal. 2004).) *IXYS* does not support Freescale's argument.  In *IXYS*, the court found that plaintiff IXYS had ***actual notice*** of the prior art combinations defendant sought to advance through its expert at trial.  *Id.* at 1153 n.19 ("IXYS has long been on notice of these potential combination[s]"). IXYS had actual notice because three references (Korman, Jones and the "admitted prior art") had "been at issue from the moment IXYS's patent applications were filed," and a fourth ("the ATP 208 device") had "been a principle subject of this litigation (for purposes of invalidity)" and had been "provided to IXYS in a timely fashion."  *Id.*  None of these circumstances exist for Bhuyan and '845 patent claim 5.  Freescale never so much as hinted that Bhuyan was relevant to claim 5, must less identified this reference "in a timely fashion."  Nor was Bhuyan cited against claim 5 during prosecution, unlike Korman, Jones and the admitted prior art in *IXYS*.  Instead, Freescale simply seeks to ambush MediaTek with a new invalidity theory that it could have but did not disclose on the Rule 3-3 deadline.  *See Avago*, 2007 WL 2103896 at *1-2, 4; *ACCO Brands*, 592 F.Supp.2d at 1215-16; *Funai*, 593 F.Supp.2d at1102.

Paragraph 100 and pages 15-16 of Exhibit D-1 to Dr. Vahid's Opening Expert Report should thus be stricken.

### 3. Freescale Did Not Properly Identify Figure 1A of Bowes856 in Its Contentions

Freescale's arguments with regard to Figure 1A of U.S. Patent No. 5,828,856 ("Bowes856") are similarly erroneous.  Freescale does not dispute that its contentions never once mention Figure 1A.  Instead, Freescale makes two arguments.  First, Freescale contends it was not required to disclose Figure 1A and its contentions should be read as though they "encompass every embodiment of a DMA controller" in Bowes856.  (Dkt No. 318 at 9-10.)  This argument is directly contrary to Patent L.R. 3-3(c), which required Freescale to "identify[] specifically where

each limitation of each asserted claim is found within each Accused Instrumentality." Freescale's failure to make the disclosures Rule 3-3 requires is not excused by hand-waving.

Second, Freescale argues that its expert should be permitted to rely upon Figure 1A, despite no mention of this figure in its contentions, because Figure 1A is supposedly "complementary proof" to its Rule 3-3 disclosures. (Dkt. no. 318 at 9-10.) For this argument, Freescale cites *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, 2012 WL 424985 (N.D. Cal. Feb. 9, 2012). But *Genentech* does not support Freescale's argument. In that case, defendant moved to strike plaintiff's experts' opinions asserting: (1) a first written description challenge under 35 U.S.C § 112; (2) a second written description challenge that plaintiff had previously been denied leave to add to its contentions by amendment; and (3) twenty references cited as mere "background" information. *Id.* at *2-3. The court denied defendant's motion for reasons that do not exist here. First, the court found that plaintiff had expressly disclosed its first written description challenge in its contentions. *Id.* at *2. By contrast, Freescale admits it did not expressly disclose Figure 1A. Second, the court found the motion as to plaintiff's second written description challenge was moot because plaintiff stipulated that it would not assert this defense at trial. *Id.* at *2-3. By contrast, Freescale has not stipulated that it will not assert Figure 1A at trial. Finally, the court found plaintiff's "background" references permissible because plaintiff agreed it would ***not*** rely on these references for any argument that the asserted patent claims were invalid. *Id.* at *3. By contrast, the ***only*** purpose for which Dr. Vahid purports to cite Figure 1A is to attempt to demonstrate invalidity. For these reasons, far from supporting Freescale, *Genentech* actually demonstrates that Freescale's expert's brand new Figure 1A opinions are improper.

Accordingly, paragraph 105 and page 14 of Exhibit D-1 to Dr. Vahid's Opening Expert Report should be stricken.

