Keith L. Slenkovich (SBN 129793)
  Keith.Slenkovich@wilmerhale.com
Joseph F. Haag (SBN 248749)
  Joseph.Haag@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (*pro hac vice*)
  William.Lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

James M. Dowd (SBN 259578)
  James.Dowd@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 S. Grand Avenue, Suite 2100
Los Angeles, CA  90071
Telephone:  (213) 443-5300
Facsimile:   (213) 443-5400

*Attorneys for Plaintiff* MEDIATEK INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| MEDIATEK INC.<br><br>Plaintiff,<br><br>v.<br><br>FREESCALE SEMICONDUCTOR, INC.<br><br>Defendant. | **Civil Action No.  4:11-cv-05341 (YGR)**<br><br>**MEDIATEK INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE PRECLUDE UNDER *DAUBERT*, IMPROPER OPINIONS OF DR. FRANK VAHID**<br><br>Hon. Yvonne Gonzalez Rogers<br>Hearing Date:    December 10, 2013<br>Time:                   2:00 p.m.<br>Courtroom:        5<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT.........................................................................................................................3

    A. Federal Circuit Law Differentiates Between Applying Plain and Ordinary Claim Language, And Construing A Claim Term..............................................3

    B. Dr. Vahid's Opinions Seek to Construe the Claim Terms Rather Than Apply the Plain and Ordinary Meaning or the Court's Constructions ...................................6

        1. "at least one address bus" ('753 patent, claim 2)........................................7

        2. "interconnecting a plurality of components . . . in a predetermined way" ('753 patent, claim 2) ........................................................................8

        3. "portion of the available bandwidth" ('845 patent, claim 21) .....................9

        4. "coupled" ('845 patent, claim 1)..................................................................9

        5. "DMA subsystem is configured and arranged such that, when the first and second arbitration units enables the DMA subsystem to access each of the first and second slave subsystems, the DMA controller can cause data to be transferred between the first slave subsystem and the second slave subsystem" ('845 patent, claim 1)..........10

        6. "information indicating the clock frequency requirement" ('331 patent, claim 11).........................................................................................11

        7. "controller" ('331 patent, claims 11 and 35) .............................................11

        8. "same priority" ('845 patent, claim 21) .....................................................12

        9. "to determine a clock frequency requirement" ('331 patent, claim 35) ................................................................................................................12

    C. Contrary to Freescale's Assertion, Dr. Vahid Does Not Use the Same Method or Offer the Same Types of Opinions as MediaTek's Experts ...................................13

    D. The Court Should Reject Freescale's Request For a Second Round Of Claim Construction On The Eve Of Trial..........................................................................14

        1. Freescale's Request is Untimely.................................................................14

        2. Dr. Vahid's Proposed Claim Constructions Violate Basic Canons of Claim Construction Law........................................................................15

III. CONCLUSION....................................................................................................................15

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

**Table of Authorities**

Page(s)

CASES

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
    707 F.3d 1318 (Fed. Cir. 2013)..................................................................................10, 11

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed.Cir.2012).......................................................................................3, 14

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
    11-CV-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012) .........................................6

*Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*,
    C-09-2180-SBA, 2011 WL 500786 (N.D. Cal. Feb. 9, 2011) ...................................................4

*Aventis Pharms., Inc. v. Amino Chems. Ltd.*,
    715 F.3d 1363 (Fed. Cir. 2013)...................................................................................................9

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
    249 F.3d 1341 (Fed. Cir. 2001).............................................................................................5

*Broadcom Corp. v. Qualcomm Inc.*,
    543 F.3d 683 (Fed. Cir. 2008)................................................................................................5

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
    334 F.3d 1294 (Fed. Cir. 2003)...........................................................................................3, 4

*CardioNet, Inc. v. Mednet Healthcare Technologies, Inc.*,
    CIV.A. 12-2517, 2013 WL 6047565 (E.D. Pa. Nov. 15, 2013) ................................................4

*Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*,
    2012 U.S. Dist. LEXIS 159796 (W.D. Pa. Nov. 7, 2012) ........................................................5

*Cordis Corp. v. Medtronic Ave, Inc.*,
    511 F.3d 1157 (Fed. Cir. 2008)................................................................................................5

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
    424 F.3d 1168 (Fed. Cir. 2005)...........................................................................................2, 6

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) *aff'd*, 517 U.S. 370 (1996) .............................................. passim

*Medrad, Inc. v. MRI Devices Corp.*,
    401 F.3d 1313 (Fed. Cir. 2005)................................................................................................8

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*,
    403 F.3d 1364 (Fed. Cir. 2005)................................................................................................8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .......................................................................................... passim

*Plew v. Ltd. Brands, Inc.*,
    2012 U.S. Dist. LEXIS 14966 (S.D.N.Y. Feb. 6, 2012) ............................................................5

