1  RUDY Y. KIM (CA SBN 199426)
   RudyKim@mofo.com
2  ALAN COPE JOHNSTON (CA SBN 66334)
   ACJohnston@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, California 94304
   Telephone: (650) 813-5600
5  Facsimile: (650) 494-0792

6  ALEXANDER J. HADJIS (pro hac vice)
   AHadjis@mofo.com
7  JOSHUA A. HARTMAN (pro hac vice)
   JHartman@mofo.com
8  MORRISON & FOERSTER LLP
   2000 Pennsylvania Avenue, NW
9  Suite 6000
   Washington, DC 20006
10 Telephone: (202) 887-1500
   Facsimile: (202) 887-0763
11
   Attorneys for Defendant-Counterclaimant
12 FREESCALE SEMICONDUCTOR, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| MEDIATEK INC., <br><br> Plaintiff, <br><br> v. <br><br> FREESCALE SEMICONDUCTOR, INC., <br><br> Defendant. | Case No. 4:11-cv-05341 YGR (JSC) <br><br> **FREESCALE SEMICONDUCTOR, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE CERTAIN PORTIONS OF MEDIATEK'S EXPERT REPORTS** <br><br> Hon. Yvonne Gonzalez Rogers <br> Date: December 17, 2013 <br> Time: 2:00 p.m. <br> Courtroom: 5 |

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | MEDIATEK'S INFRINGEMENT CONTENTIONS FOR THE '753 PATENT DO NOT DISCLOSE MR. NARAD'S DOCTRINE OF EQUIVALENTS THEORY | 1 |
|  | A.  MediaTek Misrepresents Its Doctrine Of Equivalents Contentions | 1 |
|  | B.  MediaTek's Doctrine Of Equivalents Contentions Do Not Disclose Mr. Narad's Doctrine Of Equivalents Opinion | 2 |
| III. | MEDIATEK'S ATTEMPT TO RECHARACTERIZE ITS '331 INFRINGEMENT CONTENTIONS AS DISCLOSING ITS CURRENT THEORIES LACKS MERIT | 3 |
|  | A.  MediaTek's Infringement Contentions Failed To Specifically Identify "Software Running On The ARM" As Meeting The "Controller" Limitations Of Claims 11 And 35 Of The '331 Patent | 4 |
|  | 1.  MediaTek's quotation of documents vaguely referring to "software" fails to specifically identify what elements satisfy the "controller" limitations | 4 |
|  | 2.  MediaTek's reliance on Judge Corley's order is misplaced | 6 |
|  | 3.  Freescale's discovery conduct and invalidity contentions have no bearing on the adequacy of MediaTek's infringement contentions | 7 |
|  | B.  MediaTek's Contentions Fail To Accuse The CCM Of Satisfying The "Clock Controller" Limitation Of Claim 35 | 8 |
|  | C.  MediaTek Concedes That Its Contentions Fail to Disclose The Infringement Theory Provided In Mr. Narad's Expert Report | 10 |
| IV. | MEDIATEK'S INVALIDITY CONTENTIONS | 11 |
|  | A.  MediaTek Incorrectly Confuses The Burden Of Proof With Obligations To Participate In Discovery | 11 |
|  | B.  That MediaTek Objected And Responded To Interrogatory No. 24 Does Not Discharge Its Duty To Disclose Supplement Its Response To Identify Its Experts' Validity Theories | 12 |
|  | C.  MediaTek's Motion Fails To Establish That Its Failure To Supplement Its Response To Interrogatory No. 24 Was Harmless | 14 |
|  | D.  Sanctions Should Issue Regardless Of Bad Faith, Willfulness, Or Fault | 14 |
| V. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Apple Inc. v. Samsung Elecs. Co.,
  No. 11-cv-01846-LHK, 2012 U.S. Dist. LEXIS 108648 (N.D. Cal. Aug. 2, 2012) ............... 15

Bookhamer v. Sunbeam Prods.,
  No. C 09-06027 EMC, 2012 U.S. Dist. LEXIS 170708 (N.D. Cal. Nov. 30, 2012) ........ 14, 15

Fleming v. Escort, Inc.,
  No. CV 09-105-S-BLW, 2010 U.S. Dist. LEXIS 101938 (D. Idaho Sept. 24, 2010) ............ 12

Gen-Probe Inc. v. Becton, Dickinson & Co.,
  Nos. 09cv2319 BEN (NLS), 10cv0602 BEN (NLS), 2010 U.S. Dist. LEXIS 93224
  (S.D. Cal. Sept. 7, 2010) .................................................................................................... 12

Goodman v. Staples the Office Superstore, LLC,
  644 F.3d 817 (9th Cir. 2011) ......................................................................................... 13, 14

Helfand v. Gerson,
  105 F.3d 530 (9th Cir. 1997) ............................................................................................... 14

Oracle Am., Inc. v. Google Inc.,
  No. C 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ................................ 5

Oracle USA, Inc. v. SAP AG,
  264 F.R.D. 541 (N.D. Cal. 2009) ......................................................................................... 12

R & R Sails, Inc. v. Ins. Co. of the Pa.,
  673 F.3d 1240 (9th Cir. 2012) .............................................................................................. 15

