IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIATEK INC., <br><br> Plaintiff, <br><br> v. <br><br> FREESCALE SEMICONDUCTOR, INC., <br><br> Defendant. | Case No. 4:11-cv-05341 YGR (JSC) <br><br> **ORDER DENYING FREESCALE SEMICONDUCTOR, INC.'S MOTION FOR ADVERSE INFERENCES (Dkt. No. 308)** |

Now pending before the Court is Defendant Freescale Semiconductor, Inc.'s ("Freescale") Motion for Adverse Inferences (the "Motion") stemming from Plaintiff MediaTek, Inc.'s ("MediaTek") purported concealment of a consultant's report relating to U.S. Patent No. 6,088,753 ("the '753 patent"). (Dkt. No. 308.) Having considered the parties' submissions, and having had the benefit of oral argument on December 19, 2013, the Court DENIES Freescale's unprecedented motion for adverse inferences. As MediaTek identified the report on its privilege logs, did not destroy the report, and produced the report when the Court resolved the privilege dispute, there is no basis for the extreme sanction Freescale seeks.

**BACKGROUND**

MediaTek acquired the asserted '753 patent in 2009 as part of a purchase of several

patents owned by third-party Vitesse Semiconductors. In connection with this acquisition, and at the direction of MediaTek's general counsel, MediaTek's deputy manager of its Intellectual Property Division, Richard Yang, retained third-party Chipworks, Inc. ("Chipworks") to evaluate the '753 patent. The resulting report, entitled "MediaTek Various Patents Analysis on ARM Processors Bus Architecture" (the "Chipworks report"), discusses, among other things, potential infringement and validity issues for claim 2 of the '753 patent. Chipworks provided MediaTek with drafts of this report on May 20 and 21, 2009, and provided the final report on May 27, 2009. Chipworks sent the reports to individuals within MediaTek's Intellectual Property Division, including Mr. Yang and Jason Chiu, Director of the Intellectual Property Division.

### A. Freescale's Discovery Requests

On May 18, 2012, Freescale propounded its first set of interrogatories and requests for production on MediaTek. These discovery requests included Request for Production No. 25 and Interrogatory No. 9, which sought, among other things, documents and information related to analysis of infringement and validity of the patents in suit. Freescale also requested, in Request for Production No. 26 and Interrogatory No. 8, documents and information related to any analysis of prior art relevant to the patents in suit. MediaTek did not produce or identify the Chipworks report in response to any of these discovery requests. In addition, MediaTek did not produce or identify the AMBA Specifications or the IBM CoreConnect architecture discussed in the Chipworks report.

### B. MediaTek's Privilege Logs

During the course of discovery, MediaTek produced two privilege logs which identified the Chipworks report, although with less specificity than the privilege log produced to the Court in connection with Freescale's motion to compel. *Compare* Dkt. No. 279-1 with Dkt. No. 334-12 & Dkt. No. 334-14. MediaTek's April 1, 2013 log identifies it as follows:

| No. | Doc. Date | Author/Custodian | Recipient | CC | Present Location | Basis for Privilege | Description |
|---|---|---|---|---|---|---|---|
| 122 | 5/27/2009 | Chipworks | MediaTek Legal & Intellectual Property Division | | MediaTek | AC | Document prepared by counsel to facilitate rendering of legal advice |

(Dkt. No. 334-12.) MediaTek's July 19, 2013 log identifies it in relevant part as:

| No. | Doc. Date | Author/Custodian | Recipient | CC | Present Location | Basis for Privilege | Description |
|---|---|---|---|---|---|---|---|
| 2 | 5/27/2009 | Chipworks/Richard Yang | | | MediaTek | AC | Document prepared at the request of counsel to facilitate rendering of legal advice |

(Dkt. No. 334-14.) Finally, MediaTek's September 26, 2013, privilege log states in relevant part:

| No. | Doc. Date | Author/Custodian | Recipient | Present Location | Applicable Privilege / Exemption | Description |
|---|---|---|---|---|---|---|
| 1 | 5/27/2009 | Chipworks (author)/Richard Yang (custodian) | Richard Yang, Jonathan Liou, SY Huang, Jason Chiu | MediaTek (Hsinchu, Taiwan) MediaTek's counsel of record (USA) | Attorney-client communication privilege | Report concerning patents, prepared at request of MediaTek counsel for the purpose of facilitating the rendering of legal advice. Report was prepared and supplied to MediaTek on a strictly confidential basis. MediaTek incorporates by reference the additional facts set forth in the declaration of Richard Yang at Dkt. No. 274-2 at paragraphs 3 and 4. |

(Dkt. No. 279-1.)

