**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MEDIATEK INC.,**<br><br>Plaintiff,<br><br>vs.<br><br>**FREESCALE SEMICONDUCTOR, INC.,**<br><br>Defendant. | Case No.: 11-cv-5341 YGR<br><br>**ORDER DENYING FREESCALE'S MOTION FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT DUE TO EXTRATERRITORIAL SALES** |

Defendant Freescale Semiconductor, Inc. ("Freescale") filed its Motion for Summary Judgment on November 6, 2013, moving for summary judgment on several grounds. (Dkt. No. 303.) Among those grounds are Freescale's motion for summary judgment on its affirmative defense of non-infringement due to the extraterritorial nature of certain alleged infringing activities and related cross-claim for declaratory relief on the same grounds. Said differently, the patent laws of the United States only reach activities that occur in the United States. If no such activities exist, there can be no infringement under U.S. law.

Having carefully considered the papers submitted, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the motion on the extraterritorial sales issue, as triable issues of facts exist from which a reasonable jury could find that "sale or "offers to sell" occurred in the United States.

**I.     BACKGROUND**

In 2009, Freescale negotiated and signed a "Freescale Standard Sales Agreement" with Amazon Fulfillment Services, Inc. ("AFS"), referred to hereafter as the Freescale-AFS Agreement. AFS is a subsidiary of Amazon.com, Inc. ("Amazon"). Amazon is a United States corporation headquartered in Seattle, Washington. AFS is incorporated in Delaware and also located in Seattle, Washington. The Freescale-AFS Agreement was negotiated by representatives of the parties in the

United States and executed in the United States. It names Amazon/Lab126 as the "Buyer" of Freescale's i.MX50 products and establishes that both parties to it are United States entities. (SUMF Fact 92.) Amazon Lab126 ("Lab126") is a division of Amazon located in Cupertino, California. (SUMF Fact 91.)

The terms of the December 31, 2009 Freescale-AFS Agreement provide that AFS is the "Buyer" and that "Buyer desires to purchase products from Freescale, and Freescale desires to sell products to Buyer strictly in accordance with the terms and conditions of this Agreement." The Freescale-AFS Agreement "governs all product purchases made by Authorized Purchasers (as defined in section 3.2 below) from Freescale." (Agreement at § 1.1) Freescale will sell to Authorized Purchasers, and Authorized Purchasers will buy from Freescale, products from time to time." (*Id.* at § 1.2.) Prices were set forth in Attachment A to the Freescale-AFS Agreement and the "Prices" term of the Agreement stated that Freescale would not provide any Designee (as defined in Section 3.2) "any rebates, discounts, free Product, kick-back or other similar terms related directly or indirectly to the Product supplied to any Designees under this Agreement without Buyer's express, prior written consent." (Agreement at § 2.) "Authorized Purchasers" includes AFS as well as "Designees" authorized by AFS under the Agreement "to issue purchase orders for Products, receive, reschedule or cancel deliveries of such Products, process warranty related claims related to such Products, and pay for such Products and all related costs." (*Id.* at § 3.2.) Designees may be foreign firms such as Foxconn and Ensky, a Singapore company. (*Id.* at §§ 3.2, 4.1.) Under the agreement, with one exception, "each time an Authorized Purchaser wishes to purchase Product(s) from Freescale, the Authorized Purchaser must submit to Freescale a written purchase order." (*Id.* at § 3.1.) It further provides that each delivery of Freescale products "will be separately invoiced" (*id.* at § 11), and that "Authorized Purchaser will pay each invoice within thirty (30) days of the date of receipt of the invoice," paying the Product prices reflected in Attachment A to the Agreement. (*Id.* at §12).

## II.   DISCUSSION

Freescale argues that certain of its chips cannot qualify as infringing units because they are manufactured outside the U.S., sold to a manufacturer outside the U.S., and incorporated by that

manufacturer into a product (here, an Amazon Kindle) outside the U.S. Only sales "within the United States" are infringements under 35 U.S.C. § 271(a).

Freescale has asserted non-infringement as an affirmative defense and as a basis for declaratory judgment. (Dkt. No. 21.) Thus Freescale bears the burden of persuasion on these issues at trial, as well as in this motion, and must establish "beyond controversy every essential element of its" claim of no infringement on account of extraterritorial sales. *See S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citing William W. Schwarzer, *et al.*, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 14:124-127 (Rutter Group, 2001). The evidence is viewed in the light most favorable to MediaTek, the party opposing summary judgment, and must be sufficient for the Court to find that no reasonable trier of fact could find other than for Freescale. *Id.*

"It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations v. Fairchild Semiconductor Int'l,* 711 F.3d 1348, 1371 (Fed. Cir. 2013). As the Supreme Court stated, the "general rule under United States patent law is that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.,* 550 U.S. 437, 441 (2007). Accordingly, direct infringement liability is "limited to infringing activities that occur within the United States." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1375 (Fed. Cir. 2005). Whether "activities in the United States, as construed by a reasonable jury, are sufficient to establish an 'offer to sale' or 'sale' within the meaning of 35 U.S.C. §271(a)" may be resolved on summary judgment. *Id.* at 1375 (affirming summary judgment of no direct infringement for product sales in Japan). "It is well established that the reach of section 271(a) is limited to infringing activities that occur within the United States." "Mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a)." *MEMC Electronic,* 420 F.3d at 1377. Further, "the location of the contemplated sale controls whether there is an offer to sell within the United States." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,* 617 F.3d 1296, 1309 (Fed.Cir.2010).

