**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MEDIATEK INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>FREESCALE SEMICONDUCTOR, INC.,<br><br>    Defendant. | Case No.: 11-cv-5341 YGR<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION OF PLAINTIFF MEDIATEK, INC., TO STRIKE IMPROPER EXPERT OPINIONS OF DR. FRANK VAHID (DKT. NO. 296) |

Plaintiff MediaTek Inc. ("MediaTek") filed its Motion to Strike Improper Expert Opinions of Dr. Frank Vahid ("Vahid"). (Dkt. No. 296.) MediaTek contends that Defendant Freescale Semiconductor, Inc., ("Freescale") has offered, through its expert Vahid, opinions on prior art references and invalidity theories not disclosed in its disclosures and contentions as required by Patent Local Rule 3-3. Thus MediaTek requests that the portions of Vahid's Reports addressing these previously undisclosed topics be stricken.

Having carefully considered the papers submitted, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** MediaTek's Motion.

**II.    DISCUSSION**

Freescale served its invalidity contentions on May 25, 2012 pursuant to Local Rule 3-3. (See Dkt. No. 296-10.) On September 4, 2013, Freescale was denied leave to amend these contentions. (Dkt. No. 232.) MediaTek argues that those contentions did not disclose a number of invalidity theories that are now included in the opinions of Vahid.

Patent Local Rule 3-3(c) required Freescale to serve invalidity contentions "identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found." These disclosure requirements exist "to further the goal of full and timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*, 2006 WL 1329997 at *4 (N.D. Cal. 2006) (citations omitted). "The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Id.* Any invalidity theories not disclosed pursuant to Local Rule 3-3 are barred, accordingly, from presentation at trial (whether through expert opinion testimony or otherwise). *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, 2007 WL 2103896 (N.D. Cal., Jul. 20, 2007); *aff'd* 2007 WL 2433386 at *1 (N.D. Cal., Aug. 22, 2007).

The Court examines each specific discrepancy raised by MediaTek in turn:

### A.   '753 PATENT -- THREE ALLEGED DISCREPANCIES

#### 1.   *Okazawa reference*

MediaTek argues that the prior art reference to Okazawa is mentioned for the first time in Vahid's Rebuttal Report and should be stricken for untimely disclosure. Neither Freescale's Local Rule 3-3 contentions, nor even Vahid's Opening Report, mentioned the Okazawa reference. In his Rebuttal Report, Vahid opines for the first time that Okazawa can be mapped onto Claim 2 of the '753 Patent. (Dowd Dec. Ex. 1 [Vahid Rebuttal Report], Dkt. No. 296-9 ¶¶ 38-43.) MediaTek contends that this "mapping" argument, offered under the guise of a "non-infringing alternative" for purposes of a damages analysis, is actually a new invalidity contention that Freescale was required to disclose in its Local Rule 3-3 contentions. In particular, MediaTek points to Vahid's opinion in paragraph 43 as an example of improper opinions in the Rebuttal Report. Paragraph 43 states "[t]he accused products are more similar to the prior art than to the '753 Patent, and thus cannot be infringing." (*Id.* at ¶ 43.)

Freescale's response is two-fold. One, Freescale points to the fact that the Okazawa reference is cited by the '753 Patent itself as prior art, and thus is a part of the intrinsic record of the patent. Two, Freescale argues that Vahid's opinion is not directed to invalidity, but to the infringement analysis only. A person skilled in the art would obviously look to the prior art in order

2

to understand the meaning of the claims at issue, and in turn to determine what alternatives a party might have to meet those claim limitations and mitigate damages. Thus, Vahid's analysis of infringement considers the meaning of Claim 2 in light of what was already covered by Okazawa. In the paragraphs identified by MediaTek, Vahid does not opine in support of a defense that the accused products "practice the prior art," but only opines that Freescale could implement prior art systems if the Court were to find infringement. Freescale contends that it should be able to present opinions "comparing the patented invention to its next-best available alternative(s)" so that the court can "discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right." *Grain Processing Corp. v. American Maize-Products Co.,* 185 F.3d 1341, 1351 (Fed. Cir. 1999).

