**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MEDIATEK INC.,**<br><br>    Plaintiff,<br><br>    vs.<br><br>**FREESCALE SEMICONDUCTOR, INC.,**<br><br>    Defendant. | Case No.: 11-cv-5341 YGR<br><br>**PRE-TRIAL ORDER NO. 3**<br>**RE: EXPERT TESTIMONY AT TRIAL** |

The parties in this action have each filed motions which concern the nature and scope of expert testimony at trial: MediaTek's Motion to Strike, Or In The Alternative Preclude Under *Daubert*, Improper Opinions of Dr. Frank Vahid (Dkt. No. 299-5) and Freescale's Motion to Strike Certain Testimony of Catherine M. Lawton (Dkt. No. 302-4). The Court entertained oral argument on February 28, 2014.

The parties are engaged in a technically complicated patent dispute. The proffered experts on both sides are significantly credentialed, as would be expected with high stakes litigation. These credentials are not the issue. Rather, this Order focuses on objections which are at the core of the motions, namely the actual presentation of expert testimony at trial.

**I.    MOTION TO STRIKE CERTAIN TESTIMONY OF CATHERINE M. LAWTON CONCERNING BACKGROUND FACTUAL ASSUMPTIONS**

Federal Rule of Evidence 702 controls expert witness testimony. The admissibility of an expert opinion requires a three-step analysis:

> The admissibility of expert testimony, Rule 702, requires that the trial court make several preliminary determinations, Rule 104(a). The trial court must decide whether the witness called is properly qualified to give the testimony sought. A witness may be qualified as an expert on the basis of either knowledge, skill, experience, training, or education or a combination thereof, Rule 702. The trial court must further determine that the testimony of the expert witness, in the form of an opinion or otherwise, will assist the trier of fact, i.e., be helpful, to understand the evidence or to determine a fact in issue, Rule 702(a). Finally the trial court must determine that as actually applied in the matter at hand, Rule

> 702(d), to facts, data, or opinions sufficiently established to exist, Rule 702(b), including facts, data, or opinions reasonably relied upon under Rule 703, sufficient assurances of trustworthiness are present that the expert witness' explanative theory produced a correct result to warrant jury acceptance, i.e., a product of reliable principles and methods, Rule 702(c).

Michael H. Graham, 5 HANDBOOK OF FED. EVID. § 702:1 (7th ed.) (footnotes omitted). An expert is generally not permitted to opine on an ultimate issue of fact except in limited circumstances, since such opinions may "invade the province of" the jury. *See Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) ("evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible"). Nor may an expert opine on questions which are matters of law for the court. *See id.* at 1058 (deciding questions of law is the exclusive province of the trial judge); *McHugh v. United Service Auto Assoc.*, 164 F.3d 451, 454 (9th Cir. 1999) (expert testimony cannot be used to provide the legal meaning or interpretation of insurance policy terms); *Aguilar v. Int'l Longshoremen's Union Local No. 10,* 966 F.2d 443, 447 (9th Cir. 1992) (expert opinion that reliance was reasonable and foreseeable were inappropriate subjects for expert testimony). However, as a practical matter, experts may express opinions based upon hypotheticals and information which would otherwise be inadmissible hearsay on its own. Additionally, experts can rely upon the opinions of other experts. *See DataQuill Ltd. v. High Tech Computer Corp.,* 887 F.Supp.2d 999, 1026 (S.D. Cal. 2011) ("It is routine and proper for a damages expert in a technical patent case to rely on a technical expert for background."); *United States v. 1,014.16 Acres of Land, More or Less, Situated in Vernon Cnty., State of Mo*., 558 F. Supp. 1238, 1242 (W.D. Mo. 1983) *aff'd*, 739 F.2d 1371 (8th Cir. 1984) ("An expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion. Moreover, Rule 703 FRE explicitly allows an expert to base an opinion on facts or data made known to him at or before the hearing."); *Interwoven, Inc. v. Vertical Computer Sys.*, CV 10-04645 RS, 2013 WL 3786633, at *7 (N.D. Cal. July 18, 2013) ("Experts are, however, permitted to rely on hearsay evidence in coming to their conclusions, so long as an expert in the field would reasonably rely on that information").

