**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MEDIATEK INC.,**<br><br>            Plaintiff,<br><br>    vs.<br><br>**FREESCALE SEMICONDUCTOR, INC.,**<br><br>            Defendant. | Case No.: 11-cv-5341 YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART FREESCALE'S MOTION TO STRIKE CERTAIN PORTIONS OF MEDIATEK'S EXPERT REPORTS** |

Defendant Freescale Semiconductor, Inc. ("Freescale") has filed its Motion to Strike Certain Portions of MediaTek Inc.'s ("MediaTek") Expert Reports (Dkt. No. 306), seeking to exclude certain portions of the '753 Patent and the '331 Patent Infringement Reports of Charles Narad ("Narad"), the '753 Validity and the '331 Validity Reports of Narad, and the '845 Validity Report of Dr. Krste Asanovic ("Asanovic"). The motion stems from Freescale's assertion that certain opinions were not disclosed as required under the Patent Local Rules and others are foreclosed by prior pre-trial decisions of Magistrate Judge Jacqueline Scott Corley.

Having carefully considered the papers submitted, the evidence submitted, and the reports at issue, and for the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** the motion as stated herein:

**I.    PORTIONS OF NARAD'S '753 INFRINGEMENT REPORT**

First, Freescale argues that Paragraph 143 of the Expert Report of Charles Narad Regarding Infringement of the '753 Patent should be stricken on the sole ground that it sets forth a doctrine of

equivalents theory not disclosed in MediaTek's Patent Local Rule 3-1 Disclosures. The Court disagrees. MediaTek's infringement contentions stated:

> To the extent that this limitation is found to not be present literally in the i.MX50, MediaTek contends that the differences are insubstantial and the products would infringe under the doctrine of equivalents because the AHBMAX performs substantially the same function of performing two address transactions between components in substantially the same way to obtain the same result as the inventions of the '753 patent."

(Dkt. No. 306-17, Ex. C-1 at 5-7.) This is "information sufficient" for Freescale to understand MediaTek's "theories of infringement," and therefore satisfactory under Patent Local Rule 3-1. *DCG Sys. v. Checkpoint Technologies, LLC*, C 11-03792 PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012). Unlike the authorities cited by Freescale, here MediaTek has stated in its contentions with sufficient specificity that it would put forward a doctrine of equivalents theory in the alternative with respect to this particular limitation and the nature of that theory, "not a boilerplate reservation." *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, C 11-5973 PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013), appeal dismissed (Mar. 18, 2014), quoting *Rambus Inc. v. Hynix Semiconductor Inc.,* Case No. C–05–00334 RMW, 2008 W L 5411564, at *3 (N.D.Cal. Dec. 29, 2008); *see also MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, C 01-4925 SBA, 2004 WL 5363616 (N.D. Cal. Mar. 2, 2004). That MediaTek's expert report offers greater detail on this theory is unsurprising, and certainly not cause to strike it. The motion is therefore **DENIED** on these grounds.

## II. PORTIONS OF NARAD'S '331 INFRINGEMENT REPORT

Freescale next contends that MediaTek is precluded from offering three opinions stated in Narad's '331 Infringement Report as a consequence of Magistrate Judge Corley's Order of May 31, 2013 (Dkt. No. 115, "May 31 Order"). That May 31 Order denied, in part, MediaTek's Motion for Leave To File Amended Infringement Contentions. The Court considers each opinion in turn.

### A.     Opinion That Software Running On the ARM Processor Satisfies the "Controller" and "Dynamic Power Controller" Limitations

Freescale argues that Magistrate Judge Corley previously ruled in her May 31 Order that MediaTek was not permitted to amend its contentions to assert that certain claim limitations were met by identified components "along with software." On this basis, Freescale contends that Narad

cannot properly offer an opinion that the "controller" and "dynamic power controller" limitations are met by a combination of the components (*i.e.,* the CCM, DVFS load tracking block) and "DVFS software running on the ARM processor."

