UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MEDIATEK INC.,** | Case No.: 11-cv-5341 YGR |
| Plaintiff, | **ORDER DENYING FREESCALE'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF CATHARINE M. LAWTON** |
| vs. | |
| **FREESCALE SEMICONDUCTOR, INC.,** | |
| Defendant. | |

Defendant Freescale Semiconductor, Inc. ("Freescale") has filed its Motion to Exclude Certain Testimony Of Catharine M. Lawton, Plaintiff MediaTek, Inc.'s ("MediaTek") damages expert. (Dkt. 302-5, *and see* Corrected Motion at Dkt. 358-6.) The Court, in its Pre-Trial Order No. 3 Re: Expert Testimony At Trial, previously denied that portion of the motion concerning certain background factual assumptions in Lawton's report. (*See* Dkt. No. 476.) The Court now turns to the remainder of Freescale's motion concerning Lawton's damages opinions with respect to: (1) her apportionment analysis; (2) her royalty rate estimate for certain patents-in-suit; and (3) her opinion on the U.S. share of Kindle e-reader sales.

The Court, having carefully considered the briefing and arguments of the parties, including their supplemental briefing,[1] **DENIES** the motion. Freescale's arguments do not establish grounds for excluding Lawton's testimony as to her royalty base, royalty rate, or estimated U.S. sales of Amazon

---

[1] MediaTek filed a supplemental memorandum on April 3, 2014 (Dkt. No. 516). Freescale filed a Motion for Leave to File a Response to that memorandum (Dkt. No. 520), which the Court **GRANTS** by separate order. In opposition to that Motion for Leave, MediaTek submitted an additional memorandum on April 21, 2014. (Dkt. No. 527.) The Court has considered all these arguments in reaching its decision herein.

Kindle's incorporating Freescale's accused chips. Instead, the arguments raised are attacks on Lawton's credibility and the weight her opinion should be afforded.

## I.  APPLICABLE STANDARD

"In federal courts, the admission of expert testimony is governed by Federal Rule of Evidence 702, as elucidated by the Supreme Court in *Daubert*." *Barabin v. AstenJohnson, Inc.,* 700 F.3d 428, 432 (9th Cir. 2012). Federal Rule of Evidence 702 allows expert testimony only if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 permits experts to testify if their testimony is: (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. *Id.* In determining whether an expert's testimony meets the standards of Rule 702, the court acts as a "gatekeeper" that "ensur[es] that [the] expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 148-49 (1999). In addition, the court may exclude expert testimony that is "otherwise admissible may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *U.S. v. Rincon,* 28 F.3d 921, 923 (9th Cir. 1994) (citing *Daubert,* 509 U.S. at 595).

The Ninth Circuit has reiterated that the "test of reliability is 'flexible'.... When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*

## II.  DISCUSSION

Lawton's expert testimony concerns damages in this patent infringement action. A plaintiff prevailing on a patent infringement claim is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (2006). A

reasonable royalty is calculated by identifying a royalty "base" (*i.e.*, the amount of infringing sales against which damages are assessed) and applying a royalty "rate" to that base (*i.e.*, a percentage to which a willing licensor and willing licensee would have agreed in a hypothetical negotiation before infringement began, reflecting the proportional value of the patented technology to the base). *See, e.g.*, *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 835 (E.D. Tex. 2013). The royalty base generally is determined based upon the "smallest salable patent-practicing unit." *Laser Dynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (quoting *Cornell Univ. v. Hewlett-Packard Co.*, 609 F.Supp.2d 279, 283, 287-88 (N.D.N.Y. 2009)).

A reasonable royalty assumes a hypothetical negotiation between the patentee and the infringer at a time before the infringement. *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078 (Fed.Cir.1983). This hypothetical negotiation assumes that both the patentee and the accused infringer are willing parties to the negotiation, and that the patent was valid, enforceable, and infringed. *Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970). The *Georgia–Pacific* case sets forth the commonly-accepted factors relevant to a reasonable royalty analysis. *Id.*

### A. APPORTIONMENT ANALYSIS

Freescale contends that Lawton's damages opinion should be excluded because she assessed damages based on the entire market of Freescale's accused chips, rather than apportioning damages to the portion of the chips accused of practicing the asserted patents, that is the alleged patent-practicing *components* on the accused chips. MediaTek counters that both parties' damages experts used the price of the accused chips as the applicable royalty base, and that the use of the entire chip is supported by Lawton's opinions.

