UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**ORIGINAL**

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| MEDIATEK, INC., | ) | **JURY TRIAL** |
| | ) | |
| PLAINTIFF, | ) | **VOLUME 1** |
| | ) | |
| VS. | ) | NO. C 11-05341YGR |
| | ) | |
| FREESCALE SEMICONDUCTOR, | ) | |
| INC., | ) | **PAGES 1 - 142** |
| | ) | |
| DEFENDANT. | ) | OAKLAND, CALIFORNIA |
| _____ | ) | WEDNESDAY, AUGUST 27, 2014 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:          WILMER CUTLER PICKERING HALE & DORR LLP
                        950 PAGE MILL ROAD
                        PALO ALTO, CALIFORNIA  94304
                   BY:  KEITH SLENKOVICH, ATTORNEYS AT LAW

                        WILMER CUTLER PICKERING HALE & DORR LLP
                        350 SOUTH GRAND AVENUE, SUITE 2100
                        LOS ANGELES, CALIFORNIA  90071
                   BY:  JAMES M. DOWD,
                        NANCY L. SCHROEDER, ATTORNEYS AT LAW

FOR DEFENDANT:          CADWALADER, WICKERSHAM & TAFT LLP
                        700 SIXTH STREET, NW
                        WASHINGTON, D.C.  20001
                   BY:  ALEXANDER J. HADJIS,
                        KRISTIN L. YOHANNAN, ATTORNEYS AT LAW


                  (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:           RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

1    **A P P E A R A N C E S (CONT'D.)**

2

     FOR DEFENDANT:          MORRISON & FOERSTER
3                            755 PAGE MILL ROAD
                             PALO ALTO, CALIFORNIA  94304
4                      BY:  RUDY Y. KIM, ATTORNEY AT LAW

5

6    THERE BEING ALSO PRESENT:

7            FREESCALE SEMICONDUCTOR, INC.
             6501 WILLIAM CANNON DRIVE WEST
8            MD: OE62
             AUSTIN, TEXAS  78735
9            MARK PATRICK, LAW DIRECTOR, INTELLECTUAL PROPERTY
             PETER M. ROOSSIEN, EMEA BUSINESS LAW DIRECTOR,
10               DIRECTOR OF LITIGATION

11
             DECISION STRATEGY
12           3717 COREY PLACE NW
             WASHINGTON, D.C.  20016
13           MATTHEW J. MILANO, PH.D.

14

15                           --O0O--

16

17

18

19

20

21

22

23

24

25

```
 1    WEDNESDAY, AUGUST 27, 2014                    8:44 A.M.
 2                        P R O C E E D I N G S
 3        (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE
 4    OF THE JURY VENIRE:)
 5            THE CLERK:  COURT IS IN SESSION.  HONORABLE YVONNE
 6    GONZALEZ ROGERS, PRESIDING.
 7            THE COURT:  OKAY.
 8        LET'S GO ON THE RECORD.
 9            THE CLERK:  CALLING CIVIL ACTION 11-5341, MEDIATEK
10    VERSUS FREESCALE.
11        COUNSEL, PLEASE STATE YOUR APPEARANCES.
12            MR. SLENKOVICH:  GOOD MORNING, YOUR HONOR.  KEITH
13    SLENKOVICH OF WILMER HALE ON BEHALF OF THE PLAINTIFF,
14    MEDIATEK.
15        I HAVE WITH ME MR. JIM DOWD AND MRS. NANCY SCHROEDER.
16            THE COURT:  GOOD MORNING.
17            MR. HADJIS:  GOOD MORNING, YOUR HONOR.  ALEX HADJIS
18    OF CADWALADER, WICKERSHAM & TAFT ON BEHALF OF FREESCALE.
19        I HAVE WITH ME MR. RUDY KIM.
20            MR. KIM:  GOOD MORNING, YOUR HONOR.
21            MR. HADJIS:  MS. KRISTIN YOHANNAN.
22            MS. YOHANNAN:  GOOD MORNING.
23            MR. HADJIS:  MR. MATT MILANO WILL BE CONSULTING WITH
24    US TODAY.
25        I ALSO HAVE WITH US MR. PETE ROOSSIEN, THE CHIEF
```

```
1    LITIGATION OFFICER OF FREESCALE, MR. MARK PATRICK, SENIOR IP

2    COUNSEL AT FREESCALE, AND ETHEL VILLEGAS.

3            THE COURT:  OKAY.  GOOD MORNING, EVERYONE.

4        LET'S, IF NOTHING ELSE, GET THE ISSUES THAT ARE

5    OUTSTANDING, MR. SLENKOVICH, ON THE TABLE.

6        AND THEN WE'LL DO WHAT WE CAN BEFORE THE JURY COMES DOWN

7    SO WE'RE NOT WASTING ANY TIME.

8            MR. SLENKOVICH:  SURE, YOUR HONOR.  THE FIRST IS JUST

9    A PROCEDURAL QUESTION.  WE HAVE STIPULATED TO A FEW DOZEN

10   EXHIBITS AND THE QUESTION IS DO WE NEED TO MOVE THOSE INTO

11   EVIDENCE AND, IF WE DO, CAN WE DO THAT BEFORE WE GET GOING

12   WITH THE TRIAL.

13           THE COURT:  WELL, THE ANSWER WOULD GENERALLY BE YES.

14   THERE SHOULD BE -- SO I -- A COUPLE OF QUESTIONS.

15       DO I NOW HAVE THE MOST CURRENT COPY OF THE EXHIBIT LIST

16   WITH ALL THE STIPULATIONS?  AND IF NOT, CAN SOMEONE GIVE ME A

17   COPY?

18           MR. SLENKOVICH:  SO, YOUR HONOR, I BELIEVE YOU HAVE

19   THE MOST CURRENT DRAFT OF THE -- BOTH STIPULATIONS AND

20   EXHIBITS.  WE ARE TODAY SUBMITTING A NEW EXPERT REPORT PER

21   YOUR HONOR'S ORDER THAT WILL HAVE SOME UPDATED TABLES WHICH WE

22   WILL EITHER SUBSTITUTE FOR THE EXISTING TABLES OR ADD AS NEW

23   EXHIBITS.  OTHER THAN THAT OUTSTANDING ITEM, IT'S -- IT'S

24   COMPLETE AS FAR AS WE KNOW.

25           THE COURT:  OKAY.  WELL, THEN -- THEN I'M CONFUSED
```

```
 1    ABOUT YOUR QUESTION.

 2        YOU JUST TOLD ME THAT YOU HAD NEW STIPULATIONS.  SO WERE

 3    THE -- WITH RESPECT TO EXHIBITS.  SO THOSE WERE OR WERE NOT

 4    REFLECTED ON THE MOST CURRENT EXHIBIT LIST?

 5            MR. SLENKOVICH:  I'M SORRY IF I MISSPOKE.  WE HAVE --

 6    I BELIEVE YOU HAVE THE CURRENT LIST OF STIPULATIONS.  THAT'S

 7    ACCURATE.  AND I DON'T KNOW OF ANY OTHERS BEYOND A PROCEDURAL

 8    ONE WE'RE GOING TO TALK TO YOU ABOUT, WHICH IS THE WITNESS

 9    UNAVAILABILITY.

10        ON THE EXHIBIT LIST, YOU HAVE THE MOST CURRENT DRAFT.

11    THERE WILL BE, I BELIEVE, SOME ADDED EXHIBITS OR SUBSTITUTED

12    EXHIBITS FOLLOWING MS. LAWTON'S REPORT BEING SERVED TODAY.

13            THE COURT:  SO YOU ANTICIPATE YET ANOTHER DRAFT?

14            MR. SLENKOVICH:  I BELIEVE IT WILL -- THERE'LL HAVE

15    TO BE SOMETHING THAT CONFORMS TO MS. LAWTON'S REPORT, YES.

16            THE COURT:  AND THE -- THE EXHIBIT LIST -- WELL, THEN

17    WHAT IS THE ISSUE WITH THE STIPULATIONS AND THE EXHIBIT LIST?

18            MR. SLENKOVICH:  I DON'T BELIEVE THERE IS A -- SO

19    WHAT I STARTED OUT TO ASK WAS WE HAVE STIPULATED EXHIBITS,

20    THIS HAS NOTHING TO DO WITH OUR LIST, THIS IS JUST A SUBSET OF

21    EXHIBITS ON THE LIST THAT WE'VE STIPULATED TO --

22            THE COURT:  OH, SO YOU'RE JUST TALKING GENERICALLY.

23    THERE AREN'T AN ADDITIONAL SET OF STIPULATED EXHIBITS?

24            MR. SLENKOVICH:  NO.  NO, YOUR HONOR.

25            THE COURT:  OKAY.  WELL, WITH RESPECT TO STIPULATED
```

```
1    EXHIBITS, THIS IS THE WAY I TYPICALLY DO IT.  JUST BECAUSE

2    THERE'S A STIPULATION DOESN'T MEAN THAT SOMETHING COMES INTO

3    EVIDENCE.  IF YOU'VE NEVER USED IT, I DON'T KNOW WHY I WOULD

4    HAVE THE JURY -- WHY IT WOULD GO INTO THE JURY'S -- IN FOR

5    DELIBERATIONS WHERE IF THERE IS NO REFERENCE TO IT IN THE

6    TRIAL.

7         SO THE WAY IT WOULD WORK AS A PRACTICAL MATTER IS SOMEONE

8    REFERS TO EXHIBIT PX52.  YOU KNOW, YOU WOULD MAKE A NOTE OR

9    YOU WOULD ADVISE THE COURT THAT IT IS A STIPULATED EXHIBIT.  I

10   WOULD ALLOW YOU TO USE IT.  YOU WOULD OFFER IT FOR ADMISSION.

11   BEING THAT THERE'S NO -- BEING THAT THERE'S A STIPULATION, THE

12   EXHIBIT GETS ADMITTED.  IT'S A VERY QUICK PROCESS.

13        AT THE END OF THE DAY OR, YOU KNOW, PERIODICALLY WHEN THE

14   JURY IS NOT HERE, WE GO THROUGH AND DOUBLE-CHECK EXHIBITS.

15   SO, YOU KNOW, CERTAINLY BY THE END OF THE TRIAL, I WILL GO

16   THROUGH WITH YOU -- AND I KEEP TRACK UP HERE -- EVERY SINGLE

17   EXHIBIT THAT I HAVE ADMITTED.

18        AND JUST SO THAT YOU KNOW, JUST A PRACTICE POINTER BECAUSE

19   ATTORNEYS ALWAYS GET THIS WRONG, YOU ARE OFFERING EXHIBITS FOR

20   ADMISSION.  IT IS THE ROLE OF THE COURT TO ADMIT THEM.  YOU

21   DON'T ADMIT THEM YOURSELVES.  I DON'T KNOW WHY PEOPLE GET THAT

22   CONFUSED BUT MAYBE IT'S NERVOUSNESS OR SOMETHING.  LAWYERS ARE

23   ALWAYS SAYING THAT THEY WANT TO ADMIT OR THAT THEY ADMIT THE

24   EXHIBIT, AND THAT DOESN'T QUITE WORK WITH ME.  YOU GET TO

25   OFFER THEM.  I WILL ADMIT THEM.
```

```
1         BUT IF IT'S STIPULATED, JUST MAKE A REFERENCE THAT IT'S

2    STIPULATED, I'LL NOTE IT ON MY BOOK, I'LL ADMIT IT.  IT'S NOT

3    A BIG DEAL.  OKAY?  AND THEN AT THE END, CERTAINLY AT THE END

4    WE'LL GO THROUGH SO THAT WE MAKE SURE THAT EVERYTHING THAT

5    NEEDS TO BE ADMITTED HAS BEEN ADMITTED.  JUST BECAUSE THERE'S

6    A STIPULATION DOESN'T NECESSARILY MEAN THAT IT GETS ADMITTED.

7         MR. SLENKOVICH:  UNDERSTOOD.

8         THE COURT:  OKAY?

9         MR. SLENKOVICH:  THE SECOND ITEM IS YOUR HONOR HAD

10   ASKED FOR COUNSEL TO MEET AND CONFER ON A WITNESS --

11   WITNESSES-THAT-ARE-UNAVAILABLE STIPULATION.  WE HAVE DONE IT.

12   WE PUT THE FINAL TOUCHES ON IT THIS MORNING.  AND WE

13   UNFORTUNATELY DON'T HAVE A PRINTED COPY YET, BUT WE WILL --

14   WE'VE AGREED ON THE EXACT FORM OF THAT STIPULATION.  WE WILL

15   SUBMIT IT LATER TODAY.

16        THE COURT:  OKAY.  OR DO YOU JUST WANT TO PUT IT ON

17   THE RECORD?

18        MR. SLENKOVICH:  WE COULD READ IT ONTO THE RECORD IF

19   YOU WANTED.

20        THE COURT:  WHAT'S WRONG, MR. HADJIS?

21        MR. HADJIS:  NOTHING'S WRONG.  IT'S JUST KIND OF

22   LONG.  IT'S PROBABLY MORE EFFICIENT IF WE SUBMIT IT TO YOU ON

23   PAPER UNLESS YOU DO WANT IT ON THE RECORD, BUT WE HAVE

24   STIPULATED TO THE FORMAT, THE CONTENT, AND -- AND THE NUMBER

25   OF TIMES THAT THE MESSAGE RELATING TO THE UNAVAILABLE
```

1    WITNESSES AND THEIR ILLNESSES IS DELIVERED.

2              **THE COURT:**  OKAY.  WELL, SOMEONE READ IT TO ME SO I

3    UNDERSTAND WHAT IT IS YOU'VE AGREED TO.

4         AND THEN IF YOU WANT TO SUBMIT IT, THEN THAT'S FINE.

5                   (OFF-THE-RECORD DISCUSSION.)

6              **MR. HADJIS:**  YOUR HONOR, IF -- IF YOU'D LIKE, I CAN

7    SKIP THE "WHEREAS" CLAUSES.

8              **THE COURT:**  THAT WOULD BE PERFECT.

9              **MR. HADJIS:**  AND READ THE ACTIVE PORTION OF THE

10   STIPULATION.

11        "PLAINTIFF MEDIATEK AND DEFENDANT FREESCALE SEMICONDUCTOR,

12   INC. HEREBY AGREE AND JOINTLY STIPULATE AS FOLLOWS:

13        "1.  THE COURT WILL PROVIDE THE FOLLOWING EXPLANATION

14   RELATING TO THE UNAVAILABILITY OF MR. SOERENSEN AND MR. NARAD

15   DURING ITS PRELIMINARY INSTRUCTIONS:

16        'DURING THE TRIAL, YOU MAY HEAR THE NAMES OF TWO

17   INDIVIDUALS WHO HAVE BECOME UNABLE TO PARTICIPATE IN THIS

18   TRIAL FOR MEDICAL REASONS.

19        'ONE IS MR. JOERN SOERENSEN, WHO IS AN INVENTOR FOR TWO OF

20   THE PATENTS INVOLVED IN THIS CASE.  BEFORE MR. SOERENSEN'S

21   MEDICAL CONDITIONS DEVELOPED, MR. SOERENSEN'S DEPOSITION WAS

22   TAKEN BY VIDEOTAPE.  YOU MAY HEAR AND SEE PORTIONS OF

23   MR. SOERENSEN'S VIDEOTAPED DEPOSITION DURING THE TRIAL.

24        'THE OTHER PERSON WHO IS NOT ABLE TO PARTICIPATE IN THIS

25   TRIAL FOR MEDICAL REASONS IS MR. CHARLES NARAD, WHO IS AN

1    EXPERT WITNESS FOR TWO OF THE PATENTS INVOLVED IN THIS CASE.

2    PRIOR TO THE MEDICAL CONDITIONS THAT PREVENT MR. NARAD FROM

3    ATTENDING THE TRIAL DEVELOPED, MR. NARAD PREPARED A REPORT

4    ADDRESSING SOME OF THE TECHNICAL ISSUES IN THIS CASE.'

5        "2.  WHEN INTRODUCING THEIR RESPECTIVE VIDEOTAPED

6    DESIGNATIONS FROM MR. SOERENSEN'S DEPOSITION, THE PARTIES'

7    RESPECTIVE COUNSEL WILL BE ALLOWED TO REMIND THE JURY THAT

8    MR. SOERENSEN IS ONE OF THE INDIVIDUALS MENTIONED DURING THE

9    COURT'S PRELIMINARY INSTRUCTION AS BEING UNAVAILABLE BECAUSE

10   OF MEDICAL CONDITIONS, EXPLAIN THAT BEFORE MR. SOERENSEN'S

11   MEDICAL CONDITIONS DEVELOPED, MR. SOERENSEN'S DEPOSITION WAS

12   TAKEN BY VIDEOTAPE, AND EXPLAIN THAT THE DEPOSITION SEGMENTS

13   THEY WILL BE SEEING ARE FROM THAT DEPOSITION.  COUNSEL SHALL

14   NOT DWELL ON MR. SOERENSEN'S ILLNESS OR UNAVAILABILITY, NOR

15   ATTEMPT TO PROCURE SYMPATHY ON ACCOUNT OF MR. SOERENSEN.

16       "3.  NEITHER PARTY WILL SUGGEST IN OPENING STATEMENTS,

17   THROUGH QUESTIONING OR THROUGH ARGUMENT, THAT MR. SOERENSEN OR

18   MR. NARAD CHOSE NOT TO APPEAR AT TRIAL AND/OR THAT THEIR

19   ABSENCE WAS INTENTIONAL.

20       "4.  NEITHER PARTY WILL ATTEMPT TO PROCURE SYMPATHY FROM

21   THE JURY ON ACCOUNT OF THE ILLNESSES OF EITHER MR. SOERENSEN

22   OR MR. NARAD NOR IN ANY WAY SUGGEST THAT THIS LITIGATION IS

23   THE REASON FOR THE ILLNESSES OF EITHER MR. SOERENSEN OR

24   MR. NARAD."

25           **THE COURT:**  IT SOUNDS REASONABLE.  THAT STIPULATION

```
1    IS SO ORDERED.  WHEN YOU SEND US A COPY, I CAN HAVE IT SIGNED
2    AND PUT IN THE -- IN THE DOCKET IF YOU'D LIKE, BUT IT'S ALSO
3    RIGHT NOW IN THE TRANSCRIPT.
4            MR. HADJIS:  YOUR HONOR, WITH YOUR PERMISSION, CAN I
5    ALSO HAND IT TO THE REPORTER, THIS COPY, SO SHE CAN REFER TO
6    IT, IF SHE'D LIKE, IN TRANSCRIBING.
7            THE COURT:  THAT'S FINE.
8            MR. HADJIS:  THANK YOU.
9            THE COURT:  OKAY.  ONE MISCELLANEOUS POINT AS I WAS
10   GOING OVER MY COMMENTS TODAY FOR THE JURY.  THE STIPULATED
11   STATEMENT OF THE CASE WHICH YOU PROVIDED, WHICH I DID ADJUST
12   NOT IN A -- NOT IN ANY SIGNIFICANT WAY, JUST IN A READABILITY
13   WAY, EXCEPT FOR ONE THING.  AS YOU KNOW AND AS WE'VE BEEN
14   INFORMED, FREESCALE'S ARGUMENTS WITH RESPECT TO OBVIOUSNESS
15   ARE OUT, SO THAT PORTION IS TAKEN OUT OF IT -- OF THAT
16   STATEMENT, CORRECT?
17           MR. HADJIS:  THAT IS FINE, YOUR HONOR.
18           THE COURT:  ALL RIGHT.  THEN THE OTHER -- I JUST WANT
19   TO CONFIRM.  THE LAST SENTENCE IN THE STATEMENT, I WANT TO
20   MAKE SURE THAT THIS IS ACCURATE STILL BECAUSE THINGS HAVE BEEN
21   SHIFTING.  SO TELL ME WHETHER OR NOT ANY OF THIS SHOULD BE
22   TAKEN OUT.  BUT IT SAYS, "FREESCALE'S INVALIDITY CONTENTIONS
23   ARE BASED ON PATENTS, PATENT APPLICATIONS, A JOURNAL ARTICLE,
24   AND A USER MANUAL THAT FREESCALE ALLEGES PREDATE THE PATENTS
25   THAT MEDIATEK IS ASSERTING IN THIS CASE."
```

```
 1        ANY CHANGES TO THAT STATEMENT?
 2            MR. HADJIS:  YOUR HONOR, I WANT TO CONFIRM, BUT I
 3   BELIEVE WE CAN NARROW THAT STATEMENT TO SIMPLY MENTION PATENTS
 4   AND THE MOTOROLA MANUAL THAT I BELIEVE YOU MENTIONED AT THE
 5   END OF THE SERIES OF ITEMS.
 6            THE COURT:  OKAY.  GO AHEAD AND CONFIRM.
 7                 (PAUSE IN THE PROCEEDINGS.)
 8            MR. HADJIS:  THAT IS CORRECT, YOUR HONOR.
 9            THE COURT:  ALL RIGHT.  SO I WILL --
10            MR. SLENKOVICH:  YOUR HONOR, JUST -- IT'S ONE PATENT
11   AND ONE MANUAL, I THINK.  IS THAT -- I THINK IT WAS PLURAL
12   USED IN THE -- IF I HEARD YOU RIGHT.
13            THE COURT:  THAT'S WHAT WAS ON HERE.
14            MR. SLENKOVICH:  OKAY.  I THINK IT'S JUST -- AM I
15   CORRECT, IT'S JUST ONE PATENT AND ONE --
16            MR. HADJIS:  THAT'S FINE.
17            THE COURT:  OKAY.  BASED ON -- I'LL JUST PUT "A
18   PATENT AND A USER MANUAL THAT FREESCALE ALLEGES PREDATE THE
19   PATENTS."  OKAY?
20        ANY OTHER QUESTIONS?
21            MR. SLENKOVICH:  JUST A COUPLE OF MORE PROCEDURAL
22   ISSUES.
23        ONE IS I THINK WE MAY BE ABLE TO RESOLVE THIS, BUT I JUST
24   WANT TO PUT IT ON YOUR RADAR SCREEN.  WE HAVE SOME PRODUCTS
25   THAT HAD DE MINIMIS SALES OR NO SALES.  WE ARE GOING TO BE --
```

```
1   WE'VE INFORMED FREESCALE WE WILL NOT BE PUTTING ON EVIDENCE

2   FOR THOSE AT THE TRIAL, AND WE MAY BE ASKING TO TAKE THOSE

3   PRODUCTS OFF OF THE -- AND MAYBE CLAIMS OFF OF THE COURT'S

4   JURY VERDICT FORM BECAUSE IT WOULD BE CONFUSING TO HAVE THEM.

5       THE ISSUE WE'RE DISCUSSING IS FREESCALE HAS REQUESTED OR

6   INDICATED IT WANTS TO BE ABLE TO REFER TO THE FACT THAT THOSE

7   PRODUCTS ARE DROPPED.  AND I THINK WE'RE TRYING TO -- AND OUR

8   RESPONSE HAS BEEN WE WEREN'T GOING TO TALK ABOUT ALL THE PRIOR

9   ART AND INVALIDITY THEORIES AND NON-INFRINGEMENT THEORIES THAT

10  ARE DROPPED SO ALL THAT STUFF SHOULD NOT COME IN, BUT WE'RE

11  DISCUSSING IT RIGHT NOW.  BUT WE'LL HAVE SOMETHING, I THINK,

12  FOR YOUR HONOR SHORTLY.

13          THE COURT:  OKAY.  ANYTHING ELSE?

14          MR. SLENKOVICH:  JUST A QUESTION.  WE WENT BACK

15  THROUGH THE RECORD AND COULDN'T FIND A CLEAR ANSWER, THAT IS,

16  WHETHER OR NOT WE HAVE ONE CLIENT REPRESENTATIVE WHO IS ALSO A

17  WITNESS AND WE TALKED ABOUT THE FACT THAT HE COULD SIT IN THE

18  COURTROOM AFTER HE TESTIFIES, BUT DURING OPENING STATEMENT,

19  WILL HE BE ALLOWED TO BE IN THE COURTROOM?

20          THE COURT:  IS HE THE -- IS HE THE ONLY CORPORATE

21  REPRESENTATIVE?

22          MR. SLENKOVICH:  WE HAVE TWO.  THEY'LL BE MOSTLY

23  ALTERNATING.

24          THE COURT:  AND WHEN IS HIS TESTIMONY?

25          MR. SLENKOVICH:  HE'LL BE VERY EARLY ON, FIRST OR
```

```
1    SECOND WITNESS.
2              THE COURT:  ALL RIGHT.  HE CAN STAY.
3              MR. SLENKOVICH:  OKAY.  THANK YOU, YOUR HONOR.
4              THE COURT:  MR. HADJIS, ANYTHING ON YOUR SIDE?
5              MR. HADJIS:  WE HAVE NO ISSUES, YOUR HONOR.
6              THE COURT:  OKAY.
7         ALL RIGHT.  THEN I UNDERSTAND THEY'RE GOING TO TRY TO GET
8    THE JURY UP HERE SOMETIME BETWEEN 9:00 AND 9:30.  WHEN THE
9    JURY IS CALLED OVER, YOU WILL GET THE SUPPLEMENTAL
10   QUESTIONNAIRES AND A COPY OF THE ALPHA LIST AND A PORTION OF
11   THE RANDOM LIST.
12        WE'RE SEATING 18 JURORS, SO YOU'LL AT LEAST HAVE THE
13   RANDOM UP TO 18.  ANY QUESTIONS?
14             MR. SLENKOVICH:  NO, YOUR HONOR.
15             MR. HADJIS:  NO, YOUR HONOR.
16             THE COURT:  ALL RIGHT.  I WILL ALLOW YOU, DURING MY
17   OPENING REMARKS TO THE JURY, TO INTRODUCE YOUR TEAM, SO BE
18   PREPARED TO DO THAT.
19             MR. SLENKOVICH:  THANK YOU, YOUR HONOR.
20             MR. HADJIS:  THANK YOU.
21             THE COURT:  WE'LL STAND IN RECESS UNTIL THE JURY
22   ARRIVES.
23        (RECESS TAKEN AT 9:06 A.M.; PROCEEDINGS RESUMED AT 9:48
24   A.M.)
25        (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE PRESENCE OF
```

```
 1    THE JURY VENIRE:)

 2             THE CLERK:  PAMELA BENSON, B-E-N-S-O-N.

 3        ROBERT CELLI, C-E-L-L-I.

 4        LINCY CHAN, C-H-A-N.

 5        BENJAMIN CORY, C-O-R-Y.

 6        PAMELA ELLIOTT, E-L-L-I-O-T-T.

 7        ANGELEE GRACEFFA, G-R-A-C-E-F-F-A.

 8        YEGAPPAN LAKSHMANAN, THE LAST NAME, L-A-K-S-H-M-A-N-A-N.

 9        HY LAM, L-A-M.

10        WINNIE LEUNG, L-E-U-N-G.

11        VINCENT OW, O-W.

12        ERIC PENATE.  DID I SAY IT RIGHT?  OKAY.  P-E-N-A-T-E.

13        SO THE NEXT ONE IS DARRYL SILVA, S-I-L-V-A.

14        ANDREW SOBCZYNSKI, S-O-B-C-Z-Y-N-S-K-I.

15        PHENVIPA SOPAPAN, LAST NAME, S-O-P-A-P-A-N.

16        CARISSA SPONBURG, S-P-O-N-B-U-R-G.

17        MEGH TAMANG, T-A-M-A-N-G.

18        MALLORY WATKINS, W-A-T-K-I-N-S.

19        AND WENDY WEE, W-E-E.

20                 (PAUSE IN THE PROCEEDINGS.)

21             THE COURT:  YOU HAVE ALL BEEN CALLED AS PROSPECTIVE

22    JURORS IN THE CASE OF MEDIATEK, INC. VERSUS FREESCALE,

23    INCORPORATED.  THIS IS CASE NO. 11-CV-5341.

24        PLEASE REMAIN STANDING TO BE SWORN.

25        (JURY VENIRE SWORN.)
```

1          **THE COURT:**  EVERYONE, IN THE BACK, TOO.

2      "I DO"?  OKAY.  HAVE A SEAT.  THANK YOU.

3      WELL, LET ME START BY SAYING THAT GIVEN YOUR SOMEWHAT

4  LUKEWARM RESPONSE TO MY "GOOD MORNING" THAT NONE OF YOU -- OR

5  MAYBE MOST OF YOU WERE NOT PARTICULARLY EXCITED TO GET THAT

6  JURY SUMMONS TELLING YOU THAT YOU HAD BEEN SUMMONED TO COME IN

7  FOR WHAT IS SOMEWHAT OF A LONG TRIAL, IT'S A FEW WEEKS.

8      I CAN UNDERSTAND THAT.  MY HUSBAND COMPLAINS ALL THE TIME.

9  BUT LET ME START THEN BY THANKING YOU FOR HONORING YOUR

10  CITIZENSHIP BECAUSE THAT IS IN FACT WHAT YOU'VE DONE.  THE

11  RIGHT TO A TRIAL BY JURY IS GUARANTEED TO EACH AND EVERY ONE

12  OF US BY THE CONSTITUTION.  MY SON IS STUDYING AMERICAN

13  HISTORY THIS YEAR AND WE'VE GONE OVER THAT PART OF THE

14  CONSTITUTION.  IT'S GUARANTEED.

15      YOU CAN PICK UP A NEWSPAPER ALMOST ANY DAY OF THE WEEK AND

16  SEE HOW PEOPLE IN OTHER COUNTRIES RESOLVE THEIR CIVIL

17  DISPUTES.  NOT EVERYONE RESOLVES THEM IN COURTS OF LAW.  BUT

18  THE RIGHT TO A TRIAL BY JURY CANNOT BE GRANTED IF INDIVIDUALS

19  LIKE YOU DO NOT COME AND SERVE.  SO THANK YOU.

20      LET ME START WITH JUST SOME INTRODUCTIONS.  THEN WHAT

21  WE'LL DO IS I'LL TALK TO YOU ABOUT THE ROLE OF JURORS AND --

22  AND WHAT THIS CASE IS ABOUT.  AND THEN WE'LL START WITH THE

23  PROCESS OF QUESTIONING.

24      AS I INDICATED TO YOU, YOU'RE HERE ON -- CALLED AS

25  PROSPECTIVE JURORS IN A CASE BETWEEN MEDIATEK INC., WHICH ARE

```
1    THE PLAINTIFFS, THE FOLKS SITTING AT THIS FRONT TABLE, AGAINST

2    FREESCALE SEMICONDUCTOR, INC., THE FOLKS SITTING ON THAT SIDE

3    OF THE COURTROOM.  SO I'LL LET THEM INTRODUCE THEMSELVES.

4        MR. SLENKOVICH.

5            MR. SLENKOVICH:  THANK YOU, YOUR HONOR.

6        MY NAME IS KEITH SLENKOVICH, AND I HAVE WITH ME MY

7    COLLEAGUES, MR. JIM DOWD.

8            MR. DOWD:  GOOD MORNING.

9            MR. SLENKOVICH:  AND MS. NANCY SCHROEDER.

10           THE COURT:  MR. HADJIS?

11           MR. HADJIS:  THANK YOU, YOUR HONOR.

12       MY NAME IS ALEX HADJIS.  AND I DID WANT TO START OFF BY

13   THANKING YOU ALSO, AS THE JUDGE HAS, FOR COMING TODAY AND

14   DEVOTING YOUR TIME.

15       I AM JOINED BY MY CORPORATE REPRESENTATIVES FROM FREESCALE

16   SEMICONDUCTOR, INC., MR. PETE ROOSSIEN, MR. MARK PATRICK.

17   MR. ROOSSEIN IS FREESCALE'S CLO, AND MR. MARK PATRICK IS A

18   DIRECTOR OF INTELLECTUAL PROPERTY AT FREESCALE.

19       I'M ALSO GOING TO INTRODUCE OUR TEAM, SOME OF THE

20   ATTORNEYS THAT YOU'LL BE SEEING THROUGHOUT THE WEEK OR THE

21   WEEKS AHEAD AS YOU LISTEN TO THIS CASE AND FINALLY DELIBERATE,

22   AND OUR PARALEGALS AND A CONSULTANT.

23       TO BEGIN, WITH MR. RUDY KIM.

24           MR. KIM:  GOOD MORNING.

25           MR. HADJIS:  MS. KRISTIN YOHANNAN.
```

1              **MS. YOHANNAN:**  GOOD MORNING.

2              **MR. HADJIS:**  MR. MATT MILANO WILL BE CONSULTING WITH

3    US TODAY.

4         AND MS. ETHEL VILLEGAS IS OUR PARALEGAL.

5              **THE COURT:**  THANK YOU.

6         LADIES AND GENTLEMEN, LET ME ASK HOW MANY OF YOU HAVE SEEN

7    TV SHOWS WHERE THERE ARE COURTROOM SCENES?  ANYBODY?

8         (HANDS RAISED.)

