1  ALEXANDER J. HADJIS (Pro Hac Vice)
Alexander.Hadjis@cwt.com
2  CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, NW
3  Washington, DC 20001
Telephone:  (202) 862-2323
4  Facsimile:   (202) 862-2400

5  RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
6  MORRISON & FOERSTER LLP
755 Page Mill Road
7  Palo Alto, California 94304
Telephone: (650) 813-5600
8  Facsimile:  (650) 494-0792

9  JOSHUA A. HARTMAN (Pro Hac Vice)
JHartman@mofo.com
10  MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
11  Suite 6000
Washington, DC 20006
12  Telephone:  (202) 887-1500
Facsimile:   (202) 887-0763
13
Attorneys for Defendant-Counterclaimant
14  FREESCALE SEMICONDUCTOR, INC.

15

16                    UNITED STATES DISTRICT COURT

17                    NORTHERN DISTRICT OF CALIFORNIA

18                           OAKLAND DIVISION

19

20  MEDIATEK INC.,                          Case No.   4:11-CV-05341 YGR (JSC)

21                Plaintiff,               **FREESCALE'S MOTION FOR
                                           JUDGMENT AS A MATTER OF LAW
22        v.                               ON LITERAL INFRINGEMENT,
                                           INFRINGEMENT UNDER THE
23  FREESCALE SEMICONDUCTOR, INC.,         DOCTRINE OF EQUIVALENTS,
                                           INDIRECT INFRINGEMENT, AND
24                Defendant.               WILLFUL INFRINGEMENT**

25                                         Hon. Yvonne Gonzalez Rogers

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................. 1

RELIEF REQUESTED ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I.      INTRODUCTION ............................................................................................ 2

II.     LEGAL STANDARD ...................................................................................... 2

III.    FREESCALE IS ENTITLED TO JUDGMENT OF NON-INFRINGEMENT ................ 3

        A.    Freescale Does Not Infringe U.S. Patent No. 6,088,753 As A Matter of Law ................................................................................................. 3

        B.    Freescale Does Not Infringe U.S. Patent No. 6,738,845 As A Matter of Law ................................................................................................. 3

               1.    The Accused Products Lack a Second Slave Subsystem ........................... 4

               2.    The Requests for Access to the Slave Subsystems of Accused Products are Not Set at the Same Priority ................................... 5

        C.    Freescale Does Not Infringe U.S. Patent No. 6,889,331 As A Matter of Law ................................................................................................. 6

               1.    The Registers of the Accused Products Do Not Hold a Clock Frequency Requirement ......................................................... 6

IV.     FREESCALE IS ENTITLED TO JUDGMENT OF NON-INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ............................................. 7

V.      FREESCALE IS ENTITLED TO JUDGMENT OF NO WILLFUL INFRINGEMENT ............................................................................................ 8

VI.     FREESCALE IS ENTITLED TO JUDGMENT OF NO INDIRECT INFRINGEMENT .......................................................................................... 12

VII.    CONCLUSION ............................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.,
  682 F.3d 1003 (Fed. Cir. 2012)............................................................... 9

Commil USA, LLC v. Cisco Sys., Inc.,
  720 F.3d 1361 (Fed. Cir. 2013)........................................................ 12, 14

DSU Med. Corp. v. JMS Co. Ltd.,
  471 F.3d 1293 (Fed. Cir. 2006) (en banc)........................................ 12, 14

Ecolab, Inc. v. FMC Corp.,
  569 F.3d 1335 (Fed. Cir. 2009), amended on reh'g in part,
  366 F. App'x 154 (Fed. Cir. 2009) ..................................................... 14

Fujitsu Ltd. v. Netgear Inc.,
  620 F.3d 1321 (Fed. Cir. 2010)............................................................. 13

Ginsburg v. Richardson,
  436 F.2d 1146 (3d Cir. 1971).................................................................. 2

Global-Tech Appliances, Inc. v. SEB S.A.,
  131 S. Ct. 2060 (2011) .................................................................. 12, 13

Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,
  897 F.2d 508 (Fed. Cir. 1990)................................................................ 9

i4i Ltd. P'ship v. Microsoft Corp.,
  598 F.3d 831 (Fed. Cir. 2010)............................................................... 10

ICU Med., Inc. v. RyMed Techs., Inc.,
  752 F. Supp. 2d 486 (D. Del. 2010) ..................................................... 11

In re Seagate Tech., LLC,
  497 F.3d 1360 (Fed. Cir. 2007) (en banc)........................................ 8, 11

Kyocera Wireless Corp. v. Int'l Trade Comm'n,
  545 F.3d 1340 (Fed. Cir. 2008)....................................................... 12, 13

LML Holdings, Inc. v. Pac. Coast Dist. Inc.,
  No. 11-CV-06173 YGR, 2012 WL 1965878 (N.D. Cal. May 30, 2012)...................... 10, 11

