UNITED STATES DISTRICT COURT

*ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| MEDIATEK, INC., | ) | **JURY TRIAL** |
| | ) | |
| PLAINTIFF, | ) | **VOLUME 9A** |
| | ) | |
| VS. | ) | NO. C 11-05341YGR |
| | ) | |
| FREESCALE SEMICONDUCTOR, | ) | |
| INC., | ) | **PAGES 1718 - 1913** |
| | ) | |
| DEFENDANT. | ) | OAKLAND, CALIFORNIA |
| _____ | ) | THURSDAY, SEPTEMBER 11, 2014 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:              WILMER CUTLER PICKERING HALE & DORR LLP
                           950 PAGE MILL ROAD
                           PALO ALTO, CALIFORNIA  94304
                     BY:   JENNIFER E. CHEN,
                           JOSEPH F. HAAG,
                           KEITH SLENKOVICH, ATTORNEYS AT LAW

                           WILMER CUTLER PICKERING HALE & DORR LLP
                           350 SOUTH GRAND AVENUE, SUITE 2100
                           LOS ANGELES, CALIFORNIA  90071
                     BY:   JAMES M. DOWD, ATTORNEY AT LAW


FOR DEFENDANT:             CADWALADER, WICKERSHAM & TAFT LLP
                           700 SIXTH STREET, NW
                           WASHINGTON, D.C.  20001
                     BY:   ALEXANDER J. HADJIS,
                           KRISTIN L. YOHANNAN, ATTORNEYS AT LAW

              (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

```
 1                    A P P E A R A N C E S (CONT'D.)

 2

        FOR DEFENDANT:          MORRISON & FOERSTER
 3                              755 PAGE MILL ROAD
                                PALO ALTO, CALIFORNIA  94304
 4                         BY:  RUDY Y. KIM, ATTORNEY AT LAW

 5

 6      THERE BEING ALSO PRESENT:

 7              LAWRENCE LOH, MEDIATEK

 8              FINBARR MOYNIHAN, MEDIATEK

 9              FREESCALE SEMICONDUCTOR, INC.
                6501 WILLIAM CANNON DRIVE WEST
10              MD: OE62
                AUSTIN, TEXAS  78735
11              MARK PATRICK, LAW DIRECTOR, INTELLECTUAL PROPERTY

12

13

14

15                              --O0O--

16

17

18

19

20

21

22

23

24

25
```

## I N D E X

| **DEFENDANT'S WITNESSES** | **PAGE** | **VOL** |
|---|---|---|
| VAHID, FRANK | | |
| DIRECT EXAMINATION BY MR.HADJIS | 1740 | 9 |

## E X H I B I T S

| **DEFENDANT'S EXHIBITS** | **W/DRAWN** | **IDEN** | **EVID** | **VOL** |
|---|---|---|---|---|
| DTX0016 | | | 1798 | 9 |
| DTX0047 | | | 1855 | 9 |

--oOo--

```
08:01:13:03   1    THURSDAY, SEPTEMBER 11, 2014                     8:04 A.M.

              2                    P R O C E E D I N G S

              3         THE CLERK:  REMAIN SEATED.  COURT IS IN SESSION.

              4      CALLING CIVIL ACTION 11 C.V. 5341, MEDIATEK VERSUS

08:04:28:06   5    FREESCALE.

              6      COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

              7         MR. DOWD:  YOUR HONOR, ON BEHALF OF MEDIATEK, JIM

              8    DOWD.  AND WITH ME TODAY ARE KEITH SLENKOVICH, JENN CHEN,

              9    JOSEPH HAAG, AND OUR CLIENT REPRESENTATIVE, DR. LAURENCE LOH.

08:04:46:12  10         MR. SLENKOVICH:  GOOD MORNING, YOUR HONOR.

             11         THE COURT:  GOOD MORNING, EVERYONE.

             12      OKAY.  MR. HADJIS, WHO DO YOU HAVE TODAY?  GOOD MORNING.

             13         MR. HADJIS:  GOOD MORNING, YOUR HONOR.  ALEX HADJIS

             14    ON BEHALF OF FREESCALE.  AND WITH ME TODAY ARE MR. RUDY KIM.

08:05:03:24  15         MR. KIM:  GOOD MORNING, YOUR HONOR.

             16         THE COURT:  GOOD MORNING.

             17         MR. HADJIS:  AND MS. KRISTIN YOHANNAN.

             18         MS. YOHANNAN:  GOOD MORNING, YOUR HONOR.

             19         THE COURT:  GOOD MORNING.

08:05:10:12  20      OKAY.  SO AS, YOU KNOW, WE STAYED LATE TO CHECK ALL THE

             21    REFERENCES WITH RESPECT TO THE VAHID DECK.  I ISSUED AN ORDER

             22    WITH RESPECT TO MY FINDINGS LAST NIGHT SO THAT YOU COULD HAVE

             23    IT, GIVEN THAT EVERYBODY'S WORKING 24 HOURS A DAY THESE DAYS.

             24    SO I'VE GOT SOME MORE RULINGS TO MAKE TODAY, BUT I'D LIKE TO

08:05:44:06  25    KNOW WHETHER THERE ARE ANY NEW ISSUES.
```

08:05:52:15 1              **MR. DOWD:**  YES, YOUR HONOR.

2              **THE COURT:**  SURPRISE, SURPRISE, SURPRISE.

3              **MR. DOWD:**  I WISH I DID NOT HAVE TO REPORT THAT.

4              **THE COURT:**  NO, MR. DOWD, I EXPECT IT.  SO WHEN I DO

08:06:02:03 5  CRIMINAL TRIALS, WHAT I USUALLY WAKE UP EXPECTING IS WHAT IS

6  THE NEW THING A JUROR IS GOING TO COME UP WITH.  JURORS ALWAYS

7  HAVE INTERESTING COMMENTS.

8       SO IT'S NOT A SURPRISE.  OKAY.  GO AHEAD.  WHAT'S THE

9  LIST?

08:06:19:21 10             **MR. DOWD:**  SO, YOUR HONOR, WITH RESPECT TO DR. VAHID,

11 HERE'S THE ISSUE.  SO AS YOUR HONOR APPRECIATES FROM

12 YESTERDAY'S DISCUSSION, MEDIATEK SPENT ABOUT TWO DAYS

13 ATTEMPTING TO MEET AND CONFER ON DR. VAHID'S SLIDES.  THE ONLY

14 PERSON WHO ATTENDED FROM FREESCALE WAS A VERY YOUNG ASSOCIATE

08:06:41:12 15 WITH NO AUTHORITY TO MAKE DECISIONS ABOUT THE SLIDES.

16      YOUR HONOR ISSUED THE ORDER STRIKING APPROXIMATELY

17 27 SLIDES OUT OF THE 71-SLIDE DECK AFTER THE HEARING

18 YESTERDAY.

19      AT 4:00 A.M. THIS MORNING, WE GET A BRAND-NEW DECK.  IT

08:06:58:09 20 HAS 85 SLIDES.  SO THE RESULT OF STRIKING 27 IS THAT WE GO

21 FROM 71 TO 85, AND THIS COMES AT -- AFTER 4:00 A.M. THIS

22 MORNING.

23      AND, YOUR HONOR, THIS IS A STRATEGY MOVE.  IT GUARANTIES

24 THAT WE'VE NOT HAD ENOUGH TIME TO GO THROUGH AND COMPARE THIS

08:07:17:09 25 BRAND-NEW DECK TO WHAT'S IN THE REPORT AND WHAT WAS STRUCK

08:07:20:15   1    FROM THE OLD SLIDES.  BUT, YOUR HONOR, I CAN ALREADY TELL THAT

2    THERE IS A SUBSTANTIAL AMOUNT OF MATERIAL IN HERE THAT IS NOT

3    SUPPORTED AND IS NOT APPROPRIATE IN LIGHT OF YOUR HONOR'S

4    ORDER.

08:07:31:27   5         THE COURT:  DO I HAVE A DECK?  I DON'T HAVE A DECK.

6         MR. DOWD:  I --

7         THE COURT:  I'M NOT ASKING FOR YOURS.  I WOULD EXPECT

8    FREESCALE TO HAVE A COPY FOR ME.

9         MR. HADJIS:  YES, YOUR HONOR, WE WILL BRING A COPY IN

08:07:44:24  10    FOR YOU.

11         MR. DOWD:  AND, YOUR HONOR, WE WOULD OBJECT TO

12    PRESENTING DR. VAHID UNTIL THESE ISSUES ARE RESOLVED, GIVEN

13    THIS FACT THAT WE SPENT TWO DAYS AND I BELIEVE IT WAS FIVE

14    HOURS' WORTH OF MEET-AND-CONFER TIME WITH MR. CHAKKALAKAL

08:08:00:06  15    TRYING TO ADDRESS THESE EXACT ISSUES.  AND I'LL GIVE YOUR

16    HONOR AN EXAMPLE OF THIS.

17         THE COURT:  WELL, I DON'T WANT AN EXAMPLE TILL I HAVE

18    A DECK.

19         MR. DOWD:  YOUR HONOR, I UNDERSTAND.

08:08:08:12  20         THE COURT:  SO OTHER ISSUES?  I MEAN, IT'S A MAJOR

21    ISSUE.  BUT ANYTHING ELSE?

22         MR. DOWD:  THAT'S, I THINK, MY PRIMARY ISSUE.  I

23    THINK THERE IS ALSO AN ISSUE WITH THE NEXT EVENT IS

24    FREESCALE'S DAMAGES EXPERT WHO IS MR. REED, AND WE'RE HAVING

08:08:25:03  25    THE SAME EXPERIENCE WITH MR. REED AND MR. REED'S SLIDES.

08:08:30:12   1   MR. SLENKOVICH HAS BEEN MEETING AND CONFERRING ON THAT.  I

  2   WOULD LET HIM ADDRESS THAT ISSUE, YOUR HONOR.

  3          **THE COURT:**  DO I HAVE A SLIDE DECK?

  4          **MS. YOHANNAN:**  I HAVE ONE FOR YOU.

08:08:41:06   5          **THE COURT:**  TERRIFIC.  THANK YOU, MS. YOHANNAN.

  6          **MR. SLENKOVICH:**  YOUR HONOR, I WOULD ONLY SAY THAT I

  7   THINK THAT THE PROBLEMS WITH MR. REED'S SLIDES ARE AS

  8   PERVASIVE, IF NOT MORE PERVASIVE, THAN WITH DR. VAHID.  SO IN

  9   THE TIME THAT WE HAVE, I COULD CERTAINLY TRY TO TAKE THE BROAD

08:09:00:09 10  STROKES THROUGH THEM, BUT MOST OF THESE HAVE MULTIPLE PROBLEMS

11  WITH THEM.

12     I DO NOT -- I DON'T EXPECT MR. REED TO TESTIFY TODAY.  I

13  THINK THERE'S SOME POSSIBILITY.

14     AND WE'VE HAD A VERY SIMILAR EXPERIENCE IN TERMS OF TRYING

08:09:24:00 15  TO MEET AND CONFER ON THESE ISSUES, AND SO I BELIEVE THESE ARE

16  ISSUES THAT HAVE NOT -- THERE HASN'T BEEN A LOT OF QUALITY

17  TIME IN MEETING AND CONFERRING.

18          **MS. YOHANNAN:**  YOUR HONOR, THAT'S NOT TRUE.  WE SPENT

19  FIVE HOURS MEETING AND CONFERRING WITH THEM YESTERDAY ON THESE

08:09:41:15 20  SLIDES.

21     AND --

22          **THE COURT:**  DID YOU DO THE MEET-AND-CONFER?

23          **MS. YOHANNAN:**  I WAS IN COURT, YOUR HONOR, SO ONE OF

24  OUR ASSOCIATES DID THE MEET-AND-CONFER, AS DID ONE OF

08:09:51:12 25  MEDIATEK'S ATTORNEYS' ASSOCIATES.

08:09:53:18  1         **MR. SLENKOVICH:**  ONE OF OUR PARTNERS, YOUR HONOR, WHO

2  HAD AUTHORITY TO MAKE DECISIONS WAS ATTENDING THAT.

3        **THE COURT:**  SO WHO WAS ATTENDING ON YOUR SIDE?

4        **MS. YOHANNAN:**  MICHELLE YANG.

08:10:03:12  5        **THE COURT:**  AND SHE HAD FULL AUTHORITY?

6        **MS. YOHANNAN:**  SHE HAD AUTHOR -- WE MET AND CONFERRED

7  ON THIS, AND SHE HAD AUTHORITY TO MAKE CHANGES AND SHE SAID

8  SHE WOULD MAKE THE CHANGES WHICH WAS TO ADD CITATIONS.

9        **THE COURT:**  WELL, WHERE IS SHE?

08:10:14:27 10       **MS. YOHANNAN:**  SHE'S NOT HERE, YOUR HONOR.

11        **THE COURT:**  WELL, THEN MAYBE SHE SHOULD BE ARGUING

12  THIS, NOT YOU.

13        **MS. YOHANNAN:**  AND I'LL TELL YOU THAT I MET AND

14  CONFERRED WITH THE PARTNER ON THEIR CASE ON OTHER SLIDES, AND

08:10:24:27 15  HE TOLD ME THAT HE DIDN'T HAVE AUTHORITY TO CHANGE THE SLIDES

16  EITHER AND HAD TO GO BACK AND HAVE A DISCUSSION WITH HIS TEAM

17  WHEN I MET AND CONFERRED ON THEIR EXPERT'S SLIDES WITH MR. --

18  I CAN'T REMEMBER HIS LAST NAME -- NATE.  SO THEY -- WE WERE IN

19  THE SAME POSITION AS THEM.

08:10:40:18 20    I HAD AUTHORITY TO MAKE ARGUMENTS FOR MS. LAWTON'S SLIDES,

21  AND NATE, WHOSE NAME I CAN'T REMEMBER --

22              (SIMULTANEOUS COLLOQUY.)

23        **MS. YOHANNAN:**  -- WALKER, THANK YOU.  DID NOT HAVE

24  THE AUTHORITY TO MAKE ANY CHANGES EITHER AND HAD TO GO BACK TO

08:10:52:21 25  HIS TEAM BEFORE THEY COULD GET BACK TO US.

08:10:57:03  1        MR. SLENKOVICH:  THAT WAS MR. NATHAN WALKER.  HE'S A

2    PARTNER AT OUR FIRM.

3        MS. YOHANNAN:  AND I DID ATTEND THAT MEET-AND-CONFER,

4    YOUR HONOR.

08:11:03:27  5        THE COURT:  OKAY.

6        MS. YOHANNAN:  IN PERSON.

7        THE COURT:  WELL, WHERE'S THE VAHID SLIDES?  HE'S

8    NEXT UP?  IS HE NEXT?

9        MR. HADJIS:  HE IS, YOUR HONOR.

08:11:11:18  10        THE COURT:  ONE OF THE THINGS I MAY DO, MR. DOWD,

11    IS -- THIS MAY BE A LABORIOUS PROCESS.

12        MR. DOWD:  I'M SORRY, YOUR HONOR.  IT MAY BE A WHAT

13    PROCESS?

14        THE COURT:  A LABORIOUS PROCESS.  WE'RE GOING TO BE

08:11:23:00  15    GOING ON THE RECORD HERE AT 8:30.  I BELIEVE HE'S NEXT UP.

16        MR. DOWD:  THAT IS CORRECT, YOUR HONOR.

17        THE COURT:  NO SLIDE WILL BE SHOWN UNLESS I CAN

18    VERIFY THE REFERENCE IN THE REPORT TO THE SLIDE.  AND IF IT'S

19    NOT THERE, IT DOESN'T GET SHOWN.

08:11:33:24  20        AND THAT APPROACH WILL -- I THINK THAT'S PROBABLY THE ONLY

21    WAY I CAN DEAL WITH THIS.

22        MR. DOWD:  YOUR HONOR, IF I COULD, DOES YOUR HONOR

23    NOW HAVE A COPY OF THE SLIDE DECK?

24        THE COURT:  I DO.

08:11:52:15  25        MR. DOWD:  COULD I TAKE YOU TO SLIDE 61, BECAUSE FROM

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

08:11:55:21 1  SLIDE 61 THROUGH THE END OF THE DECK, WE HAVE A CONSISTENT

2  PROBLEM.  AND THEN THERE ARE -- THERE ARE ADDITIONAL PROBLEMS

3  THAT -- THAT ARISE IN THE EARLIER PORTIONS, BUT WHEN YOUR

4  HONOR GETS TO SLIDE 61, I'D LIKE TO ADDRESS ONE ISSUE THERE

08:12:11:24 5  THAT I THINK PERVADES FROM THERE TO THE END OF THE REPORT --

6  OR TO THE END OF THE SLIDE DECK.

7          THE COURT:  OKAY.

8          MR. DOWD:  WHAT WE HAVE HERE, YOUR HONOR, FROM 61

9  THROUGH THE END OF THE SLIDE DECK IS FREESCALE'S ATTEMPT TO DO

08:12:25:09 10  THROUGH DR. VAHID WHAT I DID WITH DR. ASANOVIC, WHICH IS TO

11  WALK THROUGH AND TRY TO BUILD A SUMMARY OF VOLUMINOUS RECORDS.

12  THAT WAS THE PDX4-140.

13      THE PROBLEM IS THAT DR. VAHID DOESN'T HAVE IN HIS REPORT A

14  BASIS TO DO SO.  AND SO WHAT WE SEE AS WE WALK THROUGH THESE

08:12:46:27 15  SLIDES IS THE CITATIONS ARE NOT TO DR. VAHID'S REPORT BUT

16  THEY'RE TO DR. NARAD -- OR MR. NARAD'S REPORT.  THEY'RE TO

17  MEDIATEK'S EXPERT.

18          THE COURT:  RIGHT.

19          MR. DOWD:  AND I BELIEVE WE HAD THIS OUT YESTERDAY,

08:13:00:21 20  YOUR HONOR, AND I BELIEVE THE ANSWER WAS YOU DON'T GET TO RELY

21  ON THAT.  AND IF -- IF I MIGHT, YOUR HONOR.

22              (OFF-THE-RECORD DISCUSSION.)

23          MR. DOWD:  OH, HERE IT IS.

24      IF I MIGHT, YOUR HONOR, I'D LIKE TO REFER TO THE

08:13:19:24 25  FEBRUARY 7TH PRETRIAL WHERE WE ACTUALLY TALKED ABOUT THIS.

08:13:24:27  1    THIS IS DOCKET 443.

2            THE COURT:  WELL, HOLD ON.  I -- I'M GOING TO -- DO

3    YOU HAVE, BY THE WAY, AN EXTRA DECK FOR ME?

4                (PAUSE IN THE PROCEEDINGS.)

08:14:00:24  5            THE COURT:  GO AHEAD AND PUT IT RIGHT ON THAT DESK

6    RIGHT THERE.  PUT IT RIGHT THERE.

7            MR. HADJIS:  YOUR HONOR, CAN I TRY TO EXPLAIN VERY

8    QUICKLY WHAT'S GOING ON WITH THIS LAST SET OF SLIDES?

9            MR. DOWD:  YOUR HONOR, I WAS JUST TRYING TO TAKE YOU

08:14:19:12 10    TO A CITATION BEFORE.

11            THE COURT:  HOLD ON.

12                (PAUSE IN THE PROCEEDINGS.)

13            THE COURT:  WHAT I AM LOOKING FOR IN THE SLIDE DECK

14    AFTER PAGE 61 IS THE OPINION WHICH THIS CHUNK OF MATERIAL

08:15:02:03 15    SEEKS TO EXPLAIN.  WHAT'S THE -- WHERE'S THE OPINION?  WHAT

16    PAGE?  WHAT PAGE IS THE OPINION THAT YOU'RE SEEKING TO EXPLAIN

17    BY THESE SLIDES?

18            MR. HADJIS:  YOUR HONOR, THIS IS -- ARE YOU TALKING

19    ABOUT THE EXPERT OPINION?

08:15:18:06 20            THE COURT:  YES.  HE'S PUTTING ON TESTIMONY --

21            MR. HADJIS:  YEAH.

22            THE COURT:  -- PRESUMABLY TO EXPLAIN ONE OF HIS

23    OPINIONS.  WHERE IS THE SLIDE IN THIS DECK AFTER PAGE 61 THAT

24    IDENTIFIES THE OPINION AT ISSUE SO I CAN CHECK IT?

08:15:33:24 25            MR. HADJIS:  YOUR HONOR, THIS IS A COMPILATION, A

08:15:36:12  1    SUMMARY, AS DR. ASANOVIC PUT TOGETHER, THE '331 PATENT, AND

2    THIS IS A SUMMARY OF THE MATERIALS REFERENCED THROUGH THE '331

3    PATENT OPINIONS.  THERE IS NOT ONE PLACE IN AN OPINION --

4          THE COURT:  MR. HADJIS --

08:15:57:09  5          MR. HADJIS:  UM-HMM.

6          THE COURT:  -- THE POINT OF SLIDES -- THE POINT OF

7    THE EXPERT TESTIMONY IS TO OFFER AN OPINION.  THAT'S THE

8    POINT.  THERE IS NO OTHER POINT TO HAVING AN EXPERT HERE.  THE

9    EXPERT IS HERE TO EXPLAIN TO THE JURY HIS OR HER OPINION.

08:16:20:03 10       SO WHAT I HEAR YOU SAYING, BECAUSE YOU DID NOT DIRECTLY

11   ANSWER MY QUESTION, IS THAT THERE IS NO OPINION ASSOCIATED

12   WITH PAGES 61 OR THE SUBSEQUENT SLIDES; IS THAT CORRECT?

13         MR. HADJIS:  IT IS NOT.

14         THE COURT:  ALL RIGHT.  WHERE IS THE OPINION, THEN?

08:16:35:21 15         MR. HADJIS:  THE OPINION OR THE SUPPORT IN THE REPORT

16   IS REFERENCED ON EACH SLIDE.

17         THE COURT:  WHERE IS THE OPINION?

18         MR. HADJIS:  YOUR HONOR, IT'S THE '331 --

19         THE COURT:  IS THERE -- IS THERE AN OPINION ON

08:16:53:09 20   SLIDE 61 --

21         MR. HADJIS:  DR. ASANOVIC DIDN'T HAVE AN --

22         THE COURT:  DO YOU NOT UNDERSTAND MY QUESTION?

23         MR. HADJIS:  I DO.

24         THE COURT:  OKAY.  SO WHAT IS THE OPINION THAT YOU

08:17:04:12 25   ARE SEEKING TO ELICIT FROM THIS EXPERT AND SO THEREFORE NEED

08:17:12:00  1   SLIDES 61 THROUGH THE END?

2        MR. HADJIS:  YOUR HONOR, THIS IS THE SUMMARY OF

3   VOLUMINOUS MATERIALS.

4        THE COURT:  THAT'S NOT AN ANSWER TO MY QUESTION.

08:17:22:18  5        MR. HADJIS:  HE DID NOT PROVIDE A SUMMARY OF

6   VOLUMINOUS MATERIALS OPINION.  THIS IS THE SLIDE AND THE

7   SERIES OF SLIDES THAT DR. ASANOVIC PUT TOGETHER IN HIS

8   TESTIMONY THAT WAS THEN OFFERED INTO EVIDENCE.

9     YOUR HONOR ACCEPTED IT AND GAVE US THE OPPORTUNITY TO

08:17:51:03 10   PROVIDE SOMETHING FROM OUR PERSPECTIVE.  THIS IS WHAT WE'RE

11   DOING HERE.  AND IT IS GROUNDED IN DR. VAHID'S OPINIONS.

12        THE COURT:  WHAT OPINION?  THAT'S WHAT I'M ASKING,

13   MR. HADJIS.

14        MR. HADJIS:  THE '331.

08:18:09:12 15        THE COURT:  WHAT OPINION?  IDENTIFY FOR ME WHAT THE

16   OPINION IS.

17        MR. HADJIS:  THE '331 NON-INFRINGEMENT OPINION, THE

18   REBUTTAL REPORT.

19        THE COURT:  SPECIFICALLY, WHAT IS THE OPINION?  AN

08:18:20:03 20   EXPERT IS GOING TO GET UP HERE, AND TYPICALLY WHAT WOULD

21   HAPPEN IS THEY WOULD HAVE AN OPINION.  THAT'S WHY I ASKED YOU

22   TO HAVE THE SUMMARY AVAILABLE.  "I HAVE AN OPINION THAT THE

23   SKY IS BLUE."  WHAT IS THE FOUNDATION FOR THAT OPINION?  AND

24   THEN THEY EXPLAIN IT.

08:18:40:24 25     THAT IS THE FUNDAMENTAL QUESTION I AM ASKING YOU.  WHAT IS

08:18:45:21  1   THE OPINION?  THERE IS NO POINT IN HAVING EXPERTS HERE UNLESS

2   THEY HAVE AN OPINION TO PRESENT TO THE JURY.  THAT IS THE ONLY

3   POINT.  THEY ARE EXPERTS.  THEY HAVE NO PERSONAL KNOWLEDGE OF

4   ANY OF THESE FACTS.  THEY HAVE DONE AN ANALYSIS.  THEIR

08:19:15:09  5   ANALYSIS IS BASED UPON EVIDENCE PROVIDED DURING THE COURSE OF

6   DISCOVERY.  AND THAT EVIDENCE MAY IN FACT BE FROM THEIR OWN --

7   OR THE -- THEIR OWN SIDE OR IT MIGHT BE FROM SOMEONE ELSE.

8           **MR. HADJIS:**  WELL, YOUR HONOR.

9          **THE COURT:**  BUT THEY MUST HAVE AN OPINION.

08:19:35:00  10          **MR. HADJIS:**  IF YOU LOOK AT THE LAST SLIDE, YOU CAN

11   SEE --

12           **THE COURT:**  WHAT PAGE?

13          **MR. HADJIS:**  DDX5-85.

14     THAT IS THE CULMINATION OF ALL OF THE SLIDES STARTING FROM

08:19:54:03  15   DDX5-61 --

16          **THE COURT:**  I SEE IT'S THE CULMINATION.  I'M LOOKING

17   FOR THE OPINION.

18          **MR. HADJIS:**  AND THE OPINIONS THAT ARE GOING TO BE

19   EXPRESSED HERE ARE SHOWN WITH REGARD TO THE CLAIM, AND THAT IS

08:20:11:09  20   THAT THERE IS NOT A SEPARATE PROCESSOR COMPONENT AND

21   CONTROLLER, A PLURALITY OF REGISTERS, AND A CLOCK FREQUENCY

22   REQUIREMENT.

23           **THE COURT:**  NONE OF THIS COMES IN RIGHT NOW.  I -- I

24   AM NOT GETTING SUFFICIENT ANSWERS TO MY QUESTIONS.  ASANOVIC'S

08:20:38:00  25   SLIDE DECK, THAT'S WHAT I'M LOOKING FOR.

08:20:40:15 1                    (PAUSE IN THE PROCEEDINGS.)

2              **MR. DOWD:**  YOUR HONOR, I'M CHECKING.  WE MAY HAVE AN

3      EXTRA COPY.

4                    (PAUSE IN THE PROCEEDINGS.)

08:21:03:21 5              **MR. DOWD:**  YOUR HONOR, I FOUND A COPY I CAN HAND UP

6      TO YOU.

7              **THE COURT:**  NO.  I NEED -- THANK YOU.

8                    (PAUSE IN THE PROCEEDINGS.)

9              **THE COURT:**  LET -- LET ME ALSO SAY -- AND I WILL PUT

08:21:19:00 10     ALL THE REASONS FOR THIS ON THE RECORD.  I DON'T KNOW THAT

11     I'LL HAVE TIME FIRST THING.

12         BUT I SPENT A CONSIDERABLE AMOUNT OF TIME LAST NIGHT

13     THINKING ABOUT THIS REQUEST TO ADD A NEW CLAIM TO THE ISSUES

14     BEING TRIED, AND THAT REQUEST IS DENIED.

08:21:51:27 15         SO ANY SLIDES AFFILIATED WITH THAT REQUEST WILL BE

16     EXCLUDED.  AND AS I SAID, I HAVE A VERY LONG STATEMENT TO MAKE

17     WITH RESPECT TO THAT DECISION.

18             **MR. DOWD:**  YOUR -- YOUR HONOR, JUST SO I HAVE IT ON

19     THE RECORD, THAT'S THE SECOND SLAVE SUBSYSTEM, FIFTH BUS

08:22:14:12 20     ISSUE --

21             **THE COURT:**  YES.

22             **MR. DOWD:**  -- FOR CLAIM 1.

23         THANK YOU, YOUR HONOR.

24                    (PAUSE IN THE PROCEEDINGS.)

08:23:51:27 25             **THE COURT:**  MR. DOWD, ALL OF THESE REFERENCES IN

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

08:23:55:12  1    ASANOVIC'S SLIDE DECK, ARE THEY REFERENCED IN HIS REPORT?

2         **MR. DOWD:**  YES, YOUR HONOR.

3         **THE COURT:**  I SEE THE REFERENCES TO THE UNDERLYING

4    MANUALS.  IF I CHECK THAT AGAINST HIS REPORT, WILL THOSE

08:24:15:06  5    REFERENCES BE THERE?

6         **MR. DOWD:**  YES, YOUR HONOR, THAT'S HOW WE BUILT THIS.

7              (PAUSE IN THE PROCEEDINGS.)

8         **THE COURT:**  SO HOW IS THIS THEN COMPARABLE, IF THE

9    OPINION THAT IS REFERENCED IN THE ASANOVIC SLIDES IS AN

08:24:58:18 10    OPINION THAT IDENTIFIES THE DOCUMENTS THAT ARE IN THE REPORT

11    TO BUILD THE SLIDE DECK, AND YOURS IS NOT, HOW IS THAT FAIR?

12         **MR. HADJIS:**  YOUR HONOR, OURS DOES IDENTIFY THE

13    MATERIALS IN THE REPORT AND THE REPORT ITSELF.  AS I HAD

14    INDICATED YESTERDAY, OUR REPORT IS A REBUTTAL REPORT.

08:25:31:21 15        DR. VAHID REBUTTED THE INFRINGEMENT REPORT OF DR. NARAD.

16    IN DOING THE REBUTTAL, HE, OF COURSE, IDENTIFIED CERTAIN

17    SPECIFIC AREAS ABOUT THE PRODUCT'S OPERATION, ABOUT ITS

18    CONSTRUCT THAT DID NOT MEET THE CLAIM LIMITATIONS THAT ARE AT

19    ISSUE HERE.

08:25:56:27 20        HE ALSO, IN REBUTTING DR. NARAD'S REPORT ON THE '331

21    PATENT, DID ADDRESS WHAT MR. NARAD PUT TOGETHER IN THE FORM OF

22    AN INFRINGEMENT OPINION.

23        SO AS I SAID YESTERDAY, FOR US TO PUT TOGETHER A

24    COMPARABLE BUILD-UP TO A SUMMARY REGARDING THE OPERATION AND

08:26:25:09 25    THE CONSTRUCT OF THE PRODUCTS AS THEY PERTAIN TO THE '331

08:26:30:09  1   PATENT, WE NEEDED TO NOT ONLY REFER TO DR. VAHID'S REPORT, BUT

2   ALSO TO THE MATERIALS THAT HE WAS REBUTTING.

3           **THE COURT:**  RIGHT.  BUT NARAD -- SO THE REFERENCE,

4   LET'S SAY, ON PAGE 61 TO NARAD IS EXHIBIT C1.  SO I'M LOOKING

08:26:54:06  5   AT NARAD'S C1.  AND UNDER YOUR THEORY, I SHOULD SEE ALL THESE

6   DOCUMENTS.  WELL, I DON'T SEE ANY DOCUMENTS LISTED OTHER THAN

7   PERHAPS THAT -- THAT COME STRAIGHT THROUGH IT.

8       LET'S GO TO DDX5 -- WELL, 62 HAS NOTHING.  SO 63 REFERS TO

9   JTX18.  UNDER YOUR THEORY, I WOULD FIND THAT IN NARAD'S

08:27:36:15 10   REPORT.  WHERE IS IT?

11           **MR. HADJIS:**  YOUR HONOR, WE WILL -- AT THIS POINT DO

12   NOT PLAN TO PUT ON THESE SLIDES.  IF THERE'S SOMETHING THAT --

13   THAT CHANGES OUR MIND, I WILL LET YOU KNOW BEFORE WE GO

14   THROUGH THIS EXAMINATION.  BUT AT THIS POINT, WE DON'T NEED

08:28:13:27 15   THEM.

16           **MR. DOWD:**  YOUR HONOR, CAN I JUST BRIEFLY RESPOND?

17       IF THEY'RE WITHDRAWN, THAT'S FINE.  WHAT I DON'T WANT TO

18   DO IS I DON'T WANT TO BE IN THE MIDDLE OF EXAMINATION IN FRONT

19   OF THE JURY ON THIS AND THEN HAVE THEM SUDDENLY SAY, "OH, BUT

08:28:36:00 20   WE NEED TO USE THEM."

21           **THE COURT:**  WELL --

22           **MR. DOWD:**  AND JUST ONE OTHER POINT, YOUR HONOR,

23   WHICH IS RELATED TO THE POINT ABOUT THE NARAD REPORT.  AND

24   THIS IS WHERE I WAS, YOUR HONOR.

08:28:48:15 25       DURING THE FEBRUARY 7 PRETRIAL, WHICH IS DOCKET 433, WE

08:28:53:06   1   HAD A VERY SPECIFIC DISCUSSION ABOUT THE USE OF EXPERT REPORTS

2   AT TRIAL.  AND WHAT MR. -- MR. HADJIS REPRESENTED WAS, QUOTE,

3   THIS IS AT LINE 11, PAGE 19, "YOUR HONOR, I WILL SAY THAT THEY

4   ARE NOT ON OUR EXHIBIT LIST.  WE DID NOT INTEND TO GET INTO

08:29:11:18   5   THEM, ONLY THROUGH CROSS-EXAMINATION FOR IMPEACHMENT IF WE

6   NEEDED OR WANTED TO DO THAT."

7        SO THE REPRESENTATION AT PRETRIAL WAS THEY'RE NOT GOING TO

8   RELY ON EXPERT REPORTS AS THE BASIS FOR AFFIRMATIVELY OFFERING

9   DIRECT TESTIMONY.

08:29:28:12  10        NOW THE BASIS FOR ALL OF THESE SLIDES IS APPARENTLY THE

11   EXPERT REPORT OF MR. NARAD WHICH IS A DIRECT CONTRADICTION OF

12   THEIR REPRESENTATION ON FEBRUARY 7TH.

13             **THE COURT:**  DO I HAVE ALL MY JURORS HERE?

14             **THE CLERK:**  YES.

08:29:47:12  15             **THE COURT:**  LET ME JUST MAKE A SIDE NOTE WITH RESPECT

16   TO THE COMMITMENT OF THIS JURY.  THIS IS -- AND I JUST WANT TO

17   SAY ON THE RECORD, AND I'M GOING TO THANK THEM WHEN THEY COME

18   IN, REALLY AN INCREDIBLE AND DEDICATED JURY.

19        I WAS ADVISED YESTERDAY THAT ONE OF THE JURORS WHO IS

08:30:12:18  20   USUALLY PICKED UP BY A FAMILY MEMBER DROVE THE SICK JUROR HOME

21   IN HER CAR SO THAT SHE WOULDN'T HAVE TO BE DRIVING.  IT IS

22   JUST AN INCREDIBLE, I THINK, STATEMENT ABOUT THEIR COMMITMENT

23   TO THIS PROCESS.  AND I'M NOT GOING TO WASTE THEIR TIME.  I'M

24   NOT.  I AM HUGELY HONORED TO HAVE THEM IN THIS COURTROOM.  AND

08:30:51:27  25   YOU SHOULDN'T WASTE THEIR TIME EITHER.

08:31:04:24  1          HOW MUCH OF THIS CAN WE GET THERE?

2                **MR. HADJIS:**  YOUR HONOR, ALL THE WAY TO THE SLIDE

3          THAT YOU BEGAN WITH TODAY, WHICH I BELIEVE WAS 61.  LET ME

4          DOUBLE-CHECK IT.

08:31:17:21  5                    (PAUSE IN THE PROCEEDINGS.)

6                **THE COURT:**  IS THAT WHERE YOUR OBJECTIONS BEGAN,

7          MR. DOWD?

8                **MR. DOWD:**  HONEST -- SORRY, LET ME START THAT AGAIN.

9          ACTUALLY, YOUR HONOR, THAT IS NOT WHERE THEY BEGIN.  THAT WAS

08:31:26:27 10          THE MOST EGREGIOUS THING.  ON, JUST FOR EXAMPLE, SLIDE 7 WAS A

11          SLIDE THAT THEY AGREED CHANGE BY REMOVING THE LABELING AND THE

12          BLOCKS ON THE RIGHT.  THEY REMOVED ONE OF THE LABELS, NOT THE

13          OTHER.  AND THEN THERE ARE --

14                **THE COURT:**  I ONLY TOLD THEM TO REMOVE THE ONE.

08:31:43:12 15          THAT'S THE ONLY ONE YOU SAID SO IT STAYS IN.

16                **MR. DOWD:**  OKAY.  THERE ARE -- THERE ARE SLIDES IN

17          HERE THAT YOUR HONOR HAS --

18                **THE COURT:**  OKAY.  JUST GIVE ME THE PAGE NUMBER SO WE

19          CAN GET MOVING.

08:31:54:18 20                    (PAUSE IN THE PROCEEDINGS.)

21                **MR. DOWD:**  I THINK, YOUR HONOR, THERE ARE ISSUES THAT

22          START AT ABOUT SLIDE 32 WHERE WE HAVE CITATIONS TO JTX10C.

23                **THE COURT:**  ALL RIGHT.  WELL --

24                **MR. DOWD:**  SLIDE 33.  AND THEN THERE'S AN ARGUMENT

08:32:26:03 25          THAT IS NEW ABOUT ARBITRATION THAT BEGINS ON 34.  THEN THERE'S

08:32:30:03  1    THE SWITCH ISSUES THAT YOU RESERVED ON, ON 35 AND 36.  AND

2    THEN WE GET TO -- WHEN WE GET TO THE CLAIM 21, SLIDE 47 IS THE

3    SAME AS SLIDE -- THE OLD SLIDE 52 WHICH WAS STRUCK.

4           **THE COURT:**  HOLD ON.

08:32:48:12  5           **MR. DOWD:**  SLIDE 48.

6           **THE COURT:**  HOLD ON.  HOLD ON.

7        WELL, HE DIDN'T KNOW THAT LAST NIGHT.

8           **MR. DOWD:**  THESE DID COME, YOUR HONOR, AFTER YOUR

9    HONOR'S ORDERS.

08:33:00:21  10          **THE COURT:**  HE DIDN'T KNOW -- I DIDN'T MAKE THE

11   RULING ABOUT --

12          **MR. HADJIS:**  YOUR HONOR, I THINK THIS IS A DIFFERENT

13   ISSUE.

14          **THE COURT:**  THIS IS A DIFFERENT ONE, YEAH, FORGET IT.

08:33:11:03  15          **MR. HADJIS:**  AND I BELIEVE YOUR HONOR DID NOT STRIKE

16   THIS.  AND I DON'T THINK IT WAS RAISED.  IF IT WAS, IT WASN'T

17   STRICKEN EITHER WAY.

18          **MR. DOWD:**  YOUR HONOR, I HAVE THE OLD DECK HERE.  THE

19   OLD DECK, SLIDE 52.

08:33:25:06  20          **THE COURT:**  I WILL DOUBLE -- HAVE MY LAW CLERK

21   DOUBLE-CHECK WHILE WE'RE IN SESSION.

22          **MR. DOWD:**  THANK YOU, YOUR HONOR.  AND I JUST -- I

23   CAN REFER YOUR HONOR TO LINE 12 OF YOUR HONOR'S ORDER, PAGE 2,

24   LINE 12, STRICKEN WITHOUT PREJUDICE TO REVISING.  AND THAT

08:33:45:06  25   APPLIES FOR 47, 48, 49, 50.  THERE'S A DIFFERENT ORDER ABOUT

08:33:52:21  1    51.  AND THEN 52 IS A –– STARTING ON 52, THERE ARE A BRAND-NEW

2    SERIES OF SLIDES THAT ARE, IN PART, MISLEADING.  53 IS ONE

3    THAT WAS STRUCK, AND NOT CHANGED.

4        AND THEN 55, AS A RESULT OF WHAT GOT STRUCK, THE THINGS

08:34:09:24  5    THAT ARE SHOWN ON THAT SLIDE ARE NO LONGER –– THE PREDICATE

6    FOR THOSE TWO –– TWO PIECES NO LONGER EXISTS.

7        AND THEN WE GET, AT SLIDE 56, INTO THE CLAIM 1 ISSUES

8    WHICH WERE STRUCK AT SECTION –– STARTING AT 56 AND 57

9    CORRESPONDS TO WHAT USED TO BE 62 THROUGH 66 WHICH WERE

08:34:33:06  10   STRUCK.

11            THE COURT:  ALL RIGHT.  WELL, THOSE –– THOSE ARE THE

12   ONES THAT HE DIDN'T KNOW.

13            MR. DOWD:  THAT'S WHERE WE GET TO WHAT HE DIDN'T

14   KNOW, YOUR HONOR, CORRECT.

08:34:43:03  15            THE COURT:  OKAY.  WELL, LET'S GET THROUGH SOME OF

16   THIS.

17        LET'S CALL THE JURY IN.

18        (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE PRESENCE OF

19   THE JURY:)

08:36:23:15  20            THE COURT:  OKAY.  WE'RE BACK ON THE RECORD.

21        THE RECORD WILL REFLECT THAT THE JURY IS HERE.  HAVE A

22   SEAT, COUNSEL.

23        JUROR NO. 7, I AM REALLY GLAD TO SEE LOOK REFRESHED.

24            JUROR:  I FEEL MUCH BETTER, YOUR HONOR.

08:36:42:27  25            THE COURT:  YOU'VE GOT A SMILE COMING OFF YOUR FACE.

08:36:46:24  1    IT'S NOT AS BAD -- YESTERDAY YOU LOOKED VERY MUCH IN PAIN.

2        I WAS TELLING THESE GUYS BEFORE YOU CAME OUT, YOU ALL CAME

3    OUT, THAT I AM HONORED TO SERVE AS A JUDGE IN A TRIAL WHERE

4    YOU ARE ALL SITTING AS JURORS.

08:37:05:03  5        I HEARD THAT -- THAT ONE OF YOU DROVE YOU HOME YESTERDAY

6    GIVEN HOW YOU WERE FEELING -- YOU GET CREDIT, JUROR NO. 6 GETS

7    CREDIT, YEA.  SHE'S CHEERING.  IT IS INCREDIBLY WONDERFUL.

8    AND IT IS -- IT'S A REAL TESTAMENT TO YOUR CHARACTER AND TO

9    YOUR COMMITMENT TO THIS PROCESS.  AND I -- I HOPE YOU

08:37:33:12 10    UNDERSTAND THAT THE PARTIES ARE INCREDIBLY APPRECIATIVE.  I'M

11    INCREDIBLY APPRECIATIVE.

12        THIS MORNING, ON THE NEWS, THEY WERE REPLAYING ON MSNBC

13    THE 9/11 VIDEO FROM 13 YEARS AGO.  YOU KNOW, OUR CONSTITUTION

14    MEANS SOMETHING.  IT STILL MEANS SOMETHING.  AND YOU'RE LIVING

08:38:01:06 15    THAT.  IT'S NOT ALWAYS AN EXPERIENCE THAT PEOPLE GET TO LIVE,

16    BUT YOU ARE, IN FACT, LIVING IT.  IT'S A SMALL PIECE OF IT,

17    BUT YOU ARE.  AND I HOPE THAT MAKES YOU FEEL PROUD TO BE

18    LIVING IN THIS COUNTRY.

19        AND WE CERTAINLY ARE PROUD TO HAVE YOU HERE WITH US.

08:38:22:06 20        THANK YOU SO MUCH.

21        ALL RIGHT.  WE WILL HAVE THE DEFENDANT'S EXPERT TESTIFY

22    NEXT.  MR. HADJIS?

23            **MR. HADJIS:**  THANK YOU, YOUR HONOR.

24            (PAUSE IN THE PROCEEDINGS.)

08:38:48:03 25        **MR. HADJIS:**  YOUR HONOR, WE DO CALL AS OUR NEXT

08:38:50:15  1     WITNESS, DR. FRANK VAHID.

2                           (PAUSE IN THE PROCEEDINGS.)

3                    THE CLERK:  IF YOU COULD STAND, PLEASE.

4                              **FRANK VAHID**,

08:39:27:27  5     CALLED AS A WITNESS FOR THE DEFENDANT, HAVING BEEN DULY SWORN,

6     TESTIFIED AS FOLLOWS:

7                    THE CLERK:  PLEASE BE SEATED.  AND THEN IF YOU'LL

8     SCOOT UP TO THE MICROPHONE.

9          AND PLEASE STATE YOUR FULL NAME AND SPELL YOUR LAST NAME.

08:39:43:09  10                THE WITNESS:  MY NAME IS FRANK VAHID.  LAST NAME IS

11    SPELLED V-A-H-I-D.

12                   THE COURT:  GOOD MORNING.

13                   THE WITNESS:  GOOD MORNING.

14                   THE COURT:  YOU MAY PROCEED.

08:39:53:15  15                         **DIRECT EXAMINATION**

16    BY MR. HADJIS:

17    **Q.**  GOOD MORNING.

18    **A.**  GOOD MORNING.

19    **Q.**  PLEASE INTRODUCE YOURSELF TO THE JURY, DR. VAHID.

08:40:00:27  20    **A.**  SURE.  MY NAME IS FRANK VAHID.  I'M A PROCESSOR OF

21    COMPUTER SCIENCE AND ENGINEERING AT THE UNIVERSITY OF

22    CALIFORNIA AT RIVERSIDE.

23    **Q.**  DR. VAHID, HAVE YOU PREPARED ANYTHING TO ASSIST YOU WITH

24    YOUR TESTIMONY TODAY?

08:40:14:21  25    **A.**  YES.  I PREPARED A SERIES OF SLIDES.

08:40:17:18  1    **Q.**  GREAT.

2                **MR. HADJIS:**  RYAN, CAN WE PROJECT DR. VAHID'S SLIDES?

3                    (DEMONSTRATIVE PUBLISHED TO JURY.)

4    **BY MR. HADJIS:**

08:40:25:09  5    **Q.**  DR. VAHID, CAN WE BEGIN WITH AN EXPLANATION OF YOUR

6    EDUCATIONAL BACKGROUND.

7    **A.**  SURE.  I RECEIVED A BACHELOR'S OF ELECTRICAL AND COMPUTER

8    ENGINEERING AT THE UNIVERSITY OF ILLINOIS.  AND THEN I

9    RECEIVED A MASTER'S DEGREE AND A PH.D. DEGREE IN COMPUTER

08:40:43:18 10    SCIENCE AT THE UNIVERSITY OF CALIFORNIA AT IRVINE.

11    **Q.**  DID YOU EARN ANY DISTINCTIONS DURING YOUR EDUCATIONAL

12    CAREER?

13    **A.**  YEAH.  WHEN I GRADUATED WITH MY BACHELOR'S FROM THE

14    UNIVERSITY OF ILLINOIS, IT WAS WITH HIGHEST HONORS.  AND AT

08:41:04:15 15    UC IRVINE, I WAS A CHANCELLOR'S FELLOW THERE.

16    **Q.**  AND WHAT ARE YOU DOING NOW AT THE UNIVERSITY OF

17    CALIFORNIA?

18    **A.**  I'M A PROFESSOR THERE.  I'VE BEEN THERE FOR ABOUT

19    20 YEARS.

08:41:19:00 20    **Q.**  AND DO YOU HAVE ANY OTHER ROLES WHILE BEING A PROFESSOR AT

21    THE UNIVERSITY OF CALIFORNIA?

22    **A.**  YEAH.  I –– FOR SEVERAL YEARS, I WAS THE CHAIRMAN OF THE

23    FACULTY OF THE COLLEGE OF ENGINEERING.  I WAS ALSO THE

24    ASSOCIATE DIRECTOR FOR THE CENTER FOR EMBEDDED COMPUTING

08:41:38:12 25    SYSTEMS, WHICH IS AT UC IRVINE, ACTUALLY.

VAHID – DIRECT / HADJIS

08:41:44:00  1    **Q.**  HAVE YOU OBTAINED ANY AWARDS IN –– IN YOUR FIELD AFTER

2    GRADUATING?

3    **A.**  YEAH.  I'VE RECEIVED SEVERAL BEST PAPER AWARDS AT THE

4    MAJOR RESEARCH CONFERENCES WHERE WE PUBLISH OUR RESEARCH WORK,

08:41:57:03  5    ALSO SOME OF THE JOURNALS, THE INTERNATIONAL JOURNALS WHERE WE

6    PUBLISH OUR RESEARCH ON –– ON COMPUTING DESIGN.

7        I'VE RECEIVED SOME TEACHING AWARDS.  SO I GOT THE

8    OUTSTANDING TEACHING AWARD FOR THE DEPARTMENT OF COMPUTER

9    SCIENCE.  AND THEN LATER I GOT THE OUTSTANDING TEACHING AWARD

08:42:15:21 10    FOR THE COLLEGE OF ENGINEERING.

11        AND THE NATIONAL SCIENCE FOUNDATION ACTUALLY GAVE ME WHAT

12    THEY CALL THE CAREER AWARD.  THE NATIONAL SCIENCE FOUNDATION

13    IS WITH THE FEDERAL GOVERNMENT.

14    **Q.**  AND HAVE YOU RECEIVED ANY AWARDS FROM I TRIPLE E WITH

08:42:31:06 15    REGARDS TO SOME OF THE PAPERS YOU'VE WRITTEN?

16    **A.**  YEAH.  WE RECEIVED THE BEST PAPER AWARD FOR THE I TRIPLE E

17    TRANSACTIONS ON VLSI, WHICH IS COMPUTER CHIP DESIGN.

18    **Q.**  HAVE YOU HELD ANY LEADERSHIP POSITIONS IN YOUR FIELD?

19    **A.**  YEAH.  I HAVE BEEN ON MOST OF THE ORGANIZING COMMITTEES OF

08:42:50:27 20    THE MAJOR CONFERENCES.  AND I'VE BEEN THE CHAIRMAN OF A COUPLE

21    OF THOSE CONFERENCES.  I WAS THE CHAIRMAN OF THE INTERNATIONAL

22    SYMPOSIUM ON SYSTEM SYNTHESIS, WHICH IS ONE OF THE

23    HARDWARE/SOFTWARE CHIP DESIGN CONFERENCES.  AND THEN I WAS

24    ALSO CHAIRMAN OF THE INTERNATIONAL SYMPOSIUM ON

08:43:10:06 25    HARDWARE/SOFTWARE CODESIGN.

VAHID – DIRECT / HADJIS

08:43:12:06  1    **Q.**  DO YOU HAVE EXPERIENCE IN YOUR FIELD OUTSIDE THE AREA OF

2    ACADEMIA?

3    **A.**  YEAH.  I'VE CONSULTED FOR SEVERAL COMPANIES, NATIONAL

4    EQUIPMENT CORPORATION, FOR EXAMPLE, NEC.  HAD SOME ENGINEERING

08:43:25:12  5    EXPERIENCES AT HEWLETT PACKARD AND AMCC, WHICH IS A CHIP

6    MAKER.  YEP.

7    **Q.**  ANY OTHER INDUSTRY EXPERIENCE?

8    **A.**  TWO YEARS AGO, A COLLEAGUE OF MINE, WE DECIDED TO -- SHE

9    AND I DECIDED TO START A COMPANY.  AND SO SHE IS THE CEO AND

08:43:47:00 10    I'M THE CHIEF TECHNICAL OFFICER OF THAT COMPANY, WHICH MEANS I

11    OVERSEE ALL THE ENGINEERING.  AND WE HAVE ABOUT A DOZEN

12    EMPLOYEES.  WE DESIGN, ACTUALLY, INTERACTIVE TEXTBOOKS FOR

13    ENGINEERING STUDENTS.  WE'RE TRYING TO HELP THEM GET THROUGH

14    THAT FRESHMAN YEAR.  SO WEB-BASED TEXTBOOKS, VERY LOW COST,

08:44:07:06 15    TRYING TO HELP THEM GET THROUGH THAT FIRST YEAR WHERE THERE'S

16    A VERY HIGH DROPOUT RATE.

17    **Q.**  THAT'S GREAT.  WHAT IS THE NAME OF COMPANY?

18    **A.**  IT'S CALLED ZYANTE.  WE GO BY ZYBOOKS.COM.  THAT'S WHERE

19    THE STUDENTS GO.

08:44:22:00 20    **Q.**  HAVE YOU PUBLISHED ANY TEXTBOOKS IN YOUR FIELD, SPEAKING

21    ABOUT BOOKS?

22    **A.**  YEAH.  I'VE PUBLISHED -- WELL, WE PUBLISHED -- NORMALLY WE

23    PUBLISH PAPERS.  I PUBLISHED ABOUT -- I THINK ABOUT 150 OR SO

24    OF THOSE.  BUT WE PUBLISHED -- I PUBLISHED SEVERAL TEXTBOOKS,

08:44:37:21 25    I THINK ABOUT SIX ALTOGETHER.

08:44:40:06 1   Q.   OKAY.  AND RYAN HAS TURNED TO THE SECOND PAGE OF YOUR

2   PRESENTATION.

3                    (DEMONSTRATIVE PUBLISHED TO JURY.)

4   **BY MR. HADJIS:**

08:44:49:00 5   Q.   DO YOU RECOGNIZE THIS PAGE?

6   A.   YEAH.  THESE ARE SOME OF THE BOOKS THAT -- THAT BEEN --

7   HELPED PUBLISH OVER THE YEARS.

8   Q.   DO YOU KNOW IF THESE BOOKS ARE WELL-KNOWN OR WIDELY USED?

9   A.   I'M TOLD THEY ARE.  THE -- THE ONE ON THE BOTTOM RIGHT

08:45:01:27 10   THERE, WE PUBLISHED IN 1994.  IT MAY HAVE BEEN THE FIRST BOOK

11   ON EMBEDDED SYSTEMS.  EMBEDDED SYSTEMS ARE THE COMPUTERS THAT

12   GO INSIDE OF CELL PHONES AND CARS AND THINGS LIKE THAT.  AND

13   SO THAT WAS PRETTY WIDELY USED SINCE IT WAS ONE OF THE FIRST.

14        THEN THERE'S ANOTHER ONE THAT I WROTE FOR UNDERGRADUATES

08:45:25:03 15   WHICH IS THE -- THE GREEN BOOK THERE.  THE PUBLISHER TELLS ME

16   THAT ONE'S PRETTY POPULAR.

17        AND THEN I GUESS THE MOST WELL-KNOWN IS THE ONE THAT'S IN

18   BIG BLUE THERE, *DIGITAL DESIGN*.  *DIGITAL DESIGN* IS JUST HOW TO

19   BUILD COMPUTER CHIPS.  IT'S ACTUALLY A REQUIRED CLASS FOR MOST

08:45:42:06 20   COMPUTER ENGINEERS, ELECTRICAL ENGINEERS, AND MANY COMPUTER

21   SCIENTISTS.  SO I GUESS THAT ONE IS PROBABLY THE BEST KNOWN

22   RIGHT NOW.  IT'S GOING INTO ITS THIRD EDITION.

23   Q.   GREAT.  THANK YOU.

24        ARE YOU AN INVENTOR ON ANY PATENTS?

08:45:56:21 25   A.   YES.  I'M AN INVENTOR ON THREE PATENTS.

08:46:02:09  1    Q.  DR. VAHID, IF YOU COULD TURN TO YOUR WITNESS BINDER.  IT'S

2    ONE OF THE BINDERS THAT'S BEEN PLACED NEXT TO YOU.

3    A.  SURE.

4    Q.  I'D LIKE TO ASK YOU TO REFER TO ONE OF THE TABS IN THAT

08:46:14:27  5    BINDER.  IT WILL BE UNDER DTX0561.

6    A.  (REVIEWING DOCUMENT.)

7    Q.  IT LOOKS LIKE IT'S TOWARD THE REAR OF THE BINDER.  THEY'RE

8    ALL IN ORDER.

9    A.  ALL RIGHT.  LET'S SEE IF WE CAN GET BACK THERE.

08:46:38:03  10       WHAT WAS THE NUMBER AGAIN?

11   Q.  DTX0561.

12   A.  (REVIEWING DOCUMENT.)

13       OKAY.  I FOUND IT.

14   Q.  EXCELLENT.  THANK YOU.

08:46:54:27  15       CAN YOU TELL THE JURY WHAT YOU'RE LOOKING AT?

16   A.  THIS IS MY C.V.

17   Q.  IS IT ACCURATE?

18   A.  YEAH, I BELIEVE SO.

19   Q.  AND DOES IT REFLECT THE QUALIFICATIONS AND THE EXPERIENCE

08:47:07:21  20   THAT YOU'VE JUST DESCRIBED?

21   A.  YES, IT DOES.

22       MR. HADJIS:  YOUR HONOR, AT THIS TIME, I'D LIKE TO

23   OFFER INTO EVIDENCE DTX0561, DR. VAHID'S C.V.

24       THE COURT:  ANY OBJECTIONS?

08:47:21:24  25       MR. DOWD:  OBJECTION, HEARSAY, YOUR HONOR.

08:47:25:09   1       THE COURT:  ALL RIGHT.  WE'LL DEAL WITH IT LATER.

2    KEEP GOING.

3    BY MR. HADJIS:

4    Q.  AT THIS TIME, I'D ALSO LIKE TO TENDER DR. VAHID FOR

08:47:33:06   5    QUALIFICATION AS AN EXPERT IN THE FIELDS OF COMPUTER

6    ENGINEERING, BUS ARCHITECTURE, AND LOW POWER PROCESSORS?

7            THE COURT:  ANY OBJECTION?

8            MR. DOWD:  NO OBJECTION, YOUR HONOR.

9            THE COURT:  ALL RIGHT.  HE'S ADMITTED AS AN EXPERT ON

08:47:44:15  10   THOSE TOPICS.

11          MR. HADJIS:  THANK YOU, YOUR HONOR.

12   Q.  DR. VAHID, HAVE YOU ARRIVED AT ANY OPINIONS IN CONNECTION

13   WITH '331, '753, AND '845 PATENTS?

14   A.  YES, I HAVE.

08:47:59:12  15   Q.  AND WHAT ARE YOUR OPINIONS?

16   A.  THAT THE '331, THE '753, AND THE '845 ARE NOT INFRINGED BY

17   THE I.MX PRODUCTS.  AND THAT THE '331 AND THE '753 ARE NOT

18   VALID DUE TO PRIOR ART.

19   Q.  I'D LIKE TO BACK UP A STEP AND ASK YOU TO DESCRIBE THE

08:48:21:15  20   WORK THAT YOU'VE DONE IN LEADING TO THOSE OPINIONS.

21   A.  I'VE REVIEWED A LARGE NUMBER OF DOCUMENTS, THE PATENTS

22   THEMSELVES, THE PRIOR ART THAT WAS REFERENCED IN THOSE

23   PATENTS, A LARGE BODY OF OTHER PRIOR ART, THE REFERENCE

24   MANUALS OF THE ACCUSED PRODUCTS, COURT ORDERS RELATED TO THIS

08:48:43:21  25   CASE.  I'VE LISTED THE -- THE LARGE NUMBER OF DOCUMENTS IN MY

08:48:49:18  1  EXPERT REPORT.

2  **Q.**  OKAY.  I'D LIKE YOU --

3       **MR. HADJIS:**  RYAN, PLEASE TURN TO SLIDE 3 OF THE

4  PRESENTATION.

08:49:03:21  5            (DEMONSTRATIVE PUBLISHED TO JURY.)

6  **BY MR. HADJIS:**

7  **Q.**  DR. VAHID, CAN YOU PLEASE PROVIDE A BRIEF DESCRIPTION OF

8  THE TECHNOLOGY, TO HELP THE JURY UNDERSTAND THE ISSUES IN THE

9  CASE AND THE TESTIMONY THAT YOU'RE ABOUT TO PROVIDE.

08:49:15:09  10  **A.**  SURE.  SO, YOU KNOW, WE'RE DEALING WITH COMPUTING SYSTEMS.

11  WHAT I'VE SHOWN THERE IS A VERY SIMPLE COMPUTING SYSTEM WITH A

12  NUMBER OF COMPONENTS.  THERE'S PROCESSORS, MEMORIES, BUSES.

13  THE MEMORIES STORE DATA.  THE BUSES CONNECT PROCESSORS AND

14  MEMORIES.  THEY'RE WIRES, BASICALLY, SO THEY CAN COMMUNICATE

08:49:39:03  15  DATA BETWEEN EACH OTHER.  AND THEN THE PROCESSORS THEMSELVES.

16  PROBABLY THE MOST COMMON TYPE OF PROCESSOR IS A CPU, WHICH

17  MANY OF US HAVE HEARD OF.

18  **Q.**  CAN YOU USE THE FIGURE TO IDENTIFY WHERE THE PROCESSOR IS

19  THAT YOU'RE SPEAKING OF?

08:49:54:15  20  **A.**  WELL, I'VE LISTED THREE PROCESSORS THERE.  THE -- THE

21  LARGE ONE ON THE UPPER LEFT, I'VE SORT OF INDICATED AS BEING

22  THE CPU.  THAT'S SORT OF THE BOSS OF THE SYSTEM.  I LIKE TO

23  THINK OF IT AS THE HEAD COOK OF A KITCHEN AND THE SOFTWARE

24  THAT RUNS ON THE PROCESSOR BEING LIKE THE RECIPE.  SO THE

08:50:18:09  25  PROCESSOR CAN DO SOME CERTAIN BASIC INSTRUCTIONS.  IT CAN ADD

VAHID - DIRECT / HADJIS

08:50:22:06  1    TWO NUMBERS, IT CAN MOVE DATA.  BUT IT DOESN'T KNOW WHAT TO DO

2    UNTIL IT'S GIVEN SOFTWARE.  SOFTWARE IS LIKE THE RECIPE THAT

3    TELLS THE COOK WHAT TO MAKE -- ACTUALLY MAKE.

4        SO THE CPU NORMALLY WOULD BE RUNNING, YOU KNOW, THINGS

08:50:35:27  5    THAT WE'RE FAMILIAR WITH, MAYBE A WEB BROWSER, MUSIC PLAYER,

6    THINGS LIKE THAT.  THOSE OF US WHO ARE A LITTLE OLDER REMEMBER

7    WHEN -- WHEN COMPUTERS WERE SOLD, THEY WOULD ADVERTISE THE

8    PROCESSOR THAT WAS IN IT, THE 286, THE 386, THE 486, THE 586

9    WHICH THEN THEY RENAMED THE PENTIUM.  IF YOU REMEMBER THE

08:50:54:12 10    PENTIUM, PENTIUM MEANS FIVE, THAT'S WHY IT PENTIUM OR 586 AND

11    SO ON.

12        NOW DAYS THEY DON'T REALLY TELL YOU WHAT PROCESSOR IS IN

13    THERE.  IT'S NOT AS WELL-KNOWN.

14    **Q.**  YOU MENTIONED SOME OTHER PROCESSORS ON YOUR SLIDE DDX5-3.

08:51:10:06 15    WHAT ARE THEY?

16    **A.**  WELL, THERE'S GOING TO BE A LARGE NUMBER OF PROCESSORS

17    THAT HELP THAT MAIN PROCESSOR, THAT MAIN CPU.  THESE ARE LIKE

18    THE ASSISTANT COOKS IN THE KITCHEN.  SO ON THE BOTTOM RIGHT,

19    I'VE SHOWN A PROCESSOR WHOSE MAIN JOB IS TO DISPLAY GRAPHICS

08:51:25:21 20    ON THE MONITOR.  THAT TAKES A LOT OF WORK, AND SO THAT

21    PROCESSOR JUST FOCUSES ON THAT.  AND THAT WAY THE CPU DOESN'T

22    HAVE TO DO THAT.

23        THAT PROCESSOR I'VE SHOWN AS ALSO BEING PROGRAMMABLE, IT

24    ALSO HAS SOFTWARE.  SO SOME OF THOSE HELPER PROCESSORS CAN

08:51:42:00 25    HAVE SOFTWARE IN THEM, TOO.

08:51:44:06  1      ON THE UPPER RIGHT, I'VE SHOWN A PROCESSOR THAT JUST DOES

2      ONE THING, IT'S NOT PROGRAMMABLE.  SO THAT MIGHT BE A USB

3      CONTROLLER, A KEYBOARD CONTROLLER, SOMETHING THAT INTERFACES

4      WITH YOUR KEYBOARD, SOMETHING LIKE THAT.

08:51:59:06  5  **Q.**  WHAT HAVE YOU SHOWN AT THE LOWER LEFT?

6  **A.**  THAT WOULD BE A MEMORY.  SO A MEMORY IS WHERE DATA IS

7      STORED.  AND THEN I'VE SHOWN A BUS THAT CONNECTS THAT MEMORY

8      TO THE REST OF THE SYSTEM.

9  **Q.**  DR. VAHID, CAN YOU DESCRIBE HOW THOSE COMPONENTS EACH

08:52:17:18  10      INTEROPERATE WITH EACH OTHER?

11  **A.**  YEAH.  THE PROCESSORS EXECUTE INSTRUCTIONS AND, YOU KNOW,

12      DO THEIR VARIOUS TASKS.  AND WHENEVER THEY NEED TO TRANSMIT

13      DATA TO ONE ANOTHER, THEY TRANSMIT DATA VIA THOSE BUSES.

14      THESE PROCESSORS WOULD ALL BE RUNNING AT THE SAME TIME.

08:52:43:09  15  **Q.**  ARE THE ITEMS THAT YOU'VE DRAWN HERE SEPARATE CHIPS

16      THEMSELVES?

17  **A.**  THE WAY I'VE DRAWN THEM, THEY ARE.  BUT INCREASINGLY

18      WHAT'S HAPPENING IS THAT THESE -- THESE CHIPS ARE NOW

19      APPEARING ON ONE CHIP.  AND THIS IS BECAUSE THE SIZE OF THE

08:52:59:21  20      CIRCUITS KEEP SHRINKING SO EACH CHIP CAN HOLD MORE AND MORE

21      INSIDE OF IT EVERY YEAR.  IT'S A PRETTY INTERESTING TREND,

22      ACTUALLY.

23      EACH CHIP CAN ACTUALLY HOLD ABOUT DOUBLE THEIR -- THE

24      CIRCUIT CAPACITY THAN THEY COULD TWO YEARS AGO.  SO THEY'RE

08:53:16:18  25      DOUBLING EVERY TWO YEARS.  IT'S A PRETTY AMAZING TREND.

08:53:20:15  1      WHAT THAT MEANS IS THAT IN ABOUT 15 YEARS, YOU KNOW,

2    COMPARED TO A CHIP FROM 15 YEARS AGO, A CHIP TODAY CAN HOLD

3    OVER 200 TIMES MORE CIRCUITRY IN IT.  THIS IS WHY, YOU KNOW,

4    OUR PHONES THAT WE CARRY AROUND TODAY ARE SO POWERFUL.  RIGHT?

08:53:34:24  5    THEY'RE BASICALLY THE EQUIVALENT OF WHAT USED TO BE THE SIZE

6    OF A SMALL DESK, YOU KNOW, 30 YEARS AGO, THAT THEY PACK IT

7    INTO ONE SMALL CHIP.  AND THEY KEEP GETTING BETTER LIKE THAT.

8      JUST FOR COMPARISON, IF YOUR CAR IMPROVED AT THAT RATE

9    JUST OVER THE LAST 15 YEARS, OUR CARS WOULD BE GETTING

08:53:51:18 10    6,000 MILES PER GALLON RIGHT NOW, AND IN ANOTHER 15 YEARS

11    ABOUT 36,000 MILES PER GALLON.  SO --

12    **Q.**  THANK YOU, DR. VAHID.

13          **MR. HADJIS:**  RYAN, IF YOU COULD TURN TO THE NEXT

14    SLIDE.

08:54:02:12 15              (DEMONSTRATIVE PUBLISHED TO JURY.)

16    **BY MR. HADJIS:**

17    **Q.**  DR. VAHID, I'D LIKE TO SWITCH GEARS TO THE '331 PATENT.

18    **A.**  SURE.

19    **Q.**  AS I TAKE IT, THIS IS A PATENT THAT YOU'VE STUDIED?

08:54:10:12 20    **A.**  YES, THAT'S RIGHT.  I STUDIED IT QUITE A BIT FOR THIS

21    CASE.

22          **MR. HADJIS:**  AND I THEN WOULD LIKE RYAN, PLEASE TURN

23    TO THE NEXT PAGE, 5-4 -- THERE'S 5 -- OF DR. DR. VAHID'S

24    SLIDE.

08:54:23:18 25              (DEMONSTRATIVE PUBLISHED TO JURY.)

VAHID – DIRECT / HADJIS

08:54:24:00 1      **BY MR. HADJIS:**

2      **Q.**   DR. VAHID, ARE YOU FAMILIAR WITH WHAT IS SHOWN HERE?

3      **A.**   YES.   THIS IS THE '331 PATENT.

4      **Q.**   AND WHAT HAVE YOUR OPINIONS -- OR WHAT ARE YOUR OPINIONS

08:54:36:15 5      IN REGARD TO THIS PATENT?

6      **A.**   RELATING TO THE ACCUSED PRODUCTS, THAT THE ACCUSED

7      PRODUCTS DO NOT INFRINGE THIS PATENT AND ALSO THAT THIS PATENT

8      IS NOT VALID DUE TO PRIOR ART.

9      **Q.**   HAVE YOU REVIEWED IT IN THE CONTEXT OF THE INFRINGEMENT

08:54:52:12 10      ALLEGATIONS MADE IN THE CASE?

11      **A.**   YES, I HAVE.

12      **Q.**   WHAT'S THE PRIORITY DATE?   DO YOU RECALL?

13      **A.**   I BELIEVE IT IS AUGUST 2001.

14      **Q.**   AND YOU'VE GIVEN AN OPINION AS TO THE LEVEL OF ORDINARY

08:55:07:21 15      SKILL IN THE ART, SOMEBODY THAT WOULD WORK WITH THIS PATENT.

16      WHAT IS YOUR OPINION THERE?

17      **A.**   THAT WOULD BE SOMEBODY WITH A BACHELOR'S IN COMPUTER

18      ENGINEERING OR SOME RELATED FIELD AND ABOUT ONE TO TWO YEARS

19      OF WORK EXPERIENCE WITH LOW-POWER PROCESSORS.

08:55:24:27 20      **Q.**   ARE YOU ABLE TO TESTIFY HERE TODAY AS SOMEONE SKILLED IN

21      THE ART?

22      **A.**   YES, I HAD THOSE QUALIFICATIONS AT THAT TIME ALSO.

23      **Q.**   THANK YOU.

24           NOW, I'D LIKE TO ASK YOU WHAT THE '331 PATENT IS DIRECTED

08:55:40:27 25      TO?

08:55:42:06  1    **A.**  IT'S DYNAMIC VOLTAGE AND FREQUENCY SCALING, WHICH IS A

2    FORM OF POWER SAVINGS IN PROCESSORS.

3    **Q.**  AND DOES THIS PATENT COVER DYNAMIC VOLTAGE FREQUENCY

4    SCALING IN GENERAL?

08:55:56:18  5    **A.**  THIS IS ONE PARTICULAR FORM OF DYNAMIC VOLTAGE AND

6    FREQUENCY SCALING.

7              **MR. HADJIS:**  RYAN, I'D LIKE YOU TO SWITCH TO THE NEXT

8    SLIDE, 5-6.

9                   (DEMONSTRATIVE PUBLISHED TO JURY.)

08:56:09:21 10   **BY MR. HADJIS:**

11   **Q.**  DR. VAHID, BACKING UP JUST GENERALLY ABOUT DVFS, NOT THIS

12   PATENT, WHAT IS DVFS?

13   **A.**  SO THIS IS A WAY OF RUNNING A COMPUTER MORE SLOWLY AND AT

14   A LOWER VOLTAGE IN ORDER TO SAVE POWER.  SO SOMETIMES THE

08:56:26:12 15   PROGRAMS THAT ARE RUNNING DON'T NEED AS MUCH SPEED, AND SO IF

16   YOU SLOW DOWN THE PROCESSOR, YOU CAN -- YOU CAN REDUCE POWER

17   THAT WAY.

18       AND SO I'VE DEPICTED THAT ON THIS SLIDE WHERE IF THE

19   PROGRAM IS RUNNING VERY FAST, I'VE SHOWN THE CHIP AS ORANGE,

08:56:41:21 20   WHICH MEANS IT'S CONSUMING A LOT OF POWER.  AND THERE'S A

21   METER DOWN AT THE BOTTOM THERE THAT SHOWS IT'S CONSUMING A LOT

22   OF POWER.

23       WHEREAS YOU RUN IT MORE SLOWLY, AND I'VE SHOWN THE CHIP AS

24   BLACK, AND YOU'LL NOTICE THOSE PULSES, I'VE DRAWN FEWER OF

08:56:56:03 25   THOSE PULSES.  AND I'LL EXPLAIN THOSE IN A SECOND, ACTUALLY.

VAHID – DIRECT / HADJIS

08:57:00:15  1    BUT THAT MEANS IT'S RUNNING MORE SLOWLY AND YOU CAN SEE IT'S

2    CONSUMING A LITTLE BIT LESS POWER ON THAT METER THERE.

3    **Q.**  HOW LONG HAS DVFS BEEN AROUND?

4    **A.**  I REMEMBER READING RESEARCH PAPERS IN THE MID '90'S ON IT,

08:57:14:27  5    COMMERCIAL PRODUCTS COMING OUT IN THE LATE '90'S.  SO

6    SOMEWHERE MID TO LATE '90'S, I WOULD SAY.

7    **Q.**  HOW MANY YEARS WAS THAT BEFORE THE EARLIEST DATE THAT

8    YOU'RE AWARE OF FOR THE '331 PATENT?

9    **A.**  THE '331 WAS AUGUST 2001, SO SEVERAL YEARS BEFORE.

08:57:30:21 10    **Q.**  CAN POWER BE SAVED IN OTHER WAYS THAN BY USING WHAT YOU'VE

11    DESCRIBED AS DVFS?

12    **A.**  OH, YEAH.  YEAH.  THERE'S MANY WAYS TO SAVE POWER.  DOZENS

13    OF WAYS.  THERE'S -- WELL, THE PROCESS TECHNOLOGY, WHICH IS

14    HOW YOU BUILD THE CHIP THEMSELVES, THE TRANSISTORS, THE WAY

08:57:56:03 15    YOU BUILD THE TRANSISTORS, THE SWITCHES IN THEM, THAT'S

16    PROBABLY --

17          **MR. DOWD:**  OBJECTION, YOUR HONOR.  WE'RE MOVING

18    OUTSIDE THE EXPERT REPORT.  THERE'S NO DISCUSSION OF THIS.

19          **THE COURT:**  OKAY.  I WILL JUST LET THAT -- IT SOUNDS

08:58:07:06 20    LIKE A BASIC PROPOSITION IN GENERAL.  BE PREPARED TO CITE ME

21    TO REFERENCES OF THE REPORT TO THE EXTENT THAT I HEAR THOSE

22    KINDS OF OBJECTIONS.

23          **MR. HADJIS:**  AND, YOUR HONOR, I AM PREPARED TO CITE

24    ONE HERE IF YOU'D LIKE TO SEE IT.

08:58:24:18 25          **THE COURT:**  NO.  I LET IT IN.

08:58:26:18  1          **MR. HADJIS:**  THANK YOU.

2  **Q.**  PLEASE CONTINUE, DR. VAHID, EXPLAINING THE OTHER WAYS IN

3  WHICH POWER CAN BE SAVED OR MANAGED OTHER THAN USING DVFS.

4  **A.**  SURE.  THERE'S THE PROCESS TECHNOLOGY, WHICH IS HOW YOU

08:58:39:18  5  BUILD THE CHIPS THEMSELVES.  YOU CAN PUT PARTS OF THE CHIP TO

6  SLEEP.  YOU CAN PUT COMPONENTS TO SLEEP AROUND THE CHIP.  YOU

7  CAN GATE THE CLOCKS.  YOU CAN SHUT OFF THE CLOCKS TO CERTAIN

8  PARTS OF THE CHIP.  YOU CAN ENCODE VALUES DIFFERENTLY.  YOU

9  CAN WRITE YOUR SOFTWARE DIFFERENTLY TO DO LESS COMPUTATION SO

08:59:02:12 10  IT USES LESS POWER.  THERE ARE LITERALLY DOZENS OF WAYS.

11  **Q.**  YOU MENTIONED PUTTING THE CHIP TO SLEEP.  WHAT -- WHAT DO

12  YOU MEAN BY SLEEP MODE?

13  **A.**  SO SLEEP MODE IS THE IDEA OF WHEN YOU'RE NOT USING

14  SOMETHING, DON'T HAVE IT RUNNING.  SO WE ALL KNOW ON OUR CELL

08:59:20:21 15  PHONES, FOR EXAMPLE, THAT THE DISPLAY SHUTS OFF IF YOU'RE NOT

16  LOOKING AT IT.  ALSO THE RADIOS SHUT OFF.  SO INTERACTING WITH

17  WI-FI OR THE CELL BASE STATIONS, SO THOSE SHUT OFF IF YOU'RE

18  NOT USING IT.

19          SO MOST COMPUTERS ARE PUTTING THEIR COMPONENTS TO SLEEP

08:59:37:06 20  AND THEN WAKING THEM UP, DOING A LITTLE BIT, AND PUTTING THEM

21  BACK TO SLEEP, PUTTING THEM BACK TO SLEEP.  SO THAT'S ONE OF

22  MOST COMMON WAYS I THINK OF SAVING POWER IN SYSTEMS.

23  **Q.**  HOW DO YOU SAVE POWER USING PROCESS TECHNOLOGY?

24  **A.**  SO THIS IS THE IDEA OF HOW YOU ACTUALLY BUILD THE CHIPS

08:59:54:15 25  THEMSELVES, AND SO EACH TRANSISTORS, WHEN IT'S SWITCHING, IT

08:59:58:00   1   CONSUMES POWER.  WHEN IT GOES FROM ZERO TO 1, IT CONSUMES

2   POWER.  ALSO, WHEN IT'S JUST SITTING THERE, IT'S LEAKING AND

3   SO IT CONSUMES POWER THAT WAY.  SO IF YOU SPEND MORE MONEY UP

4   FRONT AND BUILD THE TRANSISTORS REALLY WELL, THEN THEY CONSUME

09:00:11:24   5   LESS POWER.

6           MR. DOWD:  OBJECTION, THIS WAS PART OF THE SLIDE --

7           THE COURT:  PARAGRAPH OF THE REPORT?

8           MR. HADJIS:  OPENING REPORT, PARAGRAPH 33, REBUTTAL

9   REPORT PARAGRAPH 287.

09:00:39:03   10          MR. DOWD:  NO DISCUSSION THERE OF LEAKY, YOUR HONOR,

11   NO DISCUSSION OF THE REST OF THAT.

12                   (PAUSE IN THE PROCEEDINGS.)

13          MR. DOWD:  AND, YOUR HONOR, I'LL NOTE --

14          THE COURT:  HOLD ON.

09:01:58:24   15      OKAY.  WHAT -- I REMEMBER.

16          MR. DOWD:  YEAH.

17          THE COURT:  SO, LADIES AND GENTLEMEN, AGAIN, LET ME

18   JUST EXPLAIN TO YOU WHAT I AM DOING.

19      THESE PATENT CASES, ONE, TAKE YEARS TO GET TO A TRIAL,

09:02:13:09   20   AND, TWO, THIS IS HIS REPORT.  SO A SIGNIFICANT AMOUNT OF WORK

21   HAPPENS BEFORE WE EVER GET HERE.

22      THE OBJECTION CONCERNED A CLAIM THAT THIS WASN'T IN A

23   REPORT DISCLOSED BEFORE WE GET HERE.  I HAVE TO ENSURE THAT

24   WHATEVER IS SAID DURING TRIAL IS IN FACT -- WAS IN FACT

09:02:39:21   25   LITIGATED BEFORE WE GOT TO TRIAL.  SO THAT'S WHAT I'M DOING.

09:02:44:27  1        AND I FIND THAT THE TESTIMONY -- IT'S JUST GENERAL

2    TESTIMONY REGARDING -- I THINK IT WAS THE SLEEPINESS.  THAT

3    CAN STAY IN.  BUT THERE'S NO REFERENCE TO LEAKING SO THAT

4    PORTION OF THE TESTIMONY IS STRICKEN.

09:03:06:21  5        NEXT QUESTION.

6    **BY MR. HADJIS:**

7    **Q.**  DR. VAHID, YOU'VE IDENTIFIED SOME ALTERNATE WAYS OF

8    MANAGING POWER OR SAVING POWER ON INTEGRATED CIRCUITS,

9    CORRECT?

09:03:25:09 10  **A.**  THAT'S RIGHT.

11   **Q.**  DO THE TECHNIQUES THAT YOU'VE IDENTIFIED DIFFER IN TERMS

12   OF THEIR EFFECTIVENESS FOR MANAGING POWER?

13   **A.**  YEAH --

14        **MR. DOWD:**  OBJECTION.  YOUR HONOR, HE'S GOING BACK TO

09:03:41:00 15  WHAT WAS JUST STRICKEN.

16        **THE COURT:**  I DON'T KNOW THAT.  OVERRULED AT THIS

17   POINT.  AND I DON'T FRANKLY QUITE UNDERSTAND WHAT -- WHAT --

18   ACTUALLY, WHAT I'M GOING TO SUSTAIN IS AN OBJECTION OF VAGUE

19   AND AMBIGUOUS.  I DON'T KNOW WHAT TECHNIQUES YOU'RE REFERRING

09:03:57:18 20  TO.  SO I DON'T KNOW WHAT COMPARISON YOU'RE ASKING HIM TO

21   MAKE.

22   **BY MR. HADJIS:**

23   **Q.**  DR. VAHID, CAN YOU IDENTIFY THE TECHNIQUES FOR SAVING

24   POWER THAT YOU MENTIONED?

09:04:15:18 25  **A.**  PROCESS TECHNOLOGY IS ONE OF THEM.  SLEEP MODE IS ANOTHER

09:04:19:06 1 ONE.  AND THERE WERE SEVERAL OTHERS.

2 **Q.**  DO THEY DIFFER IN TERMS OF THEIR EFFECTIVENESS?

3 **A.**  YEAH.  THE -- THE MOST EFFECTIVE TECHNIQUES ARE THE

4 PROCESS TECHNOLOGY, WHICH ALLOWS YOU TO REDUCE THE VOLTAGE TO

09:04:35:15 5 THE CHIP, AND THAT GIVES YOU SOME OF THE BIGGEST POWER

6 SAVINGS.  SLEEP IS ALSO ONE OF THE BIG POWER SAVERS.  AND IN

7 ADDITION TO THAT, FOR SOME SYSTEMS, DVFS MAY APPLY.

8 **Q.**  AND HOW DOES DVFS COMPARE OR APPLY?

9 **A.**  IN PARTICULAR TYPES OF SYSTEMS WHERE YOU CAN RUN THINGS

09:05:00:15 10 MORE SLOWLY, THEN YOU MAY BE ABLE TO TURN DOWN THE FREQUENCY

11 AND THE VOLTAGE A LITTLE BIT MORE TO SAVE, IN ADDITION TO

12 THESE OTHER BIG POWER-SAVING TECHNIQUES.

13 **MR. HADJIS:**  RYAN, I'D LIKE YOU TO TURN TO THE NEXT

14 SLIDE, 5-7, OF DR. VAHID'S SET OF SLIDES.

09:05:25:00 15 **Q.**  DR. VAHID, CAN YOU PLEASE SHARE WITH THE JURY YOUR

16 UNDERSTANDING OF CLOCK FREQUENCY.

17 **A.**  SURE.

18 **THE WITNESS:**  ACTUALLY, RYAN, IF YOU COULD CLICK ONE

19 MORE TIME SO WE GET THE PULSING CLOCK THERE.

09:05:37:15 20 (DEMONSTRATIVE PUBLISHED TO JURY.)

21 **THE WITNESS:**  SO WHAT I'VE DEPICTED HERE IS THE CLOCK

22 GOING INTO THE CLIP.  SO THE CLOCK IS AN OSCILLATOR.  IT GOES

23 UP AND DOWN AND UP AND DOWN.  AND -- AND THAT GOVERNS HOW THE

24 PROCESSOR EXECUTES ITS -- ITS SOFTWARE.

09:05:51:00 25 AND SO I LIKE TO THINK OF THIS AS THE DRUMMER IN A

09:05:55:09  1    MARCHING BAND.  SO WHEN THE DRUMMERS BEAT, THE MARCHERS KNOW

2    TO STEP.  AND IT KEEPS EVERYBODY IN SYNCH.  SO THE CLOCK KEEPS

3    ALL THE COMPONENTS IN THE PROCESSOR IN SYNCH SO THEY ALL CAN

4    DO THEIR JOB.

09:06:10:03  5         AND SO I'VE SHOWN IT TICKING.  AND THEN DRAWN TO THE LEFT

6    OF THAT, I'VE SHOWN THIS SORT OF SAWTOOTH PICTURE, AND THAT'S

7    HOW WE DEPICT A CLOCK WHEN WE -- WHEN WE DRAW IT.  AND TIME IS

8    GOING TO THE -- YOU KNOW, TIME IS PROCEEDING SO EVERY TIME IT

9    GOES UP AND DOWN, THAT'S ONE TICK.

09:06:28:21  10        SO ON THE -- ON THE TOP HERE, WHAT I'VE SHOWN IS THAT THE

11   RATE AT WHICH THE CLOCK IS TICKING WILL IMPACT HOW FAST IT CAN

12   PERFORM ITS TASKS.  SO, FOR EXAMPLE, I'VE SHOWN HERE A

13   500-MEGAHERTZ CLOCK.  WHAT THAT MEANS IS THAT THE CLOCK IS

14   TICKING 500 MILLION TIMES PER SECOND.  OBVIOUSLY A LOT FASTER

09:06:52:15  15   THAN THE DOT THAT I'VE SHOWN THERE.

16        AND SO LET'S SUPPOSE THAT THE PROCESSOR HAS THE TASK OF

17   SAVING A FILE.  IF THE CLOCK IS TICKING AT 500 MEGAHERTZ.

18        AND, RYAN, IF YOU COULD JUST CLICK THERE AND IT WILL SHOW.

19             (DEMONSTRATIVE PUBLISHED TO JURY.)

09:07:06:09  20        **THE WITNESS:**  IT MIGHT TAKE MAYBE FOUR SECONDS TO

21   SAVE THAT FILE.

22   **BY MR. HADJIS:**

23   **Q.**  DR. VAHID, DID YOU PROVIDE MORE TO THIS ILLUSTRATION?  IS

24   THERE A BOTTOM PORTION?

09:07:17:06  25   **A.**  YEAH.  THERE IS, ACTUALLY, SO IF WE COULD CLICK AHEAD.

09:07:19:15  1                    (DEMONSTRATIVE PUBLISHED TO JURY.)

2            **THE WITNESS:**  SO AT THE BOTTOM, I'VE SHOWN ANOTHER

3      CLOCK THAT'S RUNNING AT 250 MEGAHERTZ, AND YOU'LL SEE IT HAS

4      FEW OF THOSE SAWTEETH.  SO THAT ONE IS RUNNING HALF AS FAST.

09:07:33:00  5  AND THAT MEANS THAT THE PROCESSOR, IF IT WAS GOING TO DO THAT

6      SAME TASK, WOULD TAKE LONGER.  YOU WOULD EXPECT IT TO TAKE

7      MAYBE ABOUT EIGHT SECONDS OR SO.  YOU CAN SEE IT'S STILL

8      WORKING.  AND NOW IT FINALLY FINISHES.  AND I'VE SHOWN IT

9      TAKES SEVEN SECONDS BECAUSE IT MAY HAVE BEEN DOING OTHER

09:07:48:24 10  THINGS, TOO.

11            BUT THAT'S THE BASIC IDEA THAT THE FASTER THAT THE CLOCK

12      IS RUNNING, THE FASTER THE TASK COMPLETES.  THE SLOWER IT'S

13      RUNNING, THE LONGER IT WILL TAKE.

14            SO FOR SOME SITUATIONS WHERE YOU CAN GET AWAY WITH RUNNING

09:08:02:27 15  THE CLOCK MORE SLOWLY AND LETTING THINGS FINISH MORE SLOWLY,

16      THEN YOU CAN TURN DOWN THE CLOCK IN THAT WAY.

17      **BY MR. HADJIS:**

18      **Q.**  AND DOES WHAT YOU EXPLAINED HAVE ANYTHING TO DO WITH POWER

19      CONSUMPTION IN A PROCESSOR?

09:08:16:15 20  **A.**  YEAH.  THE FASTER THE CLOCK IS RUNNING, THE MORE POWER IT

21      CONSUMES.  AND SO IF YOU CAN TURN DOWN THE CLOCK, YOU CAN SAVE

22      SOME POWER.

23            **MR. HADJIS:**  RYAN, IF YOU COULD TURN TO SLIDE 5-7.

24                    (DEMONSTRATIVE PUBLISHED TO JURY.)

25

VAHID – DIRECT / HADJIS

09:08:37:12  1    **BY MR. HADJIS:**

2    **Q.**  DR. VAHID, AT THIS POINT, I WOULD LIKE TO ASK IF YOU

3    BELIEVE THE ACCUSED I.MX PRODUCTS OF FREESCALE IN THIS CASE

4    INFRINGE CLAIM 11 OF THE '331 PATENT?

09:08:49:21  5    **A.**  NO, I DON'T.  THERE ARE ACTUALLY SEVERAL VERY SIGNIFICANT

6    DIFFERENCES BETWEEN THE I.MX PRODUCTS AND THE CLAIM 11.

7    **Q.**  WHAT ARE THE ACCUSED PRODUCTS?  DO YOU RECALL THE MODEL

8    NUMBERS, BEFORE WE GET INTO THE DISCUSSION?

9    **A.**  THE I.MX31, THE I.MX35, THE I.MX50, AND THEN ALL OF THE

09:09:15:09  10   I.MX6 PRODUCTS THAT WERE IN THE CASE.

11   **Q.**  ARE THE I.MX51 AND I.MX53 PRODUCTS ACCUSED OF INFRINGING

12   THE '331 PATENT?

13   **A.**  NO, THEY'RE NOT.

14          **MR. HADJIS:**  RYAN, IF YOU COULD TURN TO THE NEXT

09:09:34:06  15   SLIDE, 5-9.

16              (DEMONSTRATIVE PUBLISHED TO JURY.)

17   **BY MR. HADJIS:**

18   **Q.**  DR. VAHID, WHAT ARE YOU ILLUSTRATING ON THIS SLIDE?

19   **A.**  SO ON THE LEFT SIDE OF THE SLIDE, I'VE SHOWN CLAIM 11,

09:09:43:18  20   WHICH IS THE CLAIM AT ISSUE HERE.  AND SO IT HAS A NUMBER OF

21   DIFFERENT POINTS TO IT.  THERE'S SORT OF SEPARATED THERE.

22       AND AT THE BOTTOM, I'VE BOLDED THE FIRST SORT OF RELEVANT

23   POINT HERE THAT I WANT TO TALK ABOUT, WHICH IS THE PLURALITY

24   OF REGISTERS.

09:10:07:21  25   **Q.**  AND WHAT IS A PLURALITY OF REGISTERS?

VAHID - DIRECT / HADJIS

09:10:10:21  1    **A.**   SO PLURALITY MEANS TWO OR MORE.   ONE IS NOT A PLURALITY.

2    PLURALITY MEANS TWO OR MORE.   SO A PLURALITY -- AND A REGISTER

3    IS A CIRCUIT THAT IS CAPABLE OF STORING ONE OR MORE BITS.

4         SO A PLURALITY OF REGISTERS, WHAT I'VE ACTUALLY SHOWN ON

09:10:30:00  5    THE SLIDE HERE IS THE AGREED-UPON CONSTRUCTION OF IT, IS A

6    PLURALITY OF CIRCUITS CAPABLE OF STORING ONE OR MORE BITS.

7    **Q.**   DOES THE DEFINITION THAT YOU SHOWED ON THE RIGHT-HAND SIDE

8    RELATE TO WHAT THE COURT HAS DONE IN THIS CASE IN DEFINING THE

9    CLAIM TERMS?

09:10:49:03  10   **A.**   YES.   THIS IS ACTUALLY THE COURT'S CONSTRUCTION ON THE

11   RIGHT-HAND SIDE WHICH BOTH PARTIES AGREED TO.

12   **Q.**   DO THE ACCUSED FREESCALE I.MX PRODUCTS HAVE A PLURALITY OF

13   REGISTERS AS REQUIRED BY THE '331 PATENT CLAIM?

14   **A.**   NO, THEY DON'T.

09:11:06:18  15   **Q.**   WHY NOT?

16   **A.**   I CAN SHOW YOU.   I --

17        CAN WE MOVE TO THE NEXT SLIDE?

18        **MR. DOWD:**   OBJECTION, YOUR HONOR.   BEFORE WE MOVE, IT

19   SHOULD COME DOWN, IT'S NOT IN THE REPORT.

09:11:16:27  20        **THE COURT:**   I DID NOT HEAR WHAT -- WHAT YOU SAID,

21   MR. DOWD.

22        **MR. DOWD:**   I APOLOGIZE, YOUR HONOR.   THE OBJECTION IS

23   THAT SLIDE 10 THAT WE'RE ABOUT TO MOVE TO IS NOT IN THE

24   REPORT.   THIS JTX18, PAGE 43 IS NOT CITED.   AND I CAN TAKE

09:11:36:03  25   YOUR HONOR TO THE PARAGRAPH THAT IS ABOUT THIS.   IT'S

09:11:39:09  1    PARAGRAPH 332 OF THE REBUTTAL REPORT.  IT HAS NO CITATION.

2                    (PAUSE IN THE PROCEEDINGS.)

3              THE COURT:  THIS IS THE SECOND SET OF REPORTS.

4          ALL RIGHT.  MR. HADJIS?  CITE, PLEASE.

09:12:35:12  5          MR. HADJIS:  YES, YOUR HONOR.

6                    (PAUSE IN THE PROCEEDINGS.)

7              MR. HADJIS:  YOUR HONOR, IF YOU TURN TO

8    PARAGRAPH 30 –– 306 OF DR. VAHID'S REBUTTAL REPORT.

9              THE COURT:  OKAY.  HOLD ON.  OKAY.

09:14:17:00 10          MR. HADJIS:  YOU WILL SEE A REFERENCE TO DR. NARAD'S

11   REPORT, NARAD 331 EXHIBIT C1 AT 29 THROUGH 30.

12             THE COURT:  RIGHT.  OKAY.

13             MR. HADJIS:  IF YOU TURN TO PAGE 30, YOU'LL SEE THAT

14   THERE'S A CHART THAT BEGINS AT PAGE 30 AND EXTENDS TO 31.

09:14:51:03 15          THE COURT:  RIGHT.

16             MR. HADJIS:  IT'S REFERRING TO THIS REGISTER WITHIN

17   SECTION 3.4.

18             THE COURT:  RIGHT.

19             MR. HADJIS:  THAT IS WHAT DR. VAHID HAS CITED TO AND

09:15:01:15 20   WHAT WE'RE ILLUSTRATING ON THE SLIDE THAT WAS TAKEN DOWN.

21             THE COURT:  OKAY.  I'LL ALLOW IT.

22         THE NEXT SLIDE CAN BE SHOWN.

23                    (DEMONSTRATIVE PUBLISHED TO JURY.)

24   BY MR. HADJIS:

09:15:21:27 25   Q.  DR. VAHID, CAN YOU CONTINUE?  I BELIEVE YOU WERE ABOUT TO

VAHID - DIRECT / HADJIS

09:15:25:03  1  EXPLAIN WHAT IS BEING ILLUSTRATED ON THIS SLIDE.

2  **A.**  YEAH, THAT'S RIGHT.  THIS IS RELATED TO THE PLURALITY OF

3  REGISTERS.  AND WHAT WAS ACCUSED WERE TWO OF THE BITS INSIDE

4  OF THIS REGISTER.

09:15:42:21  5        **THE WITNESS:**  AND SO, RYAN, ARE YOU ABLE TO HIGHLIGHT

6  THE -- THE TWO BITS, FSVAI, THEY'RE NUMBERED 13 AND 14 DOWN

7  THERE?  THANK YOU.

8              (DEMONSTRATIVE PUBLISHED TO JURY.)

9        **THE WITNESS:**  OKAY.  LET ME EXPLAIN WHAT WE'RE

09:15:56:18  10  LOOKING AT HERE.  SO WE'RE LOOKING AT ONE OF THE REGISTERS IN

11  THE ACCUSED PRODUCT.  I BELIEVE THIS IS IN THE I.MX31?  MIGHT

12  BE THE 35.  THEY'RE THE SAME IN BOTH.

13     IT'S CALLED THE POWER MANAGEMENT CONTROL REGISTER ZERO.

14  IT'S ABBREVIATED PMCR0.  SO WE CAN SEE THAT ACROSS THE TOP.

09:16:24:27  15  AND THEN WE SEE THAT IT -- IT REFERS TO SHOWING THE REGISTER.

16  AND THEN DOWN BELOW IT DISPLAYS WHAT'S INSIDE THE REGISTER.

17  AT THE UPPER LEFT IS THE ADDRESS OF THAT REGISTER.

18     RYAN, CAN YOU HIGHLIGHT THAT?  THANK YOU.

19              (DEMONSTRATIVE PUBLISHED TO JURY.)

09:16:42:12  20        **THE WITNESS:**  SO THIS IS -- THIS IS WHERE THE

21  REGISTER IS IN THE PROCESSOR, LIKE THE ADDRESS OF A HOUSE

22  MAYBE.  SO THIS IS HOW YOU FIND THIS REGISTER.

23     AND THEN RIGHT NEXT TO THAT IS THE ABBREVIATION OF IT,

24  PMCR0.  AND THAT'S -- THAT'S THE NAME OF THE REGISTER.

09:16:56:15  25     AND THEN INSIDE THAT REGISTER ARE 32 BITS.  32 ZEROS AND

VAHID – DIRECT / HADJIS

09:17:01:06  1    ONES.  SO IF WE START AT THE -- IF WE START WAY OVER AT THE

2    FAR RIGHT, THERE'S SOMETHING CALLED THE DPTEN.  AND THAT IS

3    THE FIRST BIT.  IT'S LABELED ZERO.  IT'S NUMBERED.

4          AND THEN NEXT TO THAT ARE TWO MORE BITS, AND THEY'RE NAMED

09:17:23:03  5    PTVAI, AND THEY'RE NUMBERED 1 AND 2.  AND NEXT TO THAT IS

6    PTVAIM, AND THAT'S NO. 3.  AND SO ON.

7          SO ALL ALONG THE BOTTOM, IF YOU GO FROM RIGHT TO LEFT, YOU

8    SEE THERE ARE 16 BITS NUMBERED ZERO THROUGH 15.  AND THEN

9    ALONG THE TOP ROW, YOU SEE THERE'S ANOTHER 16 BITS.  SO

09:17:46:21 10    THERE'S A TOTAL OF 32 BITS IN THIS REGISTER.  TWO OF THOSE

11    BITS ARE THE FSVAI BITS WHICH WERE ACCUSED.

12    **BY MR. HADJIS:**

13    **Q.**  AND WHY DO YOU CONCLUDE THAT THERE ARE NOT A PLURALITY OF

14    REGISTERS AS REQUIRED BY CLAIM 11 IN EXPLAINING THIS

09:18:08:27 15    PARTICULAR FIGURE?

16    **A.**  WELL, WHAT WE'RE LOOKING AT IS CLEARLY ONE REGISTER.

17    **Q.**  AND WHY IS THAT?

18    **A.**  AND THESE --

19          **MR. DOWD:**  OBJECTION, YOUR HONOR.

09:18:20:27 20          **THE WITNESS:**  THESE ARE.

21          **THE COURT:**  HOLD ON, MR. VAHID.

22          **MR. DOWD:**  OBJECTION, YOUR HONOR.  THE PORTION OF THE

23    REPORT THAT ADDRESSES THIS IS SECTION 4 STARTING AT PAGE 116

24    IN THE REBUTTAL REPORT.

09:18:35:12 25          **THE COURT:**  HOLD ON.

09:18:36:06  1                    (PAUSE IN THE PROCEEDINGS.)

2              **MR. DOWD:**  SO IF YOUR HONOR HAS PAGE 116, THAT'S THE

3       SECTION HEADING 4 IS WHERE WE'RE ADDRESSED TO REGISTERS.

4              **THE COURT:**  PARAGRAPH -- OH, AT PAGE 116, SORRY.

09:19:17:18  5              **MR. DOWD:**  PAGE 116.

6              **THE COURT:**  HOLD ON.  I WAS LOOKING AT PARAGRAPH 116.

7              **MR. DOWD:**  I APOLOGIZE.

8                    (OFF-THE-RECORD DISCUSSION.)

9              **THE COURT:**  I SEE IT.  AND --

09:19:36:03 10              **MR. DOWD:**  YOUR HONOR --

11                    (PAUSE IN THE PROCEEDINGS.)

12              **MR. DOWD:**  YOUR HONOR, IF I MAY.

13              **THE COURT:**  JUST DIRECT ME TO THE PARAGRAPH WHERE THE

14       OPINION WAS IDENTIFIED.

09:19:55:09 15              **MR. DOWD:**  PARAGRAPH 332 IS A PORTION OF THE SECTION

16       THAT IS STILL OPERATIVE.

17              **THE COURT:**  RIGHT.

18              **MR. DOWD:**  THERE ARE PORTIONS THAT ARE NOT.

19              **THE COURT:**  CORRECT.  I UNDERSTAND THAT.

09:20:03:03 20              **MR. DOWD:**  SO WE'RE BEYOND 332, YOUR HONOR.

21              **THE COURT:**  IT DOES LOOK TO ME LIKE THE OPINION THAT

22       YOU WERE ATTEMPTING TO ELICIT COMES WITHIN SECTION 4 BUT

23       OUTSIDE OF 332, MR. HADJIS.

24              **MR. HADJIS:**  YOUR HONOR, I'D REFER YOU TO

09:20:33:27 25       PARAGRAPHS 328, -29, AND -32.

09:20:45:15   1          MR. DOWD:  YOUR HONOR, THOSE ARE AS TO A DIFFERENT

2    ISSUE WHICH IS WHETHER THE INFORMATION INDICATES A CLOCK

3    FREQUENCY REQUIREMENT.

4                    (PAUSE IN THE PROCEEDINGS.)

09:21:42:12   5          MR. DOWD:  JUST SO IT'S CLEAR, I BELIEVE THE

6    TESTIMONY WE JUST HEARD IS PARAGRAPH 335.

7          MR. HADJIS:  YOUR HONOR, IF YOU LOOK AT THE END OF

8    332, OR IF YOU LOOK AT 332 IN ITS TOTALITY, IT'S EXPLAINED

9    THERE.

09:21:57:03  10                    (PAUSE IN THE PROCEEDINGS.)

11          MR. DOWD:  YOUR HONOR, WE'RE NOW TALKING ABOUT

12    SOMETHING CALLED A PMRC0 NOT MENTIONED IN 332.

13          MR. HADJIS:  THAT IS WHERE THE BITS THAT ARE TALKED

14    ABOUT IN 332 AND RESIDE IN THE REGISTER THAT'S DISCUSSED IN

09:22:25:00  15    332 IS THAT REGISTER.

16          MR. DOWD:  IF THAT WAS TO BE A BASIS, IT SHOULD HAVE

17    BEEN CITED IN 332.

18          THE COURT:  WELL, IT'S NOT IN 328.

19                    (PAUSE IN THE PROCEEDINGS.)

09:23:09:06  20          THE COURT:  IT'S NOT IN 329.

21          MR. HADJIS:  EXCUSE ME, YOUR HONOR?

22          THE COURT:  IT'S NOT IN 329.  THERE ARE MANY ISSUES

23    GOING ON.

24                    (PAUSE IN THE PROCEEDINGS.)

09:24:07:03  25          THE COURT:  I'LL ALLOW HIM TO SAY WHAT'S IN 332,

VAHID – DIRECT / HADJIS

09:24:08:24  1   SIMPLY WHAT'S IN 332.

2        DO YOU HAVE YOUR REPORT IN FRONT OF YOU?  DO YOU KNOW WHAT

3   PARAGRAPH 332 SAYS?

4             **THE WITNESS:**  COULD YOU POINT ME TO WHERE IT IS IN

09:24:19:21  5   THIS -- THIS MASSIVE THING?

6             **THE COURT:**  I CANNOT.  I'M SURE YOUR REPORT IS THERE

7   AMONG ALL OF THE DOCUMENTS.

8             **MR. HADJIS:**  IT IS NOT, BUT WE'LL GET HIM A COPY SO

9   THAT HE CAN REFER IT TO, YOUR HONOR.

09:24:32:24  10            **THE COURT:**  332 INCLUDES THREE SENTENCES, AND YOU CAN

11   MAKE REFERENCE TO THE THREE SENTENCES IN 332, BUT THAT'S IT.

12            **MR. DOWD:**  THANK YOU, YOUR HONOR.

13            **MR. HADJIS:**  MAY I APPROACH?

14            **THE COURT:**  YOU MAY.

09:24:48:21  15            **THE WITNESS:**  IT WAS DISCUSSED IN SEVERAL PLACES,

16   RIGHT?  THOSE OTHER PLACES AREN'T --

17   **BY MR. HADJIS:**

18   **Q.**  DR. VAHID, IF YOU COULD TURN TO PARAGRAPH 332 OF YOUR

19   EXPERT REPORT.

09:25:02:18  20   **A.**  ALL RIGHT.  GIVE ME A MINUTE HERE, PLEASE.

21            **THE COURT:**  THIS IS THE REBUTTAL REPORT, TO REFRESH

22   YOUR MEMORY ABOUT WHAT 332 SAYS.

23                 (PAUSE IN THE PROCEEDINGS.)

24            **THE WITNESS:**  (REVIEWING DOCUMENT.)

09:26:07:12  25       OKAY.  I'VE LOOKED AT 332.

09:26:10:06  1      SO 306 IS NOT -- NOT TO BE DISCUSSED; IS THAT RIGHT?  IT'S

2   THE OTHER PLACE I DISCUSS THE FSVAI BITS?

3   **BY MR. HADJIS:**

4   **Q.**  ALL RIGHT.  WELL, LET'S START WITH --

09:26:29:21  5      **MR. HADJIS:**  YOUR HONOR, IF HE'S ABLE TO REFER TO

6   306, TOO, WOULD THAT BE ACCEPTABLE?

7          **MR. DOWD:**  YOUR HONOR --

8          **MR. HADJIS:**  IF HE BELIEVES THAT THAT ALSO WOULD HELP

9   WITH HIS ANSWER?

09:26:42:18 10        **THE COURT:**  I NEED TO READ IT.

11         **MR. DOWD:**  OBJECTION, YOUR HONOR, BECAUSE THERE ARE

12  TWO ISSUES HERE.  FIRST, THAT'S NOT IN THE PORTION OF THE

13  REPORT THAT IS ADDRESSED TO THIS LIMITATION.  THE PORTION OF

14  THE REPORT THAT IS ADDRESSED TO THE OPINIONS ON THIS

09:26:56:12 15  LIMITATION STARTS AT 326.

16     SECOND, TO THE EXTENT THAT THE BASIS IS THIS DIFFERENT

17  EXPERT'S REPORT, WE OBJECT.

18         **MR. HADJIS:**  YOUR HONOR, AS I EXPLAINED EARLIER, THIS

19  IS A REBUTTAL REPORT, AND THEREFORE HE IS REFERRING BACK TO

09:27:26:03 20  MR. NARAD'S REPORT.

21         **THE COURT:**  NO.  I -- I UNDERSTAND WHAT HE'S DOING IN

22  TERMS OF THE REBUTTAL.

23         **MR. HADJIS:**  AND --

24         **THE COURT:**  THE ONLY QUESTION --

09:27:44:15 25         **MR. DOWD:**  THE REASON I HAVE A CONCERN, YOUR HONOR,

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

09:27:45:24  1    IS BECAUSE THIS APPEARS TO BE AN ATTEMPT TO ELICIT WHAT IS IN

2    PARAGRAPHS 326, 327, 333, AND THROUGH 335 WHICH --

3           THE COURT:  ARE NO LONGER OPERATIVE.

4           MR. DOWD:  CORRECT, YOUR HONOR.

09:28:02:21  5           MR. HADJIS:  YOUR HONOR, THERE IS, IF YOU SEE MIDWAY

6    THROUGH 306, AN ARTICULATION OF THE STRUCTURE.  AND ALL WE

7    NEED TO DO IS REFER --

8           THE COURT:  HERE'S MY CONCERN, MR. HADJIS, WHICH IS

9    THAT -- AND I'LL LET DR. VAHID KNOW THIS -- BECAUSE YOUR

09:28:28:09 10    QUESTION IS ACTUALLY AN OPEN-ENDED QUESTION.  IF THE ANSWER TO

11    THE QUESTION INVOLVES 326, 327, THEN IT'S NOT OPERATIVE AND IT

12    CANNOT BE TESTIFIED TO.

13       DOES IT, DR. VAHID?  DO YOU UNDERSTAND WHAT I'M SAYING?

14           THE WITNESS:  I DO.  CAN I LOOK OVER THOSE --

09:28:57:03 15           THE COURT:  YOU CAN.

16           THE WITNESS:  -- INTEROPERATIVES BECAUSE --

17           THE COURT:  AND 332 IS OPERATIVE.  326 AND 327 ARE

18    NOT.

19           THE WITNESS:  OKAY.  CAN I LOOK THOSE OVER REAL

09:29:09:18 20    QUICK?

21           THE COURT:  YOU MAY.

22           THE WITNESS:  THANK YOU.

23       (REVIEWING DOCUMENT.)

24       YEAH, THAT'S FINE.  I WASN'T GOING TO REFER TO THOSE.

09:29:57:09 25           THE COURT:  YEAH.  AND 306 JUST, I DON'T THINK,

09:30:00:09  1   PROVIDES AN AFFIRMATIVE OPINION.  IT JUST CROSS-REFERENCES

2   WHAT IS TO COME, WHICH IS IN SECTION 4.  SO AGAIN, YOU'RE

3   LIMITED TO WHAT IS IN 332.

4        GO AHEAD.

09:30:12:27  5             THE WITNESS:  OKAY.

6   BY MR. HADJIS:

7   Q.  DR. VAHID, DRAWING YOUR ATTENTION TO THE FIGURE FROM THE

8   FREESCALE REFERENCE MANUALS THAT'S ILLUSTRATED ON 5-10 OF YOUR

9   SLIDES BEFORE YOU --

09:30:32:18  10  A.  OKAY.

11  Q.  -- CAN YOU TELL THE JURY WHY YOU'VE CONCLUDED THAT THERE

12  IS NOT A PLURALITY OF REGISTERS WITH REGARD TO CLAIM 1 -- OR

13  CLAIM 11 OF THE '331 PATENT?

14            MR. DOWD:  OBJECTION.  SORRY TO RISE, YOUR HONOR, BUT

09:30:49:15  15  THAT IS TRYING TO LINK 306.

16            THE COURT:  LET ME HEAR THE -- I'M GOING TO HEAR THE

17  ANSWER, MR. DOWD.  AND IF I HAVE TO STRIKE IT, I'LL STRIKE IT.

18            MR. DOWD:  THANK YOU, YOUR HONOR.

19            THE COURT:  YOU CAN RESPOND.

09:31:02:27  20            THE WITNESS:  CAN YOU ASK THAT AGAIN, ALEX, PLEASE?

21  BY MR. HADJIS:

22  Q.  YEAH.  CAN YOU TELL US WHY YOU DON'T THINK THE FREESCALE

23  I.MX PRODUCTS CONTAIN A PLURALITY OF REGISTERS AS REQUIRED BY

24  CLAIM 11 OF THE '331 PATENT?

09:31:17:06  25  A.  SURE.  THE TWO FSVAI BITS ARE TWO BITS IN ONE REGISTER.

09:31:23:15  1    THEY ARE NOT TWO REGISTERS.

2    Q.  AND IS THAT REGISTER, THE ONE REGISTER THAT YOU'RE

3    REFERRING TO, ILLUSTRATED ON SLIDE 5-10?

4    A.  YES.

09:31:36:06  5    Q.  WHAT IS IT?  CAN YOU EXPLAIN WHAT THAT ONE REGISTER IS,

6    FOR THE JURY?

7    A.  IT --

8         MR. DOWD:  OBJECTION.

9         THE COURT:  I'M HOLDING.  GO AHEAD.  WHAT'S YOUR

09:31:47:18 10   ANSWER?

11        THE WITNESS:  IT'S THE PMCR0 REGISTER, THE POWER

12   MANAGEMENT CONTROL REGISTER.

13        MR. DOWD:  MOVE TO STRIKE.

14        THE COURT:  PARAGRAPH CITE, MR. DOWD?

09:32:11:00 15        MR. DOWD:  DIRECTED TO ME, YOUR HONOR?

16        THE COURT:  YES.

17        MR. DOWD:  332 DOES NOT CONTAIN WHAT WE JUST HEARD.

18        THE COURT:  WELL, I AGREE WITH THAT.

19     MR. HADJIS?

09:32:22:00 20        MR. HADJIS:  I WOULD REFER YOU TO 306 WHICH --

21        THE COURT:  THAT'S NOT A SUFFICIENT BASIS.

22     NEXT?

23     ANYTHING ELSE?  BECAUSE I DON'T SEE THE PMCR0.

24        MR. HADJIS:  RIGHT.  IT IS IN 306, AND IT CONNECTS

09:32:46:12 25   THE BITS IN 306 TO THAT PARTICULAR REGISTER.  THAT'S ALL I CAN

09:32:58:12  1   IDENTIFY FOR YOU RIGHT NOW, YOUR HONOR.

2          THE COURT:  WELL, THAT'S MR. NARAD'S OPINION.  THAT'S

3   THE CROSS-REFERENCE TO WHAT MR. NARAD IS SAYING.  SO WHERE IS

4   THE REBUTTAL?

09:33:16:09  5          MR. HADJIS:  IT --

6          THE COURT:  WHAT PARAGRAPHS IS THE REBUTTAL?

7          MR. HADJIS:  IT IS THE STRUCTURE OF THE PRODUCT THAT

8   IS IN 306 THAT DR. VAHID IS DESCRIBING.  AND THE REBUTTAL

9   IS --

09:33:35:27 10          THE COURT:  SO HE'S IDENTIFIED THE OPINION BY THE

11   PLAINTIFF'S EXPERT.  MY QUESTION TO YOU IS WHERE IS IT IN THE

12   REBUTTAL OPINIONS THAT ARE STILL OPERATIVE?

13          MR. HADJIS:  YOUR -- YOUR HONOR, IF I COULD POINT YOU

14   TO 306, YOU'LL SEE IN THE SECOND-TO-LAST SENTENCE, THERE'S A

09:34:01:06 15   REFERENCE TO THE -- I'M GOING TO BE CAREFUL NOT TO READ THIS

16   IN SO IT DOESN'T GET --

17          THE COURT:  I SEE THE PMCR0.

18          MR. HADJIS:  YOU DO.  AND YOU SEE THE FSVAI BITS OF

19   THAT PARTICULAR REGISTER.

09:34:14:00 20          THE COURT:  AND THEN IT SAYS --

21          MR. HADJIS:  AND THEN IF YOU --

22          THE COURT:  -- AS EXPLAINED IN MORE DETAIL IN THE

23   SECTIONS THAT FOLLOW.  THAT'S WHAT I'M ASKING FOR.

24          MR. HADJIS:  WELL, AND THEN IF YOU READ THE NEXT

09:34:22:15 25   CLAUSE, THAT DOES IT.

09:34:25:12  1          THE COURT:  NO.  THAT INTRODUCES IT.

2          MR. HADJIS:  IT -- IT INDICATES THAT THE BITS ARE NOT

3  THE PLURALITY OF REGISTERS WITHIN THE MEANING OF THE CLAIM.

4          THE COURT:  WHAT I'M ASKING FOR IS THE -- THE PREFACE

09:34:40:00  5  SAYS, "AS EXPLAINED IN MORE DETAIL IN THE SECTIONS THAT

6  FOLLOW."

7      THIS IS A HIGHLY TECHNICAL ISSUE.  I'M ASKING FOR THE

8  SECTIONS THAT EXPLAIN THE OPINION.

9          MR. HADJIS:  UNDERSTOOD.  AND WITH -- WITH THIS --

09:35:05:24 10          THE COURT:  BECAUSE A NUMBER OF THESE OPINIONS AREN'T

11  OPERATIVE.  SO THAT'S WHY I'M ASKING WHERE IT IS.

12          MR. HADJIS:  UNDERSTOOD.  BUT -- BUT THIS ONE IS.

13  AND WITH THIS CONSTRUCT, 332 THEN PROVIDES THE OPINION.  I'M

14  SIMPLY REFERRING TO THE CONSTRUCT, AND HE IS PROVIDING HIS

09:35:27:09 15  OPINION --

16          THE COURT:  WHERE DOES HE SAY THAT THE -- WHERE DOES

17  HE IDENTIFY --

18          MR. HADJIS:  THAT IS THE SINGLE CIRCUIT THAT HE'S

19  TALKING ABOUT IN -- IN 332, THE SINGLE REGISTER.

09:35:46:27 20          THE COURT:  I SEE WHAT YOU'RE SAYING.

21                  (PAUSE IN THE PROCEEDINGS.)

22          THE COURT:  SO THE ONLY REGISTER AT ISSUE IN THIS

23  ENTIRE SECTION IS THE PMCR0?

24          MR. HADJIS:  IT IS THE ONLY REGISTER THAT HOLDS THE

09:36:13:06 25  BITS AT ISSUE IN THE ENTIRE CHIP.

09:36:20:00   1        THE COURT:  ALL RIGHT.  I'LL ALLOW IT.

2        MR. HADJIS:  THANK YOU, YOUR HONOR.

3        THE COURT:  NEXT QUESTION.

4        MR. HADJIS:  AND JUST TO MAKE SURE THAT -- THAT WE

09:36:34:24   5   HAVE IT, YOUR HONOR, I'D LIKE TO -- TO ASK IT AGAIN.

6        THE COURT:  NO.  IT CAN BE READ BACK.

7        MR. HADJIS:  OKAY.

8        THE COURT:  I DON'T WANT THERE TO BE ANOTHER

9   CONTROVERSY.

09:36:42:18  10        MR. HADJIS:  THAT'S FINE.

11      CAN IT BE READ BACK?

12        THE COURT:  YES.  THE COURT REPORTER CAN READ BACK

13   THE QUESTION AND ANSWER.

14        MR. HADJIS:  THANK YOU, YOUR HONOR.

09:37:38:24  15      (RECORD READ AS FOLLOWS:)

16        THE COURT:  ALL RIGHT.  GO AHEAD AND ASK, THEN.

17        MR. HADJIS:  THANK YOU, YOUR HONOR.  I WAS A LITTLE

18   AFRAID OF THAT.

19   BY MR. HADJIS:

09:37:48:15  20   Q.  DR. VAHID, CAN YOU EXPLAIN USING THE ILLUSTRATION OF -- ON

21   5-10 OF YOUR SLIDES WHY YOU'VE CONCLUDED THAT THE CLAIM OF THE

22   '331 PATENT REQUIRING A PLURALITY OF REGISTERS IS NOT MET?

23   A.  BECAUSE THE FSVAI BITS ARE TWO BITS INSIDE OF ONE

24   REGISTER.  THEY ARE NOT TWO REGISTERS.

09:38:19:06  25   Q.  HOW DO -- HOW DOES FREESCALE'S DOCUMENTS REFER TO WHAT YOU

09:38:23:27  1    ARE CALLING A REGISTER?

2    **A.**  THEY NAME IT THE POWER MANAGEMENT CONTROL REGISTER ZERO,

3    OR PMCR0.

4    **Q.**  YOU'VE COME UP WITH AN ANALOGY.  CAN YOU PROVIDE YOUR

09:38:41:15  5    ANALOGY TO THE JURY?

6    **A.**  YEAH, I'D BE HAPPY TO.

7        WOULD IT BE OKAY IF I USED THE BOARD FOR THAT?

8    **Q.**  SURE.

9            THE COURT:  POTENTIALLY.  GO AHEAD.

09:38:54:24  10            THE WITNESS:  POTENTIALLY?

11    CAN I USE THOSE MARKERS?  SHOULD WE TURN THIS TO THE --

12            THE COURT:  YOU CAN.  I JUST NEED TO MAKE SURE WE SEE

13    IT.  YOU HAVE A HUGE SLIDE DECK HERE, DR. VAHID.  THIS IS A

14    HEAVILY CONTENTIOUS LITIGATION.  YOU NEED TO STICK TO YOUR

09:39:12:18  15    REPORT.  THE ONLY PROBLEM WITH YOU USING THE BOARD IS I CAN'T

16    ANTICIPATE WHAT IT IS YOU'RE DOING.  SO AS LONG AS YOU'RE

17    STICKING TO THE REPORT, WE'RE FINE.

18            THE WITNESS:  OKAY.  I'M GOING TO GIVE AN ANALOGY.

19            THE COURT:  OKAY.

09:39:23:18  20            THE WITNESS:  WHICH IS NOT SPECIFICALLY COVERED IN

21    THE REPORT.  IS THAT OKAY?

22            THE COURT:  WE'LL TAKE IT QUESTION BY QUESTION.

23            MR. HADJIS:  YOUR HONOR, MAY I HAND HIM SOME --

24            THE COURT:  YOU MAY.

09:39:32:03  25            MR. HADJIS:  -- MARKERS AND AN ERASER.

09:39:34:27  1        THE COURT:  YOU CAN STAND BY THE MIC, MR. DOWD.

2        MR. DOWD:  THANK YOU, YOUR HONOR.

3        THE WITNESS:  IS THIS ON?

4        THE COURT:  I DON'T KNOW.  IS THE MIC -- IS THE LAPEL

09:39:47:06  5  MIC ON?

6        THE WITNESS:  CAN YOU HEAR ME OKAY?  YEAH?  SO -- CAN

7  I TURN THIS?

8        THE COURT:  IT'S VERY HEAVY.  YOU CAN -- YOU CAN --

9  IT'S ON -- IT'S ON WHEELS SO YOU CAN.

09:40:07:09  10     ALL RIGHT.  RIGHT THERE BECAUSE OTHERWISE I CAN'T SEE IT.

11        THE WITNESS:  CAN YOU SEE THAT OKAY?

12     OKAY.  SO I'M JUST GOING TO DRAW.

13        THE COURT:  CAN YOU HEAR HIM?  IF NOT, WE'LL GET

14  HIM --

09:40:18:15  15        THE CLERK:  IS THIS COUNSEL'S MIC OR IS THAT --

16        THE COURT:  IS THAT YOUR MIC?  WHOSE MIC IS THAT?

17        MR. HADJIS:  I BELIEVE IT'S OUR MIC, YOUR HONOR.

18        THE WITNESS:  ARE WE GOOD?  I CAN USE MY PROFESSOR

19  VOICE IF THAT'S ALL RIGHT.

09:40:38:12  20        MR. HADJIS:  THAT'S PROBABLY BEST.

21        THE WITNESS:  ALL RIGHT.

22        MR. HADJIS:  THANKS.

23        THE WITNESS:  SO I'VE DRAWN A REGISTER WITH TWO BITS.

24  SO THAT REGISTER CAN HAVE VARIOUS VALUES.  SO TWO BITS JUST,

09:40:47:27  25  YOU KNOW, THAT'S A BIT, THAT'S A BIT.  AND THERE'S ACTUALLY

09:40:52:18  1    FOUR POSSIBLE VALUES FOR THOSE:  1, 10, 01, AND 00.  THOSE ARE

2    THE FOUR POSSIBLE VALUES THAT THAT -- THOSE TWO BITS OF THAT

3    REGISTER CAN HOLD.

4        AND SO THE ANALOGY IS JUST LIKE A LICENSE PLATE.  SO IF

09:41:13:18  5    YOU LOOK AT A PERSON'S LICENSE PLATE, AND MAYBE THEY HAVE --

6    AND HOPEFULLY I DON'T PUT ANY REAL LICENSE PLATE HERE --

7    THIS -- THIS LICENSE PLATE HAS SEVEN DIGITS, RIGHT?

8        SO A REGISTER IS A -- IS A CIRCUIT THAT CAN STORE ONE OR

9    MORE BITS.  THIS ONE STORES TWO BITS.  THIS LICENSE PLATE CAN

09:41:34:27 10    SHOW ONE OR MORE CHARACTERS.  THIS ONE SHOWS SEVEN CHARACTERS.

11        AND SO THE REASON THAT THESE TWO BITS IN A REGISTER ARE

12    NOT TWO REGISTERS IS THE SAME THAT THE REASONS THAT THESE TWO

13    CHARACTERS ARE NOT TWO LICENSE PLATES.

14        **MR. DOWD:**  YOUR HONOR --

09:41:50:21 15        **THE WITNESS:**  WE JUST DON'T LOOK AT IT THAT WAY.

16        **MR. DOWD:**  YOUR HONOR, I DO OBJECT, MOVE TO STRIKE.

17    THIS IS NOT IN THE REPORT AS AN EXAMPLE, AND IT'S INCONSISTENT

18    WITH THE DEPOSITION TESTIMONY.

19        **THE COURT:**  I'LL LET YOU CROSS-EXAMINE HIM.  AND I

09:42:06:06 20    WILL HOLD ON THE MOTION TO STRIKE.

21        **MR. DOWD:**  THANK YOU, YOUR HONOR.

22    **BY MR. HADJIS:**

23    **Q.**  THANK YOU, DR. VAHID.

24        IS THE MANNER IN WHICH YOU HAVE BEEN DISCUSSING -- IN

09:42:20:24 25    WHICH YOU HAVE IDENTIFIED A REGISTER CONSISTENT WITH THE

09:42:23:18  1    COURT'S CLAIM CONSTRUCTION?

2    **A.**  YES, IT IS.  A REGISTER --

3    **Q.**  HOW SO?

4    **A.**  A REGISTER IS A CIRCUIT CAPABLE OF STORING ONE OR MORE

09:42:31:15  5    BITS.  THAT REGISTER I'VE DRAWN ON THE TOP THERE CAN STORE TWO

6    BITS, AND SO IT IS CONSISTENT.

7    **Q.**  WHAT DO THE FSVAI BITS REPRESENT IN THE FREESCALE

8    PRODUCTS?

9    **A.**  THOSE REPRESENT A REQUESTED DIRECTION OF THE CLOCK

09:42:59:18 10    FREQUENCY, SO WHETHER TO MOVE THE CLOCK FREQUENCY UP OR TO

11    TURN IT DOWN.

12    **Q.**  DR. VAHID, ARE THERE ANY OTHER REASONS THAT YOU BELIEVE

13    THE ACCUSED PRODUCTS DO NOT INFRINGE CLAIM 11 OF THE '331

14    PATENT?

09:43:14:21 15    **A.**  SURE.  SO IN ADDITION TO NOT MEETING THE PLURALITY OF

16    REGISTERS PORTION OF CLAIM 11, THERE ARE A COUPLE OTHER

17    ISSUES.

18            **THE WITNESS:**  IF WE COULD MOVE ON TO THE NEXT SLIDE.

19            (DEMONSTRATIVE PUBLISHED TO JURY.)

09:43:32:06 20    **BY MR. HADJIS:**

21    **Q.**  WHAT DOES THIS SLIDE DEPICT, DR. VAHID?

22    **A.**  SO THIS IS A BLOCK DIAGRAM OF THE -- ONE OF THE ACCUSED

23    PRODUCTS.  THIS IS THE I.MX50, I BELIEVE.  AND I'VE

24    HIGHLIGHTED ON THE CLAIM LANGUAGE ON THE LEFT MORE OF THE

09:43:49:09 25    TERMS.  I'VE HIGHLIGHTED THE WORD "COMPONENT" IN BLUE.  AND

09:43:52:27  1    I'VE HIGHLIGHTED THE WORD "CONTROLLER" IN RED.

2    **Q.**  AND BEFORE YOU BEGIN TO EXPLAIN THE NEXT REASON YOU

3    BELIEVE CLAIM 11 IS NOT INFRINGED, CAN YOU TELL US WHAT THAT

4    REASON IS SO THAT WE CAN HAVE THAT IN OUR MINDS AS YOU MAKE

09:44:10:03  5    THE EXPLANATION?

6    **A.**  THE CLAIM LANGUAGE WHERE IF YOU LOOK AT THE RED THERE, A

7    CONTROLLER, THE CONTROLLER MUST BE COUPLED TO AT LEAST ONE OF

8    THE COMPONENTS.  SO IT MUST BE COUPLED TO A COMPONENT.  AND

9    THAT COUPLING DOES NOT EXIST IN THE WAY THAT THE PRODUCT WAS

09:44:30:27  10   ACCUSED.  IT'S NONSENSICAL.

11             **MR. DOWD:**  OBJECTION.  MOVE TO STRIKE.  BEYOND THE

12   REPORT.

13             **THE COURT:**  PARAGRAPH?

14                  (PAUSE IN THE PROCEEDINGS.)

09:44:47:03  15            **MR. HADJIS:**  REBUTTAL REPORT AT PARAGRAPHS 300, 356

16   THROUGH 359.

17             **THE COURT:**  WHAT WAS THE LAST ONE?

18             **MR. HADJIS:**  356 THROUGH 359.

19             **MR. DOWD:**  YOUR HONOR, AGAIN, PARAGRAPH 300 COMES

09:45:11:15  20   BEFORE PAGE 110 WHERE THE SPECIFIC OPINIONS BEGIN WITH

21   NUMBER 1, SO IT IS NOT PART OF AN OPINION ABOUT A TERM.

22        AND THE PARAGRAPHS ON PAGE 126 THAT ARE CITED DO NOT STATE

23   THE TESTIMONY THAT WE JUST HEARD.

24                  (PAUSE IN THE PROCEEDINGS.)

09:46:09:21  25            **MR. DOWD:**  THE SUBJECT OF WHICH IS NOT FOCUSED ON THE

09:46:12:00  1    "COUPLED TO" ISSUE.

2                 THE COURT:  I CAN'T HEAR YOU, MR. DOWD.

3                 MR. DOWD:  SORRY.  THE SUBJECT OF WHICH IS NOT

4    FOCUSED ON THE "COUPLED TO" ISSUE.

09:46:20:27  5                 (PAUSE IN THE PROCEEDINGS.)

6                 MR. HADJIS:  YOUR HONOR, I'M GOING TO SAVE YOU A

7    LITTLE WORK HERE BECAUSE I THINK I MAY HAVE -- MAYBE I'M NOT

8    SURE, BUT I MAY HAVE ARTICULATED THE WRONG ENDING POINT.  359

9    NOT 369.  IF I TOLD YOU 369 --

09:47:04:06 10                 THE COURT:  NO, YOU SAID 359.

11                MR. HADJIS:  OKAY.

12                (PAUSE IN THE PROCEEDINGS.)

13                MR. HADJIS:  YOUR HONOR, IF YOU DO LOOK AT 300, IT IS

14   SQUARELY ARTICULATED THERE IN 356 THROUGH 359.

09:47:49:27 15                THE COURT:  WELL, I WASN'T SEEING IT IN 356 TO 359.

16   AT LEAST NOT AS ARTICULATED HERE.

17                MR. HADJIS:  IT IS THERE IN DETAIL, BUT 300 LAYS IT

18   OUT GENERALLY.

19                MR. DOWD:  YOUR HONOR, 300 IS IN THE -- IS IN THE

09:48:03:21 20   PORTION BEFORE WE GET TO "AS EXPLAINED IN MORE DETAIL IN THE

21   SECTIONS THAT FOLLOW."

22        THE SECTIONS THAT FOLLOW THAT PROVIDE THE EXPERT'S

23   SPECIFIC POSITIONS WITH RESPECT TO LIMITATIONS.  AND SO 300 IS

24   NOT ONE OF THOSE PORTIONS.

09:48:18:24 25                (PAUSE IN THE PROCEEDINGS.)

09:48:25:21  1    THE COURT:  LADIES AND GENTLEMEN, WE'RE ALMOST AT OUR

2    BREAK HERE SO I'M GOING TO LET YOU GO AHEAD WHILE I READ THESE

3    PARAGRAPHS, AND JUST TAKE A LONGER BREAK RATHER THAN SITTING

4    THERE.

09:48:36:00  5        SO YOU'LL STAND IN RECESS FOR OUR REGULAR RECESS.

6                    (JURY EXCUSED FOR RECESS.)

7        (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

8    OF THE JURY:)

9                THE COURT:  PARAGRAPH 3, MR. -- 300, MR. VAHID -- OR

09:49:42:15 10    DR. VAHID SAYS THAT WHEN, QUOTE, THE COUPLED TO AT LEAST ONE

11    OF THE COMPONENTS, CLOSED QUOTES, IS CONSIDERED, DR. NARAD'S

12    CONTENTION IS ESSENTIALLY THAT THE CLAIMED CONTROLLER IS

13    COUPLED TO ITSELF, WHICH IS NONSENSICAL AND CANNOT BE

14    RECONCILED WITH THE CLAIM LANGUAGE REQUIRING TWO SEPARATE

09:50:06:03 15    COMPONENTS.

16        SO WHAT'S THE PROBLEM, MR. DOWD?

17            MR. DOWD:  TWO PROBLEMS, YOUR HONOR.  ONE IS THAT --

18            THE COURT:  EVERYBODY ELSE CAN BE SEATED.

19            MR. DOWD:  ONE IS THAT WHAT WE'RE LOOKING AT IN

09:50:19:06 20    PARAGRAPH 200 --

21                MR. HADJIS:  YOUR HONOR --

22            THE COURT:  300.

23            MR. DOWD:  SORRY, 300.  WHAT'S GOING ON HERE, YOUR

24    HONOR, IS THAT WHEN THIS REPORT WAS ISSUED, DR. VAHID GAVE

09:50:31:03 25    SOME GENERAL BACKGROUND STATEMENTS ABOUT ASPECTS OF WHAT

09:50:34:18  1    MR. NARAD HAD SAID, AND THEN HE SET FORTH IN NUMBERED

2    PARAGRAPHS STARTING ON PAGE 110 HIS SPECIFIC OPINIONS ABOUT

3    WHAT LIMITATIONS WEREN'T MET AND WHY.

4         THE COURT:  RIGHT.  BUT WHERE IS, THEN -- MR. HADJIS,

09:50:49:15  5    WHERE IS THE EXPLANATION OF THAT SENTENCE IN THIS REPORT?

6         OR LET ME ASK -- LET ME ASK DR. VAHID.  WHERE IS THE

7    EXPLANATION OF THAT ONE SENTENCE IN YOUR REPORT?

8         THE WITNESS:  I COULD START LOOKING FOR IT.  I MEAN,

9    I WAS BASICALLY IN MY TESTIMONY, YOU KNOW --

09:51:11:18  10        THE COURT:  LOOK AT YOUR REPORT.

11        THE WITNESS:  -- REFERRING TO THAT PARAGRAPH.

12        THE COURT:  LOOK AT YOUR REPORT.

13        THE WITNESS:  OKAY.

14        THE COURT:  AND TELL ME WHERE THE EXPLANATION IS

09:51:18:15  15   BECAUSE I SUSPECT YOU'RE GOING TO SAY MORE THAN THIS ONE

16   SENTENCE.

17        THE WITNESS:  I WAS JUST GOING TO WALK THROUGH --

18        THE COURT:  RIGHT.  YOU'RE GOING TO WALK THROUGH IT.

19   SO TELL ME WHERE YOU'VE WALKED THROUGH THIS BEFORE SO THAT I

09:51:29:15  20   CAN TRACK YOUR LANGUAGE DURING YOUR TESTIMONY.

21        MR. HADJIS:  AND, YOUR HONOR, CAN WE IDENTIFY THE --

22   JUST BECAUSE HE HASN'T BEEN FOLLOWING ALONG, AT LEAST THE

23   PARAGRAPHS THAT WE'RE TALKING ABOUT SO HE CAN HAVE THOSE IN

24   FRONT OF HIM.  AND THEN IF HE WANTS TO GO BEYOND THEM, I

09:51:45:03  25   ASSUME HE CAN BASED ON WHAT YOUR HONOR'S ASKING HIM TO DO.

09:51:48:00  1        **MR. DOWD:**  YOUR HONOR, IT'S --

2        **THE COURT:**  WELL, THE PARAGRAPHS YOU IDENTIFIED FOR

3   ME --

4        **MR. HADJIS:**  YES.

09:51:55:15  5        **THE COURT:**  -- WERE 356 TO 359.

6        **MR. HADJIS:**  AND 300.

7        **THE COURT:**  THE ONE SENTENCE I SEE IN 300, I COULD

8   LEAVE THE ONE SENTENCE AND WE COULD MOVE ON UNLESS THERE'S AN

9   EXPLANATION THAT HAS BEEN PROVIDED FOR THE SENTENCE.

09:52:21:09 10        **MR. HADJIS:**  UM-HMM.

11        **THE COURT:**  WHICH I ASSUME IS WHAT YOU'RE TRYING TO

12   GET INTO NEXT.

13        **MR. HADJIS:**  THAT'S RIGHT.

14        **THE COURT:**  OKAY.  SO WHERE IS THE EXPLANATION TO THE

09:52:29:00 15   ONE SENTENCE IN 300?

16        **THE WITNESS:**  SO, YOUR HONOR, THE REPORT THAT I HAVE

17   IN FRONT OF ME DOESN'T SHOW WHAT'S STILL IN PLAY AND WHAT'S

18   NOT.  SO IT'S A LITTLE HARD FOR ME TO --

19        **THE COURT:**  OKAY.  WELL, TELL ME WHERE YOU THINK IT

09:52:44:09 20   IS EXPLAINED AND I'LL TELL YOU IF IT'S IN PLAY OR NOT.

21        **THE WITNESS:**  OKAY.  WELL, I WOULD BE STARTING WITH

22   357.

23        **THE COURT:**  YOU SAY, "WHEN THE COUPLED" -- WHEN,

24   QUOTE -- I'M BACK AT 300.  "WHEN THE 'COUPLED TO AT LEAST ONE

09:53:00:12 25   OF THE COMPONENTS' IS CONSIDERED, MR. NARAD'S CONTENTION IS

09:53:08:27  1   ESSENTIALLY THAT THE CLAIMED CONTROLLER IS COUPLED TO ITSELF."

2   SO EXPLAIN TO ME WHERE THAT IS IN THESE PARAGRAPHS -57

3   AND -59.  WHAT CLAIMED CONTROLLER THAT IS COUPLED TO ITSELF?

4        THE WITNESS:  (REVIEWING DOCUMENT.)

09:53:46:09  5   WELL, IN 359, I CAN SEE THAT I'M REFERRING BACK TO THE

6   EARLIER DISCUSSION IN THE 31 AND THE 35.  CAN I LOOK BACK AT

7   THAT?

8        THE COURT:  OKAY.  SO YOU'RE NOT SEEING IT?  AM I --

9   SO YOU'RE NOT SEEING IT THERE THEN.

09:53:59:06  10        THE WITNESS:  WELL, SO I DISCUSS THE 31, 35 FIRST.

11        THE COURT:  I -- RIGHT.

12        THE WITNESS:  AND THEN THE 50, I GO ON A LITTLE MORE.

13        THE COURT:  YES, I GET THAT.  SO YOU'RE NOT -- LOOK,

14   YOU'RE THE PROFESSOR.  I'M NOT.  I'M JUST TRYING TO FOLLOW THE

09:54:11:12  15   LOGIC.  SO I'M CORRECT, I'M NOT SEEING IT HERE IN THESE

16   PARAGRAPHS THAT YOU'VE GOT TO CROSS-REFERENCE SOMETHING BACK.

17        THE WITNESS:  (REVIEWING DOCUMENT.)

18   IT SAYS IT DOES NOT MEET IT IN THE SAME WAY THAT THE 31

19   AND THE --

09:54:35:21  20        THE COURT:  I'M JUST TRYING --

21        THE WITNESS:  -- 35 --

22   IT'S NOT EXPLICITLY STATED THERE, AS FAR AS I CAN TELL.

23        THE COURT:  ALL RIGHT.  SO THEN, YES.  SO NOW YOU CAN

24   GO BACK TO YOUR PRIOR SECTIONS AND IDENTIFY FOR ME IF THERE'S

09:54:50:12  25   THIS ISSUE -- IF YOU -- WHERE I CAN FIND THIS.

09:55:35:06  1          (PAUSE IN THE PROCEEDINGS.)

2          **THE WITNESS:**  (REVIEWING DOCUMENT.)

3      YOUR HONOR, AS FAR AS I CAN TELL, THERE WAS A NUMBER OF

4  OTHER THINGS THAT COVERED THE SIMILAR SUBJECT, BUT THEY WERE

09:57:31:24  5  THROWN OUT BECAUSE OF THE OTHER ISSUE.

6      SO, YOU KNOW, PARAGRAPH 300, THAT LAST SENTENCE LOOKS LIKE

7  IT JUST -- IT'S STANDING ON ITS OWN THERE.

8          **THE COURT:**  ALL RIGHT.  IN THAT CASE, IT DOESN'T COME

9  IN, MR. HADJIS.

09:57:51:06 10      WE'LL STAND IN RECESS FOR 15 MINUTES.

11          **MR. DOWD:**  YOUR HONOR?

12          **THE COURT:**  I'LL STRIKE IT WHEN HE COMES BACK.  I

13  THINK THAT THEN APPLIES TO SLIDES 11, 12.  CERTAINLY 11 AND

14  12.  SO THEN WE START UP -- IS 13 A DIFFERENT ISSUE?

09:58:14:12 15          **MR. HADJIS:**  IT IS, YOUR HONOR.

16          **THE COURT:**  ALL RIGHT.  THEN WE'LL START UP WITH

17  SLIDE 13.

18          **MR. DOWD:**  AND JUST SO WE HAVE IT ON THE RECORD, WHEN

19  WE GET THEN TO THE SUMMARY SLIDE 14, CAN WE HAVE THE "COUPLED

09:58:27:27 20  TO" ISSUE NOT BOLDED ON THAT SLIDE?

21          **THE COURT:**  I'M SURE YOU CAN MAKE THAT ADJUSTMENT SO

22  THAT YOU CAN SHOW YOUR SLIDE?

23          **MR. HADJIS:**  SURE, YOUR HONOR.

24          **THE COURT:**  ALL RIGHT.

09:58:37:21 25          **MR. DOWD:**  THANK YOU, YOUR HONOR.

09:58:38:24  1          THE COURT:  WE'LL STAND IN RECESS UNTIL 10:15.

2          (RECESS TAKEN AT 9:59 A.M.; PROCEEDINGS RESUMED AT

3      10:17 A.M.)

4          (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

10:13:28:24  5      OF THE JURY.)

6          THE COURT:  ALL RIGHT.  DR. VAHID, COME ON BACK.

7          MR. DOWD.

8          MR. DOWD:  YOUR HONOR, MS. CHEN WAS GOOD ENOUGH TO

9      LOOK AHEAD FOR ME AND SAW ON SLIDE 26 THAT THERE'S A BULLET IN

10:16:44:03 10      THE SUMMARY -- THE FINAL SUMMARY SLIDE OF THE PATENT THAT

11      WOULD ALSO NEED TO BE REMOVED.  IT'S THE THIRD BULLET UNDER

12      THE "NOT INFRINGED" CHECKMARK THAT DEALS WITH THIS "COUPLED

13      TO" ISSUE.

14          BUT THAT WAS THE ONLY THING, YOUR HONOR.

10:16:58:21 15          THE COURT:  OKAY.  ALL RIGHT.  LET'S CALL BACK THE

16      JURY.

17          MR. HADJIS:  YOUR HONOR, I APOLOGIZE FOR BEING LATE.

18          (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE PRESENCE OF

19      THE JURY:)

10:18:09:21 20          THE COURT:  OKAY.  WE ARE BACK IN SESSION.  EVERYONE

21      MAY BE SEATED.

22          THE RECORD WILL REFLECT THAT THE JURY IS BACK.

23          LADIES AND GENTLEMEN, I'VE REVIEWED THE REPORTS, AND THE

24      LAST OPINION WITH RESPECT TO THE CONTROLLER AND THE COMPONENT

10:18:23:15 25      HAS BEEN STRUCK.  SO YOU WILL NOT CONSIDER THAT.

10:18:27:06   1           ALL RIGHT.  NEXT QUESTION, MR. HADJIS?

2               **MR. HADJIS:**  THANK YOU, YOUR HONOR.

3           RYAN, IF YOU COULD MOVE FORWARD TO SLIDE DDX5-13.

4               (DEMONSTRATIVE PUBLISHED TO JURY.)

10:18:43:15   5               **MR. HADJIS:**  THANK YOU.

6   **Q.**  DR. VAHID, IN ADDITION TO THE LACK OF A PLURALITY OF

7   REGISTERS AS REQUIRED BY THE CLAIM, DO YOU HAVE ANY OTHER

8   OPINIONS OR REASONS AS TO WHY YOU BELIEVE THE FREESCALE

9   PRODUCTS DO NOT INFRINGE CLAIM 11 OF THE '331 PATENT?

10:19:03:21  10   **A.**  YES.  THE CONTROLLER IS SUPPOSED TO BE COUPLED IN ORDER TO

11   IDENTIFY A CLOCK FREQUENCY REQUIREMENT.

12               **MR. DOWD:**  OBJECTION, YOUR HONOR.

13   **BY MR. HADJIS:**

14   **Q.**  DOCTOR --

10:19:14:09  15               **MR. DOWD:**  THIS IS THE OPINION THAT WE WERE JUST --

16   THAT WAS JUST STRICKEN.

17   **BY MR. HADJIS:**

18   **Q.**  DR. VAHID, LOOKING --

19               **MR. DOWD:**  I WOULD ASK TO STRIKE THAT PORTION.

10:19:20:27  20               **THE COURT:**  IT'S STRICKEN.

21               **THE WITNESS:**  APOLOGIES.  THAT'S FROM THE CLAIM

22   LANGUAGE, BUT OKAY.

23   **BY MR. HADJIS:**

24   **Q.**  LOOKING AT 5-13 IN FRONT OF YOU, RYAN HAS DISPLAYED IT.

10:19:31:24  25   **A.**  YEAH.

VAHID – DIRECT / HADJIS

10:19:32:09 1   Q.  LET ME -- LET ME DRAW YOUR ATTENTION TO THAT ONE AND ASK

2   YOU IF THERE ARE ANY OTHER REASONS YOU BELIEVE THAT THE

3   FREESCALE PRODUCTS DO NOT INFRINGE CLAIM 11 OF THE '331

4   PATENT?

10:19:43:27 5   A.  SURE.  THERE -- THERE'S SUPPOSED TO BE A CLOCK FREQUENCY

6   REQUIREMENT.  THOSE ARE ACCUSED TO BE STORED IN THE FSVAI BITS

7   OF THE ACCUSED PRODUCTS.  HOWEVER, THOSE FSVAI BITS DO NOT

8   STORE A CLOCK FREQUENCY REQUIREMENT.

9   Q.  WHY NOT?

10:20:06:03 10  A.  IF WE LOOK AT THIS TABLE HERE, IT EXPLAINS WHAT THE FOUR

11  POSSIBLE MEANINGS OF THE FSVAI BITS ARE.  SO THOSE -- THOSE

12  TWO BITS CAN HAVE FOUR POSSIBLE COMBINATIONS.  SO THEY CAN BE

13  00, THEY CAN BE 01; THEY CAN BE 10; AND THEY CAN BE 11.

14      AND THIS TABLE EXPLAINS WHAT EACH OF THOSE FOUR

10:20:34:12 15  COMBINATIONS MEANS.

16      SO THE FIRST COMBINATION IS 00.  AND THAT BASICALLY MEANS

17  THERE'S NO INTERRUPT BEING GIVEN TO THE PROCESSOR SO NOTHING

18  IS GOING TO CHANGE.

19      THE SECOND COMBINATION ASKS THAT THE FREQUENCY BE

10:21:00:00 20  INCREASED.  PLEASE GO UP.

21      THE THIRD COMBINATION, THE 10, ASKS THAT THE FREQUENCY BE

22  DECREASED.  PLEASE GO DOWN.

23      AND THE LAST COMBINATION, THE 11, ASKS THAT THE FREQUENCY

24  GO UP QUICKLY.

10:21:21:03 25      SO THOSE COMBINATIONS ARE BASICALLY UP AND DOWN.  A CLOCK

10:21:30:18  1    FREQUENCY REQUIREMENT IS A FREQUENCY.

2              **MR. DOWD:**  OBJECTION, YOUR HONOR.  THIS IS PRETRIAL

3    ORDER NO. 3, WHICH IS DOCKET 476.  THIS ISSUE WAS ADDRESSED

4    STARTING AT PAGE 6, AND ON 7, YOUR HONOR'S TABLE, ENTRY 5, AND

10:22:15:03  5    THEN ON PAGE 12 AT LINES 14 THROUGH 22.

6        AND SPECIFICALLY WITH RESPECT TO THAT LAST ANSWER, IN THE

7    REPORT THAT APPEARS IN PARAGRAPHS 326 --

8                   (PAUSE IN THE PROCEEDINGS.)

9              **MR. DOWD:**  I BELIEVE IT'S MOST PARTICULARLY 326, BUT

10:22:48:27 10   I'M LOOKING TO CHECK THE OTHERS.

11       SO WE WOULD ASK THAT THAT BE STRICKEN.

12             **THE COURT:**  MR. HADJIS?

13                  (PAUSE IN THE PROCEEDINGS.)

14             **THE COURT:**  MY UNDERSTANDING OF THE OBJECTION IS ONLY

10:23:52:03 15   THE TESTIMONY WITH RESPECT TO THE LAST QUESTION?

16             **MR. DOWD:**  CORRECT, YOUR HONOR.

17             **THE COURT:**  WHICH SEEMS TO BE PARAGRAPH 326, THE LAST

18   SENTENCE, WHICH IS NOT OPERATIVE HERE.

19             **MR. HADJIS:**  YOUR HONOR, WE WOULD POINT TO THE

10:24:12:18 20   REBUTTAL REPORT AT PARAGRAPH 329.

21             **THE COURT:**  LOOK AT THE LAST SENTENCE OF 326 IN THE

22   REBUTTAL REPORT.

23                  (PAUSE IN THE PROCEEDINGS.)

24             **MR. HADJIS:**  I SEE IT, YOUR HONOR.

10:24:42:27 25             **THE COURT:**  THAT'S NOT OPERATIVE HERE.

10:24:44:21  1            **MR. HADJIS:**  EXCUSE ME?

2            **THE COURT:**  IT'S NOT OPERATIVE HERE.

3            **MR. HADJIS:**  OKAY.

4            **THE COURT:**  THE LAST OPINION IS STRICKEN.

10:24:53:15  5            **MR. DOWD:**  THANK YOU, YOUR HONOR.

6   **BY MR. HADJIS:**

7   **Q.**  DR. VAHID, YOU HAVE INDICATED THAT THE FSVAI BITS DON'T

8   REPRESENT A CLOCK FREQUENCY REQUIREMENT, CORRECT?

9            **MR. DOWD:**  OBJECTION, YOUR HONOR.  THAT'S GOING RIGHT

10:25:22:06 10   BACK INTO THE ISSUE.

11            **MR. HADJIS:**  NO, I'M NOT.  I'M JUST LEAVING IT RIGHT

12   THERE.

13            **MR. DOWD:**  THE REASON WHY IT HAS JUST BEEN STRICKEN,

14   YOUR HONOR.

10:25:39:18 15            **THE COURT:**  WELL, 329 IS STILL OPERATIVE.

16            **MR. DOWD:**  BUT, YOUR HONOR, IF MR. HADJIS WANTS TO

17   REPHRASE AND DIRECT TO 329, THAT WOULD BE ACCEPTABLE.

18            **THE COURT:**  ALL RIGHT.  YOU CAN REPHRASE, MR. HADJIS.

19               (PAUSE IN THE PROCEEDINGS.)

10:26:44:03 20   **BY MR. HADJIS:**

21   **Q.**  DR. VAHID?

22   **A.**  YES.

23   **Q.**  I'D LIKE TO ASK YOU A FEW QUESTIONS ABOUT THE OPERATION OF

24   THE PRODUCTS IN CONNECTION WITH THE FSVAI BITS.

10:26:55:27 25   **A.**  SURE.

VAHID – DIRECT / HADJIS

10:26:59:03  1    Q.   THE FSVAI BITS MAY INDICATE THAT THE CLOCK FREQUENCY

2    SHOULD BE INCREASED OR DECREASED EVEN IF THE PROCESSOR IS

3    ALREADY RUNNING AT THE MAXIMUM OR MINIMUM FREQUENCY, CORRECT?

4    A.   THAT'S RIGHT.

10:27:18:24  5         MR. DOWD:  OBJECTION.

6         THE COURT:  OVERRULED.  AS TO THE FORM.  IT'S

7    OVERRULED, MR. DOWD.

8         MR. DOWD:  THANK YOU, YOUR HONOR.

9    BY MR. HADJIS:

10:27:35:09 10    Q.   WHEN THE FSVAI BITS ARE SET AT 10, THAT SETTING WILL

11    INDICATE THAT THE CLOCK FREQUENCY SHOULD BE DECREASED EVEN

12    WHEN THE ACCUSED CHIPS ARE RUNNING AT THEIR SLOWEST POSSIBLE

13    SPEED, CORRECT?

14    A.   YEAH, THAT'S RIGHT.  IF THEY ARE 10, THAT'S ASKING FOR THE

10:28:04:06 15    FREQUENCY TO GO DOWN.  BUT THE PROCESSOR MAY ALREADY BE AT ITS

16    LOWEST FREQUENCY, SO IT'S ASKING TO GO DOWN, BUT THE PROCESSOR

17    IS ALREADY AT ITS LOWEST FREQUENCY.

18    Q.   WHAT HAPPENS IN THAT EVENT?

19    A.   THERE WOULD BE NO -- NO CHANGE, I BELIEVE.

10:28:23:00 20    Q.   WHEN THE FSVAI BITS ARE SET TO 01 OR 11, WHAT IS THE

21    INDICATION THAT SHOULD HAPPEN WITH REGARD TO THE OPERATION OF

22    THE PRODUCTS?

23    A.   SO THAT'S ASKING THAT FREQUENCY BE INCREASED.  SO 01 ASKS

24    THAT IT BE INCREASED, AND 11 ASKS THAT IT BE INCREASED

10:28:46:00 25    IMMEDIATELY.

VAHID - DIRECT / HADJIS

10:28:48:24  1   **Q.**  WHAT HAPPENS WHEN THE BITS, THE FSVAI BITS, ARE SET TO 01

2   OR 11 AND THE CHIPS ARE RUNNING AT THEIR MAXIMUM FREQUENCY?

3   **A.**  SO OBVIOUSLY THEY WOULDN'T BE ABLE TO GO ANY HIGHER.  SO

4   IF THE FSVAI BITS ARE REQUESTING THAT THE FREQUENCY BE

10:29:07:03  5   INCREASED BUT THE PROCESSOR IS ALREADY RUNNING AT ITS MAXIMUM

6   VALUE, THEN IT COULD NOT MAKE ANY CHANGE IN RESPONSE TO THAT.

7   **Q.**  YOU KNOW THESE CONDITIONS AS, I BELIEVE YOU'VE TERMED THEM

8   IN THE PAST, "FALSE POSITIVES"?

9   **A.**  THAT'S RIGHT.

10:29:32:03  10   **Q.**  WHAT HAPPENS WHEN FALSE POSITIVES -- WHAT'S THE

11   SIGNIFICANCE OF FALSE POSITIVES TO YOUR OPINION?

12   **A.**  SO THOSE FALSE POSITIVES SHOW THAT THESE FSVAI BITS ARE

13   NOT A CLOCK FREQUENCY REQUIREMENT, THAT THERE'S A DIFFERENCE

14   BETWEEN WHAT THESE BITS ARE ASKING FOR, WHICH IS UP OR DOWN,

10:30:00:21  15   AND WHAT WOULD BE A CLOCK FREQUENCY REQUIREMENT.

16   **Q.**  WHY?

17   **A.**  WELL, IT'S LIKE A -- LIKE AN ELEVATOR.  YOU HAVE UP/DOWN

18   BUTTONS, BUT THOSE DON'T TELL YOU WHAT FLOOR TO GO TO.

19   **Q.**  AND CAN YOU USE YOUR ELEVATOR ANALOGY TO DESCRIBE THE

10:30:20:21  20   FALSE POSITIVES THAT YOU'RE REFERENCING IN CONNECTION WITH THE

21   OPERATION OF THE FREESCALE I.MX CHIPS?

22   **A.**  SURE.  YOU KNOW, A FLOOR REQUIREMENT MIGHT BE I WANT TO GO

23   TO THE SEVENTH FLOOR, BUT UP/DOWN JUST SAYS, I WANT TO GO UP,

24   I WANT TO GO DOWN.  IF YOU'RE ALREADY ON THE TOP FLOOR, AND

10:30:41:09  25   YOU CAN, YOU KNOW, STILL PRESS THE UP BUTTON, THAT'S CLEARLY

VAHID – DIRECT / HADJIS

10:30:45:03  1    NOT A FLOOR REQUIREMENT.  THAT'S CLEARLY NOT TELLING YOU WHAT

2    FLOOR TO GO TO.

3        SO THERE'S A –– THERE'S A BIG DIFFERENCE BETWEEN JUST

4    SAYING I WOULD LIKE YOU TO GO UP, I'D LIKE YOU TO GO DOWN

10:30:54:06  5    VERSUS SAYING WHERE YOU WANT TO GO.

6            **MR. HADJIS:**  RYAN, I'D LIKE YOU TO TURN BACK TO

7    SLIDE 5-10 OF DR. VAHID'S PRESENTATION.

8                (DEMONSTRATIVE PUBLISHED TO JURY.)

9    **BY MR. HADJIS:**

10:31:14:09 10   **Q.**  DR. VAHID, I WANTED TO ASK YOU A FEW QUESTIONS JUST TO

11   MAKE WHAT YOU'VE DESCRIBED HERE A LITTLE CLEARER FOR THE JURY.

12   **A.**  SURE.

13   **Q.**  BECAUSE I UNDERSTAND YOU TO HAVE IDENTIFIED SO FAR TWO

14   REASONS THAT THE FREESCALE PRODUCTS DO NOT INFRINGE THE '331

10:31:34:24 15   PATENT; IS THAT RIGHT?

16   **A.**  THAT'S CORRECT.

17   **Q.**  ONE REASON IS ONE REGISTER, NOT A PLURALITY IN CONNECTION

18   WITH THE OPERATION THAT WE'RE TALKING ABOUT?

19   **A.**  THAT'S RIGHT.  ONE REASON IS THAT THOSE TWO FSVAI BITS ARE

10:31:49:27 20   TWO BITS IN A REGISTER AND NOT A PLURALITY OF REGISTERS.

21   **Q.**  AND AS THE DOCUMENT SAYS, THE REGISTER IS THE ENTIRE

22   32-BIT BOX THAT'S IDENTIFIED ON YOUR 5-10 SLIDE?

23   **A.**  THAT'S RIGHT.

24   **Q.**  NOW, SECOND REASON, THE FSVAI BITS THEMSELVES DON'T

10:32:13:18 25   PROVIDE A CLOCK FREQUENCY REQUIREMENT.

10:32:16:15  1    **A.**  THAT'S RIGHT.  IF YOU LOOK AT THE CLAIM ON THE LEFT, THE

2    THIRD PORTION --

3        MAYBE RYAN COULD HIGHLIGHT "CLOCK FREQUENCY REQUIREMENT"

4    IN THAT THIRD PARAGRAPH.

10:32:30:03  5                (DEMONSTRATIVE PUBLISHED TO JURY.)

6            **THE WITNESS:**  YOU CAN SEE THAT THERE NEEDS TO BE A

7    CLOCK FREQUENCY REQUIREMENT, AND AS I JUST EXPLAINED, THE

8    FSVAI BITS SIMPLY DESCRIBE WHETHER TO GO UP OR DOWN, BUT THEY

9    DON'T INDICATE A CLOCK FREQUENCY REQUIREMENT.

10:32:44:24  10   **BY MR. HADJIS:**

11   **Q.**  SO NOT A PLURALITY OF REGISTERS AND EVEN THE REGISTER THAT

12   THEY'RE POINTING TO DOES NOT CONTAIN A CLOCK FREQUENCY

13   REQUIREMENT.

14            **MR. DOWD:**  OBJECTION, FORM, YOUR HONOR.

10:33:02:00  15           **THE COURT:**  SUSTAINED.

16            **MR. HADJIS:**  RYAN, I'D LIKE YOU TO TURN TO

17   SLIDE 5-14.

18                (DEMONSTRATIVE PUBLISHED TO JURY.)

19   **BY MR. HADJIS:**

10:33:40:18  20   **Q.**  DR. VAHID, WHAT ARE YOU INTENDING TO ILLUSTRATE WITH THIS

21   SLIDE?

22   **A.**  THE TWO REASONS -- IN FACT, I THINK --

23            **THE WITNESS:**  DOES THE NEXT SLIDE, RYAN, HAVE --

24                (DEMONSTRATIVE PUBLISHED TO JURY.)

10:33:50:18  25           **THE WITNESS:**  THERE YOU GO.

10:33:51:24  1        THERE ARE TWO VERY IMPORTANT REASONS WHY THE ACCUSED

2    PRODUCTS DO NOT INFRINGE CLAIM 11.  ALL OF THESE LIMITATIONS

3    ARE SUPPOSED TO BE MET, BUT TWO OF THEM ARE NOT.  ONE OF THEM

4    IS THE PLURALITY OF REGISTERS.  WE'VE SEEN THERE'S ONLY ONE

10:34:07:21  5    REGISTER, AND PLURALITY REQUIRES TWO.

6        THE OTHER REASON IS THAT THERE NEEDS TO BE A CLOCK

7    FREQUENCY REQUIREMENT.  AND WE'VE SEEN THERE'S NOT.  THERE'S

8    JUST UP OR DOWN.

9    **BY MR. HADJIS:**

10:34:21:18 10   **Q.**  WHAT'S THE RELATIONSHIP BETWEEN THE CLOCK FREQUENCY

11   REQUIREMENT AND THE PLURALITY OF REGISTERS, IF ANY, AS

12   REQUIRED BY THE CLAIM?

13   **A.**  IF WE LOOK AT THE LAST PARAGRAPH OF THAT CLAIM, IT

14   INDICATES THAT THE PLURALITY OF REGISTERS STORE INFORMATION

10:34:41:21 15   INDICATING THE CLOCK FREQUENCY REQUIREMENT.

16   **Q.**  AND HOW DOES THAT RELATE TO THE NON-INFRINGEMENT OPINIONS

17   THAT YOU'VE GIVEN?

18   **A.**  SO BECAUSE NEITHER OF THESE REQUIREMENTS ARE MET, I DON'T

19   BELIEVE THAT THE I.MX PRODUCTS INFRINGE THIS CLAIM.  THERE ARE

10:35:05:12 20   SIGNIFICANT DIFFERENCES.

21        **MR. HADJIS:**  RYAN, IF YOU COULD TURN TO THE NEXT

22   PAGE, 5-15, OF DR. VAHID'S PRESENTATION.

23            (DEMONSTRATIVE PUBLISHED TO JURY.)

24   **BY MR. HADJIS:**

10:35:16:03 25   **Q.**  AS YOU CAN SEE, WE'D LIKE TO TURN TO VALIDITY, DR. VAHID.

10:35:20:12  1    **A.**  SURE.

2              **MR. HADJIS:**  RYAN, PLEASE TURN TO 5-16.

3              (DEMONSTRATIVE PUBLISHED TO JURY.)

4    **BY MR. HADJIS:**

10:35:26:15  5    **Q.**  DR. VAHID, ARE YOU FAMILIAR WHAT'S ILLUSTRATED ON THIS

6    PORTION OF YOUR PRESENTATION OR ON THIS SLIDE OF YOUR

7    PRESENTATION?

8    **A.**  YEAH.  THIS IS THE HALEPETE PATENT BY TRANSMETA.

9    **Q.**  DO YOU BELIEVE THAT THE '331 PATENT IS VALID?

10:35:44:18 10    **A.**  NO, I DON'T.  THERE WAS WORK BEFORE THAT MET -- DID ALL

11    THE SAME THINGS.

12    **Q.**  AND WHAT WORK, IN YOUR OPINION, HAS BEEN DONE BEFORE THE

13    '331 PATENT THAT PREDATES IT?

14    **A.**  WELL, THIS HALEPETE PATENT FROM TRANSMETA IS ONE.  IT IS

10:36:09:21 15    DATED JANUARY 2000.  AND I BELIEVE THE '331 WAS AUGUST 2001,

16    SO A YEAR AND A HALF LATER.

17    **Q.**  WHY DO YOU BELIEVE THAT THIS WORK THAT PREDATES THE '331

18    PATENT INVALIDATES CLAIM 11?

19    **A.**  IT CONTAINS -- IT DESCRIBES ALL OF THE REQUIRED PARTS OF

10:36:31:24 20    CLAIM 11.

21    **Q.**  WHEN WAS THE HALEPETE PATENT FILED?

22    **A.**  THIS WAS 2000, JANUARY 2000.

23    **Q.**  AND DO YOU RECALL WHEN THE '331 PATENT WAS FILED?

24    **A.**  YEAH, THAT WAS AUGUST 2001, A YEAR AND A HALF LATER.

10:36:56:12 25    **Q.**  OKAY.  DR. VAHID, I'M GOING TO ASK RYAN TO MOVE TO

VAHID – DIRECT / HADJIS

10:36:59:03  1    SLIDE 17 OF YOUR PRESENTATION.

2    **A.**  OKAY.

3    **Q.**  AND ALLOW YOU TO EXPLAIN WHAT'S ILLUSTRATE –– ILLUSTRATED

4    HERE AND WHY THE HALEPETE PATENT INVALIDATES CLAIM 11 OF THE

10:37:11:12  5    '331 PATENT.

6    **A.**  SURE.  ON THE LEFT, I'VE SHOWN CLAIM 11 AGAIN.  AND ON THE

7    RIGHT, I'VE SHOWN A FIGURE FROM THE HALEPETE PATENT.  THIS IS

8    FIGURE 1 FROM THE HALEPETE PATENT.

9        ON THE LEFT, IF WE LOOK AT THE FIRST PARAGRAPH WITH THE

10:37:30:24 10    GREEN CHECKMARK NEXT TO IT, I'VE BOLDED ONE OF THE FIRST

11    IMPORTANT ITEMS THAT NEEDS TO BE THERE, WHICH IS THE

12    PROCESSOR.  AND ON THE RIGHT, I'VE BOLDED THE BOX GOING AROUND

13    FIGURE 1 THERE, THE PROCESSOR, IN THE DARKER BLACK BOX THERE.

14        ON THE LEFT, I'VE HIGHLIGHTED ANOTHER IMPORTANT ITEM,

10:37:54:18 15    WHICH IS A CLOCK SIGNAL THAT OPERATES AT A PLURALITY OF

16    FREQUENCIES, SO IT CHANGES FREQUENCY.

17        AND ON THE RIGHT, I'VE SHOWN IN THE FIGURE 1 FROM HALEPETE

18    A CLOCK SIGNAL JUST AS SUCH.  I'VE COLORED IT IN GREEN.  IT'S

19    CALLED THE CORE CLOCK IN THE FIGURE.  AND WE CAN SEE IT COMES

10:38:16:21 20    FROM A PROGRAMMABLE FREQUENCY GENERATOR WHICH CHANGES THE

21    FREQUENCY.  IT'S A PLURALITY OF FREQUENCIES.

22        SO THAT FIRST PART OF CLAIM 11 IS MET BY THE HALEPETE

23    PATENT.

24    **Q.**  DR. VAHID, BEFORE WE MOVE ON, I SEE SOME TEXT UNDER THE

10:38:38:24 25    FIGURE THAT YOU'RE ILLUSTRATING ON THE RIGHT-HAND SIDE OF

VAHID – DIRECT / HADJIS

10:38:41:06  1   SLIDE 5-17.  WHAT IS THAT TEXT?

2   **A.**  THAT TEXT DESCRIBES THE -- THAT TEXT IS FROM THE HALEPETE

3   PATENT, AND IT'S DESCRIBING THE FIGURE.

4   **Q.**  DR. VAHID, I'D LIKE TO REFER TO YOU YOUR EXHIBIT BINDER.

10:39:19:12  5   I'D LIKE TO ASK YOU TO PAGE TO DTX0016.

6   **A.**  (REVIEWING DOCUMENT.)

7      OKAY.  I'M THERE.

8   **Q.**  ARE YOU FAMILIAR WITH THE DOCKET -- DOCUMENT AT

9   TAB DTX0016 OF YOUR EXHIBIT BINDER?

10:39:58:18  10   **A.**  YES.  THIS IS THE HALEPETE PATENT.

11   **Q.**  AND IS THIS THE SAME HALEPETE PATENT THAT YOU'RE OPINING

12   ON RIGHT NOW?

13   **A.**  YES, THAT'S RIGHT.

14        **MR. HADJIS:**  YOUR HONOR, I'D LIKE TO OFFER DTX0016

10:40:12:24  15   INTO EVIDENCE.

16          **THE COURT:**  IS THERE AN OBJECTION?

17          **MR. DOWD:**  NO OBJECTION, YOUR HONOR.

18          **THE COURT:**  IT'S ADMITTED.

19      (DEFENDANT'S EXHIBIT DTX0016 WAS RECEIVED IN EVIDENCE.)

10:40:21:21  20        **MR. HADJIS:**  RYAN, IF YOU CAN DISPLAY THE HALEPETE

21   PATENT FOR US.

22              (EXHIBIT PUBLISHED TO JURY.)

23        **MR. HADJIS:**  THANK YOU.

24   **Q.**  SO JUST TO BE CLEAR, IF YOU COULD, AS AN EXAMPLE SO THE

10:40:38:27  25   JURY UNDERSTANDS FROM YOUR ILLUSTRATIONS IN YOUR PRESENTATION

10:40:44:18  1   WHAT THAT CONNECTS TO IN THE HALEPETE PATENT, I'D LIKE YOU TO

2   IDENTIFY IN THE PATENT WHERE THE FIGURE IS AND WHERE THE TEXT

3   IS THAT YOU'VE CITED IN THIS PARTICULAR SLIDE, 5-17 OF YOUR

4   DEMONSTRATIVES.

10:41:00:06  5   **A.**   SURE.  IF YOU LOOK AT THE PATENT, THEY PUT ALL THE FIGURES

6   NEAR THE BEGINNING.

7        SO FIGURE 1 WOULD BE ON THE THIRD PAGE.

8                 (EXHIBIT PUBLISHED TO JURY.)

9            **THE WITNESS:**  SO THERE YOU GO.

10:41:12:06 10       SO THAT'S THE FIGURE THAT I EXCERPTED IN MY SLIDE.

11       AND THEN THE DISCUSSION OF THAT FIGURE APPEARS LATER.  IT

12   LOOKS LIKE IT'S -- WELL, IT DOESN'T HAVE A PAGE NUMBER.

13   COLUMN 2.

14                 (EXHIBIT PUBLISHED TO JURY.)

10:41:29:03 15           **THE WITNESS:**  YEAH, THERE WE GO.  IT'S ON THE BOTTOM

16   RIGHT THERE IS A DESCRIPTION OF THE FIGURE.

17                 (EXHIBIT PUBLISHED TO JURY.)

18           **THE WITNESS:**  AND SO I EXCERPTED PART OF THAT AND PUT

19   IT IN MY SLIDE.

10:41:39:18 20   **BY MR. HADJIS:**

21   **Q.**   AND IS THAT THE ENTIRE DESCRIPTION OF THE FIGURE IN THE

22   HALEPETE PATENT, OR IS THERE MORE?

23   **A.**   OH, THERE'S PLENTY OF DISCUSSION.  THE PATENT GOES THROUGH

24   MANY DIFFERENT WAYS OF DISCUSSING THE FIGURE, AND SO I'VE

10:41:54:24 25   EXCERPTED SOME OF THE RELEVANT PARTS.  BUT THERE'S -- IT'S A

10:42:00:09  1    LARGE PATENT.  THERE'S OBVIOUSLY MORE.

         2    **Q.**  GREAT.  AND WILL WE SEE MORE AS YOU CONTINUE TO DISCUSS

         3    THIS PATENT?

         4    **A.**  I WILL HAVE SOME ADDITIONAL EXCERPTS ON THE ADDITIONAL

10:42:08:27  5    SLIDES.

         6    **Q.**  EXCELLENT.  THANK YOU.

         7         **MR. HADJIS:**  RYAN, IF YOU CAN TURN BACK TO THE

         8    PRESENTATION, AND I'D LIKE TO MOVE TO 5-18.

         9    **Q.**  UNLESS YOU HAVE MORE TO SAY ABOUT 5-17, DR. VAHID?

10:42:26:09 10    **A.**  NO, NO, WE FINISHED THAT ONE.

        11    **Q.**  ALL RIGHT.  SO MOVING TO 5-18, PLEASE EXPLAIN TO THE JURY

        12    WHAT YOU'RE ILLUSTRATING HERE WITH REGARD TO THE HALEPETE

        13    PATENT AND THE CLAIM 11 OF THE '331 PATENT.

        14    **A.**  SURE.  SO THE NEXT IMPORTANT PART OF THE CLAIM IS THAT

10:42:47:00 15    THERE BE COMPONENTS THAT RECEIVE THE CLOCK SIGNAL.  AND SO ON

        16    THE RIGHT, I HAVE CIRCLED IN BLUE THE COMPONENT THAT RECEIVES

        17    THAT CLOCK SIGNAL THAT I HAD DRAWN IN GREEN EARLIER.  AND WE

        18    CAN SEE THAT PROCESSING UNIT 16 -- IT'S LABELED AT THE TOP OF

        19    THE BLUE BOX -- DOES RECEIVE THAT CLOCK SIGNAL.  AND DOWN AT

10:43:09:18 20    THE BOTTOM, I'VE PROVIDED ONE OF THE EXCERPTS FROM THE

        21    HALEPETE PATENT THAT REFERS TO THAT BLUE BOX, THAT UNIT --

        22    PROCESSING UNIT 16.

        23    **Q.**  AND WHAT DOES WHAT YOU'RE ILLUSTRATING HAVE TO DO WITH THE

        24    CLAIM?

10:43:32:06 25    **A.**  SO THAT SHOWS THAT THE HALEPETE PATENT SATISFIES THAT PART

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

VAHID – DIRECT / HADJIS

10:43:35:15 1    OF THE CLAIM.

2    **Q.**  IS THAT SHOWN IN THE FIGURE?

3    **A.**  YEAH, I PUT THE GREEN CHECK BOX NEXT TO THAT PART OF THE

4    CLAIM TO INDICATE THAT THE HALEPETE PATENT SATISFIES THAT PART

10:43:48:03 5    OF THE CLAIM.

6    **Q.**  AND DOES THE TEXT OF THE PATENT ALSO EXPLAIN WHAT YOU'RE

7    POINTING TO?

8    **A.**  YES, IT DOES.

9    **Q.**  AND YOU'VE SHOWN THAT IN THIS SLIDE?

10:43:58:24 10    **A.**  YES, I'VE SHOWN ONE EXCERPT THAT'S RELEVANT DOWN AT THE

11    BOTTOM THERE.  IT SAYS, "A CORE CLOCK FOR OPERATION OF THE

12    PROCESSING UNIT 16."

13    **Q.**  THANK YOU.

14        **MR. HADJIS:**  RYAN, PLEASE TURN TO DDX5-19.

10:44:18:24 15        (DEMONSTRATIVE PUBLISHED TO JURY.)

16    **BY MR. HADJIS:**

17    **Q.**  DR. VAHID, CAN YOU EXPLAIN WHAT YOU'RE ILLUSTRATING HERE?

18    **A.**  SURE.  SO, AGAIN, LOOKING AT THE CLAIM ON THE LEFT SIDE,

19    THERE'S A THIRD PARAGRAPH THERE AS SHOWN.  AND THAT REFERS TO

10:44:32:18 20    A CONTROLLER.  AND SO I HAVE HIGHLIGHTED THE CONTROLLER ON THE

21    RIGHT IN RED.  AND SO THAT IS A -- A RED BOX THAT'S GOT A --

22    IT'S NUMBERED 18 ON THE BOTTOM RIGHT OF THAT RED BOX.

23        AND THEN I'VE ALSO EXCERPTED FROM THE PATENT SOME OF THE

24    TEXT THAT EXPLAINS WHAT THAT UNIT DOES.  SO -- AND I'VE --

10:44:59:18 25    I'VE PUT IN RED THE TEXT FROM THE PATENT THAT REFERS TO THAT

VAHID – DIRECT / HADJIS

10:45:04:09  1    CONTROLLER.

2         YOU CAN SEE THAT IN THE HALEPETE PATENT, THE CONTROLLER IS

3    CALLED A MASTER CONTROL UNIT.  AND IT'S NUMBERED 18 IN THE

4    DIAGRAM.

10:45:18:18  5    Q.  DOES THE CONTROLLER THAT'S DESCRIBED IN THE HALEPETE

6    PATENT CARRY OUT THE FUNCTION THAT'S IN THE CLAIM HERE

7    IDENTIFYING A CLOCK FREQUENCY REQUIREMENT OF THE PROCESSOR?

8              **MR. DOWD:**  OBJECT TO FORM.

9              **THE COURT:**  OVERRULED.

10:45:43:27  10             **THE WITNESS:**  SO THE CONTROLLER IS ON THE –– IN THE

11   CLAIM LANGUAGE, IT NEEDS TO BE COUPLED TO AT LEAST ONE OF THE

12   COMPONENTS TO IDENTIFY A CLOCK FREQUENCY REQUIREMENT OF THE

13   PROCESSOR.  AND THE PROCESSING –– THE MASTER CONTROL UNIT,

14   NUMBER 18 ON THE RIGHT, IS COUPLED IN THAT WAY, AND IT'S

10:46:06:06  15   COUPLED THROUGH THE MASTER REGISTERS WHICH I HAVE HIGHLIGHTED

16   IN PURPLE.

17        ALSO, THE MASTER REGISTERS ARE DESCRIBED IN ANOTHER

18   EXCERPT DOWN AT THE BOTTOM OF THE FIGURE –– I'M SORRY –– OF

19   THE SLIDE.

10:46:28:12  20   **BY MR. HADJIS:**

21   Q.  OKAY.  AND IS THERE AN IDENTIFICATION OF A CLOCK FREQUENCY

22   REQUIREMENT OF THE PROCESSOR BY WHAT'S DESCRIBED IN HALEPETE?

23   **A.**  YES, THERE IS.

24   Q.  DO YOU GET TO THAT LATER?  OR CAN YOU DESCRIBE IT HERE?

10:46:44:21  25   **A.**  I GET TO THAT WHEN I DISCUSS THE MASTER REGISTERS.

VAHID – DIRECT / HADJIS

10:46:48:06  1    **Q.**  OKAY.

2    **A.**  SO THE LAST PARAGRAPH THERE TALKS ABOUT THE PLURALITY OF

3    REGISTERS STORING THE CLOCK FREQUENCY REQUIREMENT, AND WHEN I

4    GET THERE, I'LL --

10:46:55:18  5    **Q.**  ALL RIGHT.  I WON'T RUSH YOU.

6    **A.**  ALL RIGHT.

7    **Q.**  WE'LL GO THROUGH.

8         **MR. HADJIS:**  NEXT SLIDE, PLEASE, RYAN.

9              (DEMONSTRATIVE PUBLISHED TO JURY.)

10:47:06:18 10   **BY MR. HADJIS:**

11   **Q.**  WHAT DOES THIS SLIDE SHOW WITH REGARD TO WHAT'S DISCLOSED

12   IN THE HALEPETE PATENT AND THE CLAIM OF THE '331 PATENT?

13   **A.**  SO WE'RE MOVING -- MOVING DOWN THE CLAIM AND LOOKING AT

14   ALL THE IMPORTANT PARTS.  AND NOW WE'RE LOOKING AT THIS FOURTH

10:47:22:06 15   SECTION HERE WHICH SAYS THAT THE CONTROLLER MUST BE ADAPTED TO

16   DETERMINE A VOLTAGE REQUIREMENT BASED ON THE CLOCK FREQUENCY

17   REQUIREMENT OF THE PROCESSOR AND TO SEQUENCE A TRANSITION TO A

18   POWER STATE DEFINED BY THE CLOCK FREQUENCY REQUIREMENT AND THE

19   VOLTAGE REQUIREMENT.

10:47:42:15 20        SO THAT CONTROLLER, WHICH I'VE HIGHLIGHTED IN RED, NEEDS

21   TO BE ABLE TO DO ALL THOSE THINGS.  SO WHAT I'VE HIGHLIGHTED

22   DOWN -- WHAT I'VE EXCERPTED DOWN BELOW IS PART OF THE

23   DESCRIPTION OF HOW IT DETERMINES THE VOLTAGE REQUIREMENT.  IT

24   COMPUTES IT.

10:48:03:03 25        AND THEN I'VE SHOWN AN EXCERPT, THE SECOND PARAGRAPH DOWN

VAHID – DIRECT / HADJIS

10:48:07:15 1    THERE, IT STARTS TO EXPLAIN HOW IT SEQUENCES TO A NEW POWER

2    STATE.

3        AND ON THE NEXT SLIDE, IF -- IF WE CAN PROCEED TO THE NEXT

4    SLIDE, THIS IS ANOTHER FIGURE FROM THE HALEPETE PATENT THAT

10:48:24:03 5    EXPLAINS HOW THAT SEQUENCING IS DONE.  AND SO YOU CAN SEE

6    THERE ARE A NUMBER OF STEPS.

7        ON THE LEFT SIDE OF THE FIGURE, THAT'S -- THOSE STEPS ARE

8    BEING DONE BY CONTROL SOFTWARE THAT'S RUNNING IN THE

9    PROCESSING UNIT AS PART OF THE CONTROLLER, AND ON THE RIGHT

10:48:43:27 10   SIDE IS BEING CARRIED OUT BY WHAT'S CALLED THE SEQUENCER,

11   WHICH IS SOME HARDWARE IN THAT UNIT.

12       AND SO ALL TOGETHER, THOSE CARRY OUT THE NECESSARY PARTS

13   OF THAT SECTION OF CLAIM 11.

14   **Q.**  AND THE SECTION TO WHICH YOU REFER IS THE ONE WITH THE

10:49:06:15 15   LOWEST CHECKMARK NEXT TO IT?

16   **A.**  THAT'S RIGHT.

17   **Q.**  SO THE HALEPETE PATENT, AS YOU'VE INDICATED, DETERMINES --

18   OR AT LEAST THE SYSTEM DISCLOSED THERE DETERMINES THE VOLTAGE

19   REQUIREMENT BASED ON A CLOCK FREQUENCY REQUIREMENT OF THE

10:49:26:15 20   PROCESSOR?

21            **MR. DOWD:**  OBJECTION.

22            **THE WITNESS:**  THAT'S RIGHT.

23            **MR. DOWD:**  LEADING.

24            **THE COURT:**  I CAN'T HEAR YOU.

10:49:34:18 25            **MR. DOWD:**  OBJECTION, LEADING, YOUR HONOR.

10:49:35:21  1          THE COURT:  OVERRULED.

2      BY MR. HADJIS:

3      Q.  AND AS YOU'VE TESTIFIED, THE SYSTEM THEN -- AND ALSO

4      SEQUENCES A TRANSITION TO A POWER STATE DEFINED BY THE CLOCK

10:49:44:00  5  FREQUENCY REQUIREMENT AND THE VOLTAGE REQUIREMENT.

6      A.  YES, THAT'S RIGHT.

7      Q.  THE HAL --

8      A.  ALEX, I THINK EARLIER WHEN I WAS TALKING, I REALIZED I

9      SAID "THE PROCESSING UNIT" AT ONE POINT WHEN I MEANT TO SAY

10:49:57:27 10  THE "MASTER CONTROL UNIT."  I JUST REALIZED THAT SO --

11     Q.  EXCELLENT.  AND WITH REGARD TO THE FIGURE, IS THAT WHAT

12     YOU WERE REFERRING TO?

13     A.  ON THE PREVIOUS SLIDE WHEN I WAS TALKING, I BELIEVE I SAID

14     "PROCESSING UNIT" AT SOME POINT THERE.  I MEANT TO SAY "MASTER

10:50:14:18 15  CONTROL UNIT."

16     Q.  AND WHICH ONE IS THE MASTER CONTROL UNIT THAT YOU MEANT TO

17     IDENTIFY?

18     A.  IT'S THE -- IT'S THE RED -- THE RED SQUARE.

19     Q.  OKAY.  NO. 18 --

10:50:25:18 20  A.  YEAH.

21     Q.  -- RED WITHIN 16 BLUE?

22     A.  THAT'S RIGHT.

23     Q.  THANK YOU, DR. VAHID.

24         GOING BACK TO PAGE 21, DOES THE HALEPETE SYSTEM PERFORM

10:50:36:09 25  DVFS?

10:50:40:24  1    **A.**  YES, IT DOES.

2    **Q.**  ALL RIGHT.  LET'S MOVE ON.

3         SLIDE 22.

4              (DEMONSTRATIVE PUBLISHED TO JURY.)

10:50:49:18  5         **THE WITNESS:**  OKAY.  SO WE'RE ALMOST DONE WITH CLAIM

6    11.  WE'RE AT THE LAST SECTION THERE.  AND SO HERE IT

7    INDICATES THAT THE CONTROLLER IS COUPLED TO A -- AT LEAST ONE

8    COMPONENT BY A PLURALITY OF REGISTERS.  AND THOSE PLURALITY OF

9    REGISTERS ARE STORING INFORMATION INDICATING THE CLOCK

10:51:11:00  10   FREQUENCY REQUIREMENT OF THE PROCESSOR.

11        SO IN THE HALEPETE PATENT, IT IS DESCRIBED HOW THE

12   CONTROLLER USES THOSE MASTER REGISTERS TO COMMUNICATE -- TO BE

13   COUPLED WITH THE PROCESSING UNIT 16.  AND I'VE EXCERPTED SOME

14   TEXT AT THE BOTTOM THAT -- THAT DESCRIBES THAT THERE.

10:51:37:18  15        AND THEN ON THE NEXT SLIDE, WE CAN SEE THE DETAILS OF

16   THOSE REGISTERS.

17        AND IF I COULD ASK YOU TO LOOK AT THE BOTTOM REGISTER

18   THERE WHICH IS CALLED THE MASTER CLOCK DIVIDER REGISTER, AND

19   YOU CAN SEE THAT THAT REGISTER HAS 32 BITS.  MAYBE YOU CAN'T

10:52:01:18  20   SEE IT, BUT I'LL EXPLAIN IT.

21        SO ON THE RIGHT, YOU SEE THE NUMBER ZERO AND THEN YOU SEE

22   4, 5, 9, AND ALL THE WAY OVER TO THE LEFT IS 31.  AND SO IF

23   YOU COUNT FROM ZERO TO 31, YOU GOT 32.  AND SO THAT REGISTER

24   HAS 32 BITS.

10:52:21:09  25        AND WE CAN SEE INSIDE THAT REGISTER A NUMBER OF DIFFERENT

VAHID – DIRECT / HADJIS

10:52:24:12  1   VALUES, AND THOSE VALUES INDICATE THE CLOCK FREQUENCY

2   REQUIREMENT.  IT ACTUALLY HAS SEVERAL DIFFERENT VALUES.  SO

3   THE -- THE ONE THAT'S LABELED DRAM 1DIV, THAT INDICATES THE

4   CLOCK FREQUENCY REQUIREMENT FOR THE DRAM, WHICH IS A FORM OF

10:52:48:06  5   MEMORY, COMPUTER MEMORY.

6        AND THE DIV INDICATES THAT WE'RE TAKING THE MAIN CLOCK

7   FREQUENCY, WHICH IS AT A CERTAIN VALUE, AND DIVIDING IT BY THE

8   AMOUNT HERE.  SO IF YOU HAVE A NUMBER AND YOU DIVIDE IT BY

9   ANOTHER NUMBER, YOU GET A NEW NUMBER.  SO THAT INDICATES THE

10:53:08:27 10   CLOCK FREQUENCY REQUIREMENT FOR THE DRAM.

11        THERE IS ANOTHER FIELD NEXT TO IT FOR A SECOND DRAM.

12   THERE'S A THIRD FIELD FOR THE BUS CLOCK.  AND THE FOURTH FIELD

13   WHICH IS CALLED COREMUL IS FOR THE PROCESSOR CORE ITSELF,

14   SO -- SO THESE INDICATE CLOCK FREQUENCY REQUIREMENTS.

10:53:29:21 15        AND THEN WHAT WE CAN SEE ABOVE THAT IS THE MASTER STATUS

16   REGISTER THAT IS A SECOND REGISTER THAT ALSO STORES CLOCK

17   FREQUENCY REQUIREMENT.

18   **BY MR. HADJIS:**

19   **Q.**   THANK YOU, DR. VAHID.

10:53:47:06 20        HOW MANY REGISTERS ARE ILLUSTRATED IN FIGURE 3 OF THE

21   HALEPETE PATENT?

22   **A.**   THERE ARE THREE MASTER REGISTERS ILLUSTRATED.  THE BOTTOM

23   TWO I DESCRIBED ARE THE -- STORE CLOCK FREQUENCY REQUIREMENT

24   INFORMATION.

10:54:03:27 25   **Q.**   DO THESE REGISTERS, THE THREE, MEET THE COURT'S

10:54:07:06  1    CONSTRUCTION FOR A PLURALITY OF REGISTERS?

2    **A.**  YES.  EVEN THE TWO DO, EVEN THE BOTTOM TWO DO.

3    **Q.**  WHY?

4    **A.**  BECAUSE A PLURALITY IS TWO OR MORE.  AND WE CAN CLEARLY

10:54:21:03  5    SEE THAT THERE ARE TWO REGISTERS STORING CLOCK FREQUENCY

6    REQUIREMENT INFORMATION.

7    **Q.**  NOW, I'D LIKE TO TURN BACK TO 5-22 OF YOUR PRESENTATION.

8            (DEMONSTRATIVE PUBLISHED TO JURY.)

9    **BY MR. HADJIS:**

10:54:44:18  10   **Q.**  JUST TO SEW THIS UP FOR THE JURY AS FAR AS THE REGISTERS

11   GO, IS THERE ANYTHING THAT'S ILLUSTRATED IN FIGURE 1 THAT

12   RELATES TO THE THREE REGISTERS YOU JUST TESTIFIED ABOUT?

13   **A.**  SURE.  WE CAN SEE THE MASTER REGISTERS THERE.  THEY ARE

14   CIRCLED IN PURPLE.  AND THOSE CONTAIN THE CLOCK FREQUENCY

10:55:07:24  15   REQUIREMENT.  THERE'S A PLURALITY OF THEM.  WE JUST SAW THAT

16   ON THE SUBSEQUENT SLIDE.  AND THOSE REGISTERS ARE WHAT COUPLE

17   THE CONTROLLER, WHICH IS THE RED BOX, TO THE BLUE BOX.

18   **Q.**  AND HOW, IF IN ANY WAY, IS THE MASTER REGISTERS BOX

19   RELATED TO THE THREE REGISTERS YOU TALKED ABOUT IN FIGURE 3?

10:55:29:03  20   **A.**  OH, WE'RE ZOOMING INTO THAT PURPLE BOX SO IF -- IF WE LOOK

21   AT THAT PURPLE BOX RIGHT NOW.

22           **THE WITNESS:**  AND THEN, RYAN, IF YOU COULD GO TO THE

23   NEXT SLIDE.

24       YOU WOULD -- YOU WOULD CONSIDER THOSE THREE TO BE INSIDE

10:55:41:00  25   THAT PURPLE BOX.

10:55:42:00  1    BY MR. HADJIS:

2    **Q.**  LIKE LIFTING THE HOOD AND LOOKING AT THE ENGINE?

3    **A.**  THAT'S RIGHT.

4         **MR. HADJIS:**  IF YOU CAN TURN TO SLIDE 5-24, RYAN.

10:56:00:12  5         (DEMONSTRATIVE PUBLISHED TO JURY.)

6    BY MR. HADJIS:

7    **Q.**  DR. VAHID, CAN YOU CONTINUE DISCUSSING THE HALEPETE PATENT

8    DISCLOSURE COMPARED TO CLAIM 11 OF THE '331 PATENT?

9    **A.**  SURE.  SO AFTER READING THE HALEPETE PATENT CAREFULLY AND

10:56:12:21 10    LOOKING AT THE CLAIM LANGUAGE, CLAIM 11, AND GOING DOWN EACH

11    REQUIRED ITEM OF CLAIM 11, WE CAN SEE VERY CLEARLY THAT

12    HALEPETE HAS IMPLEMENTED ALL OF THOSE FEATURES THAT ARE

13    NECESSARY IN CLAIM 11.  AND IT WAS IN -- IT WAS PUBLISHED A

14    YEAR AND A HALF BEFORE THE '331, AND THEREFORE, THE HALEPETE

10:56:35:21 15    PATENT INVALIDATES THE '331.

16    **Q.**  IS THERE ANYTHING IN THE CLAIMS, CLAIM 11, THAT'S NOT IN

17    THE -- DISCLOSED IN THE HALEPETE PATENT?

18    **A.**  NO.  ALL THE REQUIRED ITEMS ARE DISCLOSED IN THE HALEPETE

19    PATENT.

10:56:51:03 20    **Q.**  THANK YOU.

21       NOW, BEFORE I ASK RYAN TO MOVE TO THE NEXT SLIDE, I DO

22    WANT TO CHECK SOMETHING TO MAKE SURE WE'RE IN CONFORMANCE WITH

23    ONE OF THE COURT'S RECENT ORDERS.

24    **A.**  SURE.

10:57:09:03 25         **MR. HADJIS:**  YOUR HONOR, MAY I HAVE A SECOND?

10:57:11:18  1              (PAUSE IN THE PROCEEDINGS.)

2        **MR. HADJIS:**  RYAN, IF YOU CAN TURN TO THE NEXT SLIDE,

3    5-26.

4           (DEMONSTRATIVE PUBLISHED TO JURY.)

10:57:32:24  5  **BY MR. HADJIS:**

6  **Q.**  DR. VAHID, I'D LIKE TO ASK YOU WHAT -- WHAT IS ILLUSTRATED

7  IN THIS SLIDE IN CONNECTION WITH YOUR '331 PATENT OPINIONS.

8  **A.**  SURE.  SO THIS SUMMARIZES WHAT WE'VE BEEN TALKING ABOUT.

9  THROUGH MY STUDYING OF THE I.MX PRODUCT, IT'S CLEAR THAT THERE

10:57:55:12 10  IS SEVERAL SIGNIFICANT DIFFERENCES FROM THE '331 CLAIM 11'S

11  REQUIREMENTS.

12    ONE OF THEM IS THAT THERE IS NO PLURALITY OF REGISTERS.

13  THERE'S ONLY TWO BITS IN ONE REGISTER.  AND PLURALITY REQUIRES

14  TWO REGISTERS AT LEAST.

10:58:17:06 15    AND THE OTHER REASON THAT THE I.MX PRODUCTS OF FREESCALE

16  DO NOT INFRINGE THE '331 IS THAT THERE IS NO CLOCK FREQUENCY

17  REQUIREMENT.  THERE'S SIMPLY AN UP/DOWN INDICATION, AND THAT'S

18  DIFFERENT.

19    WITH REGARDS TO VALIDITY, THE HALEPETE PATENT FROM

10:58:38:15 20  TRANSMETA CORPORATION WAS PUBLISHED A GOOD YEAR AND A HALF

21  BEFORE, AND IT COVERS ALL THE REQUIRED ELEMENTS OF CLAIM 11.

22  AND THEREFORE THE '331 IS NOT VALID.

23  **Q.**  DR. VAHID, DID THE U.S. PATENT OFFICE CONSIDER THE

24  HALEPETE PATENT BEFORE GRANTING THE '331 PATENT TO ADI?

10:59:02:12 25        **MR. DOWD:**  OBJECTION.

VAHID – DIRECT / HADJIS

10:59:07:00  1          THE COURT:  WHAT'S THE OBJECTION?

2          MR. DOWD:  TWOFOLD, YOUR HONOR.  ITS BASIS AND IT

3     ALSO RELATES TO YOUR HONOR'S PRETRIAL ORDER ON GETTING INTO

4     PTO MATERIALS.

10:59:21:06  5          THE COURT:  WHAT WAS THE FIRST BASIS?  BOTH OF THESE

6     PATENTS ARE IN EVIDENCE.

7          MR. DOWD:  YES, YOUR HONOR.  THE QUESTION WAS WHAT

8     DID THE PTO DO, WHICH THIS WITNESS HAS NOT PROVIDED AN OPINION

9     IN A REPORT ABOUT.  AND I BELIEVE IN YOUR HONOR'S PRETRIAL

10:59:40:03 10    ORDER NO. 3, THERE IS A --

11          THE COURT:  ALL RIGHT.  REPHRASE THE QUESTION,

12    MR. HADJIS.

13          MR. DOWD:  THANK YOU, YOUR HONOR.

14          MR. HADJIS:  YOUR HONOR, I JUST WANT TO KNOW IF

10:59:50:00 15    THE -- HE REALIZES WHETHER THE PATENT OFFICE CONSIDERED THE

16    HALEPETE.

17          THE COURT:  WELL, I UNDERSTAND WHAT -- THAT'S WHY I'M

18    SAYING THAT YOU CAN REPHRASE IT.  I THINK MY PRETRIAL ORDER

19    THAT HE'S REFERENCING WOULDN'T ALLOW THAT PARTICULAR QUESTION,

11:00:08:18 20    BUT I THINK THAT IT'S --

21          MR. DOWD:  YES, YOUR HONOR.  IF IT'S REPHRASED,

22    THAT'S --

23          THE COURT:  I THINK YOU CAN REPHRASE IT.

24          MR. DOWD:  -- PROBABLY FINE.

11:00:17:15 25          THE COURT:  IT'S THE FORM OF THE QUESTION,

VAHID - DIRECT / HADJIS

```
11:00:18:24  1   MR. HADJIS.

             2        MR. HADJIS:  LET -- I'M GOING TO HAVE TO GET THE

             3   ORDER.  I'M SORRY.  IT'S A SIMPLE QUESTION.

             4             (PAUSE IN THE PROCEEDINGS.)

11:00:30:06  5        MR. HADJIS:  YOUR HONOR, DO YOU KNOW THE DOCKET

             6   NUMBER?

             7     476.  DOCKET NO. 476?

             8        THE COURT:  WELL, I DON'T KNOW WHAT PARTICULAR PAGE

             9   MR. DOWD WAS REFERRING TO.

11:00:59:15 10        MR. HADJIS:  THAT MIGHT BE HELPFUL.

            11        THE COURT:  MR. DOWD, JUST POINT IT OUT TO HIM,

            12   PLEASE.

            13        MR. DOWD:  SURE.

            14             (OFF-THE-RECORD DISCUSSION.)

11:01:23:21 15   BY MR. HADJIS:

            16   Q.  DR. VAHID, YOU'VE READ THE '331 PATENT?

            17   A.  YES, I HAVE.

            18   Q.  YOU'VE LOOKED AT THE COVER OF THE PATENT?

            19   A.  THAT'S RIGHT.

11:01:31:09 20   Q.  AND DO YOU RECALL THAT THERE ARE REFERENCES LISTED ON THE

            21   COVER OF THE '331 PATENT?

            22   A.  YES, I BELIEVE THERE'S A NUMBER OF THEM.

            23   Q.  AND DO YOU KNOW WHY THOSE REFERENCES ARE LISTED ON THE

            24   COVER OF THE '331 PATENT?

11:01:43:24 25        MR. DOWD:  OBJECTION, YOUR HONOR.
```

11:01:45:00  1        THE COURT:  OVERRULED.

2        THE WITNESS:  MY UNDERSTANDING IS THOSE ARE THE

3    REFERENCES THAT THE EXAMINER USED IN DETERMINING WHETHER THERE

4    WAS PRIOR ART.

11:01:53:09  5    BY MR. HADJIS:

6    Q.  OKAY.  NOW, IS THE HALEPETE PATENT THAT YOU'VE JUST OPINED

7    ON LISTED ON THE '331 PATENT?

8    A.  NO, I DON'T BELIEVE IT IS.

9    Q.  ALL RIGHT.  SO LET ME ASK YOU AGAIN WITH THAT IN MIND.

11:02:05:06  10   DID THE PATENT OFFICE CONSIDER THE HALEPETE PATENT --

11        MR. DOWD:  OBJECTION, YOUR HONOR.

12   BY MR. HADJIS:

13   Q.  -- BEFORE GRANTING THE '331 PATENT?

14        MR. DOWD:  OBJECTION, YOUR HONOR.  THIS IS NOT IN THE

11:02:16:09  15   REPORT.

16        THE COURT:  IT'S AN OBVIOUS POINT.  YOU -- OVERRULED.

17        THE WITNESS:  THE HALEPETE PATENT IS NOT LISTED AMONG

18   THE NUMEROUS PATENTS THAT THE EXAMINER HAD LOOKED AT, SO I

19   WOULD CONCLUDE THAT THE EXAMINER WAS NOT AWARE OF THE HALEPETE

11:02:35:06  20   PATENT.

21   BY MR. HADJIS:

22   Q.  THANK YOU, DR. VAHID.

23        MR. HADJIS:  RYAN, CAN YOU TURN TO THE NEXT SLIDE.

24          (DEMONSTRATIVE PUBLISHED TO JURY.)

25

| | |
|---|---|
| 11:02:52:00 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 11:03:05:27 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 11:03:33:06 | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 11:03:42:24 | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| 11:04:05:03 | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| 11:04:19:09 | 25 |

BY MR. HADJIS:

Q.  I'D LIKE TO SWITCH TO THE NEXT PATENT, '753.

A.  SURE.

        MR. HADJIS:  RYAN, IF YOU CAN TURN TO SLIDE 5-28.

            (DEMONSTRATIVE PUBLISHED TO JURY.)

BY MR. HADJIS:

Q.  DR. VAHID, I'D REFER YOU TO JTX004 IN YOUR BINDER.

A.  (REVIEWING DOCUMENT.)

    OKAY.  I FOUND IT.

Q.  HAVE YOU SEEN THAT DOCUMENT BEFORE?

A.  YES.  I'VE STUDIED THIS IN RELATION TO THIS CASE.

Q.  ARE YOU FAMILIAR WITH IT?

A.  YES, I AM.

Q.  WHAT IS IT?

A.  THIS IS THE '753 PATENT FROM SHEAFOR.

Q.  GREAT.

    WHO'S LISTED AS THE ASSIGNEE TO THIS PATENT?

A.  FUSION MICROMEDIA CORPORATION.

Q.  IS MEDIATEK'S NAME ON IT?

A.  NO, IT'S NOT.

Q.  HAVE YOU REVIEWED THE PATENT IN THE CONTEXT OF THE

INFRINGEMENT ALLEGATIONS MADE IN THIS CASE?

A.  YES, I HAVE.

Q.  IN YOUR OPINION, WHAT IS THE LEVEL OF ORDINARY SKILL OF

ONE IN THE ART TECHNOLOGY THAT WOULD WORK WITH TECHNOLOGY

VAHID – DIRECT / HADJIS

11:04:24:06  1   DESCRIBED IN THE '753 PATENT?

2   **A.**  I THINK SOMEBODY WITH A BACHELOR'S DEGREE IN COMPUTER

3   ENGINEERING OR SIMILAR, WITH ABOUT TWO TO FIVE YEARS OF WORK

4   EXPERIENCE.  IF THEY HAD A MASTER'S, MAYBE A LITTLE LESS

11:04:39:24  5   EXPERIENCE.

6   **Q.**  ARE YOU ABLE TO TESTIFY AS A PERSON OF ORDINARY SKILL IN

7   THE ART AS YOU'VE DESCRIBED IT?

8   **A.**  YES.  I HAD THOSE QUALIFICATIONS AT THE TIME THIS PATENT

9   WAS PUBLISHED.

11:04:57:00  10          **MR. HADJIS:**  RYAN, IF YOU COULD MOVE TO THE NEXT

11   SLIDE.

12              (DEMONSTRATIVE PUBLISHED TO JURY.)

13   **BY MR. HADJIS:**

14   **Q.**  DR. VAHID, ARE YOU FAMILIAR WITH THIS?

11:05:05:00  15   **A.**  YEAH.  THIS IS SOME BACKGROUND INFORMATION THAT I THOUGHT

16   MIGHT BE HELPFUL IN UNDERSTANDING THE PATENT.

17   **Q.**  AND CAN YOU DESCRIBE WHAT YOU'VE DEPICTED HERE?

18   **A.**  SURE.  SO WE HAVE A NUMBER OF PROCESSORS AND MEMORIES AND

19   SO ON, DIFFERENT COMPONENTS THAT ARE ON A -- ON A COMPUTER

11:05:24:18  20   CHIP.  SOME OF THOSE ARE CALLED MASTERS, SOME OF THEM ARE

21   SERVANTS.  AND THEY COMMUNICATE THROUGH BUSES.

22      A BUS, I LIKE TO THINK OF AS, LIKE, YOU KNOW, THOSE

23   OLD-STYLE SALOONS WHERE THEY'D SLIDE A DRINK ALONG THE --

24   ALONG THE BAR.  SO, YOU KNOW, THESE BUSES, THINGS SLIDE ALONG,

11:05:44:12  25   GO FROM ONE -- FROM A MASTER TO A SERVANT, AND THEN THE

VAHID – DIRECT / HADJIS

11:05:47:15  1   SERVANT CAN SLIDE SOMETHING BACK.

2       SO, IN FACT, I'VE DEPICTED THAT ON THE SLIDE WHERE THE

3   MASTER IS REQUESTING SOME DATA FROM THE SERVANT, SO SLIDES AN

4   ADDRESS OVER.  AND THE SERVANT THEN SLIDES BACK THE DATA, SO

11:06:00:12  5   SENDS THE DATA BACK.

6   **Q.**  DR. VAHID, WHAT ARE THE ADDRESS AND DATA BUSES?

7   **A.**  SO THE ADDRESS BUS IS THE WAY THAT THE MASTER TELLS THE

8   SLAVE WHICH SPECIFIC ITEM THAT IT WANTS.  SO YOU CAN SEE THAT

9   I'VE PUT THREE DATA ITEMS ON THE RIGHT THERE.  AND SO THE

11:06:35:27 10   MASTER MIGHT WANT THE ONE IN THE MIDDLE, FOR EXAMPLE, SO IT

11   SENDS THE ADDRESS OVER.  AND THAT WILL TELL SPECIFICALLY WHICH

12   ITEM IT WANTS.  IN FACT, IT WILL TELL POSSIBLY WHICH SERVANT

13   IT WANTS, IF THERE'S MULTIPLE SERVANTS ON THAT ADDRESS BUS.

14   IT'S SORT OF LIKE THE ADDRESS OF A HOUSE.

11:06:54:12 15       AND SO IN THE -- IN THE ANIMATION, ACTUALLY, YOU'LL SEE

16   THAT WHEN THE ADDRESS WENT OVER TO THE SERVANT, THAT THE

17   SERVANT RESPONDED WITH A VERY SPECIFIC DATA ITEM COMING BACK.

18       AND THAT'S DONE OVER THE DATA BUS.  IN THIS CASE, IT'S A

19   SEPARATE BUS.

11:07:24:09 20   **Q.**  THANK YOU, DR. VAHID.

21       I'VE NOTICED THAT YOU ARE ALSO CALLING THE SLAVE A

22   "SERVANT."  I BELIEVE THAT YOU HAVE A REASON FOR THAT; IS THAT

23   RIGHT?

24   **A.**  I DO.  I FEEL THAT THE ENGINEERING COMMUNITY NEEDS TO STOP

11:07:34:12 25   USING THAT WORD FOR OBVIOUS REASONS.  SO IN MY TEXTBOOKS AND

11:07:38:03  1    IN MY CLASSES STARTING BACK IN THE EARLY 2000'S, I STARTED

2    USING "SERVANT."  SO I'M USED TO USING THE WORD "SERVANT" FOR

3    THE PURPOSES OF THIS CASE.  AND MY BOOKS, AND HOPEFULLY THE

4    MANY STUDENTS THAT -- LEARNING FROM MY BOOKS, ARE USING THE

11:07:52:09  5    WORD "SERVANT."

6         FOR PURPOSES OF THIS CASE, I'LL -- I'LL PROBABLY BE GOING

7    BACK AND FORTH BETWEEN THOSE.  SO IF I USE THE WORD "SERVANT,"

8    I APOLOGIZE.  PLEASE USE -- CONSIDER IT THE WORD "SLAVE."  AND

9    IN THE DIAGRAMS LIKE THIS, I'LL CERTAINLY USE "SERVANT," BUT

11:08:08:00  10   WHEN WE'RE TALKING ABOUT THE PATENTS, I'LL USE THE WORD

11   "SLAVE" IF NECESSARY.

12   Q.   THANK YOU, DR. VAHID.

13        MR. HADJIS:   RYAN, IF YOU COULD TURN TO DDX5-30.

14            (DEMONSTRATIVE PUBLISHED TO JURY.)

11:08:19:15  15   BY MR. HADJIS:

16   Q.   YOU'VE CONCLUDED THAT THE '753 PATENT IS NOT INFRINGED; IS

17   THAT RIGHT?

18   A.   THAT'S RIGHT.  THERE'S SOME -- I'VE CONCLUDED THAT THE

19   ACCUSED PRODUCTS DO NOT INFRINGE THE '753 PATENT.  I THINK

11:08:35:18  20   THERE'S SOME VERY SIGNIFICANT DIFFERENCES.

21        MR. HADJIS:   RYAN, IF YOU CAN TURN TO DDX5-31.

22            (DEMONSTRATIVE PUBLISHED TO JURY.)

23        MR. HADJIS:   AND WITH THIS, YOUR HONOR, BEFORE WE

24   BEGIN --

25

11:08:48:09  1    BY MR. HADJIS:

2    Q.  OR, WITH THIS, DR. VAHID, BEFORE YOU CONTINUE, I'D LIKE

3    FOR YOU TO SUMMARIZE YOUR OPINIONS AND PROVIDE ANY EXPLANATION

4    YOU WOULD LIKE IN CONNECTION WITH -- WITH THIS PARTICULAR

11:09:02:21  5    SLIDE.

6    A.  SO THE '753 -- SO ON THE LEFT, I'VE SHOWN CLAIM 2 OF THE

7    '753, AND I'VE LISTED THE CLAIM LANGUAGE THAT RELATES TO --

8    I'M SORRY -- I'VE LISTED THE CLAIM LANGUAGE OF CLAIM 2.  IT'S,

9    YOU KNOW, KIND OF LONG AND A LITTLE HARD TO READ.

11:09:30:03 10        WOULD IT BE APPROPRIATE FOR ME TO DRAW THAT UP ON THE

11    BOARD TO EXPLAIN MY UNDERSTANDING OF THIS IN SOME WAY?  OR --

12    Q.  SURE.

13            MR. HADJIS:  YOUR HONOR, IF HE MAY GO TO THE WHITE

14    BOARD?  IS THAT WHAT YOU'RE ASKING?

11:09:43:09 15            THE WITNESS:  IF THAT'S ALL RIGHT.

16            THE COURT:  HE CAN GO TO THE WHITE BOARD.  I'M A

17    LITTLE BIT CONCERNED ABOUT NOT HAVING A QUESTION PENDING.

18    NARRATIVES AREN'T APPROPRIATE.  I NEED TO HAVE A QUESTION SO

19    THAT I CAN UNDERSTAND OR ANTICIPATE ANSWERS.

11:10:01:18 20            MR. HADJIS:  UNDERSTOOD.

21    Q.  AND I WOULD ASK YOU, DR. VAHID, TO GENERALLY DESCRIBE WHAT

22    YOU UNDERSTAND TO BE REQUIRED BY THE CLAIM 2 OF THE '753

23    PATENT.

24    A.  SURE.  I COULD DESCRIBE IT, BUT THE WORDS WILL PROBABLY

11:10:19:27 25    JUST, YOU KNOW, NOT HAVE A LOT OF MEANING.  I WOULD LOVE TO BE

11:10:23:15  1    ABLE TO DRAW A DIAGRAM ALONG WITH IT.

2              **MR. DOWD:**  OBJECTION, YOUR HONOR.

3              **THE COURT:**  OVERRULED, AT THIS POINT, MR. DOWD.

4              **THE WITNESS:**  SO I'M GOING TO GO OVER TO THE BOARD?

11:10:40:27  5    THAT'S OKAY?

6          RYAN, IS MY MIC ON?

7          IS THAT GOOD?  CAN YOU SEE IT?  CAN YOU SEE THIS, YOUR

8    HONOR?

9              **THE COURT:**  I CAN'T.

11:11:07:09 10             **MR. DOWD:**  YOUR HONOR, YOUR HONOR, OBJECTION.  I DO

11   WANT TO CROSS-EXAMINE ON THAT, SO CAN WE PLEASE NOT ERASE IT.

12             **THE COURT:**  OKAY.  WELL, IT'S A BIG BOARD.

13   **BY MR. HADJIS:**

14   **Q.**  AND MAYBE YOU CAN DRAW A LINE TO DIVIDE THE TWO.

11:11:21:12 15   **A.**  SURE.

16             **MR. HADJIS:**  AND, YOUR HONOR, I –– JUST TO MAKE SURE,

17   WE'RE OKAY HERE, OR AS OKAY AS WE CAN BE, I DO WANT TO

18   ACKNOWLEDGE AND TELL DR. VAHID, AND I THINK HE KNOWS WHERE THE

19   LINE IS, NOT –– NOT TO DESCRIBE SOME OF THE OPINIONS THAT ––

11:11:42:18 20   ANY OF THE OPINIONS THAT YOU –– THAT YOU ARE NO LONGER

21   PROVIDING IN THIS CASE.

22   **Q.**  OKAY?

23   **A.**  OKAY.  I –– I'M JUST GOING TO TRY TO EXPLAIN THE CLAIM.

24   **Q.**  OKAY.

11:11:57:24 25   **A.**  STOP ME IF I ––

11:11:59:03  1    **THE COURT:**  WELL, GO INTO YOUR REPORT, DR. VAHID.

2    IT'S HARD FOR ANYBODY TO STOP YOU AT THIS POINT, BUT THAT'S

3    WHY WE HAVE QUESTIONS AND ANSWERS.  SO WHAT PART OF THE REPORT

4    SHALL WE -- DIRECT ME TO SO I CAN FOLLOW ALONG.

11:12:21:21  5    **BY MR. HADJIS:**

6    **Q.**  GO AHEAD, DR. VAHID.

7    **THE COURT:**  THAT WAS A QUESTION FOR YOU, MR. HADJIS.

8    WHAT PART OF THE REPORT SHOULD I GO TO?

9    **MR. HADJIS:**  FOR ME OR FOR DR. VAHID?

11:12:31:06  10   **THE COURT:**  YOU'RE THE LAWYER.  I'M ASKING YOU.

11   **MR. HADJIS:**  OKAY.

12   (PAUSE IN THE PROCEEDINGS.)

13   **THE COURT:**  ARE WE IN THE REBUTTAL?  I'M NOT SEEING

14   IT.

11:12:46:18  15   (PAUSE IN THE PROCEEDINGS.)

16   **MR. HADJIS:**  OKAY, YOUR HONOR, I WOULD FIRST DIRECT

17   YOU TO THE OPENING EXPERT REPORT.

18   **THE COURT:**  OKAY.

19   **MR. HADJIS:**  AND IF YOU --

11:14:16:18  20   **THE COURT:**  WHAT PAGE?

21   **MR. HADJIS:**  -- TURN TO PAGE -- TURN TO PAGE 10, YOU

22   CAN SEE STARTING AT PARAGRAPH 55 AND EXTENDING THROUGH THE

23   NEXT PAGE, REALLY THROUGH PARAGRAPH 60, THERE'S A BACKGROUND

24   DISCUSSION OF THE PATENT AND OF CLAIM 2.

11:14:57:18  25   **THE COURT:**  AND IN TERMS OF WHAT'S GOING TO BE

11:15:00:06  1    DEPICTED ON THE BOARD?  THAT --

2            MR. HADJIS:  WELL --

3            THE COURT:  -- I'LL BE ABLE TO FOLLOW ALONG WITH?  OR

4    WHERE'S THAT?

11:15:07:27  5            MR. HADJIS:  THAT'S WHY I WOULD SUGGEST, IF WE COULD,

6    TO DRAW DR. VAHID'S ATTENTION TO IT BECAUSE I -- I'M NOT

7    EXACTLY SURE WHERE HE'S GOING TO GO.

8            THE COURT:  WELL, THAT COULD BE A PROBLEM.  ALL

9    RIGHT.

11:15:21:18  10            MR. DOWD:  YOUR HONOR, IF I MAY?  I UNDERSTAND

11    THAT -- I UNDERSTAND WHAT MR. HADJIS WOULD LIKE TO DO.  MY

12    CONCERN IS WITH THE NARRATIVE NATURE.

13            THE COURT:  I -- I AGREE.

14            MR. DOWD:  AND IF I CAN, YOUR HONOR, BRING YOUR HONOR

11:15:34:03  15    TO THE REBUTTAL REPORT, PARAGRAPHS 29 THROUGH 43 ARE WHERE

16    THIS -- ARE WHERE THIS ISSUE IS ADDRESSED.

17        YOUR HONOR WILL RECALL FROM YESTERDAY, THERE WAS A

18    SLIDE 33 THAT YOUR HONOR ANALYZED.  WE ARE NOW ON THAT SLIDE

19    WITH -- WITH A PORTION CHANGED (INDICATING).  AND WHAT

11:16:11:27  20    MR. HADJIS HAS REFERENCED FROM THE OPENING REPORT, TO THE

21    EXTENT IT WOULD BE INCONSISTENT WITH WHAT IS NO LONGER

22    OPERATIVE OR TO THE EXTENT IT WOULD ATTEMPT TO DO WHAT IS NO

23    LONGER OPERATIVE FROM PARAGRAPHS 29 THROUGH 43 OF THE REBUTTAL

24    REPORT, WE UNDERSTAND FROM YOUR HONOR'S DIRECTION ALSO WOULD

11:16:37:00  25    NOT AUTHORIZE THIS.

11:16:39:06  1          MR. HADJIS:  YOUR HONOR --

        2          MR. DOWD:  AND THAT'S -- THAT'S THE CONCERN.  I

        3   UNDERSTAND YOUR HONOR MAY WANT TO SEE WHERE THIS GOES, BUT I

        4   JUST WANTED TO RAISE THAT -- THAT CONCERN OF MINE AS WE GET

11:16:48:12  5   INTO IT.

        6          MR. HADJIS:  YOUR HONOR?  WE'RE NOT ON A SLIDE.

        7   WE'RE ON THE WHITE BOARD, NUMBER ONE.  NUMBER TWO, THIS

        8   MATERIAL IS SQUARELY IN THE REPORT, AND IT HASN'T BEEN

        9   STRICKEN.  SO I -- I'M NOT REALLY SURE IT'S PROPER TO BE, AT

11:17:11:00  10  THIS POINT, TAKING PORTIONS OF THE REPORT AND TRYING TO MOVE

        11  THEM OVER INTO OPEN PORTIONS TO BLOCK --

        12         THE COURT:  I HAVEN'T BLOCKED ANYTHING YET.

        13         MR. HADJIS:  NO, I KNOW.  I'M JUST COMMENTING ON

        14  MR. DOWD'S ARGUMENT.

11:17:29:09  15         MR. DOWD:  YOUR HONOR, MR. HADJIS UNDERSTANDS WHAT

        16  HAPPENED YESTERDAY.  I'M NOT TRYING TO GET INTO THAT.  I'M

        17  EXPRESSLY NOT TRYING TO GET INTO THAT.  BUT WHAT WE HAVE HERE

        18  IS AN ATTEMPT TO PUT ON THE WHITE BOARD SOMETHING THAT WE

        19  ADDRESSED YESTERDAY.

11:17:41:21  20         MR. HADJIS:  WELL, THAT --

        21         MR. DOWD:  THAT'S THE CONCERN, AND -- AND I'VE

        22  IDENTIFIED THOSE PORTIONS.  IF YOUR HONOR WANTS TO SEE WHERE

        23  THIS GOES, I UNDERSTAND THAT, BUT I DO WANT TO HAVE SOME

        24  SENSITIVITY TO THAT ISSUE.

11:17:54:21  25         MR. HADJIS:  SOMEHOW MR. DOWD KNOWS MORE THAN I DO

11:17:57:15  1    RIGHT NOW.  I'M NOT SURE HOW.  BUT WE CAN MAKE IT CLEAR TO

2    DR. VAHID THAT -- THAT HE'S NOT TO DRAW THE SAME FIGURE THAT

3    WAS IN THE REPORT BEFORE.  THAT'S NOT THE INTENT HERE.

4          **THE COURT:**  ALL RIGHT.  ONE, THERE WILL NOT BE A

11:18:18:18  5    NARRATIVE.  I NEED A QUESTION.  I NEED AN ANSWER.

6        IF YOU WANT HIM TO GO THROUGH THE BACKGROUND AT PAGE 10,

7    THEN WE CAN DO THAT.  BUT, AGAIN, WE'RE JUST NOT GOING TO HAVE

8    SOME LECTURE.  THIS ISN'T A CLASSROOM.  THIS IS A TRIAL.

9    TRIALS REQUIRE QUESTIONS AND ANSWERS.

11:18:48:03  10         **MR. DOWD:**  THANK YOU, YOUR HONOR.

11   **BY MR. HADJIS:**

12   **Q.**  DR. VAHID, DO YOU RECALL PARAGRAPHS 55 THROUGH 60 OF YOUR

13   OPENING EXPERT REPORT?

14   **A.**  SURE.

11:19:07:00  15   **Q.**  YOU DO?

16   **A.**  WELL, I HAVE THEM HERE, YEAH.

17   **Q.**  OKAY.  IF I CAN DRAW YOUR ATTENTION, AND WITH YOUR HONOR'S

18   PERMISSION, TO THOSE.

19         **MR. HADJIS:**  IS THAT OKAY, YOUR HONOR?

11:19:21:03  20         **THE COURT:**  GO AHEAD.

21         **MR. HADJIS:**  OKAY.

22   **Q.**  LOOKING AT THOSE PARAGRAPHS, ARE YOU ABLE TO DESCRIBE AND

23   ILLUSTRATE WHAT'S IN PARAGRAPH 55?

24   **A.**  (REVIEWING DOCUMENT.)

11:19:48:15  25       JUST PARAGRAPH 55?  SURE.

VAHID – DIRECT / HADJIS

| | | |
|---|---|---|
| 11:19:51:03 | 1 | **Q.**  ALL RIGHT.  AND HOW ABOUT WHAT'S IN 56? |
| | 2 | **A.**  (REVIEWING DOCUMENT.) |
| | 3 | YES. |
| | 4 | **Q.**  AND IN 57? |
| 11:20:13:21 | 5 | **A.**  (REVIEWING DOCUMENT.) |
| | 6 | YES. |
| | 7 | **Q.**  AND WHAT DO THOSE PARAGRAPHS REPRESENT WITH REGARD TO YOUR |
| | 8 | OPINIONS? |
| | 9 | **A.**  CAN YOU CLARIFY WHAT YOU MEAN BY "WHAT DO THEY REPRESENT"? |
| 11:20:31:12 | 10 | **Q.**  WHAT IS THE PURPOSE OF PARAGRAPHS 55 THROUGH 57 IN |
| | 11 | CONNECTION WITH YOUR OPINIONS THAT YOU'VE EXPRESSED IN YOUR |
| | 12 | OPENING EXPERT REPORT? |
| | 13 | **A.**  THESE ARE DESCRIBING THE CLAIM. |
| | 14 | **Q.**  CAN YOU DESCRIBE AND ILLUSTRATE WHAT YOU HAVE DESCRIBED IN |
| 11:21:08:24 | 15 | 55 THROUGH 57, USING THE WHITE BOARD? |
| | 16 | **A.**  I CAN.  I MIGHT JUST SPEAK IT, IF YOU PREFER -- |
| | 17 | **Q.**  OKAY. |
| | 18 | **A.**  -- IF IT'S SUCH A BIG DEAL. |
| | 19 | **Q.**  WHY DON'T YOU? |
| 11:21:21:27 | 20 | **A.**  I COULD DRAW JUST TWO LINES MAYBE.  WOULD THAT -- |
| | 21 | (SIMULTANEOUS COLLOQUY.) |
| | 22 | **BY MR. HADJIS:** |
| | 23 | **Q.**  WHY DON'T YOU TALK FIRST AND THEN -- |
| | 24 | **A.**  OKAY. |
| 11:21:26:06 | 25 | **Q.**  -- WE'LL FIGURE OUT WHETHER THE WHITE BOARD IS NECESSARY. |

VAHID – DIRECT / HADJIS

**A.**  SO LET'S --

          **MR. DOWD:**  SO, OBJECTION, YOUR HONOR.

          **THE COURT:**  OVERRULED.

     JUST ANSWER THE QUESTION.  THE DESCRIPTION IN TERMS OF
PARAGRAPHS 55 THROUGH 57.

          **THE WITNESS:**  SURE.  SO LOOKING AT THE CLAIM
LANGUAGE, THE FIRST PART SAYS THAT THERE'S AT LEAST ONE
ADDRESS BUS, AND WE TALKED JUST A MINUTE AGO ABOUT WHAT AN
ADDRESS BUS WAS.  IT WAS THAT RED LINE GOING ACROSS, IF YOU
REMEMBER.

     AND THEN WE TALKED -- AND THEN IT SAYS THERE'S AT LEAST
TWO DATA BUSES, A FIRST AND SECOND DATA BUS.  SO EARLIER I
DREW ONE BLUE LINE.  JUST IMAGINE TWO BLUE LINES.  OKAY?

     AND THEN THERE ARE FOUR COMPONENTS.  OKAY?  AND THOSE
BUSES INTERCONNECT THEM IN SOME PREDETERMINED WAY, IS WHAT
THAT FIRST PART OF THE CLAIM REQUIRES.

     NOW, THE SECOND TWO PARAGRAPHS, IF I CAN JUST SUMMARIZE
WHAT THOSE MEAN BECAUSE THEY'RE VERY TECHNICAL AND IT'S HARD
TO FOLLOW THEM, BUT HERE'S HOW I WOULD -- HERE'S HOW I WOULD
LIKE TO EXPLAIN THEM.  SO YOU'VE GOT YOUR COMPONENTS AND
YOU'VE GOT YOUR ADDRESS BUS AND AT LEAST ONE OF THOSE RED
ADDRESS BUSES AND AT LEAST TWO OF THOSE BLUE DATA BUSES.
YEAH?

     SO THERE'S AN ADDRESS TRANSACTION BETWEEN TWO OF THE
COMPONENTS.  THERE'S AN ADDRESS TRANSACTION BETWEEN TWO OTHER

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

11:22:58:27  1   COMPONENTS.  OKAY?  AND THEN THE LAST PARAGRAPH JUST SAYS WHEN

2   THE DATA COMES BACK, THEY COME BACK AT THE SAME TIME, OR AT

3   LEAST THEY OVERLAP IN TIME.  THAT'S ALL IT SAYS.  SO THERE'S

4   ONE ADDRESS TRANSACTION, THERE'S ANOTHER ADDRESS TRANSACTION,

11:23:16:06  5   AND WHEN THE DATA COMES BACK, IT COMES BACK AT LEAST PARTLY AT

6   THE SAME TIME.  THAT'S -- THAT'S THE IDEA OF THE FOURTH -- OF

7   THE THIRD PARAGRAPH THERE.

8       IS THAT OKAY?

9   **BY MR. HADJIS:**

11:23:30:12 10  **Q.**  THAT IS.  THANK YOU, DR. VAHID.

11      I'D LIKE TO TURN TO JTX004 FOUR IN YOUR BINDER.

12              (OFF-THE-RECORD DISCUSSION.)

13          **MR. DOWD:**  YOUR HONOR, I'LL JUST NOTE FOR THE RECORD,

14  OBJECTION, AND WE CAN TAKE IT UP DURING THE BREAK OUTSIDE

11:23:45:03 15  THE --

16          **THE WITNESS:**  WHAT DID YOU REFER ME TO, ALEX?

17  **BY MR. HADJIS:**

18  **Q.**  JTX0004.

19              (EXHIBIT PUBLISHED TO JURY.)

11:24:07:18 20         **THE WITNESS:**  (REVIEWING DOCUMENT.)

21      OH, I'M ALREADY ON THAT.  OKAY.

22  **BY MR. HADJIS:**

23  **Q.**  YOU'RE FAMILIAR WITH THIS?

24  **A.**  YEAH.  THIS IS THE '753 PATENT.

11:24:18:15 25  **Q.**  OKAY.  AND IF YOU WOULD TURN TO FIGURE 1 OF THE PATENT.

**11:24:25:24** 1    **A.**   YES.

2    **Q.**   ARE YOU FAMILIAR WITH IT?

3    **A.**   YES, I AM.

4    **Q.**   WHAT DOES IT DEPICT?

**11:24:33:15** 5    **A.**   THIS DEPICTS A NUMBER OF MASTERS AND SERVANTS

6    COMMUNICATING OVER ONE ADDRESS BUS AND TWO DATA BUSES.

7    **Q.**   YOU'VE JUST GIVEN A DESCRIPTION OF WHAT YOU DISCLOSED IN

8    YOUR REPORT IN CONNECTION WITH THE '753 PATENT?

9    **A.**   THAT'S RIGHT.

**11:24:52:00** 10    **Q.**   CORRECT?

11    **A.**   THAT'S RIGHT.

12    **Q.**   ARE YOU ABLE TO USE THIS FIGURE OF THE '753 PATENT TO

13    ILLUSTRATE AND DESCRIBE WHAT YOU JUST DESCRIBED VERBALLY?

14    **A.**   YES.

**11:25:03:21** 15    **Q.**   CAN YOU PLEASE DO THAT.

16    **A.**   OKAY.

17         **MR. DOWD:**   OBJECTION, YOUR HONOR.  PARAGRAPH 34 --

18    -3 (SIC) AND 34 OF THE REBUTTAL REPORT.

19              (PAUSE IN THE PROCEEDINGS.)

**11:26:02:24** 20         **THE COURT:**   OKAY.  LADIES AND GENTLEMEN, WHY DON'T I

21    GO AHEAD AGAIN AND GIVE YOU A SLIGHTLY LONGER BREAK LIKE LAST

22    TIME SO I CAN WORK THROUGH THESE ISSUES.

23              (JURY EXCUSED FOR RECESS.)

24      (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

**11:26:14:06** 25    OF THE JURY:)

```
11:26:54:24  1        THE COURT:  THE JURY HAS LEFT THE COURTROOM.

             2     YOU MAY BE SEATED.

             3     I DON'T SHOW 33 AND 34 AS HAVING BEEN STRICKEN.  IF THEY

             4  WERE STRICKEN, I NEED A REFERENCE TO A COURT ORDER.

11:27:14:21  5                  (PAUSE IN THE PROCEEDINGS.)

             6        MR. DOWD:  YES, YOUR HONOR.

             7                  (PAUSE IN THE PROCEEDINGS.)

             8        MR. DOWD:  SO YOUR HONOR'S ORDER, PRETRIAL ORDER

             9  NO. 3, IT'S DOCKET 476, PAGE 7.

11:28:40:06 10        THE COURT:  ALL RIGHT.

            11        MR. DOWD:  AND I CAN JUST STEP YOUR HONOR THROUGH IT.

            12                  (PAUSE IN THE PROCEEDINGS.)

            13        MR. DOWD:  SO, YOUR HONOR, IF YOU JUST WANT TO LET ME

            14  KNOW WHEN YOU'RE THERE, AND I CAN STEP YOUR HONOR THROUGH IT.

11:29:06:03 15                  (DISCUSSION OFF THE RECORD.)

            16        MR. DOWD:  I APOLOGIZE.

            17        THE COURT:  ALL RIGHT.  SO I'M SEEING IT, SO --

            18        MR. DOWD:  SO, YOUR HONOR, IT'S TERM 1 AND THAT

            19  IDENTIFIES THE PARAGRAPHS THAT ARE IMPLICATED AS STARTING AT

11:29:20:18 20  29, TERM 1 IS THE "AT LEAST ONE ADDRESS BUS" TERM.

            21     IF WE GO TO PAGE 12, YOUR HONOR, AT LINE 4, THE MOTION IS

            22  GRANTED, AND VAHID'S OPINIONS IN THE PARAGRAPHS CITED ABOVE

            23  REGARDING THE FOLLOWING LISTED TERMS ARE EXCLUDED.  THE FIRST

            24  ONE IS THE "AT LEAST ONE ADDRESS BUS" TERM.  THAT IS INCLUSIVE

11:29:41:00 25  OF PARAGRAPHS 29 THROUGH 43.
```

```
11:29:45:09   1         WHAT IS HAPPENING HERE IS THAT --

              2              THE COURT:  HOLD ON.  LET ME --

              3                   (PAUSE IN THE PROCEEDINGS.)

              4              THE COURT:  I HAD SOME OF THESE STRICKEN BUT NOT ALL

11:29:59:03   5     OF THEM.

              6                   (PAUSE IN THE PROCEEDINGS.)

              7              THE COURT:  ALL RIGHT.  NOW --

              8              MR. DOWD:  YOU --

              9              THE COURT:  HOLD ON.  THOSE ARE, IN FACT -- WERE, IN

11:30:26:06  10     FACT, STRICKEN.  IN PARAGRAPH 33, ILLUSTRATION 1, WHICH WAS

             11     JUST PUT UP ON THE -- WHICH WAS JUST PUT UP ON THE BOARD, OR

             12     AT LEAST ON THE -- ON THE VIDEO, WAS REFERENCED.

             13         SO WHAT -- AGAIN, THE PROBLEM WITH DOING THIS BLIND IS

             14     THAT THERE HAVE BEEN A NUMBER OF OPINIONS WHICH HAVE BEEN

11:31:00:21  15     STRUCK.  THE REASON I HAVE AN EXPERT HERE IS TO RENDER

             16     OPINIONS.  OBVIOUSLY IF EVERYBODY AGREED ON EVERYTHING, WE

             17     WOULDN'T BE HAVING A TRIAL.

             18         I NEED TO KNOW WHAT IT IS VAHID IS GOING TO SAY.  YOU ARE

             19     THE LAWYER.  YOU CANNOT SIT THERE AND TELL ME YOU DON'T KNOW

11:31:21:18  20     WHAT HE'S GOING TO SAY.

             21              MR. HADJIS:  YEAH.

             22              THE COURT:  IT'S NOT -- IT'S NOT ACCEPTABLE.

             23              MR. HADJIS:  YOUR HONOR, AS --

             24              THE COURT:  SO POINT ME TO -- SO WHAT IS HE GOING TO

11:31:37:09  25     SAY?
```

11:31:37:21  1          **MR. HADJIS:**  SO, YOUR HONOR, LET ME -- LET ME TELL

2      YOU WHAT HE'S GOING TO SAY.  LET ME THEN TELL YOU WHERE IT'S

3      GROUNDED IN HIS REPORT THAT HAS NOT BEEN STRICKEN.  AND LET ME

4      THEN TELL YOU WHY IT HAS NOTHING TO DO WITH WHAT YOU'RE BEING

11:31:50:18  5      REFERENCED TO IN THE REBUTTAL REPORT.  OKAY?

6          SO AS I INDICATED BEFORE, HE IS GOING TO TALK ABOUT RIGHT

7      NOW PARAGRAPHS 55 THROUGH 57 OF HIS OPENING REPORT WHICH IS

8      SIMPLY A DISCUSSION OF THE '753 PATENT, THE PATENT IN THIS

9      CASE AS YOUR HONOR RECOGNIZED THAT WE'RE LITIGATING OVER, SO

11:32:13:18 10      THAT HE CAN PROVIDE SOME -- SOME CONTEXT AND A DESCRIPTION OF

11      HOW THAT FIGURE WORKS.

12          AND HE'S DONE THAT IN THE BACKGROUND OF HIS OPENING

13      REPORT.

14          NOW -- AND THE CITES --

11:32:29:00 15          **THE COURT:**  BUT WHAT'S THE OPINION?  WHAT'S THE POINT

16      OF THE TESTIMONY?

17          **MR. HADJIS:**  THE POINT OF THE TESTIMONY IS TO

18      INTRODUCE THE FIGURE AND THE TECHNOLOGY SO HE CAN THEN PROVIDE

19      HIS NON-INFRINGEMENT OPINIONS.

11:32:45:15 20          **THE COURT:**  ALL RIGHT.  WHERE IS THE OPINION THAT

21      HE'S PROVIDING?  THERE IS NO POINT TO BACKGROUND WITHOUT A

22      SUBSEQUENT OPINION.

23          **MR. HADJIS:**  YOUR HONOR, HE IS GOING TO PROVIDE THE

24      PREDETERMINED OPINION NEXT.

11:32:58:24 25          **THE COURT:**  OKAY.  SO WHERE IS THAT IN THE REPORT?

11:33:02:24  1          MR. HADJIS:  OKAY.

2                    (PAUSE IN THE PROCEEDINGS.)

3          MR. HADJIS:  LET ME -- LET ME DOUBLE-CHECK.

4                    (PAUSE IN THE PROCEEDINGS.)

11:33:58:24  5          MR. HADJIS:  SO, FOR INSTANCE, IF YOU LOOK AT THE

6   REBUTTAL REPORT STARTING ON PAGE 28, WHICH IS PARAGRAPH -- AT

7   THE END STARTS -- STARTING AT PARAGRAPH 83, YOU SEE THE HEADER

8   THERE, THE I.MX6 DOES NOT HAVE A BUS ARRANGEMENT FOR

9   INTERCONNECTING A PLURALITY OF COMPONENTS IN A PREDETERMINED

11:34:18:12 10   WAY.  THAT OPINION EXTENDS THROUGH SEVERAL PARAGRAPHS AND

11   TABLES IDENTIFYING THE NON-PREDETERMINED WAY INTERCONNECTIONS.

12   THROUGH PAGE 36, PARAGRAPH 90.

13                    (PAUSE IN THE PROCEEDINGS.)

14          THE COURT:  83 THROUGH 90, I'M LOOKING -- WEREN'T

11:35:03:18 15   THOSE STRICKEN?

16          MR. HADJIS:  I DON'T -- I DON'T THINK SO.

17          THE COURT:  HOLD ON.  I'M LOOKING AT THIS CHART.

18          MR. DOWD:  YES.

19          MR. HADJIS:  THIS IS THE REBUTTAL REPORT?

11:35:25:18 20          MR. DOWD:  YOUR HONOR, IF I CAN ADDRESS THAT.

21          THE CLERK:  A MIC.  A MIC.

22          THE COURT:  SO I'M LOOKING AT -- MR. HADJIS, GRAB MY

23   ORDER AT 476 BACK FROM MARCH.  PRETRIAL ORDER NO. 3.  DO YOU

24   HAVE YOUR COPY?

11:36:00:24 25                    (OFF-THE-RECORD DISCUSSION.)

11:36:02:15  1              (PAUSE IN THE PROCEEDINGS.)

2              **THE COURT:**  NO, I WAS WRONG, I THINK.  NOW THAT I'M

3    RELOOKING AT THIS.

4              **MR. HADJIS:**  I HAVE THE -- I HAVE THE ORDER, YOUR

11:36:32:03  5    HONOR.

6              **THE COURT:**  I THINK I WAS WRONG.

7              **MR. HADJIS:**  EXCUSE ME?

8              **THE COURT:**  I THINK I -- I THINK I MISSPOKE.

9              **MR. HADJIS:**  OH, OKAY.  THANKS.

11:36:39:21 10              (PAUSE IN THE PROCEEDINGS.)

11             **THE COURT:**  ALL RIGHT.  SO DRAW UP ON THE BOARD WHAT

12   IT IS YOU WANT HIM TO DRAW NOW SO I CAN SEE IT.

13        GO AHEAD, DRAW IT.

14             **MR. HADJIS:**  OKAY.

11:37:35:21 15             **MR. DOWD:**  YOUR HONOR, IF WE COULD EXCUSE DR. VAHID

16   DURING THIS PORTION.

17             **THE COURT:**  NO, I WANT TO SEE WHAT IT IS HE'S --

18             **MR. DOWD:**  OH, I THOUGHT YOU WERE ASKING MR. HADJIS.

19   SORRY.

11:37:43:21 20             **MR. HADJIS:**  YOUR HONOR, AND -- IT MIGHT -- I WAS

21   DIRECTING HIM TO THE FIGURE.  I JUST WANT TO SHOW -- HAVE HIM

22   EXPLAIN WHAT HE EXPLAINED IN WORDS USING THAT FIGURE 1 OF THE

23   PATENT.  I WOULD LIKE TO KNOW WHAT HE WAS GOING TO DRAW, TOO,

24   IF HE HAS THE OPPORTUNITY TO DRAW.

11:38:03:15 25        THIS IS PRETTY SIMPLE STUFF WHEN IT COMES TO JUST

11:38:05:24  1    DESCRIBING --

2              THE COURT:  IT'S ACTUALLY NOT.  THAT'S THE PROBLEM.

3    IF IT WAS SIMPLE, I'D HAVE A SLIDE.  I'D HAVE A SLIDE.

4                   (PAUSE IN THE PROCEEDINGS.)

11:38:36:24  5              THE COURT:  DOES SOMEBODY HAVE A HARD COPY OF

6    FIGURE 1?

7              MR. HADJIS:  YOUR HONOR, I CAN HAND YOU MINE.

8              THE COURT:  JUST PUT IT ON THE ELMO.

9                   (DOCUMENT DISPLAYED.)

11:39:02:27 10              THE COURT:  ALL RIGHT.  WHAT ARE YOU GOING TO SAY?

11   WHAT ARE YOU TRYING TO SHOW ON THIS FIGURE?  IT'S UPSIDE DOWN.

12   OR IT'S SIDEWAYS.

13             MR. HADJIS:  YEAH.  I'M GOING TO TRY AND FOCUS IT.

14                   (DOCUMENT DISPLAYED.)

11:39:19:15 15             THE COURT:  DR. VAHID?

16             THE WITNESS:  I CAN WALK THROUGH THE CLAIM LANGUAGE.

17   I COULD WALK THROUGH THE CLAIM LANGUAGE.

18             THE COURT:  I DON'T KNOW WHAT IT IS YOU WANT TO SAY.

19   THAT'S WHAT I'M ASKING YOU.

11:39:28:03 20             THE WITNESS:  OH, I JUST WANT TO CONVEY THE IDEA OF

21   TWO ADDRESS TRANSACTIONS AND THEN THE TWO DATA TRANSACTIONS

22   COMING BACK SIMULTANEOUSLY.

23             THE COURT:  SO YOU WANT TO DO WHAT?  THAT YOU'RE

24   GOING TO USE YOUR FINGER?  YOU'RE GOING TO DRAW?  WHAT IS IT

11:39:48:18 25   THAT YOU'RE GOING TO SHOW?

11:39:51:12  1          THE WITNESS:  IDEALLY I WOULD JUST DRAW ON IT.  I

2      WOULD DRAW A RED LINE FROM BETWEEN TWO COMPONENTS, ANOTHER RED

3      LINE BETWEEN TWO OTHER COMPONENTS, AND THEN I'D DRAW TWO BLUE

4      LINES COMING BACK.

11:40:04:27  5          THE COURT:  OKAY.  DOES SOMEONE HAVE -- SO DRAW THEM

6      NOW.

7                    (PAUSE IN THE PROCEEDINGS.)

8          THE WITNESS:  OKAY.  I WOULD DRAW -- I WOULD DRAW

9      MAYBE AN ADDRESS TRANSACTION BETWEEN THESE TWO.  AND AN

11:40:41:21 10   ADDRESS TRANSACTION BETWEEN THESE TWO (INDICATING).

11        AND THEN I WOULD DRAW THE DATA COMING BACK.  SO THIS GUY'S

12      DATA MIGHT COME BACK LIKE THIS.  AND THIS GUY'S DATA MIGHT

13      COME BACK LIKE THIS.  AND I WOULD JUST SAY THAT THOSE TWO BLUE

14      THINGS COULD OCCUR SIMULTANEOUSLY OVER TIME AT LEAST FOR A

11:41:16:18 15   PORTION OF TIME (INDICATING).

16          THE COURT:  IS THERE A PROBLEM WITH THAT, MR. DOWD?

17                    (PAUSE IN THE PROCEEDINGS.)

18          MR. DOWD:  JUST SO I MAKE SURE I UNDERSTAND,

19      DR. VAHID, RED IS SUPPOSED TO BE -- JUST SO I UNDERSTAND,

11:41:46:27 20   DR. VAHID, THE RED IS WHAT?

21          THE WITNESS:  THE RED ARE THE ADDRESS TRANSACTIONS.

22          MR. DOWD:  AND THE BLUE ARE WHAT?

23          THE WITNESS:  THE DATA TRANSACTIONS.

24          MR. DOWD:  AND THE ONLY THING YOU'RE GOING TO SAY IS

11:41:59:15 25   THAT THEY HAPPEN SIMULTANEOUSLY?  YOU'RE NOT GOING TO SAY

11:42:01:27  1   ANYTHING OTHER THAN THAT?

2        **THE WITNESS:**  WELL, I'LL BE GOING THROUGH THE CLAIM

3   LANGUAGE.  THE CLAIM LANGUAGE SAYS FOUR COMPONENTS

4   INTERCONNECTED IN A PREDETERMINED WAY.  AND THEN IT HAS THE

11:42:12:06  5   ADDRESS TRANSACTION.  SO I WOULD SAY I SEE FOUR COMPONENTS,

6   THEY'RE INTERCONNECTED IN A PREDETERMINED WAY, THERE'S THE TWO

7   ADDRESS TRANSACTIONS, THE TWO DATA TRANSACTIONS, AND THE DATA

8   TRANSACTIONS CAN OCCUR SIMULTANEOUSLY AT LEAST FOR A PORTION

9   OF TIME.

11:42:25:06 10        **THE COURT:**  SO HERE'S THE PROBLEM I'M HAVING.  IF

11   YOU'RE -- IF YOU ARE ATTEMPTING TO USE THIS FIGURE TO

12   EXPLAIN -- TO EXPLAIN CLAIM LANGUAGE, THEN WE'RE MOVING INTO

13   OPINIONS.  THOSE OPINIONS SHOULD BE REPRESENTED SOMEWHERE IN

14   YOUR REPORT, RIGHT?

11:42:58:00 15      UNLESS YOU'RE TRYING TO DO SOMETHING ELSE.  I MEAN, YOU

16   HAD SLIDE 33 FROM LAST NIGHT WHICH TOOK COMPONENTS, DATA

17   BUSES, ADDRESS BUSES, AND THEN PUT THE BASICS ON THE LEFT-HAND

18   SIDE.  I STRUCK THAT SLIDE.

19      AND WHAT I WANT TO MAKE SURE WE'RE NOT DOING IS TRYING TO

11:43:23:00 20   CIRCUMVENT THE COURT'S STRIKING OF THAT PARTICULAR SLIDE.

21        **THE WITNESS:**  I'M NOT.  I'M JUST TRYING TO HELP THE

22   JURY UNDERSTAND THE CLAIM SO THAT WHEN I TALK ABOUT THE

23   NON-INFRINGEMENT, THEY HAVE SOME IDEA WHAT'S GOING ON.

24        **MR. HADJIS:**  YOUR HONOR, AS -- AS FAR AS THE

11:43:46:00 25   PREDETERMINED WAY DESCRIPTION --

11:43:50:15  1          **THE COURT:**  YES.

2          **MR. HADJIS:**  -- GOES, I -- I WOULD DRAW YOUR

3  ATTENTION TO THE OPENING REPORT, TWO -- TWO PLACES I'M GOING

4  TO DRAW YOUR ATTENTION TO.  FIRST, THE OPENING REPORT

11:44:04:27  5  PARAGRAPHS 58 THROUGH 60.  AND THEN THE REBUTTAL REPORT,

6  PARAGRAPHS 45 THROUGH -- I'M SORRY, 44 THROUGH 46 IS THE INTRO

7  TO THE THEN STARTING AT 47 ON, VERY DETAILED OPINIONS WITH THE

8  PRODUCTS ON THE PREDETERMINED WAY --

9          **THE COURT:**  OKAY.  WELL --

11:44:37:21 10          **MR. HADJIS:**  -- NON-INFRINGEMENT CONCLUSION.

11          **THE COURT:**  I MEAN, I WOULD THINK THAT THE ULTIMATE

12  PLACE WE ARE HEADING ARE THESE OTHER SLIDES THAT ARE BEING

13  PROVIDED.

14          **MR. HADJIS:**  THAT'S RIGHT.  AND WE JUST WANT TO BE

11:44:49:09 15  ABLE TO LAY A LITTLE GROUNDWORK BY SHOWING THE EMBODIMENT

16  AND -- AND HOW IT OPERATES AND HOW THE PREDETERMINED WAY

17  APPLIES TO THE EMBODIMENT.

18      AND THEN WHEN WE MOVE ON, WE WILL BE ASKING HIM ABOUT THE

19  CLAIMS COMPARED TO THE PRODUCT, NOT THE EMBODIMENT COMPARED TO

11:45:10:21 20  THE PRODUCT.

21          **MR. DOWD:**  MAY I RESPOND, YOUR HONOR?

22          **THE COURT:**  YOU MAY.

23          **MR. DOWD:**  WHAT MR. HADJIS JUST REPRESENTED WAS THAT

24  HE WANTS TO HAVE THE WITNESS USE FIGURE 1 TO IDENTIFY THE

11:45:22:27 25  SCOPE OF THE PREDETERMINED WAY LIMITATION, AND THEN USE THAT

11:45:28:12  1   TESTIMONY TO THEN CONVERT INTO A NON-INFRINGEMENT OPINION

2   BASED ON PREDETERMINED -- THE INTERCONNECTING IN A

3   PREDETERMINED WAY LIMITATION.

4      YOUR HONOR, THAT -- THAT IS THE SUBJECT OF -- THAT IS THE

11:45:44:09  5   SUBJECT OF CLAIM CONSTRUCTION, WHAT THE MEANING OF

6   "INTERCONNECTING IN A PREDETERMINED WAY" WAS A TERM THAT YOU

7   CONSTRUED.  THIS IS THE ISSUE THAT WE TALKED ABOUT YESTERDAY

8   WITH THE INTERVENING MODULES OR SWITCHES.

9      AND I WILL NOTE THAT THE SLIDES THAT MR. HADJIS WANTS TO

11:46:04:21 10  GO TO NEXT, RIGHT AFTER TALKING ABOUT FIGURE 1, ARE THE

11  ARBITER AND SWITCHES SLIDES.  YOUR HONOR, IN YOUR ORDER AT

12  *MARKMAN*, SAID THAT INTERCONNECTING IS NOT -- IS BROAD ENOUGH

13  TO COVER HAVING INTERVENING MODULES OR SWITCHES.

14      THEN THE NEXT POINT IS --

11:46:24:12 15      **THE COURT:**  WELL, IT -- IT'S NOT -- WITH RESPECT TO

16  37, THAT IS WHAT I SAID AND THAT IS THE STATE OF THIS CASE.

17  THE FACT THAT IT DOES DO THAT, THAT IS, THE FACT THAT DDX5-37

18  SHOWS THAT IT GOES THROUGH INTERVENING MODULES IS NOT

19  VIOLATIVE OF THAT ORDER.  IT ONLY BECOMES VIOLATIVE OF THE

11:46:55:06 20  ORDER IF IT'S ARGUED THAT IT WOULD INFRINGE BECAUSE OF IT.

21      **MR. DOWD:**  AND --

22      **THE COURT:**  THE FACT THAT IT DOES IS NOT, IN AND OF

23  ITSELF, VIOLATIVE.

24      **MR. DOWD:**  AND, YOUR HONOR, I AM -- I AGREE WITH

11:47:08:15 25  THAT.  THE FACTS OF HOW THE PRODUCT OPERATES ARE NOT WHAT MY

11:47:12:18 1  CONCERN IS.  MY CONCERN IS THAT MR. HADJIS JUST REPRESENTED

2  THAT HE WOULD START FROM FIGURE 1, THAT THERE WAS GOING TO BE

3  A COMPARISON BETWEEN FIGURE 1 IN THE CLAIM LANGUAGE AND THE

4  MEANING OF WHAT IT MEANS TO BE INTERCONNECTED IN A

11:47:27:15 5  PREDETERMINED WAY.  THAT'S WHAT DR. VAHID -- THAT'S WHY I

6  ASKED HIM ABOUT WHAT HE WAS GOING TO DO ON FIGURE 1, AND WHAT

7  HE SAID WAS HE WAS GOING TO TALK ABOUT INTERCONNECTING IN A

8  PREDETERMINED WAY.

9      THAT IS THE SUBJECT MATTER AT PARAGRAPHS, FOR EXAMPLE, 33,

11:47:43:06 10  34, 35 WHERE HE TALKS ABOUT THE BOUNDARY CONDITIONS OF CLAIM 2

11  AND THE SCOPE OF CLAIM 2.  AND IT CONTINUES.

12      THE PORTIONS THAT MR. HADJIS HAS POINTED TO STARTING AT

13  PARAGRAPH 45, 46, AND AT 47 AND CONTINUING, THOSE PORTIONS

14  RELY UPON THE PREDICATE MATERIAL STARTING AT 33, 34, 35 THAT

11:48:15:00 15  IS STRUCK.

16      AND, YOUR HONOR, SPECIFICALLY IN ORDER -- IN PRETRIAL

17  ORDER NO. 3, AS YOUR HONOR NOTED, THE MOTION THAT WE HAD

18  BROUGHT WITH RESPECT TO "INTERCONNECTING" IDENTIFIED

19  PARAGRAPHS -- THE PARAGRAPHS 44 THROUGH 52 AND -- AND THEN 83

11:48:33:15 20  TO 90 THAT MR. HADJIS PREVIOUSLY REFERRED TO.

21      YOUR HONOR, AT LINE -- AT PAGE 12, LINES 7 THROUGH 9, DID

22  RESERVE DETERMINATION ON WHETHER THIS IS CONSISTENT OR

23  INCONSISTENT WITH THE PRIOR CONSTRUCTION OF "INTERCONNECTING."

24  AND WE WOULD SUBMIT THAT NOW WE HAVE THE EXPERT ATTEMPTING TO

11:49:05:12 25  GIVE -- USE THE FIGURE 1, COMPARE THAT TO THE CLAIM AND GIVE

11:49:10:03  1    AN OPINION ABOUT WHAT THE SCOPE OF THE CLAIM IS FOR THE

2    PURPOSES OF THEN MOVING TO THE NEXT SLIDE IN THE DECK, WHICH

3    IS, THERE'S AN ARBITER OR SWITCH AND THAT MEANS THEY'RE NOT

4    INTERCONNECTED IN A PREDETERMINED WAY, WHICH IS DIRECTLY

11:49:28:12  5    INCONSISTENT WITH THE *MARKMAN* ORDER.

6            **MR. HADJIS:**  MAY I RESPOND, YOUR HONOR?

7            **THE COURT:**  YOU MAY.

8            **MR. HADJIS:**  FIGURE 1 IS AN EMBODIMENT.  HE'S SIMPLY

9    GOING TO EXPLAIN THE WAY THAT FIGURE 1 IS CONSTRUCTED AND

11:49:43:00 10    OPERATES.  AND HE'S GOING TO EXPLAIN IT IN CONNECTION WITH

11    WHAT IS RELEVANT IN THIS CASE, AND THAT IS THE CLAIM THAT

12    WE'RE LITIGATING.

13        IT IS IMPROPER AND INCORRECT TO SAY FROM THERE THAT I AM

14    GOING TO HAVE HIM DO CLAIM CONSTRUCTION AND TALK ABOUT THE

11:50:01:00 15    SCOPE OF THE CLAIM AS IT MAY BE LIMITED IN COMPARING IT TO THE

16    EMBODIMENT.  THAT'S NOT ACCURATE TO TAKE THAT LEAP FROM WHAT

17    DR. VAHID HAS BEEN ASKED TO DO OR WILL BE ASKED TO DO.

18        AFTER HE DESCRIBES THE CLAIM AND THE EMBODIMENT AND HOW

19    THEY RELATE TO EACH OTHER AND HOW THE EMBODIMENT OPERATES, HE

11:50:28:15 20    IS GOING TO THEN GIVE HIS OPINIONS.

21        NOW, I SAT HERE FOR DAYS AND WATCHED DR. SHEAFOR GET UP

22    AND TALK ABOUT FIGURE 1 AND HOW IT OPERATES IN CONNECTION WITH

23    THE CLAIM.  I SAT HERE AND WATCHED DR. ASANOVIC COMPARE NOT

24    ONLY THE CLAIMS AND THE EMBODIMENTS TOGETHER, BUT THE

11:50:49:18 25    EMBODIMENTS TO SCHEMATICS OF OUR PRODUCTS.  AND HE GAVE

11:50:55:15  1      AFFIRMATIVE INFRINGEMENT OPINIONS BY COMPARING THE EMBODIMENT

2      TO THE PRODUCT.

3          I HAVE HEARD ON MULTIPLE OCCASIONS NOW COUNSEL STAND UP

4      AND ARGUE THAT A COMPARISON BETWEEN THE FIGURE AND THE PRODUCT

11:51:11:03  5      IS OKAY FOR THEM, IN FACT, IT'S SOMETHING THEY CAN DO BUT

6      SOMETHING WE CAN'T DO.

7          I WANT TO TAKE A STEP BACK HERE.  WE'RE NOT SUGGESTING AND

8      I'M NOT SUGGESTING THAT THIS WITNESS MAKE THE COMPARISON.  I

9      THINK WHAT I'M SUGGESTING IS HE SIMPLY HAVE THE LATITUDE TO

11:51:31:03 10      EXPLAIN TO THE JURY THROUGH AN EMBODIMENT OF THE PATENT HOW

11      THAT EMBODIMENT OPERATES AND WHAT ITS OPERATION IS IN

12      CONNECTION WITH THE ISSUES THAT WE'RE DEALING WITH HERE, THE

13      CLAIM LANGUAGE.  THAT'S ALL.

14          **THE COURT:**  ALL RIGHT.  I'M GOING TO ALLOW IT.

11:51:52:27 15          AND I WILL INSTRUCT THE JURY AS TO THE -- AS TO THE LAW

16      WITH RESPECT TO THE APPLICABILITY OF IT.

17          I WILL ALLOW IT BUT BRIEFLY.  WE AREN'T GOING TO GET INTO

18      ANY EXTENDED DISCUSSION ON THE OPERATION OF FIGURE 1.

19          **THE WITNESS:**  SURE.

11:52:10:09 20          **THE COURT:**  ALL RIGHT.

21          YOU GET FIVE MI.

22          **MR. HADJIS:**  THANK YOU, YOUR HONOR.

23          **MR. DOWD:**  THANK YOU, YOUR HONOR.

24          (RECESS TAKEN AT 11:53 A.M.; PROCEEDINGS RESUMED AT

11:52:20:15 25      12:01 P.M.)

VAHID – DIRECT / HADJIS

11:59:52:00  1    (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE PRESENCE OF

2    THE JURY:)

3         **THE COURT:**  WE ARE BACK ON THE RECORD.

4    THE RECORD WILL REFLECT THAT THE JURY IS BACK.

12:00:05:03  5    LADIES AND GENTLEMEN --

6    GO AHEAD, SIT DOWN, COUNSEL, PARTIES.

7    WE'VE GOT A FIGURE ON THE ELMO THAT WE WILL PUT FORWARD SO

8    THAT -- AND DR. VAHID WILL EXPLAIN THAT.  I'M HOPING THAT WILL

9    SHORT-CIRCUIT SOME OF THE OBJECTIONS FOR YOU.

12:00:23:21 10    YOU MAY PROCEED.

11         (DEMONSTRATIVE PUBLISHED TO JURY.)

12   **BY MR. HADJIS:**

13   **Q.**  DR. VAHID, WHEN WE LEFT OFF, IF YOU MIGHT RECALL, I HAD

14   ASKED YOU TO EXPLAIN THE CLAIM OF THE '331 PATENT, AND YOU

12:01:00:27 15   WERE GOING TO DRAW SOMETHING.  DO YOU RECALL THAT?

16   **A.**  YES.

17   **Q.**  WELL, NOW YOU HAVE DRAWN SOMETHING, AND YOU'VE -- YOU'VE

18   DRAWN IT IN CONNECTION WITH ONE OF THE FIGURES; IS THAT

19   CORRECT?

12:01:14:12 20   **A.**  ONE OF THE FIGURES FROM THE '753 PATENT, THAT'S RIGHT.

21   **Q.**  I'M SORRY, AND I MISSPOKE.  I MEANT '753, NOT '331.  THANK

22   YOU FOR -- FOR GETTING THAT RIGHT.

23   THERE IS A -- A FIGURE FROM THE '753 PATENT THAT'S

24   DISPLAYED ON THE MONITOR BEFORE YOU FROM THE ELMO.  DO YOU SEE

12:01:36:18 25   THAT FIGURE?

**A.**  YES.

**Q.**  CAN YOU EXPLAIN WHAT IT IS.

**A.**  SURE.  SO THIS IS ONE -- THIS IS A FIGURE FROM THE -- THE

PATENT THAT SHOWS AN INTERCONNECTION OF COMPONENTS AND AN

ADDRESS BUS AND TWO DATA BUSES.

**Q.**  NOW, IF YOU COULD, AS I HAD ASKED YOU BEFORE, CAN YOU

DESCRIBE HOW THE DISCLOSED SYSTEM OPERATES AS IT PERTAINS TO

THE CLAIM, CLAIM 2 THAT YOU WERE LOOKING AT OF THE '753

PATENT?

**A.**  SURE.  SO IF YOU REMEMBER THE CLAIM LANGUAGE REQUIRED AT

LEAST ONE ADDRESS BUS, AND WE CAN SEE IT'S LABELED "ADDR BUS"

DOWN AT THE BOTTOM THERE.

IT REQUIRES TWO DATA BUSES, AT LEAST FOUR COMPONENTS

INTERCONNECTED IN A PREDETERMINED WAY.  WE CAN SEE FOUR

COMPONENTS THAT ARE TOUCHING THE RED AND BLUE LINES THAT I'VE

DRAWN.  SO THERE'S FOUR COMPONENTS.

AND THEN IT DESCRIBES -- AND THEN I'VE SHOWN -- I'VE DRAWN

THE REMAINING PARTS OF THE CLAIM WHERE YOU HAVE ONE ADDRESS

TRANSACTION.  THAT'S THE RED ARROW I'VE DRAWN AT THE TOP.  YOU

HAVE ANOTHER ADDRESS TRANSACTION.  THAT'S THE RED ARROW I'VE

DRAWN AT THE BOTTOM GOING UP.  AND THEN YOU HAVE THE TWO DATA

TRANSACTIONS.  THOSE ARE THE TWO BLUE LINES THAT I DREW.  AND

THOSE -- THOSE DATA TRANSACTIONS WOULD NEED TO OCCUR

SIMULTANEOUSLY AT LEAST FOR SOME PORTION OF TIME.

**Q.**  WHAT ARE THE COMPONENTS THAT ARE ILLUSTRATED IN THE FIGURE

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

12:03:13:00  1    AND THAT ARE ASSOCIATED WITH THE ADDRESS AND DATA EXCHANGES

2    THAT YOU'VE DRAWN?

3    **A.**   THE FIRST TWO THAT I SHOWED ARE AT THE TOP LEFT, THE HOST

4    PROCESSOR AND MEMORY BANK A.  SO THE HOST PROCESSOR WOULD

12:03:27:12  5    ISSUE AN ADDRESS TRANSACTION TO THE MEMORY BANK.  AND THE DATA

6    WOULD COME BACK FROM THE MEMORY UP TO THE HOST PROCESSOR ON

7    THE BLUE LINE.

8        AND THE OTHER PAIR IS THE PCI BUS AND MEMORY BANK -- OH,

9    IT MUST BE B.  AND THERE, THE PCI BUS WOULD ISSUE AN ADDRESS

12:03:48:21 10    TRANSACTION FROM THE BOTTOM, THE RED LINE GOING UP, TO MEMORY

11    BANK B.  AND THEN THE DATA WOULD COME BACK FROM MEMORY BANK B

12    OVER THE BLUE LINE TO THE PCI BUS.

13    **Q.**   YOU IDENTIFIED SOME LINES ON WHICH THE ADDRESS EXCHANGES

14    WHICH YOU'VE DRAWN IN RED TRANSPIRE AND THE DATA EXCHANGES

12:04:11:09 15    WHICH YOU'VE DRAWN IN BLUE TRANSPIRE.  WHAT -- WHAT ARE THOSE

16    LINES IN CONNECTION WITH THE DISCLOSURE?

17    **A.**   IF YOU LOOK DOWN AT THE BOTTOM OF THE FIGURE, THEY'RE

18    LABELED "ADDR BUS," WHICH IS THE ADDRESS BUS.  AND THEN

19    THERE'S DATA A AND DATA B.  THOSE ARE TWO DATA BUSES.  SO IN

12:04:32:21 20    RELATION TO THE CLAIM, THE ADDR -- ADDR BUS WOULD BE THE "AT

21    LEAST ONE ADDRESS BUS."  AND THE DATA A AND DATA B BUSES, THE

22    FIRST AND SECOND DATA BUSES.

23    **Q.**   YOU MENTIONED IN YOUR ANSWER "A CONNECTION IN A

24    PREDETERMINED WAY."  HOW DOES THAT RELATE TO THE FIGURE AND

12:05:01:03 25    WHAT YOU'VE DRAWN, IF IN ANY MANNER AT ALL?

12:05:04:09    1    **A.**    WELL, I SEE FOUR COMPONENTS.  I SEE CONNECTIONS BETWEEN

               2    THEM.  AND I CAN SEE THAT THOSE CONNECTIONS ARE PREDETERMINED.

               3    **Q.**    WHY DO YOU THINK THAT FIGURE 1 SHOWS WHAT YOU DESCRIBED

               4    JUST NOW, PREDETERMINED CONNECTIONS?

12:05:18:09    5    **A.**    BECAUSE I CAN SEE THE CONNECTIONS.  THE FOUR COMPONENTS

               6    ARE CONNECTED.  THEY REMAIN CONNECTED.

               7    **Q.**    THANK YOU, DR. VAHID.

               8          **MR. HADJIS:**  I'D LIKE NOW TO MARK THIS AS, YOUR

               9    HONOR, THE NEXT TRIAL EXHIBIT.  PERHAPS WE CAN DO IT A BREAK

12:05:40:24   10    IF THAT'S THE MOST CONVENIENT WAY.

              11          **THE COURT:**  WE'LL DO IT AT A BREAK.

              12          **MR. HADJIS:**  THANK YOU.

              13       RYAN, IF YOU CAN TURN BACK TO THE SLIDES.

              14       AND IN PARTICULAR DDX5-32.

12:06:01:21   15             (DEMONSTRATIVE PUBLISHED TO JURY.)

              16    **BY MR. HADJIS:**

              17    **Q.**    DR. VAHID, BEFORE WE START HERE, WHAT IS YOUR OPINION

              18    REGARDING INFRINGEMENT OF THE '753 PATENT?

              19    **A.**    THE ACCUSED PRODUCTS HAVE SIGNIFICANT DIFFERENCES FROM

12:06:23:15   20    PARTICULAR PARTS OF THE CLAIM LANGUAGE, AND THEREFORE THEY

              21    DON'T INFRINGE.

              22    **Q.**    AND DOES YOUR OPINION APPLY TO ALL OF THE ACCUSED PRODUCTS

              23    OR -- OR JUST SOME OF THEM?

              24    **A.**    ALL OF THEM.

12:06:43:27   25    **Q.**    LOOKING AT 5-32, CAN YOU PLEASE DESCRIBE TO THE JURY WHAT

12:06:49:06  1    YOU'RE DEPICTING.

2    **A.**   SO THIS IS A BLOCK DIAGRAM OF THE I.MX50, I BELIEVE.  AND

3    WHAT WE SEE ARE A NUMBER OF BLOCKS.  THESE RELATE TO THE

4    BLOCKS I DREW AT THE VERY BEGINNING OF MY PRESENTATION.  YOU

12:07:05:27  5    HAVE VARIOUS COMPONENTS, AND THEY'RE COMMUNICATING OVER BUSES.

6    **Q.**   THANK YOU.

7        DR. VAHID --

8            **MR. HADJIS:**   IF YOU CAN TURN TO 5-33, RYAN.

9            (DEMONSTRATIVE PUBLISHED TO JURY.)

12:07:22:09 10   **BY MR. HADJIS:**

11   **Q.**   PLEASE CONTINUE.

12   **A.**   SO THESE ARE FOUR OF THE COMPONENTS THAT WERE ACCUSED OF

13   INFRINGING IN THE I.MX50.  I'VE LABELED THEM 1, 2, 3, AND 4.

14   AND I'VE ALSO INDICATED THE BUSES THAT WERE ACCUSED, AND I'VE

12:07:46:09 15   GIVEN THEM THE DIFFERENT COLORS THERE.

16       I'LL POINT OUT THAT EACH OF THOSE BUSES, FOR EXAMPLE, IF

17   YOU JUST LOOK AT THE -- THE GREEN LINE, THAT HAS -- IF YOU

18   WERE TO LOOK VERY CLOSELY, IT HAS AN ADDRESS BUS AND A DATA

19   BUS AS PART OF IT.

12:08:03:18 20       SO ALTHOUGH THIS FIGURE DOESN'T SHOW ADDRESS AND DATA

21   BUSES, THAT GREEN LINE WOULD HAVE ADDRESS AND DATA, THE RED

22   LINE WOULD HAVE ADDRESS AND DATA, THE PURPLE LINE WOULD HAVE

23   ADDRESS AND DATA, AND SO ON.

24   **Q.**   IS WHAT YOU'VE HIGHLIGHTED HERE, IS THAT SOMETHING THAT

12:08:19:15 25   PERTAINS TO YOUR OPINION THAT THE ACCUSED PRODUCTS DO NOT

12:08:25:18  1    INFRINGE CLAIM 2 OF THE '753 PATENT?

2    **A.**  YES.  SO THE –– THE CLAIM REQUIRES THAT THE FOUR

3    COMPONENTS BE CONNECTED –– INTERCONNECTED IN A PREDETERMINED

4    WAY.  AND THOSE BLUE BOXES THAT YOU SEE, ONE OF THEM IS

12:08:41:15  5    LABELED AHBMAX.  AND THE OTHER ONE IS LABELED 301R2P0.  THOSE

6    TWO BLUE BOXES ARE ARBITERS AND SWITCHES.  THE PURPOSE OF A

7    SWITCH IS TO SELECTIVELY INTERCONNECT THE ITEMS ON THE LEFT

8    SIDE OF IT TO THE ITEMS ON THE RIGHT SIDE.  AND BECAUSE THEY

9    SELECTIVELY INTERCONNECT, THEN THE FOUR COMPONENTS ARE NOT

12:09:10:24 10    INTERCONNECTED IN A PREDETERMINED WAY.

11         **MR. DOWD:**  OBJECTION, YOUR HONOR.

12         **THE COURT:**  I'LL RESERVE.  KEEP GOING.

13    **BY MR. HADJIS:**

14    **Q.**  CAN YOU EXPLAIN WHY NOT.

12:09:25:00 15    **A.**  SURE.  IF WE GO TO THE NEXT SLIDE.

16              (DEMONSTRATIVE PUBLISHED TO JURY.)

17         **THE WITNESS:**  I WANT TO GIVE A LITTLE BACKGROUND ON

18    WHAT AN ARBITER AND SWITCH IS, AND THEN I'LL EXPLAIN THOSE

19    BLUE BOXES IN MORE DETAIL.

12:09:40:00 20      SO IF WE REMEMBER, WE HAVE A MASTER AND A SERVANT.  AND

21    THE MASTER IS GOING TO PROVIDE AN ADDRESS OVER TO THE SERVANT,

22    AND THE SERVANT IS GOING TO GO AHEAD AND REPLY WITH DATA.  SO

23    THAT, YOU KNOW, THAT WORKS REALLY EASILY WHEN THERE'S ONLY ONE

24    MASTER, ONE SERVANT.

12:09:53:03 25      BUT WHEN THERE'S MULTIPLE MASTERS, THERE'S SOME ISSUES.

12:09:55:27  1        SO IF WE COULD GO TO THE NEXT SLIDE, PLEASE.

           2              (DEMONSTRATIVE PUBLISHED TO THE JURY.)

           3        THE WITNESS:  WHAT I'VE SHOWN HERE ARE TWO DIFFERENT

           4   MASTERS THAT BOTH WANT TO ACCESS THE SAME SERVANT.  LET'S SAY

12:10:06:12  5   THAT SERVANT IS A MEMORY.  SO IF ONLY ONE WANTS TO ACCESS, ALL

           6   IS GOOD.

           7        SO IF YOU COULD STEP FORWARD, RYAN.

           8              (DEMONSTRATIVE PUBLISHED.)

           9        THE WITNESS:  SO IF JUST THAT TOP MASTER WANTS TO

12:10:20:06 10   ACCESS, THERE'S NO PROBLEM.  IF JUST THE BOTTOM MASTER WANTS

          11   TO ACCESS AT SOME GIVEN TIME, THERE'S NO PROBLEM.

          12        NOW, THE PROBLEM OCCURS IF THEY BOTH WANT TO ACCESS THAT

          13   SERVANT AT THE SAME TIME.  WHAT HAPPENS IS THOSE TWO DIFFERENT

          14   ADDRESSES ARE GOING TO COLLIDE ON THAT BUS THERE, AND THE

12:10:42:15 15   SYSTEM WON'T WORK.

          16        SO IF WE CAN GO TO THE NEXT SLIDE, I'LL SHOW YOU WHAT ONE

          17   SOLUTION IS.

          18              (DEMONSTRATIVE PUBLISHED TO JURY.)

          19        THE WITNESS:  AND THAT'S TO INTRODUCE WHAT'S CALLED

12:10:58:12 20   AN ARBITER AND SWITCH.

          21        AND SO WHAT THAT -- WHAT THAT ARBITER DOES IS IT WILL

          22   DECIDE BETWEEN THE TOP MASTER AND THE BOTTOM MASTER, AND

          23   THAT'S USUALLY BASED ON SOME PRIORITY.  SO, FOR EXAMPLE, I'VE

          24   SHOWN HERE THAT THE BOTTOM MASTER HAS A HIGHER PRIORITY,

12:11:20:09 25   PRIORITY OF 7, AND THE TOP MASTER HAS A LOWER PRIORITY,

VAHID – DIRECT / HADJIS

08:33:56:18

12:11:23:27 1    PRIORITY 5.  I JUST PICKED THOSE NUMBERS.

2       BUT WHAT THAT MEANS IS THAT IF BOTH MASTERS WANT TO

3    ACCESS --

4       SO RYAN, IF YOU COULD CLICK.

5               (DEMONSTRATIVE PUBLISHED TO JURY.)

6            THE WITNESS:  IF BOTH WANT TO ACCESS, THE ARBITER

7    WILL DECIDE WHICH ONE TO GIVE ACCESS TO AND WILL THEN

8    SELECTIVELY INTERCONNECT THAT MASTER TO THE SERVANT SO THAT

9    THE ACCESS CAN TAKE PLACE.  AND THEN WHEN THAT'S DONE, IT

12:11:46:27 10   WILL -- IT WILL INTERCONNECT THE TOP MASTER TO THE SERVANT AND

11   LET THAT ACCESS TAKE PLACE.

12      RYAN, COULD YOU JUST SHOW THAT ONE MORE TIME.

13              (DEMONSTRATIVE PUBLISHED JURY.)

14           THE WITNESS:  SO THE TWO ACCESSES COME AT THE SAME

12:11:58:12 15  TIME.  THE ARBITER DECIDES TO LET ONE GO THROUGH, SO IT

16   SELECTIVELY INTERCONNECTS THAT MASTER TO THE SERVANT.  THEN IT

17   LETS THE OTHER ONE GO, AND IT INTERCONNECTS THAT ONE SO THAT

18   THAT TRANSFER CAN TAKE PLACE.

19   BY MR. HADJIS:

12:12:11:24 20  Q.  HOW DOES IT MAKE THAT DECISION?

21   A.  IT'S BASED ON THOSE PRIORITIES THAT I SHOWED THERE,

22   NUMBER 7 DOWN AT THE BOTTOM AND 5 UP AT THE TOP.  SO THE

23   HIGHER PRIORITY ITEM GOT TO GO FIRST.

24   Q.  THANK YOU.

12:12:42:09 25       MR. HADJIS:  RYAN, IF YOU CAN TURN TO THE NEXT SLIDE.

VAHID – DIRECT / HADJIS

| | |
|---|---|
| 12:12:46:03 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 12:12:51:09 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 12:13:06:12 | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 12:13:20:12 | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| 12:13:35:27 | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| 12:13:52:09 | 25 |

(DEMONSTRATIVE PUBLISHED TO JURY.)

**BY MR. HADJIS:**

**Q.** DR. VAHID, WHAT DO YOU INTEND TO ILLUSTRATE WITH THIS SLIDE?

**A.** SO I LIKE TO THINK OF AN ARBITER SWITCH COMPONENT, THE ONE I JUST SHOWED YOU ON THE PREVIOUS SLIDE, LIKE ONE OF THOSE TELEPHONE OPERATORS ON THOSE OLD-STYLE -- TELEPHONE OPERATORS ON THOSE OLD-STYLE SWITCHBOARDS, REMEMBER THOSE? FROM MOVIES, PRIMARILY.

AND SO SHE RECEIVES CALLS COMING IN. THOSE ARE LIKE THE REQUESTS COMING FROM MASTERS. AND SHE ARBITRATES BETWEEN THEM. IF TWO PEOPLE WANT TO CALL THE SAME PERSON, THEN SHE DECIDES WHICH ONE GETS TO GO THROUGH. SO THAT'S THE ARBITRATION ROLE.

AND THEN SHE CONNECTS THEM. SO IN THIS CASE, SHE WOULD PLUG A WIRE IN AND CONNECT THE CALLER'S PHONE TO THE RECEIVER'S PHONE. THAT'S THE SWITCHING PART OF WHAT SHE DOES. SO SHE ACTS LIKE AN ARBITER AND A SWITCH.

THE COMPONENTS, THOSE BLUE BOXES THAT I SHOWED YOU ON THE EARLIER DIAGRAM, THOSE ARE THE SAME TYPE OF THING. THEY ARBITRATE BETWEEN THE REQUESTS THAT ARE COMING IN. THEY SELECTIVELY INTERCONNECT BASED ON WHICHEVER ONE HAS HIGHER PRIORITY. AND I'VE SHOWN THAT. YOU CAN SEE THAT THEY'RE CONSTANTLY CHANGING. THOSE CHANGES MIGHT OCCUR THOUSANDS, HUNDREDS OF THOUSANDS OF TIMES EACH SECOND AS REQUESTS ARE

12:13:55:18  1    COMING AND THE SWITCH DECIDES WHO GETS TO HAVE ACCESS.

2         **MR. HADJIS:**  RYAN, IF YOU CAN TURN BACK A FEW SLIDES

3    TO 5-33.

4              (DEMONSTRATIVE PUBLISHED TO JURY.)

12:14:10:21  5    **BY MR. HADJIS:**

6    **Q.**  DR. VAHID, IS THIS THE DIAGRAM AND THE BLUE BOXES TO WHICH

7    YOU JUST REFERRED?

8    **A.**  YES, THAT'S RIGHT.

9    **Q.**  AND CAN YOU IDENTIFY MORE SPECIFICALLY WITH THE FIGURE

12:14:20:03  10   WHAT YOU HAVE DISCUSSED?

11   **A.**  SURE.  SO THOSE TWO BLUE BOXES ARE LIKE THAT TELEPHONE

12   OPERATOR.  THEY ACT AS ARBITERS AND SWITCHES.  THEY LOOK FOR

13   REQUESTS COMING IN ON THE -- THEIR INPUTS.  AND THEY MAKE A

14   DECISION HOW TO CONNECT.  THEY SELECTIVELY INTERCONNECT BASED

12:14:39:12  15   ON WHO'S ASKING CURRENTLY.  THEY CONNECT THE INPUT WIRES TO

16   THE OUTPUT WIRES AND ALLOW THE ACCESS TO OCCUR.

17       THIS IS THE OPPOSITE OF INTERCONNECTING IN A PREDETERMINED

18   WAY.  THE PURPOSE OF THOSE BLUE BOXES IS TO NOT CONNECT THINGS

19   IN A PREDETERMINED WAY, TO SELECTIVELY INTERCONNECT IN A

12:15:00:06  20   PREDETERMINED WAY.  THAT'S THE WHOLE PURPOSE OF PUTTING THOSE

21   BLUE BOXES THERE.

22         **MR. HADJIS:**  CAN YOU TURN TO SLIDE 37, RYAN, 5-37.

23             (DEMONSTRATIVE PUBLISHED TO JURY.)

24   **BY MR. HADJIS:**

12:15:19:06  25   **Q.**  DR. VAHID, WHAT'S DEPICTED ON THIS SLIDE?

**A.**  SO IN ADDITION TO THE SWITCHES -- OH, LET ME -- LET ME

START.  THIS IS THE I.MX6SL PRODUCT.  IT'S ANOTHER ONE OF THE

ACCUSED I.MX PRODUCTS.

AND WHAT I'VE SHOWN HERE ARE TWO COMPONENTS THAT ARE --

HAVE BEEN ACCUSED OF -- OF BEING INTERCONNECTED IN A

PREDETERMINED WAY.  THE SMALL GRAY BOX ON THE LEFT AND THE

GRAY BOX ON THE BOTTOM RIGHT.

SO IN ADDITION TO WHAT I JUST SAID, WHICH IS THAT THOSE

BOXES IN THE MIDDLE PREVENT INTERCONNECTION IN A PREDETERMINED

WAY, IN THIS CASE, THEY'RE NOT BLUE, THEY'RE PEACH-COLORED.

SO IN ADDITION TO THAT, I WANT TO POINT OUT THAT IN SOME

CASES, THESE COMPONENTS CAN COMMUNICATE OVER DIFFERENT PATHS

EVEN.  SO IF THE DMA IS COMMUNICATING WITH THAT -- IF THE BOX

ON THE UPPER LEFT IS COMMUNICATING WITH THE BOX ON THE LOWER

RIGHT, THAT FIRST PEACH-COLORED SWITCH MIGHT DECIDE TO SEND

THE ROUTE UP ALONG THE BLUE PATHWAY AND THE NEXT SWITCH WOULD

THEN BRING IT DOWN AND IT WOULD GO OVER TO THE BOX ON THE

BOTTOM RIGHT.  OR IT MIGHT DECIDE TO SEND IT ALONG THE YELLOW

PATHWAY.

SO THERE'S ANOTHER WAY THAT THESE PATHWAYS ARE NOT

PREDETERMINED.  THE ARBITER MAY MAKE DECISIONS THAT

INTERCONNECT THINGS EVEN IN A DIFFERENT WAY AT DIFFERENT

TIMES.

**Q.**  WELL, THE TWO BOXES COMMUNICATE WITH EACH OTHER, DON'T

THEY?

12:17:09:03  1    **A.**   YES.

2    **Q.**   WHY NOT?  WHY DON'T THEY COMMUNICATE IN THEIR

3    PREDETERMINED WAY?  CAN YOU EXPLAIN YOUR OPINION AS TO WHY

4    THAT'S THE CASE?

12:17:16:27  5    **A.**   BECAUSE THE CONNECTIONS THAT WOULD BE USED EVEN AFTER

6    THOSE PEACH BOXES MADE THEIR CONNECTIONS, THOSE CONNECTIONS

7    ARE NOT DETERMINED BEFORE THE ACCESS OCCURRED.

8    **Q.**   WHEN ARE THEY DETERMINED?

9    **A.**   AT THE TIME THAT THE ACCESSES ARE REQUESTED.

12:17:36:06  10    **Q.**   DOES THAT HAVE ANYTHING TO DO, THIS DISTINCTION YOU JUST

11    MADE, WITH REGARD TO THE CLAIM LANGUAGE?

12    **A.**   YES.  THIS -- THIS IS ANOTHER WAY THAT THESE COMPONENTS

13    ARE NOT INTERCONNECTED IN A PREDETERMINED WAY.

14         **MR. DOWD:**   YOUR HONOR, TO TAKE IT UP AT A BREAK, I

12:17:54:27  15    JUST WANT TO NOTE AGAIN MY CONTINUING OBJECTION TO THIS.

16         **THE COURT:**   SO NOTED.

17    **BY MR. HADJIS:**

18    **Q.**   DR. VAHID, TO WRAP UP ON THE INFRINGEMENT ASPECTS OF '753,

19    DOES WHAT YOU JUST DESCRIBED CAPTURE YOUR OPINION AS TO WHY

12:18:16:12  20    THE PATENT CLAIM 2 IN PARTICULAR IS NOT INFRINGED?

21    **A.**   THAT'S RIGHT.  ALL OF THE I -- ALL OF THE ACCUSED I.MX

22    PRODUCTS HAVE THOSE SWITCHES, THOSE ARBITER SWITCHES, THOSE

23    OPERATORS, TELEPHONE OPERATORS, IN BETWEEN, AND THEREFORE DO

24    NOT INTERCONNECT IN A PREDETERMINED WAY.  THERE ARE ALSO

12:18:39:24  25    POSSIBILITY OF MULTIPLE PATHS.

12:18:41:24  1          SO FOR BOTH THOSE REASONS, THAT PART OF THE CLAIM LANGUAGE

2     WHICH WAS IN THE FIRST PARAGRAPH OF THE -- OF THE CLAIM IS NOT

3     SATISFIED BY THE ACCUSED PRODUCTS.

4     **Q.**  THANK YOU.

12:19:01:03  5          **MR. HADJIS:**  RYAN, IF YOU CAN MOVE TO THE NEXT SLIDE,

6     5-38.

7               (DEMONSTRATIVE PUBLISHED TO JURY.)

8     **BY MR. HADJIS:**

9     **Q.**  LET'S SWITCH GEARS TO INVALIDITY.

12:19:17:09 10          DR. VAHID, DO YOU BELIEVE THAT CLAIM, CLAIM 2, OF THE '753

11    PATENT IS VALID?

12    **A.**  NO, I DON'T.

13    **Q.**  AND WHAT DO YOU BELIEVE IN CONNECTION WITH CLAIM 2 OF THE

14    '753 PATENT'S VALIDITY?

12:19:33:06 15    **A.**  THERE HAVE BEEN BUSES AND ARBITERS AND COMPONENTS

16    CONNECTED TOGETHER IN DIFFERENT WAYS FOR MANY YEARS.  AND IT

17    WAS -- THE CLAIM 2'S DESCRIPTION OF -- OF THAT INTERCONNECTION

18    WAS DONE BEFORE.

19          **MR. HADJIS:**  RYAN, IF YOU CAN TURN TO THE NEXT SLIDE,

12:19:52:12 20    5-40.

21               (DEMONSTRATIVE PUBLISHED TO JURY.)

22    **BY MR. HADJIS:**

23    **Q.**  DOES THIS SLIDE IN ANY WAY PERTAIN TO YOUR INVALIDITY

24    OPINION?

12:20:00:06 25    **A.**  YES.  THIS IS A SLIDE TAKEN FROM ONE PARTICULAR PRODUCT

12:20:03:24  1   THAT WAS IMPLEMENTED SEVERAL YEARS AND —— AND DESCRIBED IN

2   A —— IN A REPORT THAT DESCRIBES A SYSTEM THAT CARRIES OUT ALL

3   OF THE PARTS OF CLAIM 2.

4   **Q.**   DR. VAHID, I'D LIKE TO ASK YOU NOW TO REFER TO YOUR

12:20:24:00  5   WITNESS BINDER, IN PARTICULAR, PAGE TO DTX00047.

6   **A.**   OKAY.  I'M THERE.

7   **Q.**   GREAT.

8         **MR. HADJIS:**   RYAN, IF YOU CAN PLACE THE FIRST PAGE OF

9   THAT EXHIBIT ONTO THE DISPLAY.

12:21:04:09 10         **MR. DOWD:**   IT'S NOT IN EVIDENCE, YOUR HONOR.

11         **MR. HADJIS:**   OH, YEAH, GOOD POINT, YOUR HONOR.

12   **Q.**   HAVE YOU —— HAVE YOU SEEN THIS BEFORE?

13   **A.**   YES, I HAVE.

14   **Q.**   AND DO YOU KNOW WHAT IT IS?

12:21:14:27 15   **A.**   YES, THIS IS A DESCRIPTION OF THE MOTOROLA MC88410

16   SECONDARY CACHE CONTROLLER.

17   **Q.**   AND DOES IT RELATE IN ANY WAY TO YOUR INVALIDITY OPINION?

18   **A.**   YES.  IN THIS DOCUMENT, I DESCRIBE SEVERAL TYPES OF

19   MULTIPROCESSOR SYSTEMS, INTERCONNECTIONS OF COMPONENTS, AND

12:21:36:18 20   THOSE MEET ALL THE LIMITATIONS OF CLAIM 2.

21   **Q.**   THANK YOU.

22         **MR. HADJIS:**   WITH THAT, YOUR HONOR, I'D OFFER DTX0047

23   INTO EVIDENCE.

24         **THE COURT:**   ANY OBJECTION?

12:21:47:12 25         **MR. DOWD:**   NO OBJECTION, YOUR HONOR.

12:21:48:09  1              THE COURT:  IT'S ADMITTED.

2         (DEFENDANT'S EXHIBIT DTX0047 WAS RECEIVED IN EVIDENCE.)

3              (EXHIBIT PUBLISHED TO JURY.)

4              MR. HADJIS:  THANK YOU, RYAN, FOR DISPLAYING THAT.

12:21:55:18  5   **Q.**  DR. VAHID, WHAT'S DISPLAYED IN FRONT OF YOU NOW?

6   **A.**  THIS IS THE COVER OF A REFERENCE MANUAL FOR THE SECONDARY

7   CACHE CONTROLLER FROM MOTOROLA.

8   **Q.**  WHAT IS THE SECONDARY CACHE CONTROLLER?

9   **A.**  IT IS A COMPONENT THAT IS USED TO HELP CONNECT PROCESSORS

12:22:14:18 10   AND MEMORIES IN A MULTIPROCESSOR SYSTEM.  THE MANUAL HAS

11   SEVERAL EXAMPLES OF THOSE MULTIPROCESSOR SYSTEMS WHERE YOU

12   HAVE MULTIPLE PROCESSORS, MULTIPLE MEMORIES ALL COMMUNICATING

13   TOGETHER.

14   **Q.**  DO YOU KNOW WHEN THE MANUAL WAS PUBLISHED?

12:22:36:18 15   **A.**  I BELIEVE IT WAS 1992.  YES, 1992.

16   **Q.**  CAN YOU PLEASE IDENTIFY WHAT IN THE MANUAL BRINGS YOU TO

17   BELIEVE ITS PUBLICATION DATE?

18   **A.**  SO ON THE THIRD PAGE IN MY DOCUMENT HERE, THERE'S A

19   COPYRIGHT NOTICE AT THE BOTTOM, IT SAYS "MOTOROLA, INC.,

12:23:02:12 20   1992."

21   **Q.**  REFERRING BACK TO THE '753 PATENT, WHAT IS THE EARLIEST

22   DATE THAT YOU BELIEVE IT CAME INTO EXISTENCE?

23   **A.**  I BELIEVE IT WAS 1998; IS THAT CORRECT?  IT MIGHT HAVE

24   BEEN 1997.

12:23:31:21 25        (REVIEWING DOCUMENT.)

12:23:34:09  1     (EXHIBIT PUBLISHED TO JURY.)

2          **THE WITNESS:**  OH, HERE WE GO.

3     **BY MR. HADJIS:**

4     **Q.**  JTX004 IN YOUR BINDER.

12:23:40:12  5     **A.**  HE'S GOT IT UP HERE.  SO IT'S SHOWING '99.  BUT IT MAY

6     HAVE AN EARLIER PRIORITY DATE.

7          1997, PERHAPS, IS THE PRIORITY DATE?

8     **Q.**  YES.  IF -- I THINK THAT'S RIGHT.  YOU'RE REFERRING DOWN

9     TO THE DIVISION OF APPLICATION REFERENCE?

12:24:00:24 10     **A.**  THAT'S RIGHT.

11     **Q.**  THANK YOU.

12          SO NOW I'D LIKE TO REFER YOU BACK TO SLIDE 40 OF YOUR

13     PRESENTATION, DDX5-40.

14          (DEMONSTRATIVE PUBLISHED TO JURY.)

12:24:19:09 15     **BY MR. HADJIS:**

16     **Q.**  BEFORE YOU GET INTO THE -- THE CONTENT HERE AND WHAT YOU

17     WANT TO DESCRIBE, I JUST WANT YOU TO RELATE IT, IF YOU CAN,

18     BACK TO THE USER'S GUIDE, THE LARGE MOTOROLA USER'S GUIDE FOR

19     THE MC88410 CACHE CONTROLLER.

12:24:40:06 20     **A.**  SURE.  THESE ARE FIGURES THAT APPEAR IN THAT USER'S GUIDE.

21     THEY DESCRIBE DIFFERENT WAYS OF CONNECTING PROCESSORS AND

22     MEMORIES AND BUSES.  AND I'VE ALSO EXCERPTED SOME TEXT FROM

23     THAT USER'S GUIDE.

24     **Q.**  I SEE MULTIPLE FIGURES HERE.  DO THEY RELATE TO EACH OTHER

12:25:04:15 25     IN ANY WAY?

12:25:06:06  1    **A.**   YES.   ON THE LEFT, WHAT WE SEE IS ONE PARTICULAR

2    INTERCONNECTION.   WHAT WE HAVE ON THE TOP RIGHT ARE -- OF THAT

3    LEFT SIDE OF THE FIGURE, WE HAVE A -- A PROCESSOR, THE

4    MC88110, CONNECTED TO AN ADDRESS BUS AND A DATA BUS.   AND

12:25:35:27  5    THOSE GO OVER IN BOTH DIRECTIONS, BUT WE CAN FOCUS OVER TO THE

6    LEFT AND WE CAN SEE THAT THOSE BUSES CONNECT TO THE MC88410 ON

7    THE FAR LEFT.   ON THE FAR LEFT, THERE YOU GO.

8                 (DEMONSTRATIVE PUBLISHED TO JURY.)

9              **THE WITNESS:**   OKAY.   WHICH IS CONNECTED TO A CACHE

12:25:58:00 10    RAM ARRAY JUST NEXT TO IT, AND THOSE TWO TOGETHER OPERATE AS

11    A -- AS A MEMORY.

12        AND THEN WE SEE DOWN BELOW, WE SEE ANOTHER DATA BUS IN

13    BLUE ON THE LEFT SIDE OF THE FIGURE.

14    **BY MR. HADJIS:**

12:26:20:18 15    **Q.**   IS THAT ONE LABELED "SECOND DATA BUS"?

16    **A.**   IT'S LABELED -- YEAH, SECOND DATA BUS, THAT'S RIGHT.

17    **Q.**   THANK YOU, DR. VAHID.

18        NOW, I BELIEVE YOUR OPINION IS THAT THE CLAIM IS

19    INVALIDATED BY THE MC88410 CACHE CONTROLLER?

12:26:43:00 20    **A.**   BY -- BY SYSTEMS THAT ARE SHOWN IN THAT -- IN THAT MANUAL,

21    YES.

22    **Q.**   GREAT.

23        CAN YOU, BEGINNING WITH YOUR SLIDE 5-40, BEGIN TO EXPLAIN

24    WHY YOU BELIEVE THE USER MANUAL DISCLOSES WHAT'S CLAIMED AT

12:27:02:12 25    CLAIM 2 OF THE '753 PATENT?

VAHID – DIRECT / HADJIS

12:27:04:18  1    **A.**   SURE.

2         IF WE LOOK AT THE UPPER LEFT OF THIS SLIDE, I'VE EXCERPTED

3    THE BEGINNING OF THE CLAIM LANGUAGE FOR CLAIM 2 OF THE '753.

4    AND I'VE HIGHLIGHTED IN RED THE ADDRESS BUS REQUIREMENT.  AND

12:27:22:18  5    IF WE LOOK ON THE LEFT PART OF THE SLIDE, WE SEE AN ADDRESS

6    BUS IN RED.

7         THE CLAIM ALSO REQUIRES FIRST AND SECOND DATA BUSES.  AND

8    I'VE HIGHLIGHTED THAT IN BLUE IN THE CLAIM LANGUAGE.  AND THEN

9    I'VE SHOWN IN BLUE THE TWO DATA BUSES DOWN BELOW, A FIRST DATA

12:27:51:00  10   BUS AND A SECOND DATA BUS.

11        OVER ON THE RIGHT SIDE OF THE SLIDE IS A SORT OF

12   CONTINUATION OF THIS FIGURE THAT WE SEE ON THE LEFT.  IF YOU

13   LOOK AT THE ORANGE BOXED SECTION ON THE LEFT, YOU CAN SEE HOW

14   I'VE TRIED TO NOTE -- I'VE TRIED TO DENOTE THAT THAT

12:28:12:18  15   CORRESPONDS TO THAT GRAY BOX ON THE RIGHT.  AND I'VE ACTUALLY

16   DRAWN IN THE FIRST ADDRESS DATA BUS AND THE FIRST ADDRESS BUS

17   BECAUSE THEY WEREN'T SHOWN IN THAT OTHER FIGURE.  THIS IS

18   FIGURE 4, I THINK.  FIGURE 1-4.

19        SO IF YOU CAN JUST -- YOU KNOW, I WANT TO REPRESENT THAT

12:28:36:00  20   THIS GRAY BOX ON THE RIGHT IS A REPRESENTATION OF THAT ORANGE

21   STUFF ON THE LEFT, THAT ORANGE BOX ON THE LEFT.  OKAY?

22   **Q.**   HOW -- HOW DO YOU KNOW THAT?

23   **A.**   BECAUSE IN THE MANUAL IT EXPLAINS THAT -- THAT THAT

24   PORTION ON THE LEFT IS BEING ADDED TO WITH THE ADDITIONAL GRAY

12:28:56:00  25   BOX AT THE BOTTOM OF THE ARRAY.

12:28:58:27  1    Q.   IS THIS ONE OF THESE INSTANCES IN WHICH YOU KIND OF LOOK

2    UNDER THE HOOD AND YOU --

3    A.   YEAH, THAT'S RIGHT.

4    Q.   -- AND YOU CAN SEE MORE DETAIL?

12:29:06:18  5    A.   THAT'S CORRECT.

6    Q.   NOW, IF YOU COULD CONTINUE.  THE CLAIM, AS I THINK YOU'RE

7    SHOWING IN GREEN, REQUIRES SOME INTERCONNECTION.  HAVE YOU

8    DESCRIBED THAT?

9    A.   THAT'S RIGHT.  SO IN THE CLAIM LANGUAGE ON THE UPPER LEFT,

12:29:22:27 10    THE CLAIM REQUIRES INTERCONNECTING A PLURALITY OF COMPONENTS

11    INCLUDING FIRST, SECOND, THIRD, AND FOURTH COMPONENTS IN A

12    PREDETERMINED WAY.

13        SO OVER ON THE RIGHT, I'VE SHOWN THE PLURALITY OF

14    COMPONENTS PART.  AND I'VE NUMBERED THEM 1, 2, 3, AND 4.  AND

12:29:44:03 15    I'VE EXCERPTED SOME TEXT THAT -- THAT RELATES TO THAT.

16    Q.   WHICH TEXT ARE YOU REFERRING TO ON THE SLIDE?

17    A.   THERE'S SOME TEXT ON THE -- IN THE BOXES ON THE UPPER

18    RIGHT.  AND THERE'S SOME TEXT AT THE BOTTOM RIGHT OF THE

19    SLIDE.

12:30:04:03 20    Q.   ALL RIGHT.  NOW, I PLAN TO MOVE TO THE NEXT SLIDE SO THAT

21    YOU CAN CONTINUE TO EXPLAIN.

22        IS THERE ANYTHING ELSE YOU WANT TO SAY ABOUT THIS ONE

23    BEFORE WE MOVE ON?

24    A.   SO THIS SHOWS THE FIRST PART OF CLAIM 2, THAT ALL THOSE

12:30:23:21 25    PARTS ARE SATISFIED.  WE HAVE AT LEAST ONE ADDRESS BUS.  IT'S

12:30:27:18  1    HIGHLIGHTED UP TOP.  IN FACT, WE HAVE TWO ADDRESS BUSES ON THE

2    RIGHT SIDE OF THE FIGURE.  I'VE MADE ONE ADDRESS BUS RED.  BUT

3    YOU CAN SEE DOWN BELOW, THERE'S A SECOND ADDRESS BUS, AND IT'S

4    NOT COLORED IN.  BUT THERE ARE ACTUALLY TWO.  AND -- AND, YOU

12:30:45:06  5    KNOW, THAT SATISFIES THE "AT LEAST ONE ADDRESS BUS."

6        WE SEE FIRST AND SECOND DATA BUSES ON THE RIGHT THERE.  WE

7    SEE FOUR COMPONENTS, 1, 2, 3, 4.  AND WE CAN SEE THAT THEY ARE

8    INTERCONNECTED IN A PREDETERMINED WAY.  WE CAN SEE HOW THEY'RE

9    CONNECTED TOGETHER RIGHT NOW.

12:31:04:15 10    Q.  THANK YOU.  AND BEFORE WE MOVE ON, IF YOU CAN -- YOU HAVE,

11    ACTUALLY -- I WAS GOING TO ASK YOU TO IDENTIFY THE COMPONENTS

12    BUT YOU'VE DONE THAT WITH THE BLUE BOX.

13    A.  THAT'S RIGHT.  THAT'S RIGHT.

14        MR. HADJIS:  RYAN, IF YOU CAN MOVE TO THE NEXT SLIDE,

12:31:16:27 15    5-41.

16            (DEMONSTRATIVE PUBLISHED TO JURY.)

17    BY MR. HADJIS:

18    Q.  DR. VAHID, CAN YOU CONTINUE ON WITH THE CLAIM LANGUAGE OF

19    CLAIM 2 AND THE MOTOROLA MC88410?

12:31:29:12 20    A.  SURE.  SO ON THE UPPER LEFT OF THE SLIDE, WE SEE THE FIRST

21    PART OF CLAIM 2, WHICH WE JUST WENT OVER.  AND I'VE ADDED A

22    SECOND PART, AND IT'S LABELED "PART A."  AND IT STARTS

23    "PERFORMING ON SAID BUS ARRANGEMENT," AND SO ON.

24        SO WHAT I'VE DONE ON THIS SLIDE IS SHOWN HOW THAT PART OF

12:31:52:12 25    THE CLAIM LANGUAGE IS SATISFIED BY THE MOTOROLA SECONDARY

12:31:58:12  1    CACHE CONTROLLER.  THERE IS DESCRIPTION IN THE USER'S MANUAL

2    OF A FIRST ADDRESS TRANSACTION DEFINING A FIRST DATA TRANSFER

3    BETWEEN COMPONENTS NO. 1 AND COMPONENTS NO. 2.  AND I'VE SHOWN

4    ONE OF THE FIGURES THAT EXPLAINS THAT TRANSACTION AND HOW IT

12:32:19:18  5    WORKS.  AND THAT FIGURE BASICALLY DESCRIBES HOW THE ADDRESS IS

6    PLACED, HOW THE COMPONENTS RESPOND, HOW THE DATA IS

7    TRANSFERRED BACK.

8    **Q.**  WHERE –– WHERE IS THAT FIGURE ON YOUR SLIDE 5-41?

9    **A.**  THAT'S THE LEFT SIDE, THE FIGURE ON THE LEFT SIDE.

12:32:35:06  10          **MR. HADJIS:**  CAN YOU SOMEHOW HIGHLIGHT THAT, RYAN?

11          (DEMONSTRATIVE PUBLISHED TO JURY.)

12    **BY MR. HADJIS:**

13    **Q.**  NOW, AGAIN, WHAT DOES THAT FIGURE ILLUSTRATE ON THE BOTTOM

14    LEFT SIDE THAT RYAN HAS HIGHLIGHTED?

12:32:50:06  15    **A.**  THAT'S SUMMARIZING THE FIRST ADDRESS TRANSACTION BETWEEN

16    COMPONENTS 1 AND 2.

17    **Q.**  OKAY.  GREAT.  THANK YOU.

18    NOW, CAN YOU CONTINUE.

19    **A.**  SURE.

12:33:02:06  20    ON THE RIGHT SIDE, IF WE LOOK AT COMPONENTS 3 AND 4, THOSE

21    TWO CAN ALSO COMMUNICATE.  THERE'S AN ADDRESS TRANSACTION THAT

22    OCCURS BETWEEN 3 AND 4, AND DATA TRANSFER BETWEEN 3 AND 4 IN

23    RESPONSE.

24    AND I'VE EXCERPTED A LITTLE BIT OF TEXT THAT EXPLAINS

12:33:24:15  25    THAT.  IT EXPLAINS THAT THE MC88410 DRIVES THE ADDRESS ONTO

12:33:32:09   1   THE DATA BUS, AND THEN THERE'S AN EXTERNAL DEVICE –– THAT'S

2   WHAT THE NUMBER 4 IS –– THAT SENDS DATA BACK.

3   **Q.**   EXCELLENT.

4      NOW, CAN YOU DESCRIBE THE ADDRESS TRANSACTIONS THAT YOU'VE

12:33:55:12   5   ILLUSTRATED HERE IN CONNECTION WITH THE MC88410 SCHEMATIC?

6   AND TO DO THAT, I'D ASK YOU IF 40 OR 41 IS BETTER, MORE

7   CONVENIENT?   I'M NOT SURE WHICH ONE YOU'D LIKE TO USE.

8   **A.**   LET ME SEE.   DO WE HAVE ANYTHING AFTER 41?   WHAT COMES

9   AFTER THAT?   I COULD USE EITHER ONE.

12:34:16:24   10              **MR. HADJIS:**   42?

11              **THE WITNESS:**   IS IT ANOTHER DIAGRAM?

12                  (DEMONSTRATIVE PUBLISHED TO JURY.)

13              **THE WITNESS:**   YEAH, YEAH.   I THINK.

14   **BY MR. HADJIS:**

12:34:25:18   15   **Q.**   YOU WANT TO DO IT THERE?

16   **A.**   YEAH, 42 IS ––

17   **Q.**   OKAY.   THEN LET'S GO BACK BEFORE YOU DO THAT.

18      IS THERE ANYTHING ELSE THAT ––

19                  (DEMONSTRATIVE PUBLISHED TO JURY.)

12:34:40:18   20   **BY MR. HADJIS:**

21   **Q.**   IS THERE ANYTHING ELSE THAT YOU NEED TO SAY HERE?

22   **A.**   WELL, WE HAVE OUR BUS ARRANGEMENT WITH AT LEAST THE

23   FIRST –– WE HAVE OUR BUS ARRANGEMENT.   THAT'S THE FIRST PART

24   OF THE CLAIM.

12:34:49:09   25      AND THEN THIS PART SHOWS THE FIRST ADDRESS TRANSACTION

12:34:53:27  1  BETWEEN COMPONENTS 1 AND 2.  AND IT EXPLAINS THAT THERE'S A

2  ANOTHER ADDRESS TRANSACTION BETWEEN COMPONENTS 3 AND 4, AND

3  THAT THOSE EACH DEFINE RESPECTIVE DATA TRANSFERS.

4  **Q.**  GREAT.

12:35:11:00  5      **MR. HADJIS:**  RYAN, IF YOU CAN MOVE TO SLIDE 42.

6          (DEMONSTRATIVE PUBLISHED TO JURY.)

7  **BY MR. HADJIS:**

8  **Q.**  DR. VAHID, CAN YOU PLEASE CONTINUE WITH YOUR DESCRIPTION

9  OF THE MC88410 AGAINST CLAIM 2 OF THE '753 PATENT.

12:35:23:12 10  **A.**  SURE.  SO I'VE ADDED THE THIRD AND FINAL PART OF THIS

11  CLAIM.  IT'S THE THIRD PARAGRAPH NOW ON THE LEFT SIDE OF THE

12  SLIDE.

13      AND IF YOU REMEMBER WHAT I EXPLAINED AT THE BEGINNING THAT

14  THAT PART REQUIRES THAT THE DATA TRANSFERS OCCUR

12:35:41:09 15  SIMULTANEOUSLY, THAT YOU HAD THE TWO ADDRESS TRANSACTIONS AND

16  THEN YOU HAD THE TWO DATA TRANSFERS HAPPENING AT THE SAME TIME

17  AT LEAST FOR A PORTION OF TIME.

18      AND SO WE LOOK AT THE SYSTEM HERE ON THE RIGHT.  AND THIS

19  IS A MULTIPROCESSOR SYSTEM, EACH PROCESSOR IS RUNNING.  AND

12:35:57:24 20  YOU WILL HAVE AN ADDRESS TRANSACTION BETWEEN 1 AND 2, WHICH

21  ARE AT THE TOP, OVER AN ADDRESS BUS WHICH ISN'T SHOWN IN THE

22  FIGURE, BUT REMEMBER I DREW IT IN EARLIER.

23      YOU WILL HAVE AN ADDRESS TRANSACTION BETWEEN 3 AND 4 AT

24  THE BOTTOM.  AND BECAUSE THIS IS A MULTIPROCESSOR SYSTEM, YOU

12:36:17:24 25  WILL HAVE THE DATA TRANSACTIONS OVERLAPPING SOMETIMES.  AND

12:36:22:27  1    THEREFORE THIS LAST PART OF CLAIM 2 IS ALSO DESCRIBED BY THE

2    MOTOROLA SYSTEM.

3    **Q.**  NOW, YOU SAID YOU DREW AN ADDRESS BUS INTO THE FIGURE

4    EARLIER.  WHAT CAUSED YOU TO DRAW IT?

12:36:40:03  5    **A.**  OH, IF WE GO BACK TWO SLIDES.

6            (DEMONSTRATIVE PUBLISHED TO JURY.)

7            **THE WITNESS:**  SO REMEMBER -- SO IF YOU LOOK ON THE

8    RIGHT, THAT'S THE FIGURE I WAS JUST SHOWING YOU BUT WITHOUT

9    THE DATA BUS AND ADDRESS BUS DRAWN ONTO IT.  AND WE ZOOM --

12:36:58:18  10   YOU KNOW, THE MANUAL ZOOMS INTO THAT, TO THE LEFT THERE, AND

11   YOU CAN SEE INTERNALLY THAT THERE IS AN ADDRESS AND A DATA BUS

12   INSIDE THERE.

13   **BY MR. HADJIS:**

14   **Q.**  I SEE.  SO YOU'RE DRAWING WHAT'S DISCLOSED IN THE MANUAL?

12:37:13:09  15   **A.**  THAT'S RIGHT.  I -- I'M DRAWING THE ADDRESS BUS AND DATA

16   BUS ON THE RIGHT THERE THAT WAS DISCLOSED IN THE MANUAL IN THE

17   OTHER FIGURE ON THE LEFT.

18   **Q.**  CAN YOU, USING THE COMPONENTS AND THE BUSES THAT YOU'VE

19   IDENTIFIED, EXPLAIN SO RYAN CAN HIGHLIGHT THE INTERPLAY

12:37:34:24  20   BETWEEN THE COMPONENTS, THE ADDRESSES, AND THE DATA

21   TRANSFER --

22   **A.**  OH, SURE.

23   **Q.**  -- THAT IS CLAIMED BY THE '753 PATENT?

24   **A.**  SURE.  SO LOOKING AT THE RIGHT SIDE OF THIS SLIDE, LOOKING

12:37:48:24  25   AT THE COMPONENTS NUMBERED 1 AND 2.  SO COMPONENT NO. 1 WILL

12:37:55:21  1    PROVIDE AN ADDRESS TO COMPONENT NO. 2.  AND –– AND THEN LET'S

2    LOOK DOWN AT 3 AND 4.  COMPONENT NO. 3 WILL PROVIDE AN ADDRESS

3    TO COMPONENT NO. 4.

4              (DEMONSTRATIVE PUBLISHED TO JURY.)

12:38:19:12  5         **THE WITNESS:**  WHOOPS.  4 IS OFF TO THE –– THERE YOU

6    GO.

7       OKAY?  SO THOSE TWO THINGS WILL –– WILL HAPPEN.

8       AND THEN AT SOME POINT, DATA WILL COME BACK.  AND SO DATA

9    WILL COME BACK FROM 2 TO 1 OVER THAT FIRST ADDRESS BUS.  I'M

12:38:40:15  10   SORRY.  OVER THE FIRST DATA BUS.

11              (DEMONSTRATIVE PUBLISHED TO JURY.)

12         **THE WITNESS:**  AND DATA WILL COME BACK FROM 4 TO 3

13   OVER THE SECOND DATABASE.  AND THOSE TWO CAN OCCUR AT THE SAME

14   TIME.

12:38:58:06  15  **BY MR. HADJIS:**

16   **Q.**  NOW, 4 IS OFF TO THE SIDE THERE.  WHY IS THAT?

17   **A.**  THAT IS REFERRED TO AS AN EXTERNAL DEVICE IN THE –– IN THE

18   USER'S MANUAL.  IT COULD BE ANY ONE OF A LARGE NUMBER OF

19   DEVICES THAT CAN BE HANGING OFF OF THAT BUS.

12:39:14:24  20  **Q.**  WHAT KIND OF BUS IS IT CONNECTED TO AS DESCRIBED IN THE

21   MC88410?

22   **A.**  IT'S CONNECTED TO THE SYSTEM ADDRESS BUS AND THE SYSTEM

23   DATA BUS.

24   **Q.**  AND IS THAT KNOWN POP –– IN A POPULAR WAY WITH A

12:39:30:00  25  PARTICULAR TERM OR ACRONYM?

12:39:32:15  1    **A.**  WE WOULD CALL THEM EXTERNAL DEVICES, PERIPHERALS,

2    COMPONENTS.

3    **Q.**  OKAY.

4    **A.**  I MEAN, BUSES CONNECT COMPONENTS.  SO THAT BUS, YOU KNOW,

12:39:41:24  5    NATURALLY WILL HAVE MULTIPLE COMPONENTS HANGING OFF OF IT.

6    **Q.**  SOMETHING YOU MIGHT PLUG INTO SOMETHING ELSE?

7    **A.**  YEAH, THAT'S RIGHT.

8    **Q.**  DR. VAHID, IF YOU CAN TELL ME NOW WHETHER THE DISCUSSION

9    THAT YOU'VE GIVEN SHOWS THAT THE MC88410 USER MANUAL DISCLOSES

12:40:07:27  10   EVERYTHING IN CLAIM 2 OF THE '753 PATENT?

11   **A.**  YES, IT DOES.  DO WE HAVE -- I THINK I HAVE A SLIDE ON

12   THAT SUMMARIZING.  IS THERE A SLIDE AFTER THIS?  OR IS THAT

13   IT?

14              (DEMONSTRATIVE PUBLISHED TO JURY.)

12:40:21:15  15   **BY MR. HADJIS:**

16   **Q.**  43.  IS THAT WHAT YOU'RE LOOKING FOR?

17   **A.**  WELL, WE CAN GO BACK TO 42 HERE FOR A MOMENT.

18   **Q.**  SURE.

19   **A.**  IN ANSWERING YOUR QUESTION, THE FIRST PART OF THE CLAIM IS

12:40:30:03  20   SATISFIED.  WE HAVE AT LEAST ONE ADDRESS BUS, AT LEAST TWO

21   DATA BUSES.  WE HAVE THEM INTERCONNECTED, INTERCONNECTING FOUR

22   COMPONENTS IN A PREDETERMINED WAY.

23      WE HAVE, IN THE SECOND PARAGRAPH THERE, WE HAVE THE FIRST

24   ADDRESS TRANSACTION BETWEEN 1 AND 2.  WE HAVE THE SECOND

12:40:54:06  25   ADDRESS TRANSACTION BETWEEN 3 AND 4.

12:40:56:24  1         (DEMONSTRATIVE PUBLISHED TO JURY.)

2              **THE WITNESS:**  AND EACH OF THOSE DEFINE RESPECTIVE

3    DATA TRANSFERS.

4         AND FINALLY, WE HAVE THE SIMULTANEOUS DATA TRANSFER THAT

12:41:14:03  5    OCCURS OVER THE TWO DATA BUSES.  AND THEY OCCUR BETWEEN

6    COMPONENTS 1 AND 2 AND COMPONENTS 3 AND 4.

7    **BY MR. HADJIS:**

8    **Q.**  DR. VAHID, DID THE U.S. PATENT OFFICE CONSIDER THIS

9    MOTOROLA PRODUCT OR –– OR ITS USER'S MANUAL BEFORE IT GRANTED

12:41:35:03  10   THE '753 PATENTED TO FUSION MICROMEDIA?

11   **A.**  THE '753 PATENT HAS LISTED ON ITS FRONT PAGE A NUMBER OF

12   REFERENCES THAT WERE USED DURING THE EXAMINATION.  THE

13   MOTOROLA SECONDARY CACHE CONTROLLER IS NOT LISTED SO I DON'T

14   BELIEVE THEY WOULD HAVE SEEN IT.

12:41:55:27  15        **MR. HADJIS:**  RYAN, PLEASE TURN TO THE NEXT SLIDE,

16   5-43.

17        (DEMONSTRATIVE PUBLISHED TO JURY.)

18   **BY MR. HADJIS:**

19   **Q.**  DR. VAHID, WHAT DOES THIS SLIDE ILLUSTRATE?

12:42:05:24  20   **A.**  SO WE'VE BEEN TALKING ABOUT THE '753.  AND WITH RELATION

21   TO THE ACCUSED PRODUCTS, THE ACCUSED FREESCALE PRODUCTS, I

22   SHOWED THAT THE FOUR COMPONENTS THAT WERE ACCUSED ARE NOT

23   INTERCONNECTED IN A PREDETERMINED WAY BECAUSE OF THOSE BLUE

24   AND PEACH BOXES THAT I SHOWED YOU IN BETWEEN, AS WELL AS THOSE

12:42:26:06  25   MULTIPLE PATHS THAT THEY COULD TAKE.

12:42:28:18  1       SO THE ACCUSED PRODUCTS DO NOT INFRINGE BECAUSE THEY DON'T

2   IMPLEMENT THAT IMPORTANT PART OF THE CLAIM.

3       I'VE ALSO SHOWN THAT THE MOTOROLA SECONDARY CACHE

4   CONTROLLER CARRIED OUT ALL OF THE PARTS OF THE CLAIM.  IT WAS

12:42:43:24  5   PUBLISHED IN A USER'S MANUAL, AND THAT WAS PUBLISHED A GOOD

6   FIVE YEARS BEFORE THE PATENT WAS ISSUED AND WAS FILED.  AND

7   THEREFORE THE '753 PATENT IS NOT VALID.

8   **Q.**  YOU EXPLAINED YOUR NON-INFRINGEMENT OPINION IN CONNECTION

9   WITH SOME I.MX PRODUCTS EARLIER.  DO YOU RECALL?

12:43:11:00  10  **A.**  YES.

11  **Q.**  DOES THAT OPINION APPLY TO ALL OF THE ACCUSED PRODUCTS IN

12  THIS CASE?

13  **A.**  YES, THAT'S RIGHT.

14  **Q.**  OKAY, DR. VAHID, LET'S TURN NOW TO THE '845 PATENT.

12:43:28:00  15          **MR. HADJIS:**  RYAN, IF YOU COULD MOVE TO SLIDE 5-44.

16              (DEMONSTRATIVE PUBLISHED TO JURY.)

17  **BY MR. HADJIS:**

18  **Q.**  DR. VAHID, PLEASE LOOK IN YOUR WITNESS BINDER AT DTX0063.

19      AND WHILE YOU DO THAT, I'LL HAVE RYAN TURN TO SLIDE 5-45

12:43:49:00  20  OF YOUR PRESENTATION.

21              (DEMONSTRATIVE PUBLISHED TO JURY.)

22          **THE WITNESS:**  (REVIEWING DOCUMENT.)

23      OKAY.  I'VE TURNED TO THAT PAGE.

24  **BY MR. HADJIS:**

12:43:57:15  25  **Q.**  ARE YOU FAMILIAR WITH DTX0063?

12:44:01:06  1    **A.**   YES.   THIS IS THE '845 PATENT THAT I'VE STUDIED.

2    **Q.**   WHO'S THE ASSIGNEE OF THAT PATENT?

3    **A.**   ANALOG DEVICES.

4    **Q.**   DOES IT MENTION MEDIATEK?

12:44:15:18  5    **A.**   NO, IT DOES NOT.

6    **Q.**   HAVE YOU REVIEWED THE PATENT IN THE CONTEXT OF YOUR WORK

7    ON THIS CASE?

8    **A.**   YES, I HAVE.

9    **Q.**   AND WHAT HAVE YOU CONCLUDED?

12:44:29:27  10   **A.**   THAT THE ACCUSED I.MX PRODUCTS OF FREESCALE DO NOT

11   INFRINGE THE '845.

12   **Q.**   DR. VAHID, LET'S FIRST START WITH CLAIM 21.   I'D LIKE TO

13   TURN YOU TO DDX5-46.

14                   (DEMONSTRATIVE PUBLISHED TO JURY.)

12:44:53:15  15   **BY MR. HADJIS:**

16   **Q.**   DO YOU BELIEVE THAT FREESCALE'S ACCUSED CHIPS INFRINGE

17   CLAIM 21 OF THE PATENT?

18   **A.**   NO.   THERE ARE A COUPLE OF IMPORTANT DIFFERENCES.

19   **Q.**   WHICH CHIPS ARE ACCUSED OF INFRINGING CLAIM 21?

12:45:08:24  20   **A.**   I BELIEVE THAT'S JUST THE I.MX51 AND THE -53.

21   **Q.**   WHAT ARE THE DIFFERENCES BETWEEN CLAIM 21 OF THE '845

22   PATENT AND THE ACCUSED I.MX CHIPS?

23   **A.**   WELL, I HAVE SOME SLIDES TO SHOW THAT.   OR DO YOU WANT A

24   HIGH-LEVEL SUMMARY?

12:45:54:03  25   **Q.**   JUST HIGH-LEVEL.   YOU SAID A COUPLE.   JUST IDENTIFY THE

12:45:56:24  1  COUPLE, AND THEN WE'LL DRILL DOWN ON EACH ONE.

2  **A.**  OH, SURE.

3  SO ONE OF THEM IS THAT THERE IS A MISSING COMPONENT, A

4  MISSING SLAVE.  AND THE OTHER ONE IS THAT THE MASTERS MAY NOT

12:46:11:03  5  HAVE THE SAME PRIORITY.

6  **Q.**  EXCELLENT.  THANK YOU.

7  **MR. HADJIS:**  RYAN, IF YOU CAN TURN TO SLIDE 47.

8  **MR. DOWD:**  OBJECTION.  YOUR HONOR, SLIDE 47

9  CORRESPONDS TO STRICKEN SLIDE 52 IN YOUR HONOR'S ORDER AT

12:46:29:06  10  DOCKET 658, AND IS NOT IN THE EXPERT'S REPORT, PARTICULARLY AT

11  THE CITED PARAGRAPHS.

12  (PAUSE IN THE PROCEEDINGS.)

13  **MR. HADJIS:**  YOUR HONOR, WHY DON'T WE MOVE ON, AND

14  WE'LL CIRCLE BACK TO THIS ONE.

12:47:50:15  15  **THE COURT:**  THAT'S FINE.

16  **MR. HADJIS:**  IF THAT'S OKAY.

17  (PAUSE IN THE PROCEEDINGS.)

18  **BY MR. HADJIS:**

19  **Q.**  DR. VAHID, I'D LIKE TO FLIP THIS A LITTLE BIT BY STARTING

12:48:19:03  20  WITH THE SECOND POINT YOU MADE, THE SAME PRIORITY POINT.

21  **A.**  SURE.

22  **MR. HADJIS:**  RYAN, IF YOU CAN TURN TO SLIDE 49.

23  **MR. DOWD:**  OBJECTION, YOUR HONOR.  THIS IS THE SAME

24  ISSUE.  THIS SLIDE IS THE SAME AS STRICKEN SLIDE 54.  IT'S NOT

12:48:47:12  25  IN THE EXPERT'S REPORT.  HE WAS SPECIFICALLY ASKED ABOUT THE

12:48:51:03  1    ISSUE IN THIS SLIDE AT -- DURING HIS DEPOSITION, PAGE 265,

2    LINES 3 TO 11, AND THEN AGAIN 265, LINE 22 DOWN TO LINE 26.

3         THE COURT:  HOLD ON, MR. DOWD.  I'M TAKING A LOOK AT

4    THE PARAGRAPHS THAT ARE REFERENCED.

12:49:15:06  5              (PAUSE IN THE PROCEEDINGS.)

6         THE COURT:  MR. HADJIS?

7              (PAUSE IN THE PROCEEDINGS.)

8         MR. HADJIS:  YES, YOUR HONOR.  IF YOU LOOK AT

9    DR. VAHID'S REBUTTAL REPORT.

12:50:09:00  10        THE COURT:  RIGHT.  I'M AT 116.

11        MR. HADJIS:  116, YES, CORRECT.  YOU CAN SEE IT -- IT

12   THERE.  THE FIGURE AT THE BOTTOM OF THAT PARAGRAPH IS WHAT

13   WE'RE STARING AT RIGHT HERE.

14        THE COURT:  RIGHT.  THE FIRST DATA PROCESSING SYSTEM.

12:50:30:21  15        MR. HADJIS:  THAT'S RIGHT.

16        THE COURT:  OKAY.  NEXT?

17        MR. HADJIS:  119.

18        THE COURT:  YES?

19        MR. HADJIS:  123.

12:50:38:21  20        THE COURT:  HOLD ON.  SO 119 GIVES ME WHAT?

21        MR. HADJIS:  SECOND DATA PROCESSING SUBSYSTEM COUPLED

22   TO SECOND BUS AS A SECOND BUS MASTER.  THAT'S THE --

23        THE COURT:  HOLD ON.  SO I SEE THE --

24    I SEE A REFERENCE TO AN IPU.  IS THAT THE SAME AS THE

12:51:05:18  25   IPUV3M THAT'S REFERENCED THERE?  BECAUSE I DON'T -- WELL, I

12:51:17:12  1   SEE THAT ON 121.  IN THAT THE SAME ONE?  OKAY.

2          **MR. HADJIS:**  123.

3          **THE COURT:**  UM-HMM.

4          **MR. HADJIS:**  129.

12:51:31:18  5          **THE COURT:**  WAIT.  123 GIVES ME WHAT?

6          **MR. HADJIS:**  123 IS TAKING YOU THROUGH THE SCHEMATIC

7   AND THE INTERCONNECTIONS.

8          **THE COURT:**  OKAY.  I SEE IT.

9          **MR. DOWD:**  YOUR HONOR, IF I COULD PAUSE ON THAT --

12:51:50:21  10          **THE COURT:**  NO.  NOT YET.

11          **MR. DOWD:**  OKAY.

12          **MR. HADJIS:**  129.

13              (PAUSE IN THE PROCEEDINGS.)

14          **MR. HADJIS:**  133.

12:52:12:03  15          **THE COURT:**  YOU'RE SAYING PARAGRAPHS BUT YOU'RE NOT

16   TELLING ME WHAT -- WHAT IS THERE.  I'M -- I'M NOT SEEING 129

17   ON HERE.

18              (PAUSE IN THE PROCEEDINGS.)

19          **MR. HADJIS:**  YEAH, SO IF YOU LOOK AT ONE -- I THINK

12:52:44:00  20   IT'S CLEAR IF YOU LOOK AT 134.  IT'S REALLY 133 THROUGH 135,

21   BUT IF YOU LOOK AT 134.

22          **THE COURT:**  ALL RIGHT.  HOLD ON.

23              (PAUSE IN THE PROCEEDINGS.)

24          **MR. HADJIS:**  THAT'S WHERE I BELIEVE IT'S MOST

12:53:07:21  25   CLEAREST.

12:53:08:18  1          THE COURT:  AND THEN YOUR LAST PIECE?

2          MR. HADJIS:  WELL, I THINK THAT'S IT.

3          THE COURT:  WELL, WHERE IS THE ESDCTLV2?

4          MR. HADJIS:  YEAH.  IF YOU LOOK AT THE FIGURE UNDER

12:53:26:03  5     PARAGRAPH 134, YOU WILL NOTICE OUT OF ARB1, THERE'S A MAGENTA

6     HIGHLIGHT OVER A BUS.  AND ARB1 IS THE TOP RIGHT-HAND EXIT

7     FROM THE LARGE VERTICAL RECTANGLE TOWARDS THE -- DO YOU SEE

8     IT?

9          THE COURT:  I SEE IT.  THE QUESTION IS WHETHER IT HAS

12:53:53:00 10     BEEN IDENTIFIED AS IT IS IN THIS -- AS IT HAS IN DDX5-49.

11          MR. HADJIS:  YEAH, AND THE POINT IS, AS YOU CAN SEE

12     HERE, YOUR HONOR, THAT BUS LEADS TO NOWHERE.  THAT'S WHY IT

13     STOPS.  IT'S JUST A MAGENTA BUS THAT -- THAT STOPS.  AND WHAT

14     YOU SEE ON SLIDE 5-49 IS THE SAME THING.  IT'S THIS -- THAT

12:54:21:06 15     DR. VAHID HAS CIRCLED THAT PORTION OF THE FIGURE TO SHOW WHAT

16     HE WANTS TO SHOW WITH REGARD TO THE SECOND SLAVE SUBSYSTEM,

17     THE -- OR IT LEADS TO THE ESDCTLV2.  SO IT'S -- IT'S THE SAME

18     THING.  IT'S JUST -- HE'S CIRCLED IT.

19          MR. DOWD:  YOUR HONOR, IF I COULD RESPOND.

12:54:45:27 20          THE COURT:  YES.

21          MR. DOWD:  THE REASON I ROSE IS BECAUSE OF THE GREEN

22     BOX ARB1, THAT IS THE CORE OF THE PROBLEM.  IN THE PARAGRAPHS

23     THAT ARE CITED, THERE'S NO DISCUSSION OF ARB1.  AND THIS SLIDE

24     IS BEING PRESENTED AS SOMETHING HAVING TO DO WITH A CLAIM

12:55:00:03 25     LIMITATION THAT IS SHOWN AT THE TOP IN THE BLUE.  SPECIFICALLY

12:55:04:18  1    THE SAME PRIORITY ISSUE.  AND WE'RE GOING TO BE MOVING TO THAT

2    ISSUE OVER THE COURSE OF THESE NEXT SLIDES.

3       THE -- THERE ARE TWO ISSUES CURRENTLY.  ONE IS WE JUST

4    WENT THROUGH THOSE PARAGRAPHS THAT ARE SUPPOSED TO BE THE

12:55:19:15  5    SUPPORT FOR TALKING ABOUT WHAT ARB1 DOES.  THERE IS NO OPINION

6    IN THOSE PARAGRAPHS ABOUT WHAT ARB1 DOES.  SECOND, THERE IS

7    ONLY IN THOSE PARAGRAPHS AN IDENTIFICATION OF WHAT

8    DR. ASANOVIC HAS IDENTIFIED AS BEING THE COMPONENTS OF THE

9    SYSTEM.

12:55:36:27 10       THERE IS NO OPINION IN THERE WITH RESPECT TO THIS SAME

11    PRIORITY TERM.  SO THAT'S -- THAT'S POINT ONE.  SO THERE'S NO

12    DISCUSSION OF ARB1.  THERE'S NO DISCUSSION ABOUT SAME PRIORITY

13    IN THE CONJUNCTION OF ARB1 WHICH IS WHERE THIS IS AND WHERE

14    IT'S GOING.

12:55:53:15 15       POINT TWO IS -- AND I DON'T WANT TO REINFORCE IT RIGHT

16    NOW, BUT WE JUST HAD FROM COUNSEL A STATEMENT ABOUT --

17         **THE COURT:**  YEAH, NO, I GOT IT.

18         **MR. DOWD:**  YOU UNDERSTAND THAT?

19         **THE COURT:**  OKAY.

12:56:09:03 20         **MR. HADJIS:**  YOUR HONOR, I'D LIKE TO POINT YOU TO

21    ANOTHER PARAGRAPH AND ANOTHER FIGURE NOW THAT I HEAR COUNSEL

22    IDENTIFYING ARB1.

23         **THE COURT:**  OKAY.

24         **MR. HADJIS:**  IF YOU LOOK AT PARAGRAPH 129.

12:56:20:21 25         **THE COURT:**  I'M GOING TO STOP YOU RIGHT NOW.

12:56:30:03 1     LADIES AND GENTLEMEN, WE ONLY HAVE 30 MINUTES LEFT FOR

2     TODAY.  IT'S MY EXPECTATION THAT AFTER DR. VAHID, DEFENDANTS

3     HAVE JUST ONE MORE WITNESS AND THEN THEY WILL REST.

4          MR. HADJIS:  YOU'RE ABSOLUTELY RIGHT, YOUR HONOR.

12:56:44:12 5          THE COURT:  YEAH, SO WE'RE ON TRACK.  I'M GOING TO

6     SORT THROUGH THESE SO THAT TOMORROW, PRESENTATION WILL GO ON

7     WITHOUT ANY INTERRUPTIONS.  OKAY?

8     SO WHY DON'T YOU GUYS RELAX FOR THE REST OF THE DAY.

9     WE'LL STAND IN RECESS WITH YOU UNTIL 8:30 TOMORROW.

12:57:01:24 10          (JURY EXCUSED FOR THE EVENING RECESS.)

11     (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

12     OF THE JURY.)

13          THE COURT:  EVERYONE CAN SIT DOWN.  THE JURY IS NO

14     LONGER IN THE COURTROOM.

12:57:56:18 15          THE WITNESS:  YOUR HONOR, MIGHT I STEP DOWN?

16          THE COURT:  YOU MAY.

17     ALL RIGHT.  THE OPINION, AS I UNDERSTAND IT, IS THAT THERE

18     IS NO SECOND SLAVE SUBSYSTEM, OR AT LEAST THAT'S WHAT THE

19     SUMMARY SAYS.  WHY THIS HAS TO BE SO DIFFICULT AND WHY THIS

12:58:21:27 20     ISN'T COPIED FROM A REPORT IS BEYOND ME.  BUT I GUESS I'LL

21     UNDERSTAND IT SHORTLY TO THE EXTENT IT'S THERE.  OTHERWISE

22     IT'S STRICKEN.

23     SO ARB1 IS NOT HIGHLIGHTED IN THE REPORT.

24          MR. HADJIS:  YOUR HONOR, IT IS.  PARAGRAPH 129, IT IS

12:58:46:18 25     ABSOLUTELY EXPRESSLY MENTIONED.

12:58:48:06  1            THE COURT:  WAIT.  IT'S --

          2                   (PAUSE IN THE PROCEEDINGS.)

          3            MR. HADJIS:  AND I'D ALSO LIKE TO DRAW YOUR ATTENTION

          4    TO THE FIGURE AT THE TOP OF THE NEXT PAGE BELOW 129 WHICH

12:59:38:12  5    SHOWS THAT CONNECTION BETWEEN ARB1 AND THE ESDCTLV2.

          6            THE COURT:  OKAY.  SO I'M -- I'M SEEING THAT.

          7            MR. DOWD:  AND, YOUR HONOR, THE ISSUE IS NOT WITH THE

          8    SECOND SLAVE SUBSYSTEM.  WE'RE NOT TALKING ABOUT THAT ON

          9    SLIDE 49.  AS THE TITLE BAR OF THIS SLIDE SAYS, IT'S NO

13:00:03:12 10    EVIDENCE OF SAME PRIORITY.  SO THE LIMITATION THAT MR. HADJIS

         11    IS DIRECTING THE WITNESS TO IS THE SAME PRIORITY LIMITATION,

         12    WHICH IS A DIFFERENT LIMITATION OF THE CLAIM.

         13        AND THE REPRESENTATION THAT IS GOING TO BE MADE OR THAT

         14    HAS BEEN MADE IS THAT ARB1, WHICH IS THE -- WHICH IS THE GREEN

13:00:26:00 15    BOX ON SLIDE 49, THAT THAT IS RELEVANT TO THE SAME PRIORITY

         16    AND WHETHER OR NOT THERE'S EVIDENCE OF THE SAME PRIORITY IN

         17    THE ACCUSED DEVICES.

         18            THE COURT:  OKAY.  COULD WE -- COULD SOMEONE -- OH,

         19    NOT SOMEONE, MR. HADJIS, POINT ME TO THE OPINION THAT THIS

13:00:45:03 20    SLIDE REPRESENTS, THAT IS, WHAT ALL OF THIS -- ALL OF THESE

         21    PARAGRAPHS ARE LEADING TO AN OPINION ON 135?  IS THAT IT?

         22            MR. HADJIS:  WELL, NOW THAT -- I WANT TO DOUBLE-CHECK

         23    BUT --

         24            THE COURT:  WELL, MAYBE I SHOULD HAVE DR. VAHID COME

13:01:08:27 25    BACK HERE AND TELL ME --

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

13:01:10:15  1          MR. HADJIS:  WELL --

2          THE COURT:  -- WHAT HIS OPINION IS.

3          MR. HADJIS:  I COULD DOUBLE-CHECK WITH A COLLEAGUE.

4     BUT I THINK -- I JUST WANT TO MAKE SURE I GOT IT ALL.  BUT

13:01:17:18  5     STARTING ON PAGE 52.  IF THIS IS WHAT NOW COUNSEL IS REFERRING

6     TO, THE ARB1 ARBITRATION AND THE PRIORITY DISCUSSION, YOU CAN

7     SEE FROM THE HEADER, BOLD NUMBER 1 ON PAGE 52, REQUESTS FROM

8     THE ARM AND THE IPU ARBITRATED BY ARB1 ARE NOT THE SAME

9     PRIORITY, AND REQUESTS FROM THE ARM OR IPU ARE NOT GUARANTEED

13:01:47:12 10     A GREATER PORTION OF AVAILABLE BANDWIDTH.

11          THAT -- THAT'S WHERE I BELIEVE --

12          MR. DOWD:  YES, YOUR HONOR, AND I -- I WOULD LIKE TO

13     TAKE -- I'M GLAD THAT MR. HADJIS HAS TAKEN US THERE BECAUSE

14     WHAT YOU'LL SEE ON SLIDE 52, WHICH IS WHAT WE'RE BUILDING TO

13:02:04:03 15     ABOUT NO EVIDENCE OF SAME PRIORITY, IS A PARAGRAPH 49.2.5.

16          THE COURT:  HOLD ON.  HOLD ON.

17          MR. HADJIS:  YOUR HONOR, I CAN CLEAR THIS UP --

18          MR. DOWD:  YOUR HONOR --

19          MR. HADJIS:  -- REALLY QUICKLY.

13:02:16:00 20          THE COURT:  STOP.

21          MR. -- YES, MR. HADJIS.

22          MR. HADJIS:  SO WE DID A LITTLE SHIFTING LAST NIGHT,

23     AS YOU KNOW, WITH THE SLIDES.  I GUESS COUNSEL HAS DEFTLY

24     POINTED OUT A TYPO HERE.  THIS IS IN THE SLIDE SERIES OF "NO

13:02:34:00 25     SECOND SLAVE SUBSYSTEM" AND THE HEADER HERE WAS NOT CHANGED

13:02:38:24 1   ACCIDENTALLY.  SO IT SHOULD SAY ON THERE "NO SECOND SLAVE

2   SUBSYSTEM."  WHAT I HAD POINTED YOU TO BEFORE WAS WHAT'S BEING

3   DESCRIBED HERE.

4         MR. DOWD:  WELL, TWO THINGS, YOUR HONOR.

13:02:51:12 5         THE COURT:  HOLD ON.

6     SO FIRST OF ALL, THE HEADER IS WRONG.  IS THAT WHAT I'M

7   HEARING?  YES OR NO.

8         MR. HADJIS:  YES.

9         THE COURT:  SO THIS -- BECAUSE THERE ARE TWO

13:03:02:12 10  ASSERTIONS BEING MADE WITH RESPECT TO CLAIM 21:  ONE, THAT

11  THERE'S NOT THE SAME -- NO EVIDENCE OF THE SAME PRIORITY; AND

12  TWO, THAT THERE'S NO SECOND SLAVE SUBSYSTEM.  CORRECT?

13        MR. DOWD:  YOUR HONOR --

14        MR. HADJIS:  RIGHT.

13:03:16:24 15       MR. DOWD:  -- IF I MAY RESPOND.  IF THE HEADER IS

16  WRONG --

17        THE COURT:  NO.  HOLD ON.  HOLD ON.

18     AM I RIGHT?  CAN SOMEONE ANSWER?

19        MR. HADJIS:  YEAH, YOU ARE.  REMEMBER, WE WERE GOING

13:03:24:06 20  TO GO FIRST THROUGH THE NO -- "NO SLAVE SUBSYSTEM," I BELIEVE.

21        THE COURT:  AND THEN YOU SAID, NO, LET'S -- WE'RE

22  GOING TO MOVE TO THE NEXT TOPIC.

23        MR. DOWD:  EXACTLY.

24        THE COURT:  AND THE NEXT TOPIC WAS "NO EVIDENCE OF

13:03:39:09 25  THE SAME PRIORITY."

13:03:42:03  1        **MR. DOWD:**  THAT'S CORRECT, YOUR HONOR.  AND THE

2   REPRESENTATION THAT WAS JUST MADE AS, "WELL, THIS IS JUST AN

3   ERROR IN THE HEADER," IF THE HEADER IS WRONG, THEN THE

4   HIGHLIGHTED PORTION, THE BOLDED PORTION OF THE CLAIM IS ALSO

13:03:52:12  5   WRONG.  BECAUSE ON SLIDE 49, THE ONLY THING IN THE CLAIM THAT

6   IS BOLDED IS THE -- IS THE SAME PRIORITY ISSUE.

7        SO THIS IS NOT JUST A TYPO.

8        **THE COURT:**  WELL, IT MAY BE.  IT WAS 4:00 A.M.

9        **MR. DOWD:**  FAIR ENOUGH, YOUR HONOR.  BUT MR. HADJIS

13:04:10:06 10   JUST TOOK US TO SLIDE 52.  AND THE ARGUMENT THAT IS PRESENTED

11   OVER THE SLIDES THAT ARE COMING IS AN ARGUMENT ABOUT THE

12   DYNAMIC PRIORITY.  AND HE'S GOING TO ARGUE THAT SOMETHING

13   ABOUT WHY DYNAMIC PRIORITY DOESN'T GIVE YOU EVIDENCE OF SAME

14   PRIORITY.  THAT'S WHAT'S PRESENTED OVER THOSE SLIDES.

13:04:30:24 15        I WOULD DIRECT YOUR HONOR TO PARAGRAPH 152 OF THE REPORT

16   DURING WHICH -- AT WHICH HE SAYS -- THIS IS THE ONLY PORTION

17   OF THE REPORT THAT ADDRESSES DYNAMIC PRIORITY.  HE SAYS:

18        "THE FIXED PRIORITY ARBITRATION SCHEME IMPLEMENTED BY THE

19   FAST ARBITRATION UNIT ALSO COMES WITH A DYNAMIC PRIORITY

13:04:51:12 20   FEATURE AND A PAGE HIT/MISS FEATURE THAT CAN RESULT IN A LOWER

21   PRIORITY MODULE BEING GIVEN ACCESS TO THE SLAVE."

22        THERE'S SOME CITATION.  AND HERE'S THE KEY POINT.

23        "HOWEVER, THESE ARBITRATION FEATURES DO NOT AFFECT MY

24   ANALYSIS."

13:05:10:06 25        SO THE DYNAMIC PRIORITY DOES NOT AFFECT HIS ANALYSIS.

13:05:15:24  1    THAT WAS PROBLEMATIC SO WE ASKED ABOUT IT.  AND WE ASKED --

2    I'M ASKING ABOUT THE DYNAMIC PRIORITY.

3            THE COURT:  DR. VAHID, COME ON BACK.

4            MR. DOWD:  IF I CAN DIRECT YOUR HONOR TO PAGES 265

13:05:28:21  5    AND 266, THAT'S WHERE THIS WAS ASKED ABOUT.  AND THE TESTIMONY

6    AT THE DEPOSITION WAS "I DON'T KNOW WHAT THIS IS" --

7            MR. HADJIS:  YOUR HONOR --

8            MR. DOWD:  -- "AND I CAN'T REMEMBER WHY IT DOESN'T

9    IMPACT MY OPINIONS."

13:05:42:12 10        THAT WAS THE STATE OF PLAY BEFORE TRIAL.  NOW, WE'VE GOT

11    GIVEN TO US AT 4:00 A.M. A WHOLE SERIES OF SLIDES THAT ARE --

12            THE COURT:  ALL RIGHT.  WE'RE GOING TO --

13            MR. DOWD:  -- ABOUT DYNAMIC PRIORITY.

14            THE COURT:  I'M GOING TO WALK THROUGH IT WITH THE

13:05:54:06 15    EXPERT BECAUSE I'M NOT COMFORTABLE WITH ANY OF THIS.  SO LET'S

16    SEE.

17        SLIDES BEING USED FOR THE EXPERT OPINION WITH RESPECT TO

18    THERE BEING NO -- NO EVIDENCE OF THE SAME PRIORITY.  I'M

19    SEEING DDX5-50.

13:06:19:15 20    DO YOU HAVE YOUR SLIDE DECK, DR. VAHID?

21            THE WITNESS:  IF WE COULD PULL IT UP, THAT WOULD

22    HELP.

23                    (DEMONSTRATIVE PUBLISHED.)

24            THE COURT:  50 THROUGH 55.

13:06:29:00 25    DO YOU HAVE YOUR REPORT IN FRONT OF YOU, SIR?

13:06:34:06  1          THE WITNESS:  YES, I DO.

2          THE COURT:  ALL RIGHT.  TELL ME WHERE YOUR OPINION IS

3  WITH RESPECT TO THERE BEING NO EVIDENCE OF THE SAME PRIORITY.

4          THE WITNESS:  (REVIEWING DOCUMENT.)

13:06:55:21  5          THE COURT:  AND IF YOU WANT TO HELP HIM, MR. HADJIS,

6  GO AHEAD.

7          THE WITNESS:  LOOKS LIKE IT STARTS ON PARAGRAPH 144.

8          THE COURT:  THE REBUTTAL REPORT?

9          THE WITNESS:  YES.

13:07:05:03 10              (PAUSE IN THE PROCEEDINGS.)

11          THE COURT:  AND IN LAYMAN'S TERMS, AS YOU WOULD TELL

12  A JURY, JUST OVERVIEW, WHAT IS YOUR -- WHAT IS YOUR BASIC

13  OPINION ON THAT?

14          THE WITNESS:  THE BASIC OPINION IS THAT THE -- THE

13:07:32:09 15  TWO MASTERS THAT WERE ACCUSED HAVE A DEFAULT AND RECOMMENDED

16  SETTING WHERE THE PRIORITIES ARE DIFFERENT.  AND I CAN FIND NO

17  EVIDENCE THAT THOSE WOULD EVER BE SET THE SAME.  IN FACT, I

18  FIND IN THE USER'S MANUAL A WARNING AGAINST CHANGING THE

19  VALUES.

13:08:03:06 20     SO I'LL ULTIMATELY --

21          THE COURT:  SO --

22          THE WITNESS:  -- ULTIMATELY, I DON'T BELIEVE THE

23  SYSTEM WOULD WORK.  I THINK THERE'S A HIGH CHANCE IT WOULD NOT

24  WORK IF YOU SET THEM TO THE SAME PRIORITY.

13:08:20:03 25          THE COURT:  COULD SOMEBODY GIVE HIM -- DOES ANYBODY

13:08:22:09  1      HAVE A HARD COPY OF THESE FIVE SLIDES?

2           SO THE FIRST PART IS WHERE -- SO LET'S BUILD THAT

3      ACCORDING TO THESE FIVE SLIDES.  HOW DO YOU BUILD THAT

4      OPINION?

13:08:33:27  5              **THE WITNESS:**  OKAY.  SO ON THIS FIRST SLIDE HERE, I

6      SHOW THAT -- ARE WE GOOD?

7              **THE COURT:**  GO AHEAD.  JUST GIVE -- IT MAY HELP HIM

8      TO BE ABLE TO LOOK AT ALL FIVE.

9              **THE WITNESS:**  I SHOW THAT THE ARB1 IS THE ARBITER OF

13:08:50:00 10     INTEREST BECAUSE THAT'S -- THE ACCUSED COMPONENTS WERE

11     CONNECTED THROUGH ARB1 TO THE SLAVE SUBSYSTEM.

12             **THE COURT:**  ALL RIGHT.  AND WHERE DO I FIND THAT?

13             **THE WITNESS:**  THAT WOULD BE THE HEADING ON PAGE 52,

14     JUST BEFORE PARAGRAPH 144.

13:09:19:06 15             **THE COURT:**  OKAY.  IS THERE ANY DISPUTE THAT THAT'S

16     WHAT'S IN PLAY HERE, MR. DOWD?

17             **MR. DOWD:**  IF I UNDERSTAND YOUR HONOR'S QUESTION, IS

18     THERE ANY DISPUTE THAT THERE'S A -- AN ISSUE WITH RESPECT TO

19     THE SAME PRIORITY LIMITATION?  IS THAT THE QUESTION?

13:09:31:00 20             **THE COURT:**  NO.  MY QUESTION IS, IS THERE ANY DISPUTE

21     THAT THE ARB1 IS THE ACCUSED --

22                         (PAUSE IN THE PROCEEDINGS.)

23             **THE COURT:**  WHAT'S THE WORD I'M LOOKING FOR?  IS IT

24     THE -- THE ACCUSED MASTER, RIGHT?  THAT'S WHAT YOU SAID?

13:09:58:27 25             **THE WITNESS:**  THERE'S TWO MASTERS, AND THEY GO

13:10:00:18  1    THROUGH ARB1 TO GET TO THE SLAVE.

2              **MR. DOWD:**  AND, YOUR HONOR, THE ISSUE IS --

3              **THE COURT:**  YOU SAID, THOUGH, THE ACCUSED -- THAT THE

4    ARB1 IS THE ACCUSED --

13:10:14:27  5              **THE WITNESS:**  ARBITER.

6              **MR. DOWD:**  YOUR HONOR --

7              **THE COURT:**  HOLD ON, MR. DOWD.

8              **THE WITNESS:**  ACTUALLY, YOUR HONOR, THE ARBITRATION

9    UNIT IS THE ACCUSED ARBITER.  AND THE ARM AND THE IPU ARE THE

13:10:27:00 10   ACCUSED COMPONENTS GOING TO THE SLAVE, AND THEY GO THROUGH

11   ARB1.

12             **THE COURT:**  AND THIS FIGURE IS SOMEHOW REFERENCED IN

13   YOUR REPORT?

14             **THE WITNESS:**  WHICH FIGURE?  THE SLIDE HERE, 5-50?

13:10:55:21 15             **THE COURT:**  YES.  WHERE DOES THAT COME FROM?

16             **THE WITNESS:**  WELL, WE REFERENCED THE REFERENCE

17   MANUAL, RIGHT?  AND THEN THE BOX ON THE RIGHT IS TAKEN FROM A

18   VARIETY OF FIGURES THAT HAVE BEEN APPEARING THROUGHOUT,

19   THROUGHOUT THIS SECTION.

13:11:11:21 20             **THE COURT:**  WELL, THAT'S WHY I'M FOCUSED ON YOUR

21   REPORT.  BECAUSE YOU TOLD ME THAT I CAN FIND THE OPINIONS WITH

22   RESPECT TO THIS CHUNK OF SLAVES -- SLIDES AT 144 THROUGH --

23   WELL, BEGINNING AT 144.

24             **THE WITNESS:**  THAT'S RIGHT.

13:11:43:06 25             **THE COURT:**  OKAY.  SO 134 PRECEDES 144, BUT THAT MAY

13:11:46:21   1   OR MAY NOT BE RELEVANT.

2        IS THERE A DISPUTE THAT THIS FIGURE ON 5-50, RIGHT-HAND

3   SIDE, IS NOT AT ISSUE?  YES OR NO, MR. DOWD?

4            **MR. DOWD:**  THE -- THE -- AS I UNDERSTAND WHAT'S ON

13:12:10:09   5   SLIDE 50, ON THE RIGHT-HAND SIDE IS A BLOCK THAT IS CALLED THE

6   M4IF BLOCK, AND THAT ENTIRE BLOCK IS WHAT IS ACCUSED OF BEING

7   THE BUS ARBITRATION MODULE OF CLAIM 21.  AND --

8            **THE COURT:**  SO IT'S NOT OBJECTIONABLE.

9            **MR. DOWD:**  WELL, THE OBJECTION IS THAT WE'RE NOW

13:12:31:12  10   MOVING TO A DESCRIPTION ABOUT THE PRIORITY SCHEME, AND THE

11   DYNAMIC PRIORITY SCHEME IN PARTICULAR, WHEN THE WITNESS'S

12   REPORT SAYS, "THAT FEATURE DOES NOT AFFECT MY ANALYSIS."  AND

13   WHEN HE TESTIFIED IN HIS DEPOSITION THAT HE COULDN'T EVEN

14   EXPLAIN WHY IT DOESN'T IDENTIFY (SIC) HIS ANALYSIS.

13:12:54:00  15            **THE COURT:**  SO ARE YOU SUGGESTING THAT THE OPINION

16   THAT HE ARTICULATED A MOMENT AGO IS NOT AN OPINION THAT WAS

17   GIVEN?

18            **MR. DOWD:**  I'M SUGGESTING THAT THE OPINION WITH

19   RESPECT TO THE EFFECT OF DYNAMIC PRIORITY, WHICH IS SOMETHING

13:13:12:24  20   THAT ARB1 DOES PERFORM, IS SOMETHING THAT HE SPECIFICALLY

21   EXCLUDED FROM HIS OPINION IN PARAGRAPH 152, AND THAT WHEN WE

22   ASKED WHY, THE ANSWER WAS "I'M NOT ABLE TO FIND IT AT THE

23   MOMENT.  I DIDN'T KEEP TIME, BUT I DON'T SEE IT AT THE

24   MOMENT."

13:13:32:06  25        AND SPECIFICALLY:

13:13:34:18  1          "YOU CAN'T REMEMBER WHY THAT DOESN'T IMPACT YOUR OPINIONS?

2          "A.  THAT'S RIGHT."

3              THE COURT:  WELL, ARE YOU TRYING TO MAKE THE OPINION

4      AT 152 AS HE SUGGESTS, DR. VAHID?

13:13:47:12  5              THE WITNESS:  NO.

6              THE COURT:  SO THIS IS A PREEMPTIVE OBJECTION.

7              MR. DOWD:  THIS IS, YOUR HONOR.

8              THE COURT:  AN ANTICIPATORY OBJECTION.

9              MR. DOWD:  THIS IS AN OBJECTION TO THE SLIDES -- AND

13:14:05:27 10      THE BUILD THAT STARTS IN SLIDE, I WOULD SAY PROBABLY 50, BUT

11      BY 52, 53 --

12              THE COURT:  SO LET ME GET THERE, MR. DOWD, ALL RIGHT?

13      I'M GOING TO WALK THROUGH EACH ONE OF THESE.  I WANT YOU TO

14      STOP BEING ANTICIPATORY AT THIS POINT.  AND I UNDERSTAND WHY

13:14:22:09 15      YOU'RE ANTICIPATORY BECAUSE THESE GUYS HAVE PUT YOU IN A

16      POSITION TO BE ANTICIPATORY.  BUT AT THIS POINT, I WANT YOU TO

17      STOP --

18              MR. DOWD:  THAT'S FAIR, YOUR HONOR.

19              THE COURT:  -- BEING ANTICIPATORY.

13:14:34:00 20              MR. DOWD:  THAT'S FAIR.

21              THE COURT:  50, IN AND OF ITSELF, IS THERE AN

22      OBJECTION?

23              MR. DOWD:  ON SLIDE 50, IF WE REMOVE THE GREEN BOX,

24      THERE WOULDN'T BE AN OBJECTION.

13:14:55:03 25              THE COURT:  OKAY.  WE'LL COME BACK TO THAT.  SO

13:14:57:18  1    YOU'RE OBJECTING TO THE GREEN BOX.  AND I'M SURE I'LL FIGURE

2    OUT WHY LATER.  BUT LET ME JUST GET THROUGH THIS STEP BY STEP.

3       NEXT PAGE.  WHAT'S THE POINT OF THIS?

4                   (DEMONSTRATIVE PUBLISHED.)

13:15:13:06  5          THE COURT:  DR. VAHID?

6          THE WITNESS:  THIS IS EXPLAINING THE ARM AND THE IPU

7    AND THEIR FUNCTIONALITY IN -- IN A SYSTEM.

8          THE COURT:  IS THIS ANIMATED?

9          THE WITNESS:  NO, IT'S NOT.

13:15:25:27 10          THE COURT:  WHAT ARE YOU GOING TO SAY?

11          THE WITNESS:  THAT THE IPU PROCESSES VIDEO IMAGES AND

12    TYPICALLY IS PROCESSING A LOT OF DATA THAT NEEDS TO GO INTO

13    THE MEMORY SO IT WOULD BE VERY TYPICAL FOR IT TO HAVE A HIGHER

14    PRIORITY AS IT'S SET IN THE DEFAULT CONFIGURATION.

13:15:51:12 15          THE COURT:  ANYTHING ELSE?

16          THE WITNESS:  NO.

17          THE COURT:  SO YOU'RE GOING TO SAY THAT BOX, THE IPU

18    ON THE BOTTOM HAS -- IS THIS AN EXAMPLE?

19          THE WITNESS:  YEAH.  JUST -- I WAS -- I FIGURED THIS

13:16:00:15 20    ARM IPU DOESN'T MEAN ANYTHING TO THE JURY.  SO I WAS TRYING TO

21    EXPLAIN WHAT AN IPU IS HERE, JUST VERY BRIEFLY, JUST TO ORIENT

22    THEM THAT IT'S PROCESSING A LOT OF VIDEO.  AND ALL THAT VIDEO

23    NEEDS TO GET INTO THE MEMORY, AND THEREFORE IT MAKES, YOU

24    KNOW, PERFECT SENSE THAT IT WOULD HAVE A HIGHER PRIORITY AS IN

13:16:18:18 25    THE DEFAULT CONFIGURATION.

13:16:20:24  1      **THE COURT:**  IS THERE AN OBJECTION TO THIS?

2          **MR. DOWD:**  YOUR HONOR, YES.

3          **THE COURT:**  IN A VAC -- SO WE'RE BUILDING.

4          **MR. DOWD:**  I UNDERSTAND.

13:16:29:03  5      YOUR HONOR, I WAS ACTUALLY -- I THOUGHT WE WERE TALKING

6    ABOUT SLIDE 50.  AND THEN I REALIZED THAT THE WITNESS WAS

7    TALKING ABOUT SLIDE 51 ABOUT HALFWAY THROUGH, BECAUSE THERE IS

8    OBJECTION TO 50.  I'LL TABLE THAT.  I'LL COME BACK.

9      ON SLIDE 51, WHAT WE HAVEN'T SEEN IS WHERE --

13:16:49:27 10      **THE COURT:**  HE'S MAKING A VERY GENERAL INTRODUCTORY

11    COMMENT BECAUSE WE HAVE PEOPLE WHO DON'T -- WHO ARE NOT

12    SCIENTISTS.  IS THERE AN OBJECTION TO WHAT HE JUST TOLD ME?

13          **MR. DOWD:**  IF IT'S AT THE LEVEL OF "IN A SYSTEM IN

14    THE ABSTRACT, YOU COULD HAVE THINGS THAT HAVE DIFFERENT

13:17:06:12 15    PRIORITIES," THEN THERE ISN'T A PROBLEM.

16          **THE COURT:**  ALL RIGHT.  LET'S --

17          **MR. DOWD:**  IF IT IS --

18          **THE COURT:**  LET'S MOVE TO 52.

19      THAT'S WHAT HE TOLD ME HE'S GOING TO TESTIFY TO.  THAT'S

13:17:13:15 20    THE PROFFER.  WE'RE MOVING TO 52.

21          **MR. DOWD:**  YOUR HONOR, WE -- COULD WE COME BACK TO 50

22    AT SOME POINT?

23          **THE COURT:**  YES.

24      52.  ALL RIGHT.  WE'RE AT PARAGRAPH 149.

13:17:51:21 25              (PAUSE IN THE PROCEEDINGS.)

13:18:02:09  1        THE COURT:  ALL RIGHT.  JTX22 IS THE REFERENCE MANUAL

2   FOR THE I.MX53.  I TAKE IT THAT THOSE ARE QUOTES FROM THE

3   MANUAL?  BECAUSE THEY DON'T APPEAR TO BE QUOTES FROM

4   PARAGRAPH 149.

13:18:26:12  5                  (DEMONSTRATIVE PUBLISHED.)

6        MR. HADJIS:  THEY ARE QUOTES FROM THE MANUAL.

7        THE COURT:  AND ARE THESE -- IS THIS PORTION OF THE

8   MANUAL REFERENCED IN PARAGRAPH 149?

9        MR. HADJIS:  AS YOU CAN SEE, THE PARAGRAPH DOES

13:18:39:24 10 REFERENCE THE REFERENCE MANUAL MANY, MANY TIMES WITH CITES.

11  AND, YES, THEY ARE IN FACT --

12       THE COURT:  I'LL GO TO PAGE -- I'LL GO TO PAGE 242.

13       MR. HADJIS:  PAGE 2 --

14       THE COURT:  OF THE REFERENCE MANUAL WHICH IS CITED.

13:19:05:21 15 AND I SEE PARAGRAPH 49-2 OR -.2.5.

16     IS THERE AN OBJECTION TO THIS SLIDE?

17       MR. DOWD:  THERE IS, YOUR HONOR.  BECAUSE WHAT THE

18  WITNESS HAS DONE IS HE'S TAKEN THE PARAGRAPH FROM THE MANUAL,

19  EXCISED THE MIDDLE OF IT AND FOCUSED ON THE BOTTOM.  AND

13:19:32:18 20 THAT -- WHAT IS AT THE BOTTOM IS DISCUSSION OF DYNAMIC

21  PRIORITY ENGINES TO PERFORM HIGH-PERFORMANCE, LOW-LATENCY DATA

22  PATH ARBITRATION.  THAT IS WHAT AT -- DYNAMIC PRIORITY IS WHAT

23  AT PARAGRAPH 152 HIS REPORT SAYS DOES NOT AFFECT HIS ANALYSIS,

24  AND WHAT WE ASKED ABOUT IN THE DEPOSITION AND WERE TOLD, "I

13:19:55:27 25 CAN'T EXPLAIN WHY IT DOESN'T AFFECT MY ANALYSIS."  AND NOW

13:19:59:27  1    WE'RE GOING TO GET AN EXPLANATION OF DYNAMIC PRIORITY AND HOW

2    IT AFFECTS THE ANALYSIS.

3          THE COURT:   WHAT IS THE POINT OF THE QUOTE TO 49.2.5?

4    DR. VAHID?

13:20:12:15  5          THE WITNESS:   THE POINT IS THAT THE BASE PRIORITIES

6    ARE NOT DISCUSSED IN THIS SECTION.   INSTEAD, ALL THAT'S

7    DISCUSSED IS THE DYNAMIC PRIORITY.

8                (PAUSE IN THE PROCEEDINGS.)

9          THE COURT:   SO WHAT'S THE POINT IF THIS DOESN'T

13:21:03:27  10   AFFECT YOUR ANALYSIS?

11         THE WITNESS:   THE -- THE POINT IS EXACTLY THAT THE

12   BASE PRIORITIES ARE NOT DISCUSSED IN THIS SECTION, WHEREAS IN

13   THE OTHER SECTIONS OF -- OF THE OTHER ARBITERS, THE BASE

14   PRIORITY -- WHEN THEY HAVE THE SAME PRIORITY IS DISCUSSED.

13:21:21:21  15      IN THE FAST ARBITER SECTION, THERE'S SIMPLY NO DISCUSSION

16   OF WHAT HAPPENS WHEN THEY HAVE THE SAME PRIORITY.   INSTEAD,

17   THERE'S THIS DISCUSSION OF THE DYNAMIC PRIORITY.

18         MR. HADJIS:   YOUR HONOR, IT SOUNDS LIKE MR. DOWD

19   WANTS TO CROSS-EXAMINE.

13:21:44:27  20         THE COURT:   NO, IT'S NOT THAT.   WHAT I WANT TO

21   UNDERSTAND, WHAT THE BASIS IS OF THESE SLIDES.   AND LAST NIGHT

22   YOU COULDN'T EXPLAIN THINGS TO ME.   THESE THINGS SHOW UP AT

23   4:00 O'CLOCK IN THE MORNING.   THEY DON'T COMPORT, GENERALLY

24   SPEAKING, TO WHAT'S EXACTLY IN THE REPORT WHICH REQUIRES THAT

13:22:02:12  25   I DO AN ANALYSIS OF EVERY PAGE.

13:22:05:18  1           SO IT'S NOT HIS CROSS-EXAMINATION THAT IS THE PROBLEM.

2      THE PROBLEM IS THE -- THE TIMING AND THE LACK OF TRANSPARENCY.

3           I'VE SAID TO YOU ALL MORE THAN ONCE, THE POINT OF A TRIAL

4      IS NOT "AHA, I HAVE YOU."  THE POINT OF THE TRIAL IS THAT

13:22:37:27  5      WE'VE LITIGATED FOR MONTHS AND SOMETIMES YEARS IN ADVANCE OF

6      TRIAL.  WE STILL CAN'T AGREE ON CERTAIN BASIC FACTS SO WE'RE

7      GOING TO PRESENT THEM IN AN ORDERLY WAY TO THE JURY.  THAT'S

8      NOT WHAT'S HAPPENED HERE.

9                     (PAUSE IN THE PROCEEDINGS.)

13:23:10:15 10           THE COURT:  AND IT WOULD BE ONE THING IF THIS WASN'T

11      A TECHNICAL CASE.  THE PROBLEM IS IT IS.

12           SO I'M LOOKING AT ALL THE CROSS-REFERENCES THAT ARE

13      LISTED, DR. VAHID, IN YOUR PARAGRAPH 149.  AND I DON'T SEE THE

14      PAGE THAT YOU HAVE NOW PUT ON THIS SLIDE ON THAT

13:23:39:12 15      CROSS-REFERENCE.

16           THE WITNESS:  (REVIEWING DOCUMENT.)

17           I DON'T REMEMBER OFFHAND IF IT WAS FROM THAT SPECIFIC

18      PARAGRAPH OR ONE OF THE SUBSEQUENT ONES.

19           THE COURT:  WELL, THE PAGE NUMBER THAT YOU HAVE

13:23:55:21 20      QUOTED HERE IS FSL, WHICH IS A FREESCALE DOCUMENT, 16534.

21      THAT'S WHERE THIS COMES FROM.

22           MR. HADJIS:  YOUR HONOR, IF YOU LOOK AT -- CAN I HELP

23      YOU MAYBE?

24           THE COURT:  SURE.

13:24:19:27 25           MR. HADJIS:  LOOK AT THE FIRST CITE AFTER THE FIRST

13:24:24:15  1    SENTENCE.  I BELIEVE IT SAYS FREESCALE 00013073 AT 16534,

2    I.MX53 REFERENCE MANUAL AT 3462, THE PAGE NUMBER OF THE

3    MANUAL, 3462.  AND THAT'S -- THAT'S THE ONE WE'RE LOOKING AT.

4         THE COURT:  THANK YOU.

13:25:01:00  5       SO IT SAYS, "THE ARB1, ALSO KNOWN AS THE FAST ARBITER,

6    PART OF THE MFI4.  TAKE THE MFI4, IS THAT WHAT I WAS LOOKING

7    AT BEFORE, DR. VAHID?

8         THE WITNESS:  YES, THE WHITE RECTANGLE WITH THE FOUR

9    ARB'S ON THE RIGHT AND ONE OF THEM WAS SHADED GREEN.  THE

13:25:24:03 10   WHOLE RECTANGLE WAS CALLED THE M4IF.

11        THE COURT:  "ARBITRATES SIMULTANEOUS REQUESTS FOR

12   ACCESS TO AN EXTERNAL DDR."

13        IS THAT EXTERNAL DDR SHOWN ON HERE?  I DON'T KNOW THAT

14   IT'S RELEVANT, BUT DOES IT?

13:25:37:15 15        THE WITNESS:  IT'S NOT ON THE SLIDE, NO.  I DON'T

16   THINK IT IS.

17        THE COURT:  "THIS IS SHOWN IN THE I.MX51 AND I.MX53

18   BLOCK DIAGRAMS REPRODUCED IN PART BELOW.  THEREFORE THE

19   REQUESTS FROM THE ARM AND THE IPU TO AN EXTERNAL DDR MEMORY,

13:26:20:03 20   IF EXTERNAL DDR MEMORY IS ATTACHED, WILL BE ARBITRATED BY THE

21   ARB1 FAST ARBITRATION PART OF THE M4IF."

22        SO I'M -- AGAIN, I'M LOOKING AT THIS OPINION, AND I DON'T

23   KNOW, FRANKLY, WHAT IT HAS TO DO WITH THIS SLIDE.

24        THE WITNESS:  SO THIS SLIDE IS THE ARB1 SECTION OF

13:26:44:18 25   THE MANUAL THAT DESCRIBES THE ARB1.

13:26:48:24 1      THE COURT:  OKAY.  YEAH, I SEE THAT.  BUT WHAT DOES

2      IT HAVE TO DO WITH THIS OPINION THAT'S IN 149 THAT I JUST

3      READ?

4          THE WITNESS:  WELL, AS -- AS WE PROCEED, WE'LL SEE

13:27:01:18 5  HOW I EXPAND ON THE DESCRIPTION OF THE ARB1 AND EXPLAIN THAT

6      THEY DON'T TALK ABOUT SITUATIONS OF MASTERS HAVING THE SAME

7      PRIORITY.

8          THE COURT:  ALL RIGHT.  SO THEN THE NEXT SLIDE 53

9      DOES THEN WHAT, AS YOU PROCEED?

13:27:19:18 10         (DEMONSTRATIVE PUBLISHED.)

11         THE WITNESS:  THIS ALSO -- THIS TALKS ABOUT THE

12     DETAILS OF THE ARB1.  AND AGAIN, NO DISCUSSION OF SETTING THE

13     MASTERS TO THE SAME PRIORITY.  INSTEAD, THERE'S ALL THIS OTHER

14     DISCUSSION ABOUT THE DYNAMIC PRIORITY AND TOTAL SCORE AND

13:27:41:12 15 THINGS LIKE THAT.

16         (PAUSE IN THE PROCEEDINGS.)

17         THE COURT:  SO NEXT PARAGRAPH 150, YOU SAY, "THE

18     DEFAULT SETTINGS ARE SUCH THAT THE ARM AND THE IPU DO NOT

19     ISSUE THE SAME LEVEL PRIORITY REQUESTS FOR ACCESS TO AN

13:28:20:09 20 EXTERNAL DDR MEMORY."

21         THE WITNESS:  THAT'S RIGHT.

22         THE COURT:  THAT SEEMS TO BE FUNDAMENTAL TO YOUR

23     OPINION.

24         THE WITNESS:  THAT'S RIGHT.

13:28:29:27 25     THE COURT:  OKAY.  SO WHERE IS THAT?  WHERE IS THAT

13:28:34:18  1  IN ANY OF THESE SLIDES?

2       THE WITNESS:  I WOULD JUST BE SPEAKING THAT.  I COULD

3  ADD A SLIDE.

4       THE COURT:  NO.  AT THIS POINT, I'M NOT SURE YOU'RE

13:28:54:12  5  ADDING ANYTHING.  I --

6       THE WITNESS:  THAT'S FINE.  I WAS JUST PLANNING TO

7  SPEAK IT.

8       THE COURT:  AM I UNDERSTANDING THAT WHAT YOU'RE DOING

9  IS -- IS SOMEHOW SHOWING THE ABSENCE OF SOMETHING?  THAT IS --

13:29:20:18 10       THE WITNESS:  YES.

11       THE COURT:  SO YOU WANT TO BRING IN ALL OF THESE

12  THINGS FROM THIS MANUAL TO SAY, "SEE, THERE'S ALL OF THIS

13  STUFF, AND IT'S -- WHAT I'M TALKING ABOUT IS ABSENT."

14     THAT'S WHAT YOU'RE SAYING?

13:29:37:18 15       THE WITNESS:  WELL, IF YOU LOOK AT 153 IN MY REPORT

16  AND THE LAST SECTION OF THAT PARAGRAPH WHERE THE MANUAL

17  ACTUALLY TELLS YOU -- YOU KNOW, WARNS YOU VERY STRONGLY NOT TO

18  CHANGE THE DEFAULT SETTINGS.

19     SO WHAT I'M SAYING IS THERE'S -- YOU KNOW, THEY'RE SET

13:30:12:21 20  DIFFERENTLY TO BEGIN WITH.  AND WHEREAS ALL THE OTHER THREE

21  ARBITERS TALK ABOUT WHAT TO DO WHEN THEY HAVE THE SAME

22  PRIORITY, FOR THE FAST ARBITER, THAT ONE ON THE TOP THAT WAS

23  THE GREEN BOX, THERE'S NO DISCUSSION OF IT.  INSTEAD THERE'S

24  JUST ALL THIS OTHER DISCUSSION.

13:30:29:18 25       THE COURT:  BUT THAT PARAGRAPH HAS BEEN STRICKEN.

13:30:32:18  1          THE WITNESS:  WHICH PARAGRAPH HAS BEEN STRICKEN?

2          THE COURT:  153.

3          THE WITNESS:  (REVIEWING DOCUMENT.)

4          MR. HADJIS:  YOUR HONOR, WE CAN DOUBLE-CHECK.  I --

13:30:43:27  5          THE WITNESS:  IT'S SHOWING UP ON THIS ONE.

6          MR. HADJIS:  I THOUGHT THAT WAS IN.  REBUTTAL 153.

7               (PAUSE IN THE PROCEEDINGS.)

8          THE COURT:  MR. DOWD, DO YOU SHOW THAT STRICKEN?

9          MR. DOWD:  I'M JUST CHECKING THAT, YOUR HONOR.  I

13:31:28:21 10 DON'T SHOW THAT STRICKEN, SO I DON'T BELIEVE WE WOULD SUGGEST

11 THAT IT IS.

12          THE COURT:  ALL RIGHT.

13          MR. DOWD:  THAT'S -- THAT'S JUST MY NOTES RIGHT NOW.

14 LET ME CONFIRM.

13:31:41:00 15     YEAH, JUST TO CONFIRM, YOUR HONOR, WE DO NOT BELIEVE

16 THAT'S STRICKEN.

17          THE COURT:  ALL RIGHT.

18          MR. DOWD:  YOUR HONOR, I DON'T WANT TO START

19 ANTICIPATING ANYTHING BUT, AT SOME POINT, WOULD LIKE TO

13:32:01:00 20 RESPOND IF I MAY.

21          THE COURT:  ALL RIGHT.  SO, DR. VAHID, I'M LOOKING AT

22 DDX5-53.  WHAT ARE YOU GOING TO TELL THE JURY?

23          THE WITNESS:  THAT, AGAIN, ALL DISCUSSION ABOUT ARB1

24 HAS TO DO WITH OTHER STUFF.  IT HAS TO DO WITH THESE DETAILED

13:32:40:27 25 DYNAMIC ARBITRATION-TYPE ISSUES, TOTAL SCORE ISSUES.  THERE'S

13:32:45:24  1    NO DISCUSSION OF WHAT HAPPENS WHEN MASTERS HAVE THE SAME

         2    PRIORITY.

         3              THE COURT:  AND WHAT ARE YOU RELYING ON TO MAKE THE

         4    ARGUMENT HERE THAT YOU'VE REVIEWED THE MANUALS IN THEIR

13:33:13:24  5    ENTIRETY AND THAT DISCUSSION IS ABSENT?  SO THAT I CAN MAKE

         6    SURE I UNDERSTAND YOUR ARGUMENT, WHERE IS THAT -- WHERE DO I

         7    FIND THAT IN THE REPORT?

         8              THE WITNESS:  IN THE REPORT, I GUESS THE CLOSEST

         9    THING WOULD BE 153.

13:33:55:06 10              THE COURT:  WELL, HERE'S THE PROBLEM I HAVE, WHICH IS

        11    THAT I -- I DON'T UNDERSTAND WHY YOU WOULDN'T HAVE JUST SAID

        12    THAT.  EITHER THAT, OR I DON'T UNDERSTAND WHY THIS

        13    PRESENTATION CAN'T COMPORT WITH THE OBVIOUS STATEMENTS IN THIS

        14    REPORT.

13:34:11:00 15       AND YOU HAVE OPINIONS HERE.  WHY IS IT THAT WE CAN'T HAVE

        16    SLIDES THAT FOCUS ON WHAT'S IN YOUR REPORT?

        17              THE WITNESS:  I WAS TRYING TO FOCUS.

        18              THE COURT:  YEAH, BUT YOU -- BUT YOU'VE GIVEN ME A

        19    SLIDE THAT SAYS, "LOOK, LET ME TAKE ALL THESE EXCERPTS FROM

13:34:31:03 20    THIS REFERENCE MANUAL TO DEMONSTRATE THAT THE POINT I'M MAKING

        21    IS THAT THIS IS NOWHERE DISCUSSED."  WHY DON'T YOU JUST HAVE A

        22    SLIDE THAT SAYS THIS ISN'T DISCUSSED?

        23              THE WITNESS:  I --

        24              THE COURT:  I MEAN, DO YOU SEE WHAT I'M SAYING?  I

13:34:48:27 25    DON'T SEE --

13:34:52:09  1          THE WITNESS:  SO I INDICATED THAT MEDIATEK'S EXPERT

2    GAVE NO EVIDENCE THAT THEY WOULD BE SET TO THE SAME.  AND THAT

3    IT WAS ALSO MY OPINION THAT THEY WOULD NOT BE SET TO THE SAME.

4    THAT WAS BASED ON READING THROUGH THE REPORT VERY CAREFULLY,

13:35:05:00  5    READING THROUGH THE REFERENCE MANUAL VERY CAREFULLY.  AND THEN

6    ALSO SEEING THIS -- THIS IN 153, DISCOURAGEMENT OF CHANGING

7    THE SETTINGS.

8          THE COURT:  AND WHERE -- IS THAT QUOTE THAT'S IN YOUR

9    REPORT ON A SLIDE?

13:35:20:06 10          THE WITNESS:  I THINK IT'S ON THE NEXT SLIDE.

11          THE COURT:  WHERE?

12              (DEMONSTRATIVE PUBLISHED.)

13          THE WITNESS:  ON THE NEXT SLIDE 5-54.

14      SO IT'S THE EXCERPTED -- EXCERPTED SECTION AT THE BOTTOM

13:35:42:06 15    THERE.

16              (PAUSE IN THE PROCEEDINGS.)

17          THE COURT:  AND I TAKE IT WITH RESPECT TO THE

18    PARAGRAPH 151, THERE ARE NO SLIDES?

19          THE WITNESS:  THAT'S RIGHT.

13:37:24:21 20          THE COURT:  WHY IS THE SENTENCE AT THE BOTTOM OF

21    DDX5-53 HIGHLIGHTED?

22          THE WITNESS:  JUST TO SHOW THAT THE -- ALL THE

23    DISCUSSION IN THE FAST ARBITER SECTION, THE ARB1, THE GREEN

24    ONE, IS ABOUT THIS OTHER STUFF, AND IT ALL BOILS DOWN TO THIS

13:37:44:27 25    TOTAL SCORE THAT'S COMPUTED.  AND THERE'S JUST NO DISCUSSION

13:37:47:27 1    ABOUT MASTERS HAVING THE SAME PRIORITY.

2                    **THE COURT:**  ALL RIGHT.  MR. DOWD.

3                    **MR. DOWD:**  YOUR HONOR, I'D LIKE TO RESPOND.  THERE

4         WERE A NUMBER OF POINTS OVER A NUMBER OF SLIDES AND A NUMBER

13:38:02:18 5    OF PARAGRAPHS.

6             IF I MAY, I'D LIKE TO RESPOND OUTSIDE THE PRESENCE OF THE

7         WITNESS.

8                    **THE COURT:**  DR. VAHID, IF YOU'LL STEP OUTSIDE.

9                    **THE WITNESS:**  SURE THING.

13:38:13:06 10                   (PAUSE IN THE PROCEEDINGS.)

11                   **MR. DOWD:**  IF WE CAN GO TO THE ELMO, PLEASE.  AND

12        WHILE THAT'S COMING UP, I'M GOING TO DO -- I'D LIKE TO DO TWO

13        THINGS.  FIRST, I'D LIKE TO EXPLAIN TO YOUR HONOR WHAT IS

14        GOING ON WITH BASIC AND DYNAMIC PRIORITIES SO THAT THE COURT

13:39:02:15 15   HAS THE ISSUE.

16            THEN SECOND, I'D LIKE TO IDENTIFY WHAT THE REPORT DOES

17        ADDRESS AND WHAT IT DOES NOT ADDRESS WITH RESPECT TO BASIC AND

18        DYNAMIC PRIORITIES.

19            AND THIRD, YOUR HONOR, HAVING DONE THAT, I THINK YOU'LL

13:39:18:03 20   APPRECIATE THAT THIS IS NOW AN ATTEMPT TO GO IN AND BACKFILL

21        SOMETHING THAT IS NOT IN THE REPORT.

22            HERE ON THE SLIDE --

23                   **THE COURT:**  CAN WE -- IS THERE AN --

24            IS THERE -- OR ISN'T THERE AN INVALIDITY ATTACK BASED UPON

13:39:45:24 25   PRIORITY?

13:39:46:27  1          MR. DOWD:  NO, YOUR HONOR.  I THINK THE ISSUE HERE IS

          2   WITH RESPECT TO INFRINGEMENT.

          3          THE COURT:  I MEAN, I'M SORRY, INFRINGEMENT.

          4          MR. DOWD:  YES.  SO WITH RESPECT TO INFRINGEMENT,

13:39:57:12  5   THERE IS A LIMITATION, SAME PRIORITY.  AND IF -- IF WE TURN TO

          6   JTX22 AT PAGE 244, THIS IS -- THIS IS WHAT THESE PRIORITIES

          7   ARE.

          8      SO AT THE TOP OF THE PAGE, YOUR HONOR, IT SAYS EACH MASTER

          9   GETS A BASIC PRIORITY.  THEN IT SAYS --

13:40:27:06 10          THE COURT:  I CAN -- I CAN SEE.  YOU DON'T NEED TO

         11   STAND THERE.

         12          MR. DOWD:  OH.  THEN IT SAYS A DYNAMIC PRIORITY IS

         13   ADDED TO THE BASIC PRIORITY.  AND THAT FORMS A TOTAL SCORE,

         14   AND IT IS ACCORDING TO THAT TOTAL SCORE THAT EACH REQUEST FOR

13:40:47:21 15   ACCESS TO THE SLAVE IS ARBITRATED BY THE DECISION MECHANISM.

         16      SO TO STEP BACK, WE SAW THE M4IF, WE SAW THAT ARB1 BLOCK.

         17   WHAT THE ARB1 BLOCK LOOKS AT IS THE TOTAL SCORE OF THE BASIC

         18   PRIORITY AND THE DYNAMIC PRIORITY, AND THAT IS HOW IT MAKES

         19   ITS DECISION.

13:41:07:24 20      THAT IS SHOWN GRAPHICALLY AT THE BOTTOM OF THIS --

         21          THE COURT:  SO WHY CAN'T YOU CROSS-EXAMINE HIM ON

         22   THIS?

         23          MR. DOWD:  HERE'S WHY.  IF WE GO TO THE REPORT, THE

         24   ONLY THING HE ADDRESSES IN HIS REPORT IS THE BASIC PRIORITY.

13:41:23:00 25   HE NEVER ADDRESSES IN HIS REPORT THE DYNAMIC PRIORITY OR THE

13:41:29:21  1  EFFECT OF DYNAMIC PRIORITY ON HOW ARBITRATION DECISIONS ARE

2  MADE.  NOT ONLY DOES HE NOT ADDRESS IT, HE AFFIRMATIVELY

3  STATES THAT HE'S NOT GOING TO GIVE AN OPINION ABOUT THAT BY

4  SAYING, "THESE FEATURES DO NOT AFFECT MY ANALYSIS."  HE'S

13:41:44:03  5  BASICALLY IGNORED THE DYNAMIC PRIORITY WHICH IS THE BASIS FOR

6  DR. ASANOVIC'S INFRINGEMENT OPINION.

7      WE -- WE -- THAT WAS SOMETHING THAT WE SPECIFICALLY ASKED

8  ABOUT.  AND IF YOUR HONOR HAS DR. VAHID'S DEPOSITION

9  TRANSCRIPT, I WOULD LIKE TO POINT OUT PAGES 265, LINES 3 TO

13:42:08:03 10  11, AND THEN 265, LINES 22 TO 2.

11      AND THERE THE QUESTION WAS --

12      "Q.  SIR, I'M CORRECT THAT YOUR REPORT DID NOT SET FORTH

13  WHY THE DYNAMIC PRIORITY FEATURE DOES NOT AFFECT YOUR

14  ANALYSIS?

13:42:25:24 15      "A.  I'M NOT ABLE TO FIND IT AT THE MOMENT.

16      "Q.  SO WE'VE BEEN LOOKING FOR ABOUT THREE TO FIVE MINUTES

17  AND YOU HAVEN'T BEEN ABLE TO FIND IT IN YOUR REPORT, RIGHT?

18      "A.  I DIDN'T KEEP TIME, BUT I DON'T SEE IT AT THE

19  MOMENT."

13:42:40:27 20      SO THAT FIRST PIECE, YOUR HONOR, IS THERE'S A STATEMENT

21  THAT DYNAMIC PRIORITY DOESN'T AFFECT HIS ANALYSIS, BUT HE

22  NEVER EXPLAINS WHY IT DOESN'T AFFECT HIS ANALYSIS.  AND THAT

23  IS THE GAP THAT WE'RE GOING TO SEE THEY'RE GOING TO TRY TO

24  BACKFILL.

13:42:57:15 25      AND SO THEN WE GO ON IN THE DEPOSITION, AND THIS IS AT

13:43:00:15  1    LINE 22 ON PAGE -- STARTING THERE AT PAGE 265:

2        "SURE.  I'M ASKING ABOUT THE DYNAMIC PRIORITY RIGHT NOW.

3        "A.  RIGHT.

4        "Q.  YOU CAN'T REMEMBER WHY THAT DOES NOT IMPACT YOUR

13:43:15:12  5    OPINIONS RIGHT NOW, RIGHT?

6        "A.  THAT'S RIGHT."

7        SO THERE'S NO EXPLANATION IN THE REPORT FOR WHY DYNAMIC

8    PRIORITY SHOULDN'T BE RELEVANT TO THE SAME PRIORITY LIMITATION

9    FOR INFRINGEMENT.  THERE'S NO EXPLANATION -- THERE'S NO

13:43:32:21 10    ABILITY TO IDENTIFY ANYWHERE IN THE REPORT THAT WOULD ADDRESS

11    THAT QUESTION.  AND THERE'S NO ABILITY EVEN IN THE DEPOSITION

12    TO REMEMBER WHY IT WOULDN'T AFFECT WHETHER OR NOT THE SAME

13    PRIORITY IS USED WHEN DYNAMIC PRIORITY IS TAKEN INTO ACCOUNT,

14    WHICH IS THE OPINION THAT DR. ASANOVIC HAS GIVEN.

13:43:54:09 15        NOW WE MOVE FORWARD TO WHAT'S HAPPENING IN TRIAL.  SO

16    THAT'S WHERE WE WERE BEFORE TRIAL.  NOW WE MOVE TO WHAT'S

17    HAPPENING IN TRIAL.  AND THIS IS AN ATTEMPT TO GO IN AND NOW

18    BACKFILL THE IDEA AND EXPLAIN WHY DYNAMIC PRIORITY SHOULDN'T

19    BE CONSIDERED AS PART OF WHETHER OR NOT THE ARBITRATION

13:44:13:03 20    UNIT 1, ARB1, WILL ARBITRATE BETWEEN REQUESTS FROM MASTERS AT

21    THE SAME PRIORITY.

22        WHEN YOU -- WHEN YOU TAKE THE BASIC PRIORITY AND THE

23    DYNAMIC PRIORITY TOGETHER, THAT'S WHAT HAPPENS.  AND HE'S

24    TRYING TO NOW SAY, "OH, I WANT TO GIVE YOU AN EXPLANATION OF

13:44:32:12 25    WHY YOU SHOULD IGNORE THE DYNAMIC PRIORITY AND ONLY LOOK AT

13:44:35:06 1    THE BASIC PRIORITY, AND IF YOU LOOK ONLY AT THE BASIC

2    PRIORITY, THEY MAY BE DIFFERENT."

3        SO IF I -- IF I CAN TAKE YOUR HONOR BACK TO JTX22, WHAT

4    HE'S -- WHAT IS SHOWN ON JTX22 IN FIGURE 49-3 IS THERE ARE

13:44:53:24 5    EXAMPLE MATTERS, MASTER ZERO, MASTER 1, MASTER 2.  IN THE TEXT

6    ABOVE, IT HAS ALREADY TOLD US THAT EVERY MASTER GETS A BASIC

7    PRIORITY, AND THERE ARE EIGHT MASTER INPUTS TO THE M4IF.  SO

8    EVERY MASTER, ALL EIGHT, GET THE SAME BASIC PRIORITY -- OR GET

9    A BASIC PRIORITY.

13:45:19:09 10       THOSE CAN BE SET AT DIFFERENT LEVELS.  SO MASTER ZERO IN

11   THE EXAMPLE IS SET SOMETHING LIKE 20.  MASTER 1 IN THE EXAMPLE

12   IS SET AT SOMETHING LIKE 40.  MASTER 2 IN THE EXAMPLE IS SET

13   AT SOMETHING CLOSE TO ZERO.

14       AND DR. VAHID'S REPORT IGNORES THE DYNAMIC PRIORITY,

13:45:41:15 15   IGNORES THE FACT THAT THAT'S ADDED TO BASIC PRIORITY TO GIVE A

16   TOTAL PRIORITY.  AND HE'S FOCUSED ONLY ON THE BASIC PRIORITIES

17   WHICH ARE THE BOTTOM LINE IN THE RANGE OF PRIORITIES THAT EACH

18   MASTER CAN HAVE.

19       DR. ASANOVIC'S OPINION IS, WELL, IT SAYS THAT YOU HAVE A

13:45:58:00 20   BASIC PRIORITY, YOU HAVE A DYNAMIC PRIORITY THAT IS ADDED TO

21   THIS BASIC PRIORITY, AND THE TOTAL SCORE IS HOW THE

22   ARBITRATION MECHANISM MAKES ITS DECISION.  THE FIGURE AGAIN

23   SHOWS THAT.  THERE'S A RANGE.  YOU CAN HAVE A TOTAL OF

24   16 DYNAMIC PRIORITIES THAT YOU CAN ADD ON TOP OF YOUR BASIC

13:46:19:15 25   PRIORITY.  SO THAT CREATES A RANGE OF VALUES UP TO THE UPPER

13:46:23:27  1   LIMIT THAT IS SHOWN FOR EACH ONE OF THESE.  AND FOR ANYWHERE

2   WHERE THE RANGES OVERLAP, THE REQUESTS FROM THOSE MASTERS CAN

3   ARRIVE AT THE SAME PRIORITY LEVEL.  THAT IS DR. ASANOVIC'S

4   OPINION.

13:46:38:27  5       SO THAT OPINION IS PRETTY -- PRETTY IMPORTANT.  IT'S

6   PRETTY IMPACTFUL ON WHETHER OR NOT YOU CAN HAVE MASTERS AT THE

7   SAME PRIORITY.

8       WHAT DID WE JUST HEAR FROM DR. VAHID?  HE SAYS IN

9   SLIDE 52, THAT SLIDE AND -- I JUST WROTE DOWN WHAT HE SAID.

13:46:58:18  10  "BASIC PRIORITY IS NOT DISCUSSED IN THIS SECTION.  THIS

11  SECTION IS ALL ABOUT DYNAMIC PRIORITY."  THAT THE ARB1 USES

12  THE DYNAMIC PRIORITY.  THIS SECTION, FAST ARBITER FUNCTIONAL

13  DESCRIPTION, THAT IS A DESCRIPTION OF WHAT IS THE ARB1 BLOCK

14  THAT IS SHOWN ON SLIDE 50, THE SLIDE THAT I WANTED TO COME

13:47:21:18  15  BACK TO.

16      AND SO HE'S JUST SAID THAT THIS ARB1 BLOCK ON SLIDE 50,

17  THE DESCRIPTION OF THAT IN THE MANUAL, WHICH APPEARS AT

18  49.2.5, DESCRIBES THAT AS USING THE DYNAMIC PRIORITY AND

19  SPECIFICALLY NOT THE BASE PRIORITY.

13:47:40:24  20      HOW DOES THAT COMPARE TO HIS REPORT?  HIS REPORT ONLY

21  LOOKS AT THE BASIC PRIORITY.  IT DOESN'T LOOK AT THE DYNAMIC

22  PRIORITY.  NOT ONLY THAT.  HE SAYS THE DYNAMIC PRIORITY

23  DOESN'T AFFECT HIS ANALYSIS, SO HE CAN'T BE RELYING ON IT.

24  AND WHEN WE ASKED HIM, HE SAYS, "I DON'T EVEN KNOW WHY IT

13:47:58:21  25  DOESN'T AFFECT MY ANALYSIS.  AND I CAN'T POINT YOU TO ANYTHING

13:48:02:06 1    IN MY REPORT THAT EXPLAINS WHY IT DOESN'T AFFECT MY ANALYSIS."

2        AND NOW WE HAVE DR. VAHID HERE IN COURT SAYING, "I WANT TO

3    GO THROUGH AND EXPLAIN WHY IT DOESN'T AFFECT MY ANALYSIS.  I

4    WANT TO GO THROUGH AND POINT OUT THROUGH ALL OF THESE THINGS,

13:48:18:27 5    THROUGH ALL OF THESE SLIDES AND ALL OF THESE QUOTES, THE

6    ABSENCE OF SOMETHING, WHY IT DOESN'T AFFECT MY ANALYSIS."

7        AND THAT -- THAT YOUR HONOR, WE SUGGEST IS -- IS NOT

8    APPROPRIATE.

9        AND THEN I WOULD MAKE ONE FINAL POINT, WHICH IS, THERE IS

13:48:39:06 10   A PREJUDICE INVOLVED IN THIS.  THERE'S A PREJUDICE THAT'S NOT

11   JUST FROM THE FACT THAT WE ARE GIVEN ONE THING IN A REPORT,

12   THE REPORT IS ONLY ABOUT BASIC, THERE'S NO EXPLANATION OF WHY

13   DYNAMIC DOES NOT AFFECT THE ANALYSIS.  WE ASKED THE WITNESS.

14   HE SAYS HE CAN'T FIND ANYTHING THAT EXPLAINS IT IN HIS REPORT,

13:49:02:03 15   AND HE CAN'T EVEN REMEMBER WHY IT DOESN'T AFFECT HIS ANALYSIS.

16       THERE'S A -- THERE'S A PREJUDICE TO THAT, BUT THERE IS A

17   LARGER PREJUDICE THAT IS GOING ON, AND THAT IS BECAUSE WE GET

18   THESE BRAND-NEW SLIDES AT 4:00 A.M., I'VE BEEN FORCED TO

19   PROTECT MY CLIENT'S INTEREST BY STANDING UP AND OBJECTING OVER

13:49:21:21 20   AND OVER AGAIN IN FRONT OF THE JURY.

21       AND THE RESPONSE THAT WE GET IS THINGS LIKE "THAT BUS

22   LEADS TO NOWHERE," WHICH IS A DISPUTED ISSUE.  MR. HADJIS

23   STATED TO THE JURY, "THAT BUS LEADS TO NOWHERE."  WHICH IS THE

24   ISSUE ABOUT WHETHER OR NOT A PARTICULAR LIMITATION IS MET.

13:49:44:27 25       NOW, THAT RAISES TWO PREJUDICIAL ISSUES FOR ME.  ONE IS

13:49:50:24  1    I'M MADE TO LOOK LIKE I'M THE ONE WHO HAS SOMETHING TO HIDE BY

2    HAVING TO JUMP UP AND TRY TO EXCLUDE THINGS THAT NEVER SHOULD

3    BE PRESENTED IN THE FIRST PLACE.

4        AND THE JURY -- I WILL GRANT DR. VAHID IS A VERY

13:50:02:00  5    CHARISMATIC GUY.  I EXPECT THAT THEY LIKE HIM.  AND I'M MADE

6    TO LOOK LIKE THE GUY THAT I HAVE -- THAT I HAVE TO KEEP

7    SOMETHING OUT, THAT I'M THE ONE WHO'S TRYING TO HIDE WHAT'S

8    REALLY GOING ON.  AND THAT'S PREJUDICIAL.

9        AND TWO IS THE RESPONSE WHEN I STAND UP AND MAKE THE

13:50:17:03 10    OBJECTION, AND I -- I HOPE YOUR HONOR APPRECIATES THAT I'M

11    REALLY NOT TRYING TO SAY ANYTHING ABOUT THE SUBSTANCE OF THE

12    OBJECTION AS I MAKE IT IN FRONT OF THE JURY.  I'M ONLY

13    POINTING TO "IT'S OUT BECAUSE OF THIS PARAGRAPH."  I DIDN'T

14    SAY IT WAS STRUCK.  I JUST SAID IT'S NO LONGER OPERATIVE.

13:50:33:03 15        THE RESPONSE THAT I GET IN ARGUMENT BACK IS, "WELL, IT'S

16    CLEAR HERE THAT THAT BUS GOES TO NOWHERE," MAKING AN ARGUMENT.

17    AND SO THERE -- THERE IS A LEVEL OF PREJUDICE THAT IS

18    RESULTING FROM THIS THAT I DID WANT TO BRING TO YOUR HONOR'S

19    ATTENTION.

13:50:49:00 20        **THE COURT:**  RESPONSE.

21        **MR. HADJIS:**  YES, YOUR HONOR.

22    DYNAMIC PRIORITY.  I'M LOOKING AT TWO REPORTS RIGHT NOW,

23    DR. VAHID'S AND DR. ASANOVIC'S.  I WANT TO TALK ABOUT DYNAMIC

24    PRIORITY, WHO MENTIONED IT, WHO DIDN'T.  I ALSO WANT TO TALK

13:51:10:03 25    ABOUT WHEN IT WAS FIRST MENTIONED BY COUNSEL FOR MEDIATEK TO

13:51:17:15  1    PUT THIS ALL IN PERSPECTIVE.  BECAUSE I DO NOT FIND ANYTHING

2    ABOUT DYNAMIC PRIORITY IN DR. ASANOVIC'S REPORT.

3              THE COURT:  IT'S ALL OVER YOUR SLIDES.

4              MR. HADJIS:  MR. DOWD --

13:51:33:03  5              THE COURT:  IT'S ALL OVER YOUR SLIDE.

6              MR. HADJIS:  THAT'S RIGHT.  I FIND IT IN DR. VAHID'S

7    REPORT -- I'M GOING TO GET THERE -- BUT I DON'T FIND IT IN

8    DR. ASANOVIC'S REPORT WHICH IS A DETAIL THAT WAS GLOSSED OVER.

9         MR. DOWD DID PRESENT HIS ARGUMENT TO YOUR HONOR JUST NOW

13:51:51:15 10    BY MENTIONING THAT DR. ASANOVIC TESTIFIED IN DETAIL IN COURT

11    HERE ABOUT DYNAMIC PRIORITY.  THAT'S PROBABLY TRUE.  BUT HIS

12    REPORT WHICH DR. ASANOVIC (SIC) REBUTTED --

13              THE COURT:  DO YOU MEAN DR. VAHID REBUTTED?

14              MR. HADJIS:  I'M SORRY.  DR. VAHID.  I'M SORRY.  I --

13:52:13:12 15    I TRANSPOSED IT IN MY MIND, YOUR HONOR.

16         DR. ASANOVIC'S REPORT WHICH DR. VAHID REBUTTED DOES NOT

17    ADDRESS DYNAMIC PRIORITY.

18         NOW, IF YOU GO TO DR. VAHID'S REPORT AT PARAGRAPH 152, FOR

19    INSTANCE, YOU DO SEE DYNAMIC PRIORITY DISCUSSED, IT'S

13:52:37:15 20    MENTIONED.

21         WHEN WE MOVED FOR SUMMARY JUDGMENT, YOUR HONOR MAY RECALL,

22    WE DID BRING IN THIS CLAIM AND AN ARGUMENT THAT THERE WAS NOT

23    AN INSTANCE IN THE FACTUAL RECORD AT THE TIME THAT SHOWED TWO

24    REQUESTS COMING INTO THE ARBITER THAT THEY IDENTIFIED AT THE

13:53:03:18 25    SAME PRIORITY.

13:53:04:24  1        THE FIRST TIME THAT WE HEARD BACK ON DYNAMIC PRIORITY WAS

2    IN RESPONSE TO THAT MOTION FOR SUMMARY JUDGMENT.

3        SO AS DR. VAHID OUTLINED WITH REGARD TO HIS SLIDES,

4    THERE'S A TIE FROM EVERY SLIDE TO HIS REPORT.

13:53:35:18  5        THE COURT:  WELL, NO, THERE'S NOT.  HE TOLD ME JUST A

6    MOMENT AGO THAT THESE WEREN'T REFERENCED IN HIS REPORT, THAT

7    HE TOOK ALL OF THESE CLIPS, SO TO SPEAK, TO PROVE AN ABSENCE,

8    WHICH IS A VERY DIFFERENT THING.

9        KEEP GOING.

13:53:56:21 10    I'M PULLING UP MY SUMMARY JUDGMENT ORDER.

11        GO AHEAD.

12        MR. HADJIS:  WELL, YOUR HONOR, I'LL CHECK ON -- AND I

13    BELIEVE YOU'RE REFERRING TO 5- 53?  MY UNDERSTANDING IS THAT

14    THE CLIPS ARE -- ARE REFERENCED IN THE REPORT.  I'D LIKE TO

13:54:17:27 15    DOUBLE-CHECK ON THAT.  BUT, YES, THAT AN ISSUE IN THE -- IN

16    THE SUMMARY JUDGMENT.

17        MR. DOWD:  YOUR HONOR, I'D LIKE TO JUST BRIEFLY

18    RESPOND TO THE --

19        MR. HADJIS:  NOW, ACTUALLY --

13:54:31:18 20        THE COURT:  HOLD ON --

21        MR. DOWD:  -- SUGGESTION THAT --

22        THE COURT:  -- MR. DOWD.

23        MR. HADJIS:  ON THE LAST POINT, YOUR HONOR, AS FAR AS

24    THE OBJECTIONS GO AND -- AND THE COLLOQUY, I -- I WAS SIMPLY

13:54:44:00 25    TRYING TO ASSIST YOUR HONOR, AND I THINK WE WERE TALKING BACK

13:54:47:03  1   AND FORTH ON THIS ABOUT DR. VAHID'S REPORT.  YOU KNOW THERE

2   ARE A LOT OF PARAGRAPHS IN IT, JUST LIKE IN DR. ASANOVIC'S,

3   AND THERE ARE FIGURES.  AND I WAS TRYING TO REFERENCE YOUR

4   HONOR TO THE FIGURE THAT --

13:55:04:09  5          THE COURT:  WELL, IT WASN'T QUITE ACCURATE TO SAY IT

6   DIDN'T LEAD TO ANYWHERE BECAUSE I COULD SEE THE GRAYED-OUT

7   THING TO WHICH IT LED.  SO THAT IN AND OF ITSELF WAS NOT QUITE

8   ACCURATE.  I DON'T -- THAT'S THE POINT AT WHICH I CUT OFF

9   DEBATE AND SENT THE JURY OUT.

13:55:38:00 10                  (PAUSE IN THE PROCEEDINGS.)

11          MR. DOWD:  MAY I RESPOND, YOUR HONOR?

12          THE COURT:  YOU MAY.

13          MR. DOWD:  YOUR HONOR, EVERY TIME -- THIS HAS

14   HAPPENED REPEATEDLY.  EVERY TIME THAT IT BECOMES CLEAR THAT

13:55:49:03 15   THERE'S NOT SOMETHING PRESERVED IN DR. ASANOVIC'S REPORT, HE

16   DIDN'T PRESERVE A BASIS UPON WHICH TO TESTIFY, THE RESPONSE WE

17   GET IS, "WELL, LET'S LOOK AT WHAT DR. ASANOVIC DID.  HE DID

18   THIS, HE DID THAT."

19      THE REASON HE DID IS BECAUSE -- AND AT THIS POINT, IT'S,

13:56:07:12 20   "OH, DR. ASANOVIC DIDN'T EXPLAIN IN HIS REPORT THE ARBITRATION

21   SCHEME FOR WHEN MASTERS HAVE THE SAME PRIORITY WITH RESPECT TO

22   THE DYNAMIC PRIORITY ISSUE."

23      IF I GO BACK TO THE ELMO, PLEASE.

24                  (DOCUMENT DISPLAYED.)

13:56:24:09 25          MR. DOWD:  YOUR HONOR, I FOCUSED ON THE MASTERS

13:56:26:15  1    DYNAMIC PRIORITY SCHEME SLIDE, FIGURE 49-3.  THIS IS IN A

2    SECTION OF THE MANUAL THAT DESCRIBES THE ARBITRATION FUNCTION

3    PERFORMED BY THE M4IF AND IS EXTENSIVELY CITED THROUGHOUT HIS

4    REPORT.

13:56:45:00  5        AND I WILL BRING, YOUR HONOR, BECAUSE IT'S MOST COGENT, TO

6    THIS PAGE HERE, WHICH IS PAGE 3467 OF THE ORIGINAL DOCUMENT.

7    IT'S JTX PAGE 247, AND IT'S VERY SPECIFIC.  IT'S THE

8    ARBITRATION SCHEME WHEN MASTERS HAVE THE SAME PRIORITY.  AND

9    IT VERY CLEARLY DESCRIBES DYNAMIC PRIORITY ISSUES.

13:57:15:09 10        YOUR HONOR, I'LL NOW PLACE ON THE SCREEN DR. ASANOVIC'S

11    REPORT WHERE HE ADDRESSES THE LIMITATION ABOUT THE SAME

12    PRIORITY LEVEL.  HE CITES A LONG RANGE IN THIS SECTION OF

13    PAGES THAT HE SAYS DESCRIBE THE ARBITRATION SCHEME THAT IS

14    USED WHEN MASTERS TO THE M4IF HAVE REQUESTS AT THE SAME

13:57:39:18 15    PRIORITY LEVEL.  HE IDENTIFIES EXACTLY THIS SAME PORTION.  HE

16    IDENTIFIES DYNAMIC PRIORITY AS A BASIS FOR HIS OPINION.

17        AND HE THEN GOES ON TO ADDRESS OVER THE PORTION ON THE

18    FOLLOWING PAGE HOW THAT HAPPENS, INCLUDING CITING NUMEROUS

19    FIGURES FROM THE SPECIFICATION.

13:58:03:18 20        SO THE IDEA THAT, "OH, IT WASN'T IN DR. ASANOVIC AND SO

21    THERE WAS SOME KIND OF SPECIAL LEEWAY GIVEN TO DR. ASANOVIC,"

22    THAT'S JUST NOT ACCURATE.

23            **THE COURT:**  THE --

24        **MR. DOWD:**  THE REASON --

13:58:19:09 25            **THE COURT:**  IS THE PAGE 26 THAT YOU REFERENCED

13:58:22:09 1    ASANOVIC D1?

2                MR. HADJIS:  IT IS.  AND IT'S NOT DISCUSSED IN THERE.

3                THE COURT:  WHAT'S NOT DISCUSSED IN THERE?

4                MR. HADJIS:  DYNAMIC PRIORITY.

13:58:37:15 5    MR. DOWD:  YOUR HONOR, THE REASON THERE WAS NO

6    OBJECTION TO THIS IS BECAUSE IT IS SQUARELY IN THE REPORT.  IF

7    IT HADN'T BEEN, IT WOULD HAVE BEEN OBJECTED TO.

8                     (PAUSE IN THE PROCEEDINGS.)

9                MR. DOWD:  JUST -- JUST TO FURTHER ILLUSTRATE THAT

14:00:07:12 10   FOR YOUR HONOR, LET ME SHOW YOU THIS -- THIS FIGURE THAT I

11   JUST USED TO EXPLAIN WHAT THE BASIC AND THE DYNAMIC ISSUE IS,

12   THAT CONCEPTUAL DRAWING IN FIGURE 4-3 IS THEN EXPLAINED IN

13   FIGURE 4-9 WHERE THE LOW-LEVEL ARBITRATION STRUCTURE IS

14   EXPLAINED AND -- AND EXACTLY HOW -- IT'S HARD TO SEE -- BUT

14:00:39:12 15   HOW THERE IS MASTER ZERO, MASTER 1, MASTER 2, MASTER 3.  EACH

16   OF THOSE MASTERS WILL HAVE THE RANGE LIKE MASTER ZERO,

17   MASTER 1, MASTER 2, ET CETERA, WILL HAVE THE PRIORITY RANGE.

18       THIS FIGURE 49-4 EXPLAINS HOW THAT ARBITRATION WORKS WHEN

19   YOU HAVE COMBINATION OF PRIORITIES.  IT EXPLAINS HOW THEY CAN

14:01:05:18 20   HAPPEN WHEN THE MASTERS ARE AT THE SAME PRIORITY LEVEL AS A

21   RESULT OF THEIR COMBINED SCORE.  AND IF WE GO TO

22   DR. ASANOVIC'S REPORT, AND I'M ON PAGE 27, HE DESCRIBES THIS

23   LOGICAL TREE SHOWN IN FIGURE 49-4, HOW IT WORKS.

24                     (DOCUMENT DISPLAYED.)

14:01:32:03 25   MR. DOWD:  HE REPRODUCES THE FIGURE.  AND HE EXPLAINS

14:01:36:24  1    HOW THE COMBINED SCORE OF DYNAMIC PRIORITY AND BASIC PRIORITY

2    WILL GIVE A RESULT THAT, FOR EXAMPLE, IF MASTER ZERO IS

3    REQUESTING BOTH A READ AND WRITE ACCESS AT THE SAME PRIORITY

4    LEVEL TO A PARTICULAR SLAVE DEVICE, BOTH REQUESTS WILL BE

14:01:56:00  5    INPUT INTO THE UNIT AT THE TOP.  AND THEN HE WALKS THROUGH

6    EXACTLY WHAT THAT MEANS TO WHY THE COMBINED DYNAMIC AND BASIC

7    PRIORITY SCORE CAN YIELD THE SAME PRIORITY LEVEL.

8        SO THE NOTION THAT THIS ISN'T ALL OVER DR. ASANOVIC'S

9    REPORT IS INCORRECT.  AND IF THERE WAS GOING TO BE A REBUTTAL,

14:02:20:09  10   IT SHOULD HAVE BEEN MADE IN RESPONSE TO THAT REPORT.

11       IT'S CLEAR THAT DR. VAHID KNEW THAT THE DYNAMIC PRIORITY

12   FEATURE WAS RELEVANT TO DR. ASANOVIC, OR HE WOULDN'T HAVE

13   PARAGRAPH 152 WHERE HE DESCRIBES DYNAMIC PRIORITY.  THAT'S THE

14   ONLY PLACE IT'S MENTIONED IN HIS WHOLE REPORT.  AND HE SAYS,

14:02:42:06  15   "I'M NOT GOING TO TALK ABOUT THAT.  THOSE FEATURES DON'T

16   AFFECT MY ANALYSIS."

17           **THE COURT:**  WE'RE GOING TO GO OFF THE RECORD FOR

18   15 MINUTES.  TAKE A BREAK.  THE COURT REPORTER HAS BEEN

19   NON-STOP.

14:02:54:06  20           **MR. DOWD:**  THANK YOU, YOUR HONOR.

21       (RECESS TAKEN AT 2:03 P.M.; PROCEEDINGS RESUMED AT

22   2:19 P.M.)

23           **THE COURT:**  WE'RE BACK ON THE RECORD.

24       THE RECORD WILL REFLECT THAT THE PARTIES ARE PRESENT.

14:18:06:00  25   THIS IS THE COURT'S RULING:  IF THE PARTIES WILL LOOK AT

14:18:11:00  1  DDX5-55, THERE IS A SMALL FIGURE WHICH JUXTAPOSES M3 WITH M0

2  AND ASKS WHETHER THERE -- SAYS DIFFERENT PRIORITIES, QUESTION

3  MARK.  I HAVEN'T HEARD AN OBJECTION TO THAT PARTICULAR FIGURE.

4  IS THAT CORRECT, MR. DOWD?

14:18:43:03  5       MR. DOWD:  I'M -- I WAS JUST GETTING MY MATERIALS

6  BACK, YOUR HONOR.  YOU ARE ON SLIDE 53?

7       THE COURT:  I'M AT SLIDE 55, THE VERY BOTTOM.  THE

8  SMALL LITTLE FIGURE.

9       MR. DOWD:  DIFFERENT PRIORITIES.

14:18:57:21 10    WELL, ACTUALLY THERE IS, AND THAT IS THAT WE WOULD OBJECT

11  TO -- ACTUALLY THAT PORTION WHICH IS RELEVANT NOW AND THE

12  ABOVE PORTION WHICH --

13       THE COURT:  I'M NOT TALKING ABOUT THE ABOVE PORTION.

14  ALL I'M TALKING ABOUT IS THAT SMALL LITTLE BOX.  AND THE

14:19:16:27 15  REASON THAT I AM ASKING IS BECAUSE IN PARAGRAPH 151 OF THE

16  PRIORITY -- OF THE VAHID REPORT, DR. VAHID, ALTHOUGH HE TOLD

17  ME HE HAD NO SLIDES ON THIS ISSUE, OPINES THAT THE ARBITRATION

18  SCHEME IMPLEMENTED BY THE FAST ARBITRATION UNIT ASSIGNS A

19  PRIORITY VALUE CALLED THE BASE OR BASIC PRIORITY VALUE TO THE

14:19:51:18 20  ARM, AN IPU REQUESTS FOR AN ACCESS TO THE EXTERNAL DDR MEMORY.

21    HE THEN SAYS THAT THE PRIORITY VALUES FOR THE M0 PORT THAT

22  SERVICES REQUESTS FROM THE ARM AND THE M3 PORT THAT SERVICES

23  REQUESTS FROM THE IPU ARE DEFINED IN THE BASIC PRIORITY

24  REGISTER.  THE M0 PORT HAS A PRIORITY VALUE OF 3 AND THE M3

14:20:21:15 25  PORT HAS A PRIORITY VALUE OF ZERO.  THIS MEANS THAT THE

14:20:27:18  1    REQUESTS FROM THE ARM AND THE IPU TO AN EXTERNAL DDR MEMORY DO

2    NOT HAVE THE SAME PRIORITY VALUE.

3        IT WOULD SEEM TO ME THAT THAT SMALL FIGURE ON DDX5-55

4    REFLECTS THAT OPINION.

14:20:45:00  5            MR. DOWD:  YOUR HONOR, I'M NOW -- I THINK I NOW AM

6    WITH YOU.  I HAVE THE SAME NOTE ON PARAGRAPH 151, NO SLIDES.

7        IF THIS FIGURE, INSTEAD OF -- IN THE LITTLE CALLOUT BOX,

8    INSTEAD OF SAYING DIFFERENT PRIORITIES, QUESTION MARK, SAID

9    DIFFERENT BASIC PRIORITY, I THINK THAT WOULD COMPORT WITH THE

14:21:04:24 10    EXPERT'S PARAGRAPH 151, AND WE WOULDN'T OBJECT.

11            THE COURT:  MR. HADJIS?  I HAVE NOW READ THE ENTIRE

12    SECTION OF THE EXPERT'S REPORT HERE DURING THE BREAK.  AND

13    I'VE HEARD THE ARGUMENT.  AND THIS IS WHAT I'M GOING TO DO.

14        SLIDES 52 AND 53 ARE STRUCK.  THERE WILL BE NO OPINION BY

14:21:36:18 15    THIS WITNESS REFERENCING DYNAMIC PRIORITY BECAUSE HE'S MADE

16    NONE.  I WILL ALLOW YOU TO USE THE SMALL PORTION THAT I JUST

17    SHOWED -- THAT I JUST IDENTIFIED ON DDX5-55.  TO BE CONSISTENT

18    WITH HIS REPORT, YOU SHOULD ADD THE WORD "BASIC."

19        THE LARGER -- THE LARGER MODULE CAN ONLY BE USED IF IT IS

14:22:26:15 20    CONSISTENT WITH THE CUTOUT THAT I'VE REFERENCED ON

21    PAGE --DDX5-55, THAT IS, WHERE IT HIGHLIGHTS THE TWO PORTS

22    WHICH HE HAS IDENTIFIED AND NOTHING ELSE.  THAT IS CONSISTENT.

23    THAT'S WHAT I'M GOING TO ALLOW.

24        YOU CAN HAVE THE COVER OF THE MANUAL.  THAT'S FINE.  YOU

14:22:58:15 25    CAN HAVE DDX5-51.  THAT'S FINE.  THE REST IS GONE.

14:23:05:21  1        AND I WILL INSTRUCT THE JURY THAT I HAD TO STRIKE CERTAIN

2    SLIDES TO ADDRESS ANY POTENTIAL PREJUDICE.

3            MR. HADJIS:  YOUR HONOR, CAN I ASK A QUESTION ABOUT

4    THIS?

14:23:17:09  5            THE COURT:  YOU MAY.

6            MR. HADJIS:  WE WOULD REQUEST DR. ASANOVIC'S OPINIONS

7    ABOUT DYNAMIC PRIORITY IN COURT BEFORE THE JURY TO ALSO BE

8    STRICKEN BECAUSE THERE IS NOTHING IN HIS REPORT ABOUT IT.  THE

9    TREE THAT MR. DOWD IDENTIFIED TO YOU DOES NOT HAVE ANYTHING TO

14:23:36:12 10   DO WITH DYNAMIC PRIORITY.  IT IS ONLY SOMETHING TO DO WHEN

11   PRIORITIES ARE EQUAL.  SO THERE IS NOTHING IN DR. ASANOVIC'S

12   REPORT ABOUT DYNAMIC PRIORITY.  THAT IS -- THAT IS OUR

13   REQUEST.

14            THE COURT:  THE OBJECTION IS NOTED.  I'M NOT PREPARED

14:23:55:06 15   TO DO IT RIGHT NOW.  I DON'T HAVE A RECORD OR AN OBJECTION

16   THAT WAS MADE AT THE TIME THAT I CAN ADDRESS.

17            MR. HADJIS:  THANK YOU.

18            THE COURT:  I WILL TAKE IT UNDER SUBMISSION.

19            MR. HADJIS:  THANK YOU.

14:24:10:06 20            THE COURT:  IT'S 2:25, GENTLEMEN.  I HAVE A

21   SENTENCING AT 3:00 O'CLOCK.  WE'RE STANDING IN RECESS UNTIL

22   3:30.

23        (RECESS TAKEN AT 2:25 P.M.)

24            (CONTINUED IN VOLUME 9B; NOTHING OMITTED.)

08:20:54:12 25                  --OOO--

07:53:03:03

## CERTIFICATE OF REPORTER

        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE—ENTITLED MATTER.
I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,
NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS
HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR
OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.


            _____

        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

                THURSDAY, SEPTEMBER 11, 2014

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*