### C. Freescale's Invalidity Contentions Fail to Support Dr. Vahid's '331 Patent Opinions

#### 1. Freescale's Contentions Did Not Assert Houston's Instruction Handler, Logic Component, or Control Interface Against Claim 11

Freescale argues that it disclosed Houston's Figure 2 as applying to the "one or more components receiving the at least one clock signal" and "one of the components to identify a clock frequency requirement of the processor" limitations of claim 11 of the '331 patent. Freescale is mistaken. Freecale never asserted that Houston Figure 2 discloses these "components" limitations of claim 11. (Dkt. No. 318-10 at 78-79.) Indeed, although Freescale cites *other* portions of Houston for these "components" limitations, Freescale conspicuously *never* cites either to Figure 2 itself or any portion of Houston's disclosure discussing Figure 2 for these limitations. *Id.* For example, for the "one or more components receiving the at least one clock signal" limitation, Freescale identifies Houston's register 76. (*Id.* at 78.) Freescale never once identifies Figure 2 as relevant to this limitation.

Freescale has thus again failed to meet Rule 3-3's requirement that a defendant identify on a limitation-by-limitation basis specifically where in each prior art reference it contends each limitation is disclosed. Patent L.R. 3-3. Accordingly, Dr. Vahid's opinions at paragraph 153 and pages 73-75 of his Opening Expert Report, purporting to show how Houston Figure 2 discloses claim 11's "components" limitations, should be stricken.

### 2. Freescale Did Not Properly Identify Houston Figure 7 in Its Contentions

Like Bowes856 Figure 1A, Freescale first argues Figure 7 is merely "complementary proof." (Dkt. No. 318 at 12-13.) And like Bhuyan with regard to claim 5 of the '845 patent, Freescale also argues that MediaTek should have guessed Freescale would have relied on Figure 7 because this figure combines Figures 5 and 6, and Freescale cited Figure 6 in its contentions. *Id.* Neither argument stands.

Rule 3-3 requires transparency, not guessing games. Freescale cannot identify one figure (Figure 6) as its basis for asserting invalidity in its contentions, and throughout discovery hide that it actually intends to rely upon a wholly different figure (Figure 7) at trial. *See Avago*, 2007 WL 2103896 at *1-2, 4; *ACCO Brands*, 592 F.Supp.2d at 1215-16; *Funai*, 593 F.Supp.2d at1102. Moreover, Freescale's "complementary proof" argument based on *Genentech* fails for the same reasons discussed in conjunction with Bowes856 Figure 1A above. In particular, unlike

the "background" art that the plaintiff in *Genentech* agreed could not be used invalidity purposes, the sole purpose for which Freescale's Dr. Vahid cites Houston's Figure 7 is to attempt to show that the '331 claims are invalid.  As before, *Genentech* thus refutes Freescale's argument.

Accordingly, because Freescale did not disclose Houston's Figure 7 in its contentions (Dkt. No. 318-10 at 78), Dr. Vahid's opinions about Figure 7 at pages 75-76 and 80-86 of Exhibit E-6 to Dr. Vahid's Opening Expert Report should be stricken.

### 3.  Freescale Did Not Properly Identify Houston's Logic Component in Its Contentions

Freescale's argument that its contentions properly disclose Houston's logic component 12 as meeting the "determining a clock frequency requirement" limitation of claim 35 of the '331 patent is similarly erroneous.  Freescale's argument is that MediaTek should have known Freescale would rely upon logic component 12 as meeting the "determining a clock frequency requirement" limitation of claim 35 because elsewhere in its charts Freescale makes a passing reference to Figure 2, which Freescale says shows an embodiment of logic component 12.  (Dkt. No. 318 at 13-14.)  Freescale is mistaken for three reasons.