*V-Formation, Inc. v. Benetton Grp. SpA*,
    401 F.3d 1307 (Fed. Cir. 2005) ................................................................................................8

**OTHER AUTHORITIES**

Patent L.R. 4 ............................................................................................................1, 2, 8, 14

## I. **INTRODUCTION**

Freescale's opposition fundamentally confuses two different concepts: (1) applying the plain and ordinary meaning of a claim term; and (2) performing a claim construction analysis to construe a term. When a term's plain and ordinary meaning is obvious on its face, the parties and their experts are to merely apply this meaning in their infringement and invalidity analyses without attributing additional definition(s) to the term. If a party believes that a claim term requires a special meaning not obvious on its face, however, the party must propose that term for construction by the Court. The Court then decides how to instruct the jury on the term's special meaning based upon the claim language, specification's disclosure, any relevant prosecution history, and potentially extrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-18 (Fed. Cir. 2005). In this District, this process is defined by Patent L.R. 4, which sets forth deadlines for the parties to identify disputed terms, disclose respective construction, and present briefing and oral argument to the Court.

Freescale attempts to circumvent these rules through the expert report of Dr. Frank Vahid. Time and again, Dr. Vahid offers opinions purporting to construe claim terms to give them unique and narrow definitions. Freescale would offer these opinions to the jury despite its having disclosed ***none*** of Dr. Vahid's new constructions under Patent L.R. 4 (or indeed at any time during fact discovery). And Dr. Vahid's surprise constructions are, by his own admission, a departure from the plain and ordinary meaning. To give but one example, Dr. Vahid admits that the plain and ordinary meaning of the term "at least one address bus" recited in claim 2 of U.S. Patent No. 6,088,753 (the "'753 patent") includes one ***or more*** address busses. (Dkt. No. 299-15 (hereinafter "Vahid Opening Report") at ¶ 59.) Despite this plain meaning, Dr. Vahid engages in claim construction analysis that purports to narrow "at least one address bus" to mean ***only*** one address bus, based on an embodiment he says is disclosed in the specification. (Dkt. No. 299-12 – 299-14 (hereinafter "Vahid Rebuttal Report") at ¶¶ 29-43.) This is improper. Freescale should not be permitted to ambush MediaTek with surprise claim constructions disclosed only after the close of fact discovery in violation of Patent L.R. 4 and created for the purpose of inventing meritless non-infringement positions.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

Freescale's attempts to justify Dr. Vahid's new constructions have no merit. Freescale argues that, because Dr. Vahid parrots that he "applied the meaning to the term as it would have been understood by a person of ordinary skill in the art" (Dkt. No. 320 (hereinafter "Freescale Opp." at 12), there is no claim construction going on. Freescale is wrong. Even a passing look behind this gloss reveals Dr. Vahid to be importing limitations from the specification, restricting claims based on purported prosecution history or prior art references, and otherwise construing terms so narrowly that they bear no resemblance to their plain and ordinary meaning. (*See* Dkt. No. 299-5 (hereinafter "MediaTek Mot.") at 21-25.) Because all of the documents Dr. Vahid cites for his new and narrowing constructions were known to Freescale before the first Patent L.R. 4 deadline (June 29, 2012), moreover, there is no justification for Freescale's failure to timely disclose these constructions. (Dkt. No. 37 at 7.)

Freescale falsely compares Dr. Vahid's reports with those of MediaTek's experts. (Freescale Opp. at 13-15.) Tellingly, however, Freescale is unable to cite even a ***single*** example where MediaTek's experts limit claim terms based on the specification, prosecution history, or purported prior art, or otherwise engage in claim construction analysis. MediaTek's experts have not done so. Instead, they consistently (and simply) apply the plain and ordinary meaning of the claim terms (without further definition).

Arguing that Dr. Vahid should be permitted to apply his own meaning of terms (Freescale Opp. at 3-5), Freescale confuses the roles of the Court and jury. The Court instructs the jury on the meaning of claim terms, including in the case of terms with an obvious plain meaning the instruction to apply the term's ordinary meaning without further definition. The jury then applies the definitions the Court provides. Dr. Vahid's report, however, does not merely purport to assist the jury in applying claim terms to accused products. Dr. Vahid's seeks to argue to the jury what claim terms mean. In at least one instance, Dr. Vahid even directly contradicts the Court's construction. (*Compare* Dkt. No. 127 (Claim Construction Order) at 21 *with* Vahid Rebuttal Report at ¶ 46.) This violates black letter law. *See CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) ("[E]xpert witnesses [] testified before the jury regarding claim construction, and counsel argued conflicting claim constructions

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

to the jury. This was improper, and the district court should have refused to allow such testimony."); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) *aff'd*, 517 U.S. 370 (1996).