Shared Memory Graphics LLC v. Apple Inc.,
  812 F. Supp. 2d 1022 (N.D. Cal. 2010) ............................................................................... 11

United States v. Thrasher,
  483 F.3d 977 (9th Cir. 2007) .............................................................................. 6, 7, 8, 10

Yeti by Molly Ltd. v. Deckers Outdoor Corp.,
  259 F.3d 1101 (9th Cir. 2001) ......................................................................................... 13, 15

**STATUTES & OTHER AUTHORITIES**

Fed. R. Civ. P.
    26 ................................................................................................................................ 13, 14
    26(a) ................................................................................................................................... 15
    26(e)(1) .............................................................................................................................. 12
    37 ........................................................................................................................ 13, 14, 15
    37(c) ................................................................................................................................... 14
    37(c)(1) .................................................................................................................. 12, 13, 15

Patent Local Rule 3-1 ................................................................................................................ 11

## I. INTRODUCTION

MediaTek's experts propose to offer expert opinions at trial that exceed the scope of MediaTek's infringement contentions, that MediaTek was precluded from offering by prior order of this Court, and that MediaTek failed to disclose in response to Freescale's interrogatories. In attempting to oppose Freescale's motion, MediaTek misrepresents its contentions, misapplies this Court's orders, and misstates the controlling case law. Accordingly, MediaTek's arguments should be rejected and the Court should strike MediaTek's experts' improper opinions.

## II. MEDIATEK'S INFRINGEMENT CONTENTIONS FOR THE '753 PATENT DO NOT DISCLOSE MR. NARAD'S DOCTRINE OF EQUIVALENTS THEORY

MediaTek argues that its infringement contentions for claim 2 of the '753 patent adequately disclose the doctrine of equivalents theory offered by its expert, Charles Narad. It first asserts that its contentions included a "function-way-result" statement in connection with claim 2's "bus arrangement" limitation, which requires "at least one address bus." (Dkt. No. 332-5 at 11.) MediaTek then asserts that its function-way-result statement is more than mere boilerplate. Neither assertion is true.

### A.  MediaTek Misrepresents Its Doctrine Of Equivalents Contentions

MediaTek represents that its contentions state how Freescale's products practice the "bus arrangement having at least one address bus" limitation under the doctrine of equivalents. (Id. at 11.) As an example, MediaTek points to its contention that "'because the AHBMAX [in Freescale's i.MX50 products] performs substantially the same function of performing two address transactions between components,' the 'differences' between it and the claimed 'bus arrangement' 'are insubstantial and the products would infringe under the doctrine of equivalents.'" (Id. (quoting Dkt. No. 306-17 at 5-7).)

But that contention, notwithstanding that it is boilerplate devoid of the substance that MediaTek is only now revealing, is provided not in connection with the "bus arrangement having at least one address bus" limitation. It is directed to a different limitation requiring "performing on said bus arrangement at least a first address transaction between said first and second components and at least a second address transaction between said third and fourth components."

(See Dkt. No. 306-17 at 3-6.) In fact, MediaTek's contentions contain no "function-way-result" statement for the "bus arrangement having at least one address bus" limitation at all. (See id. at 1-2; see also Hartman Decl. Ex. 1, MediaTek's Am. Discl. of Asserted Claims and Infr. Conts. (Amended Infringement Contentions), Ex. C-2 at 1-2, Ex. C-3 at 1-6, Ex. C-4 at 1-3, Ex. C-5 at 1-10, Ex. C-6 at 1-13.) Moreover, connecting the "function-way-result" statement relied on by MediaTek to the "bus arrangement having at least one address bus" limitation is nonsensical, as the identified function — "performing two address transactions between components" — is not accomplished by the "bus arrangement" limitation of claim 2.

MediaTek's arguments about its contentions are misleading at best. In support of its opposition, MediaTek submitted excerpts of the '753 claim charts from its Amended Infringement Contentions. In preparing these excerpts, MediaTek omitted all of the pages between the "bus arrangement having at least one address bus" limitation and the "function-way-result" statements included for other limitations, such that the "function-way-result" statements appear to apply to the "bus arrangement" limitation. (Compare Dkt. No. 332-7 (omitting pages 2-9 and 11 from Amended Infringement Contentions Ex. C-2) with Hartman Decl. Ex. 1, Amended Infringement Contentions Ex. C-2 (complete).)

**B.     MediaTek's Doctrine Of Equivalents Contentions Do Not Disclose Mr. Narad's Doctrine Of Equivalents Opinion**

Even if the function-way-result statements discussed above somehow related to the "bus arrangement" limitation, they do not sufficiently disclose Mr. Narad's doctrine of equivalents opinions, as MediaTek failed to identify both the alleged "way" and "result" for the "bus arrangement having at least one address bus" limitation.