### C. Production of the Chipworks report

Freescale contends that it did not learn of the Chipworks report until Mr. Yang's deposition on August 9, 2013. At his deposition, Mr. Yang refused to answer questions about the substance of the Chipworks report based on attorney-client privilege. Freescale subsequently moved to compel production of the Chipworks report. Following *in camera*

3

review of the report, the Court granted Freescale's motion to compel and ordered MediaTek to produce the 2009 Chipworks report, as well as two prior drafts of the report and a confidentiality agreement between MediaTek and Chipworks.  (Dkt. No. 280.)  Freescale received a copy of the Chipworks report on October 15, 2013.

Freescale filed the underlying motion for adverse inferences nearly a month later.  Freescale seeks an adverse inference jury instruction that (1) Freescale's accused products do not infringe the '753 patent, (2) the '753 patent is invalid, and (3) the '845 patent is invalid.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(c)(1) provides for sanctions based on a party's failure to comply with their obligations under Federal Rule of Civil Procedure 26.  Sanctions are appropriate unless the failure to respond is substantially justified or harmless.  *Id.*  Rule 37(c)(1) makes all sanctions under Rule 37(b)(2)(A)(i)-(vi) available, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," "striking pleadings whole or in part," "rendering a default judgment," and "dismissing the action or proceeding in whole or in part."  *Id.*  In addition, district courts may impose sanctions as part of their inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal citations and quotations omitted).

The imposition of discovery sanctions is within the discretion of the trial court.  *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997).  Courts should choose a sanction that will "(1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."  *Advantacare Health Partners, LP v. Access IV*, No. 03-4496, 2004 WL 1837997, at *4 (N.D. Cal. Aug. 17, 2004). (internal citations omitted).

Here, the only sanction Freescale seeks is an adverse inference instruction.  Such instruction most commonly arises following spoliation of evidence and asks the jury to infer

that the evidence at issue was adverse to the party responsible for destroying the evidence and beneficial to the prejudiced party. *See Moore v. Gilead Sciences, Inc.*, No. 07-03850, 2012 WL 669531, at *5 (N.D. Cal. Feb. 29, 2012); *see also Access IV*, 2004 WL 1837997, at *6 (discussing the adverse inference instruction but ultimately awarding monetary sanctions for evidence spoliation). The adverse inference instruction is "an extreme sanction and should not be taken lightly." *Moore*, 2012 WL 669531, at *5 (internal citations and quotations omitted); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219-20 (S.D.N.Y. 2003) ("[w]hen a jury is instructed that it may infer that the party who destroyed potentially relevant evidence did so out of a realization that the evidence was unfavorable, the party suffering this instruction will be hard-pressed to prevail on the merits" (internal citations and quotations omitted)).

The Ninth Circuit has not clearly articulated a test for determining the appropriateness of an adverse inference instruction. Courts in this District, however, have generally followed Second Circuit law. *See, e.g., Apple Inc. v. Samsung Electronics Co., LTD*, 881 F.Supp.2d 1132, 1138 (N.D. Cal. July 25, 2012) (noting that the majority of courts follow the test set forth in *Zubulake v. UBS Warburg LLC*, 220 F.R.D. at 220, which in turn follows *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)); *Hamilton v. Signature Flight Support Corp.*, No. 05-0490, 2005 WL 3481423 *3 (N.D. Cal. Dec. 20, 2005) (following *Residential Funding Corp. v. DeGeorge Fin'l Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) and *Byrnie*, 243 F.3d at 107-12)). Accordingly, the moving party must show "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind[;]' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake*, 220 F.R.D. at 220 (internal citations omitted).