The cases considering whether a sale or offer of sale occurred for purposes of section 271 look to a number of different factors, such as:

3

(1) location of a contemplated future sale, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,* 617 F.3d 1296, 1309 (Fed.Cir.2010) (where an offer which is made in Norway by a U.S. company to a U.S. company to sell a product within the U.S., for delivery and use within the U.S., this constitutes an offer to sell within the U.S.);

(2) location of delivery, *Id.* at 1310, and *MEMC Eletronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1377 (Fed.Cir.2005) (pricing discussions with U.S. entity did not trump negotiations, ordering, and receipt of product overseas);

(3) location of "performance," *Id.; see also Fellowes, Inc. v. Michilin Prosperity Co., Ltd.,* 491 F.Supp.2d 571, 577 (E.D.Va.2007) ("situs of infringement is determined according to the places of contracting and performance, not solely the place where legal title passes");

(4) location of the negotiation of the sales contract, *Id.* at 582; *MEMC Electronic,* 420 F.3d at 1377; *3D Systems v. Aarotech,* 160 F.3d 1373, 1378-79 (Fed Cir. 1998) (where alleged infringer provided potential California customers with price quotations, brochures, specification sheets, videos, and sample parts related to their product, allegations sufficient to establish "offer to sell" in United States for purposes of section 271(a)); and

(5) the location of the execution of the sales contract, *Fellowes,* 491 F.Supp.2d at 582; *Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F. Supp. 2d 388, 406 (S.D.N.Y. 2007) (agreement negotiated and executed overseas was dispositive of infringement issue).

The Freescale-AFS Agreement specifically provides that AFS is the "Buyer" and Freescale the seller. The Agreement governs all purchases made by AFS and its Authorized Purchasers/Designees. While Hon Hai Precision Co. (Foxconn) receives the products in China for incorporation in to Amazon Kindles manufactured there, Foxconn purchases those products pursuant to the Freescale-AF Agreement. AFS controlled the pricing terms for all Authorized Purchasers/Designees and specifically restricted Freescale's ability to negotiate pricing with those Authorized Purchasers/Designees directly. (Agreement at § 2, stating that Freescale would not provide "any rebates, discounts, free Product, kick-back or other similar terms related directly or indirectly to the Product supplied to any Designees under this Agreement without Buyer's express, prior written consent.") MediaTek has also submitted evidence indicating that the products are paid for by Amazon/Lab 126 and that Amazon/Lab126 is listed as the customer for the products.

1  (MediaTek response to SUMF 58.)  Based on these facts, a reasonable jury could conclude that the
2  "sale" of the accused products at issue occurred within the United States.
3  Freescale argues that the Freescale-AFS agreement does not require that any particular sale
4  occur but only governs future sales.  However, as MediaTek points out, every delivery to the foreign
5  manufacturers here is governed by the Freescale-AFS Agreement.  The delegation of authority to
6  issue purchase orders does not change the fact that every sale thereunder is subject to the terms and
7  conditions in the Agreement.
8  Freescale argues that the Federal Circuit in *MEMC Electronic* affirmed a grant of summary
9  judgment of no infringement due to foreign sales under circumstances nearly identical to those here.
10 *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed.
11 Cir. 2005).  *MEMC Electronic* is distinguishable.  There, the Federal Circuit found that the evidence
12 showed all essential activities of the sales in question occurred overseas.  *Id.* at 1376-77.  While
13 emails were exchanged with a United States entity, those emails did not contain price terms or other
14 indicia of a binding offer or agreement to sell.  *Id.* at 1376-77.  There was no evidence that
15 "contracting and performance" took place in the United States, but only that products sold overseas
16 would ultimately be imported into the United States, which was insufficient to establish liability
17 under section 271(a).  Here, by contrast, the evidence indicates that the sale of the accused products
18 was to AFS "Affiliates" or "Designees" and was controlled by an agreement, including price terms
19 and pricing restrictions, negotiated between two United States companies – AFS and Freescale – in
20 the United States.
21 Similarly, Freescale argues that negotiations and discussions in the United States are not
22 enough to render the sales of accused products here domestic sales for purposes of section 271(a),
23 citing *Halo Electronics, Inc. v. Pulse Engineering, Inc.,* 810 F. Supp. 2d 1173, 1207-1208 (D. Nev.
24 Sep. 6, 2011).  The court there found no evidence of direct infringement where the majority of the
25 accused products were manufactured, ordered, invoiced, and shipped outside of the United States.  In
26 *Halo*, the accused infringer, Pulse, engaged in "pricing discussions" with Cisco in the United States
27 and those negotiations determined prices that Cisco's contract manufacturers (including Hon-
28 Hai/Foxconn) paid to Pulse for the accused products.  For each Cisco contract manufacturer, the
invoicing, shipping, and delivery of the accused products took place outside of the United States.  *Id.*

5

at 1207. Unlike the case at hand, there was no evidence of a direct contractual relationship between Cisco and Pulse.

The Freescale-AFS Agreement controls the sales and sales terms of all purchases. Accordingly, the contract provides tangible evidence of a sales relationship between two U.S. companies, not merely "some pricing discussions" as existed in *Halo*. Consequently, the Court cannot find, as a matter of law, that the sales here were not United States sales for purposes of section 271(a).

The Court finds that there are genuine issues of material fact that preclude summary judgment. Summary judgment is **DENIED**.

**IT IS SO ORDERED**.

Dated: February 13, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**