As Freescale seems to acknowledge, an argument that the patent-in-suit practices the prior art is a challenge to validity, and is not a proper defense to a claim of literal infringement. *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) ("This court made unequivocally clear in *Baxter* that there is no 'practicing the prior art' defense to literal infringement."); *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995); *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1377 (Fed. Cir. 2002). "Literal infringement exists if each of the limitations of the asserted claim(s) read on… [*i.e.,*] are found in, the accused device. Questions of obviousness in light of the prior art go to validity of the claims, not to whether an accused device infringes." *Baxter,* 49 F.3d at 1583.[1]

Vahid's opinion improperly brings invalidity into the infringement analysis, even if offered in the guise of a damage mitigation theory on account of non-infringing alternatives. Had Freescale wished to assert invalidity on these grounds, it should have disclosed this theory in its invalidity contentions. Having failed to do so, it cannot now offer this evidence through the back door of a damages theory.

---

[1] Certainly, prior art cited in a patent is part of the intrinsic record and informs how the claims of the issued patents can be applied. *V-Formation, Inc. v. Benetton Group SpA, V-Formation, Inc. v. Benetton Group SpA,* 401 F.3d 1307, 1311 (Fed. Cir. 2005). While Freescale is correct that the intrinsic evidence informs the meaning of claim terms, the *V-Formation* case was directed to the inquiry on *claim construction*, not to expert opinions to be used in connection with summary judgment or trial of the infringement issues. *V-Formation,* 401 F.3d 1307, 1311.

Accordingly, MediaTek's motion to strike paragraphs 37-42 of Vahid's Rebuttal Report is **GRANTED**.

### 2. *Lambrecht and Okazawa General Reference*

MediaTek next argues that Vahid's reliance on the Lambrecht prior art reference is improper because the Court previously ruled it could not be cited. Freescale sought to introduce the Lambrecht reference through an amendment to its invalidity contentions and that motion was denied. (Dkt. No. 232 at 7-11.) Vahid's Report continues to rely on Lambrecht, though ostensibly for an infringement damages analysis, rather than invalidity. As an example in paragraph 55 of his Rebuttal Report, Vahid states:

> 55. As discussed in my Opening Report, there is prior art to the '753 patent, including prior art cited by the patent examiner, that cannot infringe the patent. Such prior art includes Kawai, Okazawa, Funabashi, *Lam[b]recht*, and the MC88410. Therefore, in the event that the jury or the Court finds that the i.MX50 infringes claim 2 of the '753 patent, Freescale could design the i.MX50 to implement one of the prior art systems. *Because the prior art systems are very close to, **if not identical to**, the accused structure in the i.MX50, it is my opinion that implementing such a system in the i.MX50 would impose minimal time and cost to Freescale.*

(Vahid Rebuttal Report at ¶ 55 (emphasis added).) Paragraphs 66, 77, 92, 98, and 107 incorporate this statement with respect to other products. MediaTek argues that, because Freescale did not disclose Okazawa or Lambrecht in its Local Rule 3-3 invalidity contentions, Vahid's opinions about these references in paragraphs 55, 66, 77, 92, 98, and 107 of his Rebuttal Report should be stricken.

Here, again, Freescale argues that Vahid's opinions only cite Okazawa and Lambrecht for the purpose of showing non-infringing alternatives that would mitigate damages. Here, again, the argument is unavailing. Freescale cannot offer what amount to invalidity opinions through the backdoor of the infringement case. *Baxter*, 49 F.3d at 1583. By including the phrase "if not identical" in his opinion, Vahid veers from a damages theory, as described in *Grain Processing*, into an invalidity contention. Here, the invalidity opinion is not only irrelevant, but, in the case of the Lambrecht reference, specifically excluded as an invalidity reference by the Court's prior order.

Thus, the Court finds that Vahid's opinion, to the extent that it includes a statement that the prior art references are "identical to" the accused structures, extends beyond a permissible discussion

4

of infringement damages and into an invalidity defense. Striking this language does not change the meaning of the report significantly on the damages point, and avoids an improper invalidity opinion.

Accordingly, MediaTek's motion to strike paragraphs 55, 66, 77, 92, 98, and 107 in Vahid's Rebuttal Report is therefore **GRANTED IN PART** as to the phrase "if not identical to" in paragraph 55, and incorporated in the others.