Freescale seeks an order to exclude MediaTek's damages expert, Catherine Lawton, from testifying on "opinions on technology disclosed in the patents-in-suit and technology implemented in

Freescale's accused products, as well as opinions on the semiconductor market." (Oppo., Dkt. No. 323-6, at Section III.A.) This portion of Freescale's motion essentially attempts the wholesale elimination of the background sections upon which Lawton bases her damages calculations. In this regard, the motion is either patently frivolous or fundamentally misunderstands the nature of expert testimony at trial.

Experts in a particular field routinely opine based upon a hypothetical or a set of factual assumptions given to them. They need not be experts in all fields. Nor must they have personal knowledge of the factual background in the case. The proponent of the expert bears the burden of persuading the jury that the expert's opinion is, in fact, based upon a reasonable and convincing hypothetical or that the underlying facts upon which the expert's opinion is based do exist. Thus, a jury is routinely charged:

> [Expert] [o]pinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Ninth Circuit Manual of Model Civil Jury Instructions, 2.11. Because an expert's opinion is based upon other evidence in the record, usually a seasoned trial attorney will not even attempt to call an expert to opine at trial until the evidence underlying the opinion has actually been admitted.

Here, the record with respect to Lawton is unambiguous. Lawton appropriately disclosed, in advance, the factual basis and assumptions for her opinions. If at trial those are found to be inaccurate or ill-founded, then the jury may afford the opinion less weight, if any. However, it is not grounds for striking that portion of the anticipated testimony.

Freescale's motion to strike those portions of Lawton's report in sections titled "Industry Information & Data" (Section 3), "Freescale Business Background" (Section 4), and "MediaTek Business Background" (Section 5) is **DENIED**. However, this Order is without prejudice to Freescale asserting a timely motion at trial focused on a specific statement and/or assumption proffered.

II.   **MEDIATEK'S MOTION TO STRIKE/PRECLUDE UNDER *DAUBERT* VAHID'S IMPROPER OPINIONS ON THE MEANING OF CLAIM TERMS**

MediaTek objects to Freescale's expert, Dr. Frank Vahid, to the extent that he seeks to testify at trial as to understanding that someone of ordinary skill in the art would have as to particular claims

3

in the patents at issue, and in particular, with respect to certain terms that were never previously identified for claim construction.

### A. General Principles

In patent cases, "the words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). The ordinary meaning of a claim term is given after reading the entire patent and from the perspective of one of ordinary skill in the art at the time of the invention. *Id*; *Belden Techs. Inc. v. Superior Essex Comm'cns LP*, 733 F. Supp. 2d 517, 545 (D. Del. 2010). It is the role of the Court to determine the meaning of any claim. Claim construction is a matter of law to be decided by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996) (determination of infringement is a two-step analysis: First, the Court determines the scope and meaning of the claims; second, the properly construed claims are compared to the accused device.). "[T]he role of a district court in construing claims is … to give meaning to the limitations actually contained in the claims, informed by the written description, the prosecution history if in evidence, and any relevant extrinsic evidence." *American Piledriving Equipment, Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011). "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Claim terms need only be construed "to the extent necessary to resolve the controversy." *Wellman, Inc. v. Eastman Chemical Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011) (citing *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). However, "district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Pressure Products Medical Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010). Accordingly, the final determination of the construction of any claim occurs at the close of trial and manifests itself in the form of jury instructions.

MediaTek asserts that Freescale's expert, Vahid, is attempting, primarily in his Rebuttal Expert Report, to construe terms never previously identified. In cases where parties do "not seek

1 construction" of the terms at issue, courts give those terms their "'ordinary and customary

2 meaning… to a person of ordinary skill in the art in question at the time of the invention.'" *Belden*

3 *Techs. Inc. v. Superior Essex Communications, LP,* 733 F.Supp.2d 517, 545 (D. Del. 2010) (quoting

4 *Phillips*, 415 F.3d at 1313) (alteration in original); *see also Apple, Inc. v. Samsung Electronics Co.,*

5 *Ltd.*, 12-CV-00630-LHK, 2014 WL 660857 at * 3(N.D. Cal. Feb. 20, 2014) (same). Freescale does

6 not deny that many of the terms were not identified. Rather, it asserts that Vahid "merely applied the

7 claim language to the accused products and prior art," and contends that MediaTek's experts have

8 done the same. (Oppo. at p.1:17-23.) The Court addresses the two interrelated issues.