The Court again disagrees. Magistrate Judge Corley's decision does not foreclose Narad's opinion. In her May 31 Order, Magistrate Judge Corley stated that she was denying MediaTek's motion to make "minor clarifications" to the contentions on this claim because MediaTek had failed to specify exactly what changes it was seeking and to offer a comparison showing the revisions proposed. In ruling on a subsequent motion by Freescale to amend its invalidity contentions, Magistrate Judge Corley rejected Freescale's argument that MediaTek had offered a "new infringement theory" that "the controller claimed in claims 11 and 35 of the '331 Patent can be implemented in software as well as hardware." (Dkt. No. 232 at 7.) In her Order denying that motion, Magistrate Judge Corley found that Freescale's premise for amending failed since MediaTek's initial infringement contentions had, in fact, identified software in a number of ways, including citations to Freescale's publicly available reference manuals.

Because the "along with software" opinion was not precluded by Magistrate Judge Corley's Orders and was disclosed sufficiently in MediaTek's infringement contentions, the motion on these grounds is **DENIED**.

**B.    Opinion That the CCM Satisfies The "Clock Controller" Limitation of Claim 35**

Freescale next argues that Narad's opinion that the "Clock Controller Module (CCM)" for the i.MX50 product can satisfy the "clock controller" limitation of claim 35 should be stricken because the May 31 Order precluded an amendment to MediaTek's infringement contentions to so state.

Here, the Court agrees. MediaTek's original infringement contentions disclosed the General Power Controller, or "GPC," a different module in Freescale's i.MX50 processors, as satisfying the "clock controller" limitation. (Amended Disclosure of Infringement Contentions Ex. B-2, at 12.) In MediaTek's motion for leave to amend those infringement contentions, MediaTek sought to identify the CCM instead of the GPC as meeting the "clock controller" limitation. MediaTek characterized its motion to amend this portion as a correction of an "inadvertent identification of the General Power Controller in the infringement chart for element 35[c] of claim 35 of the '331 patent, instead

3

of identifying the Clock Control Module." (Dkt. No. 93, 24:24-25.) Magistrate Judge Corley denied the request to amend. (Dkt. No. 232 at 13.)

Allowing MediaTek to submit Narad's opinion identifying the CCM as meeting the limitation would run directly contrary what was stated in the disclosures, and what was denied in the May 31 Order. The GPC is what MediaTek identified in the contentions. MediaTek acknowledged it made an error in identification in its motion to amend. The Court nevertheless denied leave to amend to correct that error, based on the deficiencies in MediaTek's motion. MediaTek did not seek relief with respect to that order. Thus, the motion to strike this portion of Narad's opinion is **GRANTED**.

### C. Opinion Identifying Component Meeting the "Power Supply" Limitation for Claim 35

With respect to Narad's opinion on the "power supply" limitation, Freescale argues that it should be stricken because it attempts to satisfy the limitation with a component specifically precluded by Magistrate Judge Corley's May 31 Order. More specifically, the opinion at issue concerns whether a "Power Management IC (PMIC)" can satisfy the "power supply" limitation of claim 35[b] for the i.MX50 product. Freescale argues that MediaTek's infringement contentions, at best, point to a 2.5 V power supply for the oscillator as satisfying the "power supply" limitation, not a PMIC. Thus, Freescale contends, Narad's opinion that the power supply limitation is met by the PMIC is not permitted, and attempts to circumvent Magistrate Judge Corley's May 31 Order. The Court agrees.

MediaTek's infringement contentions with respect to the i.MX50 processor state:

> The i.MX50 device comprises a power supply adapted to provide a variable level voltage to at least one processor.
> *See e.g.*, i.MX50 Reference Manual at 3365 ("This oscillator is powered by a 2.5V power supply . . . .").
> *See also*, i.MX50 Reference Manual at Chapter 58.