The Federal Circuit has held that "it is generally required that royalties be based … on the 'smallest salable patent-practicing unit.'" *LaserDynamics, Inc. v. Quantas Computer,* 694 F.3d 51, 67 (Fed. Cir. 2012) (quoting *Cornell*, 609 F.Supp.2d at 283, 287-88). "Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product. Thus, it is generally required that royalties be based not on the entire

product, but instead on the "smallest salable patent-practicing unit." *Laser Dynamics*, 694 F.3d at 67 (rejecting argument that revenue from sale of entire laptop computer was royalty base).

The exception to the general smallest salable unit rule is the "entire market value rule." *Versata Software, Inc. v. SAP Am., Inc*., 717 F.3d 1255, 1268 (Fed. Cir. 2013); *see also Positive Technologies, Inc. v. Sony Electronics, Inc*., 11-CV-2226 SI , 2013 WL 707914, at *3 (N.D. Cal. Feb. 26, 2013) ("A royalty base should be calculated based on the 'smallest salable patent-practicing unit'… [t]here is an exception to this rule known as the entire market value rule."). If the patentee seeks to use something larger than the smallest salable unit as the royalty base for a multi-component product, the patentee must demonstrate that "the patented feature drives the demand for an entire multi-component product…." *Laser Dynamics*, 694 F.3d at 67. Put another way, the entire market value rule requires a patentee to "prove that the patent-related feature is the basis for customer demand." *Lucent Technologies, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1336 (Fed.Cir.2009) (internal quotations omitted); *see also Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1318 (Fed.Cir.2011) (patented feature "substantially create[s] the value of the component parts"). As the Federal Circuit has held, where the proposed royalty base considers the market for an entire, multi-component product, "[i]t is not enough to merely show that the [patented technology at issue] is viewed as valuable, important, or even essential to" the alleged infringing product. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012).

Cases following from *Laser Dynamics* have emphasized the requirement that the royalty base be the "smallest salable *patent-practicing* unit" to the effect that the smallest salable unit must be "closely tied to the patent" or else an apportionment of the value of the patent-practicing technology to the alleged infringing product is still required, even if the patentee is not invoking the entire market value rule expressly. *See Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, C 11-05973 PSG, 2013 WL 4538210 at *3 (N.D. Cal. Aug. 22, 2013) ("This court sees no logical basis to depart from an apportionment requirement in a case, such as the present one, where the alleged smallest salable unit plainly is *not* closely tied to the patented feature"); *Network Prot. Sciences, LLC v. Fortinet, Inc.*, C 12-01106 WHA, 2013 WL 5402089 at *7 (N.D. Cal. Sept. 26, 2013) ("When using a multi-component product as a royalty base, even if it is the smallest salable unit, a patentee must *still* show

4

that the patented feature drives demand for the entire product.") (emphasis in original)); *Golden Bridge Tech. v. Apple Inc.*, 5:12-CV-04882-PSG, 2014 WL 2194501 (N.D. Cal. May 18, 2014) ("Even if the accused products were the smallest salable unit, this court has previously explained that, under the Circuit's case law, relying on the smallest salable unit does not relieve a patentee of the burden of apportioning the base"). Moreover, "[w]hen a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance." *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) (*quoting Garretson v. Clark*, 111 U.S. 120, 121 (1884)).[2]