9              **THE COURT:**  OKAY.  WELL, I CAN TELL YOU THAT TRIALS

10   IN REAL LIFE ARE NOT LIKE *MY COUSIN VINNY*, BUT I LOVE THAT

11   PARTICULAR TRIAL.  OR *PERRY MASON*.  BUT THEY ARE IMPORTANT.

12        AND THE RIGHT TO SERVE AS A TRIAL JUROR IS YOUR RIGHT,

13   YOUR PRIVILEGE.  IT CANNOT BE TAKEN AWAY FROM YOU ON THE BASIS

14   OF RELIGION, GENDER, NATIONAL ORIGIN, SEXUAL ORIENTATION, OR

15   ECONOMIC STATUS.

16        IN FACT, YOU SHOULD RECALL THAT IT WAS NOT THAT LONG AGO

17   IN OUR HISTORY THAT MANY OF US IN THIS ROOM WOULD HAVE BEEN

18   DENIED THE RIGHT TO SERVE AS A JUROR, MYSELF INCLUDED.  THAT

19   WAS NOT ALWAYS OUR RIGHT.

20        SO WHAT IS THIS ABOUT?  WHY DO WE HAVE JURORS?  IT IS THE

21   DUTY OF JURORS TO DETERMINE THE FACTS OF THE CASE AS THOSE

22   FACTS ARE DEVELOPED BY THE EVIDENCE.  AND THE JURY EXPRESSES

23   ITS CONCLUSION IN WHAT WE KNOW AS A VERDICT.  OUR SYSTEM OF

24   DEMOCRACY BELIEVES THAT THE COLLECTIVE OPINIONS OF MULTIPLE

25   PEOPLE FROM THE COMMUNITY ARE THE BEST WAY OR ONE OF THE BEST

1  WAYS OF DECIDING WHAT FACTS ARE WHEN THOSE FACTS ARE IN

2  DISPUTE.

3       THERE IS AN IMPORTANT LIMITATION, THOUGH, ON JURORS' DUTY

4  TO DEVELOP AND TO DECIDE FACTS, AND THAT IS THAT FACTS MUST BE

5  DECIDED IN CONFORMITY WITH THE LAW.  AND THAT LAW IS GIVEN TO

6  YOU BY THE TRIAL JUDGE, WHO IN THIS CASE IS ME.  IT IS THE

7  DUTY OF A JUDGE TO RULE ON QUESTIONS OF LAW DURING THE TRIAL

8  AND TO DETERMINE WHAT EVIDENCE IS APPROPRIATELY HEARD BY THE

9  JURY.

10       AT THE BEGINNING OF THE TRIAL, DURING THE TRIAL, AND AT

11  THE END OF THE TRIAL, THE COURT WILL GIVE INSTRUCTIONS AND

12  WILL IDENTIFY AND STATE TO YOU WHAT LAW APPLIES IN ANY

13  PARTICULAR CASE.  AND THEN IT IS THE DUTY OF THE JURY TO

14  DETERMINE WHAT THE FACTS ARE WITHIN THE CONFINES OF THAT LAW.

15  JURORS MUST ACCEPT THOSE INSTRUCTIONS WITHOUT RESERVATION,

16  EVEN IF YOU DO NOT AGREE WITH THE LAW OR WITH THE POLICY OR

17  HAVE DOUBTS ABOUT THE WISDOM OF THE LAW.  AND WHY IS THAT?

18       BECAUSE IN OUR COUNTRY, WE HAVE JURORS DECIDE THE FACTS

19  BASED ON ONE SET OF LAWS, NOT BASED UPON 9 OR 12 PEOPLE'S

20  OPINIONS OF WHAT THEY THINK THE LAW SHOULD BE.  THAT WOULD

21  FUNDAMENTALLY UNDERMINE REPRESENTATIVE DEMOCRACY.

22       THE ROLE OF LAWYERS IS DISTINCT AND SEPARATE.  AND AS I

23  SAW THE SHOW OF HANDS, MANY OF YOU HAVE SEEN LAWYERS.  THEY

24  ASK THE QUESTIONS.  THEY PRESENT THE EVIDENCE.  THEY OBJECT.

25  "OBJECTION."  SOME MORE GLAMOROUSLY THAN OTHERS, BUT THAT'S

1     THEIR JOB, THAT'S THEIR ROLE.

2          WHAT THE LAWYERS SAY IS NOT EVIDENCE.  THEY DO NOT TAKE AN

3     OATH.  THEY ARE NOT SITTING ON THAT WITNESS STAND.  IT'S NOT

4     EVIDENCE.  BUT IT IS THEIR JOB TO PRESENT THE EVIDENCE AND TO

5     MAKE APPROPRIATE OBJECTIONS.

6          AT THE END OF THE JURY TRIAL, WITH EVERYBODY DOING THEIR

7     JOB, AS I'VE DESCRIBED FOR YOU, THERE IS THE WEIGHING OF

8     EVIDENCE, AND THE END RESULT IS A VERDICT.

9          IT IS IN THIS CONTEXT THAT IT IS IMPORTANT THAT EACH JUROR

10    MAINTAIN AN OPEN MIND TOWARDS THE CASE AND ONLY DECIDE THE

11    CASE ON THE EVIDENCE THAT IS PRESENTED.

12         I'VE DESCRIBED SOMETIMES A TRIAL AND EVIDENCE IN A TRIAL

13    AS YOU THINK ABOUT A BOX.  WE START OFF AT TRIAL, THERE'S AN

14    EMPTY BOX, KIND OF LIKE A PUZZLE.  IT'S A BOX, NOTHING IN IT.

15    BUT THE PIECES GET PUT IN.  EVERY PIECE OF EVIDENCE IS LIKE A

16    PIECE OF A PUZZLE AND THEY PUT IT IN A BOX.  AND AT THE END OF

17    THE CASE, YOU HAVE THIS BOX WITH ALL THESE PIECES OF EVIDENCE.

18         NOW, THE LAWYERS ARE GOING TO DESCRIBE TO YOU WHAT THE

19    PICTURE IS, WHAT THEY BELIEVE ALL OF THAT EVIDENCE IN THE BOX

20    SHOWS.  AND THEY HAVE DIFFERENT OPINIONS.  IF THEY DIDN'T, WE

21    WOULDN'T BE HERE TODAY.

22         IT'S THE JURY'S JOB, THEN, TO TAKE ONLY THAT EVIDENCE THAT

23    WAS PRESENTED IN THIS COURTROOM UNDER OATH DURING THE TRIAL

24    AND PUT IT TOGETHER AND THEN EXPLAIN AND DECIDE THROUGH THE

25    FORM OF A VERDICT, WHAT DOES IT SAY?  WHAT ARE THOSE FACTS?

1        WE TAKE EVERYONE'S PERSPECTIVES.  THE JURORS, THEY USE

2   THEIR COMMON SENSE, THEY DETERMINE WHETHER THEY BELIEVE A

3   WITNESS OR NOT.  WHO DO THEY BELIEVE?  WHAT EVIDENCE IS

4   PERSUASIVE?  IT IS THE ROLE OF THE JURY TO DETERMINE THE

5   WEIGHT AND CREDIBILITY OF THE EVIDENCE.

6        IT'S FREQUENTLY THE CASE, LADIES AND GENTLEMEN, THAT

7   PARTIES ONLY WANT ONE PERSON'S OPINION.  AND IF THEY DO, THEY

8   ASK ME, I GIVE THEM THEIR OPINION, THE CASE GOES ON, IT NEVER

9   GOES BEFORE A JURY.  THAT'S NOT THIS CASE.  IN THIS CASE, THE

10  PARTIES HAVE DECIDED THEY WANT THE COMMUNITY TO DECIDE WHAT

11  THE FACTS ARE AND TO RENDER A VERDICT.  AND THAT'S WHY YOU'RE

12  HERE.

13       I'VE BEEN SPEAKING FOR A WHILE.  LET ME ASK JUST, CAN

14  EVERYBODY HEAR ME?  WE DO HAVE ASSISTIVE LISTENING DEVICES IF

15  YOU NEED ONE.

16       (NO RESPONSES.)

17          **THE COURT:**  OKAY.  HAS ANYONE HAD A PROBLEM

18  UNDERSTANDING ME?  DOES ANYONE HAVE A LANGUAGE DIFFICULTY THAT

19  THUS FAR YOU'VE NOT REALLY BEEN ABLE TO UNDERSTAND WHAT I'M

20  SAYING?

21       OKAY.  THE RECORD WILL REFLECT THERE ARE NO RESPONSES TO

22  THAT.

23       EACH OF YOU HAVE BEEN PRESCREENED.  IN TERMS OF THE

24  TIMING, YOU WERE ADVISED IN ADVANCE HOW LONG WE EXPECTED THIS

25  TRIAL TO LAST.

1    I'LL ASK THE COURTROOM DEPUTY, DO WE HAVE THAT CALENDAR?

2         JUST SO THAT YOU KNOW, EVIDENCE IN THIS CASE, TODAY WE

3    WILL BE PRESENTING -- WE'LL DETERMINE WHO THE JURY IS, BUT

4    WE'RE NOT GOING TO START ACCEPTING TESTIMONY OR OPENING

5    STATEMENTS UNTIL NEXT TUESDAY.  SO THE DAY AFTER LABOR DAY IS

6    WHEN WE WILL ACTUALLY START EVIDENCE IN THIS TRIAL.  THAT WILL

7    GIVE PEOPLE A FEW DAYS TO GET ARRANGEMENTS MADE TO THE EXTENT

8    THAT ARRANGEMENTS NEED TO BE MADE.

9         AND THEN AS YOU CAN SEE ON THE SCREENS IN FRONT OF YOU,

10   THERE ARE A FEW DAYS, THE WEEK OF THE 15TH, THERE -- THE 17TH

11   IS A HALF DAY, AND THEN THE 18TH AND 19TH, WE'RE NOT IN

12   SESSION THOSE DAYS.

13        SO INCLUDING DELIBERATIONS, WE EXPECT THIS TRIAL TO BE

14   DONE BY THE LAST WEEK OF SEPTEMBER.  IF THERE ARE ISSUES THAT

15   YOU NEED TO RAISE WITH RESPECT TO THE SCHEDULE, WHEN I TALK TO

16   YOU INDIVIDUALLY AS WE GO THROUGH THIS PROCESS, LET ME KNOW.

17   OKAY?  ALL RIGHT.

18        A LITTLE BIT -- LET ME TELL YOU A LITTLE BIT ABOUT THIS

19   CASE.  AS I MENTIONED TO YOU, THE PARTIES ARE MEDIATEK, INC.,

20   WE TEND TO REFER TO THEM AS MEDIATEK; AND FREESCALE

21   SEMICONDUCTOR, INC., WHICH WE WILL REFER TO AS FREESCALE

22   FREQUENTLY.

23        MEDIATEK FILED THIS LAWSUIT AGAINST FREESCALE SEEKING

24   MONEY DAMAGES FROM FREESCALE FOR ALLEGEDLY INFRINGING THREE

25   PATENTS.  THE PATENTS ARE COMMONLY REFERRED TO AS THE '845

1    PATENT, THE '331 PATENT, AND THE '753 PATENT.

2        MEDIATEK ALLEGES THAT FREESCALE INFRINGES THESE PATENTS BY

3    MAKING, USING, SELLING, OR OFFERING TO SELL IN THE UNITED

4    STATES OR IMPORTING INTO THE UNITED STATES CERTAIN FREESCALE

5    SEMICONDUCTOR CHIPS.

6        MEDIATEK ALSO ALLEGES THAT FREESCALE INDUCED CERTAIN

7    CUSTOMERS AND USERS OF THESE SEMICONDUCTOR PRODUCTS TO

8    INFRINGE THE MEDIATEK PATENTS AND THAT CONTRIBUTORY

9    INFRINGEMENT EXISTS WITH RESPECT TO THEM.

10       MEDIATEK CONTENDS THAT ITS ASSERTED CLAIMS IN EACH OF ITS

11   PATENTS ARE VALID.

12       FREESCALE, ON ITS SIDE, DENIES THAT IT HAS INFRINGED ANY

13   CLAIMS SET FORTH IN THOSE THREE PATENTS.  IT ALSO DENIES THAT

14   IT INDUCED INFRINGEMENT AND DENIES THAT IT CONTRIBUTED TO ANY

15   INFRINGEMENT.

16       FREESCALE CONTENDS THAT THREE PATENTS ARE INVALID.

17   SPECIFICALLY THEY CONTEND THAT THE ASSERTED CLAIMS IN THESE

18   PATENTS ARE INVALID BECAUSE THE INVENTIONS THEY ARE ALLEGED TO

19   COVER ALREADY EXISTED.

20       FREESCALE'S INVALIDITY CONTENTIONS ARE BASED ON A PATENT

21   AND A USER MANUAL THAT FREESCALE ALLEGES PREDATE THE PATENTS

22   THAT MEDIATEK IS ASSERTING IN THIS CASE.

23       SO THIS CASE INVOLVES -- FREQUENTLY, I KNOW PEOPLE GET

24   CALLED IN FOR CRIMINAL CASES OR OTHER KINDS OF CIVIL CASES --

25   THIS IS A PATENT CASE THAT YOU HAVE BEEN CALLED IN FOR.

```
 1        LET ME INTRODUCE, SINCE WE'VE INTRODUCED THE PARTIES AND
 2   THE ATTORNEYS, MY COURTROOM STAFF.
 3        MY COURTROOM DEPUTY HERE IS FRANCES STONE.  SHE IS THE
 4   PERSON WITH WHOM MOST OF YOU WILL HAVE CONTACT OR ANY
 5   INTERACTION.
 6        AND MY COURT REPORTER IS RAYNEE MERCADO.  NOW, LET ME SAY
 7   SOMETHING ABOUT RAYNEE.  IN MY VIEW, SHE'S THE ONLY PERSON WHO
 8   WORKS EVERY SINGLE MOMENT OF A TRIAL, AND THAT IS BECAUSE
 9   ANYTIME ANYTHING IS SAID IN THIS COURTROOM, SHE MUST TYPE IT
10   DOWN.  SO IF I'M NOT TALKING AND THE LAWYERS ARE TALKING AND
11   I'M DOING SOMETHING ELSE, SHE'S STILL WORKING.  SHE ALWAYS
12   WORKS.  EVERYTHING THAT'S SAID, SHE HAS TO TYPE.
13        SO YOU WILL SEE ME PERIODICALLY MAKING SURE PEOPLE SLOW
14   DOWN WHEN THEY TALK.  OR ONCE IN A WHILE I HAVE TO TAKE A
15   BREAK BECAUSE EVEN THOUGH I DON'T NECESSARILY WANT A BREAK, IF
16   I DON'T, SHE WILL NEVER GET A BREAK.  SO ONCE IN A WHILE WE
17   WILL TAKE BREAKS.
18        NOW, YOU'VE ALL BEEN GIVEN A LIST OF PROSPECTIVE WITNESSES
19   EXCEPT FOR A COUPLE.  I DON'T KNOW THAT ANYBODY HAS -- IT
20   DIDN'T LOOK LIKE ANYONE KNEW ANY OF THE SPECIFIC PEOPLE, BUT
21   WE -- IF THAT CHANGES, WE -- WE CAN TALK ABOUT IT.
22        WE ARE ABOUT TO START THE PROCESS OF VOIR DIRE.  "VOIR
23   DIRE" IS -- THE WORD, THE TERM DATES BACK TO THE 1600S.  IT'S
24   ANGLO-FRENCH, AND IT MEANS LITERALLY TO SPEAK THE TRUTH.  IT'S
25   WHY YOU TOOK AN OATH.  THAT'S WHY YOU'RE HERE.
```

```
1          WE ARE LOOKING FOR NINE JURORS WHO CAN BE FAIR AND
2     IMPARTIAL.  I'LL LOOK AROUND THE COURTROOM.  YOU CAN SEE THERE
3     ARE MORE THAN NINE PEOPLE HERE.  MOST OF YOU WILL NOT RETURN.
4     BUT WE ARE LOOKING FOR NINE.  AND SO ALL OF THE QUESTIONS THAT
5     I ASK AND THAT THE LAWYERS WILL BE ALLOWED TO ASK ARE GEARED
6     TOWARD TRYING TO FIND NINE PEOPLE WHO CAN BE FAIR AND
7     IMPARTIAL AND WHO CAN ASSIST THESE FOLKS IN RESOLVING THEIR
8     DISPUTE BY RENDERING A VERDICT.
9          IF AT ANY TIME DURING THIS PROCESS, IF I ASK YOU A
10    QUESTION THAT MAY CALL FOR VERY PERSONAL OR PERHAPS
11    EMBARRASSING INFORMATION THAT YOU DON'T WANT TO SHARE WITH
12    EVERYONE ELSE IN THE COURTROOM, LET ME KNOW, I'LL MAKE A NOTE
13    AND I WILL TALK TO YOU IN PRIVATE WITHOUT ALL THE JURORS HERE.
14    SO I CAN AFFORD YOU THAT PRIVACY, BUT I NEED THE INFORMATION.
15    SO DON'T NOT ANSWER THE QUESTION BECAUSE YOU'RE EMBARRASSED.
16    JUST SAY, "JUDGE, I'D LIKE TO TALK PRIVATELY."  AND THEN WE
17    CAN TALK PRIVATELY.  OKAY?
18         ALL RIGHT.  LET'S GET STARTED.
19         I DIDN'T SEE -- THERE WEREN'T -- THERE WERE NO TEXANS
20    ANSWER HERE; RIGHT?  RAISE YOUR HAND IF YOU'RE FROM TEXAS.  SO
21    I GREW UP IN TEXAS.  JUST SO THAT YOU KNOW, IF YOU EVER MOVE
22    TO TEXAS AND YOU GO AND YOU GET -- YOU'RE CALLED FOR JURY
23    DUTY, AND THEY TELL YOU, "WELL, WE'RE HERE FOR VOIR DIRE,"
24    IT'S THE SAME THING.
25         I JUST ALWAYS THINK HERE IN SAN FRANCISCO WE'RE A LITTLE
```

```
 1    MORE SOPHISTICATED, BUT I DON'T SAY THAT TO MY FAMILY WHO'S
 2    STILL BACK IN TEXAS.
 3        SO, MS. BENSON.
 4            PROSPECTIVE JUROR:  YES, MA'AM.
 5            THE COURT:  GOOD MORNING.
 6            PROSPECTIVE JUROR:  GOOD MORNING.
 7            THE COURT:  OKAY.  YOU HAVE -- I'VE -- AND WITH
 8    RESPECT TO EVERYBODY, I HAVE LOOKED AT ALL OF YOUR
 9    QUESTIONNAIRES, YOUR PREQUESTIONNAIRE AND THE ONE THAT YOU DID
10    THIS MORNING.  SO THE QUESTIONS THAT I'LL ASK -- I'LL LET YOU
11    KNOW TEXARKANA IS PRETTY CLOSE TO TEXAS.
12            PROSPECTIVE JUROR:  IT IS.  IT'S RIGHT ON THE LINE.
13            THE COURT:  IT'S RIGHT ON THE LINE.  BUT DID YOU NOT
14    STAY THERE TOO LONG?
15            PROSPECTIVE JUROR:  NO.
16            THE COURT:  OKAY.  WELL, BECAUSE IT WAS TEXARKANA.
17            PROSPECTIVE JUROR:  MY FATHER WAS IN THE MILITARY.
18            THE COURT:  OKAY.
19        YOU SAID THAT YOU'VE SUPERVISED OTHERS.
20            PROSPECTIVE JUROR:  YES.
21            THE COURT:  AND CAN YOU TELL ME A LITTLE BIT ABOUT
22    YOUR ROLE SUPERVISING?
23            PROSPECTIVE JUROR:  I WAS AN INSTRUCTOR FOR
24    COSMETOLOGY BACK IN CHICAGO MANY YEARS AGO.
25            THE COURT:  OKAY.
```

1    **PROSPECTIVE JUROR:**  WHEN I WAS YOUNGER.

2        **THE COURT:**  AND YOU'VE NEVER -- YOU'VE NEVER HAD TO

3    SERVE ON A JURY?

4        **PROSPECTIVE JUROR:**  NO.  I WAS CALLED ONCE, BUT WE

5    WERE MOVING, SO I DIDN'T HAVE TO DO IT.

6        **THE COURT:**  OKAY.  THIS COULD BE YOUR LUCKY DAY.

7        **PROSPECTIVE JUROR:**  COULD BE.  EVERY DAY THAT I WAKE

8    UP IS A LUCKY DAY.

9        **THE COURT:**  I WOULD AGREE WITH THAT.

10        OKAY.  I DON'T HAVE ANY FOLLOW-ON QUESTIONS FOR YOU.

11        LET'S PASS IT ON TO MR. -- IS IT CELLI OR CELLI?

12        **PROSPECTIVE JUROR:**  CELLI IS FINE.

13        **THE COURT:**  ALL RIGHT.  WELL, IT'S FINE, BUT WHAT IS

14    THE APPROPRIATE WAY TO SAY IT?

15        **PROSPECTIVE JUROR:**  CELLI.

16        **THE COURT:**  YOU'RE AN ASSISTANT PRINCIPAL.

17        **PROSPECTIVE JUROR:**  CORRECT.

18        **THE COURT:**  WHAT HAPPENS IF YOU'RE NOT IN SCHOOL?

19        **PROSPECTIVE JUROR:**  WELL --

20        **THE COURT:**  WHAT ARE YOUR JOB DUTIES?

21        **PROSPECTIVE JUROR:**  I OVERSEE A HUNDRED EMPLOYEES,

22    1,400 STUDENTS.  THERE ARE FOUR ADMINISTRATORS ON STAFF ON THE

23    SITE.

24        **THE COURT:**  THERE IS A PRINCIPAL THERE, THOUGH,

25    RIGHT?

```
 1                PROSPECTIVE JUROR:  CORRECT.

 2            THE COURT:  WHAT DOES THAT PERSON DO IF YOU'RE DOING

 3   ALL THAT WORK?

 4            PROSPECTIVE JUROR:  PROBABLY DOING -- HE JUST

 5   DELEGATES.

 6                        (LAUGHTER.)

 7            THE COURT:  OKAY.  IT IS ON THE RECORD, BUT HE

 8   PROBABLY WON'T LOOK FOR THE TRANSCRIPT.

 9            PROSPECTIVE JUROR:  I DON'T THINK HE WOULD ARGUE WITH

10   MY STATEMENT.

11            THE COURT:  OKAY.  YOU'VE NOW -- NOW, YOU DID SERVE

12   ON A COUPLE OF JURIES.

13            PROSPECTIVE JUROR:  THAT'S CORRECT.

14            THE COURT:  IN EITHER OF THOSE CASES, WERE YOU THE

15   FOREPERSON?

16            PROSPECTIVE JUROR:  NO.

17            THE COURT:  AND CAN YOU -- DO YOU REMEMBER WHAT THE

18   CIRCUMSTANCES WERE OF THE CRIMINAL CASES?

19            PROSPECTIVE JUROR:  DO YOU WANT THE SPECIFIC CHARGES?

20            THE COURT:  YEAH, JUST -- WHAT ARE --

21            PROSPECTIVE JUROR:  BOTH -- BOTH TRIALS WERE

22   CRIMINAL.

23            THE COURT:  OKAY.  DO YOU REMEMBER WHAT THE CHARGES

24   WERE?

25            PROSPECTIVE JUROR:  DUI.
```

```
1              THE COURT:  BOTH DUI?

2              PROSPECTIVE JUROR:  CORRECT.

3              THE COURT:  AND WHAT VERDICTS DID THE JURY REACH?

4              PROSPECTIVE JUROR:  BOTH JURIES REACHED A GUILTY

5      VERDICT.

6              THE COURT:  OKAY.  JUST TO BE CLEAR, MR. CELLI,

7      YOU'RE NOT ACTUALLY TEACHING IN THE CLASSROOM, THOUGH; IS THAT

8      CORRECT?

9              PROSPECTIVE JUROR:  CORRECT.

10             THE COURT:  AND THE HUNDRED PEOPLE, THEN, ARE

11     TEACHERS AND OTHER STAFF?

12             PROSPECTIVE JUROR:  THAT WOULD BE CERTIFICATED AND

13     CLASSIFIED STAFF.

14             THE COURT:  ARE THERE ANY PARTICULAR ISSUES THAT YOU

15     WERE INVOLVED IN THAT ARE UNIQUE TO THIS YEAR WHERE THIS COULD

16     CAUSE A PROBLEM?

17             PROSPECTIVE JUROR:  I DON'T THINK ANY OF MY STUDENTS

18     HAVE ANY PATENT INFRINGEMENT ISSUES.

19             THE COURT:  LET ME ASK THIS:  I KNOW IN SOME OF THE

20     SCHOOLS RIGHT NOW, THERE'S LOTS OF TRANSITIONS HAPPENING WITH

21     COMMON CORE.

22             PROSPECTIVE JUROR:  CORRECT.

23             THE COURT:  AND IT'S THE BEGINNING OF THE SCHOOL

24     YEAR.

25             PROSPECTIVE JUROR:  CORRECT.
```

```
 1              THE COURT:  I GENERALLY DO NOT LET PEOPLE OFF, BUT IF

 2    YOU'RE IN -- THAT'S WHY I'M TRYING TO UNDERSTAND IF THERE'S

 3    SOMETHING THAT'S UNIQUE TO YOUR POSITION THAT IS HAPPENING

 4    THAT I SHOULD KNOW ABOUT IN TERMS OF YOU BEING HERE.

 5              PROSPECTIVE JUROR:  WELL, THIS IS THE FIFTH DAY OF

 6    OUR SCHOOL.  WE HAVE A BRAND-NEW PRINCIPAL ON SITE, ANOTHER

 7    BRAND-NEW ASSISTANT PRINCIPAL, A ONE-YEAR ASSISTANT PRINCIPAL,

 8    SO I AM THE MOST TENURED OF THE ADMINISTRATORS ON SITE.

 9              THE COURT:  YOU'VE BEEN THERE 15 YEARS?

10              PROSPECTIVE JUROR:  I'VE BEEN WITH THE DISTRICT

11    15 YEARS, CORRECT.

12              THE COURT:  YOU SAID YOU KNOW SOMEONE WHO FILED A

13    PATENT?

14              PROSPECTIVE JUROR:  I AM ASSUMING THEY FILED A PATENT

15    SINCE THEIR TOY WAS ON THE COVER OF A MAGAZINE.

16              THE COURT:  AND HOW DO YOU KNOW THE PERSON?

17              PROSPECTIVE JUROR:  JUST AN EMPLOYEE ON STAFF.

18              THE COURT:  OKAY.  HAVE YOU EVER TALKED TO THEM ABOUT

19    THE PROCESS OF GETTING A PATENT OR ANYTHING SPECIFIC ABOUT

20    PATENTS?

21              PROSPECTIVE JUROR:  JUST THE PROCESS OF DESIGN, NOT

22    THE PATENT.

23              THE COURT:  WELL, WE DO END COURT AT 1:30, SO YOU

24    COULD ALWAYS MAKE AFTER-SCHOOL MEETINGS IF YOU NEEDED TO.

25              PROSPECTIVE JUROR:  THAT'S WONDERFUL.
```

```
 1                              (LAUGHTER.)

 2              PROSPECTIVE JUROR:  IT IS A LONG DRIVE BACK.

 3              THE COURT:  YES, I UNDERSTAND.

 4         OKAY.  LET'S PASS IT TO MS. CHAN.

 5         GOOD MORNING.

 6              PROSPECTIVE JUROR:  MORNING.

 7              THE COURT:  OKAY.  SO, MS. CHAN, YOU DIDN'T ANSWER

 8    QUESTION 3.  DO YOU -- SO YOU DON'T OWN A SMART PHONE OR

 9    E-READER; IS THAT RIGHT?

10              PROSPECTIVE JUROR:  I MAYBE MISUNDERSTAND THE

11    QUESTIONS.

12              THE COURT:  OKAY.  DO YOU OWN ANY OF THE FOLLOWING:

13    JUST ANSWER -- YOU CAN JUST ANSWER TO ME.  DO YOU OWN A TABLET

14    COMPUTER?

15              PROSPECTIVE JUROR:  NO.

16              THE COURT:  A SMART PHONE?

17              PROSPECTIVE JUROR:  YES.

18              THE COURT:  OKAY.  HOW ABOUT AN E-READER?

19              PROSPECTIVE JUROR:  NO.

20              THE COURT:  AND A VEHICLE WITH AN INFOTAINMENT

21    SYSTEM?

22              PROSPECTIVE JUROR:  IT'S LIKE A GPS OR SOMETHING?

23              THE COURT:  DO YOU OWN A -- A VEHICLE WITH A GPS?

24              PROSPECTIVE JUROR:  NO.

25              THE COURT:  OKAY.  LET'S SEE.  NOW, AT THE END HERE,
```

```
 1    IN RESPONSE TO THE QUESTION, "IS THERE ANYTHING THAT MIGHT

 2    AFFECT YOUR ABILITY TO SERVE AS A FAIR AND IMPARTIAL JUROR IN

 3    THIS CASE?" YOU SAID YOU'RE NOT FAMILIAR WITH THE TERM -- AND

 4    I COULDN'T UNDERSTAND -- WITH THE TERM AND MAYBE LAW?  I

 5    DIDN'T -- WHAT WERE YOU TRYING TO TELL ME THERE?

 6            PROSPECTIVE JUROR:  I'M NOT REAL SURE WHAT THE PATENT

 7    IS.  IS IT LIKE COPYRIGHT OR -- ANYTHING ELSE?

 8            THE COURT:  WELL, YOU DON'T NEED TO KNOW THE LAW.

 9            PROSPECTIVE JUROR:  OKAY.

10            THE COURT:  SO WHEN YOU SAID "TERM," WHAT DID YOU

11    MEAN BY TERM?

12            PROSPECTIVE JUROR:  LIKE THE MEANING OF THE -- THE

13    PATENT.

14            THE COURT:  OKAY.

15            PROSPECTIVE JUROR:  I'M CONFUSED.

16            THE COURT:  WELL, THAT'S ALL RIGHT.  THE WHOLE POINT

17    OF A TRIAL IS FOR THE ATTORNEYS TO EXPLAIN EVERYTHING TO YOU.

18            PROSPECTIVE JUROR:  OKAY.

19            THE COURT:  THAT'S THEIR JOB.  AND THEN I GET TO TELL

20    YOU AND EXPLAIN THE LAW TO YOU.  AND ANYTHING YOU DON'T

21    UNDERSTAND WITH RESPECT TO THE LAW, I'LL KEEP EXPLAINING IT

22    UNTIL YOU UNDERSTAND IT.

23            PROSPECTIVE JUROR:  OKAY.

24            THE COURT:  YOU WERE BORN IN HONG KONG?

25            PROSPECTIVE JUROR:  YEAH.
```

```
 1                    THE COURT:  NOW, WHAT'S YOUR -- IS ENGLISH YOUR
 2       PRIMARY LANGUAGE?
 3                    PROSPECTIVE JUROR:  NO.
 4                    THE COURT:  WHAT'S YOUR PRIMARY LANGUAGE?
 5                    PROSPECTIVE JUROR:  CHINESE IN CANTONESE.
 6                    THE COURT:  OKAY.  HOW LONG HAVE YOU BEEN SPEAKING
 7       ENGLISH?
 8                    PROSPECTIVE JUROR:  THINK 20 -- 20-SOMETHING YEARS,
 9       LIKE SINCE I MOVED TO HERE.
10                    THE COURT:  OKAY.  AND HAVE YOU ALWAYS BEEN IN --
11       WELL, WHAT DID YOU DO BEFORE PURCHASING?
12                    PROSPECTIVE JUROR:  I'M ARTIST.  I'M DRAWING COMICS.
13                    THE COURT:  HAVE YOU BEEN ABLE TO UNDERSTAND
14       EVERYTHING THAT I'VE BEEN TALKING ABOUT SO FAR?
15                    PROSPECTIVE JUROR:  I THINK MOST OF IT.  BUT I'M
16       PRETTY SLOW, LIKE I HAVE TO DIGEST.
17                    THE COURT:  OKAY.  AND EVEN THOUGH YOU'VE BEEN SLOW,
18       I MEAN, WE HAVEN'T TALKED ABOUT ANYTHING TECHNICAL YET, HAVE
19       YOU BEEN ABLE TO UNDERSTAND A HUNDRED PERCENT OF THE THINGS
20       THAT I'VE BEEN TALKING ABOUT IN TERMS OF DEMOCRACY AND YOUR
21       ABILITY TO SERVE, THOSE THINGS?  DID YOU UNDERSTAND WHAT I WAS
22       SAYING?
23                    PROSPECTIVE JUROR:  MOST OF IT.
24                    THE COURT:  OKAY.  WHEN YOU SAY "MOST," IS THAT
25       99 PERCENT?  OR 70 PERCENT?
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1          PROSPECTIVE JUROR:  I THINK MORE LIKE 70.

2          THE COURT:  YOU'VE BEEN DOING PURCHASING FOR THE LAST

3     FIVE YEARS.

4          PROSPECTIVE JUROR:  UM-HMM.

5          THE COURT:  EXPLAIN TO ME WHAT IT IS YOU DO.

6          PROSPECTIVE JUROR:  I'M WORKING IN A SCIENTIFIC

7     CHEMICAL REAGENT COMPANY, SO I'M PURCHASING THOSE CHEMICAL

8     REAGENTS FROM CHINA OR LIKE INDIA, AROUND THE WORLD, AND THEN

9     OUR COMPANY IMPORT THE CHEMICAL IN.  AND THEN WE TEST IT AND

10    THEN WE SELL IT TO OTHER, LIKE, U.S. COMPANY FOR RESEARCH AND

11    DEVELOPMENT.

12         THE COURT:  OKAY.

13         PROSPECTIVE JUROR:  UM-HMM.

14         THE COURT:  AND WHAT -- THAT'S WHAT THE COMPANY DOES.

15    WHAT'S YOUR PORTION OF THE JOB?  DO YOU JUST DO INVOICES?

16    TELL ME WHAT YOU DO BY PURCHASING.  OR DO YOU EVALUATE THE

17    PRODUCTS?

18         PROSPECTIVE JUROR:  I DON'T.  I JUST SEE WHICH

19    PRODUCT SOME CUSTOMER INTERESTING IN SO I'M SEND OUT EMAIL TO

20    ALL AROUND MY SUPPLIER, AND THEN THEY WILL QUOTE ME THE PRICE.

21    AND THEN AFTER I SEE THE PRICE AND I COMPARE, AND I WILL BUY

22    THE PRODUCTS AND THEN IMPORT IN.

23         THE COURT:  OKAY.  WHEN YOU COMMUNICATE IN EMAIL,

24    WHAT LANGUAGE DO YOU USE?

25         PROSPECTIVE JUROR:  ENGLISH.