Markman v. Westview Instruments, Inc.,
  52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) ........................ 3

Network Commerce, Inc. v. Microsoft Corp.,
  422 F.3d 1353 (Fed. Cir. 2005)............................................................... 7

FREESCALE'S JMOL ON LITERAL INFRINGEMENT, DOE, DIRECT INFRINGEMENT, WILLFUL INFRINGEMENT
CASE NO. 4:11-CV-05341 YGR (JSC)

ii

Powell v. Home Depot U.S.A., Inc.,
    663 F.3d 1221 (Fed. Cir. 2011) ..................................................... 9

Princeton Biochemicals, Inc. v. Beckman Ins., Inc.,
    180 F.R.D. 254 (D.N.J. 1997) ....................................................... 11

Radware, Ltd. v. A10 Networks, Inc.,
    No. C-13-02021-RMW, 2013 U.S. Dist. LEXIS 136942 (N.D. Cal. Sept. 24, 2013) ........... 14

Sealant Sys. Int'l, Inc. v. TEK Global,
    No. C 11-0074 PSG, 2012 WL 13662 (N.D. Cal. Jan. 4, 2012) .......................... 10

Solvay S.A. v. Honeywell Int'l, Inc.,
    622 F.3d 1367 (Fed. Cir. 2010) ..................................................... 3

Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,
    620 F.3d 1305 (Fed. Cir. 2010) ..................................................... 9

Sullivan v. Cnty. of Allegheny, Pa.,
    112 Fed. App'x 176 (3d Cir. 2004) .................................................. 2

TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.,
    529 F.3d 1364 (Fed. Cir. 2008) ..................................................... 7

Unisone Strategic IP, Inc. v. Life Techs. Corp.,
    No. 3:13-cv-1278-GPC-JMA, 2013 U.S. Dist. LEXIS 151761
    (S.D. Cal. Oct. 22, 2013) .......................................................... 13

Vita-Mix Corp. v. Basic Holding, Inc.,
    581 F.3d 1317 (Fed. Cir. 2009) ..................................................... 13

VNUS Med. Techs., Inc., v. Diomed Holdings, Inc.,
    527 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................. 11

Voda v. Cordis Corp.,
    536 F.3d 1311 (Fed. Cir. 2008) ..................................................... 7

White v. Ford Motor Co.,
    312 F.3d 998 (9th Cir. 2002) ....................................................... 2

**STATUTES AND OTHER AUTHORITIES**

Fed. R. Civ. P. 50(a)(1) ................................................................ 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as the matter may be heard by The Honorable Yvonne Gonzalez Rogers at the United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendant and Counterclaimant Freescale Semiconductor, Inc. (Freescale) shall and hereby does respectfully seek an order granting judgment as a matter of law.  This motion is based on this notice of motion and supporting memorandum, the trial record, and such other written or oral argument as was presented and may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

Freescale respectfully seeks an order granting it judgment as a matter of law that plaintiff MediaTek Inc. (MediaTek) has failed to show that: (A) Freescale has literally infringed any of the patents-in-suit; (B) Freescale has infringed any of the patents-in-suit under the doctrine of equivalents; (C) Freescale has willfully infringed any of the patents-in-suit; and/or (D) Freescale is liable for indirect infringement of any of the patents-in-suit.

FREESCALE'S JMOL ON LITERAL INFRINGEMENT, DOE, DIRECT INFRINGEMENT, WILLFUL INFRINGEMENT
CASE NO. 4:11-CV-05341 YGR (JSC)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

MediaTek has failed to meet its burden regarding several issues in its case.  MediaTek has failed to prove that Freescale literally infringes the patents-in-suit.  MediaTek has not met its evidentiary burden to prove that Freescale infringes the patents-in-suit under the doctrine of equivalents.  MediaTek has failed to meet its evidentiary burden that Freescale has willfully infringed any of the patents-in-suit.  MediaTek has likewise failed to satisfy its evidentiary burden that Freescale has contributed or induced infringement of any of the patents-in-suit.  MediaTek has been fully heard on these issues.  As no reasonable jury could find for MediaTek on these issues, Freescale is entitled to judgment as a matter of law.

For direct infringement, in addition to the relief requested in this motion, Freescale is in the process of separately filing or has already separately filed specific motions for judgment as a matter of law.  Those motions are directed to the '331 patent's "plurality of registers" and "clock frequency requirement" limitations, the '845 patent's "arbitrate among" limitation, and the "predetermined way" limitation of the '753 patent.