First, Freescale's contentions never identify Houston's logic component 12 as meeting any limitation of claim 35 whatsoever, much less the "determining a clock frequency requirement" limitation.  (*See generally* Dkt. No. 318-10.)  If Freescale intended to rely on Houston's logic component 12 as meeting the "determining a clock frequency requirement", it was required to disclose it for this purpose.  *See* Patent L.R. 3-3(c).  Because Freescale never disclosed logic component 12 as meeting any claim 35 limitation, it has failed to identify "where specifically in each alleged item of prior art each limitation of each asserted claim is found." *Id.*

Second, what Freescale points to as a "disclosure" is no disclosure of logic component 12 at all.  Under Freescale's reasoning, Freescale had no obligation to tell MediaTek that it would contend logic component 12 is what supposedly practices claim 35's "determining a clock frequency requirement" limitation.  Instead, according to Freescale, it was MediaTek's obligation to hunt through Houston, figure out any potential cross-references, and divine on its own that Freescale's secret plan was to rely on logic component 12.  Freescale's argument is

contrary to the express terms of Rule 3-3.  Freescale may not conceal its true invalidity theory for the entirety of fact discovery, only to ambush MediaTek in expert reports.  *See Avago*, 2007 WL 2103896 at *1-2, 4; *ACCO Brands*, 592 F.Supp.2d at 1215-16; *Funai*, 593 F.Supp.2d at 1102.

Third, and as importantly, Frescale does not cite Houston's Figure 2 against the "determining a clock frequency requirement" limitation of claim 35.  (Dkt. No. 318-10 at 81-82.)  Instead, Freescale's contentions identify Figure 2 as relevant only to the preamble and the "at least one processor having a plurality of components operating with a plurality of clock signals" limitation of claim 35.  Thus, even if MediaTek were somehow able to figure out that the reason Freescale cited Figure 2 was for logic component 12 (contrary to Patent L.R. 3-3's requirements for specific disclosure), Freescale's contentions have ***no disclosure at all*** that Figure 2 is relevant to the "determining a clock frequency requirement" limitation.  (Dkt. No. 318-10 at 79-82.)  In place of Rule 3-3's limitation-by-limitation transparency regime, in other words, Freescale's contentions would require clairvoyance to divine Freescale's true intent.  This is not the law.

Because Freescale failed to disclose Houston's logic component 12 as supposedly teaching claim 35's "determining a clock frequency requirement" limitation, paragraph 154 and pages 83-85 of Exhibit E-6 to Dr. Vahid's Opening Expert Report should be stricken.

### 4. Freescale Did Not Disclose How Dischler Teaches A Connection Between the Power Supply and the Dynamic Power Controller

Freescale argues that it disclosed CPU 13 of U.S. Patent No. 6,311,287 to Dischler et al. ("Dischler") as embodying the connection between a "dynamic power controller" and a "power supply" recited in claim 35.  Freescale is incorrect for at least two reasons.

First, Freescale's contentions regarding claim 35 do not identify Dischler's CPU 13 as connecting the alleged "power supply" and "dynamic power controller."  (*See* Dkt. No. 318-14 at 46-47.)  Instead, Freescale's contentions identify components illustrated in Figure 1 of Dischler.  *Id.*  As with Houston's logic component 12, if Freescale intended to rely on Dischler's CPU 13, it should have disclosed it as the item connecting the alleged "power supply" and "dynamic power controller."  By failing to do so, Freescale has not met its obligations under L.R. 3-3.

1   Second, Freescale's argument that Dischler Figure 1 adequately discloses CPU 13 as
2   connecting the alleged "power supply" and "dynamic power controller" is incorrect. As with
3   Houston's logic component 12, in place of Rule 3-3's limitation-by-limitation transparency
4   requirements, Freescale would require MediaTek to guess what its true contentions about
5   Dischler will be at trial. Because Freescale violated Patent Local Rule 3-3, paragraph 150 and
6   pages 67-69 of Exhibit E-5 to Dr. Vahid's Opening Expert Report should be stricken.

**5.     Freescale Did Not Disclose Its Written Description Challenge To Claim 35's "Dynamic Power Controller" Limitation**

Freescale suggests that its contentions set forth Dr. Vahid's written description challenge to claim 35's "dynamic power controller" limitation. Freescale is incorrect.

In particular, in paragraphs 183 through 196 of his Opening Expert Report, Dr. Vahid sets forth a fourteen-paragraph-long argument about why the '331 patent's specification supposedly does not show the inventors having had possession of the "dynamic power controller" limitation at the time of their original patent application, as required by the "written description" requirement of 35 U.S.C. § 112, ¶ 1. Dr. Vahid's argument, in short, is that the '331 specification contains "no disclosure … of a dynamic power controller (DPC) that determines a clock frequency requirement" and specifically "does not teach what inputs go into determining a clock frequency, how to determine a clock frequency, or what part of the DPC is used to determine the clock frequency requirement." (Dkt. No. 318-16 ¶ 183.)