Finally, despite acknowledging that the Court has completed its claim construction process, and despite the inconsistency with its argument that no claim construction is going on, Freescale all but admits that Dr. Vahid's report is Freescale's bid to seek another bite at the claim construction apple.  (*See* Freescale Opp. at 16-17.)  But with the discovery period closed and trial scheduled to begin in February, the time for new claim constructions has long since passed.

For these reasons, and those set forth more fully in MediaTek's opening brief and below, Dr. Vahid's new constructions and his opinions based on these constructions should be stricken.

## II. ARGUMENT

### A. Federal Circuit Law Differentiates Between Applying Plain and Ordinary Claim Language, And Construing A Claim Term

Contrary to Freescale's tortured explanation of the law, the Federal Circuit and lower courts differentiate between:  (1) applying the ordinary and customary meaning of a claim term; and (2) construing a claim term.  A claim term that has a readily apparent plain meaning does not require construction.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1325–26 (Fed.Cir.2012) (holding a district court did not err in declining to construe claim terms upon concluding the terms had plain meanings that did not require additional construction). Applying the ordinary and customary meaning of a term simply requires using the meaning that the term would have to a person of ordinary skill in the art at the time of the invention—*i.e.* applying the widely accepted meaning of commonly understood words.  *See Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."); *id.* at 1314 (Where claim language has an ordinary meaning that is "readily apparent even to lay judges," claim construction "involves little more than the application of the widely accepted meaning of commonly understood words."); *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) ("In the absence of an express intent to impart a novel

meaning to the claim terms, the words are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art."); *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.,* C-09-2180-SBA, 2011 WL 500786, at * 17 (N.D. Cal. Feb. 9, 2011) ("Court finds that the plain and ordinary meaning of the term [] applies, and this claim term requires no further construction."); *CardioNet, Inc. v. Mednet Healthcare Technologies, Inc.*, CIV.A. 12-2517, 2013 WL 6047565, at *1 (E.D. Pa. Nov. 15, 2013) ("A claim term that has a readily apparent plain meaning may not require construction."). No further definition of the term is appropriate.

Freescale, through its expert Dr. Vahid, now attempts a second bite at the claim construction apple, proposing "novel meanings" that are neither "readily apparent" nor "widely accepted meaning[s] of commonly understood words." *Phillips*, 415 F.3d at 1313; *Brookhill-Wilk*, 334 F.3d at 1298. Freescale's claim that Dr. Vahid is simply applying, rather than attempting to construe, the nine claim terms raised in MediaTek's motion is belied by Dr. Vahid's detailed claim construction analysis, complete with its examination of the specification, analysis of the prosecution history, reliance on inventor testimony, and evaluation of prior art before the PTO.[1] These inquiries are tell-tale signs that claim construction is going on.

It is black letter law dating from *Markman* itself that parties are not permitted to argue claim construction to the jury. (MediaTek Mot. at 18 (cited cases therein).) Despite this law, Freescale argues that Dr. Vahid should be allowed to proffer his claim construction opinions to the jury, interpreting intrinsic evidence and opining as to terms' special meaning. (Freescale Opp. at 1-5.) Freescale fails to cites a single case that supports such a radical departure. There is no indication in the cases Freescale does cite of an expert testifying that a claim term should be defined in a specific way. Nor does Freescale identify a single case where an expert was permitted to promote a special construction to the jury interpreting a patent's specification, file history, or cited prior art. Instead, in every case Freescale cites, the expert simply applied the

---

[1] MediaTek's Motion originally identified ten terms. However, Freescale has agreed to withdraw Paragraphs 85-93 of Dr. Vahid's Opening Report, thereby dropping its new construction of the term "arbitration unit." (Freescale Opp. at 1, n 1.)

court's construction or else applied the plain and ordinary meaning of the terms (without further definition).

Thus, in *Cordis Corp. v. Medtronic Ave, Inc.*, the parties' experts merely applied the Court's "wall thickness" construction to the accused product. 511 F.3d 1157, 1181 (Fed. Cir. 2008). In *Broadcom Corp. v. Qualcomm Inc.*, the Federal Circuit observed with approval that "[t]he term 'selectively couples' was not construed by the district court because the parties agreed to let the ordinary meaning control," and "Broadcom has not argued for a new claim interpretation…." 543 F.3d 683, 696 (Fed. Cir. 2008). *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.* stands for the unremarkable proposition that, "[a]lthough claims construction is a question for the Court, not the jury, to decide, the application of claims language to the determination of infringement is a question of fact for the jury." 2012 U.S. Dist. LEXIS 159796, at * 5 (W.D. Pa. Nov. 7, 2012). And *Plew v. Ltd. Brands, Inc.,* cited by Freescale, actually refutes Freescale's argument: holding that experts are supposed to "apply[] the court's construction of the claim term to the accused product…; experts ***do not*** look to intrinsic evidence." 2012 U.S. Dist. LEXIS 14966, at *9 (S.D.N.Y. Feb. 6, 2012) (emphasis added).