The below chart compares the function, way, and result disclosed in MediaTek's infringement contentions with the function, way, and result disclosed in Mr. Narad's report:

|  | MediaTek's Infringement Contentions | Narad '753 Infringement Report, Paragraph 143 |
|---|---|---|
| Function | "[P]erforming two address transactions between components" (Dkt. No. 306-17 at 5-6) | "[E]xchanging address information between two different sets of components" (Dkt. No. 306-4 at 83) |
| Way | None identified (see Dkt. No. 306-17 at 5-6) | "[B]y using one or more signal lines" (Dkt. No. 306-4 at 83) |

| Result | None identified (see Dkt. No. 306-17 at 5-6) | "[R]espective first and second data transfers that can occur simultaneously" (Dkt. No. 306-4 at 83) |

As this chart shows, MediaTek's infringement contentions failed to disclose the function, the way, and the result of the "bus arrangement having at least one address bus" limitation that Mr. Narad identified in paragraph 143 of his report. Accordingly, Mr. Narad's doctrine of equivalents theory should be struck from his report.

### III. MEDIATEK'S ATTEMPT TO RECHARACTERIZE ITS '331 INFRINGEMENT CONTENTIONS AS DISCLOSING ITS CURRENT THEORIES LACKS MERIT

Mr. Narad has offered three infringement theories that MediaTek sought, and was denied, leave to amend its infringement contentions to include. In opposition, MediaTek asserts that its contentions adequately disclosed those infringement theories. MediaTek's contention is simply contrary to Judge Corley's orders.

MediaTek fails to recognize a fundamental problem with its position — if its contentions already included the infringement theories for which it sought leave to amend, it should not have needed to seek leave in the first place and it would not have been denied leave to amend its contentions. Indeed, when asked by Judge Corley, MediaTek could not explain what prompted its decision to seek leave to add these infringement theories (see Dkt. No. 240 at 50:7-24), and, in its opposition, MediaTek has continued to avoid explaining its decision to seek leave.

MediaTek does not address how its contentions could have specifically identified where in Freescale's accused products the disputed limitations of claims 11 and 35 are found if they required such clarification. MediaTek does not explain its prior representation to the Court that the "software" that it sought to leave to add to its infringement contentions was "part of the DVFS load tracking block" ((Dkt. No. 306 at 12-13), a representation that is inconsistent with its current theory that software on the ARM processor, not the DVFS load tracking block, satisfies claims 11 and 35. And MediaTek does not explain why it chose simply to ignore Judge Corley's order denying it leave to amend its contentions by having its expert, Mr. Narad, offer infringement opinions consistent with the very theories that MediaTek was denied leave to assert.

### A. MediaTek's Infringement Contentions Failed To Specifically Identify "Software Running On The ARM" As Meeting The "Controller" Limitations Of Claims 11 And 35 Of The '331 Patent

MediaTek argues that its infringement contentions adequately disclosed its theory that software running on the ARM processor in Freescale's products is used to practice the three limitations required of the "controller" and "dynamic power controller" of claims 11 and 35, respectively. (Dkt. No. 332-5 at 2.) Again, MediaTek is incorrect.

#### 1. MediaTek's quotation of documents vaguely referring to "software" fails to specifically identify what elements satisfy the "controller" limitations

MediaTek asserts that its contentions sufficiently identified software running on the ARM processor as forming part of the claimed "controller" because they "name the 'ARM Platform, which supports dynamic clock frequency scaling' as the claimed 'processor comprising . . . a controller." (Dkt. No. 332-5 at 2.) MediaTek is mischaracterizing its contentions. MediaTek's contentions do not allege that the ARM platform is claim 11's "processor comprising . . . a controller." Rather, they identify the entire accused product — the i.MX31, i.MX35, or i.MX50 — of being the "processor." (See, e.g., Dkt. No. 130-6 at 15 (alleging that preamble of claim 11 is met because "[t]he i.MX50 Application Processor is a processor that includes at least one clock signal operating at a plurality of frequencies."); id. at 1 (same for i.MX31 and i.MX35 processors).) Further, MediaTek's contentions allege that the ARM platform is the claimed "component" of the "processor that "receiv[es] the at least one clock signal," rather than being the "processor" itself. (Id. at 3, 17.)

Moreover, that MediaTek contained an explicit allegation that the ARM platform satisfies one element of claim 11 suggests that it was not accusing software on the ARM platform of satisfying the "controller" limitations of claim 11. (Compare id. at 3 (limitation 11[a] met because, "[f]or instance, the MCIMX31 and MCIMX35 each include the ARM platform which receives a clock signal.") with id. at 4 (limitation 11[b] met because, "[f]or instance, the MCIMX31 and MCIMX35 each include a CCM and/or DVFS load tracking block that control the system frequency, distributes clocks, and enables dynamic voltage frequency scaling.").) MediaTek clearly knew how to identify the ARM platform as an accused element when it wanted