## DISCUSSION

Freescale argues : (1) MediaTek was obligated to produce the Chipworks report and disclose the 1997 and 1999 AMBA Specifications and the IBM CoreConnect architecture in

1    response to Freescale's discovery requests; (2) MediaTek had a culpable state of mind in
2    failing to provide the Chipworks report, and was at least negligent in withholding any
3    mention of the report until the Yang deposition; and (3) the Chipworks report is relevant to
4    Freescale's non-infringement and invalidity defenses, as the Chipworks' infringement
5    analysis supports Freescale's interpretation of claim 2 of the '753 patent, and shows that the
6    asserted claims of the '753 and '845 patents are invalid. Although MediaTek was obligated
7    to disclose the report in response to Freescale's discovery requests, the Court finds that it had
8    a good faith belief that the report was privileged and thus lacked the requisite state of mind to
9    warrant an adverse inference instruction. Further, granting an adverse inference instruction
10   under these circumstances—where MediaTek has neither destroyed evidence nor disobeyed a
11   Court order and in fact identified the report on its privilege log—would be unprecedented and
12   is entirely unwarranted.

### 1.   The Chipworks Report was Responsive to Freescale's Requests

The parties appear to agree that the relevant portion of the Chipworks report reads as follows:

> **Comments Regarding Prior Art**
>
> A quick search regarding potential prior art was done. No concerns regarding the patents were found, however, if prior art is a concern, then a more exhaustive search is recommended. IBM's CoreConnect bus architecture was investigated, but the earliest versions were not identified. The only version of IBM's processor local bus architecture specification that was found was 4.7, issued on May 2, 2007. Regarding ARM bus architectures, it appears that the AMBA AXI specification is the most applicable to the patents. Previous ARM bus architectures, near the priority date of the patents, seem to be missing one or more claim elements of the patents. The ARM bus specifications that were examined were AMBA Advanced Microcontroller Bus Architecture Specification issued April 1997 and AMBA AXI Protocol v.1.0 Specification copyright 2003, 2004.

(Dkt. No. 308-11.) While the report indicates that it did not identify any prior art, this finding is insufficient to relieve MediaTek of its obligation to identify the Chipworks report or the AMBA Specifications and IBM CoreConnect architecture documents in response to Freescale's discovery requests. Interrogatory number 9 and its corresponding document request number 25 seek "each study, investigation, or analysis concerning the patentability,

6

infringement, non-infringement, validity (or invalidity), or enforceability (or unenforceability) of the Patents-at-Issue or the Related Applications and Patents by, without limitation, identifying each study, investigation, or analysis, stating the date(s) the study, investigation, or analysis was performed, and identifying all documents concerning the study, investigation, or analysis." (Dkt. No. 308-16 at 10; Dkt. No. 308-17 at 12.) The Chipworks report indicates that both the AMBA Specifications and IBM CoreConnect were investigated as part of the prior art search. The Chipworks report was thus responsive to these requests.

### 2. MediaTek did not Have a Culpable State of Mind

A critical question then is whether MediaTek had a culpable state of mind in failing to produce the report in response to Freescale's discovery requests. Freescale contends that MediaTek purposefully, or, at a minimum, negligently concealed the Chipworks report. The Court disagrees.

Although neither party submitted MediaTek's actual responses to the discovery requests in connection with this motion, at oral argument Freescale conceded that MediaTek's responses indicated that it was responding except to the extent that any responsive documents were subject to a claim of privilege. An assertion of privilege can be a valid objection to a discovery request. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1148-49 (9th Cir. 2005) (holding that boilerplate objections or blanket refusals to answer based on privilege are insufficient to assert a privilege, but that a privilege objection which enables the litigant seeking discovery to evaluate whether each of the withheld documents is privileged is valid). Although MediaTek mischaracterized the report in its April privilege log as a document prepared by counsel, both privilege logs clearly identify the report and that it was authored by Chipworks. Further, the July privilege log correctly represented that the report was prepared at the request of counsel. Thus, the premise of Freescale's motion—that it was not aware of the Chipworks report until Mr. Yang's deposition—is false. Freescale does not contend that it did not know what Chipworks did nor that it believed the document's correctly-identified author—Chipworks--was an attorney or law firm. Nor could it. According to Chipworks publicly available website, "Chipworks

provides reverse engineering and patent infringement analysis to the world's largest semiconductor and microelectronics companies." *See* CHIPWORKS, INC., www.chipworks.com (last visited Dec. 17, 2013). Freescale was thus on notice that the withheld document related to patent analysis.