### 3. *Figure 1-4 of the MC88410 User Manual*

MediaTek argues that Vahid's Opening Report introduced a new invalidity theory not previously disclosed based upon a figure from an underlying user manual. More specifically, Claim 2 of the '753 Patent recites the limitation of performing "a first address transaction" and "a second address transaction" between various components. According to MediaTek, Freescale's Local Rule 3-3 contentions cite only to Figure 1-3 of the MC88410 User Manual as showing these limitations while Vahid's Opening Report cites to Figure 1-3 *and* Figure 1-4. On this basis, MediaTek seeks to strike the opinions set forth at paragraph 71, as well as at pages 15 through 19 of Exhibit C-4 to the Opening Report. Freescale argues that MediaTek is incorrect.

The Court agrees with Freescale on this point. The Court's review of the relevant documents reveal that Freescale's Invalidity Chart for Patent '753, Exhibit A-5, at 15-16, cited both Figures 1-3 and 1-4. (Yang Decl. Ex. 2, [Dkt. 318-4] Freescale's Invalidity Contentions, Ex. A-5 at 15-16.) Vahid's report properly relies on both figures as they were disclosed in Freescale's invalidity contentions.

Accordingly, MediaTek's motion to strike paragraph 71 and pages 15-19 of Exhibit C-4 to Vahid's Opening Expert Report is **DENIED**.

### B.   '845 Patent -- Three Alleged Discrepancies

#### 1. *Reliance on Bhuyan Figure 5 for Invalidity/Obviousness*

MediaTek argues that Vahid relies extensively on Figure 5 from Bhuyan as the basis for his obviousness opinion with respect to several '845 claim limitations. However, Freescale's Local Rule 3-3 contentions do not disclose Bhuyan's Figure 5 in conjunction with *any* '845 claim limitation.

Freescale counters that Figure 5 of the Bhuyan reference is part of the material Freescale included in its invalidity contentions since those contentions referred to Figure 3 and page 27 of

Bhuyan as disclosing the limitations of Claims 1 and 21 of the '845 Patent, and Figure 5 appears on page 27 of Bhuyan.

A careful review of the underlying Bhuyan reference reveals that the invalidity contentions did not disclose Figure 5 adequately. The relevant passage in Vahid's Opening Report, reads:

> On the other hand, a crossbar, as used in C.mmp and depicted in Figure 3, supports all possible distinct connections between the processors and memories simultaneously. (FSL-00021481 [*i.e.,* Bhuyan, at 27.].)

Page 27 of Bhuyan (FSL-0021481) discusses Figure 3 in the context of multiple processors, memories, and an interconnection network. (Yang Decl. Ex. 6, Bhuyan, at 27, FSL-00021481.) Page 27 makes only a passing reference to Figure 5. The text on Page 27 contrasts the "crossbar, as used in C.mmp and depicted in Figure 3…[with] multistage interconnection networks (MINs) and multiple-bus networks…depicted in Figures 4 and 5, respectively, and …***described in later sections***." (*Id.* [Bhuyan at 27], emphasis supplied.) Thus, Figure 5, and the system it depicts, is not described or discussed on page 27 at all.

The fact that Figure 5 *appears* on page 27 does not adequately disclose Freescale's intention to rely on it as a prior art reference. Consequently, the portion of Vahid's report relying on Figure 5 will be stricken. The motion is **GRANTED** on this point. Paragraph 98 and the relevant portions of pages 31-46 of Exhibit D-3 and pages 47-60 of Exhibit D-4 to Vahid's Opening Report are **ORDERED STRICKEN.**

### 2. *Asserting Bhuyan against Claim 5*

MediaTek argues that Vahid's Report also improperly relies on the Bhuyan reference in its Exhibit D-1 as disclosing the additional limitations of '845 Patent, Claim 5 (which depends from Claim 1), since Freescale's Local Rule 3-3 contentions did not assert Bhuyan against Claim 5. Freescale's response is that it put MediaTek on notice that it would rely on Bhuyan for Claim 5 since Bhuyan was disclosed in connection with Claim 1's limitation of a "first processor," a limitation that also appears in Claim 5.

Because Freescale never identified Bhuyan against Claim 5, it is barred under Local Rule 3-3 from doing so now. *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, 2007 WL 2103896 at *1-2, 4 (N.D. Cal., Jul. 20, 2007); *aff'd* 2007 WL 2433386 at *1 (N.D. Cal., Aug. 22,

2007); *see also, ACCO Brands v. PC Guardian Anti-Theft*, 592 F.Supp.2d 1208, 1215-16 (N.D. Cal. 2008); *Funai Elec. Co., v. Daewoo Elec.*, 593 F.Supp.2d 1088, 1102 (N.D. Cal. 2009). The argument that the citation of Bhuyan in connection with Claim 1 should suffice for dependent Claim 5 as well is wholly without merit. Local Rule 3-3(c) required Freescale to chart separately for each claim the prior art references it would assert for invalidity. *Network Appliance Inc. v. Sun Microsystems Inc.*, C-07-06053 EDL, 2009 WL 2761924 (N.D. Cal. Aug. 31, 2009) (striking expert opinion on reference that was not fully charted in invalidity contentions).

Accordingly, the motion is **GRANTED.** Paragraph 100 and the relevant portions of pages 15-16 of Exhibit D-1 to Vahid's Opening Report are **ORDERED STRICKEN.**

### 3. *Bhuyan Figure 1A*

MediaTek seeks to strike portions of Vahid's Report at Exhibit D-1 on the grounds he that relies on a proposed combination of Bhuyan with Bowes856, specifically that the "prior art fly-by DMA scheme" of Bowes856 Figure 1A, satisfies the "wherein the DMA subsystem is configured and arranged" limitation of '845 Claim 1. (Dowd Decl. Ex. 3 ¶ 105; *id.* Ex. D-1 at 14.) MediaTek contends that this theory is absent from Freescale's Local Rule 3-3 contentions, which never identify Figure 1A of Bowes856 for any purpose (much less in conjunction with the Claim 1's "DMA subsystem" limitation).

Freescale's response is that its invalidity contentions include citations that encompass every embodiment of a DMA controller in Bowes856, including the embodiment shown in Figure 1A. Freescale claims that a distinction exists between the disclosure requirements of the Patent Local Rules and evidence upon which an expert can rely in reports, citing *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, C 10-2037 LHK PSG, 2012 WL 424985 (N.D. Cal. Feb. 9, 2012). In *Genentech*, Magistrate Judge Grewal described the court's analysis of whether an expert's report exceeds the scope of a party's disclosures under Patent Local Rule 3-3 as:

> look[ing] to the nature and scope of the theory of invalidity disclosed and whether the challenged report section merely provides an evidentiary example or complementary proof in support thereof, or itself advances a new or alternate means by which the jury could find the claim at issue invalid. At a minimum, a key consideration for the court is the timing of the disclosure in relation to when the disclosing party had the information and when the opposing party would have

needed the information in order to fairly conduct discovery or prepare a responsive strategy.

*Genentech,* 2012 WL 424985 at *2. Freescale argues that Vahid's Opening Report merely offers complementary proof of the same obviousness theory that was disclosed in Freescale's invalidity contentions. For this proposition, Freescale focuses on the reference in Vahid's Opening Report to Figure 1A which it claims describes the context of a "typical" DMA scheme in which "the DMA controller 120 issues the read and write commands necessary to transfer the data between the I/O device and the main memory." (Yang Decl. Ex. 7, Vahid Opening Report, Exhibit D-1 [Dkt. 318-9] at 14.)

Again, a review of the record demonstrates that nowhere in its invalidity contentions does Freescale mention a "fly-by DMA scheme" as illustrated in Figure 1A of Bowes856. The only figure from Bowes856 that was cited was Figure **2A**. Moreover, Vahid's reference to Figure 1A in his Report does not reference that figure as a "typical DMA scheme," but as a "typical *prior art fly-by* DMA scheme," citing the **background** section of the Bowes856 patent. This is significant for two reasons: (1) the reference is to a ***particular type*** of DMA controller scheme; and (2) the figure is meant to show art ***prior to*** Bowes856, ***not*** the invention or any embodiment of the claims of **Bowes856 itself**. (Bowes856 Patent 1:53-61.) Thus, Vahid's analysis of which portion of the cited prior art would, in combination with Bhuyan, demonstrate invalidity due to obviousness differs considerably from what Freescale disclosed under Patent Local Rule 3-3.

Accordingly, the motion is **GRANTED**. Paragraph 105 and the relevant portions of page 14 of Exhibit D-1 to Vahid's Opening Expert are **ORDERED STRICKEN**.

### C. '331 Patent

#### 1. *Withdrawn Opinions*

MediaTek's motion raised a number of issues with those portions of Vahid's Report concerning: (1) the Houston reference anticipating Claim 11; (2) the Houston reference, Figure 7, anticipating Claim 11 and 35; (3) Houston's Logic Component 12 related to Clock Frequency; and (4) the Dischler Reference related to a dynamic power controller.

On February 17, 2014, Freescale submitted a letter to the Court in which it represented that it is withdrawing its reliance on the Dischler and Houston references for purposes of its invalidity

arguments directed at the '331 Patent. (Dkt. No. 446.) Subsequently, in its letter dated February 18, 2014, MediaTek withdrew its motion to strike the portions of Vahid's opinions based upon those references. (Dkt. No. 447.) Therefore, the motion is **DEEMED WITHDRAWN** and the underlying opinions of Dr. Vahid in the following portions of his Opening Report as likewise **DEEMED WITHDRAWN**: paragraph 153 and pages 73-75 of Exhibit E-6; pages 75-76 and 80-86 of Exhibit E-6; and paragraph 154 pages 83-85 of Exhibit E-6; and paragraph 150 and pages 67-69 of Exhibit E-5.

### 2. '331 Patent's Written Description Challenge To "Dynamic Power Controller" Limitation

With respect to the '331 Patent, MediaTek contends that Freescale's invalidity contentions failed to disclose the opinion in paragraphs 183-196 of Vahid's Opening Report that the '331 Patent's written description fails to support Claim 35's dynamic power controller limitation. (Dowd Decl. Ex. 3 ¶¶ 183-196.) Having failed to disclose this theory adequately in Freescale's Rule 3-3 disclosures, MediaTek contends that Freescale cannot now offer Vahid's opinion on this written description theory.

In response to the motion, Freescale argues that its invalidity contentions did disclose this theory. Freescale points the Court to page 26 of its 208-page submission under Local Rule 3-3, a chart in which the "monitor . . . processor to determine" limitation in Claim 35 of the '331 Patent was listed.[2] The relevant portion of the chart stated as follows:

| "monitor. . . processor to determine" | | | 35 | | Indefiniteness, Written Description/ Enablement |
|---|---|---|---|---|---|

---

[2] For context, the Court repeats the pertinent part of the '331 Patent, Claim 35 which states:
**35.** A device comprising:
    at least one processor…;
    a power supply…;
    a clock controller…; and
    a dynamic power controller connected to the power supply and the clock controller, adapted *to monitor the [sic] at least one processor to determine* a clock frequency requirement of the [sic] at least one processor…."
('331 Patent, col. 18:9: 12.)

9

The Court finds that Freescale failed to disclose this theory of invalidity sufficiently in its Rule 3-3 disclosures. "This district has adopted Patent Local Rules that 'require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C08-04567CW, 2009 WL 3353306, at *2 (N.D.Cal. Oct.16, 2009), quoting *O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1359 (Fed.Cir.2006). Rule 3-3(d) governs invalidity contentions based upon 35 U.S.C. § 112(1) and requires that a party alleging such invalidity contentions shall provide "[a]ny grounds of invalidity based on ... enablement or written description." Patent L.R. 3-3(d). While the requirements for asserting a written description theory are not as detailed as for a claim of obviousness, it still must meet this threshold of giving the other party sufficient notice for it to engage in meaningful discovery and preparation of its case. *See Medimmune, LLC v. PDL Biopharma, Inc.*, C 08-5590 JF (HRL), 2010 WL 760443 (N.D. Cal. Mar. 4, 2010).

Here, Freescale's disclosure here does nothing more than state that a theory of "indefiniteness, written description/enablement" is asserted as to this term. It does not state that Claim 35's "dynamic power controller" limitation is what is being challenged with this contention, or explain in even the most basic terms why Freescale contends that the written specification did not disclose a dynamic power controller.

Freescale points to the decision in *Genentech* as finding a "less explicit statement" sufficient in the context of a written description theory under Local Rule 3-3(d). However, Freescale fails to recognize that that the disclosure upheld in *Genentech* was far more explicit than merely stating "written description," as here. *Genentech,* 2012 WL 424985 at *2. The disclosure in *Genentech* read:

> [T]he patent broadly claims a 'genus' of antibodies with properties listed in the claims, yet provides no example other than the 7.16.4 antibody itself. Indeed, the following contention language specifically disputes the sufficiency of the disclosure because of its failure to identify any antibody that competes for binding with 7.16.4: 'The 7.16.4 antibody is the only antibody disclosed in the specification that allegedly down regulates p185 when administered in undisclosed 'sufficient amounts.' It is the only antibody disclosed that would compete with itself for binding to p185.' Because the patent itself teaches that competitive binding takes place at the same epitope, this is more than sufficient to justify Clynes' discussion.

*Genentech*, 2012 WL 424985 at *2.  Similarly, in *Medimmune*, the court overruled a challenge to the sufficiency of a written description disclosure that read:

> The specification of the ′370 patent neither describes nor enables the full scope of humanized immunoglobulins of claim 28, which is therefore invalid for failure to meet the written description and enablement requirements of 35 U.S.C. § 112, ¶ 1. The specification provides a very limited number of examples of immunoglobulins using the techniques of CDR grafting and framework substitution, few of which fall within the scope of claim 28. The immunoglobulins disclosed in the specification are capable of binding to a very limited set of antigens, and the disclosed binding affinity of those immunoglobulins is limited by the affinity of the donor immunoglobulins that provided the CDRs in the exemplified immunoglobulins. In contrast to the sparse disclosure of the ′370 patent, claim 28 covers a virtually innumerable number of immunoglobulins, not limited by, *inter alia,* the antigens to which they bind or the affinity with which they bind them.  The specification of the ′ 370 patent does not describe or enable immunoglobulins with the full scope of binding affinities covered by claim 28. *See, e.g., ′*370 Patent Prosecution History, Office Action April 29, 1999.  The specification of the ′ 370 patent does not describe or enable the structures and affinities of immunoglobulins within the scope of claim 28 that can be prepared, if at all, only by using methods not described or enabled by the ′370 patent. The specification of the ′370 patent likewise does not describe or enable the full scope of the humanized immunoglobulin chains, and the antigens to which they bind, that are claimed in claim 28.

*Medimmune, LLC*, 2010 WL 760443 at *3.  Freescale's "disclosure" falls short of the level of explanation in either *Genentech* or *Medimmune*, and fails to give adequate notice of the basis for its contention as required by Local Rule 3-3(d).

Consequently, the motion to strike is **GRANTED** as to Paragraphs 183 through 196 to Vahid's Opening Expert Report.

### III. CONCLUSION

For the reasons set forth above, the Motion to Strike is **GRANTED IN PART AND DENIED IN PART**. Vahid's Reports are **STRICKEN** as follows:

<u>Opening Report</u>

- Paragraph 98 and the relevant portions of pages 31-46 of Exhibit D-3, and pages 47-60 of Exhibit D-4
- Paragraph 100 and the relevant portions of pages 15-16 of Exhibit D-1
- paragraph 105 and the relevant portions of page 14 of Exhibit D-1

- Paragraphs 183 through 196 to Vahid's Opening Expert Report

Rebuttal Report

- paragraphs 37-42
- the phrase "if not identical to" in paragraph 55 and as incorporated into paragraphs 66, 77, 92, 98, and 107

The motion is **DEEMED WITHDRAWN** and the underlying opinions of Dr. Vahid in the following portions of his Opening Report as likewise **DEEMED WITHDRAWN**:

- paragraph 153 and pages 73-75 of Exhibit E-6;
- pages 75-76 and 80-86 of Exhibit E-6; and
- paragraph 154 and pages 83-85 of Exhibit E-6; and
- paragraph 150 and pages 67-69 of Exhibit E-5.

**IT IS SO ORDERED**.

Dated: February 21, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**