9 In this District, parties are required to "serve on each other party a list of claim terms which

10 that party contends should be construed by the Court...." Patent L.R. 4-1(a). Thereafter the parties

11 are required to "meet and confer for the purpose of limit[ing] the terms in dispute" and to identify

12 jointly the "10 terms likely to be most significant to resolving the parties' dispute, including those

13 terms for which construction may be case or claim dispositive." Patent L.R. 4-1(b). The goal of

14 these rules, like those of other districts with significant numbers of patent cases, is the speedy,

15 efficient, and less expensive resolution of patent cases. *See, e.g.*, *Finisar Corp. v. The DirecTV Grp.*

16 *Inc.*, 424 F. Supp. 2d 896, 901-02 (E.D. Tex. 2006) ("[O]ne of the goals of the Federal Rules of

17 Procedure and the Local Patent Rules is to speed up the litigation process and make it less expensive.

18 A party simply can not [*sic*] wait until shortly before trial to prepare its case."); *Integrated Circuit*

19 *Systems, Inc. v. Realtek Semiconductor Co., Ltd.,* 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004)

20 (patent local rules were mean to prevent a "shifting sands" approach to claim construction and

21 disclosures). The *Finisar* court aptly described the posturing in which some litigants engage:

> 22 The motive to delay disclosure is often even greater in patent cases than in other
> 23 litigation, because of the bifurcated nature of a patent suit. The parties first
> dispute construction of claims—the definitions of the claim language in the
> 24 patent. After the court construes the claims, usually following a *Markman*
> hearing, the parties join issue over assertions of infringement by the patent holder,
> 25 and allegations of invalidity by the accused infringer.
>
> 26
> The patent holder wants to know about every possible prior art reference that
> 27 might invalidate its patent, so that it can carefully craft proposed definitions that
> make its patent coverage as broad as possible, perhaps even broader than the
> 28 inventor ever thought possible, without being so broad as to be invalidated by
> some prior art reference.

5

> On the other hand, the accused infringer wants to pin the patent holder to a claim construction it knows will be invalidated by prior art it has not disclosed, obtain a ruling from the court approving that construction, and then sandbag the patent holder with the prior art reference.
>
> One author describes the problem as follows: The plaintiff is at one end of a "mine field," with each "mine" representing an invalidating piece of prior art. The plaintiff wants to know where each and every mine is before stepping onto the field. The defendant is at the other end of the field, and does not want to tell the plaintiff where any of the mines are, in the hope that Plaintiff will commit to a path, before it knows where not to step. James M. Amend, *Patent Law: A Primer for Federal District Court Judges* 19 (1998).

*Id.* at 898-99. Thus, in order to promote the fair and equitable resolution of these cases, the Northern District has instituted a comprehensive set of rules which require the identification of any claim terms needing construction early in the litigation. *See* Patent L.R. 4-1(a). Without these rules, parties could constantly change their positions, making resolution difficult.

### B.     Opinions At Issue In This Motion

Here, Freescale attempts to circumvent the Patent Local Rules under the pretense that its technical expert is opining on the plain and ordinary meaning of terms, not offering alternate constructions.[1] MediaTek's motion identifies several such terms in Vahid's Opening and Rebuttal Reports.[2] As set forth in the chart below, several terms were never identified for construction even though Freescale did identify 45 other terms for potential construction, and ultimately, narrowed that

---

[1] Freescale does not challenge MediaTek's specific identification of the paragraphs referenced as appropriately connected to the arguments advanced relative to each term.

[2] MediaTek's motion identified seven terms from Vahid's Rebuttal Report and three terms from his Opening Report. Since the motion was filed, other events have impacted three terms of those terms. First, Freescale withdrew its reliance on Paragraphs 85-93, 234-36, and 280-83 of Vahid's Opening Expert Report, thereby mooting the motion as to the terms "arbitration unit" and "DMA subsystem." (Oppo., Dkt. No. 320, at 1, fn. 1; orally withdrawn during February 28, 2014 Pretrial Conference.) Second, the Court struck paragraphs 37-42 of Vahid's Rebuttal Report, which reference the term "at least one address bus." (Order Granting In Part and Denying In Part Motion of Plaintiff MediaTek, Inc., to Strike Improper Expert Opinions of Dr. Frank Vahid, Dkt. No. 454.) Third, the Court struck paragraphs 184-196 of Vahid's Opening Report which concern the term "to determine a clock frequency requirement," effectively mooting the arguments as to that term. (*Id.*)

6

joint request for construction to just four claim terms/phrases to be construed by the Court in the *Markman* process.[3]

|   | Term | Paragraphs Implicated[4] | Patent | Prior Identification |
|---|---|---|---|---|
| 1 | at least one address bus | ¶¶ 29-43, 57-58, 68-69, 79-82, 94-95, 100-101 | '753 | None |
| 2 | interconnecting a plurality of components…in a predetermined way | ¶¶ 44-52, 59-64, 70-75, 83-90, 96-97, 102-105 | '753 | Identified same term in a different, but related patent. |
| 3 | portion of the available bandwidth | ¶¶ 155, 157-175 | '845 | None |
| 4 | coupled | ¶¶ 221-230, 267-274 | '845 | None |
| 5 | information indicating the clock frequency requirement | ¶¶ 326-335, 359, 370 | '331 | Portion identified; then withdrawn |
| 6 | controller | ¶¶ 307-315, 350, 353-354, 360, 367-371 | '331 | Leave denied to amend invalidity contention due to lack of good cause |
| 7 | same priority | ¶ 83 of Opening Report | '845 | Identified initially; then withdrawn before offering a proposed construction |

"At trial, parties may 'introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art,' ***so long as*** the evidence does not amount to 'argu[ing] claim construction to the jury.'" *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 12-CV-00630-LHK, 2014 WL 660857 at *3 (N.D. Cal. Feb. 20, 2014) (citing *DNT, LLC v. Sprint Spectrum, LP,* No. 09–CV–21, 2010 WL 582164, *4 (Feb. 12, 2010 E.D. Va.) (emphasis added); *see also Cordis Corp. v. Boston Scientific Corp.,* 561 F.3d 1319, 1337 (Fed. Cir. 2009)). "Arguing claim construction to the jury is inappropriate because it risks confusion and the likelihood that a jury will render a verdict not supported by substantial evidence." *Apple v. Samsung,* 2014 WL 660857 at *3

---

[3] *See* Freescale's Motion for Leave to Designate Additional Claim Terms, Dkt. No. 41 at 2:23-26 [Freescale identified 45 potential terms for construction]; Joint Claim Construction and Prehearing Statement, Dkt. No. 45 [identifying 10 terms]; Supplement to Final Joint Claim Construction and Prehearing Statement, Dkt. No. 65 [agreeing to constructions for two of the ten terms]; Order Regarding Claim Construction, Dkt. No. 73 [parties agreeing to a definition of "determine"]; Claim Construction Order, Dkt. No. 127 [addressing the four remaining terms: "configured and arranged to operate independently, "independently accessed," "interconnecting," and "predetermined parameters"].

[4] Paragraph references are to Vahid's Rebuttal Report unless otherwise noted.

1  (*citing CytoLogix Corp. v. Ventana Medical Sys., Inc.*, 424 F.3d 1168, 1173 (Fed. Cir. 2005)). Whether any evidence as to a term's plain and ordinary meaning is admissible must be considered in the context of the issues to be tried. *Id.* (citing *DNT, LLC*, 2010 WL 582164 at *4.)

Plain and ordinary meanings to a skilled artisan should not be easily displaced. Reference to the prosecution history can confirm such a meaning and "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution...." *Phillips*, *supra*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582-83); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (internal quotations omitted). The "purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution." *Id.* Therefore, except in a rare case, use of the prosecution history raises issues solely for the court, not the jury. Thus testimony grounded in the prosecution history to discern the meaning of a claim is properly excluded from presentation to the jury, especially where, as here, a fair reading of the expert report reveals an intention to argue claim construction. Similarly, while the court may, in its discretion, consider extrinsic evidence[5] if such sources will aid the court in determining "the true meaning of language used in the patent claims," such evidence, if required, is not appropriate for presentation to a jury and is properly excluded at trial. *See Phillips*, *supra*, 415 F.3d at 1318.

Freescale's arguments in opposition to the motion are generally unavailing. First, Freescale has never disclosed many of these terms for construction, and never sought leave of the Court to amend the terms it originally identified as being in dispute. Local Rule 4-1(a) requires early and complete disclosure of the claim terms at issue and party cannot be allowed to argue for new and additional claim terms to be construed at the eleventh hour. Freescale has cited no authority to the contrary.

Second, the Court finds largely disingenuous the argument that Vahid is merely offering testimony within the purview of the plain and ordinary meaning of the patent claim terms. Vahid

---

[5] Although the use of extrinsic evidence is discretionary, a court may always consult technical treatises and dictionaries to understand the technology and to construe the claims, so long as no definition in the intrinsic evidence is contradicted. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584, n.6 (Fed. Cir. 1996).

8

1 relies heavily on the prosecution history, specifications, and even provisional applications to explain
2 and expound upon a specific meaning and/or requirements of the terms identified. At oral argument,
3 Freescale conceded that Vahid should be able to use these documents to explain his view on the
4 meaning of particular terms. The Court disagrees. Vahid is not permitted to argue claim
5 construction to the jury, and any testimony in this vein as to any term is and will be excluded.
6 Likewise, any other expert testimony purporting to bring in intrinsic or extrinsic evidence to explain
7 the meaning of a claim term will also be excluded.

Three terms discussed by Vahid fall within the reach of this analysis: "at least one address bus," "coupled," and "controller."

### 1. "at least one address bus"

Claim 2 of the '753 patent recites:

> In a digital system including a bus arrangement having ***at least one address bus*** and at least first and second data busses for interconnecting a plurality of components including first, second, third and fourth components in a predetermined way."

(Emphasis supplied.) With respect to the term "at least one address bus," Vahid's Rebuttal Report exceeds the limits of plain and ordinary meaning. Vahid's Opening Report acknowledged that "at least one" meant one *or more* address buses: "claim 2 can read on a bus arrangement with one address bus and two data busses, *two address buses* and two data buses, and so on." (Opening Report ¶ 59, emphasis supplied.) In his attempt to contrast his view of the meaning of the term with MediaTek's expert, Vahid changes course in his Rebuttal Report, opining that the definition must be limited to one address bus only, and using intrinsic and extrinsic evidence to bolster that opinion. Vahid opines that "the requirement that one address bus can be used to define data transfers on different data buses" is found in the specification, citing to various passages of the specification, as well as to Figures 1 and 3 there. (Rebuttal Report, ¶ 32-36.) He submits that MediaTek's view—that "at least one address bus" encompasses two address buses—is a "broad view [which] would read on computing systems since shortly after the dawn of computing systems." (Rebuttal Report at ¶ 31.) His opinion continues, stating that the term "at least one address bus" cannot mean more than one address bus because a system so defined would read on the "prior art in front of the patent

1  examiner during the prosecution of the '753 patent." (Rebuttal Report at ¶ 38, *see also* ¶¶ 39-40,
2  including figures.) Vahid goes on to conclude that if the definition of "at least one address bus"
3  encompassed more than one address bus, then "claim 2 would not have been issued by the USPTO."
4  (Rebuttal Report ¶ 41.)[6]

5  Vahid's opinions extend far too far into the territory of claim construction, a matter of law for
6  the Court. Because these opinions describe and rely on extrinsic and intrinsic evidence beyond that
7  which can be presented to the jury, they are an improper subject for testimony at trial.

### *2.* *"coupled"*

Claim 1 of the '845 Patent uses the term "coupled" several times, including in the phrases "a first data processing subsystem comprising a first processor *coupled* to a first bus as a first bus master," and "a direct memory access (DMA) subsystem comprising a DMA controller *coupled* to a third bus as a third bus master." (Emphasis supplied.)

Vahid's opinion in his Rebuttal Report contends that "coupled" requires a "direct" connection between components, with no intervening modules. (*See* Rebuttal Report ¶¶ 227, 230.) In support of this interpretation, Vahid relies on extrinsic "patent wrapper" evidence in the form of the provisional patent application. (Rebuttal ¶ 229.) He also relies on portions of the '845 Patent specification, contending that the language and figures therein require a direct connection between arbitration units with no intervening components. (Rebuttal Report ¶ 230.) Leaving aside MediaTek's argument that Vahid's opinions improperly exclude disclosed embodiments, the opinions are not proper evidence for a jury's consideration. The motion is, therefore, well taken and these opinions will be excluded at trial.

---

[6] Paragraphs 29-43 concern Vahid's opinion with respect to the i.MX50. This analysis then becomes the foundation for his other opinions and is incorporated by reference. See paragraph 56 incorporating the analysis for the i.MX51 and opinions at paragraphs 57-58. See paragraph 67 incorporating the analysis for the i.MX53 and opinions at paragraphs 68-69. See paragraph 78 incorporating the analysis for the i.MX6 and opinions at paragraphs 79-82. See paragraph 93 incorporating the analysis for the i.MPC8360E and opinions at paragraphs 94-95. See paragraph 99 incorporating the analysis for the MXC91131, MXC91331, MCV91321 and opinions at paragraphs 100-101.

### *3.* *"controller"*

Claims 11 and 35 of the '331 patent recite a "controller" and a "dynamic power controller," respectively, which "determine a voltage requirement based on the clock frequency requirement of the processor" and "sequence a transition to a power state defined by the clock frequency requirement and the voltage requirement."

With respect to the term "controller," Vahid's Rebuttal Report offers the opinion that Claims 11 and 35 do "not cover implementations in which software running on the CPU performs the steps" of the controller. (Rebuttal Report ¶ 307.) Vahid relies on the patent's provisional application and specification to opine that the nature of the controller is limited to hardware, arguing that the embodiments disclosed use hardware to perform the "controller" function. (Rebuttal Report ¶¶ 308-313.)[7]

Again, Vahid's opinions go far beyond merely relying on the plain and ordinary meaning of "controller," and instead attempt to explain why the term must be limited. As such, they encroach into the territory of claim construction, a province strictly for the Court, and cannot be presented to the jury.[8]

---

[7] Vahid incorporates this same analysis with respect to claim 11 (para 307-315) to claim 35 and its application to the iMX31, iMX35, iMX50, iMX6 (para 350, 353, 354, 360, 367-71).

[8] Vahid's opinions in this regard are improper for the additional reason that Freescale's argument for this hardware-only limitation was already rejected by the court. Shortly before the fact discovery deadline, Freescale moved for leave to amend its invalidity contentions, seeking to add a written description challenge under 35 U.S.C. § 112. In that motion, Freescale argued that if the "controller" of claims 11 and 35 could be construed to include software running on a processor, then they lacked written description support. Magistrate Corley rejected Freescale's argument, finding that the claims "by their plain language do not limit [the] controller to hardware." (Dkt. No. 232 at 9.) As a consequence of that ruling, Freescale agreed to withdraw the corresponding opinions from Dr. Vahid's Opening Report. (Chen Decl. Ex. 9 (September 20, 2013 Email from Josh Hartman).) Freescale cannot attempt to revive this argument through Vahid's Rebuttal Report on non-infringement.

### C. Summary of Rulings on Opinions At Issue

Based upon the foregoing principles, and as elucidated in the examples above, the Court rules as follows on the specific items identified in the motion with respect to Vahid's opinions:

(1) The Motion is **GRANTED** and Vahid's opinions (in the paragraphs cited above) regarding the following listed terms are excluded: (i) "at least one address bus," (ii) "coupled," and (iii) "controller."

(2) With respect to the term "interconnecting a plurality of components...in a predetermined way," the Court **RESERVES** to determine at trial whether its prior construction of this term, in a related patent, is appropriately construed in the same manner here.

(3) With respect to the term, "portion of the available bandwidth," the motion to strike or exclude the testimony is **DENIED WITHOUT PREJUDICE** to renew at trial if appropriate. The motion as framed raises an issue of impeachment with prior testimony and not any specific issues showing that Vahid is attempting a new construction of the term.

(4) With respect to the term, "information indicating the clock frequency requirement," the motion to strike or exclude the testimony is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE** to renew at trial if appropriate. The parties disagree whether the plain and ordinary meaning includes a specific frequency. This issue was raised but not resolved during the *Markman* process in a slightly different context. The parties' experts may opine on the issue but must do so without crossing the line into claim construction. Accordingly, to the extent Vahid relies on an analysis of the specifications, prosecution history, a comparison of claim language (326-27, 330-31, 333-35) to show a plain and ordinary meaning, those opinions are excluded, otherwise the motion is denied.

(5) With respect to the term, "same priority," the motion to strike or exclude the testimony is **DENIED WITHOUT PREJUDICE** to renew at trial if appropriate. The motion as framed argues that a claim construction is attempted in paragraph 83 of the Opening Report and that Vahid resorts to specification and prosecution history. (Motion at 15:14-17.) However, on its face, the Opening Report does not veer into a prohibited claim construction discussion.

To the extent that the parties need additional guidance regarding what constitutes an appropriate presentation of such opinion without crossing the line into claim construction, the determination will depend upon the form of the question and answer proffered during trial. The opinions of experts in patent cases focus on the whether an accused device or article practices a claim as that claim would have been *understood* by someone of ordinary skill in the art at the time of the invention. Thus, an expert may testify as to an understanding without, as discussed, crossing the line into an argument for a particular construction based upon extrinsic and/or intrinsic evidence. As a practical matter, the Court will instruct the jury at an appropriate time that the Court will construe the meanings of terms in dispute and will provide those instructions to the jury at the close of evidence. Further, the jury will be advised that to the extent an expert's opinion contradicts the Court's instruction, the jury must follow the Court's instruction.

## CONCLUSION

Based upon the foregoing, and as to all parties, the Court **ORDERS** as follows:

1. To the extent not previously stricken on other grounds (*see* Order, Dkt. No. 454), MediaTek's Motion to Exclude is **GRANTED** as to opinion testimony stated by Vahid in the portions of his Rebuttal Report (specified above) related to the terms "at least one address bus," "coupled," and "controller."
2. The Court will limit expert testimony to the plain and ordinary meaning without reference to intrinsic or extrinsic evidence, any term not previously identified for construction.
3. MediaTek's Motion to Exclude and objections regarding specific testimony relating to the plain and ordinary meaning of all other terms are **DENIED WITHOUT PREJUDICE** as premature. The Court must consider the specific form of the question and answer at trial in evaluating the appropriateness of potential testimony.

The **COURT FURTHER ORDERS** that, because the issues raised in these motions are fundamentally trial issues, the parties shall meet and confer on the impact of this Order on: (1) the parties' outstanding motions *in limine*; and (2) Freescale's motion for summary judgment concerning non-infringement of the '845 and '331 Patents. By March 12, 2014, the parties shall file a Joint Statement regarding the same, outlining any issues which may remain of concern to be

13

discussed at a subsequent pretrial conference.

This Order resolves Docket No. 299-5 and relevant portions of Docket No. 302-4.

**IT IS SO ORDERED**.

Date: March 5, 2014

                                                  **YVONNE GONZALEZ ROGERS**
                                          **UNITED STATES DISTRICT COURT JUDGE**