(Dkt. 306-16, MediaTek's Amended Disclosure of Infringement Contentions i.MX50 processors, at Exh. B-2, at 11-12.) The i.MX50 Manual at Chapter 58 concerns the Crystal Oscillator (XTALOSC) and discusses connection of "'extal' and 'xtal' pins" to crystal oscillator that "adjusts the amount of current sourced to the oscillator." (Dkt. 332-9, i.MX50 Multimedia Applications Processor Reference Manual at FSL00009016 et seq., Exh. 2 to Franklin Decl.)

1 MediaTek sought leave to amend its infringement contentions to "provide additional details
2 concerning the infringement of claim 35[b] of the '331 patent by including information concerning
3 the Power Management Component of the i.MX50 for element 35[b]." (Dkt. No. 93, 18:21-23.)
4 Magistrate Judge Corley denied that motion, again based on MediaTek's insufficient explanation of
5 the nature and reasons for the amendment. (May 31 Order, Dkt. No. 115 at 13.) The May 31 Order
6 did not specifically mention the PMIC.

7 Narad's expert report, with respect to the i.MX50 processor and how it meets the "power
8 supply" limitation, states, in pertinent part:

> The i.MX50 device is *used with a power supply adapted to provide* a variable level voltage to the at least one processor. The i.MX50 is *used with a Power Management IC (PMIC) that provides a variable level voltage*, and there is no substantial use of the i.MX50 without such a PMIC. In addition, Freescale sells PMIC chips for use with the i.MX50.
> *See, e.g.,* i.MX50 Reference Manual at 135 (FSL-00005788) (Figure 1-2, showing PMIC (in upper right) *connecting to* i.MX50).

(Dkt. No. 306-7, Exh. 6 to Ewerdt Decl., Narad Expert Report re: Infringement of '331 Patent, Exh. C-2 at 31, emphasis supplied.)

MediaTek contends, in opposition to this motion, that Freescale misreads this report in thinking that Narad relies on the PMIC as the power supply. Instead, MediaTek argues, Narad has identified the "*connect[ion]* to the i.MX50" – the xtal and extal power pins – as the accused power supply. Indeed, in his subsequent deposition, Narad testified:

> A. …*From the perspective of the processor cores on the i.MX31, the power supply is the pin that is providing power in towards that core* in the same way that a sink in a house is a water supply.
> Now, the power management IC is providing a variable voltage through that pin in the same way that the reservoir – kind of pipes in the street are providing water to the water supply in your house.
> So in my report, when I state that these are used with a power management IC, what I'm explaining is that the power management IC provides that voltage, and the power supply within the chip provides that voltage to the elements within the chip.
> \*\*\*

> Q. Just so we have a clean question and answer, is your opinion the same for all of the accused chips? And by that I'm referring to the i.MX31, i.MX35, ***and i.MX50?***
> \* \*\*
> A. Yes.

(Dkt. No. 325-42 (October 22-23, 2013 Deposition of Charles Narad) ("Narad Tr.") 454:4-455:14, 456:8-15.) However, that opinion is nowhere expressed in his expert report with respect to the i.MX50 chip.[1]

Instead, Narad's expert report was devoted entirely to a discussion of the PMIC. His report never mentions that the "power supply" limitation is met based upon how the chip is connected to PMIC, or distinguishes the PMIC as the "power source" and the connections from the chip to the PMIC as the "power supply," as MediaTek now suggests. The mere mention in Narad's report that i.MX50 Reference Manual Figure 1-2 shows "PMIC (in upper right) *connecting to* i.MX50" does not encompass the power pins opinion Narad offers in his deposition or the power pins-related reference in the infringement contentions.

Magistrate Judge Corley's May 31 Order denied MediaTek's request to amend its infringement contentions to add information concerning the Power Management Component of the i.MX50 for Claim 35[b]. MediaTek's expert report took a divergent path from the infringement contentions. While Narad's deposition testimony attempted to fill in the gaps and tie the expert report back to the infringement contentions in some way, that attempt fails because the report makes no mention of the connection/pins aspect MediaTek now urges. Freescale's motion to strike this portion of Narad's report is therefore **GRANTED**.

---

[1] The Court notes that Narad's infringement report on the i.MX31 and i.MX35 chips *does* include a reference to the PMIC. (Dkt. No. 306-6, Exh. 7 to Ewerdt Decl., Narad Report Exh. C-1 at 39-41.)

6

### III. REBUTTAL EXPERT REPORTS OF NARAD AND ASANOVIC

Finally, Freescale moves to strike portions of Narad's rebuttal validity reports regarding the '753 Patent and the '331 Patent, as well as Asanovic's rebuttal validity report regarding the '845 Patent. Freescale argues that the paragraphs it seeks to strike provide theories not disclosed in response to Freescale's Interrogatory No. 24. Freescale argues that such a sanction is warranted, under Rule 37 of the Federal Rules of Civil Procedure, when a litigant's entire cause of action or defense has been precluded and is "self-executing," without the need to show violation of a prior court order, citing *Yeti by Molly Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1104, 1106 (9th Cir. 2001). Freescale contends that striking the identified portions of the declarations is an appropriate sanction for failure to respond properly to the discovery propounded, or to supplement that response. Freescale had to proceed through claim construction and preparation of its expert's invalidity report without the benefit of knowing MediaTek's position on why it asserted the patents' validity.

MediaTek argues in response that Freescale's Interrogatory No. 24 is an attempt to circumvent the parties' respective burdens of proof, the structure of the Patent Local Rules, and the Court's scheduling order by requiring MediaTek to rebut Freescale's invalidity theories long before the Court's scheduling order required. The Court agrees.

The Patent Local Rules for the Northern District of California, and the Court's scheduling order with respect to opening and rebuttal expert reports, are in place to allow for the orderly litigation of patent disputes, which are highly technical in nature. Freescale served its invalidity contentions and then, on October 4, 2012, propounded Interrogatory No. 24, seeking MediaTek's contentions with respect to the why it believed the asserted patents were *not* invalid. MediaTek objected to the interrogatory on November 8, 2012, responding that "[u]nder 35 U.S.C. § 282, [the] issued patents are 'presumed valid," and that "Freescale, not MediaTek, bears the burden to demonstrate its allegations of invalidity…." (Dkt. No. 306-14 at 6.) MediaTek stated that: "Should

Freescale offer any expert opinions concerning the invalidity of the patents-in-suit, MediaTek will respond to those opinions by no later than the date set by the Court for the service of rebuttal expert opinions…." (*Id.*)  MediaTek timely served its rebuttal reports on invalidity on September 27, 2013.  Freescale, for its part, never moved to compel any further response to Interrogatory No. 24.

Essentially, by propounding this interrogatory right on the heels of serving its invalidity contentions, Freescale was trying to get a preview of what MediaTek's rebuttal report would say.  The Court will not penalize MediaTek for providing its response – its expert rebuttal report – at the time appointed by the Court's scheduling order.[2]  Freescale has been repeatedly warned that such gamesmanship will not be rewarded.  The motion to strike with respect to these portions of the expert reports is **DENIED**.

## IV. CONCLUSION

As stated herein, Freescale's Motion to Strike Portions of MediaTek's Expert Reports is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) The motion to strike the doctrine of equivalents theory as set forth in the Narad '753 Infringement Report is **DENIED**.

(2) The motion to strike the "software running on the ARM processor" opinion as set forth in Narad's '331 Infringement Report is **DENIED**.

(3) The motion to strike the opinion that the CCM satisfies the "clock controller" limitation as set forth in Narad's '331 Infringement Report is **GRANTED**.

(4) The motion to strike the opinion that PMIC satisfies the "power supply" limitation from Narad's '331 Infringement Report is **GRANTED.**

---

[2] Even if the Court were to view the interrogatory as appropriately propounded, exclusion of the reports would not be warranted, as FRCP 37(c)(1) does not countenance exclusion when a failure to disclose is substantially justified, as here.  *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011).

(5) The motion to strike the validity theories from the rebuttal reports of the Narad and Asanovic Reports is **DENIED**.

This order terminates the underlying motion at Docket No. 306.

**IT IS SO ORDERED**.

Dated: June 20, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**