MediaTek argues that there is no way, conceptually or practically, to separate the patent-practicing features of the accused chips from the remainder of the chip. Citing its other experts' reports on the technology at issue, MediaTek contends that it is not possible to remove the accused features from the chip and sell them on their own, since the patents-in-suit read on the master and slave components of the chips and concern interconnections between them. Thus, in her report, Lawton opined that "the embedded processor chips that are sold by Freescale as a single assembly or unit" constitute the smallest salable patent-practicing unit. (Yang Dec. Exh. 1, Lawton Report, at ¶ 425.) Consequently, Lawton used the market value of Freescale's accused chips as the appropriate royalty base, and did not conduct an apportionment analysis. (*Id.* at ¶ 427.) Lawton acknowledged that "the amount of profit that can be properly attributed to the patented invention . . . will depend on the balance between infringing and non-infringing features in the context of consumer demand." (Dkt. No. 323-11 at 169 (Lawton Expert Report, add'l excerpts).) She found, however, that "currently available information is insufficient to estimate the amount of profit that can be properly attributed to the patented inventions." (*Id.*)

---

[2] The authorities cited in opposition by MediaTek are not to the contrary. *Positive Technologies* was a discovery case, not a ruling on admissibility of the evidence: *Positive Technologies, Inc. v. Sony Electronics, Inc.*, 11-CV-2226 SI KAW, 2013 WL 707914 at *3. (N.D. Cal. Feb. 26, 2013) ("*LaserDynamics* limits admissibility, not discoverability."). *Interwoven* simply stated that there was a dispute of facts as to "the extent the patented technology allegedly drove consumer demand for Interwoven's products" allowing a reasonable royalty to be based on the entire accused product. *Interwoven, Inc. v. Vertical Computer Sys.*, CV 10-04645 RS, 2013 WL 3786633 (N.D. Cal. July 18, 2013).

Freescale's attack on Lawton's report is two-fold. First, Freescale contends that Lawton's analysis is flawed because she did not attempt to apportion damages to the components of Freescale's accused integrated circuit chips that allegedly practice the patents-in-suit, rather than the entire chip. The patents-in-suit allegedly read only on a portion of the accused products, which contain numerous other components. Freescale contends that Lawton's opinion should be excluded because she failed to account for the information known about the value of other chip components, such as the ARM core technology, and failed to consider Freescale's current use of alternatives to using the patent-practicing technology. Lawton also had sales and development documentation for different generations of Freescale product lines, some with the alleged patented technology and some without, but she did not compare the allegedly infringing to the undisputed non-infringing products.

Here, MediaTek has offered its expert's opinion, based upon the information from the technical experts concerning the technology and accused products at issue, that the "smallest salable patent-practicing unit" is the chip itself, *i.e.,* because of the nature of the patented technology, there is no smaller unit that is "salable." While Freescale argues that this is not the proper smallest salable patent-practicing unit, it offers no evidence to support an alternative.

The Court finds that there is a disputed issue requiring further evidence to determine whether, in light of the nature of the patented technologies at issue and their use on the alleged infringing chips, it would be possible to apportion the value of the patent-practicing technology compared to that of the apparent smallest salable unit here, the chip. Though Freescale disagrees with Lawton's conclusions, and has raised some questions their factual underpinnings, those issues bear on the weight to be accorded the testimony than its reliability or probative value. Given the state of the record, the Court declines to exclude the testimony. *Cf. Apple Inc. v. Motorola, Inc.*, 2012-1548, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) (reversing decision to exclude expert testimony where challenge to basis for royalty rate went to evidentiary weight, not admissibility, which could be dealt with on cross-examination).

**B.     ROYALTY RATE**

Freescale next argues that Lawton's royalty rate analysis for the '331 and '845 patents (collectively the "ADI Patents") should be excluded as unreliable and not based on sufficient facts or

6

data. Freescale argues that Lawton used a 1% royalty starting point for the ADI Patents as well as the '753 Patent, and came out nearly the same on her Georgia-Pacific analysis for the two patents, yet concluded that the '753 Patent warranted a 1% royalty rate while the ADI Patents warranted a 10% royalty rate. Freescale contends that Lawton's bases for the higher rates – MediaTek's strategy to compete with Freescale in the eReader market and "significant cost and disruption to its business" if Freescale could not obtain a license—are unsupported by evidence.

Freescale's arguments, again, go to the weight to be accorded to Lawton's opinions rather than their admissibility. For instance, on the competition question, Freescale concedes that two of MediaTek's annual reports discuss its interest in offering WLAN and other peripherals chips for eReader applications in the future, and that it sells chips in the e-Reader market, it contends that the evidence is insufficient to a strategy to compete.[3] On the significant cost and disruption issue, despite the report's recitation of a number of factors affecting the value and importance of the technologies at issue, Freescale argues that Lawton's report does not sufficiently quantify the costs or benefits. Lawton, in fact, cited evidence of sales and revenue of accused products, and sales forecasts, Further, Lawton's report cited to a variety of facts showing that the circumstances of and between the parties had changed significantly in the four years between the hypothetical negotiation on the '753 Patent and on the ADI Patents, not the least of which were rapid changes in the semiconductor market and repeated litigation by Freescale against MediaTek. In short, Lawton's report indicates that she relied on a number of *Georgia-Pacific* factors, including the two on which Freescale focuses here, in reaching her opinion on the reasonable royalty rate for the ADI patents. Based upon the information presently before the Court, Freescale's criticisms are appropriate for

---

[3] Freescale's continued focus on the dearth of evidence of *actual* competition, including the fact that the MediaTek's MT8135 chip had not been released and was excluded from being listed as a product of MediaTek's that practices the patents-in-suit, is unavailing. Lawton's opinion concerns the effect of a strategy to compete and its effect on the hypothetical negotiation.

cross-examination and not a basis for exclusion of Lawton's testimony. *See Primiano,* 598 F.3d at 564-65; *Apple Inc. v. Motorola, Inc.*, 2014 WL 1646435 at *22-23.[4]

### C. U.S. SHARE OF KINDLE E-READER SALES

Finally, Freescale argues that Lawton's damages calculation estimating U.S. sales of Amazon Kindles should be excluded as unreliable. Lawton's report estimated the sales because she did not have actual data for sale of Kindles by Amazon, but only had estimates from a third party analyst for North American sales. Freescale contends that Lawton's estimate of the U.S. proportion of North American sales improperly relied on the ratio of U.S. to Canadian mobile handset sales as a proxy, without any discussion of why it would be appropriate to do so and without considering sales in Mexico. (Yang Decl. Ex. 1, Lawton Report at 82-83, Table 16). As such, Freescale argues that her opinion is too speculative to be reliable, citing *Power Integrations v. Fairchild Semiconductor Int'l,* 711 F.3d 1348, 1373-1374 (Fed. Cir. 2013).

MediaTek responds that, in the absence of data from Amazon, Lawton estimated damages based on publicly available industry data showing the U.S. share of North American *computers* imported into the U.S. Lawton used that information to estimate U.S. Kindle sales as a proportion of total North American sales. Thus, MediaTek argues, Lawton's estimates are not based on speculation, but are simply reasonable approximations no different than any proper damage calculation.

The Court agrees with MediaTek. Freescale does not dispute the reliability of the data source itself here, only Lawton's conclusions and opinions. Unlike *Power Integrations,* where the source of the expert's data was unclear and his estimates were based upon improper assumptions about the accused products themselves, here it is an undisputed fact that the source of the ratio estimate is based upon disclosed, publicly available data and that Amazon Kindles incorporate Freescale's

---

[4] Freescale further argued that Lawton's opinion was unreliable because it did not take into account non-infringing alternatives in estimating cost and disruption to Freescale's business if it were unable to obtain licenses for the technology from MediaTek. To the extent that this omission was significant, the Court notes that it has, by separate order, granted MediaTek's motion to supplement portions of its expert reports, including Lawton's report with respect to non-infringing alternatives theories not disclosed by Freescale prior to her original reports.

accused chips. *Id.* at 1373. Freescale's quarrels with this evidence are not a basis for its exclusion, but are disagreements and credibility challenges that can be clarified on cross-examination.

### III.  CONCLUSION

The motion to exclude Lawton's damages testimony as to the royalty base, the royalty rate for the ADI Patents, and the estimate of U.S. sales of Amazon Kindle devices containing accused chips is **DENIED**.

This Order terminates Docket Nos. 302 and 358.

**IT IS SO ORDERED**.

Dated: June 20, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**