```
 1                    THE COURT:  OKAY.  THAT'S ALL I HAVE FOR YOU RIGHT

 2     NOW, MS. CHAN.

 3                    PROSPECTIVE JUROR:  THANK YOU.

 4                    THE COURT:  MR. CORY, GOOD MORNING.

 5                    PROSPECTIVE JUROR:  GOOD MORNING.

 6                    THE COURT:  OKAY.  SO MR. CORY, WHAT WERE YOU DOING

 7     FOR WIRELESS LIFESTYLE?

 8                    PROSPECTIVE JUROR:  IT WAS BASICALLY WORKING FOR,

 9     LIKE, SPRINT, SELLING PHONES.  IT WAS LIKE A THIRD-PARTY

10     DEALER.

11                    THE COURT:  OKAY.

12        AND THEN YOU SAID YOU'VE SUPERVISED PEOPLE IN THE PAST.

13                    PROSPECTIVE JUROR:  YEAH, THAT WAS DURING THAT SAME

14     JOB.

15                    THE COURT:  SO THESE WERE ALSO PEOPLE WHO SOLD

16     THINGS?

17                    PROSPECTIVE JUROR:  YEAH.  CORRECT.

18                    THE COURT:  OKAY.  AND AS A SECURITY GUARD, IS THAT

19     JUST EXACTLY WHAT I THINK IT WOULD BE?

20                    PROSPECTIVE JUROR:  I MEAN, YEAH.  I'LL DO --

21                    THE COURT:  DESCRIBE YOUR JOB.

22                    PROSPECTIVE JUROR:  WELL, I'LL DO, LIKE, SECURITY

23     FOR, LIKE, THE 49ERS SO I WORK AT, LIKE, THE STADIUMS.  SO

24     I'LL DO ANYTHING FROM, LIKE, PEOPLE CHECKING IN TO LOCKER

25     ROOMS TO DIFFERENT STUFF.
```

1          **THE COURT:**  OKAY.  IS THIS PART-TIME?

2          **PROSPECTIVE JUROR:**  YEAH, IT'S PART-TIME, AND I GO TO

3    SCHOOL FULL-TIME.

4          **THE CLERK:**  YOU NEED TO KEEP THE MIC UP.

5          **THE COURT:**  WHERE ARE YOU A FULL-TIME STUDENT?

6          **PROSPECTIVE JUROR:**  DE ANZA COLLEGE.

7          **THE COURT:**  OKAY.  DID YOU ASK FOR A HARDSHIP?  WHEN

8    DOES SCHOOL START?

9          **PROSPECTIVE JUROR:**  THE 22ND.

10         **THE COURT:**  OF WHAT MONTH?

11         **PROSPECTIVE JUROR:**  OF SEPTEMBER -- SEPTEMBER, THIS

12   MONTH, NEXT MONTH.

13         **THE COURT:**  SO YOU'RE NOT IN SCHOOL RIGHT NOW?

14         **PROSPECTIVE JUROR:**  NOT RIGHT NOW CURRENTLY, NO.

15         **THE COURT:**  OKAY.  DO YOU HAVE YOUR CLASS SCHEDULE?

16         **PROSPECTIVE JUROR:**  YEAH.

17         **THE COURT:**  YES?

18         **PROSPECTIVE JUROR:**  YES.

19         **THE COURT:**  DO YOU HAVE IT WITH YOU?

20         **PROSPECTIVE JUROR:**  NO.

21         **THE COURT:**  NO?

22         **PROSPECTIVE JUROR:**  I'D HAVE TO LOOK IT UP ONLINE TO

23   GET IT.

24         **THE COURT:**  HOW MANY HOURS ARE YOU TAKING?

25         **PROSPECTIVE JUROR:**  I'M NOT SURE OF THE HOURS TOTAL,

1    BUT IT'S LIKE 15 UNITS TOTAL.

2              **THE COURT:**  AND HOW -- WHAT YEAR ARE YOU IN SCHOOL?

3              **PROSPECTIVE JUROR:**  THIS WOULD BE -- GOING TO BE MY

4    SECOND YEAR.

5              **THE COURT:**  DO YOU REMEMBER WHETHER YOU HAVE CLASS

6    EVERY DAY?

7              **PROSPECTIVE JUROR:**  I HAVE CLASS MONDAY THROUGH

8    FRIDAY.

9              **THE COURT:**  DO YOU REMEMBER WHAT TIMES GENERALLY YOUR

10   CLASSES ARE?

11             **PROSPECTIVE JUROR:**  USUALLY, I WANT TO SAY MY FIRST

12   CLASSES START AT 11:00 AND THEN, DEPENDING ON THE DAY,

13   ANYWHERE FROM LIKE 3:00 TO 5:00.

14             **THE COURT:**  OKAY.

15      AND ARE YOU LIVING WITH YOUR FAMILY?

16             **PROSPECTIVE JUROR:**  YES, CURRENTLY.

17             **THE COURT:**  WHAT KIND OF ENGINEER IS YOUR FATHER?

18             **PROSPECTIVE JUROR:**  I DON'T REALLY KNOW THE SPECIFIC.

19   JUST ENGINEER.  I JUST KNOW HE WORKS FOR SRI, LIKE STANFORD

20   RESEARCH INSTITUTE.  HE DOES MORE LIKE MANAGEMENT --

21   MANAGEMENT STUFF REALLY, THOUGH.

22             **THE COURT:**  HE'S NOT PRACTICING ENGINEERING?

23             **PROSPECTIVE JUROR:**  YEAH, HE'S MORE INTO THE

24   MANAGEMENT SIDE OF IT.

25             **THE COURT:**  AND WHAT IS YOUR BROTHER STUDYING?

```
 1                PROSPECTIVE JUROR:  MY BROTHER IS DOING, LIKE, LAW.
 2    HE GOES TO, LIKE, STANFORD, AND HE'S STUDYING ALL THAT STUFF.
 3           THE COURT:  IS HE IN LAW SCHOOL, OR IS HE AN
 4    UNDERGRAD?
 5                PROSPECTIVE JUROR:  HE'S ABOUT TO GRADUATE, BUT HE'S
 6    GOING TO GO TO LAW SCHOOL, I GUESS.
 7           THE COURT:  OKAY.
 8        DID HE SAY, "LUCKY YOU.  LET ME GO AND PRETEND TO BE YOU?"
 9    PROBABLY NOT.
10        HOW ABOUT YOUR SISTER, WHAT IS SHE STUDYING?
11                PROSPECTIVE JUROR:  MY SISTER IS DOING LIKE ART AND
12    FASHION IN ALABAMA.  THAT'S JUST ONE OF MY SISTERS.
13           THE COURT:  THAT WAS THE ONE THAT YOU LISTED HERE.
14           PROSPECTIVE JUROR:  OH, YEAH.
15           THE COURT:  DOES ANY -- DO ANY OF THEM DO ANY
16    ENGINEERING?
17           PROSPECTIVE JUROR:  NO.
18           THE COURT:  OTHER THAN YOUR DAD?
19           PROSPECTIVE JUROR:  NO, JUST MY DAD.
20           THE COURT:  OKAY.
21        OKAY, MR. CORY.
22        LET'S PASS TO MS. ELLIOTT.  GOOD MORNING.
23           PROSPECTIVE JUROR:  GOOD MORNING.
24           THE COURT:  SO, MS. ELLIOTT, YOU'RE A BOOKKEEPER.
25    YOU SAID IN THE PAST YOU HAVE DONE SALES OR MARKETING.  CAN
```

```
1    YOU EXPLAIN?

2            PROSPECTIVE JUROR:  YEAH, SALES OF VACUUM CLEANERS.

3            THE COURT:  OKAY.

4        DIRECT SALES OR --

5            PROSPECTIVE JUROR:  YES.

6            THE COURT:  -- IN A SHOP?

7            PROSPECTIVE JUROR:  DIRECT.

8            THE COURT:  AND WHEN WERE YOU SUPERVISING 75-PLUS

9    PEOPLE?

10           PROSPECTIVE JUROR:  THAT ENDED ABOUT FOUR YEARS AGO.

11           THE COURT:  WHAT WAS -- WHAT WERE YOU DOING?

12           PROSPECTIVE JUROR:  I WAS A REFEREE ASSIGNER FOR

13   SOCCER.

14           THE COURT:  THAT IS A TOUGH JOB.

15           PROSPECTIVE JUROR:  YEAH.

16           THE COURT:  IF YOU HAVE TO SERVE ON THIS JURY,

17   SOMEONE CAN GET YOUR 13-YEAR-OLD TO SCHOOL?

18           PROSPECTIVE JUROR:  YES.

19           THE COURT:  OKAY.  AND AS A BOOKKEEPER, DO YOU DO

20   THAT INDEPENDENTLY OR FOR A COMPANY?

21           PROSPECTIVE JUROR:  BOTH.

22           THE COURT:  OKAY.  THANK YOU.

23        MS. -- I DON'T WANT TO BUTCHER THAT LAST --

24           PROSPECTIVE JUROR:  IT'S GRACEFFA.

25           THE COURT:  GRACEFFA?
```

1          PROSPECTIVE JUROR:  YES.

2          THE COURT:  GRACEFFA.

3       IN TERMS OF YOUR MANAGERIAL ROLE OR ROLES, IT LOOKS LIKE

4    YOU'VE -- YOU'VE DONE THIS OVER TIME?

5          PROSPECTIVE JUROR:  YES.

6          THE COURT:  YOU'VE HAD NUMEROUS MANAGERIAL ROLES.

7    CAN YOU JUST GIVE US AN OVERVIEW OF THOSE ROLES.

8          PROSPECTIVE JUROR:  SURE.  I ACTUALLY WORK IN THE

9    OUTDOOR RETAIL BUSINESS, LIKE THE NORTH FACE OR REI.  AND I

10   CURRENTLY MANAGE A FLY FISHING STORE.  SO I DO EVERYTHING,

11   OPEN THE STORE, CLOSE THE STORE, HIRE THE EMPLOYEES, SELL THE

12   GEAR.  ALSO GUIDE TRIPS INTO THE BACK COUNTRY.  SO EVERYTHING,

13   BOOKKEEPING ON A MINIMAL SCALE.  YOU NAME IT.

14         THE COURT:  AND CALIFORNIA FLY SHOP, I'M NOT -- I'M

15   NOT FAMILIAR WITH IT.  IS IT A BIG COMPANY?

16         PROSPECTIVE JUROR:  NO, IT'S NOT.

17         THE COURT:  IS IT A BIG COMPANY OR SMALL COMPANY?

18         PROSPECTIVE JUROR:  IT'S A SMALL COMPANY, PRIVATELY

19   OWNED, AND I AM ONE OF A FEW EMPLOYEES THERE.  AND I OPEN AND

20   CLOSE THE STORE EVERY DAY THAT I'M THERE.

21         THE COURT:  OKAY.  CAN SOMEONE ELSE OPEN IT WHILE

22   YOU'RE IN TRIAL?

23         PROSPECTIVE JUROR:  IT DEFINITELY TAKES A TOLL ON THE

24   COMPANY TO HAVE ME GONE --

25         THE COURT:  WELL, I --

1    **PROSPECTIVE JUROR:** -- FOR THIS LONG.

2    **THE COURT:** I UNDERSTAND THAT. I DON'T KNOW THAT

3    I -- THAT I MENTIONED THIS, AND THAT'S WHY I STARTED WITH THE

4    "THANK YOU." I UNDERSTAND THAT THIS IS NOT CONVENIENT FOR

5    ANYBODY. IT'S NOT. PEOPLE HAVE JOBS. PEOPLE HAVE LIVES.

6    WHAT I CAN SAY TO ALL OF YOU IS THAT I'VE BEEN WORKING

7    THESE LAWYERS VERY HARD BEFORE WE EVER GOT TO THIS POINT SO

8    THAT WE DO NOT WASTE YOUR TIME. WE ARE IN SESSION FROM 8:30

9    IN THE MORNING UNTIL 1:30. I DO NOT TALK TO THEM ON THE

10   SIDE -- WE CALL THOSE SIDEBARS -- WE DON'T DO THAT. YOU'RE

11   HERE, YOU'RE GETTING ALL THE FULL COMPLEMENT OF EVIDENCE.

12   WHEN YOU LEAVE, WE WORK SO THAT THE NEXT DAY EVERYTHING WORKS

13   ON TIME. SO THIS PARTICULAR TRAIN IN THIS PARTICULAR

14   COURTROOM WORKS VERY EFFICIENTLY.

15   SO I UNDERSTAND THAT IT'S NOT CONVENIENT. I DO NEED TO

16   KNOW, YOU KNOW, IF IT CAUSES INCREDIBLE HARDSHIPS. SO FOR --

17   I'LL GIVE YOU A FOR-INSTANCE. AND YOU'RE GOING TO HAVE TO LET

18   ME KNOW WHETHER THIS IS JUST A NORMAL HARDSHIP THAT EVERYBODY

19   ELSE AROUND YOU IS GOING TO ENDURE OR IF IT'S SOMETHING MORE

20   THAN THAT.

21   I HAVE HAD TIMES WHEN I'VE HAD PEOPLE WHO, FOR INSTANCE,

22   ARE TAKING CARE OF THEIR ELDERLY PARENTS AND THERE REALLY IS

23   NO ONE ELSE TO TAKE CARE OF THAT ELDERLY PARENT. I HAVE --

24   I'VE LET GO FIRST GRADE TEACHERS, SECOND GRADE TEACHERS

25   BECAUSE THOSE CLASSROOMS ARE GOING TO PLAY VIDEOS IF I HAVE

1    THEM STAY HERE.  SO THERE ARE, I THINK, INSTANCES WHERE --

2    WHERE THE HARDSHIP, THE INCONVENIENCE REALLY OUTWEIGHS HAVING

3    A PERSON HERE.

4        I EXPECT THAT THIS WILL BE TOUGH ON MOST PEOPLE, SO I JUST

5    NEED TO KNOW FROM EACH AND EVERY ONE OF YOU IF THERE'S

6    SOMETHING BEYOND THAT INCONVENIENCE WHICH YOU CAN ALL EXPECT.

7              **PROSPECTIVE JUROR:**  NO.  I GUESS NOT.

8              **THE COURT:**  OKAY.

9        BY THE WAY, I ALSO PUT THE ATTORNEYS ON TIME LIMITS.  SO

10   THEY'RE NOT ALWAYS VERY HAPPY WITH ME, BUT I FIND THE JURORS

11   GENERALLY ARE.  WE'LL TRY TO KEEP IT MOVING.

12       ALL RIGHT, MR. LAKSHMANAN.

13             **PROSPECTIVE JUROR:**  YEAH, LAKSHMANAN.

14             **THE COURT:**  ALL RIGHT.  SAY IT SLOWLY SO I CAN DO IT

15   RIGHT.

16             **PROSPECTIVE JUROR:**  I MEAN, I'M -- YOU CAN USE MY

17   FIRST NAME.  IT'S YEGAPPAN.

18             **THE COURT:**  YEGAPPAN IS EASIER THAN LAKSHMANAN.

19             **PROSPECTIVE JUROR:**  LAKSHMANAN, YEAH.

20             **THE COURT:**  OKAY.  I'LL WORK ON IT.

21       NOW, YOU'RE A SOFTWARE ENGINEER.

22             **PROSPECTIVE JUROR:**  YES, I'M A PRINCIPAL ENGINEER.

23             **THE COURT:**  AND WORKING FOR CISCO.

24             **PROSPECTIVE JUROR:**  YES.

25             **THE COURT:**  YOU WOULD PROBABLY KNOW A LOT ABOUT WHAT

1    THE PARTIES IN THIS CASE ARE GOING TO TALK ABOUT.

2              **PROSPECTIVE JUROR:**  YES, BECAUSE WE DO USE FREESCALE

3    AND OTHER COMPETITIVE PRODUCTS, AND I'M VERY FAMILIAR WITH ALL

4    THE ARCHITECTURE ON ALL OF THAT.

5         **THE COURT:**  I HAVE HERE -- WELL, TELL ME ABOUT YOUR

6    PARTICULAR JOB.  THAT IS, WHAT IS IT THAT YOU DO?  THERE ARE

7    LOTS OF ENGINEERS, LOTS OF DIFFERENT VERSIONS OF ENGINEERS.

8    WHAT DO YOU DO IN PARTICULAR?

9              **PROSPECTIVE JUROR:**  SO I DESIGN PRODUCTS FOR CISCO,

10   THE ROUTERS.  I ALSO EVALUATE ALL THE VARIOUS DEVELOPMENTS

11   THAT ARE HAPPENING IN THE INDUSTRY AND WHAT CISCO NEEDS TO DO

12   NEXT.  AND I ALSO MENTOR OTHER ENGINEERS IN THE GROUP.  AND I

13   ALSO EVALUATE COMPETITIVE PRODUCTS, ATTEND CONFERENCES AND

14   THINGS LIKE THAT.

15        **THE COURT:**  SO YOU KNOW WHAT SOURCE CODE IS?

16             **PROSPECTIVE JUROR:**  YES, I HAVE DONE A LOT OF THEM,

17   YEAH.

18        **THE COURT:**  YOU'VE WRITTEN SOURCE CODE.

19      YOU UNDERSTAND -- LET ME ASK THIS QUESTION BEFORE I GET

20   THERE.  HAVE YOU HAD ANY INVOLVEMENT WITH PATENT DISPUTES?

21             **PROSPECTIVE JUROR:**  NO.

22        **THE COURT:**  HAVE YOU EVER BEEN ASKED TO TESTIFY AS AN

23   EXPERT WITNESS?

24             **PROSPECTIVE JUROR:**  NO.

25             **THE COURT:**  HOW MANY PEOPLE DO YOU MANAGE?

1          **PROSPECTIVE JUROR:**  I DON'T -- I DON'T MANAGE PEOPLE,

2     BUT I MENTOR A LOT OF THE OTHER ENGINEERS IN MY GROUP.

3          **THE COURT:**  HOW LONG HAVE YOU BEEN AN ENGINEER?

4          **PROSPECTIVE JUROR:**  TWENTY YEARS.

5          **THE COURT:**  OKAY.

6     AND HOW MANY ADVANCED DEGREES DO YOU HAVE?

7          **PROSPECTIVE JUROR:**  I'M UNDERGRAD.

8          **THE COURT:**  JUST YOUR UNDERGRADUATE DEGREE?

9          **PROSPECTIVE JUROR:**  YES.

10         **THE COURT:**  SO NO MASTER'S?

11         **PROSPECTIVE JUROR:**  NO MASTER'S.

12         **THE COURT:**  DO YOU UNDERSTAND THAT THE LAW BOTH

13    ALLOWS AND GRANTS PARTIES THE RIGHT TO PATENTS AND ALLOWS

14    PARTIES TO CHALLENGE PATENTS?  YOU UNDERSTAND THAT?

15         **PROSPECTIVE JUROR:**  YES.

16         **THE COURT:**  AND DO YOU UNDERSTAND THAT PATENTS ARE

17    GRANTED IN THE SOFTWARE CONTEXT?

18         **PROSPECTIVE JUROR:**  YES.

19         **THE COURT:**  AND THAT PARTIES ARE ALLOWED TO CHALLENGE

20    THEM?

21         **PROSPECTIVE JUROR:**  YES.

22         **THE COURT:**  NOW, YOU SAID YOU HAVE A STRONG -- SOME

23    STRONG OPINIONS ON THIS.

24         **PROSPECTIVE JUROR:**  YES.

25         **THE COURT:**  ALL RIGHT.  WHY DON'T YOU GO AHEAD AND

```
 1    TELL THE PARTIES WHAT YOUR OPINIONS ARE.

 2              PROSPECTIVE JUROR:  SO I BELIEVE THAT THE SMALL

 3    COMPANIES USE THE PATENTS TO GO AFTER BIG COMPANIES AND GET

 4    MONEY OUT OF THE BIG COMPANIES.  AND THE LARGE COMPANIES AND

 5    CORPORATIONS USE PATENTS TO BASICALLY STOP SMALL COMPANIES

 6    FROM COMPETING.  SO THE PATENTS IN GENERAL ARE MISUSED A LOT.

 7              THE COURT:  OKAY.  THE WAY YOU'VE DESCRIBED IT,

 8    THOUGH, THERE ARE BAD -- CAN BE BAD PLAYERS ON BOTH SIDES.

 9              PROSPECTIVE JUROR:  YES.

10              THE COURT:  ARE YOU FAMILIAR WITH MEDIATEK?

11              PROSPECTIVE JUROR:  NO.

12              THE COURT:  DO YOU HAVE ANY VIEW WHETHER IT'S A SMALL

13    COMPANY OR A BIG COMPANY?

14              PROSPECTIVE JUROR:  I DON'T KNOW ABOUT MEDIATEK.

15              THE COURT:  NOW, JUST BECAUSE THERE CAN BE PLAYERS ON

16    BOTH SIDES THAT ARE MISUSING THE PROCESS, THAT DOESN'T

17    NECESSARILY MEAN THAT EITHER OF THESE PARTIES HERE ARE

18    MISUSING THE PROCESS, DOES IT?

19              PROSPECTIVE JUROR:  YES.  BUT --

20              THE COURT:  WOULD YOU AGREE WITH MY STATEMENT?

21              PROSPECTIVE JUROR:  YES.

22              THE COURT:  OKAY.  LET ME ASK YOU THIS QUESTION:  CAN

23    YOU -- ARE YOU THE KIND OF PERSON -- I MEAN, YOU'RE AN

24    ENGINEER.  ARE YOU THE KIND OF PERSON WHO CAN SIT AND LISTEN

25    TO EVIDENCE BEING PRESENTED BY BOTH SIDES BEFORE DECIDING
```

1   WHETHER OR NOT ONE SIDE IS RIGHT OR THE OTHER SIDE IS RIGHT?

2          **PROSPECTIVE JUROR:**  YES.

3          **THE COURT:**  IS THERE ANYTHING -- DO YOU THINK YOU CAN

4   DO IT IN THIS CASE EVEN THOUGH YOU HAVE THESE STRONG OPINIONS?

5          **PROSPECTIVE JUROR:**  YES.

6          **THE COURT:**  OKAY.  IN THIS CASE, THERE WILL BE

7   EXPERTS.  AND IN PATENT CASES, I ALLOW JURORS TO ASK

8   QUESTIONS; THAT IS, THEY HAVE TO WRITE THEM DOWN, BUT I ALLOW

9   JURORS TO ASK QUESTIONS.

10     JURORS ARE ALLOWED TO USE THEIR EXPERIENCES AND BACKGROUND

11  TO EVALUATE EVIDENCE.  THAT'S WHY WE HAVE JURORS.  MY QUESTION

12  FOR YOU IS A LITTLE BIT DIFFERENT, WHICH IS THAT BECAUSE YOU

13  HAVE AN EXPERTISE IN THE AREA, YOU CAN'T BE -- IF YOU WERE --

14  IF YOU WERE CHOSEN AS A JUROR, YOU CAN'T BE ANOTHER EXPERT IN

15  THE BACK DURING DELIBERATIONS.  YOU CAN ASK QUESTIONS SO THAT

16  EVERYBODY HAS AN OPPORTUNITY OF THE EXPERTS TO HAVE THAT

17  INFORMATION.  BUT THE PARTIES ARE ALLOWED TO KNOW WHAT THE

18  JURORS ARE CONSIDERING.  AND WHEN WE HAVE JURORS WHO HAVE AN

19  EXPERTISE AND THEN ARE SHARING THAT EXPERTISE IN THE JURY ROOM

20  WHERE THE PARTIES NEVER GOT AN ABILITY TO COMMENT, THAT WOULD

21  NOT BE APPROPRIATE.

22     CAN YOU -- IF YOU'RE SITTING AS A JUROR, CAN YOU ASSURE ME

23  THAT YOU WOULD JUST BASE YOUR DECISION BASED UPON WHAT WAS

24  PRESENTED DURING THE TRIAL?

25          **PROSPECTIVE JUROR:**  I WILL TRY.  BUT BECAUSE OF MY

1    EXPOSURE TO ALL THE TECHNOLOGIES FOR SO LONG, I MEAN, FOR

2    20 YEARS OR MORE, IT WILL BE HARD FOR ME TO -- I MEAN, MAKE

3    THE DECISION PURELY BASED ON WHAT IS PRESENTED.

4            **THE COURT:**  OKAY.  I MAY HAVE SOME FOLLOW-UP

5    QUESTIONS FOR YOU.

6            **PROSPECTIVE JUROR:**  OKAY.

7            **THE COURT:**  LET ME -- LET ME TALK TO MR. LAM.

8       ACTUALLY, NO.  I'M GOING TO -- WELL, MR. LAM, YOU --

9            **PROSPECTIVE JUROR:**  YES.

10           **THE COURT:**  -- YOU ARE IN -- STUDIED COMPUTER

11   SCIENCE.

12           **PROSPECTIVE JUROR:**  YES.

13           **THE COURT:**  AND EXPLAIN TO ME WHAT YOU MEAN WHEN YOU

14   SAY YOU'RE A RESEARCH ANALYST.

15           **PROSPECTIVE JUROR:**  WELL, I USED -- I HAVE A MAJOR IN

16   COMPUTER SCIENCE, AND I USED TO OPEN A COMPUTER STORE, AND I

17   CLOSE IT DOWN.  SO I WAS OFFER A JOB AT UCSF AS A RESEARCHER.

18   SO MOSTLY WHAT I DO IS DATABASE MANAGEMENT.  I DO WRITE SOME

19   CODE.  AND I ALSO DO A VARIETY OF, LIKE, DOING FOCUS GROUP AND

20   SOME OF THE SURVEYS.  AND I ALSO DO SUPERVISE SOME OF THE

21   GRADUATE STUDENT WHO WANT TO LEARN MORE ABOUT RESEARCH ON

22   CANCER.

23           **THE COURT:**  OKAY.

24      WHAT KIND OF COMPUTER STORE DID YOU HAVE?

25           **PROSPECTIVE JUROR:**  I HAVE A COMPUTER STORE IN

```
1     OAKLAND.  IT'S A PC.  I USED TO FIX COMPUTER AND SALES

2     COMPUTER.

3             THE COURT:  SO YOU'VE -- HAVE YOU WRITTEN CODE

4     YOURSELF?

5             PROSPECTIVE JUROR:  YES, I DID.

6             THE COURT:  OKAY.

7         HAVE YOU EVER WORKED -- BUT YOU HAVEN'T WORKED FOR A

8     SEMICONDUCTOR COMPANY?

9             PROSPECTIVE JUROR:  NO.

10            THE COURT:  DID YOU HAVE ANY EXPOSURE TO THE -- TO

11    THE DEVELOPMENT OF SEMICONDUCTOR CHIPS WHILE YOU WERE A

12    STUDENT?

13            PROSPECTIVE JUROR:  NO.

14            THE COURT:  WHAT OTHER EXPERIENCE DO YOU HAVE IN

15    SOFTWARE ENGINEERING OR DEVELOPMENT?

16            PROSPECTIVE JUROR:  MOSTLY WRITING DATABASE.

17            THE COURT:  OKAY.

18            PROSPECTIVE JUROR:  AND PROGRAM FOR -- FOR THE

19    ANDROIDS AND IPAD.

20            THE COURT:  SO YOU'VE WRITTEN PROGRAMS FOR THOSE?

21            PROSPECTIVE JUROR:  YES, I DID.

22            THE COURT:  OKAY.

23        YOU ALSO DIDN'T CHECK THE QUESTION ABOUT OWNING -- DO YOU

24    OWN A TABLET?

25            PROSPECTIVE JUROR:  OH, YEAH, I BEEN THINKING ABOUT
```

```
 1    THAT.  I DO OWN A COMPUTER BUT NOT A TABLET COMPUTER.

 2          THE COURT:  OKAY.  HOW ABOUT --

 3          PROSPECTIVE JUROR:  I HAVE AN IPAD.  AND I DO NOT OWN

 4    A CELL PHONE, BUT MY WIFE DID.  SOMETIME I USE IT, BUT I

 5    DIDN'T OWN ONE.

 6          THE COURT:  HOW ABOUT AN E-READER?

 7          PROSPECTIVE JUROR:  NO.

 8          THE COURT:  AND A VEHICLE WITH AN INFOTAINMENT

 9    SYSTEM?

10          PROSPECTIVE JUROR:  ACTUALLY, I HAVE A GPS, A

11    PORTABLE ONE, THAT ACTUALLY IS MY WIFE.  SHE ALWAYS NEED TO

12    USE IT TO GO AROUND.  SO IT'S NOT EVEN MINE.

13          THE COURT:  OKAY.

14       SO YOU'RE THE TECHIE PERSON, BUT SHE'S GOT THE SMART

15    PHONE?

16          PROSPECTIVE JUROR:  YES, THAT'S RIGHT.

17          THE COURT:  ALL RIGHT.

18          PROSPECTIVE JUROR:  SHE WOULDN'T LET ME USE IT

19    BECAUSE IF I USE IT, I WILL NEVER PAY ATTENTION TO HER.

20          THE COURT:  OH, I SEE.

21                     (LAUGHTER.)

22          THE COURT:  WELL, THAT SOUNDS LIKE A VERY SMART WIFE.

23          PROSPECTIVE JUROR:  THANK YOU.

24          THE COURT:  OKAY.  AND THEN ANYTHING ELSE ON RESEARCH

25    AND DEVELOPMENT THAT MIGHT -- THAT YOU THINK THE PARTIES MIGHT
```

```
1    LIKE TO KNOW ABOUT?

2              PROSPECTIVE JUROR:  NO.  MOSTLY I DO RESEARCH ON

3    CANCER SO I THINK IT'S NOT RELATED TO ENGINEERING, ANY OF

4    THAT.

5              THE COURT:  OKAY.  THANK YOU, MR. LAM.

6              PROSPECTIVE JUROR:  THANK YOU.

7              THE COURT:  MS. LEUNG.

8              PROSPECTIVE JUROR:  YES.

9              THE COURT:  GOOD MORNING.

10             PROSPECTIVE JUROR:  GOOD MORNING.

11             THE COURT:  YOU AND YOUR HUSBAND OWNED A BUSINESS; IS

12   THAT RIGHT?

13             PROSPECTIVE JUROR:  IT WAS ME, MYSELF.

14             THE COURT:  OKAY.  TELL ME ABOUT YOUR BUSINESS.

15             PROSPECTIVE JUROR:  I OWN A RESTAURANT.  FOUR YEARS

16   AGO, I SOLD IT ALL.

17             THE COURT:  NOW, WHO OWNS THE LIFE INSURANCE --

18             PROSPECTIVE JUROR:  I DON'T OWN IT.  IT'S LIKE

19   NETWORKING, WHAT I'M DOING RIGHT NOW.  IT'S A PART-TIME.

20             THE COURT:  OKAY.  AND WHAT KIND OF RESTAURANT DID

21   YOU OWN?

22             PROSPECTIVE JUROR:  A CHINESE RESTAURANT.

23             THE COURT:  DID YOU CLOSE IT DOWN?

24             PROSPECTIVE JUROR:  I SOLD IT IN FOUR YEARS AGO.

25   IT'S --
```

```
 1                    THE COURT:  YOU STARTED IT (SIC) FOUR YEARS AGO.  IS

 2     IT STILL RUNNING?

 3                    PROSPECTIVE JUROR:  STILL RUNNING.

 4              THE COURT:  OKAY.  AND HOW MANY PEOPLE -- IS THAT --

 5     WAIT.  IS THIS THE IMPERIAL PALACE?

 6                    PROSPECTIVE JUROR:  YES.

 7              THE COURT:  OKAY.

 8        AND YOU HAVE 40 PEOPLE WORKING FOR YOU?

 9                    PROSPECTIVE JUROR:  YEAH, IN THAT TIME, YES.

10              THE COURT:  NOW, IS THERE SOMEONE WHO'S GOING TO BE

11     ABLE TO OPERATE IT IF YOU'RE SERVING ON THIS JURY?

12                    PROSPECTIVE JUROR:  SINCE I SOLD IT, IT'S OKAY NOW.

13     I'M FREE.

14              THE COURT:  OKAY.  SO YOU DID SELL IT, THEN?

15                    PROSPECTIVE JUROR:  YEAH, FOUR YEARS AGO.

16              THE COURT:  OKAY.  AND NOW YOU'RE JUST DOING THIS

17     PART-TIME NETWORKING BUSINESS.

18                    PROSPECTIVE JUROR:  YES.

19              THE COURT:  SO ARE YOU -- ARE YOU SELLING LIFE

20     INSURANCE?  OR WHAT --

21                    PROSPECTIVE JUROR:  YES, I'M SELLING LIFE INSURANCE.

22              THE COURT:  AND THEN YOU PUT LIFE INSURANCE SLASH

23     HEALTH.  IS THAT --

24                    PROSPECTIVE JUROR:  OH, AND ALSO HEALTH.  YEAH, BOTH

25     LICENSE THE SAME.
```

```
 1                    THE COURT:  HOW MUCH TIME DO YOU SPEND ON YOUR

 2     BUSINESS?

 3                    PROSPECTIVE JUROR:  ALL DEPENDS.  I CAN SPEND DAYS,

 4     HOURS, OR I CAN BE FREE.

 5                    THE COURT:  OKAY.  SO YOU HAVE FLEXIBILITY?

 6                    PROSPECTIVE JUROR:  YES.

 7                    THE COURT:  WHERE WERE YOU BORN, MS. LEUNG?

 8                    PROSPECTIVE JUROR:  HONG KONG.

 9                    THE COURT:  WHEN DID YOU COME TO THE UNITED STATES?

10                    PROSPECTIVE JUROR:  FORTY YEARS AGO.

11                    THE COURT:  OKAY.  SO A WHILE.  A WHILE AGO.

12                    PROSPECTIVE JUROR:  YES.

13                    THE COURT:  WHEN YOU SERVED ON A JURY BEFORE, DO YOU

14     REMEMBER IF IT WAS CRIMINAL OR CIVIL?

15                    PROSPECTIVE JUROR:  CIVIL IN SAN FRAN.

16                    THE COURT:  CIVIL?

17                    PROSPECTIVE JUROR:  YES.

18                    THE COURT:  AND DO YOU REMEMBER WHAT -- WHAT THE

19     TRIAL WAS ABOUT?

20                    PROSPECTIVE JUROR:  IT WAS ABOUT CAR ACCIDENT, THE

21     STUDENT AND THE HOSPITAL.

22                    THE COURT:  AND WHAT DID THE JURY DECIDE?

23                    PROSPECTIVE JUROR:  THE HOSPITAL WIN.

24                    THE COURT:  THE HOSPITAL WON?

25                    PROSPECTIVE JUROR:  YEAH.
```

1          **THE COURT:**  WERE YOU THE FOREPERSON?

2          **PROSPECTIVE JUROR:**  YES.  YES.

3          **THE COURT:**  SO YOU WERE --

4          **PROSPECTIVE JUROR:**  I WAS IN --

5          **THE COURT:**  WHEN YOU WENT INTO THE JURY ROOM TO

6    DECIDE, WERE YOU IN CHARGE OF THE DELIBERATIONS?

7          **PROSPECTIVE JUROR:**  YES.  WE WERE THERE.

8          **THE COURT:**  YOU WERE THERE.

9          **PROSPECTIVE JUROR:**  YES.

10          **THE COURT:**  DO YOU KNOW WHAT I MEAN WHEN I SAY A

11   FOREPERSON?  DID -- DID THEY HAVE YOU CHOOSE ONE PERSON AMONG

12   ALL THE JURORS TO -- TO RUN THE DISCUSSIONS DURING THE

13   DELIBERATIONS?

14          **PROSPECTIVE JUROR:**  I DON'T QUITE UNDERSTAND.  I

15   DON'T GET IT.

16          **THE COURT:**  OKAY.  WHEN YOU WERE IN -- WHEN YOU WERE

17   IN TRIAL, THERE WERE HOW MANY JURORS, 12?

18          **PROSPECTIVE JUROR:**  TWELVE.

19          **THE COURT:**  OKAY.  AND HOW LONG -- DO YOU REMEMBER

20   HOW LONG IT TOOK YOU TO MAKE A DECISION?

21          **PROSPECTIVE JUROR:**  ABOUT SEVEN DAYS?

22          **THE COURT:**  SEVEN DAYS --

23          **PROSPECTIVE JUROR:**  YEAH.

24          **THE COURT:**  -- IN THE TRIAL?

25          **PROSPECTIVE JUROR:**  IN THE TRIAL.

```
 1              THE COURT:  OKAY.  ONCE THE TRIAL WAS FINISHED AND

 2    THE JURY WENT INTO THE BACK ROOM --

 3              PROSPECTIVE JUROR:  RIGHT.

 4              THE COURT:  -- HOW LONG DID THE JURY --

 5              PROSPECTIVE JUROR:  HALF A DAY.

 6              THE COURT:  HALF A DAY?

 7              PROSPECTIVE JUROR:  RIGHT.

 8              THE COURT:  OKAY.

 9         DO YOU REMEMBER THERE BEING -- THE JURY VOTING ON WHO WAS

10    GOING TO TALK IN COURT FOR THEM?

11              PROSPECTIVE JUROR:  I DON'T QUITE REMEMBER.

12              THE COURT:  OKAY.

13         IT WASN'T YOU?  YOU WEREN'T THE ONE TALKING TO THE JUDGE?

14              PROSPECTIVE JUROR:  NO, I'M NOT.  NO.

15              THE COURT:  ALL RIGHT.  LET'S PASS IT OVER HERE TO

16    MR. OW.

17

18                   (PAUSE IN THE PROCEEDINGS.)

19              THE COURT:  GOOD MORNING, SIR.

20              PROSPECTIVE JUROR:  GOOD MORNING.

21              THE COURT:  SO YOU WORK FOR UNITED POSTAL (SIC)

22    SERVICE?

23              PROSPECTIVE JUROR:  YES.

24              THE COURT:  I MUST SAY THAT AS UNITED POSTAL SERVICE

25    WORKERS ARE THE ONLY ONE ONES WHO DON'T COMPLAIN ABOUT JURY
```

```
1    SERVICE.
2              PROSPECTIVE JUROR:  THIS IS MY FIRST TIME.
3           THE COURT:  IT'S YOUR FIRST TIME?
4           PROSPECTIVE JUROR:  YEAH.
5           THE COURT:  SO IT'S YOUR FIRST TIME NOT TO COMPLAIN.
6                          (LAUGHTER.)
7           THE COURT:  OKAY.  WHEN DID YOU -- IS ENGLISH YOUR
8    FIRST LANGUAGE, MR. OW?
9           PROSPECTIVE JUROR:  NO.
10          THE COURT:  FIRST, YOU NEED TO PUT THE MIC UP SO THE
11   PARTIES CAN HEAR YOU.  I'M HAVING A HARD TIME HEARING YOU.
12          PROSPECTIVE JUROR:  OH.  OH, NO.
13          THE COURT:  YOU WERE BORN IN MALAYSIA.  WHEN DID YOU
14   COME TO THE UNITED STATES?
15          PROSPECTIVE JUROR:  TWENTY-SEVEN YEARS AGO.
16          THE COURT:  SO YOU -- YOU STARTED WORKING FOR UPS
17   ALMOST -- WELL, NOT TOO LONG AFTER YOU CAME?
18          PROSPECTIVE JUROR:  YES.
19          THE COURT:  OKAY.
20       AND WHAT IS YOUR FIRST LANGUAGE?
21          PROSPECTIVE JUROR:  CANTONESE.
22          THE COURT:  CANTONESE?
23          PROSPECTIVE JUROR:  CORRECT.
24          THE COURT:  WHAT DO YOU LIKE BEST ABOUT YOUR JOB?
25          PROSPECTIVE JUROR:  SO FAR IT'S OKAY.  I LIKE IT.
```

```
 1                 THE COURT:  HAVE YOU BEEN ABLE TO UNDERSTAND MOST OF
 2    WHAT I HAVE BEEN TALKING ABOUT?
 3                 PROSPECTIVE JUROR:  EIGHTY PERCENT.
 4                 THE COURT:  DO YOU DO OTHER THINGS IN -- I MEAN,
 5    OBVIOUSLY YOU WORK FOR THE POSTAL SERVICE SO YOU'RE USING
 6    ENGLISH THERE, CORRECT?
 7                 PROSPECTIVE JUROR:  YES.  BUT MY CUSTOMER IN MY ROUTE
 8    NOW IS ALL RESTAURANT, THEY ARE CHINESE RESTAURANT, BUT MOST
 9    OF THEM I TALK TO THEM WITH CANTONESE.
10                 THE COURT:  OKAY.  DO YOU DO OTHER THINGS JUST IN
11    YOUR DAILY LIFE WHERE YOU'RE USING ENGLISH?
12                 PROSPECTIVE JUROR:  YES.
13                 THE COURT:  WHAT ELSE?
14                 PROSPECTIVE JUROR:  WHEN I'M WORKING.
15                 THE COURT:  YOU DO?
16                 PROSPECTIVE JUROR:  AND AT HOME, I ACTUALLY TALK
17    CANTONESE WITH MY WIFE AND CHILDREN.
18                 THE COURT:  AND YOUR CHILDREN ARE BILINGUAL?
19                 PROSPECTIVE JUROR:  YES.
20                 THE COURT:  AND YOUR WIFE IS -- DOES YOUR WIFE STAY
21    AT HOME OR SHE DOES HOUSEKEEPING --
22                 PROSPECTIVE JUROR:  YEAH, SHE DOES HOUSEKEEPING IN
23    THE HOTEL.
24                 THE COURT:  OKAY.  WHAT DO YOUR CHILDREN DO?
25                 PROSPECTIVE JUROR:  BOTH ARE STUDENT.
```

```
1            THE COURT:  AND WHAT DO THEY LIKE TO DO?

2            PROSPECTIVE JUROR:  THEY LIKE TO WORK, STUDY.

3            THE COURT:  THEY DO?

4            PROSPECTIVE JUROR:  YEAH.

5            THE COURT:  AT 15 AND 18, THEY LIKE TO STUDY?

6            PROSPECTIVE JUROR:  YEAH, 18 AND 16.  ONE IS IN UC

7     SAN DIEGO AND --

8            THE COURT:  OKAY.

9            PROSPECTIVE JUROR:  -- THEN ONE STILL IN HIGH SCHOOL.

10           THE COURT:  SO YOU DO HAVE A SMART PHONE.  THAT'S

11    RIGHT?

12           PROSPECTIVE JUROR:  YES.

13           THE COURT:  HAVE YOU EVER HAD TO MANAGE PEOPLE?

14           PROSPECTIVE JUROR:  NO.

15           THE COURT:  OKAY, MR. OW.  LET'S PASS IT.

16       THANK YOU.

17       PENATE, IS THAT HOW YOU SAY IT?

18           PROSPECTIVE JUROR:  PENATE, YOUR HONOR.

19           THE COURT:  PENATE, LIKE PINATA?  NO.  PENATE.

20           PROSPECTIVE JUROR:  THERE'S A LITTLE ENYE OVER THE

21    "N."

22           THE COURT:  SO THERE IS AN ENYE.  PEÑATE.

23           PROSPECTIVE JUROR:  YES, MA'AM.

24           THE COURT:  BUT YOU DIDN'T PUT IT ON YOUR FORM,

25    PEÑATE WITH AN ENYE.
```

 1              **PROSPECTIVE JUROR:**  I THOUGHT I DID.

 2          **THE COURT:**  YOU DIDN'T.  I WOULD HAVE SAID IT RIGHT.

 3  BUT YOU DIDN'T.  AH, YOU DID IT ON ONE, NOT THE OTHER.  THAT'S

 4  THE PROBLEM.  OKAY.

 5      WHAT DOES DSA STAND FOR?

 6          **PROSPECTIVE JUROR:**  DIVISIONAL SECURITY

 7  ADMINISTRATOR.

 8              **THE COURT:**  DIVISIONAL...?

 9          **PROSPECTIVE JUROR:**  SECURITY ADMINISTRATOR.  FANCY

10  TECH TALK.

11          **THE COURT:**  AND THAT'S FANCY TECH TALK FOR -- FOR --

12  WHAT IS -- WHAT DO YOU DO IN THAT POSITION?

13          **PROSPECTIVE JUROR:**  I -- I WORK ON STUFF WITH

14  COMPUTERS, AT THE DIRECTORY, I CREATE LOTUS NOTES I.D.,

15  MAINFRAME, PROVISION I.D.'S.

16          **THE COURT:**  NOW, THAT COMPANY THEN -- DO YOU DO -- DO

17  YOU DO WORK FOR THAT COMPANY THAT THEN PROVIDES THAT

18  INFORMATION FOR OTHERS?

19          **PROSPECTIVE JUROR:**  YES, MA'AM.

20          **THE COURT:**  IS IT ALL CONTRACT WORK?

21          **PROSPECTIVE JUROR:**  NO, IT'S ALL WITHIN MACYS.COM.

22  IT'S ALL -- I DO IT FOR ALL THE EMPLOYEES OF THAT BUSINESS

23  LINE.

24          **THE COURT:**  OKAY.

25      AND THAT'S A RELATIVELY NEW JOB.  YOU DID TECH SUPPORT

```
1    BEFORE THAT.
2              PROSPECTIVE JUROR:  YES, I DID, FOR WELLS FARGO.
3              THE COURT:  WHAT KIND OF BUSINESS DOES YOUR WIFE OWN?
4              PROSPECTIVE JUROR:  A COFFEE SHOP.
5              THE COURT:  OKAY.  SO IF YOU WERE ON THE JURY, THEY
6    COULD ALL PITCH IN AND YOU COULD BRING COFFEE IN EVERY
7    MORNING?
8              PROSPECTIVE JUROR:  YES, MA'AM.  AND PASTRIES AND
9    SANDWICHES IF YOU LIKE.
10             THE COURT:  WELL, WE ACTUALLY DO PROVIDE COFFEE.  SO
11   THAT WE DO PROVIDE.
12        YOU DON'T HAVE ANY CHILDREN?
13             PROSPECTIVE JUROR:  UNFORTUNATELY.
14             THE COURT:  OKAY.  HOW LONG WERE YOU WITH THE
15   MARINES?
16             PROSPECTIVE JUROR:  I WAS IN THE MARINE CORPS FROM
17   1992 TO 1998.
18             THE COURT:  NOW, YOU WERE ON A JURY ONCE.  DO YOU
19   REMEMBER WHAT --
20             PROSPECTIVE JUROR:  IT WAS A CIVIL CASE.
21             THE COURT:  RIGHT.  DO YOU REMEMBER WHAT THE CIVIL
22   CASE WAS ABOUT?
23             PROSPECTIVE JUROR:  IT WAS AN UNLAWFUL TERMINATION, I
24   THINK IT WAS.
25             THE COURT:  AND HOW DID THE JURY DECIDE?
```

```
 1                PROSPECTIVE JUROR:  FOUND FOR THE COMPANY.

 2           THE COURT:  WERE YOU THE FOREPERSON?

 3           PROSPECTIVE JUROR:  NO.

 4           THE COURT:  HOW LONG DID THAT CASE LAST?

 5           PROSPECTIVE JUROR:  ABOUT THREE WEEKS, I THINK, TWO

 6    TO THREE WEEKS.

 7           THE COURT:  AND WHERE WAS THAT?

 8           PROSPECTIVE JUROR:  IN SAN FRANCISCO.

 9           THE COURT:  OKAY.  LET'S SEE.  WHEN DID YOU SUPERVISE

10    25 PEOPLE?

11           PROSPECTIVE JUROR:  THAT WAS WHEN I WAS WITH WELLS

12    FARGO.  I SUPERVISED THE HELP DESK.

13           THE COURT:  AND WHEN YOU WERE IN THE MILITARY, DID

14    YOU HAVE ANY TECHNICAL TRAINING?

15           PROSPECTIVE JUROR:  NO, MA'AM.  IT WAS JUST A BULLET

16    CATCHER.

17           THE COURT:  A BULLET CATCHER?  SHOULD I ASK?  I WILL.

18    I'M CURIOUS.  WHAT IS THAT?

19           PROSPECTIVE JUROR:  I MEAN, THAT'S WHAT -- I WAS IN

20    THE INFANTRY, SO I DIDN'T --

21           THE COURT:  AND THAT'S WHAT THEY CALL IT?

22           PROSPECTIVE JUROR:  THAT'S WHAT I CALLED IT.  I

23    MEAN --

24                          (LAUGHTER.)

25           THE COURT:  OKAY.  WELL, I'LL REMEMBER THAT.  THAT'S
```

1   WHY I LIKE JURY SELECTION.  YOU KNOW, I GET TO LEARN ALL THESE

2   NEW TERMS AND WAYS PEOPLE THINK ABOUT THEIR LIVES.

3        THANK YOU, SIR.

4        MR. SILVA, GOOD MORNING.

5             **PROSPECTIVE JUROR:**  GOOD MORNING.

6        HOW ABOUT YOUR JURY SERVICE, DO YOU REMEMBER THE CRIMINAL

7   CASE?

8             **PROSPECTIVE JUROR:**  YEAH, I WAS ON TWO JURIES.  THE

9   FIRST ONE I WAS 19 YEARS OLD.  IT WAS A CIVIL CASE.  AND IT

10  WAS A SITUATION WHERE A.C. TRANSIT WAS BEING SUED FOR A

11  WRONGFUL DEATH.  AND WE FOUND A.C. TRANSIT INNOCENT OF THAT.

12            **THE COURT:**  OKAY.

13            **PROSPECTIVE JUROR:**  THE SECOND ONE WAS TWO YEARS AGO.

14  I ACTUALLY SAT ON THE JURY, AND WE CAME IN FOR THE FIRST DAY

15  OF COURT AND THE DEFENDANT HAD PLED, SO WE ACTUALLY DIDN'T GO

16  ANY FURTHER THAN THAT.

17            **THE COURT:**  WELL, SOMETIMES THE -- THE MERE

18  IMPANELING OF A JURY RESOLVES ISSUES.  SO, FOR SOME REASON,

19  JURORS THEN GET UPSET THAT THEY'VE BEEN -- I THOUGHT, "WHY ARE

20  YOU UPSET?  YOU'RE ONLY HERE ONE DAY INSTEAD OF SEVEN."  SO --

21  AND IT'S FOR -- FOR SOME PEOPLE, IT JUST BECOMES REAL.  ONCE

22  YOU HAVE THE JURY THERE, THEN THEY THINK, "OH, NO, THIS IS

23  REALLY GOING TO HAPPEN."  SO I'M SURE THE JUDGE APPRECIATED

24  YOUR SERVICE.

25       I ALWAYS USED TO GO DOWN IN MY ROBE WHEN I WAS A STATE

```
1    COURT JUDGE AND SAY, "I HAVE GOOD NEWS AND BAD NEWS."  THEY

2    ALWAYS LIKED THAT.  THEN THEY WERE A BIT HAPPIER.

3       OKAY.  SO ANY CONCERNS YOU HAVE ABOUT THIS CASE GIVEN --

4            PROSPECTIVE JUROR:  NO.

5            THE COURT:  YOU HAVE A MASTER'S IN SOCIAL WORK.

6    THROUGHOUT YOUR STUDIES, DID YOU EVER TAKE ANY COMPUTER

7    CLASSES, ANYTHING LIKE THAT?

8            PROSPECTIVE JUROR:  YEAH.  I THINK WHEN I WAS AN

9    UNDERGRADUATE AT SAN JOSE STATE, I TOOK CLASSES IN FORTRAN.

10   AND WE CERTAINLY ARE TECH SAVVY TODAY AS FAR AS COMPUTER USE

11   AND WHATNOT.

12           THE COURT:  DO YOU USE -- DO YOU PROGRAM OR USE ANY

13   PARTICULAR PROGRAMS IN YOUR -- IN YOUR WORK NOW?

14           PROSPECTIVE JUROR:  ABSOLUTELY.  I'M WITH THE

15   VETERANS ADMINISTRATION, SO WE HAVE ELECTRONIC PATIENT

16   RECORDS.  OBVIOUSLY WE USE MICROSOFT PRODUCTS.  WE USE LYNC,

17   WHICH IS AN INSTANT MESSAGE PROGRAM WE USE TO COMMUNICATE

18   DURING THE DAY.

19           THE COURT:  OKAY.

20           PROSPECTIVE JUROR:  YOU KNOW, WE FALL APART IF THE

21   COMPUTER SYSTEM GOES DOWN.

22           THE COURT:  OKAY.  THANK YOU, MR. SILVA.

23      ANOTHER DIFFICULT LAST NAME.  OKAY.  SOBCZYNSKI.

24           PROSPECTIVE JUROR:  EXACTLY.

25           THE COURT:  WOW.  MY ROOMMATE WAS CZERNYKOWSKI.
```

```
 1              PROSPECTIVE JUROR:  OH.

 2              THE COURT:  SO.

 3              PROSPECTIVE JUROR:  I ALSO FORGOT TO PUT THE LITTLE

 4    N (SIC) OVER THE N SO --

 5              THE COURT:  WELL, I'LL PUT IT RIGHT NOW.  NOW I KNOW.

 6              PROSPECTIVE JUROR:  ALL RIGHT.

 7              THE COURT:  SO COLLEGE OF ELECTRONICS AND NUCLEO --

 8              PROSPECTIVE JUROR:  YES.

 9              THE COURT:  NUCLEAR -- I CAN'T -- THE LETTERS ARE TOO

10    SMALL.

11              PROSPECTIVE JUROR:  -ONICS -- NUCLEONICS AND

12    ELECTRONICS.

13              THE COURT:  AND WHAT ARE NUCLEONICS?

14              PROSPECTIVE JUROR:  IT'S THE STUDY OF ALL THOSE

15    BEAUTIFUL REACTIONS THAT ARE HAPPENING IN PHYSICS.  BUILDING

16    THE NUCLEAR REACTORS AND ISOTOPES AND CONTAINERS AND HOW TO

17    DEAL WITH THEM, HOW TO DISPOSE OF THEM.

18              THE COURT:  SO YOU LOVE ELECTRONICS AND PHYSICS?

19              PROSPECTIVE JUROR:  NOT THAT MUCH THESE DAYS.  THAT

20    WAS IN MY YOUTH.

21              THE COURT:  IN YOUR YOUTH.  DO YOU DABBLE IN IT NOW

22    JUST FOR FUN?

23              PROSPECTIVE JUROR:  NO.

24              THE COURT:  HAD YOU EVER -- HAVE YOU EVER WORKED AT A

25    NUCLEAR REACTOR?
```

1          **PROSPECTIVE JUROR:**  I DID WHEN I WAS STUDYING, I DID

2    THAT.

3          **THE COURT:**  SO I CAN'T, AGAIN, QUITE TELL.  WHO DID

4    YOU WORK FOR BEFORE YOUR MOST RECENT INJURY?

5          **PROSPECTIVE JUROR:**  I DID WORK FOR THE -- I WORKED IN

6    THE CAR BUSINESS FOR ABOUT 20 YEARS.  I WAS SELLING -- SELLING

7    CARS IN THE VARIOUS POSITIONS AS A SALES PERSON, MANAGER.  AND

8    IN 1996, I HAVE OPENED MY OWN COMPANY, AND I WAS EXPORTING

9    ALSO PATENTED CHEMICALS FROM UNITED STATES TO EU.

10          **THE COURT:**  NOW, YOU WERE -- PATENTING THE -- OR YOU

11    WERE EXPORTING THE PATENTED CHEMICALS.  DID YOU HAVE ANY

12    INVOLVEMENT IN THE PATENTING PROCESS YOURSELF?

13          **PROSPECTIVE JUROR:**  NO.

14          **THE COURT:**  BUT DID YOU -- USUALLY PEOPLE TELL ME

15    THEY IMPORTED CHEMICALS.  YOU SAID THEY WERE IMPORTING

16    PATENTED CHEMICALS.

17          **PROSPECTIVE JUROR:**  I WAS EXPORTING.

18          **THE COURT:**  EXPORTING.  SO IS THERE SOME REASON YOU

19    USED THE WORD "PATENTED"?  WAS IT -- WAS IT IMPORTANT TO THE

20    BUSINESS THAT THEY BE PATENTED?

21          **PROSPECTIVE JUROR:**  IT WAS IMPORTANT TO THE BUSINESS,

22    BUT ALSO YOU MENTIONED IT ABOUT PATENTS AND --

23          **THE COURT:**  OKAY.

24          **PROSPECTIVE JUROR:**  -- THIS WHOLE THING IS ABOUT

25    PATENTS SO --

1          **THE COURT:**  OKAY.

2          **PROSPECTIVE JUROR:**  JUST WANT TO MAKE --

3          **THE COURT:**  MAKE CLEAR THAT THAT'S WHAT YOU'RE --

4          **PROSPECTIVE JUROR:**  -- POINT THAT THAT'S WHAT IT WAS.

5          **THE CLERK:**  YOU NEED TO MOVE THE MIC, NOT SIDEWAYS,

6     IT'S RIGHT AT THAT DIRECTION.

7          **PROSPECTIVE JUROR:**  OKAY.

8          **THE CLERK:**  THANK YOU.

9          **PROSPECTIVE JUROR:**  THANK YOU.

10          **THE COURT:**  NOW, IN RESPONSE TO THE QUESTION ONCE THE

11     UNITED STATES PATENT AND TRADEMARK OFFICE GRANTS A PATENT, THE

12     DECISION SHOULD NEVER BE CHALLENGED IN COURT, YOU SAID YOU

13     AGREED WITH THAT.

14          **PROSPECTIVE JUROR:**  YES.

15          **THE COURT:**  IS THERE A PARTICULAR -- WELL, LET ME SAY

16     THIS:  DO YOU -- DID YOU KNOW THAT PARTIES CAN CHALLENGE

17     PATENTS IN COURT?  THAT THE LAW ALLOWS THEM TO DO THAT?

18          **PROSPECTIVE JUROR:**  YES.  NOW WHEN YOU TOLD ME THAT

19     15 MINUTES AGO.

20          **THE COURT:**  OKAY.  DO YOU HAVE A STRONG OPINION THAT

21     THEY SHOULDN'T BE CHALLENGED?

22          **PROSPECTIVE JUROR:**  YES.  I THINK THAT WHOEVER COME

23     UP WITH IT SHOULD OWN AND IT SHOULD PROFIT FROM IT.

24          **THE COURT:**  OKAY.  AS YOU HEARD ME MENTION, THE

25     DEFENDANTS IN THIS CASE ARE CLAIMING THAT THE INVENTIONS THAT

1    THE PLAINTIFFS SAY WERE THEIRS, THEY'RE INVALID BECAUSE, IN

2    THEIR VIEW, THEY ALREADY EXISTED.

3       DO YOU THINK YOU CAN HAVE AN OPEN MIND AND LISTEN TO THE

4    DEFENDANTS' EVIDENCE IN THAT REGARD?

5            PROSPECTIVE JUROR:  YES.

6            THE COURT:  OKAY.  DO YOU HAVE ANY CONCERNS ABOUT

7    THAT POSITION THAT I SHOULD KNOW ABOUT?

8            PROSPECTIVE JUROR:  WHAT DO YOU MEAN BY "POSITION"?

9            THE COURT:  THEIR CLAIM THAT THEY WANT TO CHALLENGE

10   THIS PATENT.

11           PROSPECTIVE JUROR:  NO.  I MEAN, I CAN BE

12   OPEN-MINDED.

13           THE COURT:  HAVE YOU SPENT ANY TIME -- WELL, IT SAYS

14   HERE YOU HAVE A BACKGROUND IN AUTOMOTIVE INFOTAINMENT

15   TECHNOLOGY, MANUFACTURING, AND SALES.  YOU MENTIONED THE SALES

16   PART.  DO YOU HAVE ANY BACKGROUND OR TRAINING IN THE

17   TECHNOLOGY PART?

18           PROSPECTIVE JUROR:  NO.

19           THE COURT:  NO?

20      HOW ABOUT THE MANUFACTURING PART?

21           PROSPECTIVE JUROR:  HMM, NOTHING TO DO WITH THE

22   ISSUES THAT HAVE BEEN LOOKED AFTER HERE.  THE MANUFACTURING,

23   THE CHEMICALS THAT I WAS EXPORTING FROM STATES TO EU, THEY

24   WERE USED FOR THE ROAD BUILDING AND ROAD CONSTRUCTION, SO IT

25   WAS COMPLETELY DIFFERENT.

```
 1              THE COURT:  OKAY.
 2         HAVE YOU EVER WRITTEN COMPUTER CODE YOURSELF?
 3              PROSPECTIVE JUROR:  ABOUT 40 YEARS AGO WHEN THEY
 4    STARTED TO COME AGAIN TO LIFE.
 5              THE COURT:  OKAY.
 6         AND THAT WAS IN SCHOOL OR PROFESSIONALLY?
 7              PROSPECTIVE JUROR:  NO.  THAT WAS STILL -- WELL, BOTH
 8    BECAUSE I WAS GOING TO SCHOOL AND -- AND WORKING AT THE SAME
 9    TIME.
10              THE COURT:  YOUR 90-YEAR-OLD MOTHER THAT YOU LIVE
11    WITH --
12              PROSPECTIVE JUROR:  YEAH, MY MOTHER IS WITH ME, AND I
13    TAKE CARE OF HER.  SHE'S -- AS A MATTER OF FACT, IN THE NEXT
14    FEW DAYS, SHE WILL BE 91, SO --
15              THE COURT:  AND IS THERE SOMEONE -- IS SHE GOING TO
16    BE ALL RIGHT WHILE YOU'RE HERE IN COURT?
17              PROSPECTIVE JUROR:  NOT REALLY.  I'M THE ONLY ONE WHO
18    IS TAKING CARE OF HER.
19              THE COURT:  SO HOW IS IT THAT YOU -- TELL ME ABOUT
20    YOUR -- THE BALANCE THAT YOU HAVE RIGHT NOW BETWEEN YOUR
21    ACTIVITIES AND YOUR MOM.
22              PROSPECTIVE JUROR:  MY ACTIVITIES ARE PRETTY MUCH
23    AROUND THE HOUSE AND WITH A CLOSE PROXIMITY.  MY BUSINESS OF
24    EXPORTING STUFF TO EUROPE HAS CEASED TO EXIST IN 2012 BECAUSE
25    OF THE ECONOMICAL SITUATION IN EUROPE.  SO IT WAS JUST NOT
```

1    PROFITABLE SO I CLOSED DOWN THE BUSINESS.

2        AND MY MOTHER CAME TO STAY WITH ME ABOUT NOVEMBER OF LAST

3    YEAR, SO ABOUT TEN MONTHS AGO.  WE -- I BROUGHT HER IN FROM

4    POLAND SINCE IT WAS EASIER TO TAKE CARE OF HER HERE THAN

5    FLYING BACK AND FORTH.

6            **THE COURT:**  AND YOU HAVE A 29-YEAR OLD CHILD.

7            **PROSPECTIVE JUROR:**  YES.

8            **THE COURT:**  AND DOES THAT PERSON LIVE WITH YOU?

9            **PROSPECTIVE JUROR:**  NO.

10           **THE COURT:**  OKAY.  AND WHO IS TAKING CARE OF HER

11   RIGHT NOW?

12           **PROSPECTIVE JUROR:**  OF MY MOTHER?

13           **THE COURT:**  YES.

14           **PROSPECTIVE JUROR:**  OH, SHE -- NOBODY.  I JUST

15   PREPARE WHATEVER I HAD TO PREPARE FOR THE DAY TODAY FOR HER,

16   AND SOMEHOW SHE HAS TO MANAGE.

17           **THE COURT:**  OKAY.  AND YOU THINK SHE'LL BE OKAY

18   TODAY?

19           **PROSPECTIVE JUROR:**  I SURE HOPE SO.

20           **THE COURT:**  OKAY.  LET'S PASS IT ON TO MS. SOPAPAN.

21           **PROSPECTIVE JUROR:**  SOPAPAN.

22           **THE COURT:**  SOPAPAN.

23           **PROSPECTIVE JUROR:**  YES.

24           **THE COURT:**  YOU SAY THAT YOU RETIRED BUT FROM WHAT?

25           **PROSPECTIVE JUROR:**  RETIRED?  YES.  I HAVE BEEN

```
 1    RETIRED FOR TEN -- TEN-PLUS YEARS FROM MY LAST JOB I WORKED AT

 2    STANFORD AS SUPPLY CLERK.  AND THEN I WENT BACK TO THAILAND,

 3    STAYED THERE FOR A LONG TIME UNTIL MY DAUGHTER HAVE GRANDKIDS.

 4    THEY ASK ME TO COME BACK HERE AND STAY WITH THEM AND TAKE CARE

 5    OF THE GRANDKIDS.

 6          THE COURT:  OKAY.  SO WHEN DID YOU COME BACK TO TAKE

 7    CARE OF YOUR GRANDKIDS?

 8          PROSPECTIVE JUROR:  2001.  I BEEN HERE QUITE A WHILE

 9    NOW, TEN YEARS OVER, AND I GO BACK AND FORTH DURING SUMMER.

10          THE COURT:  OKAY.

11          PROSPECTIVE JUROR:  YES.

12          THE COURT:  HOW OLD ARE YOUR GRANDKIDS?

13          PROSPECTIVE JUROR:  THEY ARE 11, 8, AND 6.  THEY'RE

14    IN SCHOOL TODAY.

15          THE COURT:  AND YOU'RE WORKING THEN -- I MEAN, YOU'RE

16    LIVING WITH YOUR DAUGHTER?

17          PROSPECTIVE JUROR:  YES, I LIVE WITH MY DAUGHTER AND

18    MY SON-IN-LAW.

19          THE COURT:  OKAY.  AND THEY ARE BOTH WORKING?

20          PROSPECTIVE JUROR:  YES.

21          THE COURT:  WHAT IS PITSATA?

22          PROSPECTIVE JUROR:  PITSATA, YES.  MY DAUGHTER, YES.

23          THE COURT:  OKAY.  BUT WHAT IS IT THAT SHE DOES?

24          PROSPECTIVE JUROR:  OH, SHE'S PRODUCT MANAGERS,

25    SOMETHING LIKE THAT, AT INTERMUNE.  IT'S LIKE --
```

```
 1              THE COURT:  OH, INTERMUNE?

 2              PROSPECTIVE JUROR:  YES, INTERMUNE.

 3              THE COURT:  I SEE.  OKAY.

 4          AND HER HUSBAND?

 5              PROSPECTIVE JUROR:  HER HUSBAND IS RESEARCH WRITERS.

 6      I FORGOT THE NAME OF HIS COMPANY, BUT IT USED TO BE SRI.  ISS,

 7      YES.

 8              THE COURT:  NOW, DID YOU LEAVE YOUR HUSBAND IN

 9      THAILAND, OR IS HE HERE, TOO?

10              PROSPECTIVE JUROR:  HE'S -- HE'S OKAY.  HE LIKES ME

11      TO BE IN AMERICA.

12                          (LAUGHTER.)

13              PROSPECTIVE JUROR:  I LIKE IT HERE.

14              THE COURT:  OKAY.

15          AND DID YOU TALK TO YOUR DAUGHTER SO WILL SHE BE ABLE

16      TO --

17              PROSPECTIVE JUROR:  YEAH, THEY DON'T HAVE --

18              THE COURT:  -- MAKE SURE THE KIDS CAN GET TO SCHOOL

19      WHILE YOU'RE HERE?

20              PROSPECTIVE JUROR:  YEAH, THEY HAVE TO FIND THE

21      ARRANGEMENT.  I DON'T KNOW HOW, BUT, YES.

22              THE COURT:  BUT IT'S JUST GETTING THEM TO SCHOOL

23      BECAUSE YOU'RE DONE BY 1:30 --

24              PROSPECTIVE JUROR:  YEAH.

25              THE COURT:  -- IF YOU'RE SITTING ON THE JURY.  SO
```

1    SCHOOL USUALLY LET'S OUT ABOUT 3:00 OR SO.

2            **PROSPECTIVE JUROR:**  3:00, YES.

3            **THE COURT:**  NOW, YOU HAVE CONCERNS BECAUSE YOU HAVE,

4    YOU SAID, A LIMITATION ON BUSINESS UNDERSTANDING?

5            **PROSPECTIVE JUROR:**  UH-HUH, YES.

6            **THE COURT:**  THAT'S OKAY.  MANY PEOPLE DO.

7            **PROSPECTIVE JUROR:**  YEAH, LIKE -- LIKE THIS MORNING

8    ALREADY WHEN YOU SAY SOMETHING PRE, SOMETHING I DON'T KNOW IS

9    THAT THE NAME OF THE COMPANY?  AND INFRINGEMENT.  YOU KNOW, IF

10   I HAVE A DICTIONARY WITH ME, I WILL BE OKAY.

11           **THE COURT:**  WELL, GUESS WHAT?  WE BASICALLY --

12           **PROSPECTIVE JUROR:**  ARE YOU ALLOWED?

13           **THE COURT:**  NO, I WON'T LET YOU HAVE YOUR OWN

14   DICTIONARY.

15           **PROSPECTIVE JUROR:**  OH.

16           **THE COURT:**  BUT THE JURORS WILL GET NOTEBOOKS, AND

17   THEY'LL HAVE --

18           **PROSPECTIVE JUROR:**  OKAY.

19           **THE COURT:**  -- YOU KNOW, TERMS THAT ARE -- THAT HAVE

20   MEANINGS TO THEM.  AND EVERYTHING WILL BE EXPLAINED TO YOU

21   THAT YOU NEED TO KNOW.

22           **PROSPECTIVE JUROR:**  OKAY.  BECAUSE I WANT TO BE FAIR.

23   AND IF I DON'T UNDERSTAND, NOT GOOD.

24           **THE COURT:**  THAT'S EXACTLY RIGHT.  AND WE APPRECIATE

25   YOU WANTING TO BE FAIR AND -- AND -- TO HAVE EVERYTHING YOU

1     NEED TO MAKE A GOOD DECISION.

2              **PROSPECTIVE JUROR:**  OKAY.

3          **THE COURT:**  OKAY.  THANK YOU.

4              **PROSPECTIVE JUROR:**  THANK YOU.

5          **THE COURT:**  MS. SPONBURG.

6              **PROSPECTIVE JUROR:**  YES.

7          **THE COURT:**  GOOD MORNING.

8              **PROSPECTIVE JUROR:**  MORNING.

9          **THE COURT:**  BELIEVE IT OR NOT, IT'S STILL MORNING.

10        HOW'S MY COURT REPORTER DOING?

11        OKAY.

12        SO YOU'RE LIVING WITH YOUR PARENTS?

13             **PROSPECTIVE JUROR:**  YEAH.

14         **THE COURT:**  OKAY.  AND THEY'RE UNEMPLOYED, BUT YOU

15    ARE.

16             **PROSPECTIVE JUROR:**  YES.

17         **THE COURT:**  OKAY.  SO ARE YOU THE SOLE PERSON WHO'S

18    PAYING FOR LIVING EXPENSES IN YOUR FAMILY?

19             **PROSPECTIVE JUROR:**  PARTIALLY.  MY DAD HAS

20    UNEMPLOYMENT STILL.

21         **THE COURT:**  OKAY.

22             **PROSPECTIVE JUROR:**  AND THEN MY MOM IS WORKING AS A

23    CARE PROVIDER, AND SHE GETS PAID UNDER THE TABLE NOW.  SHE'S

24    NOT WORKING FOR THE GOVERNMENT ANYMORE.

25         **THE COURT:**  OKAY.

1      NOW, YOU'VE ONLY BEEN WITH THIS BUSINESS FOR TWO MONTHS;

2   IS THAT RIGHT?

3          **PROSPECTIVE JUROR:** YES.

4          **THE COURT:** DO THEY KNOW YOU'RE HERE AT JURY DUTY?

5          **PROSPECTIVE JUROR:** YES.

6          **THE COURT:** AND HOW DID THEY RESPOND?

7          **PROSPECTIVE JUROR:** THEY SAID IT WAS FINE.  I'M

8   SUPPOSED TO START TODAY AT 12:00, 12:00 TO 8:30.

9          **THE COURT:** SO DO YOU HAVE THE KIND -- SO YOU -- THEY

10  CAN ADJUST YOUR TIME PERHAPS IF YOU'RE ON -- ON JURY DUTY?

11         **PROSPECTIVE JUROR:** NO.  THEY HAVE TO GET SOMEONE TO

12  COVER.  I DON'T THINK THEY GOT ANYBODY TODAY, THOUGH.

13         **THE COURT:** AND IS THIS COMPANY OPEN -- YOU KNOW, IS

14  IT OPEN IN THE EVENINGS?  DO THEY STAY OPEN UNTIL 8:00 OR

15  9:00?

16         **PROSPECTIVE JUROR:** IT'S THE SAME SCHEDULE EVERY

17  WEEK.  IT'S INSIDE OF A STORE.  SO TARGET IS THE CLIENT AND MY

18  COMPANY IS THE MARKETING COMPANY.

19         **THE COURT:** TELL ME WHAT YOU DO.

20         **PROSPECTIVE JUROR:** SO I'M A BEAUTY CONCIERGE, SO I

21  HELP CLIENTS WITH QUESTIONS, I GIVE OUT SAMPLES, AND ALL THAT.

22  I DO MY OWN REPORTS AT THE END OF THE DAY.

23         **THE COURT:** SO YOU WORK INSIDE A TARGET IN ONE OF THE

24  KIND OF AREAS WHERE THERE'S A GLASS CASE OR SOMETHING?

25         **PROSPECTIVE JUROR:** NO.  THE WHOLE SECTION FROM

1    PERSONAL CARE TO HAIR CARE, MAKEUP, AND BODY LOTION.

2              THE COURT:  SO YOU'RE WALKING AROUND ASKING --

3    ANSWERING QUESTIONS?

4              PROSPECTIVE JUROR:  YES.

5              THE COURT:  OKAY.  IT LOOKS LIKE YOU DID PREVIOUSLY

6    SERVE ON A JURY; IS THAT RIGHT?

7              PROSPECTIVE JUROR:  YES, BUT I WASN'T CALLED FOR IT.

8              THE COURT:  OKAY.  SO YOU WERE CALLED INTO A ROOM

9    LIKE THIS BUT YOU WERE NOT CHOSEN?

10             PROSPECTIVE JUROR:  NO.  I WAS -- MY GROUP -- MY

11   NUMBER WASN'T CALLED TO COME IN.

12             THE COURT:  OKAY.

13        NOW, YOU CHECKED YES THAT YOU COULD BE FAIR AND IMPARTIAL,

14   BUT YOU ALSO SAID IT DEPENDS ON THE CASE.  IS THERE ANYTHING

15   THAT YOU'VE HEARD THUS FAR THAT LEADS YOU TO BELIEVE YOU

16   COULDN'T BE FAIR IN THIS CASE?

17             PROSPECTIVE JUROR:  NO.

18             THE COURT:  OKAY.

19        LET'S GO AHEAD, PASS IT TO MR. TAMANG.

20             PROSPECTIVE JUROR:  YES.

21                  (OFF-THE-RECORD DISCUSSION.)

22             THE COURT:  MR. TAMANG, YOU HAVE A TEN-MONTH-OLD.

23   ARE YOU SLEEPING YET?

24             PROSPECTIVE JUROR:  I'M SORRY?

25             THE COURT:  ARE YOU SLEEPING YET?  WITH A

1    TEN-MONTH-OLD.

2              **PROSPECTIVE JUROR:**  YEAH, I THINK HE'S A GOOD GUY.

3    YOU KNOW, HE IS GOOD BABY.  SO I'M SLEEPING WELL, YEAH.

4              **THE COURT:**  SO HE'S NOT STAYING UP ALL NIGHT LONG?

5              **PROSPECTIVE JUROR:**  NOT REALLY.

6              **THE COURT:**  WELL, THAT'S GOOD.  YOU WERE BORN IN

7    NEPAL.  WHEN DID YOU COME TO THE STATES?

8              **PROSPECTIVE JUROR:**  2004.

9              **THE COURT:**  AND YOUR WIFE IS AT HOME, NOT WORKING; IS

10   THAT RIGHT?

11             **PROSPECTIVE JUROR:**  YES.

12             **THE COURT:**  OKAY.  YOU, TOO, INDICATED THAT YOU

13   AGREED WITH THE STATEMENT THAT ONCE THE U.S. PATENT OFFICE

14   GRANTS A PATENT, THAT DECISION SHOULDN'T BE CHALLENGED.  WHEN

15   YOU ANSWERED THAT QUESTION, WERE YOU AWARE THAT THE LAW ALLOWS

16   A PARTY TO CHALLENGE A PATENT?

17             **PROSPECTIVE JUROR:**  WELL, WHEN YOU MENTION, YEAH, I

18   WAS KIND OF -- I DIDN'T KNOW THAT THE LAW ALLOWS THAT ONE, BUT

19   WHEN YOU MENTIONED THAT, YEAH.

20             **THE COURT:**  ARE YOU AT ALL CONCERNED WITH YOUR

21   ABILITY TO BE FAIR IN A PATENT CASE WHERE SOMEONE SAYS I HAVE

22   A PATENT AND THE OTHER SIDE IS SAYING NO, THAT'S NOT A VALID

23   PATENT AND IS CHALLENGING IT?  DO YOU THINK YOU CAN BE FAIR IN

24   THIS KIND OF CASE?

25             **PROSPECTIVE JUROR:**  I THINK SO, YEAH.

1           **THE COURT:**  DO YOU HAVE ANY BACKGROUND IN SOFTWARE OR

2    PATENTS?

3           **PROSPECTIVE JUROR:**  NO.

4           **THE COURT:**  IN TERMS OF ACCOUNTING, YOUR BACKGROUND

5    IN ACCOUNTING, WHAT KINDS OF CLASSES DID YOU TAKE?

6           **PROSPECTIVE JUROR:**  WELL, I TOOK THE ACCOUNTING,

7    PRETTY MUCH ALL ACCOUNTING COURSE, LIKE INTERMEDIATE

8    ACCOUNTING, ADVANCED ACCOUNTING, TAX ACCOUNTING, AUDITING,

9    EVERYTHING SO --

10          **THE COURT:**  SO YOU'RE A VERY -- YOU LIKE NUMBERS,

11   YOU'RE A NUMBERS PERSON.

12          **PROSPECTIVE JUROR:**  WELL, YEAH, KIND OF.

13          **THE COURT:**  OKAY.  THAT'S ALL RIGHT.

14      HAVE YOU TALKED TO YOUR EMPLOYER ABOUT SERVICE ON A JURY?

15          **PROSPECTIVE JUROR:**  YES, YESTERDAY I TALKED WITH HIM

16   ABOUT THAT.  AND, YEAH.

17          **THE COURT:**  OKAY.  ALL RIGHT.  MR. TAMANG.  LET'S

18   PASS IT DOWN AND WE'LL GO THROUGH A COUPLE MORE HERE.

19      MS. WATKINS, GOOD MORNING.

20          **PROSPECTIVE JUROR:**  GOOD MORNING.

21          **THE COURT:**  NOW, YOU STUDIED ENVIRONMENTAL BIOLOGY

22   AND YOU'RE NOW A MANAGING EDITOR -- IS -- IS PINK INK FASHION

23   JEWELRY, IS THAT A MAGAZINE?

24          **PROSPECTIVE JUROR:**  IT'S AN ONLINE JEWELRY COMPANY.

25          **THE COURT:**  OKAY.  IS THERE ANY RELATIONSHIP BETWEEN

1   WHAT YOU'RE DOING NOW AND YOUR MOLECULAR AND ENVIRONMENTAL

2   BIOLOGY DEGREE?

3          **PROSPECTIVE JUROR:**  NO.

4          **THE COURT:**  WHAT DID YOUR PARENTS SAY ABOUT THAT?

5          **PROSPECTIVE JUROR:**  I DON'T THINK THEY REALLY MINDED.

6          **THE COURT:**  OKAY.  SO IN YOUR -- WELL, LET ME -- I

7   HAVE TO ASK.  ANY PARTICULAR REASON FOR THE SHIFT?

8          **PROSPECTIVE JUROR:**  WELL, I WORKED IN A LAB DURING

9   UNDERGRADUATE, AND I DIDN'T REALLY LIKE SPENDING A LOT OF TIME

10  IN THE DARK TAKING MEASUREMENTS.  SO --

11         **THE COURT:**  OKAY.  SO HENCE THE SHIFT.

12     IT'S HARD TO GET A BS DEGREE FROM CAL.  IT'S A VERY

13  DIFFICULT SCHOOL.  DID YOU, AS PART OF YOUR COURSE WORK, TAKE

14  ANY CLASSES IN -- ANY KIND OF -- ANY ENGINEERING CLASSES OR

15  SOFTWARE DEVELOPMENT?

16         **PROSPECTIVE JUROR:**  NO.

17         **THE COURT:**  NO?

18     AND IN ADDITION -- I TAKE IT THE EDITING WORK, IS THAT IN

19  ADDITION TO PART-TIME WORK AT CAL?  OR EXPLAIN TO ME YOUR

20  CURRENT JOBS.

21         **PROSPECTIVE JUROR:**  I DON'T CURRENTLY WORK FOR THE

22  UNIVERSITY.  I JUST WORK AT THE JEWELRY COMPANY.

23         **THE COURT:**  OKAY.

24     AND WHO ELSE -- WHO ARE YOU LIVING WITH?

25         **PROSPECTIVE JUROR:**  I LIVE WITH MY PARTNER, AND HE

1     WORKS PART-TIME AT THE UNIVERSITY.

2             **THE COURT:**  OKAY.  AND WHAT KIND OF WORK DOES HE DO?

3             **PROSPECTIVE JUROR:**  HE WORKS FOR THE ASIAN-AMERICAN

4     STUDIES DEPARTMENT, AND HE'S CURRENTLY WORKING ON THEIR ANNUAL

5     NEWSLETTER.

6             **THE COURT:**  IN TERMS OF YOUR WORK IN SALES OR

7     MARKETING, IS THAT JUST THE TWO THAT YOU'VE LISTED HERE?  OR

8     ARE THERE OTHER THINGS THAT YOU'VE WORKED ON?

9             **PROSPECTIVE JUROR:**  JUST THOSE TWO.

10            **THE COURT:**  OKAY.  YOU DIDN'T ANSWER THE QUESTION

11    WHETHER YOU AGREE OR DISAGREE WITH THE STATEMENT ABOUT

12    CHALLENGING A DECISION TO GRANT A PATENT IN COURT.  DO YOU

13    HAVE ANY THOUGHTS ON THAT ISSUE?

14            **PROSPECTIVE JUROR:**  I DON'T REALLY HAVE A STRONG

15    OPINION.

16            **THE COURT:**  ANY REASON WHY YOU DON'T THINK YOU COULD

17    BE FAIR OR IMPARTIAL?

18            **PROSPECTIVE JUROR:**  NO.

19            **THE COURT:**  OKAY.  LET'S THEN PASS IT TO MS. WEE.

20            **PROSPECTIVE JUROR:**  YES.

21            **THE COURT:**  GOOD MORNING.

22            **PROSPECTIVE JUROR:**  GOOD MORNING.

23            **THE COURT:**  SO IT LOOKS LIKE -- WELL, LET ME ASK

24    FIRST.  YOU CIRCLED MORRISON & FOERSTER.

25            **PROSPECTIVE JUROR:**  THAT'S CORRECT.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

```
 1              THE COURT:  OKAY.  AND WHY DID YOU CIRCLE MORRISON &

 2    FOERSTER?

 3              PROSPECTIVE JUROR:  I REMEMBER, YOU KNOW, SIGNING A

 4    CHECK -- SIGNING CHECKS FOR THEM IN MY PREVIOUS COMPANIES.

 5    WHETHER IT'S MY LAST COMPANY OR THE COMPANY BEFORE, I THINK

 6    WE'VE DEALT WITH THEM, MORRISON & FOERSTER.

 7              THE COURT:  OKAY.  THIS WAS IN YOUR ROLE AS A FINANCE

 8    AND CONTROLLER?

 9              PROSPECTIVE JUROR:  YES, CORRECT.

10              THE COURT:  DO YOU HAVE ANY OPINIONS, NEGATIVE OR

11    POSITIVE, ABOUT MORRISON & FOERSTER?

12              PROSPECTIVE JUROR:  NO.

13              THE COURT:  SOMEONE JUST TOLD YOU TO WRITE THE CHECK

14    AND SO YOU WROTE IT?

15              PROSPECTIVE JUROR:  YEAH.

16              THE COURT:  OKAY.  OBVIOUSLY ONE SIDE IS NOT

17    REPRESENTED BY THAT LAW FIRM.  BECAUSE YOU'VE HAD SOME

18    EXPOSURE TO THAT FIRM IN THE PAST, ARE YOU GOING TO TREAT THEM

19    MORE FAVORABLY THAN THE OTHER SIDE?

20              PROSPECTIVE JUROR:  I DON'T THINK SO.

21              THE COURT:  OKAY.  HOW ABOUT LESS FAVORABLY?  IS

22    THERE --

23              PROSPECTIVE JUROR:  NO.

24              THE COURT:  NO?

25         SO THAT WON'T INFLUENCE YOUR OPINION?
```

1          PROSPECTIVE JUROR:  NO.

2          THE COURT:  YOU MADE SOME COMMENTS HERE ABOUT PATENTS

3     IN THE FDA CONTEXT.

4          PROSPECTIVE JUROR:  CORRECT.

5          THE COURT:  WHAT -- WHAT CONCERNS DO YOU HAVE, IF

6     ANY, ABOUT THE PATENT PROCESS AND HOW IT AFFECTS DRUGS?

7          PROSPECTIVE JUROR:  WELL, I'M, YOU KNOW, LOOKING AT

8     IT FROM A LIFE SCIENCE PERSPECTIVE BECAUSE IT TAKES EIGHT TO

9     TEN YEARS BEFORE, YOU KNOW, A COMPANY CAN FILE AN APPLICATION

10    WITH THE FDA.  AND THEN ONLY, YOU KNOW, 10 PERCENT OF THE

11    COMPANIES GET TO FILE AN -- AN APPLICATION WITH THE FDA.

12    SO -- AND -- AND IT TAKES A LOT OF MONEY TO DEVELOP DRUGS.

13    SO, YOU KNOW, IN -- IN OUR CASE, IT COULD TAKE 200 MILLION

14    TO -- TO DEVELOP A DRUG.

15         SO WHEN WE FILE A PATENT, TYPICALLY, WE WILL USE AN

16    OUTSIDE COUNSEL TO HELP US WITH THE PROCESS.  SO, YOU KNOW, SO

17    I THINK IT'S VETTED PRETTY WELL.  AND FOR A DRUG COMPANY, ONCE

18    THEY GET AN FDA APPROVAL, I THINK THAT THEY SHOULD HAVE A

19    CHANCE TO -- TO PRESERVE THE IP FOR AT LEAST SEVEN YEARS OR

20    TEN YEARS SO THAT THEY CAN RECOVER THEIR INVESTMENTS.

21         THE COURT:  AND YOU USED THE WORD "WE."  WHICH

22    COMPANY IS IT THAT YOU'RE WORKING FOR NOW OR BEFORE WHERE THIS

23    WAS AN ISSUE?

24         PROSPECTIVE JUROR:  WELL, I'VE WORKED FOR TWO BIOTECH

25    COMPANIES.  ONE IS TELIK, ONE IS KINETICS.  AND SO IT'S THE

```
1    SAME -- SAME PROCESS.
2         THE COURT:  NOW, WHICH ONE ARE YOU WORKING FOR NOW?
3         PROSPECTIVE JUROR:  THE COMPANY THAT I WORKED FOR,
4    TELIK, HAS JUST RECENTLY BEEN ACQUIRED, SO AS OF JULY 31ST,
5    ALL THE TELIK EMPLOYEES WERE LAID OFF.
6         THE COURT:  AND ARE -- ON YOUR FORM, YOU SAY THAT
7    YOU'D BE VP OF FINANCING CONTROLLER FOR --
8         PROSPECTIVE JUROR:  THAT'S --
9         THE COURT:  -- ELEVEN-PLUS YEARS.
10        PROSPECTIVE JUROR:  THAT'S CORRECT.
11        THE COURT:  AND FOR WHICH COMPANY?
12        PROSPECTIVE JUROR:  TELIK.
13        THE COURT:  TELIK?
14        PROSPECTIVE JUROR:  UM-HMM.
15        THE COURT:  BUT THAT'S THE COMPANY THAT JUST WAS
16   PURCHASED?
17        PROSPECTIVE JUROR:  YES, THAT'S CORRECT.
18        THE COURT:  OKAY.
19      NOW, IN YOUR ROLE, YOU HAVE SOME -- YOU KNOW, IT SOUNDS
20   LIKE YOU HAVE SOME EXPOSURE TO THE PATENT WORLD IN THAT SPACE,
21   BUT HAVE YOU, YOURSELF, DONE ANY WORK WITH THE PATENT LAWYERS?
22        PROSPECTIVE JUROR:  NO.
23        THE COURT:  ANY WORK WITH ANYONE IN THE COMPANIES IN
24   ACQUIRING PATENTS?
25        PROSPECTIVE JUROR:  NO.
```

```
1              THE COURT:  HOW ABOUT DEFENDING PATENTS?

2              PROSPECTIVE JUROR:  NO.

3              THE COURT:  OKAY.

4              PROSPECTIVE JUROR:  MY ONLY INVOLVEMENT WOULD BE

5    SITTING IN MEETINGS AND HEARING, YOU KNOW, SOMEBODY ELSE TALK

6    ABOUT IT.

7              THE COURT:  OKAY.  WAS THERE EVER ANY DISCUSSION

8    ABOUT HOW PATENTS WORK IN OTHER INDUSTRIES OTHER THAN THE

9    BIO --

10             PROSPECTIVE JUROR:  NO.

11             THE COURT:  -- TECH PATENT?

12             PROSPECTIVE JUROR:  NO.

13             THE COURT:  ANY CONCERNS ABOUT BEING FAIR IN THIS

14   CASE?

15             PROSPECTIVE JUROR:  I DON'T THINK SO.  NO CONCERNS.

16             THE COURT:  OKAY.

17                  (OFF-THE-RECORD DISCUSSION.)

18             THE COURT:  OKAY.  LADIES AND GENTLEMEN, BECAUSE I

19   HAVE AN INCREDIBLE COURT REPORTER SO THE RECORD WILL

20   REFLECT -- SHE LIKES THAT, SEE, I GET BROWNIE POINTS WHEN I DO

21   THAT ON THE RECORD -- I'M GOING TO GO AHEAD.  WE'RE GOING TO

22   KEEP GOING UNLESS ONE OF THE 18 OF YOU REALLY HAS TO GO TO THE

23   BATHROOM.  DOES ANY OF THE -- REALLY HAS TO GO?  OKAY.  THE

24   TWO OF YOU?

25       WHAT WE'RE GOING TO DO.  MADAM COURTROOM DEPUTY, WILL YOU
```

```
1    TAKE THOSE TWO INTO THE JURY ROOM AND LET THE TWO OF YOU GO

2    VERY QUICK.  GO ON.  IT'S OKAY.

3        ONE MORE?  OKAY.  QUICK.

4            PROSPECTIVE JUROR:  MAY I GO, TOO?

5            THE COURT:  FOLLOW HER.  FOLLOW HER.

6        THE ABILITY TO MOVE THAT MANY PEOPLE JUST -- JUST MOVING

7    YOU WILL TAKE TEN MINUTES.

8        AS SOON AS THE THREE COME OUT, WHAT I'M GOING TO DO IS

9    ALLOW THE PARTIES TO JUST ASK SOME FOLLOW-UP QUESTIONS.  AND

10   THEN WE'LL TAKE OUR BREAK.  THEY EACH WILL BE GIVEN 20 MINUTES

11   APIECE.  SO BECAUSE THERE ARE 18 OF YOU AND THEY ONLY GET 20

12   MINUTES, DO NOT BE OFFENDED IF THEY DON'T ASK YOU ANY

13   QUESTIONS.  BECAUSE, AGAIN, I'VE PUT THEM ON TIME LIMITS.

14   THEY WOULD LIKE TO TALK TO YOU FOR THE NEXT FEW HOURS, BUT I

15   WON'T LET THEM DO THAT.

16       WHY DOESN'T EVERYBODY STAND AND STRETCH.  WE COULD DO

17   THAT.

18                  (OFF-THE-RECORD DISCUSSION.)

19           THE COURT:  OH, THERE ARE TOO MANY.  OKAY.  LET'S GO

20   AHEAD.  WE'RE GOING TO TAKE A TEN-MINUTE BREAK.  EVERYBODY GO

21   OUT.  TAKE A TEN-MINIMUM BREAK.

22       (RECESS TAKEN AT 11:33 A.M.; PROCEEDINGS RESUMED AT 11:42

23   A.M.)

24       (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE PRESENCE OF

25   THE JURY VENIRE:)
```

```
 1          THE COURT:  WE'RE BACK ON THE RECORD.  THE RECORD
 2    WILL REFLECT THAT ALL THE PARTIES ARE PRESENT AND ALL THE
 3    JURORS.
 4          MR. SLENKOVICH:  YOUR HONOR, WE HAVE ONE COUNSEL
 5    STILL.
 6          THE COURT:  HE'S GOING TO HAVE TO -- HE'LL ADJUST.
 7    WE'RE NOT GOING TO WAIT.
 8       OKAY.  AGAIN, LADIES AND GENTLEMEN, THE LAWYERS HAVE BEEN
 9    ALLOCATED ABOUT 20 MINUTES TO ASK YOU FOLLOW-UP QUESTIONS.  AS
10    I WAS SAYING, SOME OF YOU, 18 OF YOU ARE HERE, IT LEAVES LESS
11    THAN A MINUTE PER JUROR, SO THEY MAY NOT ASK YOU A QUESTION.
12    AND IF THEY DON'T ASK YOU A QUESTION, DO NOT BE UPSET WITH
13    THEM.  IT'S REALLY BECAUSE I HAVE LIMITED THE AMOUNT OF TIME
14    THAT I'M ALLOWING THEM TO ASK YOU QUESTIONS.
15       WE'LL START WITH MR. SLENKOVICH FOR THE PLAINTIFFS.
16       I WOULD REMIND COUNSEL, PLEASE -- MR. HADJIS, ARE YOU
17    DOING IT FOR THE DEFENSE?
18          MR. HADJIS:  YES, YOUR HONOR, I AM.
19          THE COURT:  I WOULD REMIND YOU TO PLEASE IDENTIFY THE
20    JURORS WITH WHOM YOU ARE SPEAKING SO THE RECORD IS CLEAR.
21    THANK YOU.
22          MR. HADJIS:  THANK YOU.
23          MR. SLENKOVICH:  THANK YOU, YOUR HONOR.
24          THE COURT:  YOU MAY PROCEED.
25          MR. SLENKOVICH:  GOOD MORNING.  MY NAME IS KEITH
```

1   SLENKOVICH, AND ALONG WITH MY COLLEAGUES, I REPRESENT THE

2   PLAINTIFF, MEDIATEK.  YOU WILL MEET OTHER ATTORNEYS FOR

3   MEDIATEK DURING THE COURSE OF THE TRIAL.  YOU'LL ALSO MEET

4   MEDIATEK, THE CLIENT, AND SOME OF ITS KEY EMPLOYEES DURING THE

5   TRIAL.

6        NOW, THIS IS THE ONLY PART OF THE TRIAL WHERE WE GET TO

7   TALK TO YOU DIRECTLY AND GET ANSWERS FROM YOU.  FOR MOST OF

8   THE TRIAL WE'LL BE PRESENTING EVIDENCE AND WE'LL BE TALKING TO

9   YOU, BUT WE'RE NOT GOING TO BE ABLE TO HEAR BACK FROM YOU.

10  AND THIS IS AN IMPORTANT PART OF THE TRIAL BECAUSE IT'S WHERE,

11  BASED ON ALL THE THINGS WE KNOW ABOUT THE CASE AND THE ISSUES

12  THAT ARE GOING TO BE PUT IN FRONT OF YOU, WE GET TO ASK

13  QUESTIONS ABOUT YOUR BACKGROUND AND EXPERIENCE THAT MAY RAISE

14  THINGS THAT EVEN YOU HAVE NOT THOUGHT OF THAT MIGHT BE

15  INVOLVED IN THE CASE.

16       SO I'M PROBABLY NOT GOING TO QUESTION ALL OF YOU.  AND --

17  IF I DO QUESTION YOU, IF WE COULD JUST HAVE OPEN AND CANDID

18  ANSWERS.  THERE'S NO RIGHT OR WRONG ANSWERS TO ANY QUESTIONS.

19       AND I'VE BEEN TRYING CASES FOR 25 YEARS, AND I'VE NEVER

20  MADE IT INTO THE BOX THAT YOU'RE IN RIGHT NOW.  I'VE BEEN OUT

21  THERE A FEW TIMES BEFORE, BUT I'VE NEVER MADE IT INTO THE BOX.

22  I EXPECT THAT IT IS -- IT CAN BE UNCOMFORTABLE TO HAVE A

23  STRANGER LIKE MYSELF ASKING YOU QUESTIONS ABOUT YOUR

24  BACKGROUND, AND I'M GOING TO TRY TO BE VERY CAREFUL NOT TO

25  MAKE YOU UNCOMFORTABLE.  AND IF I BY CHANCE DO MAKE YOU

1    UNCOMFORTABLE, I APOLOGIZE IN ADVANCE.  THAT'S NOT MY GOAL.

2    I'M REALLY JUST TRYING TO FIND OUT THINGS THAT YOU MAY NOT

3    HAVE THOUGHT OF THAT MIGHT BE RELEVANT TO THIS CASE AND YOUR

4    ABILITY TO SIT AS JURORS.

5        THE ONE THING I DO WANT TO SAY IS THAT THERE ARE NO RIGHT

6    AND WRONG ANSWERS SO PLEASE DON'T FEEL LIKE, YOU KNOW, AN

7    ANSWER IS SOMETHING THAT WE'RE LOOKING FOR.  WE JUST WANT TO

8    KNOW YOUR THOUGHTS.

9        NOW, THE FIRST COUPLE OF QUESTIONS I'M GOING TO ASK THE

10   WHOLE PANEL, AND WHAT I WOULD LIKE YOU TO DO, IF YOU COULD, IS

11   IF THE ANSWER IS YES TO THE QUESTION, PLEASE RAISE YOUR HAND.

12   AND THEN I MAY HAVE SOME FOLLOW-UP QUESTIONS.

13       HAVE YOU OR ANY CLOSE FAMILY MEMBER EVER SUED SOMEONE OR

14   BEEN SUED BY SOMEBODY BEFORE?  PLEASE RAISE YOUR HANDS IF YOU

15   HAVE.

16       (NO HANDS RAISED.)

17       **MR. SLENKOVICH:**  OKAY.  HAVE YOU OR A CLOSE FAMILY

18   MEMBER EVER BEEN A WITNESS IN A CASE -- ANY TYPE OF CASE

19   BEFORE?  PLEASE RAISE YOUR HAND.

20       (NO HANDS RAISED.)

21       **MR. SLENKOVICH:**  OKAY.  HAVE ANY OF YOU EVER HAD ANY

22   DEALINGS WITH SEMICONDUCTOR BUS TECHNOLOGY?

23       OKAY.  AND I THINK WE HEARD HER HONOR ASKED YOU SOME

24   QUESTIONS ABOUT THAT DURING THE ORIGINAL QUESTIONS?  OKAY.

25   GREAT.

```
 1         HAVE ANY OF YOU HAD ANY DEALINGS WITH TECHNOLOGIES

 2    DESIGNED TO CONSERVE ENERGY ON A SEMICONDUCTOR CHIP?

 3         (NO HANDS RAISED.)

 4              MR. SLENKOVICH:  OKAY.  THANK YOU.

 5              MR. SLENKOVICH:  SO NOW I'M GOING TO ASK SOME

 6    INDIVIDUAL QUESTIONS BASED ON YOUR QUESTIONNAIRES.

 7                   (PAUSE IN THE PROCEEDINGS.)

 8              MR. SLENKOVICH:  MR. CORY, HAVE YOU -- YOU INDICATED

 9    THAT YOU HAD WORKED IN A SALES AND MARKETING POSITION BEFORE.

10    WAS THAT POSITION SALARIED OR COMMISSIONED OR A COMBINATION?

11              THE COURT:  LET'S PASS THE MIC TO HIM, PLEASE.

12              PROSPECTIVE JUROR:  IT WAS COMMISSIONED.

13              MR. SLENKOVICH:  OKAY.  FULL COMMISSION?

14              PROSPECTIVE JUROR:  COMMISSION AND HOURLY.

15              MR. SLENKOVICH:  AND WHAT WAS THAT POSITION AGAIN?

16              PROSPECTIVE JUROR:  IT WAS SPRINT.  I WAS A SMALL

17    BUSINESS EXPERT FOR A SPRINT STORE.

18              MR. SLENKOVICH:  AND WHAT WOULD YOU DO IN THE

19    CAPACITY OF SMALL BUSINESS EXPERT?

20              PROSPECTIVE JUROR:  JUST SETTING UP, LIKE, BUSINESS

21    ACCOUNTS FOR, LIKE, AS FAR AS CELL PHONE LINES GO.  SO I DID

22    CONSUMERS AS WELL BUT SPECIFICALLY DO BUSINESSES.

23              MR. SLENKOVICH:  AND HOW LONG AGO WAS THAT?

24              PROSPECTIVE JUROR:  PROBABLY ABOUT A YEAR AGO.

25              MR. SLENKOVICH:  OKAY.  THANK YOU, MR. CORY.
```

1          MS. GRACEFFA, AM I PRONOUNCING THAT CORRECTLY?  YOU

2     INDICATED IN RESPONSE TO THE JUDGE'S QUESTIONS THAT YOU WILL

3     NOT BE ABLE TO SHOW UP FOR WORK WHILE DURING THIS TIME, THAT

4     THERE MAY NOT BE VERY GOOD COVERAGE FOR YOU AT THE FLY SHOP;

5     IS THAT CORRECT?

6          **PROSPECTIVE JUROR:**  THAT IS CORRECT, YES.

7          **MR. SLENKOVICH:**  DO YOU THINK AS YOU SAT THROUGH THE

8     TRIAL, IF YOU WERE SELECTED, THAT WOULD BE A DISTRACTION FOR

9     YOU AND WOULD MAYBE PREVENT YOU FROM KEEPING YOUR MIND ON THE

10    ISSUES AND FACTS THAT WERE BEING PRESENTED?

11         **PROSPECTIVE JUROR:**  IT'S DEFINITELY A HARDSHIP, YES,

12    ABSOLUTELY.  AT THE END OF -- THE TRIAL GOES, IF IT DOES IN

13    FACT GO TO THE END, I ACTUALLY AM CONTRACTED TO GUIDE A TRIP

14    IN OREGON AT THE VERY END OF THIS, WHICH IS ALSO A FINANCIAL

15    HARDSHIP FOR ME TO LOSE THAT KIND OF INCOME.

16         **MR. SLENKOVICH:**  SO IF THAT WERE -- THIS IS A FLY

17    FISHING TRIP?

18         **PROSPECTIVE JUROR:**  YES, IT IS.

19         **MR. SLENKOVICH:**  SO IF THAT WERE TO HAPPEN, YOU'D

20    BASICALLY JUST HAVE TO CANCEL THE TRIP?

21         **PROSPECTIVE JUROR:**  I WOULD HAVE TO CANCEL THE TRIP,

22    YES.

23         **MR. SLENKOVICH:**  OKAY.  OKAY.  THANK YOU.

24              (PAUSE IN THE PROCEEDINGS.)

25         **MR. SLENKOVICH:**  OKAY.  MS. LEUNG.

1          PROSPECTIVE JUROR:  YES.

2          MR. SLENKOVICH:  ON YOUR QUESTIONNAIRE, YOU INDICATED

3     THAT YOU HAD WORKED BEFORE IN A SALES AND MARKETING POSITION.

4     IS THAT SOMETHING DIFFERENT THAN THE IMPERIAL PALACE CHINESE

5     RESTAURANT?

6          PROSPECTIVE JUROR:  WELL, RIGHT NOW I'M DOING SALES,

7     YOU KNOW, LIKE LIFE INSURANCE, RIGHT?  IT'S SALES.  AND I ALSO

8     DO THE TRADING BEFORE SO THERE'S SOME SALES, PURCHASING AND

9     SALES INVOLVED.

10         MR. SLENKOVICH:  OKAY.  DOES THAT -- DO ANY OF THOSE

11    SALES ACTIVITIES INVOLVE COMMISSION?

12         PROSPECTIVE JUROR:  YES.

13         MR. SLENKOVICH:  ARE THEY FULL COMMISSION OR IS THERE

14    A SALARY AND COMMISSION COMPONENT?

15         PROSPECTIVE JUROR:  FULL COMMISSION.

16         MR. SLENKOVICH:  OKAY.  THANK YOU, MS. LEUNG.

17         PROSPECTIVE JUROR:  OKAY.

18              (PAUSE IN THE PROCEEDINGS.)

19         MR. SLENKOVICH:  OKAY.  MR. SOBCZYNKSI, AM I

20    PRONOUNCING THAT CORRECTLY?

21         PROSPECTIVE JUROR:  YES.

22         MR. SLENKOVICH:  IT SOUNDS LIKE IN A FEW OF YOUR

23    POSITIONS, YOU'VE HAD SALES AND MARKING EXPERIENCE --

24         PROSPECTIVE JUROR:  YES.

25         MR. SLENKOVICH:  -- IS THAT CORRECT?

```
 1              IN ANY OF THOSE, WERE YOU PAID ON A COMMISSION BASIS?

 2              PROSPECTIVE JUROR:  YES.

 3              MR. SLENKOVICH:  WAS IT A FULL COMMISSION OR WAS THAT

 4      A MIXED?

 5              PROSPECTIVE JUROR:  FULL COMMISSION.

 6              MR. SLENKOVICH:  OKAY.

 7          OKAY.  THANK YOU VERY MUCH.

 8                      (PAUSE IN THE PROCEEDINGS.)

 9              MR. SLENKOVICH:  MS. SPONBURG?

10              PROSPECTIVE JUROR:  YES.

11              MR. SLENKOVICH:  IN YOUR POSITIONS THAT INVOLVED

12      SALES AND MARKET -- WHAT WERE THE POSITIONS IN SALES AND

13      MARKETING THAT YOU'VE BEEN INVOLVED IN?

14              PROSPECTIVE JUROR:  PRETTY MUCH JUST SALES.  IT'S AN

15      ACTUAL COMPANY THAT'S THE MARKETING TEAM.

16              MR. SLENKOVICH:  I SEE.  I SEE.

17          AND THIS IS THE WORK THAT'S DONE AT -- THE BEAUTY

18      CONCIERGE AT TARGET?

19              PROSPECTIVE JUROR:  YES.

20              MR. SLENKOVICH:  IS THAT A COMMISSIONED POSITION, OR

21      IS THAT A SALARIED POSITION?

22              PROSPECTIVE JUROR:  IT'S HOURLY ONLY.

23              MR. SLENKOVICH:  OKAY.  THANK YOU.

24                      (PAUSE IN THE PROCEEDINGS.)

25              MR. SLENKOVICH:  AND MS. WATKINS, YOU HAD INDICATED
```

1    THAT IN RESPONSE TO HER HONOR'S QUESTIONS THAT YOU HAD DONE

2    SOME SALES AND MARKETING WITH THE PINK INK FASHION JEWELRY

3    STORE.

4              **PROSPECTIVE JUROR:**  YEAH.

5              **MR. SLENKOVICH:**  AND WAS THAT A COMMISSIONED

6    POSITION?

7              **PROSPECTIVE JUROR:**  NO.

8              **MR. SLENKOVICH:**  IT WAS A SALARIED?

9              **PROSPECTIVE JUROR:**  YEAH.

10             **MR. SLENKOVICH:**  OKAY.

11        OKAY.  THANK YOU VERY MUCH.

12                    (PAUSE IN THE PROCEEDINGS.)

13             **MR. SLENKOVICH:**  OKAY.  YOUR HONOR, THAT'S ALL I

14   HAVE.

15             **THE COURT:**  ALL RIGHT.

16             **MR. SLENKOVICH:**  THANK YOU VERY MUCH.

17             **THE COURT:**  MR. HADJIS?

18                    (PAUSE IN THE PROCEEDINGS.)

19             **THE COURT:**  YOU MAY PROCEED.

20             **MR. HADJIS:**  THANK YOU, YOUR HONOR.

21        GOOD MORNING.  AGAIN, IT'S -- IT'S NICE TO SEE YOU, NICE

22   TO HAVE THIS OPPORTUNITY TO TALK WITH YOU.  AS MY OPPOSING

23   COUNSEL, MR. SLENKOVICH INDICATED, THIS IS THE ONE AND ONLY

24   TIME THAT WE DO HAVE AN OPPORTUNITY TO SPEAK WITH YOU.

25        THE REST OF THIS TRIAL, IF YOU'RE SELECTED FOR THE JURY,

1    WE WILL BE SPEAKING TO YOU.  WE WILL NOT BE ABLE TO

2    COMMUNICATE IN A CONVERSATION WITH YOU.  AND WE WILL BE

3    SPEAKING WITH WITNESSES AND THE JUDGE WHO YOU'VE MET.  YOU'RE

4    AN EXCEPTION IN TERMS OF WHO WE CAN SPEAK WITH.

5         SO TODAY WE'D LIKE TO SPEND, AS MY OPPOSING COUNSEL

6    INDICATED, A FEW MINUTES WITH YOU TO DO A FEW THINGS.  NUMBER

7    ONE, WE DO REALLY WANT TO INTRODUCE OURSELVES AND GET TO KNOW

8    YOU BECAUSE IF YOU DO GET SELECTED, YOU'LL BE SPENDING TIME

9    HERE WITH US AND WE WOULD -- WE WOULD LIKE TO KNOW YOU ON THE

10   FRONT END OF THAT.

11        NUMBER TWO, WE DO ALSO WANT TO UNDERSTAND WHO ARE THE

12   RIGHT FOLKS FOR THIS CASE.  SO THE QUESTIONS THAT WE ASK YOU

13   ARE MEANT TO GET TO KNOW YOU, ALLOW YOU TO GET TO KNOW US, AND

14   ALSO TO ALLOW US TO UNDERSTAND WHO AT LEAST WE THINK ARE THE

15   BEST FOLKS TO LISTEN TO THIS CASE AND DECIDE IT.

16        NOW, ALONG THOSE LINES, YOU'VE HEARD, I BELIEVE, FROM

17   MR. LAKSHMANAN, YES, OF FREESCALE.  AND I DID WANT TO SAY

18   BEFORE I ASK QUESTIONS THAT I'M VERY PROUD AND HONORED TO

19   REPRESENT FREESCALE HERE IN THIS COURTROOM.  IT IS A LARGE

20   U.S.-BASED COMPANY THAT MAKES SEMICONDUCTOR CHIPS.  AND AS

21   MR. LAKSHMANAN INDICATED, THEY'RE PRETTY WELL-KNOWN.  THEY ARE

22   THE FORMER SEMICONDUCTOR BUSINESS OF MOTOROLA.

23        I'D LIKE TO START BY ASKING A FEW QUESTIONS OF YOU,

24   MR. LAKSHMANAN.

25        HOW LONG HAVE YOU WORKED IN THE TECHNOLOGY INDUSTRY?

1               **PROSPECTIVE JUROR:**  FOR 20 YEARS.

2               **MR. HADJIS:**  AND HOW DID YOU COME TO KNOW FREESCALE?

3               **PROSPECTIVE JUROR:**  BECAUSE MANY OF THE PRODUCTS IN

4     CISCO WE USE THE FREESCALE PROCESSORS.

5               **MR. HADJIS:**  AND ARE YOU AWARE OF THE ORIGINS OF

6     FREESCALE?

7               **PROSPECTIVE JUROR:**  NOT THE ORIGINS OF FREESCALE, NO.

8               **MR. HADJIS:**  OKAY.  I MENTIONED MOTOROLA.  ARE YOU

9     AWARE OF THE CONNECTION BETWEEN FREESCALE AND MOTOROLA?

10              **PROSPECTIVE JUROR:**  SOMEWHAT, YES.

11              **MR. HADJIS:**  YOU MENTIONED IN YOUR QUESTIONNAIRE YOUR

12    SCHOOLING.  CAN YOU PROVIDE ME A SUMMARY OF THE FOCUS AREAS OF

13    YOUR COURSE WORK.

14              **PROSPECTIVE JUROR:**  SO I DID ENGINEERING IN

15    ELECTRONICS AND COMMUNICATION.

16              **MR. HADJIS:**  AND DO YOU HAVE -- DO YOU HAVE

17    EXPERIENCE WITH -- WITH CIRCUITRY OR SOFTWARE?

18              **PROSPECTIVE JUROR:**  MY PRIMARY FOCUS IS ON DEVELOPING

19    EMBEDDED SYSTEM SOFTWARE.  AS PART OF THAT, I DO KNOW ABOUT

20    ALL THE HARDWARE BASICS AND PROCESSES, BUT I DON'T DESIGN THE

21    HARDWARE CHIPS OR THE CIRCUITS.

22              **MR. HADJIS:**  IF YOU'RE ASKED TO MAKE A DECISION IN

23    THIS CASE BASED ON ONLY WHAT'S PRESENTED, CAN YOU DO THAT?

24              **PROSPECTIVE JUROR:**  AS -- I CAN TRY, YES.

25              **MR. HADJIS:**  OKAY.

```
1              PROSPECTIVE JUROR:  YEAH.

2              MR. HADJIS:  IF THE JUDGE INSTRUCTS YOU TO DO THAT --

3              PROSPECTIVE JUROR:  YES.

4              MR. HADJIS:  -- CAN YOU FOLLOW THE INSTRUCTIONS?

5              PROSPECTIVE JUROR:  YES.

6              MR. HADJIS:  ARE YOU FAMILIAR WITH FREESCALE'S I.MX

7       LINE OF CHIPS?

8              PROSPECTIVE JUROR:  NO.

9              MR. HADJIS:  HOW ABOUT THE MPC CHIPS?

10             PROSPECTIVE JUROR:  MPC, NO.

11             MR. HADJIS:  MXC?

12             PROSPECTIVE JUROR:  WE CALL THE INTERNAL NAMES.  I'M

13      NOT SURE HOW THE MAP -- THE NAMES THAT WE USE TO THAT.  SO I

14      MIGHT BE FAMILIAR WITH THAT, BUT, YEAH.

15             MR. HADJIS:  THANK YOU.

16         IF YOU COULD HAND THE MICROPHONE NOW TO MR. CELLI WHO I

17      BELIEVE IS ON YOUR LEFT, YES.

18         GOOD MORNING, MR. CELLI.

19             PROSPECTIVE JUROR:  GOOD MORNING.

20             MR. HADJIS:  HOW ARE YOU DOING TODAY?

21             PROSPECTIVE JUROR:  FINE.

22             MR. HADJIS:  GOOD.  I CERTAINLY HEARD YOUR

23      EXPLANATION OF -- OF YOUR JOB.  IT SOUNDS LIKE A TOUGH AND A

24      VERY IMPORTANT ONE.

25         WOULD IT PUT THE SCHOOL IN A DIFFICULT SITUATION IF YOU
```

1   WERE NOT ABLE TO BE THERE OVER THE COURSE OF THE NEXT FEW

2   WEEKS?

3                 **PROSPECTIVE JUROR:**  THE SCHOOL WOULD RUN WITHOUT ME.

4   THERE ARE THREE OTHER ADMINISTRATORS.  BUT IF I ASKED MY

5   SUPERINTENDENT, SHE WOULD SAY YES.

6                 **MR. HADJIS:**  I BELIEVE YOU MENTIONED YOU OWNED A

7   KINDLE.

8                 **PROSPECTIVE JUROR:**  CORRECT.  I BOUGHT ONE FOR MY

9   WIFE.

10                 **MR. HADJIS:**  DO YOU KNOW THE MODEL?

11                 **PROSPECTIVE JUROR:**  IT'S THE PAPERWHITE.

12                 **MR. HADJIS:**  THE PAPERWHITE.

13                 **PROSPECTIVE JUROR:**  (NODS HEAD.)

14                 **MR. HADJIS:**  ARE YOU AWARE OF OTHER TYPES OF KINDLES?

15                 **PROSPECTIVE JUROR:**  NO, JUST THE PREVIOUS MODELS BUT

16   NEVER USED THEM.

17                 **MR. HADJIS:**  HAVE YOU HEARD OF THE FIRE?

18                 **PROSPECTIVE JUROR:**  YES.

19                 **MR. HADJIS:**  DO YOU KNOW WHETHER THERE'S A DIFFERENCE

20   BETWEEN THE FIRE AND THE PAPERWHITE?

21                 **PROSPECTIVE JUROR:**  ABSOLUTELY.

22                 **MR. HADJIS:**  THANK YOU.

23      IF YOU COULD HAND THE MICROPHONE TO MR. LAM.  THANK YOU,

24   MR. CELLI.

25                 **PROSPECTIVE JUROR:**  RIGHT OVER HERE.

```
 1              MR. HADJIS:  THERE YOU ARE.  THANKS.
 2         MR. LAM.
 3              PROSPECTIVE JUROR:  YES.
 4              MR. HADJIS:  HAVE YOU WRITTEN SOFTWARE CODE IN -- IN
 5    THE PAST?
 6              PROSPECTIVE JUROR:  YES, A LONG TIME AGO.  C,
 7    FORTRAN, AND C -- C PROGRAMMING, C PLUS.
 8              MR. HADJIS:  FOR WHAT PURPOSE DID YOU WRITE THE CODE?
 9              PROSPECTIVE JUROR:  WELL, ACTUALLY, WHEN I WAS A
10    STUDENT, WE WROTE CODE FOR THAT.  BUT THEN AFTER I GRADUATE, I
11    DID NOT WORK FOR A COMPANY, SO I DIDN'T WRITE ANY CODE.
12              MR. HADJIS:  AND I SEE YOU HAVE A -- A DEGREE IN
13    COMPUTER SCIENCE.
14              PROSPECTIVE JUROR:  YES.
15              MR. HADJIS:  WHAT AREAS OF FOCUS WERE YOURS IN THE
16    COMPUTER SCIENCE AREA?
17              PROSPECTIVE JUROR:  WELL, ACTUALLY, I GRADUATE WITH A
18    PROGRAMMING, BUT I NEVER WORK FOR ANY COMPANY.  BUT THEN I
19    OPEN MY OWN COMPUTER STORE, AND I EVENTUALLY DOING FIXING
20    COMPUTERS SO -- AND THEN WHEN I WORK FOR UCSF, I ACTUALLY DO
21    WRITE SOME OF THE DATABASE PROGRAMMING.
22              MR. HADJIS:  UM-HMM.  AND DURING YOUR SCHOOLING, DID
23    YOU LEARN ABOUT SOFTWARE?
24              PROSPECTIVE JUROR:  YES, I DID.
25              MR. HADJIS:  DID YOU ALSO LEARN ABOUT HARDWARE?
```

```
 1            PROSPECTIVE JUROR:  NO, MOSTLY SOFTWARE.

 2         MR. HADJIS:  DID YOU LEARN ABOUT ARCHITECTURE?

 3            PROSPECTIVE JUROR:  ACTUALLY, I WENT TO -- I ALSO

 4    HAVE A MINOR IN ARCHITECTURE BUT NEVER FINISHED IT.

 5         MR. HADJIS:  THANK YOU.

 6            PROSPECTIVE JUROR:  THANK YOU.

 7         MR. HADJIS:  IF YOU COULD PASS THE MIC TO MRS. LEUNG.

 8                 (PAUSE IN THE PROCEEDINGS.)

 9         MR. HADJIS:  THIS IS WINNIE, CORRECT?

10       MS. LEUNG, DO YOU USE TECHNOLOGY IN YOUR EVERYDAY LIFE?

11            PROSPECTIVE JUROR:  JUST THE IPAD COMPUTER, YEAH.

12         MR. HADJIS:  OKAY.

13            PROSPECTIVE JUROR:  OR IPHONE.

14         MR. HADJIS:  AND I BELIEVE YOU MENTIONED THAT YOU'RE

15    INVOLVED IN A NETWORKING BUSINESS; IS THAT CORRECT?

16            PROSPECTIVE JUROR:  YES.

17         MR. HADJIS:  DO YOU USE TECHNOLOGY IN THAT BUSINESS?

18            PROSPECTIVE JUROR:  NOT MUCH, YOU KNOW, JUST THE

19    REGULAR TRANSACTION THAT WE USE IPAD.

20         MR. HADJIS:  AND WHAT TYPE OF TRANSACTION ARE YOU

21    REFERRING TO?

22            PROSPECTIVE JUROR:  LIFE INSURANCE, YOU KNOW, WHEN

23    YOU DO THE APP.

24         MR. HADJIS:  I TAKE IT YOU SPEAK -- DO YOU SPEAK

25    CHINESE?
```

```
1              PROSPECTIVE JUROR:  YES.

2          MR. HADJIS:  DO YOU SPEAK SIMPLIFIED CHINESE?

3              PROSPECTIVE JUROR:  BOTH.

4          MR. HADJIS:  SIMPLIFIED AND TRADITIONAL?

5              PROSPECTIVE JUROR:  YES.

6          MR. HADJIS:  HOW ABOUT MANDARIN?

7              PROSPECTIVE JUROR:  YES.

8          MR. HADJIS:  CANTONESE?

9              PROSPECTIVE JUROR:  YES.

10         MR. HADJIS:  HOW MUCH OF YOUR DAY IN SPEAKING IS

11   DEVOTED TO ONE OF THE DIALECTS OF CHINESE THAT I MENTIONED

12   VERSUS ENGLISH?

13             PROSPECTIVE JUROR:  CANTONESE MORE.

14         MR. HADJIS:  MORE THAN ENGLISH?

15             PROSPECTIVE JUROR:  THAN ENGLISH, YES.

16         MR. HADJIS:  AND HOW MUCH TIME DO YOU SPEND SPEAKING

17   ENGLISH?

18             PROSPECTIVE JUROR:  LIKE 50/50.

19         MR. HADJIS:  OKAY.  THANK YOU.

20             PROSPECTIVE JUROR:  OKAY.

21         MR. HADJIS:  THANKS.

22      IF YOU COULD HAND THE MICROPHONE TO MR. SOBCZYNSKI

23   SOBCZYNSKI.  SOBCZYNSKI.

24                 (PAUSE IN THE PROCEEDINGS.)

25         MR. HADJIS:  I -- I FOUND YOUR DISCUSSION ABOUT
```

1    PATENTS AND THE ABILITY TO CHALLENGE THEM IN COURT

2    INTERESTING.  YOU MENTIONED THAT YOU BELIEVE THAT WHOEVER

3    INVENTED THE PATENT SHOULD PROFIT FROM IT.

4            **PROSPECTIVE JUROR:**  YES.

5            **MR. HADJIS:**  OKAY.  AND LET ME ASK YOU WHY YOU

6    CHECKED THE BOX THAT YOU BELIEVE THAT PATENTS SHOULDN'T BE

7    CHALLENGED.

8            **PROSPECTIVE JUROR:**  WELL, I -- IT'S A LITTLE

9    DIFFICULT TO EXPLAIN, BUT, WELL, I THINK THAT IF SOMEBODY HAS

10   BEEN GRANTED A PATENT, THERE HAD TO BE SOME KIND OF A REASON

11   FOR THE GRANT.  AND IN MY MIND, THAT WILL ELIMINATE ANY KIND

12   OF SNEAKINESS AND SOME OTHER LITTLE TRICKINESS IN A FORM OF

13   CHALLENGING.  AND THERE WAS A REASON FOR GIVING IT TO BEGIN

14   WITH.

15           **MR. HADJIS:**  ARE YOU OF THE BELIEF THAT THE AGENCY

16   THAT GRANTS THE PATENTS IS DOING A GOOD JOB, DOES A GOOD JOB,

17   DOESN'T MAKE MISTAKES?

18           **PROSPECTIVE JUROR:**  I DEFINITELY BELIEVE IN THAT,

19   YES.

20           **MR. HADJIS:**  OKAY.  YOU MENTIONED THAT THE INVENTOR

21   SHOULD PROFIT FROM THE PATENT.

22           **PROSPECTIVE JUROR:**  YES.

23           **MR. HADJIS:**  WHAT ABOUT IF A PATENT IS SOLD TO

24   ANOTHER COMPANY AND THE OTHER COMPANY BUYS IT AND ATTEMPTS TO

25   PROFIT FROM IT?

1    **PROSPECTIVE JUROR:**  I THINK THAT'S -- THAT'S -- THAT

2    SHOULD BE OKAY.

3         **MR. HADJIS:**  OKAY.  THANK YOU.

4         IF YOU CAN THEN PASS THE MICROPHONE TO MS. WEE, WENDY.

5              (PAUSE IN THE PROCEEDINGS.)

6         **MR. HADJIS:**  MS. WEE, WERE THE PATENTS THAT YOU'VE

7    BEEN INVOLVED WITH CREATED THROUGH RESEARCH AND DEVELOPMENT

8    INVESTMENT MONEY THAT HAD BEEN INVESTED BY THE COMPANIES THAT

9    YOU WERE WORKING FOR?

10        **PROSPECTIVE JUROR:**  RIGHT.  I'M NOT PERSONALLY

11   INVOLVED WITH THE PATENTS ITSELF.  IT'S JUST THAT MY COMPANY

12   FILES A LOT OF PATENTS FOR, YOU KNOW, FOR THE DRUG PRODUCT

13   CANDIDATES.  SO THE PATENTS WOULD INVOLVE LIKE FORMULATION OR

14   THE WAY IT'S MANUFACTURED AND SUCH.

15        **MR. HADJIS:**  AND WOULD THESE BE BRANDED

16   PHARMACEUTICAL-TYPE PATENTS THAT YOU'RE SPEAKING OF?

17        **PROSPECTIVE JUROR:**  RIGHT.

18        **MR. HADJIS:**  DO YOU HAVE EXPERIENCE IN YOUR POSITION

19   WITH MERGERS, ACQUISITIONS, IPO'S OR BUYOUTS?

20        **PROSPECTIVE JUROR:**  YES, I DO.

21        **MR. HADJIS:**  WHAT'S YOUR EXPERIENCE BEEN IN THAT

22   REGARD?

23        **PROSPECTIVE JUROR:**  WELL, MY COMPANY HAS JUST BEEN

24   ACQUIRED SO IT'S A MERGER.  SO WE WERE ACQUIRED, SO --

25        **MR. HADJIS:**  EXCELLENT.  AND DID YOU TAKE PART IN

```
 1      THAT TRANSACTION?

 2              PROSPECTIVE JUROR:  YES.

 3          MR. HADJIS:  AND HOW DID YOU TAKE PART IN THAT

 4     TRANSACTION?

 5              PROSPECTIVE JUROR:  WELL, THERE ARE A LOT OF

 6     FINANCIAL DUE DILIGENCE, AND THEN THERE ARE S.E.C. FILINGS.

 7              MR. HADJIS:  THANK YOU.

 8         ARE YOU FAMILIAR WITH S.E.C. FILINGS?

 9              PROSPECTIVE JUROR:  YES.

10              MR. HADJIS:  DO YOU WORK WITH THEM?

11              PROSPECTIVE JUROR:  WELL, WE -- I WORK FOR A PUBLIC

12     COMPANY, SO WE HAVE 10-K'S AND 10-Q'S AND S-3'S AND --

13              MR. HADJIS:  ARE YOU INVOLVED IN REVIEWING THEM AND

14     PUTTING THEM TOGETHER AS PART OF THE FILING PROCESS?

15              PROSPECTIVE JUROR:  YES.  I -- I SIGN -- I'M AN

16     OFFICER OF THE COMPANY SO I DO SIGN THE S -- THE 10-K AND Q'S.

17              MR. HADJIS:  THANK YOU.  AND I REALLY DO APPRECIATE

18     IT.

19         CAN YOU PASS YOUR MICROPHONE TO MR. PENATE.

20         GOOD MORNING.

21              PROSPECTIVE JUROR:  GOOD MORNING.

22              MR. HADJIS:  ALTHOUGH MY HAIRCUT MAY MAKE YOU THINK

23     I'M IN THE MILITARY OR HAVE BEEN, I HAVEN'T.  BUT I HAVE A LOT

24     OF FAMILY THAT'S BEEN IN THE MILITARY.  I KNOW IT WELL.

25         I HAD A COUPLE OF QUESTIONS ABOUT -- ABOUT YOUR
```

1    EXPERIENCE, TECHNOLOGY.  WHAT TYPES OF TECHNOLOGY HAVE YOU

2    USED IN YOUR WORK EXPERIENCE?

3              **PROSPECTIVE JUROR:**  COMPUTER, REGULAR COMPUTERS,

4    LAPTOPS, DESKTOPS, IPHONE, IPAD, ANDROID, PRETTY MUCH

5    EVERYTHING.

6              **MR. HADJIS:**  HAVE YOU USED OR SEEN OR UNDERSTAND WHAT

7    AN E-READER IS?

8              **PROSPECTIVE JUROR:**  AN E-READER?

9         **MR. HADJIS:**  YES.

10        **PROSPECTIVE JUROR:**  YES.

11        **MR. HADJIS:**  OKAY.  WHAT IS YOUR UNDERSTANDING OF IT?

12             **PROSPECTIVE JUROR:**  IT CAN DOWNLOAD A BOOK FROM

13   AMAZON.

14        **MR. HADJIS:**  DO YOU HAVE AN AREA OF FOCUS?  WHEN YOU

15   RECEIVED YOUR BACHELOR'S IN BUSINESS, IS THERE A PARTICULAR

16   AREA OR AREAS THAT YOU FOCUSED IN DURING THAT -- THAT -- THAT

17   TIME OF STUDY OR COURSE WORK BEFORE YOU RECEIVED THE DEGREE?

18             **PROSPECTIVE JUROR:**  NO, NO AREA OF FOCUS.

19        **MR. HADJIS:**  OKAY.  THANK YOU.

20        IF YOU COULD PASS THE MICROPHONE TO MS. CHAN.

21                  (PAUSE IN THE PROCEEDINGS.)

22        **MR. HADJIS:**  HI, HOW ARE YOU?

23        **PROSPECTIVE JUROR:**  HI.

24        **MR. HADJIS:**  GOOD.  I THINK I RECALL THAT YOU HAD

25   INDICATED THAT YOU'VE DONE SOME WORK IN THE AREA OF COMIC

```
1    BOOKS?

2            PROSPECTIVE JUROR:  YES.

3            MR. HADJIS:  HAVE YOU BEEN INVOLVED IN IP ISSUES IN

4    THE ARTS?

5            PROSPECTIVE JUROR:  MOSTLY SIGN -- BEFORE WE WORK, WE

6    SIGN A CONTRACT.  IN THE CONTRACT, IT WILL SAY WE GIVING ALL

7    THE COPYRIGHT TO THE -- TO -- TO THE OTHER PARTY, OR WE KEEP

8    LIKE HALF AND HALF, SOMETHING LIKE THAT.

9            MR. HADJIS:  ARE YOU INVOLVED IN THE CREATION OR THE

10   NEGOTIATION OR EVEN THE SIGNING OF THE CONTRACT?

11           PROSPECTIVE JUROR:  I CREATE AND I -- I DIDN'T -- I

12   DIDN'T CREATE ANY CONTRACT.  I JUST LIKE -- I SIGN THAT.

13           MR. HADJIS:  UM-HMM.  AND WHOSE WORK IS SUBJECT TO

14   THE CONTRACT?  IS IT YOURS OR IS IT ANOTHER PARTY'S?  WHOSE

15   ARTISTIC WORK?

16           PROSPECTIVE JUROR:  I -- I THINK I'M NOT REALLY

17   UNDERSTAND THE QUESTIONS.

18           MR. HADJIS:  OKAY.

19      THE -- THE COMICS THAT YOU WRITE --

20           PROSPECTIVE JUROR:  UH-HUH.

21           MR. HADJIS:  -- ARE THEY THE PURPOSE THAT THE

22   CONTRACT IS MADE, TO PROTECT THOSE?

23           PROSPECTIVE JUROR:  IT'S MORE LIKE GIVING THE RIGHT

24   TO THE OTHER PARTY TO PRINT IT AND SELL IT.

25           MR. HADJIS:  UNDERSTOOD.  THANK YOU.
```

```
 1        IF YOU COULD PASS THE MICROPHONE, I BELIEVE, DIRECTLY TO

 2   YOUR RIGHT TO MR. CORY.

 3            THE COURT:  THREE MINUTES, COUNSEL.

 4            MR. HADJIS:  EXCUSE ME, YOUR HONOR?

 5            THE COURT:  THREE MINUTES LEFT.

 6            MR. HADJIS:  THREE MINUTES.  THANK YOU.

 7        GOOD MORNING, MR. CORY.

 8            PROSPECTIVE JUROR:  MORNING.

 9            MR. HADJIS:  HAVE YOU EVER WORKED ON ELECTRICAL

10   DEVICES, FIXED COMPUTERS OR -- OR BUILT THEM IN SOME WAY?

11            PROSPECTIVE JUROR:  NO.

12            MR. HADJIS:  OKAY.  AND HAVE YOU EVER WORKED WITH

13   SOFTWARE?  HAVE YOU CODED OR HAVE YOU DONE SOFTWARE UPDATES TO

14   DEVICES?

15            PROSPECTIVE JUROR:  OTHER THAN LIKE THROUGH CELL

16   PHONES, NO.

17            MR. HADJIS:  AND BY THROUGH CELL PHONES, YOU MEAN

18   UPDATING SOFTWARE?

19            PROSPECTIVE JUROR:  UPDATING SOFTWARE ON IT.

20            MR. HADJIS:  NOW, YOU MENTIONED THAT YOU RECEIVED

21   PAYMENT BY COMMISSION, I BELIEVE, IN YOUR PRIOR JOB.

22            PROSPECTIVE JUROR:  THAT'S CORRECT.

23            MR. HADJIS:  OKAY.  AND WHAT WAS THE -- THE

24   COMMISSION?  WHAT WAS THE RATE?

25            PROSPECTIVE JUROR:  IT JUST REALLY DEPENDED ON, LIKE,
```

```
 1   THE CONTRACTS.  SO DEPENDS ON, LIKE, HOW MANY LINES, LIKE, SO

 2   JUST REALLY DEPENDS ON, LIKE, PER PARTY.

 3           MR. HADJIS:  DO YOU RECALL THE RANGE, SORT OF LOW END

 4   AND THE HIGH END THAT YOU WOULD GET?

 5           PROSPECTIVE JUROR:  IT'S PROBABLY ANYWHERE FROM LIKE

 6   1,500 TO 2,000 A MONTH LIKE COMMISSIONS.

 7           MR. HADJIS:  AND WAS IT EXPRESSED IN PERCENTAGES?  OR

 8   JUST SIMPLY DOLLAR?

 9           PROSPECTIVE JUROR:  FLAT RATE, LIKE EIGHT BUCKS FOR

10   THIS, LIKE TEN FOR THAT, SORT OF.

11           MR. HADJIS:  I SEE.  AND DO YOU UNDERSTAND THE

12   PERCENTAGE THAT IT AMOUNTED TO?  DO YOU HAVE ANY -- ANY

13   UNDERSTANDING?

14           PROSPECTIVE JUROR:  NO, I DON'T REMEMBER WHAT IT WAS.

15           MR. HADJIS:  THANK YOU.

16      THANK YOU VERY MUCH.  I HAVE NO FURTHER QUESTIONS, YOUR

17   HONOR.

18           THE COURT:  OKAY.  I HAVE ONE FOLLOW-UP QUESTION FOR

19   MS. GRACEFFA.  WHAT DAY IS YOUR TRIP SCHEDULED?

20           PROSPECTIVE JUROR:  THE 24TH OF SEPTEMBER UNTIL THE

21   29TH.

22           THE COURT:  ALL RIGHT.  SO THAT'S A WEDNESDAY?

23           PROSPECTIVE JUROR:  YEAH.

24           THE COURT:  OKAY.

25      LADIES AND GENTLEMEN, AT THIS POINT, WHAT I'M GOING TO ASK
```

1    YOU TO DO, YOU ARE GOING TO TAKE A RECESS.  WE ARE NOT.  WE

2    HAVE SOME THINGS TO DO OUTSIDE OF YOUR PRESENCE.  THIS WILL

3    NOT TAKE US THAT LONG.  I AM GOING TO ASK THAT YOU ALL LEAVE,

4    STAY RELATIVELY CLOSE.  THERE IS A SNACK MACHINE IN THE JURY

5    ROOM.  IF YOU WANT TO RACE OUT AND TRY TO GET SOMETHING ACROSS

6    THE STREET, YOU'RE WELCOME TO, BUT I WANT YOU BACK HERE AT

7    12:30.  SO YOU ONLY HAVE ABOUT 15 MINUTES.  IT WON'T TAKE

8    LONG.  I WAS TRYING TO COMBINE THE TWO RECESSES BUT EVERYBODY

9    HAD TO USE THE BATHROOM, SO IT IS WHAT IT IS.

10        THERE ARE A COUPLE OF INSTRUCTIONS.  ONE, WE'VE TALKED

11   ABOUT A LOT OF ISSUES THIS MORNING INTO THIS EARLY AFTERNOON.

12   DO NOT DISCUSS THEM WITH EACH OTHER.  IF YOU'RE STANDING IN

13   LINE, YOU ARE PROHIBITED FROM TALKING ABOUT ANYTHING RELATED

14   TO THIS CASE.  BECAUSE IF WE HAVE FOLLOW-UP QUESTIONS FOR

15   THOSE OF YOU UP HERE OR QUESTIONS FOR MORE PEOPLE IN THE BACK,

16   THE PARTIES ARE ENTITLED TO HAVE YOUR OPINIONS BASED UPON YOUR

17   OWN BELIEFS, NOT BASED UPON SOME CONVERSATION YOU MAY HAVE HAD

18   WITHIN THE NEXT 15 MINUTES.  OKAY?  SO NO DISCUSSING THE CASE.

19        WHEN YOU COME BACK, WE WILL OPEN THE DOORS AT 12:30.  DO

20   NOT COME UP TO THESE SEATS.  STAY BACK.  EVERYBODY SHOULD BE

21   IN THE BACK.  OKAY?  I MAY HAVE TO CALL UP A COUPLE MORE

22   PEOPLE, BUT WHEN YOU COME BACK, DON'T COME UP HERE, JUST SIT

23   IN THE GALLEY.  ALL RIGHT.

24        SO I'LL EXCUSE YOU AT THIS POINT.  SO IF EVERYONE WOULD

25   TAKE THEIR THINGS, LEAVE THE COURTROOM, AND BE BACK HERE IN 15

```
1    MINUTES.

2         (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

3    OF THE JURY VENIRE:)

4         THE COURT:  THE RECORD WILL REFLECT THAT THE JURY

5    POOL HAS LEFT THE COURTROOM.

6         GENTLEMEN, CHALLENGES FOR CAUSE?  WE'LL BEGIN WITH YOU,

7    MR. SLENKOVICH.

8              THE CLERK:  THIS MIDDLE MIC IS ON.

9         MR. SLENKOVICH:  JUROR NO. 17.  I'M SORRY.  JUROR

10   NO. -- MR. LAKSHMANAN, PRONOUNCING HIS NAME, IDENTIFIED THAT

11   HE HAS INDEPENDENT KNOWLEDGE OF THE CHIPS IN QUESTION OR AT

12   LEAST OF THE ARCHITECTURE INVOLVED, THAT HE IS FAMILIAR WITH

13   FREESCALE AND FREESCALE'S ARCHITECTURE.  WE THINK THAT THAT

14   WOULD RESULT IN HIM BRINGING OUTSIDE KNOWLEDGE TO THE -- TO

15   THE TABLE ON DISCUSSIONS.  AND SO WE THINK THAT -- THINK THAT

16   THAT WOULD BE A BASIS FOR CAUSE.  HE STATED, "BECAUSE OF MY

17   EXPOSURE TO THE TECH, IT WOULD BE HARD FOR ME TO MAKE A

18   DECISION PURELY BASED ON WHAT IS PRESENTED."

19             THE COURT:  RESPONSE.

20        MR. HADJIS:  YES, YOUR HONOR.  WHEN HE WAS ASKED IF

21   HE COULD BE IMPARTIAL, IF HE COULD JUST LISTEN AND CONSIDER

22   WHAT WAS BEING PRESENTED TO HIM, HE INDICATED THAT HE COULD.

23   AND I DID ASK HIM ABOUT HIS FAMILIARITY WITH THE FREESCALE

24   PRODUCTS THAT ARE AT ISSUE IN THIS CASE.  THE I.MX, THE MPC,

25   AND THE MXC, AND HE DID NOT INDICATE THAT HE HAD A FAMILIARITY
```

1    WITH THOSE PARTICULAR PRODUCTS.  SO WE THINK THAT HE SHOULD

2    NOT BE STRICKEN FOR CAUSE.  HE SHOULD REMAIN ON THE JURY.  AND

3    FRANKLY MIGHT BE A VALUABLE ASSET TO THE JURY.

4            **THE COURT:**  OKAY.

5            **MR. SLENKOVICH:**  YOUR HONOR, I DON'T THINK -- HE DID

6    NOT KNOW WHAT THOSE PRODUCT NUMBERS WERE.  SO HE DIDN'T KNOW

7    WHETHER HE WAS FAMILIAR WITH THOSE PRODUCTS.

8            **THE COURT:**  REQUEST IS DENIED.

9            **MR. SLENKOVICH:**  OKAY.

10           **THE COURT:**  MR. HADJIS?  CHALLENGE FOR CAUSE.

11           **MR. HADJIS:**  NO CAUSE CHALLENGES.

12           **THE COURT:**  ANY MORE FOR YOU, MR. SLENKOVICH?

13           **MR. SLENKOVICH:**  YES, YOUR HONOR.  MS. GRACEFFA WHO

14   INDICATED THAT SHE HAD A WORK CONFLICT AND THAT SHE WOULD BE

15   DISTRACTED FROM HER DUTIES AS A JUROR BY HER WORK SITUATION.

16           **THE COURT:**  ANY RESPONSE?

17           **MR. HADJIS:**  YOUR HONOR, WE DON'T SEE WHY SHE WOULD

18   BE STRICKEN FOR CAUSE.  SHE INDICATED THAT -- THAT SHE COULD

19   SERVE.

20           **THE COURT:**  I'M NOT GOING TO STRIKE HER FOR CAUSE.

21   THIS -- THIS CASE SHOULD BE DONE BY THE 24TH.  AND IF IT'S

22   NOT -- I'M SEATING NINE JURORS -- IF I'M FORCED TO LET HER OFF

23   ON THE 24TH BECAUSE SHE CAN'T MAKE THAT TRIP, THEN I CAN LET

24   HER GO.  AND I WILL LET HER GO ON THE -- ON THE 24TH.  WE'VE

25   GOT FIVE DAYS.  THAT SHOULD BE PLENTY OF TIME TO DELIBERATE.

1    I MAKE SURE THAT THE JURORS HAVE THE EXTRA TIME JUST IN CASE.

2    BUT I ONLY NEED TO END THIS CASE WITH SIX JURORS.

3        AND, YOU KNOW, I TALKED TO HER ABOUT THE HARDSHIP, AND SHE

4    INDICATED TO ME THAT IT WAS NO LESS SEVERE THAN ANYONE ELSE.

5    SO IT WILL BE TOUGH ON HER, BUT I DON'T -- I DON'T THINK I

6    SHOULD LET HER GO.

7        YES?  ANYTHING ELSE, MR. HADJIS?

8            **MR. HADJIS:**  I WAS JUST GOING TO ASK, YOUR HONOR, AND

9    ADD THAT -- THAT WE DO HAVE A COUPLE OF -- ACTUALLY I BELIEVE

10   THREE HARDSHIPS THAT WE'D LIKE TO IDENTIFY AND -- AND DISCUSS.

11           **THE COURT:**  WELL, THERE ARE THREE PEOPLE FOR WHOM

12   IT'S NOT A HARDSHIP THAT I HAVE CONCERNS ABOUT.  I HAVE

13   LANGUAGE ISSUES, WHICH I THINK DOESN'T QUALIFY THEM.  IT'S A

14   DIFFERENT -- DIFFERENT BASIS FOR REJECTING THEM.  THE ONES WHO

15   DO NOT APPEAR TO UNDERSTAND A HUNDRED PERCENT OF WHAT'S GOING

16   ON IN THE COURTROOM IN TERMS OF JUST LANGUAGE, IN MY VIEW, ARE

17   MS. CHAN, MS. LEUNG, AND MR. OW.

18       ALL OF THEM, AS I TALKED TO THEM, I THOUGHT STRUGGLED WITH

19   ANSWERING SOME BASIC QUESTIONS.

20       ANY COMMENTS?  IF NOT, I'M PREPARED TO EXCUSE THOSE THREE.

21           **MR. HADJIS:**  WE ARE IN AGREEMENT WITH THAT, YOUR

22   HONOR.

23           **MR. SLENKOVICH:**  WHO WERE THE THREE, YOUR HONOR?  I

24   HAVE OW, CHAN.

25           **THE COURT:**  CHAN, NO. 3.  MS. CHAN, WHO IS THE --

1              **MR. HADJIS:**  SHE'S INVOLVED WITH THE COMICS.

2              **THE COURT:**  SHE'S THE COMIC.

3        MS. LEUNG WHO IS AT THE END OF THE ROW, NO. 9, WHO

4    COULDN'T TELL ME -- REALLY DIDN'T EVEN UNDERSTAND WHAT A

5    FOREPERSON WAS WHEN I WAS DISCUSSING WITH HER HER PRIOR DUTY.

6    AND THEN MR. OW, EVEN THOUGH HE'S BEEN WORKING FOR THE POST

7    OFFICE FOR A LONG TIME, HE SEEMS TO STRUGGLE WITH BASIC

8    ENGLISH CONVERSATION.

9              **MR. SLENKOVICH:**  OF THE THREE MY IMPRESSION WAS THAT

10   MR. OW WAS THE -- WAS KIND OF GETTING THINGS A LOT BETTER AND

11   HE -- HE DOES NEED TO, I THINK, DEAL WITH ENGLISH IN HIS

12   ORDINARY BUSINESS ACTIVITY.  SO I THINK OF THE THREE, IF ANY

13   OF THEM WERE TO STAY, IT WOULD BE MR. OW.

14             **THE COURT:**  ANY COMMENTS, MR. HADJIS?

15             **MR. HADJIS:**  YOUR HONOR, WE CERTAINLY DID TAKE IT THE

16   WAY THAT YOU DID, THAT THE THREE THAT YOU'VE IDENTIFIED WERE

17   HAVING DIFFICULTIES WITH THE LANGUAGE.  AND GIVEN THE

18   TECHNICAL NATURE AND THE DENSENESS OF THE ENGLISH LANGUAGE

19   THAT WILL BE USED BY THE WITNESSES IN THIS CASE, WE THINK IT'S

20   A TERRIBLY DIFFICULT CHALLENGE FOR -- FOR THOSE FOLKS.

21             **THE COURT:**  I'M -- I'M GOING TO EXCUSE THEM,

22   MR. SLENKOVICH.  I'VE DONE THIS OFTEN ENOUGH THAT I HAVE A

23   SENSE WHEN PEOPLE ARE TRYING TO GET OFF THE JURY, AND I -- AND

24   I'M SERIOUS, THE UNITED STATES POSTAL WORKERS NEVER TRY TO GET

25   OFF JURIES.  THEY'RE PAID A HUNDRED PERCENT.  THEY AND KAISER,

```
 1    THEY ALWAYS WANT TO SERVE ON JURIES BECAUSE IT'S A BREAK FROM

 2    THEIR NORMAL ROUTINE.

 3        IF THIS WAS A CRIMINAL CASE OR SOME CASE WHERE IT WAS

 4    JUST, YOU KNOW, THE FACTS WERE SOMETHING THAT I THINK HE COULD

 5    UNDERSTAND AND APPRECIATE, I WOULDN'T STRIKE HIM.  BUT GIVEN

 6    THE NEED NOT ONLY TO UNDERSTAND ENGLISH, BUT TECHNICAL

 7    ENGLISH, OR AT LEAST TRY TO COMPREHEND IT, I DON'T THINK THAT

 8    HE'S QUALIFIED.

 9        SO THOSE THREE, I'M PREPARED TO STRIKE.

10        THE OTHER ONE THAT I AM PREPARED TO STRIKE IS

11    MR. SOBCZYNSKI.  IT IS NOT AT ALL CLEAR TO ME THAT HIS

12    91-YEAR-OLD MOTHER IS GOING TO SURVIVE WITHOUT HIM FOR THREE

13    WEEKS.

14        SO ANY COMMENTS?

15            MR. HADJIS:  WE HE WERE GOING TO ACTUALLY RAISE THAT

16    QUESTION TO YOUR HONOR SO WE ABSOLUTELY AGREE.

17            MR. SLENKOVICH:  WE'RE IN AGREEMENT, YOUR HONOR.

18            THE COURT:  OKAY.

19        SO THOSE FOUR, THEN, ARE STRICKEN.  I WILL NOW TAKE --

20    UNLESS THERE'S SOMETHING ELSE YOU WANT ME TO CONSIDER, I'LL

21    TAKE YOUR PEREMPTORY CHALLENGES.

22        YOUR CHALLENGES, REMEMBER, ARE TO THE ENTIRE SET OF 18.

23            MR. SLENKOVICH:  SO, YOUR HONOR, JUST SO I HAVE IT,

24    THE FOUR THAT HAVE BEEN STRICKEN ALREADY ARE OW.

25            THE COURT:  OW.
```

```
1              MR. SLENKOVICH:  CHAN.

2              THE COURT:  LEUNG.

3              MR. SLENKOVICH:  LEUNG.

4              THE COURT:  AND SOBCZYNSKI.

5              MR. SLENKOVICH:  OKAY.  THANK YOU, YOUR HONOR.

6              THE COURT:  ALL RIGHT.  WE WILL BEGIN WITH YOU,

7      MR. SLENKOVICH, YOUR FIRST PEREMPTORY.

8              MR. SLENKOVICH:  YES, YOUR HONOR.  MR. LAM, HY LAM,

9      RANDOM NO. 5.

10              THE COURT:  LAM IS NO. 8.

11              MR. SLENKOVICH:  YES, YOUR HONOR.

12              THE COURT:  OKAY.  MR. LAM IS STRUCK.

13          MR. HADJIS?

14                  (PAUSE IN THE PROCEEDINGS.)

15              MR. HADJIS:  YOUR HONOR, MEGH, M-E-G-H, TAMANG,

16      T-A-M-A-N-G.

17              THE COURT:  TAMANG.  MS. TAMANG IS STRUCK.

18          MR. SLENKOVICH.

19          SHE WAS JUROR NO. 16.

20              MR. SLENKOVICH:  YES, YOUR HONOR.  MS. WATKINS.

21              THE COURT:  MS. WATKINS IS STRUCK.

22          MR. HADJIS?

23              MR. HADJIS:  MR. ROBERT CELLI.

24              THE COURT:  MR. CELLI IS STRUCK.

25          MR. SLENKOVICH?
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

```
 1                    (PAUSE IN THE PROCEEDINGS.)

 2          MR. SLENKOVICH:  YOUR HONOR, MR. PENATE.

 3          THE COURT:  MR. PENATE IS STRUCK.

 4      OKAY.  DEFENSE?

 5          MR. HADJIS:  MS. WENDY WEE.

 6          THE COURT:  OKAY.  MS. WEE IS STRUCK.

 7      NOW I'M GOING TO STOP YOU AT THIS MOMENT.

 8      MAKE SURE YOU'RE VERY CLEAR ABOUT WHAT'S HAPPENING.  YOU

 9  EACH HAVE ONE STRIKE LEFT.

10      JUST GIVE ME A MOMENT HERE RIGHT NOW.  I HAVE SEVEN

11  MEMBERS LEFT.  HOLD ON.  NO, I HAVE EIGHT.  SHOULD HAVE EIGHT.

12      OKAY.  LET'S GO THROUGH THIS.

13      SO BENSON IS STILL ON.

14      CELLI HAS BEEN STRUCK BY THE DEFENSE.

15      CHAN WAS STRUCK BY THE COURT.

16      CORY IS STILL ON.

17      ELLIOTT IS STILL ON.

18      GRACEFFA IS STILL ON.

19      LAKSHMANAN IS STILL ON.

20                  (OFF-THE-RECORD DISCUSSION.)

21          THE COURT:  LAM HAS BEEN STRUCK.

22      LEUNG HAS BEEN STRUCK.

23      OW HAS BEEN STRUCK.

24      PENATE HAS BEEN STRUCK.

25      SILVA IS STILL ON.
```

```
 1          SOBCZYNSKI HAS BEEN STRUCK.

 2          SOPAPAN, OR HOWEVER YOU SAY THAT, HAS BEEN -- IS STILL ON.

 3          SPONBURG IS STILL ON.

 4          TAMANG HAS BEEN STRUCK.

 5          WATKINS HAS BEEN STRUCK.

 6          AND WEE HAS BEEN STRUCK.

 7          SO THAT IS ONE, TWO, THREE, FOUR, FIVE, SIX, SEVEN, EIGHT.

 8          OKAY.  I AM --

 9              MR. SLENKOVICH:  YOUR HONOR, WE HAVE NINE.  I DON'T

10     KNOW WHY THE NUMBERS AREN'T MATCHING UP.

11              THE COURT:  I DON'T KNOW EITHER.  WHICH LIST ARE YOU

12     LOOKING AT?

13              MR. HADJIS:  WE HAVE EIGHT, YOUR HONOR.

14              MR. SLENKOVICH:  THIS IS THE JUDGE'S LIST.

15              THE COURT:  OKAY.  THE JUDGE'S LIST STARTING AT THE

16     TOP.

17          OW IS GONE.

18              MR. SLENKOVICH:  YES.

19              THE COURT:  NO. 1 IS SOPAPAN.

20          NO. 2 IS SILVA.

21          NO. 3 IS CORY.

22          THE NEXT FOUR ARE STRUCK.

23              MR. SLENKOVICH:  YES.

24              THE COURT:  SO NO. 4 IS BENSON.

25          TAMANG IS GONE.
```

```
1        SO NO. 5 IS ELLIOTT.

2        THE NEXT TWO ARE STRUCK.

3        NO. 6 IS GRACEFFA.

4        PENATE IS STRUCK.

5            MR. SLENKOVICH:  NOW WE UNDERSTAND WHAT HAPPENED.

6            THE COURT:  OKAY.  SO SPONBURG IS ON.

7        AND LAKSHMANAN IS ON.

8            MR. SLENKOVICH:  YES.

9            THE COURT:  OKAY.  SO THAT'S EIGHT.  YOU EACH HAVE

10    ONE PEREMPTORY LEFT.  YOU DO NOT KNOW WHO IS COMING UP.  AND

11    I'M NOT GOING TO TELL YOU.

12        SO YOU USE IT, YOU'RE DONE.  EVERYBODY UNDERSTAND WHAT'S

13    AT STAKE?  YES?

14            MR. SLENKOVICH:  YES, YOUR HONOR.  IF WE DO NOT USE

15    IT ON ONE OF THESE EIGHT, THEN WE'RE NOT GOING TO BE ABLE TO

16    CHALLENGE THAT ONE LATER.

17            THE COURT:  CORRECT.

18            MR. HADJIS:  WE ALSO UNDERSTAND IT.

19            THE COURT:  OKAY.

20            MR. HADJIS:  WE -- SORRY, GO AHEAD.  CAN WE --

21            THE COURT:  LET ME -- IN LIGHT OF WHERE WE ARE,

22    FRANKLY, I'M RECONSIDERING.  I THINK I AM GOING TO STRIKE

23    GRACEFFA SO I DON'T HAVE TO WORRY ABOUT A TRIP ON THE BACK

24    END.

25        I'VE GOT 20 PEOPLE LEFT IN THE COURTROOM.  IS THERE ANY
```

```
 1    OBJECTION?

 2            MR. SLENKOVICH:  NO, YOUR HONOR.

 3            THE COURT:  ANY OBJECTION?

 4            MR. HADJIS:  NONE FROM --

 5            THE COURT:  OKAY.

 6            MR. HADJIS:  -- DEFENDANTS, YOUR HONOR.

 7            THE COURT:  SO I'M GOING TO STRIKE HER.  THAT WAY WE

 8    DON'T HAVE TO WORRY ABOUT THAT.

 9         SO NOW THERE ARE TWO SPOTS LEFT.

10         OKAY.  SO WE HAVE SEVEN FROM THIS SET.  TWO SPOTS LEFT.

11    YOU EACH HAVE A CHALLENGE.  DO YOU WANT TO USE IT AT THIS

12    POINT, MR. SLENKOVICH, YES OR NO?

13            MR. SLENKOVICH:  YES, YOUR HONOR.

14            THE COURT:  OKAY.

15            MR. SLENKOVICH:  LAKSHMANAN.

16            THE COURT:  OKAY.  HE'S STRUCK.  PLAINTIFF IS DONE.

17         DEFENSE, DO YOU WANT TO USE IT AT THIS POINT?

18            MR. HADJIS:  WE DO NOT.

19            THE COURT:  ALL RIGHT.  LET'S CALL THEM BACK IN.

20    THEY SHOULD BE OUT THERE.

21                    (PAUSE IN THE PROCEEDINGS.)

22         (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE PRESENCE OF

23    THE JURY VENIRE:)

24            THE COURT:  OKAY.  WE'RE BACK ON THE RECORD.

25         THE RECORD WILL REFLECT THE JURORS ARE BACK.
```

```
1          COULD I ASK THE FOLLOWING --

2              THE CLERK:  COUNSEL CAN BE SEATED.

3              THE COURT:  CAN I ASK THE FOLLOWING THREE JURORS TO

4     COME UP, PLEASE.  KATHERINE JUE, BROOKE STAGE, AND LINDA

5     HOLMES.

6          MS. JUE WILL BE IN THE FIRST -- FIRST SEAT IN THE BOX.

7     AND THEN MS. STAGE IN THE MIDDLE.

8              THE CLERK:  SO IN THE BOX.

9              THE COURT:  IN THE BOX.  RIGHT THERE.

10         AND THEN MS. HOLMES WOULD BE THE THIRD.

11                   (PAUSE IN THE PROCEEDINGS.)

12             THE COURT:  GOOD AFTERNOON.

13             PROSPECTIVE JUROR:  GOOD AFTERNOON.

14             THE COURT:  CAN WE GET HER THE MIC, PLEASE?

15                   (PAUSE IN THE PROCEEDINGS.)

16             THE COURT:  MS. JUE, AM I SAYING THAT RIGHT?

17             PROSPECTIVE JUROR:  YES, YOU'RE SAYING IT CORRECTLY.

18             THE COURT:  OKAY.  SO YOU'RE A RADIOLOGIST FOR

19    KAISER.  IS THAT A FULL-TIME POSITION?

20             PROSPECTIVE JUROR:  I WORK ON -- WE CALL IT 8/10THS

21    WHICH IS BECAUSE I HAVE SMALL CHILDREN, I GET ONE DAY OFF A

22    WEEK BUT WE'RE STILL ON CALL.

23             THE COURT:  OKAY.  AND YOUR SIGNIFICANT OTHER ALSO

24    WORKS AT KAISER.

25             PROSPECTIVE JUROR:  THAT'S CORRECT.
```

1           **THE COURT:**  AND THAT'S THE PERSON WITH WHOM YOU HAVE

2     THE TWO- AND FIVE-YEAR-OLD?

3           **PROSPECTIVE JUROR:**  YES, THAT'S CORRECT.

4           **THE COURT:**  OKAY.  SO IF YOU WERE SELECTED FOR THIS

5     JURY, ANY PROBLEM GETTING THEM TO SCHOOL GIVEN THAT YOU WOULD

6     ALSO BE OFF BY 1:30 IN THE AFTERNOON?  OR DO THEY DO

7     PRESCHOOL?  WHAT IS IT THAT THEY DO?

8           **PROSPECTIVE JUROR:**  ONE OF MY DAUGHTERS IS IN

9     KINDERGARTEN.

10          **THE COURT:**  OKAY.

11          **PROSPECTIVE JUROR:**  AND MY OTHER DAUGHTER'S IS IN

12    FRENCH IMMERSION PROGRAM, BUT I'M JUST VERY FORTUNATE THAT WE

13    HAVE A VERY GOOD NANNY THAT'S FLEXIBLE WITH HER HOURS.

14          **THE COURT:**  OKAY.  YOU'VE HEARD THE DISCUSSION HERE

15    TODAY ABOUT THE ISSUES THAT ARE INVOLVED IN THIS CASE.  AND

16    I'M LOOKING AT YOUR APPLICATION.  YOU DON'T SEEM TO KNOW ANY

17    OF THE PARTIES.  DIDN'T SEEM TO HAVE ANY OPINIONS ABOUT

18    PATENTS.  ANY CONCERNS?

19          **PROSPECTIVE JUROR:**  NOT -- NOT REALLY.  I -- MOST OF

20    MY CONCERN IS MAKING SURE PATIENTS STAY WELL AND HEALTHY.

21          **THE COURT:**  NO, I UNDERSTAND.

22       MY CONCERN IS THE CONSTITUTION, BUT I APPRECIATE YOUR

23    CONCERNS.

24       AS -- WHEN YOU WENT THROUGH COLLEGE TO GET YOUR M.D., DID

25    YOU -- DID YOU TAKE ANY COURSES IN SOFTWARE?

1          **PROSPECTIVE JUROR:**  NOT REALLY.  I'VE NEVER BEEN THAT

2     TECH-ORIENTED.

3          **THE COURT:**  OKAY.  SO I TAKE IT YOU HAVEN'T WRITTEN

4     ANY CODE?

5          **PROSPECTIVE JUROR:**  NOT AT ALL.

6          **THE COURT:**  BUT YOU DO HAVE A TABLET COMPUTER AND A

7     SMART PHONE AND ALL THAT, YOU ENJOY THE TECHNOLOGY?

8          **PROSPECTIVE JUROR:**  OH, YES.  DEFINITELY.

9          **THE COURT:**  YOU JUST DON'T --

10          **PROSPECTIVE JUROR:**  ESPECIALLY IN OUR FIELD, IN

11     RADIOLOGY, TECHNOLOGY IS VERY IMPORTANT FOR PATIENT CARE.

12          **THE COURT:**  OKAY.  LET'S PASS IT TO MS. STAGE.

13        GOOD MORNING.

14          **PROSPECTIVE JUROR:**  GOOD MORNING.

15          **THE COURT:**  OKAY.  SO YOU'RE -- YOU'RE AT HOME RIGHT

16     NOW; IS THAT RIGHT?

17          **PROSPECTIVE JUROR:**  CORRECT.

18          **THE COURT:**  AND ANY PARTICULAR REASON YOU LEFT JET

19     BLUE?

20          **PROSPECTIVE JUROR:**  YEAH, I GOT TIRED OF MISSING

21     EVERYTHING.  I DIDN'T FEEL WORTH IT FOR THE PAYCHECKS I WAS

22     GETTING.  IT'S A FUN JOB BUT NOT VERY WELL PAID.

23          **THE COURT:**  SO HOW DO YOU SPEND MOST OF YOUR TIME

24     DURING THE DAY?

25          **PROSPECTIVE JUROR:**  I DO EVERYTHING THAT I CAN AROUND

1    THE HOUSE WHILE MY HUSBAND IS AT WORK SO THAT WHEN HE GETS

2    HOME, EVERYTHING IS DONE.  AND HOPEFULLY THIS WILL BE A SHORT

3    PERIOD IN MY LIFE.  I'M JUST NOT QUITE SURE WHAT THE NEXT STEP

4    WILL BE YET.

5              **THE COURT:**  SO YOU'RE IN TRANSITION.

6              **PROSPECTIVE JUROR:**  I HOPE THAT THAT'S THE CASE.  I

7    HOPE I'M ON TO BIGGER AND BETTER THINGS.

8              **THE COURT:**  OKAY.  WHAT DOES HE DO AS AN ENERGY

9    ENGINEER?

10             **PROSPECTIVE JUROR:**  I'M SURE HE WOULD BE THE BETTER

11   PERSON TO ASK AS ALL OF THOSE TECHNICAL JOBS, IT'S HARD TO

12   UNDERSTAND, BUT MY UNDERSTANDING IS HE TAKES AN EXISTING

13   BUILDING AND -- AND MAKES IT MORE ENERGY EFFICIENT, AMONGST

14   OTHER THINGS.

15             **THE COURT:**  AND WHAT DOES NEWCOMB, ANDERSON &

16   MCCORMICK DO?

17             **PROSPECTIVE JUROR:**  THAT'S WHAT THEY DO.  THEY TAKE

18   THE EXISTING WORLD AND -- LIKE THIS COURTHOUSE, FOR EXAMPLE,

19   AND THEY WOULD CHANGE OUT ALL THE LIGHT BULBS.  YOU WOULD PAY

20   THEM TO BE THE EXPERTS IN MAKING, LIKE, THE AC AND HEATING RUN

21   MORE EFFICIENTLY.  AND THEN THEY HAVE SYSTEMS THAT CAN KEEP

22   TRACK OF HOW WELL THAT'S DOING, HOW MUCH IT'S SAVING YOU.

23             **THE COURT:**  OKAY.  SO THEY NOT ONLY DO AN ANALYSIS OF

24   THE STRUCTURE, BUT THEN THEY EITHER SERVE AS GENERAL

25   CONTRACTOR OR HAVE THE FACILITIES TO PUT -- TO IMPLEMENT WHAT

```
 1    THEY'RE RECOMMENDING; IS THAT --

 2                PROSPECTIVE JUROR:  I BELIEVE SO, AND THEN THEY ALSO

 3    HAVE THE SOFTWARE TO TRACK IT AND PROVE THAT THE MONEY YOU'RE

 4    SPENDING ON THEIR SERVICES IS SAVING YOU MONEY IN THE LONG

 5    TERM.

 6                THE COURT:  OKAY.  DO YOU KNOW WHAT HIS DEGREE IS IN?

 7                PROSPECTIVE JUROR:  MECHANICAL ENGINEERING.

 8                THE COURT:  OKAY.  AND ANY CONCERNS THAT YOU HAVE IN

 9    TERMS OF SERVING ON THIS JURY GIVEN WHAT YOU'VE HEARD THUS

10    FAR?

11                PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

12                THE COURT:  OKAY.

13         THANK YOU, MS. STAGE.

14         MS. HOLMES.

15                PROSPECTIVE JUROR:  GOOD MORNING.

16                THE COURT:  GOOD MORNING.

17         WHAT IS YOUR CURRENT OCCUPATION?

18                PROSPECTIVE JUROR:  I'M RETIRED.

19                THE COURT:  OKAY.  AND DID YOU RETIRE FROM THE CITY

20    OF BERKELEY?

21                PROSPECTIVE JUROR:  YES.

22                THE COURT:  OKAY.  HOW ARE YOU ENJOYING YOUR

23    RETIREMENT?

24                PROSPECTIVE JUROR:  IMMENSELY.

25                          (LAUGHTER.)
```

1        **THE COURT:**  HOW LONG HAVE YOU BEEN RETIRED?

2        **PROSPECTIVE JUROR:**  I'M GOING INTO MY TENTH YEAR.

3        **THE COURT:**  OKAY.  HAVE YOU PICKED UP ANY INTERESTING

4    HOBBIES?

5        **PROSPECTIVE JUROR:**  ACTUALLY, I WORK ON CALL FOR

6    ALAMEDA COUNTY SO THAT KEEPS A LITTLE BUSY.  BUT TRAVEL IS MY

7    BIGGEST HOBBY, TRAVEL AND READING.

8        **THE COURT:**  EXCELLENT.  DO YOU HAVE ONE OF THESE

9    E-READERS?

10       **PROSPECTIVE JUROR:**  YES, I DO.

11       **THE COURT:**  DO YOU HAVE ANY CONCERNS ABOUT SERVING ON

12   THIS JURY?

13       **PROSPECTIVE JUROR:**  NO.

14       **THE COURT:**  DO YOU HAVE ANY BIG TRIPS PLANNED THAT I

15   SHOULD KNOW ABOUT IN THE MONTH OF SEPTEMBER?

16       **PROSPECTIVE JUROR:**  NO.  I'M ALREADY -- I JUST GOT

17   BACK FROM A TRIP SO --

18       **THE COURT:**  PERFECT.

19       **PROSPECTIVE JUROR:**  I'M GOOD FOR A MONTH.

20       **THE COURT:**  YOU'RE GOOD FOR A MONTH, AND AFTER THAT

21   THERE'S NO BETS, RIGHT?

22       **PROSPECTIVE JUROR:**  NO BETS.

23       **THE COURT:**  OKAY.

24     MR. SLENKOVICH, ANY QUESTIONS FOR THE THREE?

25       **MR. SLENKOVICH:**  JUST A FEW, YOUR HONOR.  I THINK

```
1    THIS WILL BE VERY QUICK.

2         HAVE ANY OF THE THREE OF YOU OR A CLOSE FAMILY MEMBER EVER

3    BEEN -- SUED SOMEONE OR BEEN SUED BY SOMEBODY BEFORE?

4         AND IF YOU DO, RAISE YOUR HAND.

5         HAVE EITHER -- ANY OF YOU HAD OCCASION TO EITHER TESTIFY

6    IN A COURT OR HAVE A CLOSE FAMILY MEMBER TESTIFY IN A COURT

7    BEFORE?

8              PROSPECTIVE JUROR:  YES.

9         MR. SLENKOVICH:  WHAT KIND OF CASE WAS THAT?

10             PROSPECTIVE JUROR:  CRIMINAL.

11        MR. SLENKOVICH:  AND MS. HOLMES, WAS THAT A CASE HERE

12   IN CALIFORNIA?

13             PROSPECTIVE JUROR:  YES.

14        MR. SLENKOVICH:  OKAY.  AND WHO WAS THE PERSON?

15             PROSPECTIVE JUROR:  I DON'T REMEMBER.  I WAS A CSI OR

16   EVIDENCE TECHNICIAN FOR A LITTLE BIT DURING MY CAREER, SO I

17   HAD TO SOMETIMES TESTIFY IN THAT CAPACITY.  AND ALSO I'M -- I

18   WAS A DISPATCHER.  SO --

19        MR. SLENKOVICH:  I SEE.  SO YOU WOULD GIVE TESTIMONY

20   WITH RESPECT TO EVIDENCE ISSUES?

21             PROSPECTIVE JUROR:  EVIDENCE -- TWO SEPARATE

22   CATEGORIES.  I WAS EVIDENCE TECHNICIAN SO I WOULD HAVE TO

23   TESTIFY IN COURT FOR THAT.  AND SOMETIMES AS A DISPATCHER, I

24   WOULD HAVE TO TESTIFY ALSO.

25        MR. SLENKOVICH:  HOW -- AND HOW WOULD YOU DESCRIBE
```

1    THAT EXPERIENCE FOR YOU?  WAS IT PAINFUL OR WAS IT EXCITING?

2    WAS THERE -- WHAT WAS YOUR REACTION TO HAVING TO DO THAT?

3            PROSPECTIVE JUROR:  IT WAS A JOB.  IT -- IT WENT

4    ALONG WITH THE POSITION.  SO SOMETIMES IT COULD BE EXCITING,

5    SOMETIMES IT COULD BE BORING.

6            MR. SLENKOVICH:  IS THERE ANYTHING ABOUT THAT

7    EXPERIENCE YOU THINK THAT WOULD IN ANY WAY GET IN THE WAY --

8    THE WAY OF YOUR ABILITY TO -- TO BE A JUROR IN THIS CASE?

9            PROSPECTIVE JUROR:  NO.

10           MR. SLENKOVICH:  OKAY.  THANK YOU.

11       HAVE ANY OF YOU EVER HAD ANY REASON TO BE INVOLVED IN

12   SEMICONDUCTOR BUS TECHNOLOGY?

13       (NO RESPONSE.)

14           MR. SLENKOVICH:  OKAY.

15       AND HAVE ANY OF YOU EVER BEEN INVOLVED IN ANY WAY IN

16   SOMETHING THAT HAD TO DO WITH SAVING ENERGY ON A SEMICONDUCTOR

17   CHIP?

18       (NO RESPONSE.)

19           MR. SLENKOVICH:  OKAY.  THANK YOU.

20       AND MS. STAGE, JUST TO BE CLEAR, YOUR HUSBAND IS INVOLVED

21   IN ENERGY SAVING IN THE FIELD OF HOUSING SO THAT'S HOUSING AND

22   BUILDINGS AND THINGS LIKE THAT THAT ARE BEING --

23           PROSPECTIVE JUROR:  YES.

24           MR. SLENKOVICH:  -- IMPROVED?

25       AND HAS HE EVER HAD ANY INVOLVEMENT MAYBE BEFORE THAT IN

```
1    ANY OTHER KIND OF ENERGY-SAVING ACTIVITIES INVOLVED WITH

2    SEMICONDUCTORS OR ANY KIND OF TECHNOLOGY?

3            PROSPECTIVE JUROR:  NOT THAT I'M AWARE OF.

4            MR. SLENKOVICH:  OKAY.

5        OKAY.  THANK YOU, MS. STAGE.

6        THAT'S ALL I HAVE, YOUR HONOR.

7            THE COURT:  MR. HADJIS?

8            MR. HADJIS:  THANK YOU, YOUR HONOR.  JUST A FEW QUICK

9    QUESTIONS.

10       MS. HOLMES, IF I COULD START WITH YOU.

11           THE COURT:  OKAY.

12           MR. HADJIS:  THANKS.  I WAS VERY INTERESTED IN

13   YOUR -- YOUR PAST, ESPECIALLY THE REFERENCE TO CSI.  HAVE YOU

14   BEEN INVOLVED IN WORKING WITH A CASE THAT HAD THE SUBJECT

15   MATTER OF IT INVOLVING TECHNOLOGY?

16           PROSPECTIVE JUROR:  NO.

17           MR. HADJIS:  I ALSO NOTICED IN YOUR QUESTIONNAIRE

18   THAT YOU ARE -- OR WERE BEFORE YOU RETIRED A PUBLIC SAFETY

19   DISPATCHER.

20           PROSPECTIVE JUROR:  YES.

21           MR. HADJIS:  AND IT APPEARS TO ME THAT YOU WERE A

22   SUPERVISORY LEVEL.

23           PROSPECTIVE JUROR:  YES.

24           MR. HADJIS:  HOW MANY PEOPLE DID YOU SUPERVISE?

25           PROSPECTIVE JUROR:  SEVEN TO EIGHT ON A GOOD DAY.
```

1        **MR. HADJIS:**  AND WHAT WAS –– WHAT WERE YOUR

2    RESPONSIBILITIES IN THAT SUPERVISORY ROLE?

3        **PROSPECTIVE JUROR:**  I MADE SURE THERE WAS ADEQUATE

4    STAFFING, THE EQUIPMENT WAS WORKING, AND THE DISPATCHERS WERE

5    WORKING.  AND TO –– I WAS A BUFFER BETWEEN THE POLICE AND THE

6    FIRE DEPARTMENT AND THE CITIZENS.

7        **MR. HADJIS:**  DID YOU USE TECHNOLOGY IN YOUR ROLE AS A

8    SUPERVISOR OR A DISPATCHER?

9        **PROSPECTIVE JUROR:**  YES.

10       **MR. HADJIS:**  WHAT TECHNOLOGY?  WHAT TYPES OF

11   TECHNOLOGY DID YOU USE?

12       **PROSPECTIVE JUROR:**  EVERYTHING WAS COMPUTERIZED, THE

13   PHONES, THE COMPUTER-AIDED DISPATCH SYSTEM, THE RADIOS, THE

14   ALARM SYSTEMS, EVERYTHING WAS COMPUTERIZED.

15       **MR. HADJIS:**  AND WERE THE RADIOS TWO-WAY,

16   WALKIE-TALKIE-TYPE RADIOS?

17       **PROSPECTIVE JUROR:**  YES.  YES.

18       **MR. HADJIS:**  DO YOU OWN AN E-READER?

19       **PROSPECTIVE JUROR:**  YES.

20       **MR. HADJIS:**  WHAT KIND?

21       **PROSPECTIVE JUROR:**  KINDLE.

22       **MR. HADJIS:**  DO YOU OWN A TABLET?

23       **PROSPECTIVE JUROR:**  IPAD.

24       **MR. HADJIS:**  THANK YOU.

25       IF YOU CAN JUST PASS THE MIC TO YOUR –– YOUR LEFT.  THANK

```
1    YOU.

2        GOOD MORNING, MS. STAGE.

3            PROSPECTIVE JUROR:  GOOD MORNING.

4            MR. HADJIS:  HOW ARE YOU?

5            PROSPECTIVE JUROR:  JUST FINE.

6            MR. HADJIS:  GREAT.  DO YOU OWN AN E-READER?

7            PROSPECTIVE JUROR:  NO.

8            MR. HADJIS:  DO YOU OWN A TABLET?

9            PROSPECTIVE JUROR:  NO.

10           MR. HADJIS:  ELECTRONICS AND TECHNOLOGY, DO YOU USE

11   IT REGULARLY?

12           PROSPECTIVE JUROR:  I USE ON MY PHONE ALL THE TIME

13   AND COMPUTERS.

14           MR. HADJIS:  SMART PHONE?

15           PROSPECTIVE JUROR:  UM-HMM.

16           MR. HADJIS:  OKAY.  GREAT.  THANK YOU.

17       AND IF YOU COULD PASS THE MIC TO YOUR LEFT.

18       MS. JUE, I JUST WANTED TO KNOW IF THERE'S AN AREA IN

19   RADIOLOGY THAT YOU SPECIALIZE IN.

20           PROSPECTIVE JUROR:  I SUBSPECIALIZE IN BREAST IMAGING

21   DIAGNOSIS AND BREAST CANCER.

22           MR. HADJIS:  OKAY.  AND I TAKE IT YOU WORK WITH

23   PEOPLE ON A DAILY BASIS?

24           PROSPECTIVE JUROR:  YES.

25           MR. HADJIS:  YOU MENTIONED THAT YOU WORK WITH
```

1    TECHNOLOGY IN YOUR JOB.  WHAT TYPES OF EQUIPMENT ARE YOU

2    REFERRING TO?

3            PROSPECTIVE JUROR:  SO AS A RADIOLOGIST, WE WORK

4    OUR -- WE'RE PRIMARILY BASED ON IMAGING, IMAGING TO HELP

5    CLINICIANS MAKE A DIAGNOSIS.  SO WE READ MRI'S, CT'S, X-RAYS,

6    NUCLEAR MEDICINE STUDIES, ALL OF THESE TO HELP IN AIDING

7    DIAGNOSIS FOR PATIENT CARE.

8            MR. HADJIS:  UM-HMM.  AND WHEN I -- WHEN I AM IN THE

9    HOSPITAL, I NOTICE BIG HEAVY EQUIPMENT.  DO YOU WORK ALSO WITH

10   ELECTRONICS IN -- IN YOUR ROLE AT -- IN THE CLINIC OR THE

11   HOSPITAL THAT ARE PORTABLE AND SMALL?

12           PROSPECTIVE JUROR:  WHAT WE PRIMARILY DO, WE SIT AT

13   READING STATIONS.  THESE ARE PACS STATIONS THAT THE IMAGES ARE

14   TRANSPORTED TO THESE READING STATIONS THAT WE READ OFF OF.

15   ALSO FOR PATIENT CHARTS, INSTEAD OF THE OLD WAY ON PAPER, ALL

16   OF THE CHARTS NOW ARE ELECTRONIC HEALTHCONNECT-TYPE SYSTEM.

17   AND MOST OF THE COMMUNICATION IS VIA THESE HEALTHCONNECT

18   SYSTEMS, PACS SYSTEMS, RATHER THAN THE OLD-FASHIONED WAY OF

19   TRADITIONALLY BY PHONE.  AND THIS HELPS EXPEDITE PATIENT CARE.

20           MR. HADJIS:  EXCELLENT.  THANK YOU VERY MUCH.

21       I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

22           THE COURT:  ALL RIGHT.  MR. HADJIS, MR. SLENKOVICH,

23   I'LL SEE YOU AT SIDEBAR.

24           (SIDEBAR CONFERENCE NOT ON THE RECORD.)

25           THE COURT:  OKAY.  MS. HOLMES, I'M GOING TO ASK YOU

```
 1    TO STAND, GO AROUND, MOVE TO THE BACK ROW AND TAKE THAT FOURTH

 2    SEAT.

 3         AND THEN, MS. STAGE, YOU'LL SIT NEXT TO HER.

 4         AND, MS. JUE, IF YOU'LL STAND AND TAKE BACK ROW SECOND

 5    SEAT IN.

 6              PROSPECTIVE JUROR:  TO HER LEFT?

 7              THE COURT:  YOU'LL BE CLOSER TO ME.

 8         OKAY.  IF THE FOLLOWING INDIVIDUALS WILL COME FORWARD.

 9    PHENVIPA SOPAPAN.  AND YOU'RE GOING TO TAKE -- COME ON

10    FORWARD.  YOU'RE GOING THE TAKE THIS FIRST SEAT HERE UP IN THE

11    CORNER CLOSEST TO ME, THE RED LEATHER CHAIR.

12         DARRYL SILVA, YOU TAKE THAT -- NO, THE ONE INSIDE THE BOX,

13    YEAH.

14         BENJAMIN CORY, SIR, YOU'LL TAKE THE SEAT RIGHT NEXT TO

15    HER.  THE SECOND SEAT.

16         PAMELA BENSON.

17              PROSPECTIVE JUROR:  NEXT TO HIM?

18              THE COURT:  CORRECT.  PLEASE.  THANK YOU.

19         PAMELA ELLIOTT.  AND YOU'LL TAKE THE LAST SEAT IN THE

20    FIRST ROW -- OR THE NO. 5 SEAT.

21         CARISSA SPONBURG.  MS. SPONBURG, IF YOU'LL COME AROUND,

22    TAKE THAT LAST SEAT UP ON TOP.

23         LADIES AND GENTLEMEN, IF THE NINE OF YOU WILL STAND TO BE

24    SWORN.  YOU ARE OUR JURY.  PLEASE STAND.

25                        (JURY SWORN.)
```

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530**

```
 1            THE COURT:  OKAY.  PLEASE BE SEATED.

 2        FOR THE REST OF YOU, YOU ARE ALL EXCUSED.  WE THANK YOU.

 3    I SAW SOME -- I SAW A SIGN OF RELIEF THERE, SECOND ROW.

 4                        (LAUGHTER.)

 5            THE COURT:  I HOPE THAT YOU KNOW THAT WE, AS JUDGES,

 6    REALLY DO VALUE THE FACT THAT YOU WILL COME IN, THAT YOU WILL

 7    ATTEMPT -- THAT YOU'LL DO YOUR DUTY AND THAT YOU'LL BE WILLING

 8    TO SERVE.  WE APPRECIATE THE TIME AND ATTENTION THAT YOU'VE

 9    GIVEN US.  YOU ARE EXCUSED.  YOU MAY ALL LEAVE EXCEPT FOR THE

10    NINE OF YOU UP HERE.  THANK YOU.

11                    (JURY VENIRE EXCUSED.)

12            THE COURT:  LADIES AND GENTLEMEN, YOU'VE BEEN

13    SELECTED FOR OUR JURY.  A NUMBER OF JUST LOGISTICAL AND

14    PRELIMINARY ISSUES.

15        FIRST, AS I MENTIONED TO YOU, WE WILL NOT START -- WE WILL

16    NOT BE STARTING EVIDENCE UNTIL NEXT TUESDAY, SO THE DAY AFTER

17    LABOR DAY.  WE WILL GO FROM 8:30 TO 1:30 EVERY DAY EXCEPT

18    FOR -- YOU WILL HAVE -- WHEN YOU GET BACK, YOU'LL HAVE COPIES

19    OF THAT CALENDAR THAT YOU CAN SEE IN FRONT OF YOU WITH THE

20    DAYS THAT WE ARE NOT IN SESSION.

21        WE WILL BE GIVING YOU, FOR THOSE OF YOU -- A NUMBER OF YOU

22    HAVE SOME YOUNG KIDS.  WE WILL BE GIVING YOU A PHONE NUMBER

23    THAT YOU CAN GIVE TO YOUR CARETAKERS SO THAT IF THERE IS AN

24    EMERGENCY, ALL THAT PERSON HAS TO DO IS CALL THAT NUMBER.

25    THAT NUMBER WILL ALWAYS BE PICKED UP.  SOMEONE WILL MESSAGE MY
```

1    COURTROOM DEPUTY WHO WILL MESSAGE ME.  WE COMMUNICATE

2    ELECTRONICALLY.  AND I WILL STOP THE PROCEEDINGS.  SO DO NOT

3    WORRY ABOUT BEING IN SESSION AND MISSING THAT KIND OF CALL.

4    YOU WILL HAVE AN EMERGENCY TELEPHONE NUMBER.

5         THE COURTROOM DEPUTY WILL GIVE YOU SOME BASIC INFORMATION

6    ABOUT THE DAILY PROCEEDINGS, HOW YOU GET INTO THE JURY ROOM.

7    UNDERSTAND IT'S A SECURED CORRIDOR THAT YOU'RE COMING THROUGH

8    SO WE JUST HAVE A FEW RULES WITH REGARD TO THAT.

9         YOU HAVE HEARD SOME INFORMATION TODAY, AND YOU WILL BE

10   RECEIVING MUCH MORE INFORMATION AS THE -- AS THE JURY GOES

11   ON -- OR AS THE JURY TRIAL GOES ON.  SO I DO HAVE SOME

12   ADMONISHMENTS FOR YOU.  THESE ARE VERY IMPORTANT AND VERY

13   SERIOUS.

14        THE PARTIES HAVE SPENT A LOT OF TIME AND EFFORT TO GET TO

15   THIS TRIAL.  AND THEY ARE ENTITLED, AS A MATTER OF LAW, THEY

16   ARE ENTITLED TO KNOW WHAT IT IS THAT YOU ARE CONSIDERING WHEN

17   YOU ULTIMATELY MAKE YOUR DECISION AND HAVE YOUR DELIBERATIONS.

18        I SAY THAT BECAUSE IT IS VERY, VERY EASY FOR JURORS TO GO

19   ON THE INTERNET THESE DAYS AND TO SEARCH, SEARCH THE PARTIES,

20   SEARCH THE LAWYERS, SEARCH THE WITNESSES, TRY TO FIGURE OUT

21   THINGS.  YOU KNOW, HOW DOES A SEMICONDUCTOR WORK?  I MEAN,

22   THERE ARE LOTS OF THINGS THAT ARE AVAILABLE TO YOU.

23        YOU CANNOT LOOK AT THAT STUFF.  YOU ARE PROHIBITED FROM

24   TRYING TO GET INFORMATION ABOUT THIS CASE THAT DOES NOT --

25   THAT IS NOT GIVEN TO YOU DURING THE TRIAL.

1          YOU CANNOT TALK TO ANYONE.  YOU CANNOT TALK TO A LAWYER.

2   YOU CANNOT TALK TO FRIENDS.  YOU CAN TELL YOUR SPOUSE THAT YOU

3   ARE IN A TRIAL.  YOU CAN TELL YOUR EMPLOYERS THAT YOU'RE IN A

4   TRIAL.  AND YOU CAN TELL THEM HOW LONG I ANTICIPATE IT WILL

5   GO.  AND YOU CAN TELL THEM THE HOURS YOU'LL BE HERE.  THAT'S

6   ALL YOU CAN TELL THEM.

7          YOUR FAILURE TO ABIDE BY THESE RULES CAN CAUSE PROBLEMS.

8   NOT ONLY FOR THE PARTIES, BUT FRANKLY FOR YOURSELF.  I FOUND

9   OUT AFTER A TRIAL WAS FINISHED THAT A JUROR HAD CONTACTED A

10  LAWYER JUST TRYING -- INNOCUOUSLY, JUST TRYING TO FIGURE OUT

11  MORE ABOUT THE TIME AND THE TRIAL.  THAT JUROR, AFTER THE

12  TRIAL WAS OVER, WAS SERVED BY THE UNITED STATES MARSHAL WITH A

13  SUBPOENA FOR HER APPEARANCE HERE IN COURT.  THAT'S NOT A FUN

14  THING TO HAVE TO HAPPEN TO YOU AT YOUR JOB.

15         THE PARTIES ARE ENTITLED TO A FAIR TRIAL.  THIS IS GOING

16  TO BE AN INTENSE EXPERIENCE FOR YOU AND -- AND BECAUSE OF

17  THAT, JUST LEAVE IT HERE.  LEAVE IT HERE.  YOU'RE GOING TO GET

18  ALL THIS INFORMATION.  THEY'RE GOING TO OVERWHELM YOU.

19  THEY'RE GOING TO EXPLAIN IT TO YOU.  BUT WHEN YOU LEAVE THIS

20  COURTHOUSE, YOU LEAVE IT ALL HERE.  AND GO HOME AND HUG YOUR

21  KIDS AND HUG YOUR SPOUSE AND HUG YOUR PARENTS AND WATCH TV AND

22  DO SOME OTHER THING.  BUT THE TRIAL STUFF STAYS HERE.  OKAY?

23         SO YOU MAY NOT DISCUSS THE CASE WITH ANYONE, INCLUDING

24  MEMBERS OF YOUR FAMILY, EXCEPT AS LIMITED LIKE I'VE JUST TOLD

25  YOU.  YOU CANNOT DISCUSS THE CASE WITH ANY PEOPLE INVOLVED IN

```
 1    THE TRIAL OR ANYONE ELSE.  THAT INCLUDES THE PARTIES.  YOU MAY
 2    SEE THEM OUT IN THE COURT HALL -- IN THE COURTROOM -- IN THE
 3    HALLS OF THE COURTHOUSE.  THEY HAVE BEEN INSTRUCTED NOT TO
 4    TALK TO YOU.  SO DON'T THINK THAT THEY'RE IGNORING YOU OR
 5    BEING MEAN TO YOU.  THEY CANNOT TALK TO YOU.  YOU CAN SMILE IF
 6    YOU WANT, BUT YOU HAVE TO GO STRAIGHT TO THE JURY ROOM, ALL
 7    RIGHT?
 8        THAT INCLUDES, BY THE WAY, INTERNET CHAT ROOMS.  I DON'T
 9    KNOW HOW -- DO ANY OF YOU HAVE FACEBOOK?
10                    (HANDS RAISED.)
11        THE COURT:  OKAY.  YOU CANNOT GO ON FACEBOOK AND SAY,
12    "OH, MY GOD, SO BORING TODAY.  OH, MY GOD, SO EXCITING TODAY."
13    YOU CANNOT BE POSTING ABOUT YOUR EXPERIENCE.  YOU MAY HATE ME.
14    YOU CAN'T POST ABOUT IT.  SORRY.  AFTERWARDS YOU CAN POST
15    ABOUT IT BUT NOT DURING THE TRIAL.  NO POSTING, NO BLOGGING,
16    NO BULLETIN BOARDS, NO EMAILS.  AND NOTHING THAT I HAVEN'T
17    SPECIFICALLY IDENTIFIED BECAUSE THE WORLD IS CHANGING.
18    THERE'S NO TWITTER, NO -- I HAVE TO GET THE LIST FROM MY KIDS.
19    THERE'S NOTHING, NO ELECTRONIC COMMUNICATIONS ABOUT THIS CASE.
20        IF ANYONE APPROACHES YOU AND TRIES TO TALK TO YOU, PLEASE
21    LET ME KNOW IMMEDIATELY.  FEDERAL COURT CASES ARE FREQUENTLY
22    IN THE NEWS.  IF YOU'RE HEARING SOMETHING ON THE RADIO, TURN
23    IT OFF, LET ME KNOW, AND THEN WE'LL JUST CLEAR IT UP VERY
24    QUICKLY.  ALL RIGHT?
25        DO NOT READ, OBVIOUSLY, OR LISTEN TO ANYTHING IN THE NEWS
```

1    MEDIA ABOUT THE CASE, ARTICLES, RADIO, TELEVISION, OR ANY

2    ONLINE REPORTS TO THE EXTENT THAT THEY'RE EVEN THERE.  DO NOT

3    DO ANY RESEARCH.  DO NOT CONSULT DICTIONARIES.  DO NOT SEARCH

4    THE INTERNET.  DO NOT USE REFERENCE MATERIALS.  DO NOT

5    INVESTIGATE ON YOUR OWN.  DO NOT GO OUT AND LEARN HOW TO MAKE

6    SEMICONDUCTOR CHIPS OR TAKE COURSES ON SOFTWARE DESIGN AND

7    ARCHITECTURE.  OKAY?  DON'T DO IT.

8        IF YOU NEED TO COMMUNICATE WITH ME, SIMPLY SEND A NOTE TO

9    THE COURTROOM DEPUTY AND SHE WILL SEND IT ON TO ME.  ON -- A

10   COUPLE OTHER THINGS.

11       DON'T MAKE UP YOUR MIND.  WE TALKED ABOUT THAT DURING JURY

12   SELECTION.  DON'T MAKE UP YOUR MIND UNTIL YOU'RE GIVEN THE

13   CASE TO DELIBERATE.  THIS IS WHY, AND I'LL EXPLAIN MORE NEXT

14   WEEK.  ONE SIDE WILL PRESENT THEIR CASE.  THEN THE OTHER SIDE

15   WILL GET TO PRESENT THEIR CASE.  SO YOU DON'T WANT TO MAKE UP

16   YOUR MIND TILL YOU'VE HEARD ALL THE EVIDENCE.

17       ONCE THEY DO THAT, THEN THE PARTIES ARE GOING TO GET TO

18   ARGUE WHAT THEY THINK THE EVIDENCE MEANS.  LIKE I TOLD YOU,

19   THE PUZZLE IN THE BOX, HOW ALL THOSE PUZZLE PIECES FIT

20   TOGETHER, THEY'RE GOING TO HAVE DIFFERENT VIEWS.  SO YOU NEED

21   TO HEAR THEIR ARGUMENTS.

22       ON MONDAY, BECAUSE THIS IS A PATENT CASE, WE'RE GOING TO

23   SHOW YOU A SHORT VIDEO ABOUT HOW PATENT CASES WORK BECAUSE

24   THEY'RE TECHNICAL CASES.  THEN YOU'LL GET TO HEAR THE OPENING

25   STATEMENTS.  I WILL GIVE YOU SOME PRELIMINARY INSTRUCTIONS

1    ABOUT HOW TO THINK ABOUT THE CASE.

2         AND AS I SAID, YOU'LL HAVE PAPER, YOU'LL HAVE NOTEBOOKS.

3    YOU'LL HAVE A GLOSSARY OF TERMS.  YOU'LL HAVE COPIES OF THE

4    PATENTS.

5         AND YOU CAN WRITE NOTES.  YOU'LL BE ABLE TO SEND US NOTES.

6    OKAY?

7         THERE WILL BE INTERACTION BETWEEN US AS WE GO THROUGH THE

8    TRIAL.  IF I THINK THINGS NEED LEGAL -- IF YOU NEED A LEGAL

9    INSTRUCTION, I'LL GIVE YOU THOSE AS WE GO ALONG.

10        YOU'LL BE TIRED.  SO ENJOY YOUR LABOR DAY WEEKEND.  LIKE I

11   SAID, DON'T THINK ABOUT THIS MUCH.

12        DOES ANYBODY HAVE ANY QUESTIONS?  YES, MA'AM.

13             PROSPECTIVE JUROR:  DO WE HAVE -- IF I HAVE SOME

14   QUESTION, WHO DO I GO TO LIKE --

15             THE COURT:  YOU'LL HAVE SOME PAPER IN YOUR NOTEBOOK

16   THAT ALLOWS YOU TO WRITE YOUR QUESTION DOWN.

17             PROSPECTIVE JUROR:  AND THEN TO --

18             THE COURT:  AND THEN YOU GIVE IT TO MS. STONE WHO

19   WILL GIVE IT TO ME.  SO BECAUSE WHEN I RECEIVE A QUESTION,

20   THEN I HAVE TO TALK TO THE LAWYERS BEFORE ANYTHING CAN HAPPEN.

21        OTHER QUESTIONS?  YES.

22             PROSPECTIVE JUROR:  IS IT EVERY TUESDAY THIS MONTH OR

23   IS IT AFTER --

24             THE COURT:  EVERY DAY BEGINNING TUESDAY, 8:30 TO

25   1:30.  SO HOPEFULLY THEY CAN FIT SOME HOURS IN FOR YOU AFTER

1    1:30.  YOU'LL BE DONE BY 1:30.

2         OKAY.  AND THAT'S FOR THE EVIDENCE.  ONCE YOU START

3    DELIBERATING, YOU CAN DELIBERATE ALL DAY AND -- AND THEN GET

4    THE DELIBERATIONS DONE.  BUT FOR THE EVIDENCE PORTION, WE ONLY

5    GO 8:30 TO 1:30 BECAUSE I STILL HAVE ALL MY OTHER CASES.  SO

6    MY OTHER CASES COME IN ON -- AT 2:00 O'CLOCK.  YOU LEAVE AT

7    1:30, AND ALL MY CRIMINAL CASES AND ALL MY OTHER CIVIL CASES

8    COME IN AT 2:00.

9         OTHER QUESTIONS?

10        NO?  OKAY.  THEN I WILL HAVE YOU RETIRE TO THE JURY ROOM.

11   THE COURTROOM DEPUTY WILL GIVE YOU SOME MORE INFORMATION.

12        ENJOY YOUR WEEKEND AND WE'LL SEE YOU TUESDAY.  WE START AT

13   8:30.  SHE'LL EXPLAIN THAT YOU HAVE TO BE THERE IN ADVANCE, SO

14   8:15 -- 8:00, 8:15.  OKAY?

15        (JURY EXCUSED.)

16        (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

17   OF THE JURY:)

18        **THE COURT:**  OKAY.  THE RECORD WILL REFLECT THAT THE

19   JURY HAS LEFT THE COURTROOM.

20        HAVE A SEAT.

21        ANY ISSUES, GENTLEMEN?

22        THE COURTROOM -- THE JUROR BINDERS, I THINK I ORDERED THEM

23   TO ARRIVE TODAY; IS THAT RIGHT?

24             (OFF-THE-RECORD DISCUSSION.)

25        **MR. SLENKOVICH:**  IF THEY WERE ORDERED TODAY, I'M SURE

```
 1    THEY WILL BE HERE TODAY, BUT UNFORTUNATELY NO ONE HERE ON OUR

 2    SIDE, AT LEAST, HAS KNOWLEDGE.

 3         MR. HADJIS:  WE AGREE WE WILL GET THEM TO YOU TODAY,

 4    YOUR HONOR.

 5         THE COURT:  OKAY.  I AM --

 6              (OFF-THE-RECORD DISCUSSION.)

 7         THE COURT:  MR. KIM.

 8         MR. KIM:  YOUR HONOR, IT'S OUR UNDERSTANDING THAT WE

 9    PROVIDED THEM LAST WEEK.

10         THE COURT:  NO.  YOU PROVIDED ONE.

11         MR. HADJIS:  YEAH, THE TEMPLATE.

12         MR. KIM:  THAT'S RIGHT.

13         THE COURT:  OKAY.

14    WE -- I WAS THINKING AND LOOKED AT THE DEFINITIONS IN THE

15    MODEL INSTRUCTIONS.  I'M JUST GOING TO HAVE ALL THREE OF THOSE

16    TERMS IN THE GLOSSARY.  SO JUST MAKE SURE THAT IF THEY'VE

17    ALREADY DELIVERED THE NOTEBOOKS FOR THE JURORS AND THAT'S NOT

18    IN THERE, THEN SEND ME THE ONE DOCUMENT, INCLUDE ALL THREE

19    TERMS AND WE CAN PUT THEM IN THE NOTEBOOKS OURSELVES.  OR JUST

20    HAVE 12 -- OR I THINK I ASKED FOR NINE PLUS TWO, SO 11 COPIES

21    OF THAT DELIVERED, THREE-HOLE PUNCHED, AND WE'LL POP THEM IN

22    OURSELVES.

23    IF YOU HAVEN'T DELIVERED THEM YET, THEN YOU DO IT AND GET

24    THEM TO ME TOMORROW.  OKAY.

25         MR. SLENKOVICH:  WE WILL, YOUR HONOR.
```

1            **THE COURT:**  WHAT I'M GOING TO DO FOR THE PRELIMINARY

2     INSTRUCTIONS IS THAT INSTRUCTION NO. 18, I AM NOT GOING TO

3     READ THE WHOLE THING.  I AM GOING TO TELL THEM THAT IT IS IN

4     THEIR BINDER, AND THEN I'LL READ A LIST OF THE WORDS THAT ARE

5     DEFINED.

6         AND, YOU KNOW, I WOULD THINK FRANKLY, SOME OF THE FIRST

7     TIMES THOSE TERMS GET USED, AT AN APPROPRIATE TIME, I WILL

8     STOP AND I WILL INSTRUCT THEM AND TELL THEM TURN TO YOUR PAGE,

9     A PATENT IS BLAH-BLAH-BLAH-BLAH.  THAT WAY THEY HAVE THAT AND

10    THEY'RE USING THAT RESOURCE AND THEY KNOW IT IS THERE FOR

11    THEM.  I THINK THAT'S THE ONLY -- THAT WAS THE ONLY LOGISTICAL

12    ISSUE THAT NEEDED TO BE RESOLVED BEFORE TUESDAY.

13        OH, NO.  THERE'S ANOTHER THING.  I AM NOT USED TO THE

14    ATTORNEYS CONTROLLING THE TECHNOLOGY.  IN THIS CASE, IT'S

15    PROBABLY NOT A BIG DEAL IN TERMS OF SHOWING THE JURY SOMETHING

16    THAT IS SO INFLAMMATORY ACCIDENTALLY.  IT'S A REAL PROBLEM IN

17    CRIMINAL CASES.  ACCIDENTALLY SHOWING THEM A DIAGRAM OF A

18    SCHEMATIC IS PROBABLY LESS SO.  SO I'M LESS CONCERNED ABOUT

19    THAT.

20        BUT I DO NEED TO MAKE SURE THAT WHOEVER IS RUNNING THE

21    SYSTEM WILL BE PREPARED FIRST THING IN THE MORNING ON TUESDAY

22    TO RUN THAT PATENT FJC VIDEO.  SO WHO IS RESPONSIBLE?  I DON'T

23    KNOW WHO -- WHO IT IS, WHICH SIDE IT IS, WHO THE PERSON IS.

24               (OFF-THE-RECORD DISCUSSION.)

25            **MR. HADJIS:**  YOUR HONOR, WE WILL -- WE WILL TAKE THAT

```
 1    ON.  OUR TRIAL TECH WILL BE PREPARED TO RUN THE VIDEO WHEN

 2    YOU'D LIKE IT RUN.

 3              THE COURT:  OKAY.  DO YOU HAVE -- DO YOU HAVE THE

 4    VIDEO?  I HAVE THE VIDEO.

 5              MR. HADJIS:  WE DO HAVE A COPY OF THE VIDEO.

 6              THE COURT:  YOU DO?

 7              MR. HADJIS:  YES.

 8              THE COURT:  OKAY.  AND THERE WERE TWO OF THEM.  YOU

 9    HAVE THE MOST --

10              MR. HADJIS:  THE MOST RECENT, YES.

11              THE COURT:  THE MOST RECENT, OKAY.

12       SO THAT WILL BE RUN FIRST THING.  I'LL MAKE SOME

13    INTRODUCTORY REMARKS AND WELCOME THEM HERE.  BUT I THINK THAT

14    IT PROBABLY MAKES SENSE FOR THEM TO SEE THAT VIDEO EVEN BEFORE

15    I GIVE THEM PRELIMINARY INSTRUCTIONS.  IT JUST GIVES THEM A

16    CONTEXT.

17              MR. SLENKOVICH:  SURE.

18              THE COURT:  OKAY?

19       ANYTHING ELSE THAT IS OF CONCERN FOR YOU ALL?

20       AND DON'T FORGET THAT GLOSSARY SHOULD -- YOU KNOW, IT'S

21    GOING TO HAVE THE TWO -- IT'S GOING TO HAVE THE TWO

22    COMPONENTS, THE DEFINITIONS FROM THE INSTRUCTIONS IN TERMS OF

23    LEGAL TERMINOLOGY, AND THEN THE GLOSSARY THAT INCLUDES ALL THE

24    ACRONYMS, ET CETERA, THAT YOU PUT IN THERE IN THE FIRST

25    INSTANCE.
```

1          **MR. SLENKOVICH:**  UNDERSTOOD.  SO THERE'LL BE TWO

2     DOCUMENTS, TWO GLOSSARIES, ESSENTIALLY.

3          **THE COURT:**  RIGHT.

4          **MR. SLENKOVICH:**  UNDERSTOOD.

5          **THE COURT:**  OKAY?

6       ANYTHING ELSE?

7          **MR. SLENKOVICH:**  THE ONLY TWO OUTSTANDING ISSUES I

8     THINK ARE THE -- THE -- ELECTRONIC EXHIBIT ISSUE AND THE --

9     THE WITHDRAWAL OF CERTAIN OF THE PRODUCTS FROM THE CASE.

10         **THE COURT:**  RIGHT.  BUT THOSE I DON'T HAVE TO DEAL

11    WITH RIGHT NOW.  OR AT LEAST -- ARE YOU PREPARED FOR ME TO

12    DEAL WITH THEM RIGHT NOW?

13         **MR. HADJIS:**  I BELIEVE WE'RE STILL DISCUSSING BOTH OF

14    THE ISSUES.

15         **THE COURT:**  OKAY.

16         **MR. SLENKOVICH:**  YEAH, I DON'T THINK --

17                    (SIMULTANEOUS COLLOQUY.)

18         **MR. SLENKOVICH:**  I DON'T BELIEVE ON, FOR INSTANCE,

19    TUESDAY THIS -- THE DOCUMENT THAT WE HAVE IN -- WE'VE PRODUCED

20    IN HARD COPY FORM AS AN EXHIBIT IS NOT TILL THE INJUNCTION

21    PHASE.  SO IT'S NOT PRESSING, BUT WE WOULD LIKE TO BE ABLE TO

22    GIVE IT TO YOUR HONOR -- IT'S 3,000 PAGES -- WE'D LIKE TO BE

23    ABLE TO GIVE IT TO YOUR HONOR IN NON-HARD COPY, IN JUST

24    ELECTRONIC VERSION.

25         **THE COURT:**  I DON'T WANT 3,000 PAGES.  WHY -- WHY

1    WOULD I WANT 3,000 HARD PAGES?

2          **MR. HADJIS:**   THAT -- THAT WAS OUR RESPONSE TO THE

3    REQUEST FOR THIS DOCUMENT TO COME IN.  WE DON'T BELIEVE THAT

4    IT'S BEEN MENTIONED BY THE EXPERTS.  IT IS A DATA SHEET, A

5    TECHNICAL DOCUMENT.  WE HAVE GONE THROUGH THE COUNTERPART TYPE

6    OF FREESCALE'S DOCUMENTS AND WINNOWED THOSE DOWN SO THAT

7    THEY'RE -- THEY'VE BEEN SKINNIED UP CONSISTENT WITH THE ISSUES

8    AND WHAT'S IN THE EXPERT REPORTS.  SO WE WERE SIMPLY SPEAKING

9    WITH MEDIATEK'S COUNSEL ABOUT THAT PARTICULAR ISSUE WHEN IT

10   COMES TO THE MT8135 DOCUMENT THAT THEY'RE REFERRING TO.

11         **THE COURT:**  OKAY.  AND THE ISSUE IS DO I WANT THIS

12   DOCUMENT IN HARD FORM VERSUS ELECTRONIC FORM?

13         **MR. SLENKOVICH:**  THAT'S THE ONLY ISSUE, YES, YOUR

14   HONOR.

15         **MR. HADJIS:**  AND I BELIEVE --

16         **THE COURT:**  WHY WOULD I WANT IT, HALF A BOX, RIGHT?

17   WE'RE TALKING ABOUT A HALF A BOX ON ONE EXHIBIT IN HARD COPY.

18   IS THERE SOME REASON THAT I NEED HALF A BOX OF PAPER?

19         **MR. SLENKOVICH:**  ABSOLUTELY NOT, YOUR HONOR.  WE --

20   WE DON'T THINK THERE'S ANY NEED FOR YOU TO HAVE A HARD COPY.

21   WE ASKED FOR PERMISSION TO PROVIDE THE DOCUMENT IN ELECTRONIC

22   FORM, AND WE WERE NOT GIVEN THAT PERMISSION BY FREESCALE.

23         **MR. HADJIS:**  WELL, WE ARE NOT WITHHOLDING PERMISSION.

24   WE'RE JUST WONDERING IF YOUR HONOR WANTS EVEN IN ELECTRONIC

25   FORM SUCH A LARGE FILE.

```
 1              THE COURT:  WELL, IT DOESN'T MATTER, DOES IT.  YOU'RE
 2    GOING TO PUT IT ON A HARD DRIVE?
 3              MR. HADJIS:  IF IT DOESN'T MATTER TO YOUR HONOR, IT
 4    DOESN'T MATTER TO US.
 5              THE COURT:  I DON'T THINK IT MATTERS.  IF I NEED IT,
 6    THEN IT'S THERE.  IF I DON'T NEED IT, THEN I'M NOT GOING TO
 7    OPEN IT.
 8              MR. HADJIS:  OKAY.
 9              THE COURT:  UNLESS YOU'RE TELLING ME IT'S GOING TO
10    CRASH, MY SYSTEM.  IF IT DOES, THEN YOU'RE GOING TO FIX THE
11    SYSTEM.  OKAY?
12              MR. HADJIS:  IT'S THEIR DOCUMENT.
13              MR. SLENKOVICH:  YES, YOUR HONOR.
14              THE COURT:  ALL RIGHT.
15         ANYTHING ELSE THEN?  IT LOOKS LIKE YOU SHOULDN'T HAVE TO
16    ARGUE ABOUT THAT ANYMORE.
17              MR. SLENKOVICH:  NO.  I THINK THE OTHER ONE IS
18    SOMETHING WE ARE STILL TALKING ABOUT JUST AS LONG AS YOUR
19    HONOR IS AWARE IT'S AN ISSUE THAT'S OUT THERE.
20              THE COURT:  OKAY.  THEN I WILL NOT PUT YOU ON THE
21    CALENDAR FOR FRIDAY.  ENJOY YOUR WEEKEND.
22              MR. HADJIS:  THANK YOU.
23              THE COURT:  WE STAND IN RECESS UNTIL 8:30 ON -- WELL,
24    YOU SHOULD BE HERE AT 8:00 O'CLOCK.  WE STAND IN RECESS UNTIL
25    8:00 O'CLOCK ON TUESDAY, SEPTEMBER 2ND.
```

1          HAPPY LABOR DAY.

2               (PROCEEDINGS WERE CONCLUDED AT 1:14 P.M.)

3                         --OOo--

4

5                  **CERTIFICATE OF REPORTER**

6

7          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

8     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

9     I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

10    NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

11    HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

12    OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

13

14    _____

15          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

16               WEDNESDAY, AUGUST 27, 2014

17

18

19

20

21

22

23

24

25

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*