### II.    LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  In the Ninth Circuit, "[t]he test is whether 'the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury.'" White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002) (quoting Forrett v. Richardson, 112 F.3d 416, 419 (9th Cir. 1997)).  A "mere scintilla" of evidence is not enough to defeat a motion for judgment as a matter of law.  Sullivan v. Cnty. of Allegheny, Pa., 112 Fed. App'x 176, 178 (3d Cir. 2004) ("Federal courts do not follow the rule that a scintilla of evidence is enough.") (citing Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993) (internal quotations omitted)); see also Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (holding that substantial evidence "consists of more than a mere scintilla of evidence but may be

1   somewhat less than a preponderance") (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir.

2   1966)).

3   **III.     FREESCALE IS ENTITLED TO JUDGMENT OF NON-INFRINGEMENT**

4       "An infringement analysis entails two steps.  The first step is determining the meaning and

5   scope of the patent claims asserted to be infringed.  The second step is comparing the properly

6   construed claims to the device accused of infringing."  <u>Markman v. Westview Instruments, Inc.</u>,

7   52 F.3d 967, 976 (Fed. Cir. 1995) (<u>en</u> <u>banc</u>) (citations omitted), <u>aff'd</u>, 517 U.S. 370 (1996);

8   <u>Solvay S.A. v. Honeywell Int'l, Inc.</u>, 622 F.3d 1367, 1379 (Fed. Cir. 2010).

9       **A.     Freescale Does Not Infringe U.S. Patent No. 6,088,753 As A Matter of**
        **Law**

10

11      MediaTek has not offered sufficient evidence that Freescale infringes (either literally or

12  under the doctrine of equivalents) claim 2 of the '753 patent.  Specifically, there is no evidence

13  that any accused product meets the "interconnecting . . . in a predetermined way" limitation of

14  claim 2.  As discussed in Freescale Semiconductor, Inc.'s Motion for Judgment as a Matter of

15  Law Regarding Claim Construction and Noninfringement of Claim 2 of U.S. Patent

16  No. 6,088,753 (Dkt. No. 681), MediaTek has presented its case under incorrect claim

17  constructions and MediaTek failed to demonstrate infringement of at least the above limitation of

18  claim 2, as properly construed.  Freescale's JMOL (Dkt. No. 681) is incorporated in its entirety

19  herein.  No jury could reasonably find that Freescale infringes claim 2 of the '753 patent and

20  therefore Freescale is entitled to a judgment as a matter of law that it does not infringe claim 2 of

21  the '753 patent.

22      **B.     Freescale Does Not Infringe U.S. Patent No. 6,738,845 As A Matter of**
        **Law**

23

24      MediaTek has not offered sufficient evidence to meet its burden of showing that Freescale

25  infringes (either literally or under the doctrine of equivalents) claims 1 or 21 of the '845 patent.

26  With respect to claim 1, MediaTek has not shown that Freescale satisfies the "arranged to

27  arbitrate among at least the first data processing subsystem, the second data processing

28  subsystem, and the DMA subsystem for access to the first slave subsystem" limitation.  As

1   discussed in Freescale Semiconductor, Inc.'s Motion for Judgment as a Matter of Law Regarding

2   Claim Construction and Noninfringement of U.S. Patent No. 6,738,845 (Dkt. No. 660) and

3   Freescale Semiconductor, Inc.'s Opposition to MediaTek's JMOL (Dkt. No. 666), MediaTek has

4   not offered sufficient evidence that the accused products arbitrate among at least the first data

5   processing subsystem, the second data processing subsystem, and the DMA subsystem.  Freescale

6   Semiconductor, Inc.'s JMOL (Dkt. No. 660) and opposition to MediaTek's JMOL (Dkt. No. 666)

7   are incorporated in their entirety herein.  No jury could reasonably find that Freescale infringes

8   claim 1 of the '845 patent and therefore Freescale is entitled to a judgment as a matter of law that

9   it does not infringe claim 1 of the '845 patent.

10                    **1.     The Accused Products Lack a Second Slave Subsystem**

11          Nor has MediaTek presented sufficient evidence that the accused products satisfy the

12   "second slave subsystem" limitation in claim 21.  MediaTek's expert's conclusory testimony that

13   merely identifies a component (ESDCTLV2 block) within one of the accused products (the i.MX-

14   6) is insufficient to establish that this component meets the "second slave subsystem" claim

15   limitation.

```
19   Q. Let's check that box.
20   and now let's focus on limitation D. What does limitation
21   D recite?
22   A. A second slave subsystem comprising a fourth bus.
23   Q. Okay. Let's compare that to Freescale's products.
24   Let's go to slide 81. Let's go back to the schematic at
25   JTX30C.
1    What is the second slave subsystem in Freescale's
2    products, the i.MX51 and -53?
3    A. It's the ESDCT -- ESDCTLV2 block. And this is the
4    external memory controller. So ESDCTL stands for "enhanced
5    SDRAM controller" version 2.
6    Q. And that's the block that you've circled in green at the
7    top right of the figure?
8    A. That's the slave subsystem including that block, yes.

3    Q. Dr. Asanovic, before the break, we were talking about the
4    i.MX6SDL and DQ products in claim 1 of the '845 patent.
5    can you -- is it fair to use, for example, the DQ product
6    as a representative?
7    A. Yes.
```

16   
17   
18   
19   
20   
21   
22   
23   
24   
25   
26   

27   (Trial Tr. at 682:20-683:8, 707:3-7 (Asanovic).)  This testimony is insufficient to demonstrate

28   that the i.MX6 products infringe claim 21 of the '845 patent.

The testimony with regard to the alleged infringement of claim 21 by the other accused products, i.MX51 and i.MX53, is even more conclusory.  (Trial Tr. at 684:5-10 (Asanovic) ("Q.  And now let's go back to the second slave subsystem. Let's go back to claim 21 and turn to slide 82.  Can you tell us whether the i.MX51 and -53 products practice limitation D?  A.  They do.").)  This testimony is plainly insufficient to prove that Freescale's i.MX51 and i.MX53 products practice claim 21 of the '845 patent.

### 2. The Requests for Access to the Slave Subsystems of Accused Products are Not Set at the Same Priority

MediaTek's evidence that the accused products satisfies the "during any period when all requests for access to the first one of the first and second slave subsystems are of the same priority level" limitation of claim 21 is similarly insufficient.  Again, Dr. Asanovic's testimony is entirely conclusory.  (Trial Tr. at 689:3-5 (Asanovic) ("Q.  Can the ARM and the IPU in Freescale's products make requests that have the same priority?  A.  Yes, they can.").)  Though Dr. Asanovic then identifies the portions of reference manuals as evidence meeting of the claim, this too is conclusory.

The portions of JTX-0021 and JTX-0022 that MediaTek's expert identifies to support this conclusion is insufficient and do not directly implicate the accused masters.  Page 247 of JTX-0022 and Page 143 at JTX-0021 discusses what would occur if masters had equal priority, but does not indicate that the accused masters (the ARM and IPU) are actually capable of having equal priority, as configured and sold by Freescale.  More importantly, as Dr. Asanovic appears to acknowledge, the portion of the reference manuals identified by Dr. Asanovic refers to the bandwidth available to the masters after arbitration occurs.  (Trial Tr. at 689:9-691:22 (Asanovic).)  This is fundamentally different than the priority of the slaves to initially access the buses.

In light of the foregoing, it is clear that MediaTek has not presented sufficient evidence of infringement of claim 21.  Thus, no jury could reasonably find that Freescale infringes claim 21 of the '845 patent and therefore Freescale is entitled to a judgment as a matter of law that it does not infringe claim 21 of the '845 patent.

**C.     Freescale Does Not Infringe U.S. Patent No. 6,889,331 As A Matter of Law**

MediaTek has not offered sufficient evidence that Freescale infringes (either literally or under the doctrine of equivalents) claims 11 or 35 of the '331 patent.  Specifically, there is no evidence that any accused product meets the following limitations of claim 11:

- "clock frequency requirement"

- "plurality of registers"

**1.     The Registers of the Accused Products Do Not Hold a Clock Frequency Requirement**

MediaTek has failed to present sufficient evidence demonstrating that the accused products meet the "clock frequency requirement" or the "plurality of registers" limitations of claim 11.  As discussed in Freescale Semiconductor, Inc.'s Motion for Judgment as a Matter of Law Regarding Claim Construction and Noninfringement of U.S. Patent No. 6,889,331 (Dkt. No. 680) and Freescale Semiconductor, Inc.'s Motion for Judgment as a Matter of Law Regarding Claim Construction of "Clock Frequency Requirement" and Noninfringement of U.S. Patent No. 6,889,331 (Dkt. No. 682), MediaTek has presented its case under incorrect claim constructions and MediaTek failed to demonstrate infringement of at least the above limitation of claim 11, as properly construed.  Freescale's two JMOL's regarding the '331 patent (Dkt. No. 680 & Dkt. No. 682) are incorporated in their entirety herein.  No jury could reasonably find that Freescale infringes claim 11 of the '331 patent and therefore Freescale is entitled to a judgment as a matter of law that it does not infringe claim 11 of the '331 patent.

Additionally, there is no evidence that Freescale infringes claim 35 of the '331 patent.  More specifically, there is no evidence that any accused product satisfies the following limitations of claim 35:

- "at least one processor having a plurality of components operating with a plurality of clock signals;"

- "a dynamic power controller, connected to the power supply and the clock controller, adapted to monitor the at least one processor to determine a clock frequency requirement of the at least one processor and to determine a voltage requirement based on the clock frequency requirement, and configured to

FREESCALE'S JMOL ON LITERAL INFRINGEMENT, DOE, DIRECT INFRINGEMENT, WILLFUL INFRINGEMENT
CASE NO. 4:11-CV-05341 YGR (JSC)

6

transition the power supply and the clock controller to a power state defined by the clock frequency frequent and the voltage requirement."

MediaTek has not offered a shred of fact or expert testimony regarding claim 35 of the '331 patent.  MediaTek's expert opinions regarding the '331 patent were limited to claim 11.  (Trial Tr. at 717:2-758:7 (Asanovic) (discussion of '331 patent).)  A search of the entire trial transcript does not turn up a single reference to claim 35.  Therefore, no jury could reasonably find that MediaTek has proven that Freescale infringes claim 35 of the '331 patent and Freescale is entitled to a judgment of non-infringement as a matter of law that it does not infringe claim 35 of the '331 patent.

## IV.    FREESCALE IS ENTITLED TO JUDGMENT OF NON-INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

MediaTek has offered no evidence, testimony, or analysis supporting its claims that the accused products infringe the asserted patents under the doctrine of equivalents, let alone a proper claim by claim analysis indicating that there are no substantial differences between the elements of the accused products' functionality and the limitations of the asserted claims, or that the elements of the accused products perform substantially the same function in substantially the same way to obtain substantially the same result as the limitations of the asserted claims.  See TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc., 529 F.3d 1364, 1376-77 (Fed. Cir. 2008) (infringement under doctrine of equivalents may only be found where the accused device contains an "insubstantial" change from the claimed invention or where the accused device functions in substantially the same way as the claimed invention) (citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 610 (1950)); Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir. 2008) (discussing doctrine of equivalence function, way, result analysis).  MediaTek has completely failed to present any evidence under either formulation of the doctrine of equivalents analysis, and therefore Freescale is entitled to judgment as a matter of law.

Notably, MediaTek's expert failed to provide any analysis whatsoever under the doctrine of equivalents.  Absent such claim by claim analysis, MediaTek cannot satisfy its burden to prove infringement under the doctrine of equivalents.  Network Commerce, Inc. v. Microsoft Corp.,

422 F.3d 1353, 1363 (Fed. Cir. 2005) ("[T]he difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.").  There is no testimony in evidence that MediaTek has offered that demonstrates that Dr. Asanovic has evaluated each accused Freescale product and compared each of them to each asserted claim in each asserted patent and rendered an opinion that each product infringes the asserted patents under the doctrine of equivalents.  Because MediaTek has failed to meet its burden, Freescale is entitled to a judgment of non-infringement as a matter of law that it does not infringe any of the asserted patents pursuant to the doctrine of equivalents.

## V.   FREESCALE IS ENTITLED TO JUDGMENT OF NO WILLFUL INFRINGEMENT

In order to prove that Freescale has willfully infringed any of the patents-in-suit, MediaTek must prove, by clear and convincing evidence, that there is an objectively high likelihood that Freescale's actions constituted infringement of a valid patent and that Freescale subjectively knew or recklessly disregarded that particular claims were valid and infringed .  In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  No reasonable jury could find that any infringement of the asserted patents was willful by clear and convincing evidence and thus Freescale is entitled to judgment as a matter of law.

To establish willfulness, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  The state of mind of the accused infringer is not relevant to this objective inquiry.  If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer."  Seagate, 497 F.3d at 1371 (internal citation omitted).  Thus, the willfulness inquiry is a two-prong analysis, requiring an objective inquiry and a subjective inquiry.  The objective inquiry is a question for the Court, and the subjective inquiry is a question for the jury.  Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 682 F.3d 1003, 1007 (Fed. Cir.

2012).  Both prongs must be established for the Court to make an ultimate finding of willfulness.  In this case, there is no evidence to find either prong is met.

First, to establish objective willfulness, MediaTek must prove by clear and convincing evidence that there was an "objectively high likelihood that [Freescale's] actions constituted infringement of a valid patent."  Bard, 682 F.3d at 1005 (citing Seagate, 497 F.3d at 1371).  If Freescale had an objectively reasonable defense to infringement, its infringement cannot be said to be objectively willful, and objective willfulness fails as a matter of law.  See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010) ("The 'objective' prong of Seagate tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement."); Bard, 682 F.3d at 1006 (objective willfulness determination "entails an objective assessment of potential defenses based on the risk presented by the patent.").

In this case, Dr. Vahid and Dr. Asanovic had differing opinions concerning whether the prior art references anticipate the '331 and '753 patents and whether Freescale infringes the '331, '753, and '854 patents.  Dr. Vahid put forth a robust invalidity defense against the '331 and '753 patents, finding references that render those patents invalid as anticipated.  (Trial Tr. at 1796:5-1809:19, 1854:4-1867:14 (Vahid).)  In light of Dr. Vahid's opinion and the language in the prior art references, the reasonable litigant could have believed that the '331 and '753 patents-in-suit are anticipated by the prior art references.  Accordingly, the Court cannot find that Freescale's reliance on an invalidity defense was objectively baseless.

Further, following becoming aware of the patents-in-suit, Freescale promptly studied the patents, investigated the merits of MediaTek's patent infringement allegations, and developed sound legal defenses to those allegations including the reasonable beliefs that those patents were not infringed and invalid.  See, e.g., Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 511 (Fed. Cir. 1990) ("Exercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer.  That such a defense proves unsuccessful does not establish that infringement was willful.") (citation omitted); see also Powell v. Home Depot U.S.A., Inc.,

1  663 F.3d 1221, 1236 (Fed. Cir. 2011) (explaining that the appeal often presents question whether

2  defense or non-infringement theory was reasonable).  Freescale's good faith defense of non-

3  infringement and invalidity alone weighs in favor of granting Freescale's JMOL for a finding of

4  willfulness.

5         Second, to establish subjective willfulness, MediaTek must prove by clear and convincing

6  evidence that Freescale subjectively knew or recklessly disregarded that particular claims were

7  valid and infringed.  i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 860 (Fed. Cir. 2010).

8  Knowledge of the asserted patents is mandatory but insufficient.  Id.  Willfulness cannot be

9  proven where knowledge of the patents is not shown.  LML Holdings, Inc. v. Pac. Coast Dist.

10 Inc., No. 11-CV-06173 YGR, 2012 WL 1965878, at *4 (N.D. Cal. May 30, 2012); Sealant Sys.

11 Int'l, Inc. v. TEK Global, No. C 11-0074 PSG, 2012 WL 13662, at *3-4 (N.D. Cal. Jan. 4, 2012).

12 This standard has not been met in this case.

13        MediaTek failed to prove that Freescale had knowledge of the three patents-in-suit prior to

14 MediaTek's filing of a complaint in November 2011.  In fact, MediaTek admitted that the first

15 notice of the patents-in-suit was when the complaint was filed and supplemented in and around

16 November 2011.  (Yang Dep. at 219:5-22.)  MediaTek's counsel admitted this during the trial

17 when Freescale was attempting to admit evidence of its first notice of the patents-in-suit:

18              We are going to make no suggestion that during the lead-up from
               2007 to 2011 that somehow we notified Freescale of these patents.
19             We're trying to keep this out. What she's suggesting is that she
               needs to have this evidence to somehow counter some kind of
20             inference that -- that they were notified during this period. We're
               not going to make that inference. We have no basis to make that
21             inference.

22 (Trial Tr. at 1187:1-13 (admission of MediaTek's counsel, Keith Slenkovitch).)

23        Further, the parties have stipulated to the damages period.  (See Dkt. No. 589, Order

24 Granting Add'l Joint Stipulations for Trial Purposes ¶¶ 33-34 (establishing the damages period

25 for the '845 and '331 patents from 11/3/2011 to present and the '753 patent from 11/4/2011 to

26 present).)  As explained above, MediaTek's claim of willfulness may only be based on pre-filing

27 conduct.  Seagate, 497 F.3d at 1374.  Thus, as the stipulated damages period begins at the time of

28 the filing of the litigation, and MediaTek cannot point to any pre-filing knowledge of the patent,

1    MediaTek is unable to recover enhanced damages due to willful infringement on this theory.

2         Moreover, alleged copying is not proof of willfulness.  MediaTek accused Freescale of

3    copying in its opening statement but provided no evidence of copying at trial.  It is error to

4    conclude "that copying is synonymous with willful infringement."  Princeton Biochemicals, Inc.

5    v. Beckman Ins., Inc., 180 F.R.D. 254, 258 n.3 (D.N.J. 1997).  And, in any event, MediaTek

6    provided absolutely no evidence of copying.

7         Further, any evidence of copying is irrelevant because there is no evidence that any

8    MediaTek product practices the asserted claims.  At a minimum, copying evidence must relate to

9    the asserted claims — MediaTek has provided no evidence that it has a product that practices any

10   claim of any patents-in-suit or that Freescale copied any such product.  ICU Med., Inc. v. RyMed

11   Techs., Inc., 752 F. Supp. 2d 486, 493 (D. Del. 2010); VNUS Med. Techs., Inc., v. Diomed

12   Holdings, Inc., 527 F. Supp. 2d 1072, 1073-74 (N.D. Cal. 2007).  Therefore, Freescale is entitled

13   to judgment as a matter of law of no willful infringement.

14        MediaTek's willfulness claim must be based on Freescale's pre-filing conduct because it

15   cannot prove post-filing willfulness.  Seagate, 497 F.3d at 1374 ("A patentee who does not

16   attempt to stop an accused infringer's activities [via preliminary injunction] should not be allowed

17   to accrue enhanced damages based solely on the infringer's post-filing conduct."); LML

18   Holdings, Inc., No. 11-CV-06173 YGR, 2012 WL 1965878, at *5 (Circumstances where

19   infringer's post-filing conduct found willful involved material change that could create an

20   objectively high likelihood of infringing a valid patent. . . .  Otherwise, accused infringer must

21   have pre-filing knowledge of patents at issue before patentee can accrue enhanced damages based

22   on post-filing willful conduct) (citations omitted).  MediaTek has not moved for a preliminary

23   injunction.  Nor has MediaTek has not offered any evidence at trial that Freescale knew that there

24   was a high likelihood that it was infringing a valid patent.  Thus, the combination of a lack of pre-

25   filing knowledge of the patents or a motion for a preliminary injunction precludes MediaTek from

26   seeking post-filing willful infringement.

27        In sum, MediaTek's proof of willfulness, both objective and subjective, pre-filing and

28   post-filing, is deficient, and Freescale is entitled to judgment as a matter of law.

## VI.     FREESCALE IS ENTITLED TO JUDGMENT OF NO INDIRECT INFRINGEMENT

There is no evidence that Freescale has indirectly infringed any patent-in-suit.  In particular, MediaTek has not presented evidence that Freescale knowingly induced or contributed to infringement.  See Commil USA, LLC v. Cisco Sys., Inc., 720 F.3d 1361, 1369 (Fed. Cir. 2013).

A claim for actively inducing infringement requires scienter and mens rea.  Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011).  Thus, to prevail on an inducement claim, MediaTek must show "first that there has been direct infringement, and second that [Freescale] knowingly induced infringement and possessed specific intent to encourage another's infringement."  Kyocera Wireless Corp. v. Int'l Trade Comm'n, 545 F.3d 1340, 1353-54 (Fed. Cir. 2008) (internal quotation marks and citation omitted); accord DSU Med. Corp. v. JMS Co. Ltd., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc).  "[M]ere knowledge of possible infringement by others does not amount to inducement; [rather,] specific intent and action to induce infringement must be proven."  DSU, 471 F.3d at 1305 (citation omitted).

MediaTek offered no evidence sufficient for a reasonable jury to find that Freescale knew that any of its acts would constitute infringement of the asserted patents.  Nor did MediaTek offer any evidence sufficient for a reasonable jury to find that Freescale "specifically intended" that any alleged direct infringer (a Freescale customer) infringe the asserted patents.  In fact, MediaTek offered no evidence whatsoever as to customer use and thus cannot prove indirect infringement.

In particular, MediaTek has not offered evidence demonstrating that Freescale supplied its products to customers with "knowledge that [its customers' allegedly] induced acts caused infringement" of the accused patents.  Commil USA, 720 F.3d at 1366 (quoting Global-Tech, 131 S. Ct. at 2068) (internal quotations omitted).  MediaTek has not proven that Freescale causes Continental to prompt Ford to import cars with Sync's containing i.MX products.  Likewise, MediaTek has not proven that Freescale causes Foxconn to prompt Lab126 to import eReaders containing i.MX products.  The record is devoid of any evidence that Freescale knowingly

1    supplied its customers with products that it knew would cause its customers (or their customers)

2    to infringe the patents-in-suit.  MediaTek has not met its burden in indirect infringement.  Id.

3          Even MediaTek's attorneys' argument relating to inducement is insufficient to prove

4    inducement as a matter of law.  (See, e.g., Trial Tr. at 841:16-18 (arguing that "Freescale knows

5    that its infringing i.MX 31 and i.MX 51 chips are built into systems specifically for cars and

6    trucks sold in the United States.").)  Mere knowledge that an allegedly infringing chip is placed

7    into an end product is not sufficient to show inducement.

8          MediaTek's expert's conclusory testimony regarding the purpose and use of Freescale's

9    reference manuals (e.g., Trial Tr. at 759:16-24 (Asanovic)), its SABRE platform (e.g., Trial Tr. at

10   759:1-762:24 (Asanovic)), and Software Development Tool Resources (e.g., Trial Tr. at 766:5-21

11   (Asanovic), Trial Tr. at 768:5-15 (discussion regarding Ford Sync)) are wholly insufficient to

12   prove the requisite state of mind, and therefore insufficient as a matter of law to demonstrate

13   induced infringement.  See Unisone Strategic IP, Inc. v. Life Techs. Corp., No. 3:13-cv-1278-

14   GPC-JMA, 2013 U.S. Dist. LEXIS 151761, at *8 (S.D. Cal. Oct. 22, 2013) (granting motion to

15   dismiss claim of induced infringement because "finding that allegations that defendant 'provides

16   instruction, technical support, and training for using its own software' are conclusory and not

17   sufficient to plausibly infer that Defendant had the specific intent to induce others to infringe").

18   None of these customer resources provide any suggestion that Freescale knowingly or took

19   deliberate action to avoid learning that the allegedly induced acts of its customers infringed.  See

20   Global-Tech, 131 S. Ct. at 2070-71; Kyocera Wireless, 545 F.3d at 1354 ("[T]he specific intent

21   necessary to induce infringement requires more than just intent to cause the acts that produce

22   direct infringement . . . the inducer must have an affirmative intent to cause direct infringement.")

23   (internal quotations and citations omitted).

24         Nor has MediaTek offered any evidence that the accused Freescale products are not a

25   staple product suitable for non-infringing use, or that Freescale provided its customers the

26   accused products with knowledge that the component was especially made or adapted for use in a

27   manner that infringed the asserted patents.  See Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d

28   1317, 1327 (Fed. Cir. 2009); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1330 (Fed. Cir. 2010)

1   ("Our case law is clear that [plaintiff] must show that [defendant] knew that the combination for

2   which its components were especially made was both patented and infringing.") (internal

3   quotations and citations omitted); <u>Radware, Ltd. v. A10 Networks, Inc.</u>, No. C-13-02021-RMW,

4   2013 U.S. Dist. LEXIS 136942, at *5 (N.D. Cal. Sept. 24, 2013) ("An essential element of

5   indirect infringement claim under both §§ 271(b) and(c) is that the accused infringer has

6   knowledge of the relevant patents and knowledge that its acts contribute to or encourage

7   the <u>infringement</u> of those patents.") (emphasis in original).

8        Further, Freescale's good-faith belief that it does not infringe the asserted patents and that

9   the '331 and '753 patents are invalid also prevents a showing of induced infringement.

10  <u>See</u> <u>Commil USA</u>, 720 F.3d at 1368-69 (holding that "inducer's good-faith belief of invalidity

11  may negate the requisite intent for induced infringement"); <u>DSU</u>, 471 F.3d at 1307 (finding belief

12  of non-infringement sufficient evidence to support the jury's verdict of no induced

13  infringement); <u>Ecolab, Inc. v. FMC Corp.</u>, 569 F.3d 1335, 1351 (Fed. Cir. 2009), <u>amended on</u>

14  <u>reh'g in part</u>, 366 F. App'x 154 (Fed. Cir. 2009) (explaining that reasonable non-infringement

15  belief sufficient to support jury's verdict that defendant did not possess the required intent).  This,

16  in combination with MediaTek's lack of evidence regarding customer use of Freescale's products,

17  demonstrates that MediaTek cannot prove indirect infringement of any of the patents-in-suit and

18  that Freescale is entitled to judgment as a matter of law.

19        **VII.   CONCLUSION**

20        For the aforementioned reasons, Freescale is entitled to judgment as a matter of law that it

21  does not infringe the patents-in-suit either literally or under the doctrine of equivalents, does not

22  willfully infringe the patents-in-suit, and does not indirectly infringe the claims of the asserted

23  patents.

24

25

26

27

28

1    Dated: September 15, 2014              Respectfully submitted,

2                                          By:  /s/ Alexander J. Hadjis
                                               ALEXANDER J. HADJIS (Pro Hac Vice)
3                                              Alexander.Hadjis@cwt.com
                                               CADWALADER, WICKERSHAM & TAFT LLP
4                                              700 Sixth Street, NW
                                               Washington, DC 20001
5                                              Telephone:  (202) 862-2323
                                               Facsimile:   (202) 862-2400
6
                                               RUDY Y. KIM (CA SBN 199426)
7                                              RudyKim@mofo.com
                                               MORRISON & FOERSTER LLP
8                                              755 Page Mill Road
                                               Palo Alto, California 94304
9                                              Telephone: (650) 813-5600
                                               Facsimile:  (650) 494-0792
10
                                               JOSHUA A. HARTMAN (Pro Hac Vice)
11                                             JHartman@mofo.com
                                               MORRISON & FOERSTER LLP
12                                             2000 Pennsylvania Avenue, NW
                                               Suite 6000
13                                             Washington, DC 20006
                                               Telephone:  (202) 887-1500
14                                             Facsimile:   (202) 887-0763

15                                             Attorneys for Defendant-Counterclaimant
                                               FREESCALE SEMICONDUCTOR, INC.,
16

17                        **ATTESTATION OF E-FILED SIGNATURE**

18        I, Rudy Kim, am the ECF User whose ID and password are being used to file this

19   document.  In compliance with General Order 45, X.B., I hereby attest that Alexander J. Hadjis

20   has concurred in this filing.

21   Dated:  September 15, 2014               _____/s/  Rudy Kim_____
                                                          Rudy Kim
22

23

24

25

26

27

28