Freescale's invalidity contentions do not disclose Dr. Vahid's argument. By contrast, the only mention of written description in Freescale's contentions is the following:

| "monitor. . . processor to determine" | | | 35 | | Indefiniteness, Written Description/ Enablement |
|---|---|---|---|---|---|

(Dkt. No. 318-15 at 26.) Freescale's contentions do not: (1) identify the "dynamic power controller" limitation as the limitation being challenged; (2) provide any of Dr. Vahid's rationale for why this limitation supposedly lacks written description support; or even (3) state definitively whether Freescale is asserting indefiniteness, written description, or enablement (each of which

is a separate defense with distinct legal requirements). If Freescale intended to make a written description argument, it was required to state this argument with particularity in its contentions. *See Avago*, 2007 WL 2103896 at *1-2, 4; *ACCO Brands*, 592 F.Supp.2d at1215-16. Freescale simply did not do so.

Once again citing *Genentech*, Freescale argues that "the Court has found less explicit statements to be sufficient disclosure of a written description theory of invalidity." (Dkt. No. 318 at 15.) However, the written description contention in *Genentech* was far more explicit than Freescale's:

> [T]he patent broadly claims a 'genus' of antibodies with properties listed in the claims, yet provides no example other than the 7.16.4 antibody itself. Indeed, the following contention language specifically disputes the sufficiency of the disclosure because of its failure to identify any antibody that competes for binding with 7.16.4: 'The 7.16.4 antibody is the only antibody disclosed in the specification that allegedly down regulates p185 when administered in undisclosed 'sufficient amounts.' It is the only antibody disclosed that would compete with itself for binding to p185.' Because the patent itself teaches that competitive binding takes place at the same epitope, this is more than sufficient to justify Clynes' discussion.

*Genentech*, 2012 WL 424985 at *2. Freescale's attempt to rely on *Genentech* to excuse its failure to state any specific written description challenge to the "dynamic power controller" limitation is thus misplaced.

Paragraphs 183 through 196 to Dr. Vahid's Opening Expert Report should be stricken.

**D.   MediaTek Has Been Prejudiced by Dr. Vahid's New and Unsupported Opinions**

Freescale wrongly argues that MediaTek has not been prejudiced by Dr. Vahid's ambush opinions. (See Dkt. No. 318 at 16-17.) Freescale is incorrect.

First, Freescale's failure to disclose its new theories as required by Rule 3-3 and the Court's scheduling order has foreclosed MediaTek from pursuing related discovery. Indeed, *Genentech* held that: "At a minimum, a key consideration for the court is the timing of the disclosure in relation to when the disclosing party had the information and when the opposing

party would have needed the information in order to fairly conduct discovery or prepare a responsive strategy." *Genentech*, 2012 WL 424985 at *2.  This "key consideration" weighs heavily against Freescale here.  Freescale has long known of the ambush opinions set forth in Dr. Vahid's reports, in many cases since the Complaint was filed.  Yet Freescale waited to disclose these invalidity theories until MediaTek had no ability to (1) "prepare a responsive strategy" or (2) "fairly conduct discovery." *Id.*  The purpose of the Rule 3-3's disclosure requirements is to prohibit such ambush tactics, requiring defendants to "crystallize" their invalidity theories at the outset of discovery.  *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l Inc.*, 2006 WL 1329997 at *4 (N.D. Cal. May 15, 2006).  MediaTek should have been told of Freescale's new invalidity theories ***fourteen months*** ago.  Freescale's tardy disclosure of these theories has denied MediaTek the opportunity to fully prepare its response.

Moreover, Dr. Vahid's new invalidity theories cry out for discovery.  For example, Dr. Vahid's assertion that "[t]he accused products are more similar to [Okazawa and Lambrecht] than to the '753 patent, and thus cannot be infringing," warrants additional discovery of technical specifications and source code to enable MediaTek to assess Dr. Vahid's new opinions.  (*See* Dkt. No. 318-03 at ¶ 43.)  But the time for fact discovery ended on July 19, 2013.

Finally, Rule 3 contention disclosures are intentionally sequenced to come before Rule 4 claim construction disclosures.  This sequence ensures that the parties have full information about potential claim construction disputes before the claim construction process, permitting the Court to then address all such disputes in one orderly *Markman* process that conserves judicial and party resources.  By keeping its invalidity contentions secret until Dr. Vahid's reports, Freescale prejudiced MediaTek's ability to fairly participate in claim construction.  For example, had MediaTek known of Dr. Vahid's "dynamic power controller" opinion, MediaTek could have proposed this term for construction.  By keeping its invalidity contentions a secret, however, Freescale prejudiced MediaTek ability to address this issue in claim construction.

Freescale's assertions that MediaTek has suffered no prejudice are thus demonstrably false.  To avoid this prejudice, the surprise opinions of Dr. Vahid should be stricken.

### E. Freescale Has Not Been Prejudiced By MediaTek's Response to Interrogatory No. 24

Finally, Freescale offers a feeble excuse for the delayed disclosure of Dr. Vahid's new opinions – that it was unable to disclose its invalidity positions without a more complete response to Interrogatory No. 24 (which prematurely asked MediaTek to provide validity contentions). This argument has no merit.

First, as MediaTek explained in its Opposition to Freescale's Motion to Strike, MediaTek's response to Interrogatory No. 24 was proper. (*See* Dkt. No. 332-5 at 12-14.) In particular, MediaTek objected to Interrogatory No. 24 because it prematurely sought expert opinions in violation of this Court's scheduling order, and MediaTek therefore properly responded that it would provide its validity theories in its rebuttal expert reports. (*Id.* at 12.) MediaTek was thus completely straightforward in its approach to Interrogatory No. 24. Freescale's response to MediaTek's position was complete silence: Freescale never once took issue with MediaTek's objection, or the timing of its promised disclosure of responsive information, at any point during fact discovery. Because Freescale waived any (non-)issues it had with MediaTek's proper response to Interrogatory No. 24, Freescale's post-hoc claim that it required more information before revealing invalidity contentions rings particularly hollow.

Moreover, Freescale's argument fails as a matter of chronological fact. Dr. Vahid set forth his ambush invalidity opinions in his opening and rebuttal reports – at a time before and simultaneous with MediaTek's rebuttal reports on validity. Freescale, in other words, did not have MediaTek's response to Interrogatory No. 24 at the time Dr. Vahid wrote these reports containing Dr. Vahid's ambush opinions, so it clearly did not need such responses to proffer these opinions. Freescale cannot justify its tardy disclosure of invalidity contentions – a defense it must demonstrate by clear and convincing evidence – based on Interrogatory No. 24.

### III. <u>CONCLUSION</u>

For all of the reasons above, as well as for those presented in MediaTek's original motion, MediaTek respectfully requests that this Court grant its motion to strike the improper opinions of Dr. Frank Vahid.

|   |   |   |
|---|---|---|
| 1 | Dated:  November 26, 2013 | Respectfully submitted, |
| 2 | | |
| 3 | | MEDIATEK INC.<br>By their attorneys, |

*/s/  Keith L. Slenkovich*
Keith L. Slenkovich  (SBN 129793)
  Keith.Slenkovich@wilmerhale.com
Joseph F. Haag  (SBN 248749)
  Joseph.Haag@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (*pro hac vice*)
  William.Lee@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

James M. Dowd  (SBN 259578)
  James.Dowd@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 S. Grand Avenue, Suite 2100
Los Angeles, CA  90071
Telephone:  (213) 443-5300
Facsimile:   (213) 443-5400

*Attorneys for Plaintiff* MEDIATEK INC.

(Line numbers 1–28 run down the left margin. Left sidebar: **Wilmer Cutler Pickering Hale and Dorr LLP, 950 Page Mill Road, Palo Alto, California 94304**)