Freescale relies on the discussion of the claim term "crystalline content" in *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1348 (Fed. Cir. 2001), to argue that experts may opine on the "interpretive gaps between a court's claim constructions and the accused products or prior art." (*See* Freescale Opp. at 4.) Freescale is mistaken. In *Biotec,* the district court construed the "crystalline content" term during the normal claim construction process. At trial, both sides offered competing expert testimony applying the court's construction. The parties disputed "which peaks in the x-ray diffraction plots of the [accused] product should be counted as representing crystalline content [as construed by the court]" *Biotec*, 249 F.3d at 1348. This was a dispute about the facts of the accused product, not about the meaning of a claim term. There is no suggestion in *Biotec* that experts were permitted to argue to the jury that intrinsic evidence required giving some special or different meaning to the "crystalline content" term. *Id*. Here, by contrast, Dr. Vahid does not simply opine as to the technical function and operation of the accused products. Instead, as detailed in MediaTek's

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

opening brief, Dr. Vahid purports to offer his own construction of claim terms to the jury – constructions that depart from the terms' plain and ordinary meanings. (MediaTek Mot. at 3-16.)

Freescale's attempts to distinguish the cases MediaTek cites also fail. For example, Freescale substantively misstates the court's decision in *CytoLogix Corp. v. Ventana Med. Sys.*, Inc., 424 F.3d 1168 (Fed. Cir. 2005). Freescale argues that *CytoLogix* "is irrelevant to whether the Court should allow the proposed testimony of both parties' experts on such plain and ordinary meaning" (Freescale Opp. at 17.) But *CytoLogix* precludes Dr. Vahid's attempt to argue to the jury, based on intrinsic evidence, what the special meanings of claim terms should be. *CytoLogix* found that permitting the parties to "present[] expert witnesses who testified before the jury regarding claim construction, and counsel [to] argue[] conflicting claim constructions to the jury. . . was improper, and the district court should have refused to allow such testimony despite the agreement of the parties…" *Id.* at 1172. *CytoLogix* is thus on point, and prohibits Dr. Vahid's proposed testimony—particularly where Freescale seeks to introduce its new constructions more than a year after the Court conducted its *Markman* hearing.

Finally, Freescale attempts to distinguish *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 11-CV-01846-LHK, 2012 WL 2571332, at *3 (N.D. Cal. June 30, 2012), on the basis that Apple's expert's credentials were challenged. (Freescale Opp. at 19.) In fact, the court did not exclude this expert's testimony based on his lack of credentials. Instead, the testimony was excluded because it went to the legal question of patent scope, and "[t]o the extent the jury needs additional expert guidance about issues of patent scope, it is an issue for claim construction, appropriately addressed by the Court." *Apple,* 2012 WL 2571332, at *3.

Because Dr. Vahid's proposed claim construction testimony is prohibited by law, it should be stricken.

### B. Dr. Vahid's Opinions Seek to Construe the Claim Terms Rather Than Apply the Plain and Ordinary Meaning or the Court's Constructions

Freescale relies on the following self-serving statement from Dr. Vahid's report to argue that Dr. Vahid is not engaged in claim construction: "For the claim terms defined by the court or agreed upon by the parties, I have used that meaning. For the other claim terms, I have applied

the meaning to the term as it would have been understood by a person of ordinary skill in the art around the time the patent was filed." (Freescale Opp. at 12 (citing Vahid Rebuttal Report at ¶ 10).) Having made this statement, however, Dr. Vahid proceeds to repeatedly breach it.

As discussed in MediaTek's opening brief, Dr. Vahid does ***not*** apply the plain and ordinary meaning of the terms at issue. Instead, he provides his own narrow constructions for the terms based on his reading of the specification, file history, and even extrinsic evidence, and then applies his newly-minted constructions to the accused products (or prior art). (*See, e.g.*, Freescale Opp. at 6 (relying on the Court's construction of "predetermined" from a ***different patent*** to construe "interconnecting a plurality of components . . . in a predetermined way"), 8-9 (pointing to disclosures in the patent specification to define "information indicating a clock frequency requirement"), 24-25 (considering prior art cited during prosecution to define "at least one address bus").) Dr. Vahid's numerous and previously-undisclosed constructions, as well as the invalidity and non-infringement opinions based on these ambush constructions, should be stricken. (MediaTek Mot. at 3-17.)

### 1. "at least one address bus" ('753 patent, claim 2)

With respect to the term "at least one address bus," rather than apply the "widely accepted meaning of commonly understood words" (*Phillips*, 415 F.3d at 1314), Dr. Vahid uses seven pages of his report to argue for his own narrowing construction of the term. (Vahid Rebuttal Report ¶¶ 30-43.) The plain language of claim 2 of the '753 patent recites "at least one address bus and at least first and second data busses." If Dr. Vahid were applying the plain meaning of "at least one" (i.e., "one or more") as Freescale argues, then Dr. Vahid would have to agree that claim 2 covers a bus arrangement with two addresses buses and two data buses. Freescale mischaracterizes its own expert's opinion on this term by arguing that Dr. Vahid addresses implementations that feature two or more address busses. (Freescale Opp. at 21). But in the very same paragraphs Freescale cites, Dr. Vahid opines that the claim requires use of "a ***single*** address bus and two data buses." (*See, e.g.*, Vahid Rebuttal Report at ¶ 37.) Dr. Vahid's report, in other words, demonstrates the fallacy of Freescale's argument.

After first claiming Dr. Vahid is applying the plain meaning of "at least one" (Freescale Opp. at 21), Freescale proceeds to contradict itself by admitting that Dr. Vahid has construed this term based on the Okazawa reference and the prosecution history. (Freescale Opp. at 24-25.) The cases Freescale cites in its attempt to justify Dr. Vahid's new construction demonstrate that Freescale misunderstands the difference between a *Markman* hearing and an infringement trial. All three of Freescale's cited cases address experts offering their opinions to the court in a claim construction hearing. None support testifying to such opinions before a jury. *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("The record in the instant case makes it clear that the district court's construction was correct."); *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005) ("To reach a proper construction, the district court must look first to the claims, the specification, and the prosecution history, and if further guidance is needed, to extrinsic evidence, such as dictionaries and expert opinions."); *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1308 (Fed. Cir. 2005) ("[T]he district court correctly construed the '466 patent's claim term.").

Freescale's argument that Dr. Vahid has employed accepted claim construction principles (Freescale Opp. at 24-25) thus concedes that Dr. Vahid is: (1) construing claim terms (not applying plain meaning); (2) doing so long after the Patent L.R. 4 deadline; and (3) doing so for the impermissible purpose of arguing claim construction to the jury.

### 2.   "interconnecting a plurality of components . . . in a predetermined way" ('753 patent, claim 2)

Freescale concedes that Dr. Vahid fails to use the plain and ordinary meaning of the term "interconnecting a plurality of components ... in a predetermined way." (Freescale Opp. at 5-6.) There is no dispute that the Court did not construe this term in the '753 patent, and in fact ordered that the "interconnecting" term requires no construction. (Dkt. No. 127 at 28.) Thus, the plain and ordinary meaning should apply. Yet Freescale admits that, instead of applying the plain and ordinary meaning, Dr. Vahid substitutes his own construction based on the meaning the Court gave to "predetermined" in a different patent with claims directed to a different invention based on a completely different specification. (Freescale Opp. at 6.) Dr. Vahid's use of the

Court's construction of "predetermined" from the U.S. Patent No. 6,311,244 (the "'244 patent") is improper.

Citing *Aventis Pharms., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1380 (Fed. Cir. 2013), Freescale argues that the term "predetermined" in the '753 patent should be given the same meaning as in the '244 patent. (Freescale Opp. at 6.) What Freescale cites, however, is the ***dissent*** in *Aventis*. The *Aventis* court actually held that the district court's construction was in error because the lower court's reliance upon the related patent was "of little help" and there was "no justification" for applying the definition of the term "substantially pure" from a related patent to the term "substantially pure regioisomer" in the patent-at-issue. *Aventis*, 715 F.3d at 1375-76. Here there is no justification at all because the '244 patent is directed to a completely different invention, based on a totally different specification.

### 3. "portion of the available bandwidth" ('845 patent, claim 21)

Freescale's argument regarding "portion of the available bandwidth" once again concedes that Dr. Vahid performed a claim construction analysis rather than apply the plain and ordinary meaning of the words. During his deposition, Dr. Vahid testified regarding the plain meaning of "portion," but in his expert report he proposes a narrowing construction that limits the term to embodiments disclosed in the specification and provisional application. (MediaTek Mot. at 8.) Freescale argues that, when Dr. Vahid testified in deposition that the word "portion" could mean "any or all," he was not talking about the meaning of the term "in the context of the '845 patent." (Freescale Opp. at 7.) In other words, Freescale acknowledges that the plain meaning of "portion" includes "any or all," and that Dr. Vahid is using the '845 patent's specification and prosecution history to import a different, more narrow meaning of the term. Specifically, instead of "any or all," Dr. Vahid proposes to offer a different construction of this term to the jury based on two pages-worth of analysis of the specification and the provisional application in his report. (Vahid Rebuttal Report at ¶¶ 155-163.) These opinions should be stricken. (*See* MediaTek Mot. at 7-8, 21-23.)

### 4. "coupled" ('845 patent, claim 1)

Dr. Vahid proposes to testify to the jury that "coupled" requires a "direct" connection and excludes an indirect connection with intervening components. (MediaTek Mot. at 8-10.)

1  Freescale cites to Dr. Vahid's discussion of the i.MX6SL product in paragraph 269 of Dr.
2  Vahid's rebuttal report and argues that Dr. Vahid applied the plain and ordinary meaning of
3  "coupled" as "communicate with" or requiring either an "electrical connection" or a "direct
4  transfer of information." (Freescale Opp. at 7.)  However, Freescale omits paragraph 274 where
5  Dr. Vahid states: "As I laid out in my non-infringement analysis of the '845 patent with respect
6  to the i.MX6 DQ and i.MX6SDL, the specification and provisional application require that a
7  single bus is coupled to each master subsystem and both arbitration units." (Vahid Rebuttal
8  Report at ¶ 274.) In Dr. Vahid's analysis of the other i.MX6DQ and i.MX6SDL products, he
9  performs a claim construction analysis and defines "coupled to" as "connected to" based on his
10 examination of the provisional application and an embodiment in the specification. (*See* Vahid
11 Rebuttal Report at ¶¶ 229-230; MediaTek Mot. at 9-10.)  Dr. Vahid's impermissible claim
12 construction should be stricken.

   **5.** **"DMA subsystem is configured and arranged such that, when the first and second arbitration units enables the DMA subsystem to access each of the first and second slave subsystems, the DMA controller can cause data to be transferred between the first slave subsystem and the second slave subsystem" ('845 patent, claim 1)**

16   In his rebuttal report, Dr. Vahid proposes to testify to the jury that this term "imposes a
17 temporal requirement on the claimed DMA transfer." (Vahid Rebuttal Report at ¶ 234, 280; *see*
18 *also* MediaTek Mot. at 10.)  Rather than apply the plain and ordinary meaning of the term, Dr.
19 Vahid construes the term to require that the first and second arbitration units must enable the
20 DMA subsystem to access both slave subsystems at the same time. (Vahid Rebuttal Report at ¶
21 234; MediaTek Mot. at 10-11.)  Dr. Vahid then argues that the accused products do not infringe
22 because the accused arbitration units do not enable the DMA subsystem "to access both the
23 [slave subsystems] before and ***then maintain access*** during a DMA data transfer between the
24 [slave subsystems]." (Vahid Rebuttal Report at ¶ 235 (emphasis added); *see also* MediaTek
25 Mot. at 10-11.)   But during his deposition, Dr. Vahid conceded that an embodiment of the '845
26 patent allowed for a DMA transfer to occur across multiple memory cycles. (*See* MediaTek
27 Mot. at 11-12.)  Dr. Vahid thus conceded, in other words, that his construction excludes
28 disclosed embodiments. *See Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318,

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

1326 (Fed. Cir. 2013) ("a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.") (quoting *On–Line Techs., Inc. v. Bodenseewerk Perkin–Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004)).

Realizing that Dr. Vahid's original opinion in his rebuttal report was incorrect based on his deposition testimony, Freescale opposition now contends that MediaTek has misread Dr. Vahid's opinion, and attempts to revise this opinion contrary to the express terms of his report. Specifically, Freescale now argues that Dr. Vahid does not require that the DMA subsystem access both first and second slave subsystems at the same time and in a single transaction. (Freescale Opp. at 8.) However, Freescale then concedes that Dr. Vahid has construed the term to require this "temporal requirement," arguing that Dr. Vahid's opinion is that the DMA subsystem can only access "both slave subsystems across multiple memory cycles *so long as both* the first and second arbitration units have granted access." (*Id.*) In other words, according to Freescale, Dr. Vahid construes the claim term to require that the DMA subsystem must have access to both slave subsystems at the same time. Dr. Vahid should be precluded from offering any of Freescale's various claim construction opinions regarding this term to the jury.

### 6.   "information indicating the clock frequency requirement" ('331 patent, claim 11)

Freescale's argument for this term (Freescale Opp. at 8-9) demonstrates only that Dr. Vahid performed an improper claim construction analysis. In his rebuttal report, Dr. Vahid proposes to offer a construction to the jury for this term based on his analysis of the patent specification and specific embodiments. (MediaTek Mot. at 12-13.) Freescale points to these disclosures in the patent specification (*i.e.* intrinsic evidence) and explains that Dr. Vahid relied upon them to define "information indicating the clock frequency requirement" of the '331 patent. (*Id.*) This is a tacit admission that Dr. Vahid did not use commonly understood meanings of the words of this claim term. Rather, he relied on intrinsic evidence to construe the term. Dr. Vahid's improper claim construction opinions should be stricken.

### 7.   "controller" ('331 patent, claims 11 and 35)

Freescale does not deny that Dr. Vahid has performed an improper claim construction analysis for the term "controller" in the '331 patent. In his rebuttal report, Dr. Vahid examines

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

the provisional application, specification, and inventor testimony to form his claim construction opinion that limits the "controller" to exclude implementations in software. Freescale's opposition does not deny that Dr. Vahid construes the term. Instead, Freescale acknowledges that Dr. Vahid has not applied the plain and ordinary meaning, by quoting portions of Dr. Vahid's report where he relies on the '331 specification to assign a narrowing construction for the term "controller." (Freescale Mot. at 9-10.)

In its opening brief, MediaTek cites to Magistrate Corley's order which makes clear that Dr. Vahid's construction contradicts the plain meaning of the claim language. (MediaTek Mot. at 13.) Freescale responds to this by arguing that "Judge Corley, however, was not asked to make substantive claim construction findings . . . and did not strike any proposed constructions from this case." (Freescale Opp. at 10.) In other words, Freescale argues that Dr. Vahid should be permitted to construe the term "controller." As such, Freescale's opposition appears to concede that Dr. Vahid purports to construe the term "controller" to the jury rather than apply the plain and ordinary meaning.

### 8. "same priority" ('845 patent, claim 21)

Rather than apply the plain and ordinary meaning of this term, Dr. Vahid construes this to mean that "same priority" in claim 21 "must refer to a property associated with the request at the time the request in generated." (MediaTek Mot. at 15.) In its opposition, Freescale does not contend that Dr. Vahid is applying the claim language to an accused product or prior art. Instead, Freescale summarizes Dr. Vahid's construction of the claim and then attacks MediaTek for not providing support for the plain and ordinary meaning of "same priority." (Freescale Opp. at 10-11.) However, the plain and ordinary meaning of a term is simply "the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. Dr. Vahid should not be permitted to vary the plain meaning of "same priority" by resorting to specification and prosecution history arguments.

### 9. "to determine a clock frequency requirement" ('331 patent, claim 35)

Freescale's argument for this term is inconsistent. First, Freescale cites Dr. Vahid's self-serving statement that he is merely applying the Court's construction. (Freescale Opp. at 11.) But despite claiming to apply the Court's construction, Dr. Vahid proceeds to create his own

definition for the term.  (MediaTek Mot. at 17.)  Freescale then argues that because the Court's construction was based on a definition that Freescale proposed, Dr. Vahid somehow has license to narrow the meaning of this term through further construction.  (Freescale Opp. at 11.)  Finally, Freescale reverts to contending that Dr. Vahid's new construction of "determine" is not a construction at all, but is instead merely a discussion of how the specification provides an adequate written description of the term.

Freescale's argument has no merit.  Freescale cannot avoid the fact that:  (1) Dr. Vahid expressly states that, irrespective of the Court's construction, the word "determine" also "requires [that] the DPC actively processes information from the monitored processor(s) to arrive at the clock frequency requirement"; (2) Dr. Vahid makes this contention in a section of his report titled "Claim Construction of 'to determine a clock frequency requirement'"; and (3) the Court's construction of determine ("ascertain by observation") is different than Dr. Vahid's construction ("actively processes information").  (*See* Vahid Opening Report at ¶ 184; Freescale Opp. at 17.)

Not only does Dr. Vahid propose to argue a different construction of "determine" to the jury from what the Court has ordered, Dr. Vahid's proposed construction violates  basic principles of claim construction law by departing from the plain and ordinary meaning, limiting the scope of the claims to a disclosed embodiment, importing limitations from the specification, and excluding disclosed embodiments.  (*See* MediaTek Mot. at 19-25.)

### C. Contrary to Freescale's Assertion, Dr. Vahid Does Not Use the Same Method or Offer the Same Types of Opinions as MediaTek's Experts

Freescale attempts to excuse its untimely introduction of claim construction arguments by stating that "MediaTek withheld the bulk of the claim construction positions set forth above until expert discovery."  (Freescale Opp. at 20.)  Freescale suggests that MediaTek's experts used the same methodology and performed the same type of claim construction that Dr. Vahid does.  (Freescale Opp. at 13-15.)  Freescale is wrong.  Freescale has not identified a single example of one of MediaTek's experts providing a "construction" of a claim term, *i.e.* opinion on how specification, prosecution history, cited prior art or extrinsic evidence alter the scope of a claim term.  Instead, MediaTek's experts uniformly apply the plain and ordinary meaning of each term

1  -- the ordinary meaning that is "readily apparent even to lay judges," involving "little more than
2  the application of the widely accepted meaning of commonly understood words." *Phillips*, 415
3  F.3d at 1314. Nowhere did Dr. Asanovic or Mr. Narad provide any opinions that any of the
4  claim terms should be interpreted in such a way that: (1) departed from the ordinary and
5  customary meaning; (2) imported limitations from the specification; (3) excluded disclosed
6  embodiments; or (4) ignored the Court's claim construction order. (*See, e.g.*, Freescale Opp. at
7  13-15.) Freescale's "everybody's doing it" argument has no merit.

### D. The Court Should Reject Freescale's Request For a Second Round Of Claim Construction On The Eve Of Trial

#### 1. Freescale's Request is Untimely

Pursuant to Patent L.R. 4, the Court ordered a detailed schedule for claim construction in this case. During this Court-ordered claim construction process, Freescale never proposed that any of the terms set forth in MediaTek's Opening Brief required construction. Freescale then waited until its Rebuttal Expert Report to provide detailed opinions from its expert regarding the specific constructions of multiple terms from each of the asserted patents. The Court set forth an orderly process for the exchange of claim terms, proposed constructions, briefing, and a hearing on claim construction. It is improper for Freescale to remain silent during the discovery period only to ambush MediaTek with its claim constructions after the close of fact discovery. Patent L.R. Rule 4 exists to prohibit such unfair tactics.

According to Freescale, if Dr. Vahid has provided claim construction opinions, then it is not necessary to exclude his opinions, but instead the Court has a duty to resolve the claim construction dispute. (Freescale Mot. at 15-16.) Freescale's proposal that the Court address its new substantive claim construction arguments now (1) is flatly inconsistent with its position that Dr. Vahid's constructions are nothing more than the "plain and ordinary" meaning of the terms, and (2) would severely prejudice MediaTek. Holding another *Markman* hearing at this late stage after fact and expert discovery have been closed for months, and when MediaTek is unable to go back and re-take discovery on other positions under Freescale's new constructions, would throw any sense of fairness to MediaTek out the window. For this reason alone, Freescale's request to re-open the claim construction process for the nine new terms should be rejected. *See e.g.,*

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

*ActiveVideo*, 694 F.3d at 1326 ("The district court did not err in concluding that these terms have plain meanings that do not require additional construction… It was up to the jury to determine from the evidence presented at trial whether the ActiveVideo system satisfied the plain and ordinary meaning of the 'superimposing' limitations. We affirm the district court's denial of ActiveVideo's JMOL of non-infringement for the '214 patent.").

### 2. Dr. Vahid's Proposed Claim Constructions Violate Basic Canons of Claim Construction Law

Finally, the Court should refuse Freescale's untimely request for a supplemental claim construction process for the additional reason that the constructions proposed by Dr. Vahid are unreliable and incorrect on their face. As set forth in MediaTek's Opening Brief, Dr. Vahid's claim construction opinions violate basic canons of claim construction law. Dr. Vahid's proposed constructions would contradict the plain and ordinary meaning of the claim terms (MediaTek Mot. at 21-22), import limitations from the specifications to improperly narrow the scope of the claims (*Id.* at 22-23), and impermissibly exclude preferred embodiments. (*Id.* at 23-24.) Accordingly, wholly apart from the severe prejudice that the grant of Freescale's improper and untimely request for an eve-of-trial supplemental claim construction process would impose on MediaTek, Freescale's request should be rejected for the additional reason that the new constructions Freescale seeks on their face improperly conflict with the plain and ordinary meanings of the claim terms.

## III. CONCLUSION

For all of the reasons above, as well as for those presented in MediaTek's original motion, MediaTek respectfully requests that this Court grant its motion to strike, or in the alternative preclude under *Daubert*, Dr. Vahid's improper claim construction opinions.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, California 94304

| | |
|---|---|
| Dated:  November 26, 2013 | Respectfully submitted,<br>MEDIATEK INC.<br>By their attorneys,<br><br>*/s/ James M. Dowd*<br>Keith L. Slenkovich  (SBN 129793)<br>   Keith.Slenkovich@wilmerhale.com<br>Joseph F. Haag  (SBN 248749)<br>   Joseph.Haag@wilmerhale.com<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>950 Page Mill Road<br>Palo Alto, CA  94304<br>Telephone:  (650) 858-6000<br>Facsimile:   (650) 858-6100<br><br>William F. Lee (*pro hac vice*)<br>   William.Lee@wilmerhale.com<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>60 State Street<br>Boston, MA  02109<br>Telephone:  (617) 526-6000<br>Facsimile:   (617) 526-5000<br><br>James M. Dowd  (SBN 259578)<br>   James.Dowd@wilmerhale.com<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>350 S. Grand Avenue, Suite 2100<br>Los Angeles, CA  90071<br>Telephone:  (213) 443-5300<br>Facsimile:   (213) 443-5400<br><br>*Attorneys for Plaintiff* MEDIATEK INC. |