1   to do so, yet did not include in its contentions any explicit accusation that software on the ARM
2   platform satisfied any of the "controller" limitations.
3         Furthermore, MediaTek opposition does not address the failure of the reference manual
4   quotations it included in its contentions to specifically identify the software or source code
5   routines that satisfy the limitations that "controller" and "dynamic power controller" limitations, a
6   point Freescale raised in its opening brief. (Dkt. No. 306 at 13-14.) In particular, claim 11
7   requires a "controller coupled to at least one of the components to identify a clock frequency
8   requirement of the processor," "adapted to determine a voltage requirement based on the clock
9   frequency requirement of the processor," and "adapted . . . to sequence a transition to a power
10  state defined by the clock frequency requirement and the voltage requirement." (Dkt. No. 130-6
11  at 4.) MediaTek has not pointed to any reference manual quotation included in its contentions
12  that specifically identifies the software or source code routines that meet these claim elements.
13  This failure to specifically identify any such software or source code is particularly noteworthy
14  given that MediaTek's expert, Mr. Narad, has now opined that software running on the ARM
15  carries out both the "determine a voltage requirement" and "sequence a transition to a power
16  state" limitations. (Narad '331 Infr. Rpt. Ex. C-1 at 13-14 (source "code determines whether the
17  frequency should move up or down by examining the two FSVAI bits, and then accesses the table
18  in order to determine the voltage requirement."), 18 ("The controller software (software running
19  on the ARM processor) writes to registers to initiate the change to the new operating frequency
20  and operating voltage, determined from the table described above."). Oracle Am., Inc. v. Google
21  Inc., No. C 10-03561 WHA, 2011 WL 4479305, at *4 (N.D. Cal. Sept. 26, 2011) (striking expert
22  opinion infringement "contentions did not disclose *any* specific theory as to where th[e] limitation
23  was found in the" accused software process (emphasis in original).).
24        Finally, MediaTek fails to explain its prior statements about its proposed amendment to
25  accuse "software" of satisfying the "controller" limitations of claims 11 and 35. (See Dkt. No.
26  306 at 12-13.) During briefing on MediaTek's first motion for leave to amend, Freescale argued
27  that MediaTek's "contention that dynamic voltage frequency scaling is carried out not only
28

1  through hardware but also through software in the i.MX31, i.MX35, and i.MX50 product families
2  is a significant substantive change and not a mere 'minor clarification.'" (Dkt. No. 84 at 23-24.)
3  In response, MediaTek stated that "the addition of source code does not substantively
4  change MediaTek's contentions, but merely cites additional evidence demonstrating MediaTek's
5  original contentions. <u>The cited source code (*e.g.*, DVFS_core.c, DVFS v2.c) is part of the DVFS
6  load-tracking block MediaTek's ICs already identify</u>." (Dkt. No. 105 at 14.) MediaTek fails to
7  address this prior statement confining its "controller" contentions to the DVFS load tracking
8  block, and thus fails to reconcile it with MediaTek's current position that its contentions alleged
9  that software running on the ARM processor forms part of the claimed "controller."

**2. MediaTek's reliance on Judge Corley's order is misplaced**

11 MediaTek argues that Judge Corley has already found that its contentions adequately
12 disclosed its contention that "software running on the ARM processor" satisfies the "controller"
13 limitations of claims 11 and 35, and suggests that the law of the case doctrine somehow bars
14 Freescale's motion. (Dkt. No. 332-5 at 4-5.) MediaTek's argument is paradoxical, considering it
15 has blatantly ignored Judge Corley's prior order denying its motion for leave to amend to add the
16 infringement theories at issue here.

17 MediaTek misapprehends the law of the case doctrine, which provides that "the decision
18 of an appellate court on a legal issue must be followed in all subsequent proceedings in the same
19 case." <u>United States v. Thrasher</u>, 483 F.3d 977, 981 (9th Cir. 2007) (citation omitted). Although
20 the law of the case doctrine may encompass a court's reconsideration of an issue already decided
21 by the same court, "[f]or the doctrine to apply, the issue in question must have been decided
22 explicitly or by necessary implication in the previous disposition." <u>Id.</u> (citation omitted).

23 Here, Judge Corley did not decide, either explicitly or implicitly, whether MediaTek's
24 infringement contentions disclosed its "software on the ARM" theory. Instead, Judge Corley held
25 that Freescale failed to show good cause to support amending its invalidity contentions. (Dkt.
26 No. 232 at 12.) In denying Freescale's motion, Judge Corley observed that MediaTek's
27 infringement contentions contained references to "software," but made no finding on whether
28 MediaTek sufficiently disclosed its contention that "software on the ARM" meets any of the

FREESCALE'S REPLY ISO MOT. TO STRIKE CERTAIN PORTIONS OF MEDIATEK'S EXPERT REPORTS
CASE NO. 4:11-CV-05341-YGR (JSC)

6

1 "controller" limitations. Id. at 8. Instead, Judge Corley referred to MediaTek's contentions as
2 "obliquely" referring to software (Dkt. No. 232 at 9), and noted that, "at the time Freescale served
3 its original invalidity contentions[,] there was at least a question as to whether MediaTek was
4 construing controller as limited to hardware only" (id.).

5 Indeed, Judge Corley's order cannot be read to suggest that she found MediaTek's
6 contention to have properly disclosed its theory that "software on the ARM" satisfies the
7 "controller" limitations. For example, Judge Corley noted that MediaTek's contentions identified
8 "software" such as "references to operations performed by the ARM core processor which are
9 software operations." (Dkt. No. 232 at 8 (citing Dkt. No. 130-6 at 16).) However, MediaTek did
10 not include these "references to operations performed by the ARM" in its claim chart for the
11 "controller" or "dynamic power controller" limitations. Rather, MediaTek included these
12 references in connection with the preamble of claim 11, which requires "[a] processor including
13 at least one clock signal operating at a plurality of frequencies." (See Dkt. No. 130-6 at 16.) As
14 Judge Corley's findings were not limited to the "controller" limitations, they cannot be read to
15 resolve the adequacy of MediaTek's contentions for those limitations.

16 Moreover, MediaTek does not address the statements from Judge Corley that Freescale
17 cited in its opening brief. (Dkt. No. 306 at 13-14.) To reiterate, Judge Corley stated to
18 MedaiTek's counsel, "I guess you [MediaTek] would have to admit that at least your contentions
19 weren't totally clear, because they required clarification, which is why you moved to amend to
20 make minor clarifications, right? . . . . I mean, you [MediaTek] have to admit that it wasn't clear."
21 (Dkt. No. 240 at 50:8-14.) Given Judge Corley specifically noted the lack of clarity in
22 MediaTek's contentions, MediaTek's argument that she affirmatively resolved this issue is
23 woefully misplaced. Indeed, contrary to MediaTek's position, Judge Corley's statements suggest
24 that she may regard MediaTek's contentions to be deficient.

25
26       **3.**    **Freescale's discovery conduct and invalidity contentions have no bearing on the adequacy of MediaTek's infringement contentions**

27 MediaTek argues that Freescale acknowledged that MediaTek accused software running
28 on the ARM processor because Freescale (1) produced DVFS source code and (2) identified prior

1  art that discloses controllers implemented in software.  These arguments lack merit and they
2  improperly shift the onus to divulge contentions during discovery away from MediaTek.
3  MediaTek cannot shirk its obligation to provide proper notice to Freescale of its positions by
4  pointing to Freescale's own fact discovery document production.
5      First, MediaTek argues that, because Freescale properly responded to discovery,
6  MediaTek's own discovery responses (in the form of its infringement contentions) must be
7  adequate.  Indeed, as Freescale has previously explained, MediaTek propounded a request for
8  production demanding "'[a]ll source code for any software, firmware, program code, microcode,
9  or other embedded instruction contained in or associated with the following features and portions
10 of each Freescale Accused Product:  Dynamic Voltage/Frequency Scaling (DVFS).'"  (Dkt. No.
11 171 at 9 (quoting Dkt. No. 171-2 at 11-12.)  Freescale properly responded to that request by
12 producing source code used to perform DVFS.  MediaTek argues that Freescale conceded that
13 such source code "is part of what 'MediaTek accuses'" (Dkt. No. 332-5 at 5), but MediaTek has
14 quite clearly misrepresented Freescale's statement.  Contrary to MediaTek's assertion, Freescale
15 plainly referred to "DVFS components," and not to "DVFS software," as being what "MediaTek
16 accuses of infringing the '331 patent" (id. (emphasis omitted)).
17     Second, as Judge Corley observed, "a diligent patent infringement defendant searches for
18 prior art that invalidates a patent based on a reasonable construction, not just the opponent's
19 construction."  (Dkt. No. 232 at 10.)  Accordingly, Freescale's identification of prior art that
20 invalidates the '331 patent implies nothing about the adequacy of MediaTek's contentions.

21     **B.    MediaTek's Contentions Fail To Accuse The CCM Of Satisfying The "Clock Controller" Limitation Of Claim 35**
22

23     MediaTek concedes, as it must, that its contentions for the "clock controller" limitation of
24 claim 35[c] explicitly names the GPC, and not the CCM, as the element of the accused products
25 that satisfy that limitation.  (Dkt. No. 130-6 at 25.)  MediaTek nevertheless argues that its
26 contentions sufficiently accused the CCM of satisfying limitation 35[c] because "the text and
27 citations" it provided for its contentions for limitation 11[b] are incorporated by reference, and
28 those contentions identify the CCM.  (Dkt. No. 332-5 at 6-7.)

1      MediaTek's argument is without merit.  First, the text provided for limitation 11[b]
2 accused the GPC, not the CCM, and thus does not salvage MediaTek's contentions.  (Dkt. No.
3 130-6 at 18 (alleging limitation met because "[f]or instance, the i.MX50 includes a General
4 Power Controller (GPC) that supports dynamic voltage and frequency scaling.").
5      Second, MediaTek points to Figure 1-2, which it included in the citations for limitation
6 11[b], and argues that this figure "calls out the CCM."  (Dkt. No. 332-5 at 6.)  MediaTek purports
7 to reproduce Figure 1-2, but omits the fact that its reproduction is highly annotated to enlarge and
8 highlight the portion of the figure showing the CCM.  The unannotated figure is depicted below:



Figure 1-2. i.MX50 System Block Diagram

22 (Dkt. No. 130-6 at 18 (quoting i.MX50 Reference Manual at 135).)  As the unannotated figure
23 shows, the CCM is one of dozens of blocks depicted in a system block diagram.
24      Finally, MediaTek points to Figures 29-3 and 29-4.  But, while limitation 35[b] requires
25 "a clock controller adapted to control a frequency of the plurality of clock signals" (Dkt. No. 130-
26 6 at 25), Figures 29-3 and 29-4 only show the CCM receiving a "change frequency" command; it
27 does not suggest that the CCM is "adapted to control a frequency of the plurality of clock
28 signals," as claim 35 requires.  Indeed, claim 11 requires only a single "clock signal operating at a

plurality of frequencies," not a "plurality of clock signals," as claim 35 requires. (Compare Dkt. No. 130-6 at 15 with id. at 25.) Accordingly, a simple depiction of the CCM receiving a "change frequency" command cannot show how it satisfies the requirements of limitation 35[c].

### C. MediaTek Concedes That Its Contentions Fail to Disclose The Infringement Theory Provided In Mr. Narad's Expert Report

MediaTek does not contest that its infringement contentions failed to disclose Mr. Narad's opinion that an external PMIC satisfies the "power supply" limitation of claim 35 for the i.MX50 products. Instead, incredibly, MediaTek attempts to recast its contentions for that limitation as directed to the "on-chip power pins" as meeting the "power supply" limitation. (Dkt. No. 332-5 at 8.) It asserts that the "extal" and "xtal" pins of the i.MX50's crystal oscillator, discussed in chapter 58 of the i.MX reference manual, are these "power pins." (Id.) And it suggests that Mr. Narad opined in his expert report that these "power pins," and not the external PMIC, meets the "power supply" limitation of claim 35.

MediaTek's argument lacks any discernible merit. First, Mr. Narad's expert report includes no mention of the crystal oscillator, the crystal oscillator's power supply, or the extal or xtal pins, nor does it explain how any of these components satisfy the "power supply" limitation of claim 35. (See, e.g., Dkt. No. 303-27, Narad '331 Infr. Rpt. Ex. C-2, at 8-24, 32-34.) Instead, Mr. Narad opined that the accused i.MX50 products have a "power supply" because they are each "used with a Power Management IC (PMIC) that provides a variable level voltage, and there is no substantial use of the i.MX31 or i.MX35 without such a PMIC. In addition, Freescale sells PMIC chips for use" with the i.MX50 products. (Dkt. No. 303-27 (Ex. C-2) at 32.) As MediaTek apparently concedes that its contentions do not disclose that a PMIC can be the "power supply" of claim 35, Mr. Narad's opinion that the accused i.MX50 products meet the "power supply" limitation because they can be used with an external PMIC should be struck.

Second, MediaTek attempts to re-characterize Mr. Narad's opinions as providing that "power pins," rather than an external PMIC, satisfy claim 35's "power supply" limitation is wholly incorrect. As explained in Freescale's reply brief in support of its motion for summary

1  judgment (Dkt. No. 348-5 at 7-9), nothing in Mr. Narad's report shows that his "power supply"
2  opinion is directed to "power pins," rather than to an external PMIC (Dkt. No. 303-27 at 31-33.)
3        Finally, contrary to MediaTek's assertion, chapter 58 of the i.MX50 reference manual
4  does not "state[] that the [crystal] oscillator's power supply is provided by on-chip power pins."
5  (Dkt. No. 332-5 at 8.) Instead, chapter 58 states, under the "Power Supply" heading, that the
6  crystal "oscillator is powered by a 2.5 V power supply ± 10% tolerance. The core supply is 1.2 V
7  ± 10% tolerance." (Dkt. No. 332-9 at FSL-00009018.) MediaTek's infringement contentions cite
8  this statement about the crystal oscillator's power supply. (Dkt. No. 130-6 at 24.) Accordingly,
9  nothing in MediaTek's contentions suggests that it accused the extal or xtal pins, or any other
10 supposed "on-chip power pins," of meeting the "power supply" limitation of claim 35. Shared
11 Memory Graphics LLC v. Apple Inc., 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) ("[A]ll courts
12 agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable
13 notice to the defendant why the plaintiff believes it has a reasonable chance of proving
14 infringement." (citation and quotation marks omitted).)

## IV. MEDIATEK'S INVALIDITY CONTENTIONS

MediaTek argues that the rebuttal reports of its experts, Mr. Narad and Dr. Asanović, and the alleged validity of the asserted patents, should not be struck. Although MediaTek concedes that its experts' validity opinions were not disclosed in response to Freescale's Interrogatory No. 24, it argues that these opinions should not be excluded because (1) Freescale, as the defendant, bears the burden of proving invalidity, (2) MediaTek timely objected to Interrogatory No. 24, stated that it would provide its experts' validity reports according to the procedural schedule, (3) Freescale has not been prejudiced, and (4) exclusion of MediaTek's experts' validity opinions would be contrary to law. (Dkt. No. 332-5 at 12-17.) Each of these arguments is incorrect and contrary to MediaTek's discovery obligations.

### A. MediaTek Incorrectly Confuses The Burden Of Proof With Obligations To Participate In Discovery

First, MediaTek suggests that, because Freescale bears the burden of proof on invalidity, MediaTek was not required to provide its responsive validity contentions in response to

Interrogatory No. 24. MediaTek improperly confuses the burden of proof for an issue with a party's obligations to cooperate in discovery. Regardless of which party bears the burden of proof on an issue, both parties are obligated to provide discovery — including legal contentions — that is relevant to that issue. See Fleming v. Escort, Inc., No. CV 09-105-S-BLW, 2010 U.S. Dist. LEXIS 101938, at *3-4 (D. Idaho Sept. 24, 2010) (finding rebuttal infringement contentions discoverable pursuant to standard discovery request and rejecting objection that party need not provide such contentions because it did not bear the burden of proof on infringement); Gen-Probe Inc. v. Becton, Dickinson & Co., Nos. 09cv2319 BEN (NLS), 10cv0602 BEN (NLS), 2010 U.S. Dist. LEXIS 93224, at *5 (S.D. Cal. Sept. 7, 2010) ("Nowhere in the Federal Rules of Civil Procedure is it required that a party who carries the ultimate burden on an issue at trial must establish a prima facie case before it is entitled to discover information the other party may use to rebut the prima facie case. Quite the opposite, the rules contemplate that a party receive this information up front, during discovery, so that when the time comes to discharge its burden it has the ammunition necessary to do so." (citation omitted).)

Here, Freescale propounded a proper interrogatory seeking MediaTek's invalidity contentions. That MediaTek does not bear the burden of proof on invalidity is inconsequential to its duty to respond to a "standard discovery request."

**B.  That MediaTek Objected And Responded To Interrogatory No. 24 Does Not Discharge Its Duty To Disclose Supplement Its Response To Identify Its Experts' Validity Theories**

MediaTek next argues that its objections and response to Interrogatory No. 24 somehow obviated its duty to supplement its response with any validity contentions that its experts planned to offer. MediaTek asserts that it was Freescale responsibility to move to compel a further response from MediaTek. (Dkt. No. 332-5 at 13-14.)

MediaTek is again mistaken. As set forth in Freescale's opening brief, Rule 37(c)(1) of the Federal Rules of Civil Procedure "mandates that a party's failure to comply with . . . the supplemental disclosure obligations under Federal Rule of Civil Procedure 26(e)(1) results in that party being precluded from the 'use [of] that information . . . to supply evidence on a motion, at a hearing, or at trial, unless failure was substantially justified or is harmless." Oracle USA, Inc. v.

SAP AG, 264 F.R.D. 541, 544 (N.D. Cal. 2009) (quoting Fed. R. Civ. P. 37(c)(1) (emphasis in original).); see also Goodman v. Staples the Office Superstore, LLC, 644 F.3d 817, 827 (9th Cir. 2011) ("Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed."). Accordingly, after MediaTek initially responded that its patents are presumed valid and that Freescale bears the burden of proving invalidity (Dkt. No. 306-14 at 6), MediaTek was obligated to supplement its response during the fact discovery with responsive information or risk being precluded from using such information.

MediaTek's argument that it was Freescale's obligation to move to compel a supplemental response to Interrogatory No. 24 is not correct. As the Ninth Circuit has repeatedly stated, "Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction design to provide a strong inducement for disclosure." Goodman, 644 F.3d at 827 (quoting Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." Id.

MediaTek argues that its failure to supplement its response to Interrogatory No. 24 was substantially justified by its beliefs that it need not provide its contentions on an issue for which it does not bear the burden of proof, that its statement that it would comply with the scheduling order for expert testimony was a sufficient response, and that Freescale was required to move to compel a supplemental response if it felt MediaTek's response was insufficient.

None of these justifications withstands scrutiny. First, MediaTek's position that it could withhold discovery on the validity of its patents is legally incorrect, as explained above. Second, MediaTek's representation that it would comply with the scheduling order for rebuttal expert testimony is irrelevant to the issue of whether it possessed relevant, responsive information that it should have disclosed in response to Interrogatory No. 24. Indeed, it was reasonable for Freescale to expect both a complete response to its interrogatory and timely service of MediaTek's expert reports. Third, a motion to compel before sanctions under Rule 37(c)(1) can be issued contradicts Ninth Circuit precedent providing that such sanctions are "self-executing" and "automatic." Goodman, 644 F.3d at 827 (citation omitted); Yeti by Molly Ltd., 259 F.3d at 1106. Indeed, this Court has expressly found that Rule 37(c)(1) is a self-executing provision

FREESCALE'S REPLY ISO MOT. TO STRIKE CERTAIN PORTIONS OF MEDIATEK'S EXPERT REPORTS
CASE NO. 4:11-CV-05341-YGR (JSC)

13

1  without need for a motion to compel sanction. Bookhamer v. Sunbeam Prods., No. C 09-06027
2  EMC (DMR), 2012 U.S. Dist. LEXIS 170708, at *7 (N.D. Cal. Nov. 30, 2012).

3      MediaTek relies on Helfand v. Gerson, 105 F.3d 530 (9th Cir. 1997), but that case is
4  inapposite.  In Helfand, the appeals court affirmed a trial court's application of the doctrine of
5  judicial estoppel where the plaintiffs sought to take a different position in federal court than they
6  had previously taken on the same issue in state court. Id. at 536.  The plaintiffs argued that
7  judicial estoppel should not apply because they did not have "full knowledge of the facts at the
8  time of the state court hearing" because the of "the defendants' improper refusal to comply" with
9  a subpoena. Id.  In affirming the trial court, the Ninth Circuit held that the plaintiffs' failure to
10 obtain complete information was their own fault, such that their prior inconsistent position was
11 not based on "inadvertence or mistake." Id.  The court did not consider whether the defendants,
12 as the subpoena recipients, could rely on responsive discovery that they had withheld from their
13 subpoena response due to the plaintiffs' failure to move to compel a response.

    **C.    MediaTek's Motion Fails To Establish That Its Failure To Supplement Its Response To Interrogatory No. 24 Was Harmless**

16     As the Ninth Circuit has explained, "[t]he burden to prove harmlessness is on the party
17 seeking to avoid Rule 37's exclusionary sanction." Goodman, 644 F.3d at 827.  Here, MediaTek
18 does not address any of the harm to Freescale identified in its opening brief.  Instead, MediaTek
19 reiterates its argument that Freescale was required to move to compel.  Essentially, MediaTek
20 argues that it was Freescale's responsibility to burden the Court with additional motions practice
21 in order to avoid any potential harm that might flow from MediaTek's failure to provide
22 information in response to Interrogatory No. 24.  MediaTek has identified no relevant case
23 imposing any such responsibility to move to compel on Freescale, and imposing such a
24 requirement would contradict the Ninth Circuit's statements that Rule 37(c) sanctions are "self-
25 executing," "automatic," and meant to "give teeth" to Rule 26.

    **D.    Sanctions Should Issue Regardless Of Bad Faith, Willfulness, Or Fault**

27     Finally, MediaTek argues that preclusion of evidence requires a showing of bad faith,
28 willfulness, or fault. (Dkt. No. 332-5 at 16.)  MediaTek is plainly incorrect, as courts have

consistently stated that sanctions under Rule 37(c)(1) require no such showing. See <u>Yeti by Molly, Ltd.</u>, 259 F.3d at 1106 ("[E]ven though [defendant] never violated an explicit court order to produce the [expert] report and even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."); <u>Bookhamer</u>, 2012 U.S. Dist. LEXIS 170708, at *7 ("The Advisory Committee Notes [to Rule 37] clarify that Rule 37(c)(1) is a self-executing provision without need for a motion to compel sanction. This is true even if in the absence of a showing of bad faith or willfulness." (citation omitted)); <u>Apple Inc. v. Samsung Elecs. Co.</u>, No. 11-cv-01846-LHK, 2012 U.S. Dist. LEXIS 108648, at *23 (N.D. Cal. Aug. 2, 2012) ("A court need not find bad faith before imposing sanctions for violations of Rule 37(c)(1).").

MediaTek's relies on <u>R & R Sails, Inc. v. Ins. Co. of the Pa.</u>, 673 F.3d 1240, 1247 (9th Cir. 2012), for the proposition that a showing of "willfulness, fault, or bad faith" is required before the sanction of "exclusion of evidence" may be imposed. (Dkt. No. 332-5 at 16.) MediaTek misreads that case. There, the Ninth Circuit held that a district court is required to consider whether noncompliance with a party's discovery obligations involved willfulness, fault, or bad faith if "the sanction amounted to dismissal of a claim." <u>Id.</u> at 1247. The court held that the facts warranted such consideration because preclusion of the evidence would have dealt a "fatal blow" to the noncompliant party's claims. <u>Id.</u> The court noted that, in <u>Yeti by Molly, Ltd.</u>, it held that such a showing is not required where "the sanction at issue, 'although onerous, [i]s less than a dismissal.'" <u>Id.</u> at 1247 n.1 (quoting <u>Yeti by Molly, Ltd.</u>, 259 F.3d at 1106.

Here, MediaTek has not suggested that exclusion of its experts' rebuttal reports would result in dismissal of its claims. Nor can it. Even if such reports are excluded, as Rule 37(c)(1) requires, MediaTek remains free to pursue its claims of infringement against Freescale, and Freescale must still prove by clear and convincing evidence that the asserted patents are invalid.

## V. CONCLUSION

For the foregoing reasons, Freescale respectfully requests that the Court grant its motion to strike the identified portions of the opening expert reports and the entirety of the rebuttal expert reports of Mr. Narad or Dr. Asanović.

| | |
|---|---|
| Dated:  November 27, 2013 | Respectfully Submitted,<br><br>MORRISON & FOERSTER LLP<br><br>By:     /s/ *Alexander J. Hadjis*<br>RUDY Y. KIM (CA SBN 199426)<br>RudyKim@mofo.com<br>ALAN COPE JOHNSTON (CA SBN 66334)<br>ACJohnston@mofo.com<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, California  94304<br>Telephone: (650) 813-5600<br>Facsimile: (650) 494-0792<br><br>ALEXANDER J. HADJIS (pro hac vice)<br>AHadjis@mofo.com<br>JOSHUA A. HARTMAN (pro hac vice)<br>JHartman@mofo.com<br>MORRISON & FOERSTER LLP<br>2000 Pennsylvania Avenue, NW<br>Suite 6000<br>Washington, DC 20006<br>Telephone: (202) 887-1500<br>Facsimile: (202) 887-0763<br><br>Attorneys for Defendant-Counterclaimant<br>FREESCALE SEMICONDUCTOR, INC. |

**ATTESTATION OF E-FILED SIGNATURE**

I, Rudy Y. Kim, am the ECF User whose ID and password are being used to file Freescale Semiconductor, Inc.'s Reply In Support of Its Motion to Strike Certain Portions of Mediatek's Expert Reports.  In compliance with General Order 45, X.B., I hereby attest that Alexander J. Hadjis has concurred in this filing.

Dated:  November 27, 2013                         */s/ Rudy Y. Kim*
                                                                    Rudy Y. Kim