Further, while brief, the Court does not fault MediaTek for not including a more detailed description of the document in the initial two privilege logs. There is nothing in the record that suggests that Freescale ever sought more detail (or that its own privilege logs provide any more detail), and the information provided satisfies the basic requirements of a privilege log. *See* Fed. R. Civ. P. 26(e)(5(ii) (a party must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."). Freescale's only challenge to the substance of the description is the Court's ultimate rejection of MediaTek's privilege claim. Its reasoning is circular: that the Court subsequently held the document not privileged does not render the description inadequate. Freescale is in effect asking the Court to find that whenever a privilege challenge is sustained the claim of privilege was necessarily made in bad faith. Freescale has not given the Court any reason—or support—for such a finding.

Further, the privilege question, as addressed in the Court's October 10, 2013 Order, was close. (Dtk. No. 280.) The Court's analysis focused on whether the report was prepared primarily to assist with MediaTek's receipt of legal advice rather than to guide a business decision as to whether to purchase the patents. The Court concluded that the report was not privileged because it was not sent to MediaTek's counsel, and the report's language suggested that it was created to facilitate a business decision and not primarily to facilitate legal advice; the Court did not conclude that MediaTek's claim of privilege was frivolous. To the contrary, had Chipworks sent the report to MediaTek's counsel it likely would have been privileged. Accordingly, MediaTek had a good faith basis for asserting that the report and related documents were privileged.

In any event, MediaTek has not and cannot cite a single case in which the "extreme

sanction" of an adverse jury instruction was imposed under similar circumstances; that is, where the opponent identified a document on a privilege log, but upon a motion to compel the court ultimately ruled the document not privileged and the opponent produced the document. Instead, nearly all cases granting an adverse inference instruction follow affirmative spoliation of evidence. *See, e.g.*, *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012); *Herson v. City of Richmond*, No. 09–02516, 2011 WL 3516162, at *2 (N.D. Cal. Aug. 11, 2011); *Io Grp. Inc. v. GLBT Ltd.*, No. 10–1282, 2011 WL 4974337, at *8 (N.D. Cal. Oct. 19, 2011*)*; *Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 535 (E.D. Cal. 2010); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06–3359, 2009 WL 1949124, at *11 (N.D. Cal. July 2, 2009).

Freescale's assertion that MediaTek's conduct is tantamount to spoliation is not persuasive. It has the document and can make whatever arguments it deems appropriate. Since it never sought to reopen discovery in light of the late production of the document its claim of prejudice rings hollow. Instead of seeking a remedy which would address its prejudice—if any—it moved for terminating sanctions for some of the claims in this suit. *See Zubulake IV*, 220 F.R.D. 212, 219-20 (S.D.N.Y. 2003) (noting that "an adverse inference instruction often ends litigation" and "the party suffering the instruction will be hard-pressed to prevail on the merits.").

Freescale's belated oral argument request to reopen discovery is denied. Freescale had the opportunity to seek this relief upon receipt of the report.[1] It chose instead to swing for the fences and struck out. With trial scheduled to commence in February, it is too late to try again.

---

[1] Freescale had the opportunity to obtain expert discovery regarding these matters. Freescale deposed MediaTek's technical experts on the '753 and '845 patents following production of the Chipworks report and thus had the opportunity to question them regarding the report, the IBM CoreConnect technology, and the AMBA Specifications, although it either did not do so or only did so in passing. Freescale likewise declined MediaTek's offer to file a supplemental expert report on the AMBA specifications. This conduct suggests Freescale is more interested in obtaining a strategic advantage in this litigation than addressing any actual prejudice.

**CONCLUSION**

The Court in its discretion declines to impose the extreme sanction of an adverse inference instruction because of MediaTek's failure to produce the Chipworks report before the Court ordered it to do so. To order such relief under the circumstances presented here would be unprecedented and entirely unwarranted. Freescale's Motion for Adverse Inferences is DENIED.

This Order disposes of Docket No. 308.

**IT IS SO ORDERED.**

Dated: December 31, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE